**EXHIBIT A**

1
2   STEPHEN M. SHAW, SB #107625
    P.O. Box 2353
3   Honolulu, Hawaii 96804
    Telephone: (808) 521-0800
4   Facsimile: (808) 531-2129
5   Email: shawy001@gmail.com
6
7   Attorney for Plaintiff
    MEGUMI HISAMATSU
8
9

**FILED**

San Francisco County Superior Court

AUG 13 2007

GORDON PARK-LI, Clerk
BY: _Wilmin Fa Fartaln_
**Deputy Clerk**

CASE MANAGEMENT CONFERENCE SET

SUMMONS ISSUED    JAN 2 5 2008 - 9:00 AM

DEPARTMENT 212

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              FOR THE COUNTY OF SAN FRANCISCO

12                  -UNLIMITED CIVIL JURISDICTION

13

14   MEGUMI HISAMATSU,              )    CASE NO. CGC-07-466120
                                    )
15                   Plaintiff,     )
                                    )
16       vs.                        )    COMPLAINT FOR BUSINESS
                                    )    TORT/UNFAIR BUSINESS
17                                  )    PRACTICES
     KAUSHAL NIROULA;               )
18   BANK OF HAWAII,                )
     A Corporation; DOES 1-60;      )
19                                  )
20                   Defendants. )
                                    )
21   _____ )

22                      **COMPLAINT**

23
24       1.      Plaintiff Megumi Hisamatsu, at times relevant here was, and is a

25   resident of Osaka, Japan, and in connection with her following causes of action

26   gives notice to defendants of her intent to access information, and demands

27

28                                                                          1

Complaint
S.F. Superior Court

that defendants refrain from destroying, losing, overwriting, or purging any information without the written consent of Plaintiff.

## JURISDICTION AND PARTIES

2.    Defendant Kaushal Niroula, is an individual who resides in San Francisco, California. Venue is proper under Cal. Civ. Proc. §395(a).

3.    Defendants DOE 1-8, 32-35 are individuals who are associated with defendant Kaushal Niroula, and who reside in San Francisco, California.

4.    Defendant BANK OF HAWAII ("BOH") is, on information and belief, a corporation headquartered in Honolulu, Hawaii and authorized to transact business in the State of California. BOH has an agent for service of process in California, and its corporate registration in 1998 is still listed as active by the California Secretary of State, at C2066195. This Court has jurisdiction inter alia pursuant to Article VI, Section 10 of the California Constitution, because the case is an action not given by statute to other trial courts.

5.    Defendants DOES 1-60 are guilty of those acts alleged herein and will be identified according to proof when their identities and connection to the individual counts are known. In the event any defendant asserts the defense of advice of counsel, or advice of any other entity or person, said persons will be named as defendants in place of DOES 50-60, as discovered.

## FACTUAL ALLEGATIONS INCORPORATED INTO EACH COUNT

6.    On or about July 27, 2006, during a vacation in Hawaii, Plaintiff was befriended by Defendant Kaushal Niroula. Defendant represented that he

Complaint
S.F. Superior Court

2

was Plaintiff's neighbor at the short-term condominium rentals in Honolulu (Waikiki), where Plaintiff Hisamatsu was vacationing.

7.     Defendant Kaushal Niroula also represented that he headed an international consulting company and that his mother was a Nepalese diplomat. He said his family was very rich, and that he was a friend of the Nepalese royal family. Eventually, defendant brought up the subject of real estate investments in Hawaii. Plaintiff had long been interested in Hawaii real estate, but had no visa which would permit her family an extended stay in the United States. Kaushal Niroula explained that he had succeeded in helping many of his business clients who invest in businesses, real estate and other projects in America. When Plaintiff mentioned that she had thought about a visa for longer visits in Hawaii with her children, defendant Kaushal Niroula further represented that he referred many of his clients to an immigration lawyer in the Bay Area who would be able to help Plaintiff get a business or investment visa. Defendant Kaushal Niroula added that Plaintiff would need to have investments in the United States if she got involved in the visa application process.

8.     Defendant Kaushal Niroula, unbeknownst to Plaintiff, was actually a criminal. Defendant Niroula intended to victimize Plaintiff through a combination of criminal hoaxes well known to co-defendant BOH: (1) Nepalese Royal Family scam, (2) fraudulent investment visa scam, (3) Advance Fee Fraud, and (4) identity theft.

Complaint
S.F. Superior Court

9.      The first hoax professes, as here, (a) close contacts with the Nepalese government (Kaushal Niroula claimed to be the best friend and classmate of the deceased prince of Nepal); (b) A family or related group with massive wealth; (c) threats to the group's wealth, due to turmoil in Nepal since the murder of the Nepalese royal family in 2001; (d) need for outside money to assist in the family's escape from Nepal,  and the transfer and reinvestment of funds from Nepal; (e) to rescue members of the group, or family, from imminent danger.

10.      The second hoax is a variant of fraudulent green card lottery services, whereby a businessman or attorney uses misrepresentations and unfair practices to promote services to consumers. The variation here was to offer investment, or EB-5 visas. Like the visa lottery scams, Defendant Kaushal Niroula represented (a) affiliation with an immigration lawyer who would successfully process EB-5 visas, (b) proven success in assisting foreigners satisfy the minimal investment of $500,000 in a new enterprise in the United States for approval of an EB-5 visa application.

11.      Defendant Kaushal Niroula also employed the advance-fee fraud scheme, whereby Plaintiff could recover the money Kaushal Niroula eventually stolen from Plaintiff (to save Nepalese family members in great personal danger due to turmoil in that country's government). In order to recover, Plaintiff Hisamatsu was asked to take several more steps: help release a hold on Kaushal Niroula's bank account, and give him another $41,000, in San Francisco.

4

Complaint
S.F. Superior Court

12.     Additionally, Kaushal Niroula deployed identity theft as the centerpiece of his criminal confidence schemes. Under the false pretext of preparing and advising Plaintiff for her visa application through a Bay-Area attorney, Kaushal Niroula was able to steal her personal information, steal three blank BOH checks from Plaintiff's new BOH checking account, and forge her signatures for a total loss of $508,000.00.

13.     In its Identity Theft Guide, BOH falsely and fraudulently represented to consumers generally:

"WHAT THE BANK IS DOING

Bank of Hawaii provides identity theft victims with responsive, caring service from beginning to end. When notified by a customer of a possible identity theft, Bank of Hawaii will ensure that accounts are closed and protected properly. Designated staff members will also follow up with customers and monitor accounts for any suspicious activity. Our goal is to ensure that customers experience complete resolution and consistent follow-through so their concerns and issues are handled in a timely and caring manner."

14.     Unaware of defendant Kaushal Niroula's evil intent, Plaintiff was persuaded into thinking that Kaushal Niroula's family was wealthy and connected to the power elite in Nepal. Plaintiff was further led to believe that Kaushal Niroula was an international businessman, involved in investment visa consulting.

15.     As a result of the confidence Kaushal Niroula instilled in Plaintiff about his business skills, contacts, and upbringing, Plaintiff expressed interest in

5

Complaint
S.F. Superior Court

investment in Hawaii. Kaushal Niroula, in turn, made several real estate presentations to Plaintiff which further deepened her trust in Defendant Niroula's business skills. While rejecting the real estate proposals, Plaintiff Hisamatsu long maintained on interest in obtaining a visa which would allow her, and her family, to stay for longer periods in the United States.

16.    Defendant Kaushal Niroula represented that he was very familiar with the EB-5 investment visa programs in the United States, and had obtained successful results for many of his clients by working through a lawyer near San Francisco. According to Niroula, Plaintiff would not actually need to complete an investment to apply for the visa; a minimal balance of $500,000 in a domestic bank would suffice. Kaushal Niroula's function, he represented, was to help his clients invest in United States properties; or, to at least move the minimum required funds into the United States before sending his clients to the immigration lawyer. Defendant Niroula volunteered to help Plaintiff free of charge. To begin the EB-5 process, he advised Plaintiff Hisamatsu to wire at least $500,000 into a United States bank account. Defendant Kaushal Niroula eventually gave Plaintiff the name and telephone number of a lawyer in the Bay Area, who would accept the materials he prepared for the clients to support the finished application.

17.    Kaushal Niroula next persuaded Plaintiff to the start arranging wire transfers upon her return to Japan. For his part, Niroula volunteered to make sure that his contacts at Bank of Hawaii (BOH) had properly posted the wire

Complaint
S.F. Superior Court

6

transfers to Plaintiff Hisamatsu's account. Afterwards, Defendant Niroula would prepare the documents for Plaintiff's first contact with the immigration attorney in the Bay Area. Plaintiff was led to trust Niroula enough to seek his "help" opening the bank account.

18.    On or about August 16, 2006, Defendant Kaushal Niroula took Plaintiff to Defendant Bank of Hawaii (BOH's) Waikiki branch and introduced Plaintiff to a BOH's employee Lynn Bronios, who also seemed to be extremely friendly with Kaushal Niroula. Defendant represented to Plaintiff Hisamatsu that he had several other friends at BOH who would help with transfers of funds, and eventual verification for American immigration officials.

19.    At the same date and place, Defendant Niroula and BOH employees helped Plaintiff Hisamatsu open personal checking account no. 0002-937182 at Bank of Hawaii ("Plaintiff's BOH account"). Plaintiff, with Defendant Niroula's "help", used her Japanese passport and information therein as identification for BOH staff, who were also "helping".

20.    While familiarizing Plaintiff Hisamatsu with bank staff and new account procedures, Defendant Niroula, without Plaintiff's knowledge or consent, stole three temporary checks (numbered 101-103) as well as Plaintiff Hisamutsu's identity.

21.    On August 22, 2006, relying on Defendant Niroula's representations about domesticating her family's savings in the United States for her visa, and relying in the confidence BOH employees had in Niroula, Plaintiff caused

$256,179.29 to be wired from Japan into her new BOH account, opened on August 16, 2006. Because it was a new account, Plaintiff's funds would not be immediately available.

22.    Between August 24 and September 18, 2006, without Plaintiff's knowledge or consent, Defendant Kaushal Niroula forged Plaintiff's signature on two of her checks he had stolen previously, and another he had obtained as part of his criminal visa fraud scheme. He deposited them into his BOH account, all without Plaintiff's knowledge or authorization. On information and belief, these checks were not teller-processed.

23.    On August 24, 2006, without comparing signatures for forgery, Defendant BOH debited Plaintiff's new BOH account for $8,000 from one of Defendant Kaushal Niroula's forged checks. Plaintiff's account was only eight days old, and Niroula used Plaintiff's temporary checks. Defendant BOH did not contact Plaintiff prior to, or during the transaction. Had BOH simply contacted Plaintiff at this point, none of the subsequent forgeries would have cleared the bank.

