BUCHALTER NEMER
A Professional Corporation
    JAMES B. WRIGHT (#63241)
    MIA S. BLACKLER (#188112)
333 Market Street, 25th Floor
San Francisco, CA  94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
jwright@buchalter.com
mblackler@buchalter.com

Attorneys for Defendant
BANK OF HAWAII

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGUMI HISAMATSU,<br><br>    Plaintiff,<br><br>vs.<br><br>KAUSHAL NIROULA; BANK OF HAWAII, A Corporation; DOES 1-60, inclusive,<br><br>    Defendants. | CASE NO. 3:07-CV-04371-JSW<br><br>**DEFENDANT BANK OF HAWAII'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT AND MOTION FOR A MORE DEFINITE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(FRCP 12(b)(6) AND 12(e))**<br><br>Hearing:  November 30, 2007<br>Time:  9:00 a.m.<br>Judge:  Hon. Jeffrey S. White<br>Courtroom:  2, 17th floor |

## TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on November 30, 2007 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Hon. Jeffrey S. White in Courtroom 2, 17th Floor of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA, 94102, defendant Bank of Hawaii will and hereby does move to dismiss the Complaint and for a more definite statement of claims, respectively, pursuant to Rule 12(b)(6) and Rule 12(e) of the Federal Rules

1   of Civil Procedure.  This Motion is based on this Notice, on the Memorandum of Points and

2   Authorities attached hereto, on the Declaration of Scott I. Takahashi, on all other pleadings on file

3   with the Court in this matter, and on any oral argument and evidence that the Court may consider

4   at the hearing on these alternative motions.

5

6   DATED: September 19, 2007

    BUCHALTER NEMER
    A Professional Corporation

7

8   By: _____

9                James B. Wright
                 Attorneys for Defendant
10               BANK OF HAWAII

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................1

II.   FACTUAL SUMMARY .............................................................................2

III.  THE COURT SHOULD DISMISS ALL CLAIMS AGAINST BOFH ...........................5

      A.  The Legal Standards Applicable To A Rule 12(b)(6) Motion ..................5

      B.  Choice of Law.............................................................................5

      C.  Plaintiff Ratified The Alleged Forgeries......................................6

      D.  Plaintiff's Claims Are Absolutely Precluded By UCC § 4406(f)............7

      E.  Plaintiff's Fraud and Negligent Misrepresentation Claims (Counts 13, 14, 21, 22 and 24) Fail As A Matter Of Law ..........................................9

          1.  Plaintiff's Relationship With BofH Is Contractual, Not Duty Based ..........9

          2.  Plaintiff Failed To Plead A Fraud Claim With Particularity ....................10

              a.  Plaintiff Did Not Adequately Plead That BofH Misrepresented or Failed to Disclose Any Material Fact ..............11

              b.  As A Matter Of Law, Plaintiff Did Not Justifiably Rely On BofH's Alleged Misrepresentations................................................12

      F.  Plaintiff Failed to Allege Facts Sufficient to State A Claim for Rescission (Count 16)...............................................................................13

      G.  Plaintiff's Negligence, Breach of Fiduciary Duty and Wrongful Withholding of Funds Claims (Counts 20, 26, 27, 29 and 30) Should Be Dismissed Because BofH Did Not Owe Plaintiff a Legal Duty Outside The Duties Set Forth In The UCC.....................................................................14

      H.  Plaintiff's Civil Conspiracy Claim (Count 12) Fails As A Matter Of Law ...........15

      I.  Plaintiff Cannot State A Claim For Intentional or Negligent Infliction of Emotional Distress (Counts 10, 19, 25 and 28) ........................................16

          1.  Plaintiff Is Not Entitled To Emotional Distress Damages That Arise Solely From Economic Injury........................................................17

          2.  Plaintiff Cannot Plead That BofH's Conduct Was Outrageous Or Beyond All Bounds Of Decency..................................................19

      J.  Plaintiff's Constructive Trust Claim (Count 17) Should Be Dismissed...............19

      K.  Plaintiff's Equitable Lien Claim (Count 18) Should Be Dismissed ..................20

      L.  Declaratory Relief Is Not Available (Count 15).......................................20

      M.  Plaintiff Has Failed to State a Claim for Tort in Essence (Count 11)..................21

      N.  Plaintiff's Unfair Business Practices Claims (Counts 8 and 23) Fail Under Both Hawaii And California Law ......................................................22

      O.  Plaintiff's Unfair Competition Claims Are Uncertain ..............................24

IV.   CONCLUSION............................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*117 Sales Corp. v. Olsen*
   80 Cal.App.3d 645 (1978) ................................................................... 15

*Ackerman v. Northwestern Mutual Life Ins. Co.*
   172 F.3d 467 (7th Cir. 1999) .............................................................. 11

*Aehegma v. Aehegma*
   8 Haw. App. 215 (1990) ................................................................ 19, 20

*Ai v. Frank Hugg Agency*
   61 Haw. 607 (1980) ......................................................................... 22

*Ailetcher v. Beneficial Fin. Co. of Hawai`i*
   2 Haw. App. 301 (1981) .................................................................... 18

*Alcorn v. Anbro Engineering, Inc.*
   2 Cal.3d 493 (1970) ......................................................................... 17

*American States Ins. Co. v. Canyon Creek*
   786 F.Supp 821 (N.D. Cal. 1992) ....................................................... 18

*Anderson v. District Bd. of Trustees of Central Florida Comm. Coll.*
   77 F.3d 364 (11th Cir. 1996) ............................................................. 25

*Ballistreri v. Pacifica Police Dep't.*
   901 F.2d 696 (9th Cir. 1988) .............................................................. 5

*Beerman v. Toro Mfg. Corp.*
   1 Haw. App. 111 (1980) .................................................................... 18

*Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., v. Bank of Hawaii*
   69 Haw. 523 (1988) ......................................................................... 14

*Burgess v. Sup. Ct. (Gupta)*
   2 Cal.4th 1064 (1992) ....................................................................... 17

*Burlesci v. Petersen*
   68 Cal.App.4th 1062 (1998) ............................................................. 19

*California Ins. Guarantee Ass'n v. Sup. Ct.*
   231 Cal. App. 3d 1617 (1991) ........................................................... 20

*Careau v. Security Pacific*
   222 Cal.App.3d 1371 (1990) ............................................................. 10

*Chazen v. Centennial Bank*
   61 Cal.App.4th 532 (1998) ......................................................... 9, 10, 14

ii

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3    *Chicago Title Ins. Co. v. Great Western Fin. Corp.*
         69 Cal. 2d 305 (1966) ..................................................................................15

4
     *Chicago Title Ins. Co. v. Sup. Ct. (California Canadian Bank)*
5         174 Cal.App.3d 1142 (1985) ........................................................................22

6    *Christensen v. Sup. Ct. (Pasadena Crematorium of Altadena)*
         54 Cal.3d 868 (1991) ........................................................................16, 17, 19

7
     *Cieri v. Leticia Query Realty*
8         80 Haw. 54 (1995) .......................................................................................22

9    *Committee on Children's Television ("CCTV") v. General Foods Corp.*
         35 Cal. 3d 197 (1983) ..................................................................................23

10
     *Communist Party v. 522 Valencia, Inc.*
11        35 Cal.App.4th 980 (1995) ...........................................................................19

12   *Cooper v. Sup. Ct. (Cooper)*
         153 Cal.App.3d 1008 (1984) .........................................................................18

13
     *Cootey v. Sun Inv., Inc.*
14        68 Haw. 480 (Haw. 1986).............................................................................10

15   *County of Los Angeles v. Const. Lab.*
         137 Cal.App.4th 410 (2006) ..........................................................................20

16
     *Davis v. Wholesale Motors, Inc.*
17        86 Haw. 405 (1997) .....................................................................................23

18   *Dement v. Atkins & Ash*
         2 Haw. App. 324 (1981) ...............................................................................12

19
     *Desaigoudar v. Meyercord*
20        223 F.3d 1020 (9th Cir. 2000) ......................................................................11

21   *Donald M. Shaw vs. Santa Monica Bank*
         920 F. Supp. 1080 (Haw. 1996).....................................................................10

22
     *Downey v. Humphreys*
23        102 Cal.App.2d 323 (1951) ..........................................................................14

24   *Duplessis v. City of Los Angeles*
         32 Fed. Appx. 835 (9th Cir. 2002)..................................................................21

25
     *Ellis v. Crockett*
26        51 Haw. 45 (1969) .......................................................................................15

27   *Enoka v. AIG Hawai'i Ins. Co., Inc.*
         128 P.3d 850 (Haw. 2006).............................................................................16

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3      *Erlich v. Menezes*
           21 Cal.4th 543 (1999) ...................................................................................................18

4
       *Espresso Roma v. Bank of America, N.A.*
5          100 Cal.App.4th 525 (2002) ............................................................................................8

6      *Estrada v. Alvarez*
           38 Cal.2d 386 (1952) ....................................................................................................13

7
       *Famolare, Inc. v. Edison Bros. Stores, Inc.*
8          525 F.Supp. 940 (E.D. Cal. 1981) .................................................................................25

9      *Fidelity Financial Corp. v. Federal Home Loan Bank*
           792 F.2d 1432 (9th Cir. 1986) ..........................................................................................5

10
       *Foley v. Interactive Data Corp.*
11         47 Cal.3d 654 (1988) ....................................................................................................10

12     *FRA S.p.A. v. Surg-O-Flex of America*
           415 F.Supp. 421 (S.D.N.Y. 1927) ................................................................................24

13
       *Frederick v. Koziol*
14         727 F.Supp. 1019 (E.D. Va. 1990) ...............................................................................25

15     *General of America Ins. Co. v. Lilly*
           258 Cal. App. 2d 465 (1968) .........................................................................................20

16
       *Girard v. Ball*
17         125 Cal.App.3d 772 (1981) ......................................................................................11, 12

18     *Global Network Communications, Inc. v. City of New York*
           458 F.3d 150 (2d Cir. 2006)..............................................................................................3

19
       *Golden v. Dungan*
20         20 Cal.App.3d 295 (1971) ......................................................................................1, 7, 16