24.    On August 28, 2006, without verifying the signature, defendant BOH debited Plaintiff's BOH account for $95,000 from another temporary BOH check forged by defendant Kaushal Niroula. Defendant BOH did not contact Plaintiff prior to the transaction. Had contact been made with Plaintiff, the next forgery would not have cleared the bank.

Complaint
S.F. Superior Court

8

25.    On August 29, 2006, Plaintiff returned to her residence in Osaka, Japan. Prior to returning, she requested that BOH customer service (1) email to her all confirmation of wired deposits, and (2) send her bank statements to her address in Japan. Plaintiff had also provided BOH Customer Service with her email address which. Plaintiff Hisamatsu could access in Japan, as well as the United States.

26.    On September 5, 2006, Plaintiff caused $299,988.00 to be wired from Japan into Plaintiff's BOH account, opened just twenty days earlier.

27.    As part of Defendant Niroula's ongoing criminal enterprise of immigration fraud (18 USC §1546), money laundering (18 USC §1956(a)(2)(A), wire fraud (18 USC §1343), bank fraud (18 USC §1344), and immigration document fraud (8 USC §1324c), defendant Niroula deceptively represented that he was preparing Plaintiff's application for an EB-5 investment visa by organizing exhibits for the application which would soon be finalized by a Bay Area immigration lawyer. He urged Plaintiff to immediately send him a few BOH checks to show her U.S. address printed thereon, so that immigration could verify that she had both the contacts with the United States, and the banking relationship he misrepresented was required for the EB-5 visa application. Eager to apply for an EB-5 visa (not knowing defendant Niroula had already stole Plaintiff's BOH checks from her and forged them), Plaintiff sent defendant Niroula three checks.

Complaint
S.F. Superior Court

9

28.    For the third time, on September 18, 2006, defendant BOH debited Plaintiff's BOH account. This time it was for $405,000 (check#105), based on another check forged by Kaushal Niroula. BOH did not contract Plaintiff prior to, or during the transaction. BOH did not competently verify the signature, and BOH did not contact Plaintiff in Japan.

29.    Since no statement from BOH had been returned to Plaintiff's address in Japan during September, Plaintiff called BOH on or about October 2, 2006, and received the shocking news that her family savings in her BOH checking account had been drained of $508,000.00 by transactions which were unauthorized and unknown to her. Plaintiff, at that point, promptly notified BOH that the purported signatures on the checks debited 8/24/06, 8/29/06 and 9/18/06 were unauthorized.

30.    BOH employees refused to contact the police or take any action to recover the funds despite Plaintiff's pleas for help. In violation of BOH's Identify Theft Guide and other procedures, BOH employees insisted that Plaintiff Hisamatsu would have to return to Hawaii if she wanted to pursue the matter further.

31.    On October 2, 2006 (Japan time), Plaintiff left Japan and flew to Honolulu. On October 3, 2006, Plaintiff met with defendant BOH's employees and swore out three affidavits in support of claims for reimbursement for each forged check. The pre-printed BOH claim form falsely and fraudulently represented: "Payment of your claim is contingent upon the results of the

10

Bank's investigation. The Bank's decision to pay or not to pay your claim will be made in light of all the facts and circumstances after completion of its investigation." Copies of the claims and affidavits are attached hereto as Exhibits A.1 – A.9, and are incorporated herein by reference.

32.     At the meeting, Plaintiff repeatedly asked BOH employees to call the police, but BOH staff refused, despite having sufficient information to form a reasonable suspicion that Plaintiff was a victim of a confidence scam, visa and bank fraud, and identity theft; all are very serious felonies.

33.     Acknowledging that the unauthorized transactions, as sworn to by Plaintiff on October 3, 2006 (Ex A.1-A.9) were forgeries, BOH froze defendant Kaushal Niroula's BOH account, which still contained over $250,000 of Plaintiff Hisamatsu's family savings.

34.     On or about October 4, 2006, Plaintiff is informed that defendant Kaushal Niroula went to BOH and informed BOH employees he would return Plaintiff's money. Afterward, Kaushal Niroula contacted Plaintiff and assured her that he had sufficient funds in San Francisco to return her money.

35.     From October 4, 2006 to October 19, 2006, BOH employees violated their Identify Theft Guide and other procedures, and were not responsive to Plaintiff's repeated requests for investigation and police involvement. Instead, a BOH security official made statements to Plaintiff that Niroula was not a bad person, that his parents were Nepalese diplomats and that Niroula would return her money, and that there was a reasonable delay in

11

Complaint
S.F. Superior Court

wire transfers due to a bank holiday in Nepal. Meanwhile, on October 5, 2006, defendant Niroula left Honolulu for San Francisco, California.

36.    Defendant BOH refused to pay Plaintiff's claim, or to adequately investigate the missing $508,000, as represented in the claim form. (Exhibits A.1, A.4 and A.7) or in its Identity Theft Guide, at ¶13, supra (excerpt).

37.    On October 17, 2006, defendant Kaushal Niroula contacted Plaintiff, from San Francisco, and persuaded her that his family had been placed in a very dangerous situation due to their planned departure from Nepal, and his only way to save them from harm was to take Plaintiff Hisamatsu's money. He further represented that it only became a problem because of delays in wiring funds to replace her lost money. Niroula assured Plaintiff that her funds were included in his family's fortune being wire-transferred from Nepal to the United States, as part of the family repatriation plan. Involvement by the FBI and IRS over Plaintiff's claim at BOH, and related tax issues, had interrupted the plan, according to Niroula. The persons assisting his family had been unable to transfer money, and they thought his family was cheating them out of their commissions. Niroula persuaded Plaintiff this situation was being cleared up in a few days, and he would immediately replace her lost funds. Because of the inability to wire funds to Hawaii, Niroula asserted that Plaintiff would be required to fly to San Francisco to complete the transaction. Defendant Kaushal Niroula also persuaded Plaintiff that since she would receive her funds in San

12

Complaint
S.F. Superior Court

Francisco, that she would also be able to sign up with the Bay Area immigration attorney, for the EB-5 investment visa.

38.      Additionally, on or about October 17, 2006, defendant Kaushal Niroula convinced Plaintiff that because of the delay in wiring money from Nepal to San Francisco, individuals assisting his family escape from Nepal thought they were being cheated by Niroula, Consequently, they kidnapped Kaushal Niroula's sister, in Nepal.

39.      On October 20, 2006, as a direct result of BOH's statements in its claim forms and conciliatory attitude toward defendant Kaushal Niroula, Plaintiff flew to San Francisco to recover her money. She opened an account for Niroula's anticipated deposit with Citibank, in San Francisco, account no. 055204855. In the event Defendant Niroula returned her family savings. Plaintiff intended to withdraw her claims to BOH (Exs A.1, A.4 and A.7). If not, Plaintiff reasonably believed that she was still protected by the claims pending with BOH, in the event of Niroula's default..

40.      In San Francisco, defendant Kaushal Niroula persuaded Plaintiff that he would both repay her, and provide her with additional funds so that there would be no further problems between them. Kaushal Niroula then deposited a check for $890,000 into Plaintiff's Citibank account in San Francisco, and Plaintiff verified the deposit on October 21, 2006 (a Saturday) by telephone with customer service. Plaintiff was informed by Citibank customer service; however, that funds would not be available for three (3) days.

13

Complaint
S.F. Superior Court

41.    On October 23, 2006 (Monday), defendant Kaushal Niroula persuaded Plaintiff that his sister would be killed in a few days unless Niroula paid her ransom. Niroula also convinced Plaintiff that she was in great danger from associates of this Nepalese organization in San Francisco, and that they should stay away from the hotel and travel around the Bay Area. Defendant Niroula urged Plaintiff return to Japan immediately after her meeting with the immigration attorney.

42.    As a further direct result of Plaintiff's pending claims with BOH, Kaushal Niroula's representations, BOH's statements in the claim form, and BOH's vouching for Kaushal Niroula, Plaintiff Hisamatsu acted promptly to help Kaushal Niroula. On October 25, 2006, therefore, Plaintiff opened another account in San Francisco, this time with Wells Fargo Bank.

43.    Next, Plaintiff called her BOH branch and asked the manager to wire $41,000 to her San Francisco Wells Fargo account. From those funds, Plaintiff loaned Defendant Kaushal Niroula another $41,000 for a ransom payment for his sister.

44.    An "Indemnification of Liability" (Ex "B") was drafted by BOH employees and given to one of Plaintiff's friends, in Honolulu (without a cover letter), to fax to Plaintiff in San Francisco. BOH deceptively removed its letterhead and the document number from the form. Exhibit "B".

45.    On October 25, 2006, Defendant BOH's "Indemnification of Liability" form (Ex "B") was faxed to Plaintiff's hotel in San Francisco. While

Complaint
S.F. Superior Court

14

Plaintiff reasonably believed that her claims to BOH were not affected by this unofficial looking form, BOH would not release the holds on Kaushal Niroula's BOH account unless Plaintiff signed the form. To that end, defendant Kaushal Niroula rushed Plaintiff to a notary in the County of San Francisco, to sign BOH's form with no indicia of origin or letterhead. Exhibit "B". According to Niroula, his family could not transfer funds to the United States (and to repay Plaintiff) until the holds on his BOH account were removed.

46.    Because of the BOH's vouching for Defendant Kaushal Niroula and since Defendant Niroula had deposited adequate funds ($890,000.00) to Plaintiff's Citibank account in San Francisco, Plaintiff signed the form drafted by defendant BOH on 10/25/07. She faxed it from San Francisco to BOH, and called BOH to confirm that it was received. BOH's security employee said he would have to talk to Defendant Kaushal Niroula (the forger). Niroula then called BOH, and the employee congratulated defendant Kaushal Niroula.  Upon receipt of a copy of the form, BOH released its hold on the criminal, defendant Kaushal Niroula's BOH account #0002-933063 for the balance of $257,546.25 (Plaintiff's money). Plaintiff is informed and believes that the bank has no original of the form, unless it obtained it through further aiding and abetting of a criminal, defendant Kaushal Niroula.

47.    Prior to execution of the form prepared by BOH (Ex. B), no one from BOH explained its meaning, offered to translate it, or otherwise assisted Plaintiff. At all times, BOH knew that Plaintiff, a Japanese national in San

15

Complaint
S.F. Superior Court

Francisco, could not adequately understand the level of English in the bank's forms, or foreign bank procedures. At all times, Plaintiff thought that the document (Ex B) would have no effect on the bank's existing obligation to replace her stolen money. Plaintiff thought the form was only a temporary formality to facilitate the transfer of Niroula's family funds from Nepal, for her benefit, and for Niroula's family's safety. Plaintiff did not understand the hidden meaning of BOH's unofficial "Indemnification of Liability" (Exhibit "B"), nor did she think it would impair her existing claims. Exs. A.1, A.4 and A.7. After waiting several days in the San Francisco area for the funds from Niroula, on October 29, 2006, Plaintiff left for Japan.