21     *Graulty v. Bank of Hawaii (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*
           60 Bankr. 670 (D. Haw. 1986)........................................................................................14

22
       *Harrington v. Dept. of Corrections*
23         214 Cal.App.3d 394 (1989) ...........................................................................................21

24     *Honolulu Fed. Sav. & Loan Assn. v. Murphy*
           7 Haw. App. 196 (1988) ................................................................................................12

25
       *Hunter v. Up-Right, Inc.*
26         6 Cal.4th 1174 (1993) ....................................................................................................10

27     *In re U.S. Aggregates, Inc. v. Securities Litig.*
           235 F. Supp. 2d 1063 (N.D. Cal. 2002) ...........................................................................5

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Ishida v. Naumu*
  34 Haw. 363 (1937) ........................................................................... 13

*Izzy v. Mesquite Country Club*
  186 Cal.App.3d 1309 (1986) ............................................................. 12

*Johnson v. Assn of Apartment Owners of Ke Aina Kai Townhomes*
  2006 U.S. Dist. LEXIS 61106, *9 ......................................... 16, 23, 24

*Jones v. Community Redevelopment Agency*
  733 F.2d 646 (9th Cir. 1984) ............................................................ 24

*Kam Oi Lee v. Fong Wong*
  57 Haw. 137 (1976) .......................................................................... 19

*Kang v. Harrington,*
  59 Haw. 652 (1978) .......................................................................... 12

*Keech v. Berkeley Unified Sch. Dist.*
  162 Cal.App.3d 464 (1984) ............................................................... 14

*Khoury v. Maly's of Cal.*
  14 Cal. App. 4th 612 (1993) ............................................................. 23

*Kim v. Sumitomo Bank of Calif.*
  17 Cal.App.4th 974 (1993) ............................................................... 10

*Kruse v. Bank of America*
  202 Cal.App.3d 38 (1988) ................................................................ 18

*Kruser v. Bank of America NT&SA*
  230 Cal.App.3d 741 (1991) ................................................................. 8

*Lavie v. Procter & Gamble Co.*
  105 Cal.App.4th 496 (2003) ............................................................. 23

*Lavine v. Jessup*
  161 Cal.App.2d 59 (1958) ................................................................ 15

*Lawson v. Management Activities*
  69 Cal.App.4th 652 (1999) ............................................................... 17

*Lazar v. Sup. Ct. (Rykoff-Sexton, Inc.)*
  12 Cal.4th 631 (1996) ................................................................. 11, 12

*Lee v. Aiu*
  85 Haw. 19 (1997) ............................................................................ 17

*Mac v. Bank of America*
  76 Cal.App.4th 562 (1999) ................................................................. 8

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**BANK OF HAWAII'S NTC OF MTN AND MTN TO DISMISS – CASE NO. 3:07-CV-04371-JSW**

# TABLE OF AUTHORITIES
## (continued)

Page

*Macy's Calif. v. Sup. Ct. (Tussy-Garber)*
    41 Cal.App.4th 744 (1995) ................................................................................17

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*
    48 Cal.3d 583 (1989) ......................................................................................17

*Matsuura v. E.I. du Pont de Nemours and Co.*
    102 Haw. 149, 73 P.3d 687 (2003) .........................................................11, 13

*Maui Finance Co. v. Han*
    34 Haw. 226 (1937) ..........................................................................................6

*McCarthy v. Mayo*
    827 F.2d 1310 (9th Cir. 1987) ..........................................................................5

*McGlinchy v. Shell Chem. Co.*
    845 F.2d 802 (9th Cir. 1988) ............................................................................5

*Michael R. v. Jeffrey B.*
    158 Cal.App.3d 1059 (1984) ..........................................................................21

*Mitsui Manufacturers Bank v. Sup. Ct. (Squidco Corp. of America, Inc.)*
    212 Cal.App.3d 726 (1989) ............................................................................10

*Mock v. Castro*, Memorandum Opinion
    (Haw. Supreme Court, 9/3/04) Case No. 23474 .............................................15

*Moore v. Kayport Package Express, Inc.*
    885 F.2d 531 (9th Cir. 1989) ..........................................................................11

*Morse v. Crocker Nat'l Bank*
    142 Cal.App.3d 228 (1983) ............................................................................14

*Newman v. Smith*
    77 Cal. 22 (1888) ............................................................................................18

*Norwest Mortgage, Inc. v. Sup. Ct. (Conley)*
    72 Cal.App.4th 214 (1999) .............................................................................24

*Nymark v. Heart Fed'l Savings & Loan*
    231 Cal.App.3d 1089 (1991) ..........................................................................14

*O'Neil v. Spillane*
    45 Cal.App.3d 156 (1975) ..............................................................................18

*Ordizzi v. Bloomfield School District*
    26 Cal. App. 2d 123 (1966) ............................................................................13

*Parrino v. FHP, Inc.*
    146 F.3d 699 (9th Cir. 1998) ............................................................................3

## TABLE OF AUTHORITIES
### (continued)

Page

*People v. McKale*
    25 Cal. 3d 626 (1979) ...................................................................................23

*Peter W. v. San Francisco Unified Sch. Dist.*
    60 Cal.App.3d 814, 820 (1976) ...................................................................14

*Price v. Wells Fargo Bank*
    213 Cal.App.3d 465 (1989) ...........................................................................14

*Rakestraw v. Rodrigues*
    8 Cal.3d 67 (1972) ..........................................................................................7

*Rosenthal v. Great Western Fin. Sec. Corp.*
    14 Cal.4th 394 (1996) ...................................................................................12

*Rowland v. Paine Webber*
    4 Cal.App.4th 279 (1992) ........................................................................12, 13

*Roy Supply v. Wells Fargo*
    39 Cal.App.4th 1051 (1995) ........................................................................8, 9

*Shoppe v. Gucci Am., Inc.*
    94 Haw. 368 (2000) .......................................................................................11

*Sierra-Bay Fed. Land Bank Assn. v. Super. Ct.*
    227 Cal.App.3d 318 (1991) ...........................................................................21

*Simmons v. Peavy-Welsh Lumber Co.*
    113 F.2d 812 (5th Cir. 1940) ...........................................................................7

*Snodgrass v. Provident Life Ins. Co.*
    147 F.3d 1163 (9th Cir. 1998) .......................................................................20

*South Bay Bldg., Inc. v. Riviera Lend-Lease, Inc.*
    72 Cal.App.4th 1111 (1999) ..........................................................................21

*South Tahoe Gas Co. v. Hoffman Land Imp., Inc.*
    25 Cal.App.3d 750 (1972) .............................................................................11

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) ...........................................................................7

*Stansfield v. Starkey*
    220 Cal.App.3d 59 (1990) .............................................................................11

*State Rubbish etc. Assn. v. Silizinoff*
    38 Cal.2d 330 (1952) .....................................................................................16

*State v. U.S. Steel Corp.*
    82 Haw. 32, 51 (1996) ..................................................................................23

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Steckman v. Hart Brewing, Inc.*
    143 F.3d 1293 (9th Cir. 1998) ........................................................................7

*Stenseth v. Wells Fargo*
    41 Cal.App.4th 457 (1995) ...........................................................................9

*Stinson v. Home Ins. Co.*
    690 F. Supp. 882 (N.D. Cal. 1988) ..............................................................5

*Story Road Flea Market Inc. v. Wells Fargo Bank*
    42 Cal.App.4th 1733 (1995) .........................................................................8

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
    2 Cal.App.4th 153 (1991) ............................................................................12

*Taylor v. Mitzel*
    82 Cal.App.3d 665 (1978) ..........................................................................15

*Thompson v. Illinois Dept. of Prof. Reg.*
    300 F.3d 750 (7th Cir, 2002) .......................................................................7

*Tran v. State Farm Mut. Auto. Ins. Co.*
    999 F. Supp. 1369 (D. Haw. 1998) ............................................................16

*Twaite v. Allstate Ins. Co.*
    216 Cal.App.3d at 257 (1989) ...............................................................17, 19

*Uhlenbrock v. KeyBank*
    2001 Ohio App. LEXIS 16 at *8 ..................................................................6

*United Nat. Ins. Co. v. R&D Latex Corp.*
    242 F.3d 1102 (9th Cir. 2001) ....................................................................20

*Unruh v. Truck Ins. Exchange*
    7 Cal.3d 616 (1972) ....................................................................................16

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981) .........................................................................5

*Zanakis-Pico v. Cutter Dodge, Inc.*
    98 Haw. 309 (2002) ....................................................................................18

### STATUTES

18 U.S.C. § 1332 ...............................................................................................5

California Civil Code § 1689 ...........................................................................13

California Civil Code § 1691 ...........................................................................13

California Civil Code § 2223 ...........................................................................19

BANK OF HAWAII'S NTC OF MTN AND MTN TO DISMISS – CASE NO. 3:07-CV-04371-JSW

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3   California Civil Code § 2224 ..................................................................................19

4   California Civil Code § 3343 ..................................................................................18

5   California Penal Code § 476a ................................................................................21

6   California Penal Code § 518 ..................................................................................21

7   California's Business & Professions Code § 17200 ..........................................22, 23

8   Evid. Code § 669 ...................................................................................................21

9   HRS § 480 .............................................................................................................18

10  HRS § 480-1 ..........................................................................................................22

11  HRS § 480-13 ........................................................................................................18

12  HRS § 556-4 ..........................................................................................................14

13  HRS § 663-8.9 .......................................................................................................17

14  Uniform Commercial Code § 1103.......................................................................15

15  Uniform Commercial Code § 1103(b)....................................................................9

16  Uniform Commercial Code § 1201(41)...................................................................6

17  Uniform Commercial Code § 3403(a).....................................................................6

18  Uniform Commercial Code § 4102(b).....................................................................6

19  Uniform Commercial Code § 4103(a)..................................................................2, 8

20  Uniform Commercial Code § 4406(f)........................................................... passim

21

## OTHER AUTHORITIES

22  U.C.C. Comment 5 following sec. 4406, West's Annotated California Commercial Code, Vol.
    23B, p. 663 ...........................................................................................................9

23

## RULES

24

25  FRCP 9(b) ..............................................................................................................11

26  FRCP 12(b)(6) .........................................................................................................5

27  FRCP 12(e) ............................................................................................................24

    Ninth Circuit Rule 36-3 ..........................................................................................7

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

Northern District Court Local Rule 3-4(e)........................................................................7

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff is suing Bank of Hawaii ("BofH") claiming that it should pay her approximately $500,000 in forgery losses and another $3.0 million in general damages based on three checks drawn on her BofH account, even though she expressly authorized BofH to turn these funds over to the alleged forger. This motion to dismiss establishes not only that Plaintiff ratified the allegedly forged signatures, but that she also failed to notify BofH of her forgery claims in a timely manner, as a result of which all of her claims against BofH are expressly ***precluded*** by Uniform Commercial Code § 4406(f).