48.    After returning to Japan, on October 31, 2006, Plaintiff learned that Niroula's deposit to her San Francisco account had been dishonored, as against insufficient funds.

## COUNT ONE

### (Promissory Fraud Or Fraud In The Inducement Against
### Defendants Kaushal Niroula and Does 1-10, 31-33)

49.    Plaintiff realleges and incorporates the foregoing paragraphs.

50.    False representations of important facts, in addition to the foregoing, were made by defendant Kaushal Niroula in the County of San Francisco, on or about October 4, 17, 20 and 28, 2006. First, Kaushal Niroula falsely represented that he had taken money from Plaintiff's BOH account due

16

Complaint
S.F. Superior Court

to an extreme family emergency, including the threatened kidnapping of his sister in Nepal, and the inability to quickly access defendant's own funds to help his family. Second, Kaushal Niroula represented that after the crisis he had secured the funds to replace those taken from Plaintiff. Third, Defendant Kaushal Niroula urged Plaintiff to be very careful and to return as soon as possible to Japan since associates of the individuals who eventually kidnapped Niroula's sister made threats to harm Plaintiff. Fourth, defendant Kaushal Niroula required a final sum of money to pay to the kidnappers.

51.     Defendant Kaushal Niroula knew that the foregoing statements were false (or he made them recklessly and without regard for the truth).

52.     Defendant Kaushal Niroula intended to defraud Plaintiff; that is, he intended to induce reliance by Plaintiff on his misrepresentations and contemplated that her reliance thereon would permit defendant and DOES 1-20 to take more of Plaintiff's savings. Plaintiff did, in fact, rely on the representations.

53.     Plaintiff justifiably and reasonably relied on Niroula's foregoing representations; based upon her knowledge, and internet research about the turmoil in Nepal; based upon BOH's assertion it was investigating the transactions; and, BOH's conciliatory unwillingness to inform Plaintiff that it was taking any action against Defendant Kaushal Niroula as a result of his unauthorized transactions. In addition, Plaintiff could not, in the exercise of

17

Complaint
S.F. Superior Court

1   reasonable diligence have discovered defendant **Kaushal Niroula's** secret

2   intention.

3

4   54.    Had Plaintiff known of defendants' actual intentions and evil

5   motives, she would not have signed the BOH document (Ex. "B") in San

6   Francisco, and she would not have trusted **Kaushal Niroula** with the replacement

7   of her money or with "managing" her visa application, as stated above.

8

9   55.    Defendant **Kaushal Niroula** failed to abide by his promise in that the

10  deposit he made in San Francisco to Plaintiff Hisamatsu's Citibank account was

11  by a check drawn on insufficient finds, for $890,000. **Kaushal Niroula** actually

12  damaged Plaintiff in this, and other amounts, and his representations were a

13  substantial factor in causing harm to Plaintiff.

14

15  56.    As a direct and proximate result of the conduct of the defendants,

16  and each of them, Plaintiff Hisamatsu has been deprived of the use and benefit

17  of her money, and has sustained substantial actual damages. Defendants'

18  conduct has been the legal and proximate cause of actual or special damages to

19  the Plaintiff in an amount to be determined at the time of trial, including, but not

20  limited to expenses and costs incurred in connection with the loss of her

21  $508,000 and other foreseeable economic losses, all in a sum to be shown by

22  proof at trial.

23

24  57.    As a further direct and proximate result of the conduct of the

25  defendants, and each of them, Plaintiff has sustained general damages, plus

26

27

28                                                              18

interest, in an amounts to be shown by proof at the time of trial, but which exceed 2.5 million dollars.

58.    In committing the acts alleged in this, and other counts, defendants acted intentionally, oppressively, maliciously and fraudulently, with a conscious disregard of the Plaintiff's rights, with the intention of benefiting themselves financially; with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or willful conduct, or an entire want of care raising the presumption of a conscious indifference to consequences, justifying imposition of exemplary damages; and with the intention of causing, or recklessly disregarding the probability of causing, injury to Plaintiff. Defendants, as employers, had advance knowledge of the unfitness of employees involved herein, and employed them with a conscious disregard of the rights or safety of others and authorized or ratified the wrongful conduct for which damages are claimed. The oppression, fraud, or malice of defendant corporate employers was on the part of one or more officers, directors, or managing agents. In so acting, the defendants intended to, and did, vex, annoy, injure and harass the plaintiff. As a result of such conduct, Plaintiff is entitled to exemplary and punitive damages.

## COUNT TWO

### (Tort In Essence Against Defendant Kaushal Niroula and Does 1-20)

59.    Plaintiff realleges and incorporates the foregoing paragraphs.

Complaint
S.F. Superior Court

19

60.    Defendant Kaushal Niroula and DOES 1-20 owed nonconsensual duties to others, including Plaintiff Hisamatsu, to comply with the criminal laws of the State of California.

61.    The following statutes embodied a public policy to protect a class of persons of which Plaintiff is a member:

    A.    Cal Pen Code §476a (2007) (Making or delivering check with insufficient funds).

    B.    Cal Pen Code §518 (2007) (Extortion).

62.    On or about October 20, 2006 in the County of San Francisco, Defendants Kaushal Niroula and Does 1-20 violated their nonconsensual duties to Plaintiff and others so situated by depositing a check for $890,000 into Plaintiffs' Citibank account in San Francisco at a time when defendants knew the check was drawn on insufficient funds.

63.    Between October 20, 2006 and October 29, 2006, in the County of San Francisco, defendant Kaushal Niroula threatened Plaintiff with bodily harm from Nepalese nationals involved with kidnapping his sister, if Plaintiff did not (1) pay him $41,000 in San Francisco, (2) convince BOH (from San Francisco) to release the hold on defendant Kaushal Niroula's BOH account/or funds, (3) keep her cell phone turned off, (4) stay away from her hotel, and drive around the Bay Area, and (5) return on 10-29-06, to Japan.

## COUNT THREE

### (Conversion Against Defendant Kaushal Niroula and Does 1-10)

64.    Plaintiff realleges and incorporates the foregoing paragraphs.

65.    Between August 16, 2006 and October 5, 2006, in Honolulu, Hawaii; and between October 5, 2006 and November 1, 2006, in San Francisco, California, defendant Kaushal Niroula actually interfered with, and exercised dominion over Plaintiff's property including confidential identity, bank and telephone information, and money, inconsistent with the ownership of Plaintiff. Plaintiff demanded return of the property.

66.    Defendants interference or exercise of dominion over Plaintiff's property was intentional and in defiance of her rights, causing Plaintiff's damages as aforesaid.

## COUNT FOUR

### (Trespass To Personal Property Against
### Defendant Kaushal Niroula and Does 1-10)

67.    Plaintiff realleges and incorporates the foregoing paragraphs.

68.    Between August 16, 2006 and about October 5, 2006 in Honolulu, Hawaii, and between about October 5, and November 1, 2006 in San Francisco, California, defendant Kaushal Niroula intermeddled with the chattel of Plaintiff or dispossessed Plaintiff of the chattel.

21

Complaint
S.F. Superior Court

## COUNT FIVE

### (Constructive Trust Against Defendant Kaushal Niroula and Does 1-20)

69.     Plaintiff realleges and incorporates the foregoing paragraphs.

70.     Defendant Kaushal Niroula has money belonging to Plaintiff to which he is not justly entitled. Some of the money is in San Francisco, California.

71.     Defendant's duty is to retransfer the money to Plaintiff, who is entitled thereto to possession.

72.     Defendant Kaushal Niroula will be unjustly enriched if allowed to keep Plaintiff's money.

73.     A constructive trust should be imposed on defendant's accounts and property, plus accrued interest.

## COUNT SIX

### (Equitable Lien Against Defendant Kaushal Niroula and Does 1-10)

74.     Plaintiff realleges and incorporates the foregoing paragraphs.

75.     Defendants own property which may be reached by Plaintiff Hisamatsu as security on the ground that defendant Kaushal Niroula will be unjustly enriched if allowed to retain the money.

76.     An equitable lien should be imposed against defendants in favor of Plaintiff on the proceeds of all money taken by defendant.

22

Complaint
S.F. Superior Court

**COUNT SEVEN**

**(Civil Conspiracy Against Defendants Niroula And DOES 1-32)**

77.    Plaintiff realleges and incorporates the foregoing paragraphs.

78.    Defendant Kaushal Niroula and Does 1-32 agreed or combined by concerted action to accomplish numerous criminal or wrongful acts; or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means.

79.    Defendants Kaushal Niroula and Does 1-32 intentionally formed, planned, and operated the conspiracy which directly and proximately caused damage to Plaintiff from defendants' planning the intentional acts and civil wrongs done in furtherance of the agreement and common design to steal Plaintiff's identity, and savings, and to physically and emotionally injure Plaintiff.

**COUNT EIGHT**

**(Against BOH, Does 25-38. Violation Of Cal B&P §17200, et seq, And Deceptive Acts Or Practices)**

80.    Plaintiff realleges and incorporates the foregoing paragraphs.

81.    On October 25, 2006, in the County of San Francisco, Plaintiff received, by fax, an "Indemnification of Liability" (Ex "B"), crafted by employees or agents of BOH. The sole purpose of preparing this form was to destroy Plaintiff's claim against BOH.

23

Complaint
S.F. Superior Court

82.     At all times, during the selection of the form for BOH's "Indemnification of Liability", agents or employees of BOH knew that Plaintiff was in San Francisco, California, under the control of a criminal, who had just forged her name on $508,000 in BOH checks.

83.     BOH, its agents and employees, expressly aimed their efforts to coerce Plaintiff into signing the "Indemnification of Liability" at the State of California, its laws and processes. BOH targeted the State of California as the situs of the execution of its form, and cancellation of Plaintiff's claims for reimbursement.

84.     BOH knew at the time it selected the form for indemnification that it would cause harm to Plaintiff in San Francisco California. BOH knew that Co-defendant Kaushal Niroula was present in San Francisco and was, at the same time, coercing Plaintiff to sign, and even notarize BOH's indemnity form (Ex "B").

85.     The offending transactions in this count occurred in, and arose out of, the receipt by Plaintiff of BOH's indemnity form in San Francisco, California, at the sole behest of defendant BOH. At no time did BOH request or require that Plaintiff first return to Hawaii to execute BOH's indemnity form (Ex "B").