In her First Amended Complaint ("FAC"), Plaintiff claims she was defrauded, not once, but twice, by an apparent confidence man, Defendant Kaushal Niroula ("Niroula"), the alleged check forger. Plaintiff claims that Niroula initially stole three blank checks on her BofH account, that she later gave him another blank check at his request, and that he forged her signature on check numbers 101, 103, and 105. When she discovered this initial three-check fraud in early October 2006, she executed BofH Unauthorized Transaction affidavits (collective Exhibit "A" to the FAC) accusing Niroula of forging her signature. As a result of her sworn forgery claims, BofH froze about $257,000 in Niroula's BofH account.

With that background, Plaintiff alleges that Niroula defrauded her a second time, after she had sworn the forgery affidavits, when he told her that his sister had been kidnapped and was being held for ransom. It is almost beyond comprehension, but true as the FAC alleges, that in late October 2006, Plaintiff asked BofH to give Niroula her $257,000 in funds frozen in his account. Crucial to this motion is the undisputed fact that, to convince BofH to release her funds to Niroula, ***Plaintiff signed an Indemnification Agreement that expressly withdrew her claims that the signatures on her three checks were forgeries***. As a result, she ratified Naroula's signatures as authorized by her for the purpose of withdrawing funds from her BofH account. *See*, FAC, Exh. B.

Plaintiff apparently did nothing to recover her funds for ten months. Then, in August 2007, Plaintiff brought this suit against Niroula and BofH on a long laundry list of alleged tort

BN 1365099v9    1

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1    claims, including conspiracy, breach of fiduciary duty, fraud, negligence, tort in essence,

2    equitable lien, wrongful withholding of funds, intentional and negligent infliction of emotional

3    distress, constructive trust, declaratory relief, and for unfair business practices. Although Plaintiff

4    may have valid claims against Niroula, as a matter of law, none of Plaintiff's alleged claims

5    against BofH is viable for three reasons.

6    　　**First**, in the Indemnification Agreement, Plaintiff expressly authorized and ratified the

7    signatures on each of the three checks on which each of her claims here is based, which defeats

8    all of her claims as a matter of law.

9    　　**Second**, Plaintiff nullified her initial reports of the forgeries by recanting them. Thus, she

10    failed to report the unauthorized signatures on her checks within 60 days from the date she first

11    learned of the forgeries, which is the time frame for Plaintiff to have reported the forgeries under

12    Uniform Commercial Code § 4406(f), as modified by the parties' deposit account agreement

13    (UCC § 4103(a)). Based on her failure to report the forgeries on a timely basis, all of her claims

14    based upon the forged checks are statutorily ***precluded***.

15    　　**Third**, each of her claims fails as a matter of law on its own merits, as discussed below.

16    **II.    FACTUAL SUMMARY**

17    　　The following facts are all derived from the FAC and accepted as true solely for the

18    purposes of this motion. Plaintiff is a Japanese national who was befriended by Niroula in July

19    2006, while she was on vacation in Hawaii. FAC, ¶¶1, 6. Niroula held himself out to be very

20    wealthy, with ties to the Nepalese royal family and claimed that he had experience in real estate

21    investments. *Id.* at ¶7.

22    　　Plaintiff informed Niroula that she was interested in purchasing real property in Hawaii,

23    but that she was concerned about obtaining an immigration visa because she was not an American

24    citizen. *Id.* Niroula responded that he could assist Plaintiff in obtaining a business or investment

25    visa. *Id.* Plaintiff allegedly declined Niroula's real estate proposals, but requested his assistance

26    in obtaining an immigration visa. *Id.* at ¶¶15-16.

27    　　Niroula lied to Plaintiff about his background to gain her trust and subsequently defrauded

28    her by convincing her to deposit funds into a BofH bank account in Plaintiff's name so that

1   Niroula could assist Plaintiff in obtaining an immigration visa. FAC, ¶¶8-12, 16, 18-19. Niroula

2   was with Plaintiff when she opened her BofH account, and he gained access to her personal

3   information and stole three temporary blank checks (check nos. 101-103) from her at that time.

4   FAC, ¶¶19-20.

5          When Plaintiff opened her account with BofH on August 16, 2006, she signed a Customer

6   Signature Card, which incorporates the terms of a Consumer Deposit Account Agreement

7   between BofH and Plaintiff. That Agreement provides:

8              **Unauthorized Transactions.** If you discover a check forgery,
               alteration or other unauthorized transaction involving your account,
9              you must promptly notify your branch of account in writing of the
               relevant facts. * * *
10
               You are in the best position to discover and report any unauthorized
11             debit to your account. * * * Without regard to care or lack of care
               of either you or us, if you do not discover and report any such
12             unauthorized transaction within 60 days after your statement,
               transaction information or the item is made available to you, you
13             are precluded from asserting the unauthorized transaction against
               us. (*See*, Declaration of Scott I. Takahashi, Exh. 1 at p.18 and Exh.
14             2.)[1]

15         Plaintiff deposited over $256,000 into her BofH account on August 22, 2006. *Id.* at ¶21.

16  Over the next week, Niroula forged Plaintiff's signatures on two of the blank checks that he had

17  purportedly stolen (check nos. 101 and 103), one for $8,000 and the other for $95,000, and

18  deposited the proceeds into his BofH account. FAC, ¶¶22-24.

19         Plaintiff alleges that she requested confirmation of her initial deposit from BofH and that

20  _____

21  [1] On a Rule 12(b)(6) motion, the Court may consider documents not attached to the complaint if
    there is no question as to their authenticity and Plaintiff's claims necessarily rely on those
22  documents. *See*, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Global Network
    Communications, Inc. v. City of New York*, 458 F.3d 150, 156-157 (2d Cir. 2006) (this rule
23  "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever
    drafting"). Based on Rule 11, BofH anticipates that Plaintiff cannot and will not disavow her
24  own signature on the Customer Signature Card, which incorporates the Customer Deposit
    Agreement between the parties. *See*, Takahashi Decl., Exh's. 1 and 2, respectively. The
25  relationship of bank and depositor is contractual in nature. *Chazen v. Centennial Bank*, 61
    Cal.App.4th 532, 537 (1998). Here, FAC paragraph 19 discusses that contractual relationship in
26  the context of Plaintiff's opening her deposit account with BofH, implicitly addressing the subject
    of her account agreement with BofH. Plaintiff apparently decided not to plead or attach the terms
27  of that agreement, which are dispositive of her claims in this lawsuit. Under such circumstances,
    this Court may consider the undisputed Account Agreement terms on this Rule 12(b)(6) motion.

28

1    she deposited an additional $300,000 into her BofH account on September 5, 2006. *Id.* at ¶¶25-

2    26. Niroula convinced Plaintiff to send him three additional blank checks on her BofH account.

3    *Id.* at ¶27. Using one of the blank checks that she sent him (check no. 105), Niroula allegedly

4    forged her signature again, this time for $405,000, which he deposited into his BofH account on

5    or about September 18, 2006. *Id.* at ¶28.

6         Plaintiff claims that she did not learn of the forgeries until October 2, 2006, and that she

7    immediately notified BofH what had happened. FAC, ¶29. Plaintiff executed and provided BofH

8    with three Unauthorized Signature affidavits for checks 101, 103, and 105. FAC, ¶31; Exh. A.1-

9    9. In response, on October 3, 2006, BofH temporarily suspended Niroula's account, which at the

10   time had over $257,000 on deposit. *Id.* at ¶33. Niroula subsequently promised Plaintiff he would

11   return the funds he obtained by forging her checks. *Id.* at 34.

12        On October 17, 2006, Niroula defrauded Plaintiff again. He told her that he needed to

13   borrow additional sums from her to help his allegedly royal family members in Nepal, who would

14   then send him money to repay her. Niroula convinced Plaintiff to travel to San Francisco on

15   October 20, 2006, to give him these additional funds, and told her during her visit that he would

16   also assist her in obtaining an immigration visa. FAC, ¶¶37-40. During Plaintiff's visit, on

17   October 21, 2006, Niroula deposited a check for $890,000 into Plaintiff's Citibank account. *Id.* at

18   ¶40. Although Citibank confirmed the deposit, Plaintiff admits that Citibank told her that the

19   $890,000 would not be available for 3 days. *Id.*

20        Niroula then convinced Plaintiff to "loan" him additional funds on the claim that his sister

21   had been kidnapped and was being held for ransom in Nepal; he also told Plaintiff's that her life

22   was endangered. *Id.* As a result, Plaintiff opened yet another bank account, this time with Wells

23   Fargo Bank, and requested that BofH wire $41,000 to this new account. *Id.* at ¶¶42-43. Plaintiff

24   convinced Plaintiff that his family could not send funds to reimburse her unless Plaintiff released

25   the hold on the $257,000 in his BofH account. FAC, ¶45. Because Plaintiff had accused Niroula

26   of forgery, BofH would not release the funds frozen in Niroula's account unless Plaintiff executed

27   an Indemnification Agreement (FAC, Exh. B), which she did on October 25, 2007. *Id.* at ¶¶45-46

28   and Exh. B.

1    Using a one-way ticket that Niroula provided, Plaintiff returned directly to Japan on

2    October 31, 2006, at which time she allegedly discovered that the $890,000 check that Niroula

3    had deposited into her Citibank account on October 21, 2006 had been dishonored. *Id.* at ¶¶41,

4    48.