86.     The thrust by BOH of its indemnity form into California to Plaintiff, an identity theft and forgery victim, was an unlawful, unfair, or fraudulent business practice. Among other things, to induce Plaintiff to sign, the proponent of the form (1) omitted its origin and drafter (BOH); (2) the indemnity form (Ex

24

Complaint
S.F. Superior Court

"B") left out the material fact that BOH created the form to destroy Plaintiff's claim for lost funds upon signing the form in San Francisco; (3) the indemnity form (Ex "B") failed to provide full disclosure of the rights of the parties; (4) left out required disclosures indemnifying BOH from negligence, and other causes of action; (5) the form violated public policy in that it purported to negotiate a withdrawal of the prosecution of the crime of forgery, which was beyond the capacity or legal authority of BOH; (6) the purported withdrawal of the crime of forgery rendered the indemnification agreement void for insufficient consideration; (7) to the extent BOH characterizes the form as anything other than one for indemnity, it misrepresented and misinformed Plaintiff into thinking the form was a temporary measure to achieve a large wire transfer funds from Nepal by BOH's release of holds on Niroula's BOH account; and, (8) BOH's purported Indemnification of Liability was legally deficient for the following reasons:

A.    There is no clear, positive and unequivocal assumption of liability by Plaintiff, set out with requisite specificity;

B.    There is no clear, unequivocal indemnification from BOH's own negligence, or any reference at all to negligence;

C.    There can be no indemnification against gross negligence, or by implication, intentional torts;

D.    The purported indemnification is strictly construed against the drafter, BOH;

25

E. Ambiguities are construed against BOH, including the phrase "forgery dispute" which is capable of more than one meaning. The forgery dispute is between the public law enforcement agencies, and defendant Kaushal Niroula, as an official criminal matter. There is no forgery dispute between BOH and defendant Kaushal Niroula. There can be no forgery "dispute" between Plaintiff and BOH because Plaintiff did not forge her own checks.

F. The Indemnification of Liability form attached at Exhibit "B" to this complaint was obtained by BOH through fraud, duress, undue influence, mistake, breach of fiduciary or quasi fiduciary duty, bad faith, oppression, malice.

G. The form is adhesive and unconscionable.

H. The form violates statutes including Cal Penal Code 550(b); Cal. U Com. Code 4-401. §§4401 and 4103.

I. The form was contrary to a substantial public interest or gained through inequality of bargaining power.

J. The form unfairly limited the obligations and liabilities of, or otherwise unfairly advantaged BOH.

87. Plaintiff, and other members of the public are likely to be deceived by defendant BOH's use of indemnity forms. Plaintiff was actually deceived by the form, relied upon it, and sustained damages.

26

Complaint
S.F. Superior Court

88.    The conduct by defendant BOH alleged here, and elsewhere in this complaint, in obtaining the signature on a form in San Francisco, and the use of the form to extinguish Plaintiff's claim upon signing it, constituted misrepresentations, omissions, or practices which were deceptive acts.

89.    Defendant BOH engaged in practices intended to deceive the public, including Plaintiff, forcing fraudulent indemnity forms on identity theft or forgery victims, to avoid paying valid claims for reimbursement to those victims, including Plaintiff. This conduct as further described in this count is a fraudulent business practice under section 17200 of the California Business and Professions ("B&P") Code.

90.    As further detailed in this complaint, defendant BOH's proffer of a misleading indemnity form to Plaintiff, in San Francisco, was intended to extinguish, when signed, Plaintiff's BOH claim for $508,000.00 of her family's savings. There was no utility in defendant BOH's conduct which justified this harm to Plaintiff's property and person, and BOH's conduct was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, including Plaintiff.

91.    A legislatively declared policy prohibited defendant BOH's misuse of an indemnity form faxed to San Francisco to destroy Plaintiff's absolute right to recovery of her money under Cal U Com Code §4401 and 4103, California's version of the Uniform Commercial Code.

27

Complaint
S.F. Superior Court

92.    A legislatively declared policy prohibited defendant BOH's concealments, or knowing failures, to disclose material facts affecting the amount of benefits due to Plaintiff in the context of said Indemnification of Liability form. BOH thereby violated Cal Penal Code §550(b)(3); and, in the context of allocation to the banker's blanket bond, or deductible thereunder, §550(b)(1) was violated.

93.    A legislatively declared policy prohibited defendant BOH's acts or practices in obtaining its alleged indemnification. This business activity was forbidden by law, including, without limit, Cal. U. Com. Code §4401; Cal Penal Code §550(b) subsections (1) and (3).

94.    Defendant BOH's representations, omissions, or practices described here, and elsewhere in this complaint, involved information important to Plaintiff, and consumers generally; and affected Plaintiff's decision to sign the BOH form in San Francisco.

95.    The acts done by defendant BOH in connection with the Indemnification of Liability form (Ex "B"), signed by Plaintiff in San Francisco, were unfair or deceptive acts or practices forbidden or declared unlawful by California law as well as Hawaii Revised Statutes (HRS) §480-2, et seq. BOH's actions detailed here, and elsewhere by incorporation of all remaining counts into this count, at all times had the capacity to mislead Plaintiff into signing a form which BOH contends, extinguished, at that point, Plaintiff's claims for reimbursement.

28

Complaint
S.F. Superior Court

96.    Defendant    BOH's    deceptive    conduct    respecting    the "Indemnification of Liability" form had the natural and probable result of causing Plaintiff to sign the form (without BOH letterhead or cover letter) in San Francisco; which Plaintiff would not otherwise have done. The representations, omissions or practices described herein were likely to mislead consumers acting reasonably under the circumstances and did, in fact, mislead Plaintiff.

97.    In addition to other remedies and damage hereinabove alleged, Plaintiff is entitled to restitution of all amounts of her claim withheld by BOH, and for a decree enjoining BOH from the use of this and other indemnification forms to avoid payment of claims.

## COUNT NINE

### (Conversion Against Defendant BOH and Does 28-35)

98.    Plaintiff realleges and incorporates the foregoing paragraphs.

99.    Between October 5, 2006 and November 1, 2006, in San Francisco, California, Defendant BOH and Does 28-35 intentionally interfered with, and exercised dominion over property owned by Plaintiff including confidential identity, bank, telephone information, and money, inconsistent with the ownership of Plaintiff. Defendants actually intentionally or knowingly interfered with Plaintiff's property.

100.    Defendants' interference or exercise of dominion over Plaintiff's property was in defiance of her rights, and Plaintiff demanded return of said

29

Complaint
S.F. Superior Court

property, which was refused, all to Plaintiff's injury, damage, loss or harm, as aforesaid.

101.    Defendant BOH owns property which may be reached by Plaintiff Hisamatsu as security on the ground that defendant BOH will be unjustly enriched if allowed to retain the money.

102.    An equitable lien should be imposed against defendant BOH in favor of Plaintiff on the proceeds of Plaintiff's money withheld by defendant.

## COUNT TEN

### (Intentional Infliction Of Emotional Distress Against Defendants BOH and Does 1-50)

103.    Plaintiff realleges and incorporates the foregoing paragraphs.

104.    Defendants' conduct as hereinabove alleged was so extreme as to exceed all bounds of conduct usually tolerated in a civilized community.

105.    Defendants engaged in conduct intended to inflict injury or Plaintiff, or they engaged in the conduct with reckless disregard of the probability that Plaintiff would suffer emotional distress; or with the realization that injury to Plaintiff would result.

106.    Defendants' acts were outrageous, and were a substantial factor in causing Plaintiff's severe emotional distress.

107.    The intentional or reckless extreme and outrageous and outrageous conduct by defendants directly and proximately caused Plaintiff to suffer

30

Complaint
S.F. Superior Court

emotional distress or extreme emotional distress, all to her damage, as aforesaid.

## COUNT ELEVEN

### (Tort In Essence Against Defendant BOH and Does 30-50)

108.    Plaintiff realleges and incorporates the foregoing paragraphs.

109.    Defendant BOH and Does 30-50 owed nonconsensual duties to others, including Plaintiff Hisamatsu, to comply with the civil and criminal laws of the State of California.

110.    The following statutes embodied a public policy to protect a class of persons of which Plaintiff is a member:

        A.    Cal Pen Code §476a (2007) (Making or delivering check with insufficient funds).

        B.    Cal Pen Code §518 (2007) (Extortion).

111.    On or about October 20, 2006 in the County of San Francisco, Defendant BOH and Does 30-50 violated their nonconsensual duties to Plaintiff and others so situated by aiding and abetting the criminal deposit of a check for $890,000 into Plaintiffs' Citibank account in San Francisco, at a time when defendants knew, or should have known, the check would be drawn on insufficient funds.

112.    Between October 20, 2006 and October 29, 2006, in the County of San Francisco, defendants aided and abetted Kaushal Niroula, who

31

Complaint
S.F. Superior Court

threatened Plaintiff with bodily harm from Nepalese nationals involved with kidnapping his sister, if Plaintiff did not (1) pay him $41,000 in San Francisco, (2) convince BOH (from San Francisco) to release the hold on defendant Niroula's BOH account/or funds, (3) keep her cell phone turned off, (4) stay away from her hotel, and drive around the Bay Area, and (5) return on 11-1-07, to Japan.

## COUNT TWELVE

### (Civil Conspiracy Against Defendants Kaushal Niroula, BOH and Defendant Does 25-35)

113.    Plaintiff realleges and incorporates the foregoing paragraphs.

114.    Defendants BOH, Kaushal Niroula and Does 25-35 agreed or combined by concerted action to accomplish a criminal or wrongful act in San Francisco, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means.

115.    Defendants BOH, Kaushal Niroula and Does 25-35 intentionally formed, planned, and operated the conspiracy which directly and proximately caused damage to Plaintiff in San Francisco, from defendants' planning the intentional acts and civil wrongs done in furtherance of the agreement and common design to steal Plaintiff's savings, and to physically and emotionally injure Plaintiff.