5    **III.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST BofH**

6        **A.    The Legal Standards Applicable To A Rule 12(b)(6) Motion.**

7        A motion to dismiss for failure to state a claim may be granted when it appears that the

8    plaintiff can prove no set of facts that would entitle her to relief. *Fidelity Financial Corp. v.*

9    *Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir. 1986); *In re U.S. Aggregates, Inc. v.*

10   *Securities Litig.*, 235 F. Supp. 2d 1063, 1068 (N.D. Cal. 2002). Dismissal may be based on either

11   a lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal

12   theory. *See In re U.S. Aggregates, Inc., Securities Litig.*, *supra,* 235 F. Supp. 2d at 1068; *see also*

13   *Ballistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

14       Although all material allegations must be taken as true, "conclusory allegations without

15   more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v.*

16   *Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *McCarthy v. Mayo*, 827 F.2d 1310, 1316 (9th

17   Cir. 1987). A plaintiff cannot avoid this bar by clothing legal conclusions in the guise of facts to

18   take advantage of the liberality with which the court would otherwise view a pleading. *See*

19   *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Stinson v. Home Ins. Co.*,

20   690 F. Supp. 882, 886 (N.D. Cal. 1988) (finding that, "[a]lthough plaintiffs need to provide only a

21   'short and plain statement of the claim [under FRCP 8,' . . . [w]here the claims in a complaint are

22   insufficiently supported by factual allegation, the claims may be disposed of by summary

23   dismissal").

24       **B.    Choice of Law.**

25       This Court has diversity jurisdiction over this lawsuit pursuant to 18 U.S.C. § 1332. In

26   diversity jurisdiction, substantive issues of law are governed by applicable state law.

27       Without going through a lengthy choice of law analysis, BofH believes that Hawaii law

28   governs this lawsuit for at least two reasons. First, the Customer Deposit Agreement at page 17,

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1365099v9

5

1   provides: "**Governing Law.** Your account will be governed by this agreement and the laws of

2   the jurisdiction in which your account is located."   Takahashi Decl., Exh. 1.  Here, Plaintiff

3   admits that she opened her BofH account in Waikiki, Hawaii.  FAC, ¶18.

4          Second, Uniform Commercial Code § 4102(b) provides: "The liability of a bank for

5   action or nonaction with respect to an item handled by it for purposes of presentment, payment, or

6   collection is governed by the law of the place where the bank is located."  BofH is located in

7   Hawaii.

8          That said, BofH could find no reported Hawaii decisions construing Division 4 of the

9   UCC, which BofH contends governs the resolution of this dispute.  Nevertheless, the Hawaii

10  provisions of Division 4 are virtually identical to the California provisions.  Additionally, BofH

11  cites to California law because the FAC specifically alleges California claims.  For those reasons,

12  BofH cites Hawaii authorities when they address a legal matter at issue on this motion and

13  California authorities because they are persuasive and well-reasoned.

14          C.    **Plaintiff Ratified The Alleged Forgeries.**

15          A forgery is an unauthorized signature and is ineffective to bind the party whose signature

16  was forged.  UCC § 3403(a).  A signature by one person who is authorized to sign for another is

17  not a forgery.  UCC § 1201(41).

18          In this instance, Plaintiff initially claimed that her signature had been forged by Niroula on

19  three blank checks.  FAC, Exh. A.  However, she later recanted that claim and ratified the

20  signatures that she earlier had claimed were forgeries, thereby informing BofH that the allegedly

21  unauthorized signatures were indeed authorized by her as having been made with her consent.  *Id.*

22  at Exh. B.

23          Having informed BofH that she no longer contends that Niroula forged her checks,

24  Plaintiff ratified Niroula's signature as authorized by her.  *Maui Finance Co. v. Han*, 34 Haw.

25  226, 229 (1937) ("Hence when ratified, the prior unauthorized act has the same legal effect and

26  results …in the same contractual relations between the principal and the person with whom the

27  agent has dealt as though the act of the agent originally had the prior authorization of the

28  principal"); *Uhlenbrock v. KeyBank*, 2001 Ohio App. LEXIS 16 at *8 (holding that plaintiff

BN 1365099v9                                6

1    ratified allegedly unauthorized payments by signing bank forms that authorized and consented to

2    the payments and by failing to raise the issue that the payments were unauthorized)[2]; *Rakestraw*

3    *v. Rodrigues*, 8 Cal.3d 67, 74 (1972) ("We conclude that the ratification of an act of forgery by

4    one held out to be a principal creates an agency relationship between such person and the

5    purported agent and relieves the agent of civil liability to the principal which otherwise would

6    result from the fact that he acted independently and without authority").

7         Plaintiff is bound by her admission that Niroula was authorized to sign her checks, and

8    she cannot now claim that her checks were forged. *Thompson v. Illinois Dept. of Prof. Reg.*, 300

9    F.3d 750, 754 (7th Cir, 2002) and *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

10   2001): "We have held that a plaintiff can -- as Sprewell has done here -- plead himself out of a

11   claim by including unnecessary details contrary to his claims. *See Steckman v. Hart Brewing*,

12   *Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("We are not required to accept as true conclusory

13   allegations which are contradicted by documents referred to in the complaint.")." *See also*

14   *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940): "This letter was

15   presented to the court below as an exhibit to the original petition, is abstracted in the final

16   amendment to the pleadings, and is referred to by the appellant as one of the letters 'which

17   indicate either an admitted or ratified contract.' There can be no doubt that it was written by

18   appellee and received by appellant as a part of the negotiations. On a motion to dismiss, it

19   became the duty of the court below to construe this letter and determine its legal effect. In so

20   doing, we think no error was committed.".

21        **D.     Plaintiff's Claims Are Absolutely Precluded By UCC § 4406(f).**

22        UCC § 4406(f) establishes an outer limit (one year) beyond which a bank has no

23   responsibility for an unauthorized signature if the customer fails to notify the bank that her

---

[2] BofH asks the Court to consider this unpublished appellate opinion because of the dearth of
authority involving ratification and UCC Division 4. This opinion has not been designated as
"Not for Citation," so citation to this opinion does not violate Northern District Court Local Rule
3-4(e). Note, Ninth Circuit Rule 36-3 prohibits citing an unpublished *Ninth Circuit* decision or
opinion, but that Rule does not prevent this Court (or even the Ninth Circuit) from considering an
unpublished opinion from an Ohio appellate court. BofH's counsel is aware of no local rule in
this district forbidding citing or considering an unpublished opinion from another court.

1   signature has been forged.  This is so without regard to the care or lack of care by either the bank

2   or its customer.  *Id.*

3          Although one year is the statutory maximum period for notification, UCC §4103(a) also

4   permits the parties to vary the provisions of Division 4 by agreement, which is what the parties

5   did in this instance.  UCC § 4103(a) ("The effect of the provisions of this division may be varied

6   by agreement … .")  The Deposit Agreement between Plaintiff and BofH shortens the time within

7   which Plaintiff must notify the bank of check forgeries from one year to 60 days after discovery.

8   Takahashi Decl., Exh.1 at p. 18.  Plaintiff accepted the terms of the Deposit Agreement when she

9   signed her Customer Signature Card.  *Id.* at Exh. 2.

10         Plaintiff may argue that, by signing the Unauthorized Transaction affidavits, she did

11  notify BofH of the alleged forgeries within 60 days.  However, she very clearly recanted that

12  notification, and she ratified Niroula's unauthorized signatures during the 60-day period,

13  instructing BofH to release her funds to Niroula.  Because her complaint was filed some eight

14  months **after** the 60-day period, she is absolutely precluded from asserting any claim based on

15  those allegedly forged checks.  UCC § 4406(f).

16         Although the Hawaii courts have not addressed this issue, the California courts have

17  repeatedly upheld the Section 4406 preclusions.  In *Story Road Flea Market Inc. v. Wells Fargo*

18  *Bank,* 42 Cal.App.4th 1733 (1995), the court of appeal upheld summary judgment on a Section

19  4406(e) defense.  *Id.* at 1742; *see also Roy Supply v. Wells Fargo*, 39 Cal.App.4th 1051, 1063-

20  1064 (1995).  Also, in *Kruser v. Bank of America NT&SA*, 230 Cal.App.3d 741, 750 (1991), the

21  court of appeal held that a plaintiff's claims were precluded because "[c]onsumers must play an

22  active and responsible role in protecting against losses which might result from unauthorized

23  transfers.  A banking institution cannot know of any unauthorized . . . transfer unless the

24  consumer reports it." *Cf., Espresso Roma v. Bank of America, N.A.*, 100 Cal.App.4th 525 (2002)

25  (upholding the sections 4406(d) and (e) conditional preclusion); *Mac v. Bank of America*, 76

26  Cal.App.4th 562, 568 (1999) ("Subdivision (f) of that section is intended to impose 'an absolute

27  time limit on the right of a customer to make claim for payment of altered or forged paper without

28  regard to care or lack of care of either the customer or the bank,'" quoting U.C.C. Comment 5

1   following sec. 4406, West's Annotated California Commercial Code, Vol. 23B, p. 663.

2          Thus, Plaintiff's claims are absolutely barred, because they are based on three allegedly

3   forged checks, which are governed by UCC § 4406(f). Moreover, Plaintiff is not free to sidestep

4   the UCC § 4406(f) preclusion and assert common law and statutory claims, each of which is

5   based solely on allegedly forged signatures on her checks. The UCC has displaced this area of

6   the law with a scheme that is exclusive:

7          "if the Commercial Code articulates a loss distribution scheme that
           applies to fact patterns such as alleged herein, then the Commercial
8          Code provision displaces any other provision of law…".

9   *Stenseth v. Wells Fargo,* 41 Cal.App.4th 457, 465-66 (1995); *see also*, *Roy Supply, supra*,

10  39 Cal.App.4th at 1072 (1995); UCC § 1103(b). Because Plaintiff's forged check claims are

11  absolutely precluded by UCC § 4406(f), she cannot circumvent that preclusion by asserting the

12  same claims under tort or other statutory theories of recovery. *Id.*

13         Each of Plaintiff's claims against BofH and every element of her damages is based upon

14  BofH's handling of those three allegedly forged checks. As a result, each and all of her claims

15  are precluded as a matter of law and should be dismissed.