32

Complaint
S.F. Superior Court

## COUNT THIRTEEN

### (For Declaratory Relief Against BOH and Does 30-50)

116.    Plaintiff realleges and incorporates the foregoing paragraphs.

117.    Plaintiff contends, and Defendant BOH disputes, that Defendant BOH's "Indemnification of Liability" signed by Plaintiff in San Francisco October 25, 2006, is null and void, and has no future, prospective effect on BOH's duty to pay Plaintiff's claim. While discovery and investigation continue, Plaintiff contends that the known, fatal defects of BOH's form, disputed by BOH, are as follows:

A.    There is no clear, positive and unequivocal assumption of liability by Plaintiff, set out with requisite specificity;

B.    There is no clear, unequivocal indemnification from BOH's own negligence, or any reference at all to negligence;

C.    There can be no indemnification against gross negligence, or by implication, intentional torts;

D.    The purported indemnification is strictly construed against the drafter, BOH;

E.    Ambiguities are construed against BOH, including the phrase "forgery dispute" which is capable of more than one meaning. The forgery dispute is between the public law enforcement agencies, and defendant Kaushal Niroula, as an official criminal matter. There is no forgery dispute between BOH and defendant Kaushal Niroula. There can be no forgery

Complaint
S.F. Superior Court

33

"dispute" between Plaintiff and BOH because Plaintiff did not forge her own checks.

F.    The Indemnification of Liability form attached at Exhibit "B" to this complaint was obtained by BOH through fraud, duress, undue influence, mistake, breach of fiduciary or quasi fiduciary-duty, bad faith, oppression, malice.

G.    The form is adhesive and unconscionable.

H.    The form violates statutes including Cal. U Com. Code 4-401.

I.    The form was contrary to a substantial public interest or gained through inequality of bargaining power.

J.    The form unfairly limited the obligations and liabilities of, or otherwise unfairly advantaged, BOH.

118.    Plaintiff has no speedy or adequate remedy at law to have her future rights determined as to the prospective effect of the indemnity form on her claim for reimbursement.

119.    Defendant BOH contends to the contrary and has refused to rescind or cancel its Indemnification of Liability. Exhibit B.

120.    An actual and justiciable controversy has arisen and now exists between the Plaintiff and the BOH defendants concerning the construction and interpretation of BOH's Indemnification of Liability form (Ex "B") in relation to the money owed to Plaintiff by defendant BOH, and the obligations of defendant BOH to pay the money due after its investigation. Plaintiff desires, and is

34

Complaint
S.F. Superior Court

entitled to, a judicial declaration by this court her rights and the obligations of the BOH defendants to pay her notwithstanding BOH's Indemnification of Liability form.

### COUNT FOURTEEN

#### (Rescission Against BOH And Does 30-50)

121.    Plaintiff realleges and incorporates the foregoing paragraphs.

122.    Plaintiff demanded rescission of the indemnification drafted by BOH on August 6, 2007. Plaintiff repeats the demand and urges that BOH's indemnification form (Ex "B") is void.

123.    Plaintiff made a mistake as to a basic assumption when she approved BOH's form of indemnification (Exhibit "B"), which had a material effect on the agreed exchange of performances, adverse to Plaintiff.

124.    At the time the indemnification was made, Plaintiff was not aware that she only had limited knowledge with respect to the facts to which the mistake related. Enforcement of the Indemnification of Liability form (Ex "B") would be unconscionable.

125.    Plaintiff, by cooperating with BOH, at no time bore the risk of the mistakes that the deposits made to her San Francisco bank account in exchange for signing the indemnification would be dishonored, and/or that BOH had planned to destroy her claims (Exs A.1, A.4 and A.7), upon execution of the form (Ex B).

35

Complaint
S.F. Superior Court

126.    The deposit to Plaintiff's bank account in San Francisco by a BOH account holder (Niroula) and the continuing validity of her claims (A.1, A.4 and A.7) were material to the BOH Indemnification of Liability (Ex "B"). BOH refused, for example, to release funds needed to facilitate defendant Niroula's deposit, unless the form (Ex B) was signed by Plaintiff.

127.    BOH's Indemnification of Liability (Ex "B") should therefore be rescinded, and the outstanding claim by Plaintiff against BOH ordered paid. The Indemnification of Liability should be cancelled.

## COUNT FIFTEEN

### (Constructive Trust Against Defendant BOH and Does 30-50)

128.    Plaintiff realleges and incorporates the foregoing paragraphs.

129.    Defendant BOH has money belonging to Plaintiff to which it is not justly entitled.

130.    Defendant's duty is to retransfer the money to Plaintiff, who is entitled thereto to possession.

131.    Defendant BOH will be unjustly enriched if allowed to keep Plaintiff's money.

132.    A Constructive trust should be imposed on defendant's money and property, plus accrued interest.

## COUNT SIXTEEN

### (Equitable Lien Against Defendant BOH and Does 30-56)

133.    Plaintiff realleges and incorporates the foregoing paragraphs.

36

Complaint
S.F. Superior Court

134. Defendant BOH owns property which may be reached by Plaintiff Hisamatsu as security on the ground that Defendant BOH will be unjustly enriched if allowed to retain the money.

135. An equitable lien should be imposed against Defendant BOH in favor of Plaintiff on the proceeds of all money taken by defendant.

## COUNT SEVENTEEN

### (Intentional Infliction Of Emotional Distress Against Defendants Kaushal Niroula, BOH and Does 1-50)

136. Plaintiff realleges and incorporates the foregoing paragraphs.

137. Defendants' conduct in San Francisco as hereinabove alleged was so extreme as to exceed all bounds of conduct usually tolerated in a civilized community.

138. Defendants engaged in conduct intended to inflict injury on Plaintiff, or they engaged in the conduct with reckless disregard of the probability that Plaintiff would suffer emotional distress, or with the realization that injury to Plaintiff would result.

139. Defendants' acts were outrageous, and were a substantial factor in causing Plaintiff's severe emotional distress.

140. The intentional or reckless extreme and outrageous and outrageous conduct by defendants directly and proximately caused Plaintiff to suffer emotional distress or extreme emotional distress, all to her damage as aforesaid.

37

Complaint
S.F. Superior Court

**COUNT EIGHTEEN**

**(Wrongful Withholding Of Funds After Forged Checks Were Drawn On Plaintiff's Account - Against Defendant BOH and Does 30-50)**

141.    Plaintiff realleges and incorporates the foregoing paragraphs.

142.    Defendants honored forged checks against Plaintiff's new BOH personal checking account, totaling $508,000.

143.    Defendants violated the requirement of honesty in fact and lacked good faith, and they failed to use ordinary care by honoring three forged checks on a new account; and, by disclaiming responsibility for BOH's lack of good faith or failure to exercise due care, or by an attempt to limit the measure of damages for the lack or failures, all in violation of Cal U. Com Code §4103.

**COUNT NINETEEN**

**(Fraud Based On Promises Made Without Intention To Perform - Against Defendants  BOH and Does 28-45)**

144.    Plaintiff realleges and incorporates the foregoing paragraphs.

145.    On October 3, 2006, BOH made the following promises, important to her claim against BOH for losses from unauthorized transactions, injuring Plaintiff.

1.    "the Bank will investigate your Claim" (Ex. A.1 ¶2).

2.    "Payment of you Claim is contingent upon the results of the Banks' investigation". Id.

3.    The Bank's decision to pay or not To Pay your claim will be made

38

Complaint
S.F. Superior Court

in light of all the facts and circumstances after completion of its investigation". Id.

146.    At the time BOH made these promises it had no intention of performing them.

147.    The promises were made by BOH with the intent to induce Plaintiff into relying on them and taking no action against the BOH or defendant Kaushal Niroula, to recover the $508,000 in unauthorized debits from Plaintiff's personal checking account.

148.    The unauthorized transactions at all times entitled Plaintiff to the full benefits of the claims (Exts A.1 – A.9), but BOH, despite its promises to the contrary, had never at any time intended to abide by the promises; and in fact, consistently refused to do so. BOH's conduct after the promises show BOH had no intent to perform according to the promises, when made.

149.    Plaintiff, at the time these promises were made, and at the time Plaintiff reasonably relied on said promises, she forewent taking actions herein alleged, Plaintiff was ignorant of Defendant BOH's secret intention not to perform, and took no rapid action to recover over $250,000 of her own money, sitting in co-defendant Kaushal Niroula's BOH account.

150.    Plaintiff Hisamatsu reasonably and justifiably relied on BOH's promises in that BOH employees responsible for these promises represented themselves as security experts and former law enforcement agents in close contact with law enforcement agencies. Further, Plaintiff could not, in the

39

Complaint
S.F. Superior Court

exercise of reasonable diligence, have discovered Defendant BOH's secret intention not to perform its promises.

151.    In reliance on the aforesaid promises of Defendant, Plaintiff did not take immediate legal action against defendants BOH and Niroula to recover her money. If Plaintiff had known the actual intention of BOH not to investigate the claim and pay the claim after completion of the investigation, she would have not been lulled into trusting the bank to complete an investigation, and she would not have refrained from taking prompt legal action.

152.    Defendant BOH failed to perform the promised act; failed to abide by its promises, and instead failed to investigate whether the transactions were authorized under Hawaii Revised Statutes (HRS) §490:4-401. BOH, failing to investigate this issue, failed to abide by its promise to pay the claim. But for these failures, Plaintiff would have taken prompt legal action against defendants BOH and Niroula. Her reliance on defendants' promise was a substantial factor in directly and proximately causing harm to Plaintiff, all to her damage as aforesaid.

## COUNT TWENTY

### (Fraud Based On Partial Disclosure And Concealment Of Material Facts Against BOH And Does 30-50)

153.    Plaintiff realleges and incorporates the foregoing paragraphs.

154.    When Defendant intentionally made the foregoing promises to Plaintiff Hisamatsu together with the other representations in the claim forms

40

Complaint
S.F. Superior Court

(Ex A.1, A.4 and A.7) Plaintiff signed on October 3, 2006, in Honolulu. Defendant intentionally failed to disclose important facts that Plaintiff did not know and could not have reasonably discovered. Defendant actively suppressed or concealed facts which materially qualified BOH statements in its claim forms; and which were within BOH's exclusive knowledge, unknown to Plaintiff Hisamatsu.

155.    Defendant BOH had a duty to make full disclosure of material facts because it made relevant disclosures which were partial. Further, BOH was bound to disclose facts which were exclusively in its possession. Also, there was a wide inequality in bargaining power, English language ability, and knowledge between BOH and Plaintiff.

156.    Defendant BOH made representations on October 3, 2006, intending to deceive Plaintiff by concealing facts. BOH stated the truth so far as it went, but BOH knew or believed the statements were materially misleading. Because of BOH's failure to state additional or qualifying matters, Plaintiff relied on BOH's representations, and her reliance was justified.

157.    These facts, suppressed or concealed from Plaintiff in the claim forms (Ex A.1, A.4 and A.7), were likely to mislead Plaintiff for want of communication, and did in fact mislead her. Specifically, the BOH form asserted that payment of the claim was contingent on the BOH's investigation and that Plaintiff was required to cooperate with the bank. Plaintiff relied on BOH's deception and her reliance was reasonable under the circumstances.