16  **E.    Plaintiff's Fraud and Negligent Misrepresentation Claims (Counts 13, 14, 21,**
           **22 and 24) Fail As A Matter Of Law.**
17

18         **1.    Plaintiff's Relationship With BofH Is Contractual, Not Duty Based.**

        Assuming *arguendo* that any of Plaintiff's claims against BofH survive on the ground that
19
    she was allegedly defrauded into signing the Indemnification Agreement, her fraud claims are
20
    also flawed and must be dismissed, giving her other claims no collateral hope of survival.
21
        The relationship of a bank and its depositor is contractual, not founded in common law.
22
    *Chazen v. Centennial Bank,* 61 Cal.App.4th 532, 537 (1998):
23
           "The relationship of bank and depositor is founded on contract,
24         which is ordinarily memorialized by a signature card that the
           depositor signs upon opening the account."
25
        Notwithstanding that Plaintiff's relationship with BofH was contractual (*See*, Takahashi
26
    Decl., Exh. 1), not duty-based, she attempts to allege a variety of tort claims arising out of BofH's
27
    performance of the depository relationship. Neither Hawaii nor California recognize a tort claim,
28

1    including fraud, arising out of what is essentially a breach of contract claim.  In *Foley v.*

2    *Interactive Data Corp.*, 47 Cal.3d 654, 696 (1988), the California Supreme Court held that where

3    relationships between parties are fundamentally contractual in nature, contract claims, not tort

4    claims, are the appropriate remedy.  Hawaii law is similar. *Donald M. Shaw vs. Santa Monica*

5    *Bank*, 920 F. Supp. 1080 (Haw. 1996), ("In order for the Plaintiffs to recover against the

6    Defendant under a tort theory, a legal duty between the parties must exist"); *Cootey v. Sun Inv.,*

7    *Inc.*, 68 Haw. 480, 484 (Haw. 1986) ("Fundamental in any determination of liability for

8    negligence is the existence of duty owed by the putative tortfeasor to the injured person.").

9         This sound policy was affirmed by the California Supreme Court in *Hunter v. Up-Right,*

10   *Inc.,* 6 Cal.4th 1174 (1993), in which the Court rejected a fraud claim arising out of a contract:

11          "***The distinction between tort and contract is well-***
           ***grounded in common law, and divergent objectives***
12         ***underlie the remedies related in the two areas***.  Whereas
           contract actions are created to enforce the intentions of the
13         parties to the agreement, tort law is primarily designed to
           vindicate 'social policy' ... ***Therefore tort damages are***
14         ***unavailable*** in this case." *Id.* at 1180, 1186.   (Emphasis
           added.)

15        Moreover, courts have addressed and rejected a plaintiff's attempts to bootstrap tort

16   claims into contractual causes of action in the lending context.  In *Mitsui Manufacturers Bank v.*

17   *Sup. Ct. (Squidco Corp. of America, Inc.)*, 212 Cal.App.3d 726, 729 (1989), the court held that

18   "the ordinary arms-length commercial lender/borrower relationship was insufficient as a matter of

19   law to generate tort damages," and it expressly rejected the plaintiff's argument to extend tort

20   damages to normal commercial banking transactions.  *See also Careau v. Security Pacific*, 222

21   Cal.App.3d 1371, 1399 (1990); *Kim v. Sumitomo Bank of Calif.,* 17 Cal.App.4th 974, 979 (1993);

22   *Chazen, supra*, 61 Cal.App.4th at 536.

23        **2.       Plaintiff Failed To Plead A Fraud Claim With Particularity**

24        Even if this Court were to conclude that a fraud claim could be stated here, Plaintiff has

25   failed to allege the elements of such a claim.

26        The elements of a fraud claim are: (1) a misrepresentation; (2) the defendant's knowledge

27   of the falsity of the representation; (3) intent to defraud on the part of defendant; (4) plaintiff's

28

1    justifiable reliance; and (5) resulting damage. *Matsuura v. E.I. du Pont de Nemours and Co.*, 102

2    Haw. 149, 176, 73 P.3d 687 (2003), quoting *Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 386 (2000);

3    *Girard v. Ball*, 125 Cal.App.3d 772, 783 (1981). The elements of a cause of action for negligent

4    misrepresentation are the same, except that the defendant need only make the representation

5    without reasonable grounds for believing it to be true. *South Tahoe Gas Co. v. Hoffman Land*

6    *Imp., Inc.,* 25 Cal.App.3d 750, 765 (1972).

7         Rule 9 of the Federal Rules of Civil Procedure requires that "in all averments of fraud . . .,

8    the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P.

9    9(b); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-1023 (9th Cir. 2000) (fraud must be pled

10   with a high degree of meticulousness). In short, a plaintiff must allege "the who, what, where,

11   and when of the alleged fraud." *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467,

12   469 (7th Cir. 1999). This rule requires a plaintiff to conduct a pre-complaint investigation in

13   sufficient depth to assure that the charge of fraud is responsible and supported, rather than

14   defamatory and extortionate. *Id.* Vague or conclusory allegations do not satisfy the particularity

15   required by Rule 9(b). *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.

16   1989).

17               a.    **Plaintiff Did Not Adequately Plead That BofH Misrepresented**
                       **or Failed to Disclose Any Material Fact.**

18        Plaintiff contends that BofH obtained Plaintiff's signature on the Indemnification

19   Agreement by withholding material facts or by misrepresenting material facts which only BofH

20   knew and which Plaintiff was unable to discover on her own. FAC, ¶¶117, 120, 131, 168, 173,

21   190.

22        Plaintiff fails to state *who* at BofH purportedly failed to disclose or misrepresented the

23   affect of the Indemnification Agreement. *Lazar v. Sup. Ct. (Rykoff-Sexton, Inc.),* 12 Cal.4th 631,

24   645 (1996); *Stansfield v. Starkey,* 220 Cal.App.3d 59, 73 (1990). Where allegations are being

25   made against a corporation, Plaintiff is required to allege the names of the corporate officers or

26   employees who allegedly made the misrepresentations/nondisclosures, their authority to speak for

27   the corporation, to whom at the corporation Plaintiff spoke, what was said or written, and when it

28

1   was said or written. *Lazar, supra*, 12 Cal.4th at 645; *Tarmann v. State Farm Mut. Auto. Ins. Co.*,

2   2 Cal.App.4th 153, 157 (1991). Here, Plaintiff fails to identify any BofH employee who

3   purportedly made a single misrepresentation (the only BofH employee actually named in the FAC

4   allegedly assisted Plaintiff in opening her account with BofH (FAC, ¶18), and Plaintiff does not

5   allege that that employee misrepresented any facts).

**b.      As A Matter Of Law, Plaintiff Did Not Justifiably Rely On
BofH's Alleged Misrepresentations.**

6

7          Plaintiff must allege and eventually prove that she justifiably relied on a BofH

8   misrepresentation. *Girard, supra*. Here, Plaintiff makes no specific factual allegation that she

9   relied on any particular misrepresentation, or that her reliance was justified. Instead, plaintiff

10  makes conclusory claims that "[t]he foregoing suppressed facts and information made the matters

11  actually disclosed highly misleading and material to Plaintiff's decision to sign BofH's form in

12  San Francisco" and that "Plaintiff's reasonable decision was in justified reliance on BOH's partial

13  disclosures," or that "her reliance was reasonable under the circumstances." FAC, ¶¶124-125,

14  133, 169, 178. These allegations are purely conclusory and do not satisfy the specificity

15  requirements of Rule 9(b).

16         Moreover, a party's supposed reliance on BofH's alleged misrepresentations is not

17  reasonable as a matter of law where, as here, the terms and conditions she now seeks to avoid

18  were set forth in the Indemnification Agreement she signed. *Izzy v. Mesquite Country Club*, 186

19  Cal.App.3d 1309, 1318-1319 (1986) (a signatory to a contract cannot avoid the agreement by

20  claiming that he failed to read it before signing); *Rowland v. Paine Webber*, 4 Cal.App.4th 279,

21  286 (1992); *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal.4th 394, 423 (1996).[3] In the

22  Indemnification Agreement, Plaintiff expressly elected to drop her forgery claims in their entirety

23  and to ratify Niroula's signatures on her checks. The California Supreme Court confirmed this

24  point in *Rosenthal, supra*, where it held that a party to a contract cannot rely on the other party's

25

---

26  [3] "The standard of proving fraud with respect to written contracts is extremely high, and a written
contract will be cancelled only in a clear case of fraud supported by clear and convincing
27  evidence." *Honolulu Fed. Sav. & Loan Assn. v. Murphy*, 7 Haw. App. 196, 201 (1988), citing
*Kang v. Harrington*, 59 Haw. 652, 656-57 (1978); *Dement v. Atkins & Ash*, 2 Haw. App. 324, 327
28  (1981).

1   misrepresentation as to its terms when the complaining party failed to read the contract. *Id.* The

2   *Rowland* court similarly held:

3           Reliance on an alleged misrepresentation is not reasonable when
            plaintiff could have ascertained the truth through the exercise of
4           reasonable diligence. Reasonable diligence requires the reading of
            a contract before signing it.
5
    *Rowland, supra,* 4 Cal.App.4th at 286-87. Here, Plaintiff has not (and cannot) allege that she
6
    justifiably relied on an alleged BofH misrepresentation that convinced her to sign a document
7
    which is clear on its face that Plaintiff is withdrawing her forgery claims and instructing BofH to
8
    turn over her funds to Niroula.
9

10  **F.    Plaintiff Failed to Allege Facts Sufficient to State A Claim for Rescission
           (Count 16).**

11          A party may rescind a contract if the contract was obtained through fraud. *Matsuura,*

12  *supra*, 102 Haw. at 173-174; California Civil Code § 1689; *Ordizzi v. Bloomfield School District,*

13  26 Cal. App. 2d 123, 127 (1966). To obtain rescission of the Indemnification Agreement,

14  Plaintiff attempted to state a claim for fraud. As discussed above, she failed to do so.

15          Furthermore, it is well established that a right to rescission must be exercised promptly.

16  *Ishida v. Naumu,* 34 Haw. 363, 372 (1937), ("A court of equity, which is never active in relief

17  against conscience or public convenience, has always refused its aid to stale demands where the

18  party has slept upon his rights or acquiesced for a great length of time. Nothing can call forth this

19  Court into activity, but conscience, good faith and reasonable diligence. When these are wanting,

20  the court is passive and does nothing; laches and neglect are always discountenanced");

21  California Civil Code § 1691; *Estrada v. Alvarez,* 38 Cal.2d 386, 391 (1952) ("The right to

22  rescind is lost by delay because diligence is a condition of the right to rescind, and there have

23  been many cases in which delays for much shorter periods than a year have been held to be fatal

24  to the right to rescind," citations and internal quotation marks omitted).