41

Complaint
S.F. Superior Court

158.   BOH failed to reveal, and suppressed the material qualifying facts (1) that Plaintiff, as a victim of an unauthorized transaction based on forgery, was not required, as part of "cooperation" to negotiate directly with the perpetrator of the forged endorsement; and (2) that failure by the victim to negotiate in this manner would not result in denial or reduction of the claims with the bank for reimbursement.

159.   In light of other representations made by BOH security employees regarding the forgery perpetrator's willingness to repay Plaintiff, and regarding the forger's possible innocence, the concealed or suppressed facts relating to victim cooperation were highly misleading and material to the half-truths actually disclosed. Plaintiff's reliance on those half truths was justified.

160.   The concealed or suppressed facts made the disclosed information on the claim forms fraudulent and misleading. The same were made by Defendant BOH with the intent to induce Plaintiff to act in the matter herein alleged in justified reliance thereon. Defendant's concealments were a substantial factor in directly and proximately causing harm to Plaintiff, all to her damage as aforesaid.

161.   Plaintiff, at the time of BOH's failures to disclose, BOH's concealments and suppression of material facts (and, at the time Plaintiff took actions herein alleged) was ignorant of the existence of the facts defendant suppressed and failed to disclose. If Plaintiff had been aware of the existence of the facts not disclosed by defendant BOH, Plaintiff would not have attempted to

42

Complaint
S.F. Superior Court

recover her family's stolen savings directly from the identity thief and forger, defendant Niroula.

162.    Plaintiff, a homemaker and mother of two from Japan, had no experience or ability to understand that she need not meet with a dangerous criminal who forged her checks, or attempt to negotiate with him. A reasonable person would have attached great importance in determining her choice of action once provided with the concealed facts, which were highly material and qualifying matters.

## COUNT TWENTY-ONE

### (Unfair Or Deceptive Trade Practices In Violation Of HRS §480-1 Et Seq – Against BOH and Does 28-50)

163.    Plaintiff realleges and incorporates the foregoing paragraphs.

164.    The foregoing activities by defendant BOH, a financial institution involved "conduct of any trade or commerce" within the ambit of Hawaii Revised Statutes (HRS) §480 et seq.

165.    Plaintiff is a claimant against BOH for recovery of losses from unauthorized transactions. She is therefore a consumer under HRS §480-1, and is authorized to bring suit pursuant to HRS §480-13.

166.    The foregoing practices by BOH were also unfair or deceptive acts or practices, and offended established public policy. The practices were also immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

43

Complaint
S.F. Superior Court

167.    BOH's unfair or deceptive acts directly and proximately caused damage to Plaintiff as aforesaid.

168.    The deceptive acts or practices by BOH and Does 28-50, supra all had the capacity to deceive Plaintiff; and did in fact cause, as a natural and probable result, Plaintiff to do those things she would otherwise not do; for example, negotiate with a check forger, thinking BOH required her to do so; and to sign BOH's "indemnification" form, which she reasonably believed had no effect on her claims (Exs A.1 – A.9) with BOH.

169.    The forgoing deceptive acts or practices are representations, omissions or practices likely to mislead consumers acting reasonably under the circumstances, including Plaintiff; particularly, as here, where the representations acts or practices are material.

### (ALTERNATIVE) COUNT TWENTY-TWO

#### (Against BOH and Does 30-50 For Negligent Misrepresentation)

170.    Plaintiff realleges and incorporates the foregoing paragraphs.

171.    False information was supplied to Plaintiff by BOH, as stated above, of important facts. The concealments which made disclosed facts fraudulent were made as a result of the failure to exercise reasonable care or competence in communicating the information, and defendants had no reasonable grounds for believing the representations true when made.

44

Complaint
S.F. Superior Court

172. Plaintiff, as the person for whom the information was supplied suffered the loss, and defendants intended that Plaintiff rely on the misrepresentations or concealments of important facts.

173. Plaintiff reasonably relied upon the half-truths which were as fraudulent as whole lies.

174. The false information was a substantial factor in causing harm to Plaintiff, directly and proximately caused damages to Plaintiff as aforesaid.

## COUNT TWENTY-THREE

**(Intentional Infliction Of Emotional Distress Against All Defendants)**

175. Plaintiff realleges and incorporates the foregoing paragraphs.

176. Defendants' conduct with respect to the claims (Exs A.1, A.4 and A.7) as hereinabove alleged was so extreme as to exceed all bounds of conduct usually tolerated in a civilized community.

177. Defendants engaged in conduct intended to inflict injury, or they engaged in the conduct with reckless disregard of the probability that Plaintiff would suffer emotional distress, or with the realization that injury to Plaintiff would result.

178. Defendants' acts were outrageous, and were a substantial factor in causing Plaintiff's severe emotional distress.

179. The intentional or reckless extreme and outrageous and outrageous conduct by defendants directly and proximately caused Plaintiff to suffer

45

Complaint
S.F. Superior Court

emotional distress or extreme emotional distress, all to her damage, as aforesaid.

### COUNT TWENTY-FOUR

#### (Gross Negligence Against Defendant BOH and Does 30-50)

180.    Plaintiff realleges and incorporates the foregoing paragraphs.

181.    Defendants' conduct demonstrated a want of even scant care, or an extreme departure of ordinary standards of conduct. At each turn, beginning with refusal to minimally compare the forged signature with Plaintiff's signature card in a new account, Defendant BOH and Does 30-50 displayed a reckless disregard, or positive, active, and absolute disregard for the consequences of their action; particularly with, as here, a new personal account opened by a foreigner, subjected to extremely large debits.

### (ALTERNATIVE) COUNT TWENTY-FIVE

#### (Negligence Against Defendant BOH and Does 30-50)

182.    Plaintiff realleges and incorporates the foregoing paragraphs.

183.    Defendants at all times herein mentioned owed a legal duty of due care or an obligation recognized by the law requiring them to conform to a certain standards of conduct of for the protection of bank customers against unreasonable risks.

184.    Defendants failed to conform to the standards of conduct and thereby breached their duty to Plaintiff.

46

Complaint
S.F. Superior Court



185.    The breach by defendants of the duty to conform to the standards of conduct imposed on banks confronted with forged checks and unauthorized transactions, as aforesaid directly and proximately caused the foregoing injury and damages to Plaintiff.

186.    Plaintiff suffered actual loss or damage as a result of defendants' breach, as set out above.

## COUNT TWENTY-SIX

### (Negligent Infliction Of Emotional Distress Against
### Defendant BOH and Does 30-50)

187.    Plaintiff realleges and incorporates the foregoing paragraphs.

188.    Defendant engaged in negligent conduct and willful violations of statutory standards, as aforesaid, causing substantial financial injury.

189.    Defendants' conduct and violations was a cause of serious emotional distress.

190.    The injury to Plaintiff's property was directly and proximately caused by defendants' conduct.

## COUNT TWENTY-SEVEN

### (Negligence Per Se Or Negligence Based On Statutory Violations Against
### Defendant BOH and Does 30-50)

191.    Plaintiff realleges and incorporates the foregoing paragraphs.

47

Complaint
S.F. Superior Court

192. At all times herein, Plaintiff and others so situated were persons for whose protection the foregoing statutes were adopted.

193. Defendant failed to exercise due care by violating the foregoing statutes of public entities; or, by failure to conform to the standard of care required in handling claims for unauthorized transactions based on forgery.

194. Plaintiff's injury, or actual loss or damage, as aforesaid, directly and proximately resulted from occurrences of the nature which said statutes or regulations were designed to avoid, and violation of the statute caused injury to Plaintiff, as aforesaid.

### COUNT TWENTY-EIGHT

### (Breach Of Fiduciary Or Quasi Fiduciary Duty- Against Defendant BOH and Does 30-50)

195. Plaintiff realleges and incorporates the foregoing paragraphs.

196. Defendants had fiduciary, or quasi fiduciary duties to Plaintiff, since the relationship — compounded by Plaintiff's claims for reimbursement — is characterized by public interest, and adhesion created by the special relationship.

197. Depositors, including Plaintiff reasonably expect a bank not to claim nonexistent legal defenses to avoid reimbursement when BOH debited $508,000.00 in three forged checks on Plaintiff's personal checking account only 32 days old at the time of the last forged check.

Complaint
S.F. Superior Court

48

198.    BOH and Does 30-50 failed to act as a reasonably careful bank, (entrusted with Plaintiff's funds and with a claim for reimbursement) would have acted in the same or similar circumstances.

199.    Defendants conduct was a substantial factor in causing Plaintiff's harm, directly and proximately causing her damages as aforesaid.

WHEREFORE, Plaintiff prays for relief and demands as follows:

1.    General, special and punitive damages in favor of Plaintiff, according to proof on counts 10, 17, 23, and 26 (personal injury);

2.    Declaratory relief (count 13);

3.    Injunctive relief (count 8 ¶97);

4.    That $508,000.00 withheld by Defendant Bank Of Hawaii (BOH) to be paid by BOH to Plaintiff, plus general damages of $2,500.000.00, with punitive damages according to proof, on all but counts 10, 17, 23 and 26;

5.    That judgment be entered against Defendant Kaushal Niroula for $890,000.00 plus general damages of $2,500.000.00 and punitive damages according to proof, on all but counts 10, 17, 23 and 26;

6.    Restitution (Count 8) (cumulative);

7.    Equitable liens should be imposed (counts 6, 9 and 16);

8.    Costs of suit and other expenses;

9.    For such other and further relief as the Court deems just.

49

Complaint
S.F. Superior Court

Dated:    Honolulu, Hawaii, August 10, 2007.


Stephen M. Shaw, Esq.
Attorney For Plaintiff
MEGUMI HISAMATSU

P.O. Box 2353
Honolulu, Hawaii  96804
Telephone:    (808) 521-0800
Facsimile:    (808) 531-2129
Email: shawy001@gmail.com


## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all causes of action in this suit.

DATED:  Honolulu, Hawaii, August 10, 2007.


Stephen M. Shaw, Esq.
Attorney For Plaintiff
MEGUMI HISAMATSU

P.O. Box 2353
Honolulu, Hawaii  96804
Telephone:    (808) 521-0800
Facsimile:    (808) 531-2129
Email: shawy001@gmail.com

Complaint
S.F. Superior Court

50



## CUSTOMER CLAIM FORM
## RELATING TO UNAUTHORIZED TRANSACTION(S)

**Claim.** The undersigned ("you") hereby makes a claim for reimbursement ("Claim") to Bank of Hawaii ("Bank") in the amount of $ 8,000.00, based upon the facts set forth in the attached Affidavit, signed under penalty of perjury.