25          Plaintiff executed the Indemnification Agreement in August 2006. FAC, Exh. B. Without

26  any alleged basis for delay, Plaintiff did not file her original complaint seeking to rescind the

27  Indemnification Agreement until almost a year later. Plaintiff's inexcusable delay precludes her

28  from asserting a claim for rescission, and her rescission claim should be dismissed.

1

**G.    Plaintiff's Negligence, Breach of Fiduciary Duty and Wrongful Withholding of Funds Claims (Counts 20, 26, 27, 29 and 30) Should Be Dismissed Because BofH Did Not Owe Plaintiff a Legal Duty Outside The Duties Set Forth In The UCC.**

2

3

It is well established in Hawaii and California that the relationship between a bank and its

4

depositor is ***not*** fiduciary in nature. As such, Plaintiff's claim for breach of fiduciary duty should

5

be dismissed, because BofH did not owe Plaintiff any duty as a matter of law. *Bishop, Baldwin,*

6

*Rewald, Dillingham & Wong, Inc., v. Bank of Hawaii*, 69 Haw. 523, 529 (1988), *Graulty v. Bank*

7

*of Hawaii (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 60 Bankr. 670, 673 (D.

8

Haw. 1986) holding that "the Bank 'was merely the depository of the escrow funds,' was under

9

'no duty to inquire as to possible misappropriations,' 'received no significant financial benefit

10

from the transaction,' and, therefore, was "not to be held to the obligations imposed by HRS §

11

556-4 upon creditors and other payees.")

12

*See, Nymark v. Heart Fed'l Savings & Loan,* 231 Cal.App.3d 1089, 1096 (1991) ("[A]

13

financial institution owes no duty of care to a borrower when the institution's involvement in the

14

loan transaction does not exceed the ... conventional role a mere lender of money..."):

15

16

> It has long been regarded as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." ***A debt is not a trust and there is not a fiduciary relation between a debtor and creditor as such.*** The same principle should apply with even greater clarity to the relationship between a bank and its loan customers.

17

18

19

*See also, Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476 (1989), quoting *Morse v.*

20

*Crocker Nat'l Bank,* 142 Cal.App.3d 228, 232 (1983) and *Downey v. Humphreys,* 102 Cal.App.2d

21

323, 332 (1951); *Chazen, supra*, 61 Cal.App.4th at 537.

22

Plaintiff's negligence, gross negligence and negligence per se claims fail for the same

23

reason as does her fiduciary duty claim. To establish a claim for negligence, Plaintiff must first

24

establish that BofH owed her a legal duty. *See, e.g., Keech v. Berkeley Unified Sch. Dist.,* 162

25

Cal.App.3d 464, 468 (1984); *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814,

26

820 (1976).

27

As discussed above, the subject of duty regarding honoring or dishonoring a forged check

28

is entirely "displaced" by the Uniform Commercial Code. Therefore, Plaintiff cannot assert other

1  tort theories to prevail when her forged check claims are expressly barred by the Code. *See*, UCC

2  §§ 1103 and 4406(f).

3      Similarly, Plaintiff's claim for wrongful withholding of funds is another duty based claim,

4  which alleges that BofH failed to exercise "good faith" in negotiating the checks forged by

5  Niroula. FAC, ¶162. Code section 4406(f) expressly excludes the notion of duty, when it stats

6  that without regard to care or lack of care claims are precluded. Duties never arise and do not

7  come into play if Plaintiff is precluded from asserting them because she failed to put BofH on

8  timely notice of her claims. Even if she had given timely notice, the duties on which she can rely

9  are set not forth under common law, but in the UCC, which has displaced all other theories of

10  recovery based on the handling of a forged check.

11      As a matter of law, under these circumstances, no non-UCC duties exist between Plaintiff

12  and BofH with regard to the honoring of checks submitted for payment on her account. As such,

13  her claims for breach of fiduciary duty, negligence and wrongful withholding of funds should be

14  dismissed without leave to amend.

15      **H.    Plaintiff's Civil Conspiracy Claim (Count 12) Fails As A Matter Of Law.**

16      It is well established that there is no claim for "conspiracy" *per se*; rather, Plaintiff must

17  plead a conspiracy to commit a particular intentional tort. *Mock v. Castro,* Memorandum Opinion

18  (Haw. Supreme Court, 9/3/04) Case No. 23474; *Ellis v. Crockett,* 51 Haw. 45, 57 (1969);

19  *Chicago Title Ins. Co. v. Great Western Fin. Corp.,* 69 Cal. 2d 305, 316 (1966).

20      Even if Plaintiff had crossed this pleading threshold, her allegations still fail to meet even

21  the minimum pleading requirements for a claim of conspiracy. In *117 Sales Corp. v. Olsen,* 80

22  Cal.App.3d 645, 649-50 (1978), the court of appeal held that a cause of action for civil conspiracy

23  requires that plaintiff allege <u>facts</u> showing the formation of the conspiracy, its operation, the

24  wrongful acts of the conspirators, and the damages resulting therefrom. "[B]are legal conclusions

25  are insufficient... inferences, generalities, presumptions and conclusions are insufficient...." *Id.*

26  *See also* Taylor v. Mitzel, 82 Cal.App.3d 665, 674 (1978) (requiring "allegations of specific facts

27  showing meetings, communications, correspondence or any indicia of a conspiracy....."); *Lavine v.*

28  *Jessup,* 161 Cal.App.2d 59 (1958). The allegations in the FAC [¶¶ 114-115], do not even come

1  close to meeting this standard.

2       Furthermore, there is no actionable conspiracy where, as here, the acts allegedly done in

3  furtherance of the conspiracy are themselves not actionable. *Unruh v. Truck Ins. Exchange,* 7

4  Cal.3d 616, 631 (1972). Here, Plaintiff alleges that BofH required Plaintiff to execute the

5  Indemnification Agreement, so that BofH in Hawaii could follow Plaintiff's instructions to

6  release Plaintiff's funds to Niroula's BofH account in Hawaii. FAC, ¶¶44-46. Based on the above

7  allegations, Plaintiff then concludes that BofH "agreed or combined [with Niroula] by concerted

8  action to accomplish a criminal or wrongful act in San Francisco, or to accomplish some purpose

9  not in itself criminal or unlawful, by criminal or unlawful means," *Id.* at ¶114.

10       Nothing about BofH's asking Plaintiff to sign the Indemnification Agreement was

11  wrongful or gives Plaintiff a claim against BofH.

12      I.    **Plaintiff Cannot State A Claim For Intentional or Negligent Infliction of Emotional Distress (Counts 10, 19, 25 and 28).**

13

14       Plaintiff alleges that BofH intentionally and/or negligently inflicted emotional distress.

  This assertion is both factually insupportable and contrary to law.

15

16       To recover damages for the tort of intentional infliction of emotional distress, Plaintiff

17  must prove (1) extreme and outrageous conduct by the defendant with the intention of causing, or

reckless disregard of the probability of causing, emotional distress; (2) plaintiff's suffering severe

18  or extreme emotional distress; and (3) that the emotional distress was actually and proximately

19  caused by the defendant's conduct. *Johnson v. Assn of Apartment Owners of Ke Aina Kai*

20  *Townhomes,* 2006 U.S. Dist. LEXIS 61106, *9, citing *Enoka v. AIG Hawai'i Ins. Co., Inc.,* 128

21  P.3d 850, 872 (Haw. 2006) (upholding summary judgment in favor of defendant on IIED claim

22  where conduct did not rise to level of outrageousness as required by Hawaii case law)(citation

23  omitted); *Christensen v. Sup. Ct. (Pasadena Crematorium of Altadena),* 54 Cal.3d 868, 903

24  (1991); see also *Golden v. Dungan,* 20 Cal.App.3d 295 (1971); *State Rubbish etc. Assn. v.*

25  *Silizinoff,* 38 Cal.2d 330 (1952); Rest.2d Torts, section 46.

26       The claim for negligent infliction of emotional distress is subsumed in the tort of

27  negligence. *Tran v. State Farm Mut. Auto. Ins. Co.,* 999 F. Supp. 1369, 1375 (D. Haw. 1998);

28

1   *Macy's Calif. v. Sup. Ct. (Tussy-Garber),* 41 Cal.App.4th 744, 748 (1995); *Burgess v. Sup. Ct.*

2   *(Gupta),* 2 Cal.4th 1064, 1072 (1992).  In order for a plaintiff to recover emotional distress

3   damages for the tort of negligent infliction of emotional distress under California law, she must

4   prove each of the elements of the tort of negligence, including duty, breach, causation and injury.

5   *Lawson v. Management Activities,* 69 Cal.App.4th 652, 656 (1999); *Marlene F. v. Affiliated*

6   *Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588 (1989).  To recover for negligent infliction

7   of emotional distress, Plaintiff must also establish that BofH's conduct was "outrageous."

8   *Christensen v. Sup. Ct. (Pasadena Crematorium of Altadena),* 54 Cal.3d 868, 890 (1991); *Twaite*

9   *v. Allstate Ins. Co.,* 216 Cal.App.3d at 257-258 (1989).

10      The term "outrageous" has been construed to mean "without just cause or excuse and

11   beyond all bounds of decency." *Lee v. Aiu,* 85 Haw. 19, 36, n.12 (1997).  This tort claim applies

12   "only to conduct so extreme and outrageous 'as to go beyond all possible bonds of decency, and

13   to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Alcorn v. Anbro*

14   *Engineering, Inc.,* 2 Cal.3d 493, 499, fn. 5 (1970).