**Investigation.** The Bank takes each Claim of an unauthorized transaction very seriously. Based upon your signed Affidavit, the Bank will investigate your Claim. Payment of your Claim is contingent upon the results of the Bank's investigation. You understand that until the Bank completes its investigation, it expressly reserves all of its rights and defenses. By accepting your Claim and supporting Affidavit, the Bank makes no promise to pay the Claim or any portion of it. The Bank's decision to pay or not pay your Claim will be made in light of all the facts and circumstances after completion of its investigation.

**Your Cooperation.** By submitting this Claim to the Bank, you agree to fully cooperate with the Bank and law enforcement agencies by, among other things, testifying, declaring, deposing, and certifying to the truth of the facts in any investigation, other civil or criminal proceeding or trial relating to the Claim on your Affidavit. The Bank or police investigators may interview you or persons who might have knowledge of the unauthorized transaction or who may have had access to your account or your records. You may be asked to review documents to help identify the person(s) making or benefiting from the transaction. If you later become aware of any information that bears on the Claim or affects the accuracy of your Affidavit, you agree to immediately inform the Bank.

**Your Other Agreements.** You agree to indemnify the Bank against any claim, including attorneys' fees and costs arising out of your providing false or inaccurate information to the Bank. You agree that if you fail to cooperate as agreed above, you will immediately repay to the Bank all amounts you may have received from the Bank in connection with the Claim, and all attorneys' fees and related costs that may be incurred by the Bank in recovering such amounts. You understand that the Bank intends to fully cooperate with law enforcement agencies in connection with the matters set forth in your Affidavit. You acknowledge that the Bank will provide law enforcement agencies with information about your account(s) described in your Affidavit, including, without limitation, statements, checks, similar items and other account records. You consent to the disclosure of all such information.

**Notice of Bank's Intent to Prosecute.** The Bank will seek prosecution to the fullest extent allowed by law of any person found to have made the unauthorized transaction reported by you in the Affidavit, regardless of that person's relationship to you. A person found guilty of committing forgery in the first degree could be punished by imprisonment up to ten years.

Please also be advised that any person found guilty of having filed a false Affidavit with the Bank may be charged with false reporting. False reporting is a crime punishable by imprisonment up to one year or a fine of up to $2,000.00. The Bank will seek prosecution to the fullest extent allowed by law of any person committing such an offense.

By signing below, you acknowledge that you have read and understand the foregoing.

Dated: _____

Claimant _____

Print Name: **Megumi Hiramatsu**

Company/Title (if applicable): _____

MSC-2160_E (Rev 7-2006)

**EXHIBIT** A.1

 

**CUSTOMER AFFIDAVIT**

**UNAUTHORIZED TRANSACTION**

State of Hawaii                                        }
                                                       } SS.
City and County of Honolulu                            }

Affiant, being duly sworn, deposes and says:

1. My name is <u>Megumi Hisamatsu</u>.

2. I make this Affidavit upon personal knowledge and am competent to testify to the facts stated herein. I understand that if I am making this Affidavit on behalf of a corporation, other business or non-business entity, references herein to "I", "me" or "my" shall refer to the entity, as well as to me individually. I am authorized to act on behalf of such entity.

3. My Address is <u>1-6-25-501 Bandi-Higashi, Sumiyoshi Osaka 558-0056, Japan</u>

4. I can be reached at the following telephone numbers:
   Business: _____ Home: _____ Mobile: _____

5. I make this Affidavit in support of a Claim for $ <u>8,000.00</u> submitted by me on Bank of Hawaii's Customer Claim Form. I have read and understand the provisions of the Customer Claim Form, including the "Notice of Bank's Intent to Prosecute" printed above my signature thereon.

6. I am (check appropriate box) ☒ an owner of ☒ an authorized signer on BOH Account No. <u>0002-937182</u> (the "Account") held in the name(s) of <u>Megumi Hisamatsu</u>.

   ☐ Check here if multiple accounts are being reported and list on an attached separate sheet. The term "Account" as used in this Affidavit shall be deemed to refer to all accounts listed.

7. I have examined the Item(s) described below (or listed on separate sheet).
   Item No. <u>101</u> Original Date <u>8/24/2006</u> Original Amount $ <u>8,000.00</u>
   Original Payee <u>Kaushal Niroula</u>

   ☐ Check here if multiple items are being reported and list on an attached separate sheet, with the above information for each item. The term "Item" as used in this Affidavit shall be deemed to refer to all items listed.

8. Based on my examination of the Item, I state (check appropriate boxes):

   ☒ Forged signature. The Item is a forgery and was not signed by me or any authorized signer on the Account.

   ☐ Forged Endorsement. I am the payee of the Item. The Item was not endorsed by me or anyone authorized by me.

   ☐ Alteration. The Item was altered after I completed and signed it, without my permission or the permission of any authorized signer on the account. The ☐ amount ☐ date ☐ payee was altered.
   The original information on the Item was ☐ amount $ _____ ☐ date _____ ☐ payee _____.

MSC-2180_E (Rev 7-2005)

**EXHIBIT** <u>A. 2</u>



☐ Counterfeit. The Item is a counterfeit, and it was not signed or authorized by me or by any authorized signer on the Account.

☐ Unauthorized Remotely Created Checks. The Item is defined as a check that was not created by the paying bank and that does not bear a hand written signature purporting to be the signature of the person whose account the check is drawn on. It may also be known as a telecheck, preauthorized draft, and/or paper draft.

The Item is an unsigned check purporting to have been authorized by me or by an authorized signer on the Account. I did not authorize the issuance of the check in the amount stated so the payee stated on the check.

☐ Other unauthorized transaction. Describe: _____

9.  I have received no benefit, directly or indirectly, by reason of payment of the Item. No part of the funds paid on the Item was applied to my benefit or on my behalf.

10.  I have not subsequently ratified or approved the payment of the Item.

I believe that the forged signature/forged endorsement/alteration/counterfeit/unauthorized remotely created check was made by <u>Kaushal Niroula</u> whose address is: <u>Unknown at this time</u>, _____ under the following circumstance (Please describe in detail):

11.  I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.

     Further affiant sayeth not.

                                                          _____
                                                                  Affiant's Signature

Subscribed and sworn to me on this

_3rd_ day of _October_

_____
Notary Public

_Carol Y. Suzuki_
Print Name

My commission expires _Aug. 9, 2009_

LS.

EXHIBIT _A.3_

 

## CUSTOMER CLAIM FORM
### RELATING TO UNAUTHORIZED TRANSACTION(S)

**Claim.** The undersigned ("you" ) hereby makes a claim for reimbursement ("Claim") to Bank of Hawaii ("Bank") in the amount of $ 95,000.00. based upon the facts set forth in the attached Affidavit, signed under penalty of perjury.

**Investigation.** The Bank takes each Claim of an unauthorized transaction very seriously. Based upon your signed Affidavit, the Bank will investigate your Claim. Payment of your Claim is contingent upon the results of the Bank's investigation. You understand that until the Bank completes its investigation, it expressly reserves all of its rights and defenses. By accepting your Claim and supporting Affidavit, the Bank makes no promise to pay the Claim or any portion of it. The Bank's decision to pay or not pay your Claim will be made in light of all the facts and circumstances after completion of its investigation.

**Your Cooperation.** By submitting this Claim to the Bank, you agree to fully cooperate with the Bank and law enforcement agencies by, among other things, testifying, declaring, deposing, and certifying to the truth of the facts in any investigation, other civil or criminal proceeding or trial relating to the Claim on your Affidavit. The Bank or police investigators may interview you or persons who might have knowledge of the unauthorized transaction or who may have had access to your account or your records. You may be asked to review documents to help identify the person(s) making or benefiting from the transaction. If you later become aware of any information that bears on the Claim or affects the accuracy of your Affidavit, you agree to immediately inform the Bank.

**Your Other Agreements.** You agree to indemnify the Bank against any claim, including attorneys' fees and costs arising out of your providing false or inaccurate information to the Bank. You agree that if you fail to cooperate as agreed above, you will immediately repay to the Bank all amounts you may have received from the Bank in connection with the Claim, and all attorneys' fees and related costs that may be incurred by the Bank in recovering such amounts. You understand that the Bank intends to fully cooperate with law enforcement agencies in connection with the matters set forth in your Affidavit. You acknowledge that the Bank will provide law enforcement agencies with information about your account(s) described in your Affidavit, including, without limitation, statements, checks, similar items and other account records. You consent to the disclosure of all such information.

**Notice of Bank's Intent to Prosecute.** The Bank will seek prosecution to the fullest extent allowed by law of any person found to have made the unauthorized transaction reported by you in the Affidavit, regardless of that person's relationship to you. A person found guilty of committing forgery in the first degree could be punished by imprisonment up to ten years.

Please also be advised that any person found guilty of having filed a false Affidavit with the Bank may be charged with false reporting. False reporting is a crime punishable by imprisonment up to one year or a fine of up to $2,000.00. The Bank will seek prosecution to the fullest extent allowed by law of any person committing such an offense.

By signing below, you acknowledge that you have read and understand the foregoing.

Dated: _____ , _____ , _____

Claimant _____

Print Name: Meyumi Hisamatsu

Company/Title (if applicable): _____

_____

MSC-2180_E (Rev 7-2006)

## EXHIBIT A.4

 

## CUSTOMER AFFIDAVIT

## UNAUTHORIZED TRANSACTION

State of Hawaii                        }

                                     } SS.

City and County of Honolulu        }

Affiant, being duly sworn, deposes and says:

1. My name is <u>Megumi Hisamatsu</u>.

2. I make this Affidavit upon personal knowledge and am competent to testify to the facts stated herein. I understand that if I am making this Affidavit on behalf of a corporation, other business or non-business entity, references herein to "I", "me" or "my" shall refer to the entity, as well as to me individually. I am authorized to act on behalf of such entity.

3. My Address is <u>1-6-25-501 Bandi-Higashi, Sumiyoshi Osaka 558-0056, Japan</u>

4. .
   I can be reached at the following telephone numbers:
   Business: _____ Home: _____ Mobile: _____

5. I make this Affidavit in support of a Claim for $ <u>95,000.00</u> submitted by me on Bank of Hawaii's Customer Claim Form. I have read and understand the provisions of the Customer Claim Form, including the "Notice of Bank's Intent to Prosecute" printed above my signature thereon.

6. I am (check appropriate box) ☒ an owner of ☒ an authorized signer on
   BOH Account No. <u>0002-937182</u> (the "Account") held in the name(s) of <u>Megumi Hisamatsu</u>.

   ☐ Check here if multiple accounts are being reported and list on an attached separate sheet. The term "Account" as used in this Affidavit shall be deemed to refer to all accounts listed.