15      Here, Plaintiff's emotional distress claim must be dismissed, because her alleged

16   emotional distress (1) arises solely from economic injury, and (2) BofH's conduct was not

17   outrageous or beyond all bounds of decency in a civilized society.

18          **1.    Plaintiff Is Not Entitled To Emotional Distress Damages That Arise**
                   **Solely From Economic Injury.**
19

20      As defined by her FAC, the sole source of Plaintiff's emotional distress is financial injury,

21   *i.e.,* the loss of her funds to Niroula.  As such, she cannot recover emotional distress damages,

22   whether she bases her claims on alleged tort duties or on alleged statutory duties.

23      Under Hawaii law, emotional distress damages cannot be based on negligence without

24   physical injury, and Plaintiff alleges no physical injury.  Hawaii Revised Statutes ("HRS") § 663-

25   8.9 provides:

26              (a) No party shall be liable for the negligent infliction of serious
                emotional distress or disturbance if the distress or disturbance arises
27              solely out of damage to property or material objects.

28              (b) This section shall not apply if the serious emotional distress or
                disturbance results in physical injury to or mental illness of the

1    person who experiences the emotional distress or disturbance.

2    Similarly, under Hawaii law, a party may not recover emotional distress damages for

3    violation of statutory duties, including an alleged breach of the unfair competition statute, HRS §

4    480. *See, Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 319 (2002): *Ailetcher v. Beneficial*

5    *Fin. Co. of Hawai`i*, 2 Haw. App. 301, 307 (1981) ("under [HRS] §§ 480-2 and 480-13, . . there

6    is no room for damages for personal injury and hence there can be no recovery . . . for mental

7    pain and suffering"); *Beerman v. Toro Mfg. Corp.*, 1 Haw. App. 111, 117 (1980) (barring

8    recovery of damages for personal injury under HRS chapter 480).

9    California courts have expressly prohibited recovery of emotional distress damages for

10    tort-based claims arising solely from financial injury.  Beginning with *Newman v. Smith,* 77 Cal.

11    22 (1888), through *O'Neil v. Spillane,* 45 Cal.App.3d 156 (1975), courts have consistently held

12    that recovery for emotional distress is not included as a measure of damages in fraud actions.

13    These cases have been extended to specifically include fraud claims in connection with the

14    purchase, sale or exchange of property.  *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67 (1988);

15    *American States Ins. Co. v. Canyon Creek,* 786 F.Supp 821 (N.D. Cal. 1992) (emotional distress

16    not a measure of damages contemplated in California Civil Code § 3343 for fraud in sale of real

17    property).

18    The California Supreme Court confirmed this general rule in *Erlich v. Menezes,* 21

19    Cal.4th 543 (1999), which also provides an historical summary of judicial authority confirming

20    that emotional distress damages are unavailable in cases arising solely from financial injury and

21    that "[n]o California case has allowed recovery for emotional distress arising solely out of

22    property damage." *Id.* at 555, *citing Cooper v. Sup. Ct. (Cooper),* 153 Cal.App.3d 1008, 1012

23    (1984).

24    Plaintiff seeks an award of emotional distress damages based upon her financial losses

25    allegedly caused by BofH releasing her funds to Niroula, notably ***at her request***.  Because

26    Plaintiff's alleged emotional distress arises out of her monetary loss and not any physical injury,

27    as a matter of law, she cannot recover damages for her alleged distress caused by that loss.

28

1

2.    **Plaintiff Cannot Plead That BofH's Conduct Was Outrageous Or Beyond All Bounds Of Decency.**

2

3    To assert a claim for emotional distress, Plaintiff must demonstrate that she suffered

4    severe or extreme distress as a result of conduct that is so outrageous that it is beyond the bounds

5    of decent conduct in a civilized society. This is so regardless of whether she has brought an

6    intentional or negligent infliction of emotional distress claim. *Christensen v. Sup. Ct. (Pasadena*

7    *Crematorium of Altadena),* 54 Cal.3d 868, 890 (1991); *Twaite v. Allstate Ins. Co., supra,* 216

Cal.App.3d at 257-258.

8    Here, after alleging in a conclusory fashion that BofH defrauded her into signing the

9    Indemnification Agreement, which itself fails to allege fraud with the required specificity,

10    Plaintiff alleges in a further conclusory fashion that "Defendants' acts were outrageous." FAC,

11    ¶¶105, 158, 197. As a matter of law, requiring Plaintiff to authorize the release of her funds to a

12    third party, Niroula, is not "outrageous" or "beyond the bounds of decency." BofH's motion to

13    dismiss should be granted without leave to amend.

14    **J.    Plaintiff's Constructive Trust Claim (Count 17) Should Be Dismissed.**

15    Under Hawaii law, a constructive trust may be imposed where one party will be unjustly

16    enriched if allowed to retain the entire property. *Aehegma v. Aehegma,* 8 Haw. App. 215, 224

17    (1990), citing *Kam Oi Lee v. Fong Wong,* 57 Haw. 137, 139-40 (1976).

18    Under California Civil Code §§ 2223 and 2224, a constructive trust may be imposed only

19    when plaintiff establishes that three conditions are met:

20    •    The existence of property or some interest in property;

21    •    Plaintiff's right to that property; and

22    •    The defendant's wrongful acquisition or detention of the property. *Burlesci v.*

23    *Petersen,* 68 Cal.App.4th 1062, 1067 (1998); *Communist Party v. 522 Valencia, Inc.,* 35

24    Cal.App.4th 980, 990-991 (1995).

25    Here, Plaintiff claim that BofH has her funds is directly contradicted by her pleading

26    admission that Plaintiff requested BofH to release Plaintiff's funds to Niroula. Plaintiff cannot

27    plead the wrongful acquisition prong as to BofH and comply with Rule 11, because Plaintiff is

28

1   well aware that Niroula, not BofH, has her funds.  Similarly, she knows that BofH was not

2   unjustly enriched, as it did not receive any proceeds of the three checks.  As a result, Plaintiff's

3   claim for constructive trust should be dismissed.

4       **K.    Plaintiff's Equitable Lien Claim (Count 18) Should Be Dismissed.**

5           Plaintiff's equitable lien claim fails for the same reasons as does her constructive trust

6   claim.  Among the elements required to set forth an equitable lien claim, Plaintiff must allege that

7   BofH will be unjustly enriched if it were allowed to retain the funds at issue.  *Aehegma, supra;*

8   *County of Los Angeles v. Const. Lab.,* 137 Cal.App.4th 410, 415 (2006).  Here, it is undisputed

9   that Niroula received the funds, not BofH, so BofH cannot have been "unjustly enriched."

10      **L.    Declaratory Relief Is Not Available (Count 15).**

11          Generally, an action for a declaratory judgment will not lie to determine an issue which is

12  already the subject of an existing claim and based on facts that have already occurred and will not

13  be the subject of future controversy:

14          "The appropriate inquiry for a district court in a Declaratory
            Judgment Act case is to determine whether there are claims in the
15          case that exist independent of any request for purely declaratory
            relief, that is, claims that would continue to exist if the request for
16          a declaration simply dropped from the case."  *United Nat. Ins. Co.
            v. R&D Latex Corp.,* 242 F.3d 1102, 1112 (9th Cir. 2001), citing
17          *Snodgrass v. Provident Life Ins. Co.,* 147 F.3d 1163, 1167-1168
            (9th Cir. 1998).
18
            "The declaratory relief statute should not be used for the purpose
19          of anticipating and determining issues which can be determined in
            the main action.  The object of the statute is to afford a new form
20          of relief where needed and not to furnish a litigant with a second
            cause of action for the determination of identical issues."
21          *California Ins. Guarantee Ass'n v. Sup. Ct.,* 231 Cal. App. 3d
            1617, 1624 (1991), citing *General of America Ins. Co. v. Lilly,* 258
22          Cal. App. 2d 465, 470 (1968).

23          Plaintiff is seeking declaratory relief on precisely the same issues which are already before

24  this Court in her numerous other claims.  A declaratory judgment is inappropriate, because it

25  would be based on alleged misconduct which already occurred, not to declare that ongoing

26  misconduct is wrongful.  Since these allegations are already the subject of existing claims for

27  damages, a declaration of rights by this Court is neither necessary nor appropriate, and Plaintiff's

28  Declaratory Judgment claim should be dismissed.

1   **M.**   **Plaintiff Has Failed to State a Claim for Tort in Essence (Count 11).**

2       In asserting a "tort in essence" claim, Plaintiff appears to be alleging a claim for

3   negligence per se. *See Duplessis v. City of Los Angeles,* 32 Fed. Appx. 835, 836 (9th Cir. 2002)

4   (referring to negligence per se elements in discussing tort in essence claim); *Michael R. v. Jeffrey*

5   *B.,* 158 Cal.App.3d 1059, 1066 (1984). Indeed, the elements of both claims are identical. The

6   plaintiff must show that: (1) the defendant violated a statute, ordinance or regulation of a public

7   entity, (2) the violation proximately caused his injury, (3) the injury resulted from an occurrence

8   of the nature which the statute was designed to prevent; (4) he was one of the class of persons for

9   whose protection the statute was adopted. *Id.*; Evid. Code § 669 (negligence per se elements);

10  *Sierra-Bay Fed. Land Bank Assn. v. Super. Ct.,* 227 Cal.App.3d 318, 336 (1991).[4] The requisite

11  elements are not pled in this case.

12      Plaintiff bases her claim on BofH's purported violation of California Penal Code sections

13  476a and 518. If Hawaii law controls, that alone is a basis for dismissing this claim because

14  BofH's activity was in Hawaii, not California. Taking the claim at face value, Section 476a

15  provides in relevant part that:

16          "Any person who for himself or as the agent or representative of
            another or as an officer of a corporation, willfully, with *intent to*
17          *defraud,* makes or draws or utters or delivers any check, or draft or
            order upon any bank or depositary, or person, or firm, or
18          corporation, for the payment of money, knowing at the time of
            such making, drawing, uttering or delivering that the maker or
19          drawer or the corporation has not sufficient funds . . ., is
            punishable by imprisonment in the county jail for not more than
20          one year, or in the state prison." (Emphasis added.)