7. I have examined the Item(s) described below (or listed on separate sheet).
   Item No. <u>102</u> Original Date <u>8/29/2006</u> Original Amount $ <u>95,000.00</u>
   Original Payee <u>Kaushal Niroula</u>

   ☐ Check here if multiple items are being reported and list on an attached separate sheet, with the above information for each item. The term "Item" as used in this Affidavit shall be deemed to refer to all items listed.

8. Based on my examination of the Item, I state (check appropriate boxes):

   ☒ Forged signature. The Item is a forgery and was not signed by me or any authorized signer on the Account.

   ☐ Forged Endorsement. I am the payee of the Item. The Item was not endorsed by me or anyone authorized by me.

   ☐ Alteration. The Item was altered after I completed and signed it, without my permission or the permission of any authorized signer on the account. The ☐ amount ☐ date ☐ payee was altered.
   The original information on the Item was ☐ amount $ _____ ☐ date _____ ☐ payee _____.

MSC-2180_E (Rev 7-2006)

## EXHIBIT A.5

☐ Counterfeit. The Item is a counterfeit; and it was not signed or authorized by me or by any authorized signer on the Account.

☐ Unauthorized Remotely Created Checks. The Item is defined as a check that was not created by the paying bank and that does not bear a hand written signature purporting to be the signature of the person whose account the check is drawn on. It may also be known as a telecheck, preauthorized draft, and/or paper draft.

The Item is an unsigned check purporting to have been authorized by me or by an authorized signer on the Account. I did not authorize the issuance of the check in the amount stated to the payee stated on the check.

☐ Other unauthorized transaction. Describe: _____

9.  I have received no benefit, directly or indirectly, by reason of payment of the Item. No part of the funds paid on the Item was applied to my benefit or on my behalf.

10. I have not subsequently ratified or approved the payment of the Item.

I believe that the forged signature/forged endorsement/alteration/counterfeit/unauthorized remotely created check was made by Kaushal Niroula whose address is: Unknown at this time, _____ under the following circumstance (Please describe in detail):




11. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.

   Further affiant sayeth not.

                                        _____
                                        Affiant's Signature


Subscribed and sworn to me on this

3rd  day of  October  2006
_____
Notary Public
   Carol Y. Suzuki
_____
Print Name

My commission expires  Aug. 9, 2009

EXHIBIT A.6

 

## CUSTOMER CLAIM FORM
## RELATING TO UNAUTHORIZED TRANSACTION(S)

**Claim.** The undersigned ("you") hereby makes a claim for reimbursement ("Claim") to Bank of Hawaii ("Bank") in the amount of $ 405,000.00, based upon the facts set forth in the attached Affidavit, signed under penalty of perjury.

**Investigation.** The Bank takes each Claim of an unauthorized transaction very seriously. Based upon your signed Affidavit, the Bank will investigate your Claim. Payment of your Claim is contingent upon the results of the Bank's investigation. You understand that until the Bank completes its investigation, it expressly reserves all of its rights and defenses. By accepting your Claim and supporting Affidavit, the Bank makes no promise to pay the Claim or any portion of it. The Bank's decision to pay or not pay your Claim will be made in light of all the facts and circumstances after completion of its investigation.

**Your Cooperation.** By submitting this Claim to the Bank, you agree to fully cooperate with the Bank and law enforcement agencies by, among other things, testifying, declaring, deposing, and certifying to the truth of the facts in any investigation, other civil or criminal proceeding or trial relating to the Claim on your Affidavit. The Bank or police investigators may interview you or persons who might have knowledge of the unauthorized transaction or who may have had access to your account or your records. You may be asked to review documents to help identify the person(s) making or benefiting from the transaction. If you later become aware of any information that bears on the Claim or affects the accuracy of your Affidavit, you agree to immediately inform the Bank.

**Your Other Agreements.** You agree to indemnify the Bank against any claim, including attorneys' fees and costs arising out of your providing false or inaccurate information to the Bank. You agree that if you fail to cooperate as agreed above, you will immediately repay to the Bank all amounts you may have received from the Bank in connection with the Claim, and all attorneys' fees and related costs that may be incurred by the Bank in recovering such amounts. You understand that the Bank intends to fully cooperate with law enforcement agencies in connection with the matters set forth in your Affidavit. You acknowledge that the Bank will provide law enforcement agencies with information about your account(s) described in your Affidavit, including, without limitation, statements, checks, similar items and other account records. You consent to the disclosure of all such information.

**Notice of Bank's Intent to Prosecute.** The Bank will seek prosecution to the fullest extent allowed by law of any person found to have made the unauthorized transaction reported by you in the Affidavit, regardless of that person's relationship to you. A person found guilty of committing forgery in the first degree could be punished by imprisonment up to ten years.

Please also be advised that any person found guilty of having filed a false Affidavit with the Bank may be charged with false reporting. False reporting is a crime punishable by imprisonment up to one year or a fine of up to $2,000.00. The Bank will seek prosecution to the fullest extent allowed by law of any person committing such an offense.

By signing below, you acknowledge that you have read and understand the foregoing.

Dated: _____, _____, _____

_____
Claimant

Print Name: __Megumi Hisamatu__

Company/Title (if applicable):

_____

_____

MSC-2180_E (Rev 7-2005)

## EXHIBIT A.7

**CUSTOMER AFFIDAVIT**

**UNAUTHORIZED TRANSACTION**

State of Hawaii                                    }
                                                  } SS.
City and County of Honolulu                       }

Affiant, being duly sworn, deposes and says:

1.  My name is Megumi Hisamatsu.

2.  I make this Affidavit upon personal knowledge and am competent to testify to the facts stated herein. I understand that if I am making this Affidavit on behalf of a corporation, other business or non-business entity, references herein to "I", "me" or "my" shall refer to the entity, as well as to me individually. I am authorized to act on behalf of such entity.

3.  My Address is 1-6-25-501 Bandi-Higashi, Sumiyoshi Osaka 558-0056, Japan

4.  .
    I can be reached at the following telephone numbers:
    Business: _____ Home: _____ Mobile: _____

5.  I make this Affidavit in support of a Claim for $ 405,000.00 submitted by me on Bank of Hawaii's Customer Claim Form. I have read and understand the provisions of the Customer Claim Form, including the "Notice of Bank's Intent to Prosecute" printed above my signature thereon.

6.  I am (check appropriate box) ☒ an owner of ☒ an authorized signer on BOH Account No. 0002-937182 (the "Account") held in the name(s) of Megumi Hisamatsu.

    ☐ Check here if multiple accounts are being reported and list on an attached separate sheet. The term "Account" as used in this Affidavit shall be deemed to refer to all accounts listed.

7.  I have examined the Item(s) described below (or listed on separate sheet).
    Item No. 105 Original Date 9/18/2006 Original Amount $ 405,000.00
    Original Payee Kaushal Niroula

    ☐ Check here if multiple items are being reported and list on an attached separate sheet, with the above information for each item. The term "Item" as used in this Affidavit shall be deemed to refer to all items listed.

8.  Based on my examination of the Item, I state (check appropriate boxes):

    ☒ Forged signature. The Item is a forgery and was not signed by me or any authorized signer on the Account.

    ☐ Forged Endorsement. I am the payee of the Item. The Item was not endorsed by me or anyone authorized by me.

    ☐ Alteration. The Item was altered after I completed and signed it, without my permission or the permission of any authorized signer on the account. The ☐ amount ☐ date ☐ payee was altered.
    The original information on the Item was ☐ amount $ _____ ☐ date _____ ☐ payee _____.

MSC-2180_E (Rev 7-2006)

**EXHIBIT** A.8




☐ Counterfeit. The Item is a counterfeit, and it was not signed or authorized by me or by any authorized signer on the Account.

☐ Unauthorized Remotely Created Checks. The Item is defined as a check that was not created by the paying bank and that does not bear a hand written signature purporting to be the signature of the person whose account the check is drawn on. It may also be known as a telecheck, preauthorized draft, and/or paper draft.

The Item is an unsigned check purporting to have been authorized by me or by an authorized signer on the Account. I did not authorize the issuance of the check in the amount stated to the payee stated on the check.

☐ Other unauthorized transaction. Describe: _____

9. I have received no benefit, directly or indirectly, by reason of payment of the Item. No part of the funds paid on the Item was applied to my benefit or on my behalf.

10. I have not subsequently ratified or approved the payment of the Item.

I believe that the forged signature/forged endorsement/alteration/counterfeit/unauthorized remotely created check was made by Kaushal Niroula whose address is: Unknown at this time, _____ under the following circumstance (Please describe in detail):

11. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.

   Further affiant sayeth not.

                                   _____
                                   Affiant's Signature

Subscribed and sworn to me on this

3rd day of _____October 2006_____

_____
Notary Public
Carol Y. Suzuki
_____
Print Name

My commission expires __Aug. 9, 2009__

L.S.

MISC-2160_E (Rev 7-2006)

EXHIBIT A.9

## INDEMNIFICATION OF LIABILITY

I, _Megumi Hisamatsu_, for reasons best known to myself, wish to withdraw my forgery dispute regarding the following checks drawn on Bank of Hawaii account #0002-937182.

| Check # | Date | Payee | Amount |
|---------|------|-------|--------|
| 101 | 08/24/2006 | Kaushal Niroula | $8,000 |
| 102 | 08/29/2006 | Kaushal Niroula | $595,000 |
| 105 | 09/18/2006 | Kaushal Niroula | $405,000 |

I, _Megumi Hisamatsu_, also agree that funds ( $257,546.25 ) held in suspense from Bank of Hawaii account #0002-933063, belonging to Kaushal Niroula, as a result of the forgery dispute shall be released to Kaushal Niroula, upon signing this agreement.

I, _Megumi Hisamatsu_, agree to indemnify and hold harmless the Bank of Hawaii, and its officers, directors, employees, parent companies, affiliates, successors, assigns, and agents from and against any and all losses, damages, costs and reasonable attorney fees resulting from or related to claims, liabilities, suits, actions, or proceedings arising out of the Bank of Hawaii having paid the funds to Kaushal Niroula at Megumi Hisamatsu's request.

Date: _10 / 25 / 06_

_____ Signature

_MEGUMI HISAMATSU_ Please print Name

State of California County of
_SAN FRANCISCO_
Subscribed and sworn to (or affirmed)
before me on this _25_ day of _OCT_, 20 _06_ by
_MEGUMI HISAMATSU_
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.

Signature _____

(Seal)

KEVIN A. MENDEZ
COMM. # 1434517
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXP. SEPT. 8, 2007

TOTAL P.02

## EXHIBIT B