21      By its own terms, a required element of Section 476a is an intent to defraud. *Harrington*

22  *v. Dept. of Corrections* 214 Cal.App.3d 394, 401 (1989). Here, the FAC fails to allege that BofH

23  intended to defraud Plaintiff, which is fatal to her claim. *See* FAC, ¶¶108-112.

24      Plaintiff also claims that BofH's violated a duty to Plaintiff under Penal Code section 518,

25  ─────────────

26  [4]     "A tort in essence is the breach of a nonconsensual duty owed another. Violation of a
    statutory duty to another may therefore be a tort and violation of a statute embodying a public
27  policy is generally actionable even though no specific civil remedy is provided in the statute
    itself. Any injured member of the public for whose benefit the statute was enacted may bring the
28  action." *See, South Bay Bldg., Inc. v. Riviera Lend-Lease, Inc.*, 72 Cal.App.4th 1111, 1123
    (1999).

1    which provides that:

2           "Extortion is the obtaining of property from another, with his
            consent, or the obtaining of an official act of a public officer,
3           induced by a wrongful use of force or fear, or under color of
            official right."

4           Here, the only allegations in the FAC are that Niroula did acts that may or may not

5    amount to extortion. FAC, ¶112. There is no allegation that BofH extorted funds from Plaintiff.

6           Moreover, even if BofH had been aware of Niroula's alleged propensity for misconduct,

7    and there is no claim pleaded as such in this case, a bank has no duty to warn others about its

8    customers, such as Niroula, even if the bank has a suspicion that such customer was

9    unscrupulous:

10          "If … banks had a duty to reveal suspicions about their customers,
            they would violate their customers' right to privacy, not to mention
11          be forced to act as the guarantor of checks written by the
            depositors. *We refuse to recognize such a duty by banks to*
12          *inform on suspicious customers, and we thereabout avoid the*
            *loss of privacy, expense and commercial havoc that would result*
13          *from such a holding.*" *Chicago Title Ins. Co. v. Sup. Ct.*
            *(California Canadian Bank)* 174 Cal.App.3d 1142, 1159 (1985).
14          (Emphasis added.)

15          Accordingly, because Plaintiff cannot base her tort in essence claim on violations of Penal

16    Code sections 476a or 518, this claim should be dismissed as a matter of law without leave to

17    amend.

18    **N.    Plaintiff's Unfair Business Practices Claims (Counts 8 and 23) Fail Under**
            **Both Hawaii And California Law.**

19

20          California's Business & Professions Code section 17200 (the "UCL") was designed to

21    prohibit business practices that are "unfair," "unlawful" or "fraudulent." Section 480-1 of the

22    Hawaii Revised Statutes, is similar.[5] Plaintiff claims that the Indemnification Agreement

23    constituted an unlawful, unfair or fraudulent business practices. FAC, ¶¶86, 185. These

24    allegations fail to meet any of the three statutory prongs.

25          California courts have applied a rigorous standard to evaluate allegations of pure

26    _____
      [5] The elements of an unfair or deceptive practices claim under HRS Section 480-13(b)(1) are (1) a
27    violation of HRS 480-2; (2) injury to the consumer caused by the violation; and (3) proof of
      damages. *Ai v. Frank Hugg Agency,* 61 Haw. 607, 617 (1980); *Cieri v. Leticia Query Realty,* 80
28    Haw. 54, 61-62 (1995).

1   "unfairness" under Section 17200.  Further, it is fundamental that a plaintiff alleging "unlawful"

2   business practices under the UCL must specifically allege the underlying law violated by the

3   defendant.  *See Johnson*, *supra*, 2006 U.S. Dist. LEXIS 61106 at *30-31 ("allegations sufficient

4   to establish a violation of the FDCPA would likewise be sufficient to establish a violation of

5   Haw. Rev. Stat. 480-2"); *Khoury v. Maly's of Cal.*, 14 Cal. App. 4th 612, 619 (1993) (affirming

6   trial court's sustaining of demurrer to plaintiff's UCL claim on grounds that the complaint

7   "identifie[d] no particular section of the statutory scheme which was violated" and thus did not

8   "describe the manner in which [defendant's] practice [was] unlawful"); *see also People v.*

9   *McKale*, 25 Cal. 3d 626, 635 (1979) ("Without supporting facts demonstrating the illegality of a

10  rule or regulation, an allegation that it is in violation of a specific statute is purely conclusionary

11  and insufficient to withstand demurrer.")

12       The test of whether a practice is "fraudulent" under the UCL is whether the defendants'

13  actions "had the capacity to mislead" (*Davis v. Wholesale Motors, Inc.,* 86 Haw. 405, 417 (1997),

14  citing *State v. U.S. Steel Corp.,* 82 Haw. 32, 51 (1996)) or "members of the public are likely to be

15  deceived."  *Committee on Children's Television ("CCTV") v. General Foods Corp.*, 35 Cal. 3d

16  197, 211 (1983).  This standard:

17           implies more than a mere possibility that the [practice] might
18           conceivably be misunderstood by some few consumers viewing it
             in an unreasonable manner.  Rather, the phrase indicates that the
             [practice] is such that it is probable that a significant portion of the
19           general consuming public or targeted consumers, acting reasonably
             in the circumstances, could be misled.
20

21  *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 500, 508 (2003).

22       Plaintiff's claims under Business & Professions Code section 17200 and HRS 480-1 are

23  premised entirely on the claims described above as they relate to Plaintiff's allegations that the

24  terms of the Indemnification Agreement were different from what she understood they were.  As

25  noted above, Plaintiff is bound by the terms of the Indemnification Agreement that she signed.

26       Furthermore, Plaintiff's UCL claims under California law are inapplicable as the

27  California UCL "contains no express declaration that it was designed or intended to regulate

    claims of non-residents arising from conduct occurring entirely outside of California."  *Norwest*

28

1   *Mortgage, Inc. v. Sup. Ct. (Conley)*, 72 Cal.App.4th 214, 222 (1999). Here, as in *Norwest*,

2   Plaintiff is a non-resident of California, and her claimed injuries attributable to BofH arose

3   outside of California's borders.

4          Moreover, Plaintiff's UCL claims are uncertain to the extent that she fails to state with

5   reasonable particularity the alleged business practices that were violated by BofH. By example,

6   Plaintiff claims that BofH violated California Penal Code section 550, which relates to claims

7   under an insurance policy, but the FAC is wholly lacking any allegations about BofH's (or

8   Plaintiff's) purported insurance, or that Plaintiff has standing to assert claims against BofH's

9   insurer. FAC, ¶¶86, 92-93. Plaintiff also provides no authority that the Hawaii UCL should be

10  governed by an alleged violation of California law.

11         By further example, Commercial Code section 4103 is improperly referenced by

12  Plaintiff, which relates to stopping payments on checks. FAC, ¶¶86, 91. There are no

13  allegations present that Plaintiff ordered a stop payment on any check, so that statute is wholly

14  inapplicable to this case. The claims also fail to describe with reasonable particularity how

15  Commercial Code section 4401 was purportedly violated. *Johnson*, *supra*, 2006 U.S. Dist.

16  LEXIS 61106 at *32, ("Although the Federal Rules of Civil Procedure adopt a flexible pleading

17  policy, every complaint must, at a minimum, give fair notice and state the elements of each claim

18  against each defendant plainly and succinctly"), citing *Jones v. Community Redevelopment*

19  *Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

20  **O.    Plaintiff's Unfair Competition Claims Are Uncertain**

21         Rule 12(e) states, in pertinent part:

22             If a pleading to which a responsive pleading is permitted is so
               vague or ambiguous that a party cannot reasonably be required to
23             frame a responsive pleading, the party may move for a more
               definite statement.
24

25         A motion for a more definite statement will be granted where the complaint does not

26  apprise the defendant of the substance of the claim being asserted, *FRA S.p.A. v. Surg-O-Flex of*

27  *America*, 415 F.Supp. 421, 427 (S.D.N.Y. 1927), or where the complaint is so indefinite that the

28  defendant cannot ascertain the nature of the claim being asserted and is therefore unable to frame

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1365099v9                                                24

1   a proper response. *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal.

2   1981). As the district court held in *Frederick v. Koziol*, 727 F.Supp. 1019, 1021 (E.D. Va. 1990),

3   a motion for a more definite statement will be denied only in situations where the complaint

4   actually gives the defendant fair notice of the claims. A defendant faced with an ambiguous

5   complaint is expected to move for a more definite statement. *Anderson v. District Bd. of Trustees*

6   *of Central Florida Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

7          As set forth above, Plaintiff's fraud claims are not pleaded with the required specificity.

8   Additionally, her claims for infliction of emotional distress are conclusory, and her UCL claims

9   are insufficiently pleaded.

10         Thus, the Court should grant BofH's Rule 12(e) motion for a more definite statement.

11  **IV.     CONCLUSION**

12         All of Plaintiff's claims start and end with the allegation that she suffered damages based

13  on three allegedly forged checks, as to which she withdrew her forgery charges and instructed

14  BofH to release her funds to the alleged forger. Her relationship with BofH was governed in this

15  instance by an account agreement and UCC § 4406(f) , which exclusively address the time frame

16  within which she must notify BofH of a forged check claim. For reasons known only to her,

17  Plaintiff not only ratified Niroula's authority to sign her checks, but having withdrawn her fraud

18  claims, she failed to meet the notification time deadline, and ***all of her claims*** based on those

19  allegedly forged checks are ***precluded as matter of law***.

20         Should this Court grant Plaintiff leave to amend on any of her claims, BofH requests that

21  she be required to meet the stringent pleading requirements of Rule 9 and Rule 11, and any claims

22  which Plaintiff cannot assert in good faith or with the necessary specificity required in federal

23  court should in future be dismissed with prejudice.

24  DATED:  September 19, 2007                          BUCHALTER NEMER
                                                         A Professional Corporation
25

26                                                       By _____
27                                                          James B. Wright
                                                            Attorneys for Defendant
28                                                          BANK OF HAWAII