1  STEPHEN M. SHAW, SB #107625

2  P.O. Box 2353

3  Honolulu, Hawaii  96804

4  Telephone:   (808) 521-0800

5  Facsimile:    (808) 531-2129

6  Email: shawy001@gmail.com

7

8  Attorney for Plaintiff

9  MEGUMI HISAMATSU

10

11  **UNITED STATES DISTRICT COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA**

13  **-SAN FRANCISCO DIVISION**

14

15  MEGUMI HISAMATSU,            )      CASE NO:    3:07-cv-04371-JSW

16                                              )

17                        Plaintiff,      )

18        vs.                               )      **SECOND AMENDED COMPLAINT**

19                                              )

20  KAUSHAL NIROULA;            )

21  BANK OF HAWAII,               )      **DEMAND FOR JURY TRIAL**

22  A Corporation; DOES 1-60;    )

23                                              )

24                        Defendants.  )      Judge: Honorable Jeffrey S. White

25                                              )      Courtroom:  2, 17th floor

26  _____)

27              **SECOND AMENDED COMPLAINT**

28        1.        Plaintiff Megumi Hisamatsu, at times relevant here was, and is a

29  resident of Osaka, Japan, and in connection with her following causes of action

_____

1

1    gives notice to defendants of her intent to access information, and demands that

2    defendants refrain from destroying, losing, overwriting, or purging any information

3    without the written consent of Plaintiff.

4

5                                    **JURISDICTION**

6

7        **2.1        Jurisdiction is grounded on removal by Bank of Hawaii ("BOH")**

8    **to this District Court.**

9        2.**2**        Defendant **Kaushal Niroula**, is an individual who resides in San

10   Francisco, California.

11       3.        Defendant Does 1-8, 32-35 are individuals who are associated with

12   defendant **Kaushal Niroula**, and who reside in San Francisco, California. Defendant

13   Does 9 and 10 are Defendant **Niroula**'s parents. Does 11-15 are members of his

14   immediately family.

15       4.        Defendant **BANK OF HAWAII** ("**BOH**") is, on information and belief, a

16   corporation headquartered in Honolulu, Hawaii, and authorized to transact business

17   in the State of California. **BOH** has an agent for service of process in California,

18   litigates in California; and, its corporate registration in 1998 is still listed as active by

19   the California Secretary of State, at C2066195. This Court has jurisdiction inter alia

20   pursuant to Article VI, Section 10 of the California Constitution, because the case is

21   an action not given by statute to other trial courts.

22       5.        Defendants DOES 1-60 are guilty of those acts alleged herein and will

23   be identified according to proof when their identities and connection to the individual

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

counts are known. In the event any defendant asserts the defense of advice of counsel, or advice of any other entity or person, said persons will be named as defendants in place of DOES 50-60, as discovered.

## **FACTUAL ALLEGATIONS INCORPORATED INTO EACH COUNT**

6.      On or about July 27, 2006, during a vacation in Hawaii, Plaintiff was befriended by Defendant **Kaushal Niroula**. Defendant represented that he was Plaintiff's neighbor at the short-term condominium rentals in Honolulu (Waikiki), where Plaintiff Hisamatsu was vacationing.

7.      Defendant **Kaushal Niroula** also represented that he headed an international consulting company and that his mother (Doe 9) was a Nepalese diplomat. He said his family (Does 9-15) was very rich, and that he was a friend of the Nepalese royal family. Eventually, defendant brought up the subject of real estate investments in Hawaii. Plaintiff had long been interested in Hawaii real estate, but had no visa which would permit her family an extended stay in the United States. **Kaushal Niroula** explained that he had succeeded in helping many of his business clients who invest in businesses, real estate and other projects in America. When Plaintiff mentioned that she had thought about a visa for longer visits in Hawaii with her children, defendant **Kaushal Niroula** further represented that he referred many of his clients to an immigration lawyer in the Bay Area who would be able to help Plaintiff get a business or investment visa. Defendant **Kaushal Niroula** added that Plaintiff would need to have investments in the United States if she got involved in the investment visa application process.

8.      Defendant **Kaushal Niroula,** unbeknownst to Plaintiff, was actually a criminal from San Francisco California, and he intended to victimize Plaintiff through a combination of criminal hoaxes well known to co-defendant **BOH**: (1) Nepalese Royal Family scam, (2) fraudulent investment visa scam, (3) Advance Fee Fraud, and (4) identity theft.

9.      The first hoax professes, as here, (a) close contacts with the Nepalese government (**Kaushal Niroula** claimed to be the best friend and classmate of the deceased prince of Nepal); (b) a family or related group with massive wealth; (c) threats to the group's wealth, due to turmoil in Nepal since the murder of the Nepalese royal family in 2001; (d) need for outside money to assist in the family's escape from Nepal,  and the transfer and reinvestment of funds from Nepal; (e) to rescue members of the group, or family, from imminent danger.

10.     The second hoax is a variant of fraudulent green card lottery services, whereby a businessman or attorney uses misrepresentations and unfair practices to promote services to consumers. The variation here was to offer investment, or EB-5 visas. Like the visa lottery scams, Defendant **Kaushal Niroula** represented (a) affiliation with an immigration lawyer who would successfully process EB-5 visas, (b) proven success in assisting foreigners satisfy the minimal investment of $500,000 in a new enterprise in the United States for approval of an EB-5 visa application.

11.     Defendant **Kaushal Niroula also** employed the advance-fee fraud scheme, whereby Plaintiff could recover the money **Kaushal Niroula** eventually stole from Plaintiff (to save Nepalese family members in great personal danger due to turmoil in that country's government). In order to recover, Plaintiff Hisamatsu was

1    asked to take several more steps: help release a hold on **Kaushal Niroula**'s bank

2    account, and give him another $41,000, in San Francisco.

3        12.        Additionally, **Kaushal Niroula** deployed identity theft as the

4    centerpiece of his criminal confidence schemes. Under the false pretext of preparing

5    and advising Plaintiff for her visa application through a Bay-Area attorney, **Kaushal**

6    **Niroula** was able to steal her personal information, steal three blank BOH checks

7    from Plaintiff's new BOH checking account, and forge her signatures for a total loss

8    of $508,000.00.

9        13.        In its Identity Theft Guide, **BOH** falsely and fraudulently represented to

10    consumers generally:

11            **"WHAT THE BANK IS DOING**

12            **Bank of Hawaii provides identity theft victims with responsive,**

13    **caring service from beginning to end. When notified by a customer of a**

14    **possible identity theft, Bank of Hawaii will ensure that accounts are closed**

15    **and protected properly. Designated staff members will also follow up with**

16    **customers and monitor accounts for any suspicious activity. Our goal is to**

17    **ensure that customers experience complete resolution and consistent**

18    **follow-through so their concerns and issues are handled in a timely and**

19    **caring manner."**

20

21        14.        Unaware of defendant **Kaushal Niroula**'s evil intent, Plaintiff was

22    persuaded into thinking that **Kaushal Niroula**'s family (Does 9-15) was wealthy and

23    connected to the power elite in Nepal. Plaintiff was further led to believe that

24    **Kaushal Niroula** was an international businessman, involved in investment visa

25    consulting.

15.     As a result of the confidence **Kaushal Niroula** instilled in Plaintiff about his business skills, contacts, and upbringing, Plaintiff expressed interest in investment in Hawaii. **Kaushal Niroula,** in turn, made several real estate presentations to Plaintiff which further deepened her trust in Defendant **Niroula**'s business skills. While rejecting the real estate proposals, Plaintiff Hisamatsu long maintained an interest in obtaining a visa which would allow her, and her family, to stay for longer periods in the United States.

16.     Defendant **Kaushal Niroula** represented that he was very familiar with the EB-5 investment visa programs in the United States, and had obtained successful results for many of his clients by working through a lawyer near San Francisco. According to **Niroula**, Plaintiff would not actually need to complete an investment to apply for the visa; a minimal balance of $500,000 in a domestic bank would suffice. **Kaushal Niroula**'s function, he represented, was to help his clients invest in United States properties; or, to at least move the minimum required funds into the United States before sending his clients to the immigration lawyer. Defendant **Niroula** volunteered to help Plaintiff free of charge. To begin the EB-5 process, he advised Plaintiff Hisamatsu to wire at least $500,000 into a United States bank account. Defendant **Kaushal Niroula** eventually gave Plaintiff the name and telephone number of a lawyer in the Bay Area, who would accept the materials he prepared for the clients to support the finished application.

17.     **Kaushal Niroula** next persuaded Plaintiff to start arranging wire transfers upon her return to Japan. For his part, **Niroula** volunteered to make sure that his contacts at **Bank of Hawaii (BOH)** had properly posted the wire transfers to

1    Plaintiff Hisamatsu's account. Afterwards, Defendant **Niroula** would prepare the

2    documents for Plaintiff's first contact with the immigration attorney in the Bay Area.

3    Plaintiff was led to trust **Niroula** enough to seek his "help" opening the bank

4    account.

5        18.        On or about August 16, 2006, Defendant **Kaushal Niroula** took

6    Plaintiff to Defendant **Bank of Hawaii (BOH's)** Waikiki branch and introduced

7    Plaintiff to a **BOH**'s employee Lynn Bronios, who seemed to be extremely friendly

8    with **Kaushal Niroula.** Defendant represented to Plaintiff Hisamatsu that he had

9    several other friends at **BOH** who would help with transfers of funds, and eventual

10   verification for American immigration officials.

11       19.        At the same date and place, Defendant **Niroula** and **BOH** employees

12   helped Plaintiff Hisamatsu open personal checking account no. 0002-937182 at

13   Bank of Hawaii ("Plaintiff's BOH account"). Plaintiff, with Defendant **Niroula**'s "help",

14   used her Japanese passport and information therein as identification for BOH staff,

15   who were also "helping". **Plaintiff signed a customer signature card which she**

16   **was led to believe would be used to verify the signatures on her checks.**

17       20.        While familiarizing Plaintiff Hisamatsu with bank staff and new account

18   procedures, Defendant **Niroula,** without Plaintiff's knowledge or consent, stole three

19   temporary checks (numbered 101-103) as well as Plaintiff Hisamutsu's identity.

20       21.        On August 22, 2006, relying on Defendant **Niroula**'s representations

21   about domesticating her family's savings in the United States for her visa, and

22   relying on the confidence **BOH** employees had in **Niroula**, Plaintiff caused

23   $256,179.29 to be wired from Japan into her new **BOH** account, opened on August

16, 2006. Because it was a new account, Plaintiff's funds would not be immediately available.

22.    Between August 24 and September 18, 2006, without Plaintiff's knowledge or consent, Defendant **Kaushal Niroula** forged Plaintiff's signature on two of her checks he had stolen previously, and another he had obtained as part of his criminal visa fraud scheme. He deposited them into <u>his</u> **BOH** account, all without Plaintiff's knowledge or authorization. On information and belief, these checks were not teller-processed.

23.    On August 24, 2006, without **properly** comparing signatures **on Plaintiff's signature card** for forgery. Defendant **BOH** debited Plaintiff's <u>new</u> BOH account for $8,000 from one of Defendant **Kaushal Niroula**'s forged checks. Plaintiff's account was only eight days old, and **Niroula** used Plaintiff's <u>temporary</u> checks. Defendant **BOH** did not contact Plaintiff prior to, or during the transaction. **Had BOH simply contacted Plaintiff at this point, none of the subsequent forgeries would have cleared the bank.**

24.    On August 28, 2006, without verifying the signature, defendant **BOH** debited Plaintiff's BOH account for $95,000 from another <u>temporary</u> **BOH** check forged by defendant **Kaushal Niroula**. Defendant **BOH** did not contact Plaintiff prior to the transaction. **Had contact been made with Plaintiff, the next forgery would not have cleared the bank.**

25.    On August 29, 2006, Plaintiff returned to her residence in Osaka, Japan. Prior to returning, she requested that **BOH** customer service (1) email to her all confirmation of wired deposits, and (2) send her bank statements to her address in

1    Japan. Plaintiff had also provided **BOH** Customer Service with her email address

2    which Plaintiff Hisamatsu could access in Japan, as well as the United States.

3    　　　26.　　On September 5, 2006, Plaintiff caused $299,988.00 to be wired from

4    Japan into Plaintiff's BOH account, opened just twenty days earlier.

5    　　　27.　　As part of   Defendant **Niroula**'s ongoing criminal enterprise of

6    immigration fraud (18 USC §1546), money laundering (18 USC §1956(a)(2)(A), wire

7    fraud (18 USC §1343), bank fraud (18 USC §1344), and immigration document fraud

8    (8 USC §1324c), defendant **Niroula** deceptively represented that he was preparing

9    Plaintiff's application for an EB-5 investment visa by organizing exhibits for the

10   application which would soon be finalized by a Bay Area immigration lawyer. He

11   urged Plaintiff to immediately send him a few BOH checks to show her U.S. address

12   printed thereon, so that immigration could verify that she had both the contacts with

13   the United States and the banking relationship **Niroula** misrepresented was required

14   for the EB-5 visa application. Eager to apply for an EB-5 visa (not knowing

15   defendant **Niroula** had already stole Plaintiff's BOH checks from her and forged

16   them), Plaintiff sent defendant **Niroula** three checks.

17   　　　28.　　For the third time, on September 18, 2006, defendant **BOH** debited

18   Plaintiff's BOH account. This time it was for $405,000 (check#105), based on

19   another check forged by **Kaushal Niroula**. BOH did not contract Plaintiff prior to, or

20   during the transaction. BOH did not competently verify the signature, and **BOH** did

21   not contact Plaintiff in Japan.

22   　　　29.　　Since no statement from BOH had been returned to Plaintiff's address

23   in Japan during September, Plaintiff called **BOH** on or about October 2, 2006, and

received the shocking news that her family savings in her **BOH** checking account had been drained of $508,000.00 by transactions which were unauthorized and unknown to her. Plaintiff, at that point, promptly notified **BOH** that the purported signatures on the checks debited 8/24/06, 8/29/06 and 9/18/06 were unauthorized.

30.      **BOH** employees refused to contact the police or take any action to recover the funds despite Plaintiff's pleas for help. In violation of BOH's Identity Theft Guide and other procedures, **BOH** employees insisted that Plaintiff Hisamatsu would have to return to Hawaii if she wanted to pursue the matter further.

31.      On October 2, 2006, Plaintiff left Japan and flew to Honolulu. On October 3, 2006, Plaintiff met with defendant **BOH**'s employees and swore out three affidavits in support of claims for reimbursement for each forged check. **One employee is now known as Chester Dods.** The pre-printed BOH claim form falsely, **partially,** and fraudulently represented: "Payment of your claim is contingent upon the results of the Bank's investigation. The Bank's decision to pay or not to pay your claim will be made in light of all the facts and circumstances after completion of its investigation." Copies of the claims and affidavits are attached hereto as Exhibits A.1 – A.9, and are incorporated herein by reference. **At the time BOH had decided not to pay the claim, but to deny it.**

32.      At the meeting, Plaintiff repeatedly asked **BOH** employees, **including Dods** to call the police, but **BOH** staff, **including Dods** refused despite having sufficient information to form a reasonable suspicion that Plaintiff was a victim of a confidence scam, visa and bank fraud, and identity theft. All are very serious felonies.

33.    Acknowledging that the unauthorized transactions, as sworn to by Plaintiff on October 3, 2006 (Ex A.1-A.9) were forgeries, **BOH** froze  defendant **Kaushal Niroula**'s BOH account, which still contained over $250,000 of Plaintiff Hisamatsu's family savings.

34.    On or about October 4, 2006, Plaintiff is informed that defendant **Kaushal Niroula** went to **BOH** and informed **BOH** employees he would return Plaintiff's money. Afterward, **Kaushal Niroula** contacted Plaintiff and assured her that he had sufficient funds in San Francisco to return her money.

35.    From October 4, 2006 to October 19, 2006, **BOH** employees, **including Chester Dods,** violated their Identify Theft Guide and other procedures, and were not responsive to Plaintiff's repeated requests for investigation and police involvement. Instead, Mr. Dods made statements to Plaintiff that **Niroula** was not a bad person, that his parents were Nepalese diplomats that **Niroula** would return her money, and that there was a reasonable delay in wire transfers due to a bank holiday in Nepal. Meanwhile, on October 5, 2006, defendant **Niroula** left Honolulu for his residence in San Francisco, California.

36.    Defendant **BOH** refused to pay Plaintiff's claim, or to adequately investigate the missing $508,000, as represented in the claim form. (Exhibits A.1, A.4 and A.7) or in its Identity Theft Guide, at ¶13, supra (excerpt).

37.    On October 17, 2006, defendant **Kaushal Niroula** contacted Plaintiff, from San Francisco, and persuaded her that his family had been placed in a very dangerous situation due to their planned departure from Nepal, and the only way to save them from harm was to "borrow" Plaintiff Hisamatsu's money. He further

represented that it only became a problem because of delays in wiring  funds to replace her lost money. **Niroula** assured Plaintiff that her funds were included in his family's fortune being wire-transferred from Nepal to the United States, as part of the family (Does 9-15) repatriation plan. Involvement by the FBI and IRS over Plaintiff's claim at BOH, and related tax issues, had interrupted the plan, according to **Niroula**. The persons assisting his family had been unable to transfer money, and they thought his family was cheating them out of their commissions. **Niroula** persuaded Plaintiff this situation was being cleared up in a few days, and he would immediately replace her lost funds. Because of the inability to wire funds to Hawaii, **Niroula** asserted that Plaintiff would be required to fly to San Francisco to complete the transaction. Defendant **Kaushal Niroula** also persuaded Plaintiff that since she would receive her funds in San Francisco, that she would also be able to retain the Bay Area immigration attorney, for the EB-5 investment visa.

38.     Additionally, on or about October 17, 2006, defendant **Kaushal Niroula** convinced Plaintiff that because of the delay in wiring money from Nepal to San Francisco, individuals assisting his family escape from Nepal became convinced that they were being cheated by **Niroula**'s relatives. Consequently, they kidnapped **Kaushal Niroula**'s sister, in Nepal.

39.     On October 20, 2006, as a direct result of **BOH**'s statements in its claim forms and conciliatory attitude toward defendant **Kaushal Niroula**, Plaintiff flew to San Francisco to recover her money. She opened an account for **Niroula**'s anticipated deposit with Citibank, in San Francisco, account no. 055204855. In the event Defendant **Niroula** returned her family savings. Plaintiff intended to withdraw

her claims to BOH (Exs A.1, A.4 and A.7). If not, Plaintiff reasonably believed that she was still protected by the claims pending with **BOH**, in the event of **Niroula**'s default.

40.     In San Francisco, defendant **Kaushal Niroula** persuaded Plaintiff that he and Does 9-15 would both repay her, <u>and</u> provide her with additional funds so that there would be no further problems between them. **Kaushal Niroula** then deposited a check for $890,000 into Plaintiff's Citibank account in San Francisco, and Plaintiff verified the deposit on October 21, 2006 (a Saturday) by telephone with customer service. Plaintiff was informed by Citibank customer service; however, that funds would not be available for three (3) days.

41.     Defendant **Niroula** falsely represented that Plaintiff Hisamatsu had an appointment with the immigration attorney. The attorney, according to **Niroula**, changed several appointments afterwards due to the press of business. The final appointment for 10/28/06, was canceled due to a traffic mishap, according to **Niroula**. At the same time, beginning on October 23, 2006 (Monday), Defendant **Niroula** persuaded Plaintiff (1) that the kidnappers were threatening to kill his sister in two days unless a ransom was paid, and (2) that San Francisco and Honolulu associates of these Nepalese nationals had threatened Plaintiff Hisamatsu's life. Under the control of a criminal and as a result of reasonable fear for her life, Plaintiff was persuaded to accept **Niroula**'s airline ticket for her return to Japan on October 29, 2006, without a stopover in Hawaii.

42.     As a further direct result of Plaintiff's pending claims with **BOH**, **Kaushal Niroula**'s control and representations, **BOH**'s statements in the claim form,

and BOH's vouching for **Kaushal Niroula**, Plaintiff Hisamatsu acted promptly to help **Kaushal Niroula.** On October 25, 2006, therefore, Plaintiff opened another account in San Francisco, this time with Wells Fargo Bank.

43.    Next, Plaintiff called her **BOH** branch and asked the manager to wire $41,000 to her San Francisco Wells Fargo account. From those funds, Plaintiff loaned Defendant **Kaushal Niroula** another $41,000 for a ransom payment for his sister.

44.    An "Indemnification of Liability" (Ex "B") was drafted by **BOH** employees and given to one of Plaintiff's friends, in Honolulu (without a cover letter), to fax to Plaintiff in San Francisco. **BOH** deceptively omitted a letterhead and the document number from the form. Exhibit "B". **The author, date of drafting and address of Ex B's origin are known exclusively by BOH and not disclosed.**

45.    On October 25, 2006, Defendant **BOH**'s "Indemnification of Liability" form (Ex "B") was faxed to Plaintiff's hotel in San Francisco. While Plaintiff reasonably believed that her claims to BOH were not affected by this unofficial looking form, **and that BOH was still investigating**, **BOH** would not release the holds on **Kaushal Niroula'**s BOH account unless Plaintiff signed the form. To that end, defendant **Kaushal Niroula** rushed Plaintiff to a notary in the County of San Francisco, to sign **BOH**'s form with no indicia of origin or letterhead. Exhibit "B". According to **Niroula**, his family (Does 9-15) could not transfer funds to the United States (and to repay Plaintiff) until the holds on his BOH account were removed.

46.    Because of the **BOH's employees (including Mr. Dods)** vouching for Defendant **Kaushal Niroula** and since Defendant **Niroula** had deposited adequate

funds ($890,000.00) to Plaintiff's Citibank account in San Francisco, Plaintiff signed the form drafted by defendant **BOH** on 10/25/07. She faxed it from San Francisco to **BOH**, and called **BOH** to confirm that it was received. **Chester Dods**, **BOH**'s security employee said he would have to talk to Defendant **Kaushal Niroula** (the forger). **Niroula** then called **BOH,** and **Mr. Dods** congratulated defendant **Kaushal Niroula.**  Upon receipt of a copy of the form, **BOH** released its hold on the criminal, defendant **Kaushal Niroula**'s BOH account #0002-933063 for the balance of $257,546.25 (Plaintiff's money). Plaintiff is informed and believes that the bank has no original of the form, unless it obtained it through further aiding and abetting of a criminal, defendant **Kaushal Niroula**.

47.      Prior to execution of the form prepared by **BOH** (Ex. B), no one from **BOH** explained its meaning, offered to translate it, or otherwise assisted Plaintiff. At all times, **BOH** knew that Plaintiff, a Japanese national in San Francisco, could not adequately understand the level of English in the bank's forms, or foreign bank procedures. **The parties at all times had unequal bargaining power and BOH was concealing information**. At all times, Plaintiff thought that the document (Ex B) would have <u>no</u> <u>effect</u> on the bank's existing obligation to replace her stolen money. Plaintiff thought the form was only a temporary formality to facilitate the transfer of **Niroula**'s family (Does 9-15) funds from Nepal, for her benefit, and for **Niroula**'s family's safety. Plaintiff did not understand the hidden meanings of **BOH**'s unofficial "Indemnification of Liability" (Exhibit "B"), nor did she think it would impair her existing claims. Exs. A.1, A.4 and A.7. On October 29, 2006, after numerous broken appointments with the immigration attorney (according to **Niroula**), the phony threats

1    against Plaintiff's life; and since Defendant **Niroula**'s deposit had not cleared,

2    **Niroula** bought Plaintiff an airline ticket, and she left for Japan.

3         48.       After returning to Japan, on October 31, 2006, Plaintiff learned that

4    **Niroula**'s deposit to her San Francisco account had been dishonored, as against

5    insufficient funds. **Plaintiff reasonably believed that BOH was still keeping its**

6    **promise of 10-3-06 to investigate the forgeries, and to pay the claims after the**

7    **investigation.**

8                              **<u>COUNT ONE</u>**

9                    **(Promissory Fraud Or Fraud In The Inducement Against**
10                    **Defendants Kaushal Niroula and Does 1-10, 31-33)**
11

12        49.       Plaintiff realleges and incorporates the foregoing paragraphs.

13        50.       False representations of important facts, in addition to the foregoing,

14    were made by defendant **Kaushal Niroula** in the County of San Francisco, on or

15    about October 4, 17, 20 and 28, 2006. First, **Kaushal Niroula** falsely represented

16    that he had taken money from Plaintiff's BOH account due to an extreme family

17    emergency, including the threatened kidnapping of his sister in Nepal, and the

18    inability to quickly access defendant's own funds to help his family. Second,

19    **Kaushal Niroula** represented that after the crisis he had secured the funds to

20    replace those taken from Plaintiff. Third, Defendant **Kaushal Niroula** urged Plaintiff

21    to be very careful and to return as soon as possible to Japan since associates of the

22    individuals who eventually kidnapped **Niroula**'s sister made threats to harm Plaintiff.

23    Fourth, defendant **Kaushal Niroula** required a final sum of money to pay to the

24    kidnappers.

51.     Defendant **Kaushal Niroula** knew that the foregoing statements were false (or he made them recklessly and without regard for the truth).

52.     Defendant **Kaushal Niroula** intended to defraud Plaintiff; that is, he intended to induce reliance by Plaintiff on his misrepresentations and contemplated that her reliance thereon would permit defendant and Does 1-20 to take more of Plaintiff's savings. Plaintiff did, in fact, rely on the representations.

53.     Plaintiff justifiably and reasonably relied on **Niroula**'s foregoing representations; based upon her knowledge, and internet research about the turmoil in Nepal; based upon **BOH**'s assertion it was investigating the transactions; and, **BOH**'s conciliatory unwillingness to inform Plaintiff that it was taking any action against Defendant **Kaushal Niroula** as a result of his unauthorized transactions. In addition, Plaintiff could not, in the exercise of reasonable diligence have discovered defendant **Kaushal Niroula**'s secret intention.

54.     Had Plaintiff known of defendants' actual intentions and evil motives, she would not have signed the BOH document (Ex. "B") in San Francisco, and she would not have trusted **Kaushal Niroula** with the replacement of her money, or with "managing" her visa application, as stated above.

55.     Defendant **Kaushal Niroula** failed to abide by his promise in that the deposit he made in San Francisco to Plaintiff Hisamatsu's Citibank account was by a check drawn on insufficient finds, for $890,000. **Kaushal Niroula** actually damaged Plaintiff in this, and other amounts, and his representations were a substantial factor in causing harm to Plaintiff.

56.       As a direct and proximate result of the conduct of the defendants, and each of them, Plaintiff Hisamatsu has been deprived of the use and benefit of her money, and has sustained substantial actual damages. Defendants' conduct has been the legal and proximate cause of actual or special damages to the Plaintiff in an amount to be determined at the time of trial, including, but not limited to expenses and costs incurred in connection with the loss of her $508,000 and other foreseeable economic losses, all in a sum to be shown by proof at trial.

57.       As a further direct and proximate result of the conduct of the defendants, and each of them, Plaintiff has sustained general damages, plus interest, in an amounts to be shown by proof at the time of trial, but which exceed 2.5 million dollars.

58.       In committing the acts alleged in this, and other counts, defendants acted intentionally, oppressively, maliciously and fraudulently, with a conscious disregard of the Plaintiff's rights, with the intention of benefiting themselves financially; with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or willful conduct, or an entire want of care raising the presumption of a conscious indifference to consequences, justifying imposition of exemplary damages; and with the intention of causing, or recklessly disregarding the probability of causing, injury to Plaintiff. Defendants, as employers, had advance knowledge of the unfitness of employees involved herein, and employed them with a conscious disregard of the rights or safety of others and authorized or ratified the wrongful conduct for which damages are claimed. The oppression, fraud, or malice of defendant corporate employers was on the part of one or more officers, directors, or

managing agents. In so acting, the defendants intended to, and did, vex, annoy, injure and harass the plaintiff. As a result of such conduct, Plaintiff is entitled to exemplary and punitive damages.

## COUNT TWO

### (Tort In Essence Against Defendant Kaushal Niroula and Does 1-20)

59.     Plaintiff realleges and incorporates the foregoing paragraphs.

60.     Defendant **Kaushal Niroula** and DOES 1-20 owed nonconsensual duties to others, including Plaintiff Hisamatsu, to comply with the criminal laws of the State of California. **Defendant Niroula continues to harass and threaten Plaintiff by telephone and the internet.**

61.     The following statutes embodied a public policy to protect a class of persons of which Plaintiff is a member:

        A.     Cal Pen Code §476a (2007) (Making or delivering check with insufficient funds).

        B.     Cal Pen Code §518 (2007) (Extortion).

62.      On or about October 20, 2006 in the County of San Francisco, Defendants **Kaushal Niroula** and Does 1-20 violated their nonconsensual duties to Plaintiff and others so situated by depositing a check for $890,000 into Plaintiffs' Citibank account in San Francisco at a time when defendants knew the check was drawn on insufficient funds.

63.     Between October 20, 2006 and October 29, 2006, in the County of San Francisco, Defendant **Kaushal Niroula** threatened Plaintiff with bodily harm from

Nepalese nationals involved with kidnapping his sister, if Plaintiff did not (1) pay him $41,000 in San Francisco, (2) convince **BOH** (from San Francisco) to release the hold on Defendant **Kaushal Niroula**'s BOH account/or funds, (3) keep her cell phone turned off, (4) stay in her hotel, or drive around the Bay Area with **Niroula** (who falsely represented he was "trying" to arrange the meeting with the immigration lawyer), and (5) return on 10-29-06, to Japan.

## **COUNT THREE**

### **(Conversion Against Defendant Kaushal Niroula and Does 1-10)**

64.     Plaintiff realleges and incorporates the foregoing paragraphs.

65.     Between August 16, 2006 and October 5, 2006, in Honolulu, Hawaii; and between October 5, 2006 and November 1, 2006, in San Francisco, California, defendant **Kaushal Niroula** actually interfered with, and exercised dominion over Plaintiff's property including confidential identity, bank and telephone information, and money, inconsistent with the ownership of Plaintiff. Plaintiff demanded return of the property.

66.     Defendants interference or exercise of dominion over Plaintiff's property was intentional and in defiance of her rights, causing Plaintiff's damages as aforesaid.

## **COUNT FOUR**
### **(Trespass To Personal Property Against Defendant Kaushal Niroula and Does 1-10)**

67.     Plaintiff realleges and incorporates the foregoing paragraphs.

68.     Between August 16, 2006 and about October 5, 2006 in Honolulu, Hawaii, and between about October 5, and November 1, 2006 in San Francisco, California, defendant **Kaushal Niroula** intermeddled with the chattel of Plaintiff or dispossessed Plaintiff of the chattel.

## COUNT FIVE

### (Constructive Trust Against Defendant Kaushal Niroula and Does 1-20)

69.     Plaintiff realleges and incorporates the foregoing paragraphs.

70.     Defendant **Kaushal Niroula** has money belonging to Plaintiff to which he is not justly entitled. Some of the money is in San Francisco, California.

71.     Defendant's duty is to retransfer the money to Plaintiff, who is entitled thereto to possession.

72.     Defendant **Kaushal Niroula** will be unjustly enriched if allowed to keep Plaintiff's money.

73.     A constructive trust should be imposed on defendant's accounts and property, plus accrued interest.

## COUNT SIX

### (Equitable Lien Against Defendant Kaushal Niroula and Does 1-20)

74.     Plaintiff realleges and incorporates the foregoing paragraphs.

75.     Defendants own property which may be reached by Plaintiff Hisamatsu as security on the ground that defendant **Kaushal Niroula** will be unjustly enriched if allowed to retain the money.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

76.    An equitable lien should be imposed against defendants in favor of Plaintiff on the proceeds of all money taken by defendant.

## COUNT SEVEN

### (Civil Conspiracy Against Defendants Niroula And DOES 1-32)

77.    Plaintiff realleges and incorporates the foregoing paragraphs.

78.    Defendant **Kaushal Niroula** and Does 1-32 agreed or combined by concerted action to accomplish numerous criminal or wrongful acts; or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means.

79.    Defendants **Kaushal Niroula** and Does 1-32 intentionally formed, planned, and operated the conspiracy which directly and proximately caused damage to Plaintiff from defendants' planning the intentional acts and civil wrongs done in furtherance of the agreement and common design to steal Plaintiff's identity, and savings, and to physically and emotionally injure Plaintiff.

## COUNT EIGHT

### (Against BOH, Does 25-38. Violation Of Cal B&P §17200, et seq, And Deceptive Acts Or Practices)

80.    Plaintiff realleges and incorporates the foregoing paragraphs.

81.    On October 25, 2006, in the County of San Francisco, Plaintiff received, by fax, an "Indemnification of Liability" (Ex "B"), crafted by employees or agents of **BOH**. The sole, **undisclosed**, purpose of preparing this form was to destroy Plaintiff's claim against **BOH**.

82.     At all times, during the selection of the form for **BOH**'s "Indemnification of Liability", agents or employees of **BOH** knew that Plaintiff was in San Francisco, California; **and, with the assistance, encouragement and delay by BOH, Plaintiff was  under** the control of a criminal, who had just forged her name on $508,000 in BOH checks.

83.     **BOH**, its agents and employees, expressly aimed their efforts to coerce Plaintiff into signing the "Indemnification of Liability" at the State of California, its laws and processes. **BOH** targeted the State of California as the situs of the execution of its form, <u>and</u> cancellation of Plaintiff's claims for reimbursement.

84.     **BOH** knew at the time it selected the **language for the** form for indemnification that it would cause harm to Plaintiff in San Francisco, California. **BOH** knew that Co-defendant **Kaushal Niroula** was present in San Francisco and was, at the same time, coercing Plaintiff to sign, and even notarize **BOH**'s indemnity form (Ex "B").

85.     The offending transactions in this count occurred in, and arose out of, the receipt by Plaintiff of **BOH**'s indemnity form in San Francisco, California, at the sole behest of defendant **BOH**. At no time did **BOH** request or require that Plaintiff first return to Hawaii to execute **BOH**'s indemnity form (Ex "B").

86.     **BOH refused to pay a valid unauthorized transaction claim; and instead maneuvered Plaintiff into a sham investigation which included direct contact with a known forger and thief. BOH thrusted its indemnity form into California. BOH knew at the time that Plaintiff had a special vulnerability, as an**

1    **identity theft and forgery victim. These tactics were** unlawful, unfair, or

2    fraudulent business practices.

3    Among other things, to induce Plaintiff to sign, **BOH** (1) omitted the origin and

4    drafter (**BOH**); (2) the form (Ex "B") failed to provide full disclosure of the rights of the

5    parties; (3) Ex "B" left out required disclosures indemnifying **BOH** from negligence,

6    and other causes of action; (4) the form violated public policy in that it expressly

7    attempted a  withdrawal of the prosecution of the crime of forgery, which was

8    beyond the capacity or legal authority of **BOH**; (5) the purported withdrawal of the

9    crime of forgery rendered the indemnification agreement void for insufficient

10   consideration; (6) to the extent **BOH** characterizes the form as anything other than

11   one for indemnity, it misrepresented and misinformed Plaintiff into thinking the form

12   was a temporary measure to achieve a large wire transfer funds from Nepal by

13   **BOH**'s release of holds on **Niroula's** BOH account; and**, (7) the following material**

14   **information was concealed by BOH when it offered the form:**

15          **A.    The $257,546.25 in Defendant Niroula's account belonged**

16          **to Plaintiff, and she did not request that her money be paid to Niroula or**

17          **anyone else.**

18          **B.    The $257,546.25 in Defendant Niroula's account had been**

19          **frozen, for Plaintiff's benefit, by BOH.**

20          **C.    BOH's form (Ex "B") had been intentionally crafted to**

21          **extinguish Plaintiff's continuing right to reimbursement of $508,000 at**

22          **the time it would be signed by Plaintiff in San Francisco, California on**

23          **10/25/06.**

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

1          **D.**      **The "forgery dispute" referenced on 10/25/06 in BOH's form**

2          **(Ex "B") secretly meant to BOH, the claims Plaintiff made for**

3          **reimbursement (Ex. A.1, A.4 and A.7), of over $508,000 from BOH.**

4          **E.**      **The phrase in the 10/25/06 form (Ex "B") faxed to San**

5          **Francisco to Plaintiff "arising out of the Bank of Hawaii having paid the**

6          **funds to Kaushal Niroula" was secretly equivalent, for BOH, to the**

7          **outstanding claims Plaintiff made against BOH for reimbursement (Ex**

8          **A.1, A.4 and A.7).**

9          **F.**      **That BOH had no reason to deny Plaintiff's claims at the**

10          **time its form (Ex "B") was being prepared for signature in San**

11          **Francisco.**

12          **G.**      **That the effects of extinguishing Plaintiff's claims for**

13          **$508,000 against BOH would be in San Francisco on 10/25/06.**

14          **H.**      **BOH would deny the pending claims for reimbursement if**

15          **the form was signed. ¶86 [count 8], ¶123 [count 13],**

16          **I.**      **If the form was signed in San Francisco, BOH would deny**

17          **Plaintiff's reimbursement claims, asserting that Plaintiff ratified**

18          **(adopted as her own) the signatures forged by a criminal on her checks.**

19          **J.**      **If the form was signed, BOH would deny the claims,**

20          **asserting that Plaintiff recanted $508,000.00 in claims against BOH for**

21          **paying on the forged checks (to be added by further amendment).**

1    **K.     If the form was signed, BOH would deny the claims,**

2    **asserting that an agency relationship was formed between Plaintiff and**

3    **the forger.**

4    **L.     BOH did not disclose on FAC, ex "B", that as part of**

5    **Plaintiff's duty to cooperate with BOH's investigation (ex A.1, A.4, A.7),**

6    **Plaintiff's claims would not be delayed, or reduced, if she refused to**

7    **sign the "Indemnity of Liability" form.**

8    **M.     BOH did not disclose on ex "B", that as part of her duty to**

9    **cooperate with BOH's investigation (ex A.1, A.4, A.7) Plaintiff's claims**

10   **would not be delayed or reduced if she refused to negotiate directly with**

11   **the forger.**

12   **N.     BOH did not disclose on FAC, ex "B", that the term**

13   **"funds", in ¶(last) of ex "B", meant $508,000.00, and <u>not</u> the $257,546.25**

14   **released to the forger; that is, BOH was attempting to indemnify itself**

15   **from more than the amount it released to the forger.**

16   **O.     If the form was signed, BOH would use exhibit "B" as a**

17   **means to delay Plaintiff's claims for reimbursement.**

18   **P.     If the form was signed, there was no provision in the form**

19   **disclosing Plaintiff could pay a fee and obtain protection against**

20   **negligence.**

21   **Q.     If the form was signed, BOH would stop its investigation of**

22   **Plaintiff's claims for reimbursement (to be added by further**

23   **amendment).**

26

1    **R.    If the form was signed, there was no clear, specific,**

2    **assumption of liability by Plaintiff.**

3    **S.    BOH did not disclose that if the form was signed it would**

4    **(according to BOH) reactivate its 60-day "limitations" period to file**

5    **reimbursement claims (to be added by further amendment).**

6

7    87.    Plaintiff, and other members of the public are likely to be deceived by

8    defendant **BOH**'s use of "indemnity" forms. Plaintiff was actually deceived by the

9    form, relied upon it, and sustained damages.

10    88.    The conduct by defendant **BOH** alleged here, and elsewhere in this

11    complaint, in obtaining the signature on a form in San Francisco, and the use of the

12    form to extinguish Plaintiff's claim upon signing it, constituted misrepresentations,

13    omissions, or practices which were deceptive acts.

14    89.    Defendant **BOH** engaged in practices intended to deceive the public,

15    including Plaintiff, forcing fraudulent indemnity forms on identity theft or forgery

16    victims, to avoid paying valid claims for reimbursement to those victims, including

17    Plaintiff. This conduct as further described in this count is a fraudulent business

18    practice under section 17200 of the California Business and Professions Code.

19    90.    As further detailed in this complaint, defendant **BOH**'s proffer of a

20    misleading indemnity form to Plaintiff, in San Francisco, was intended to extinguish,

21    when signed, Plaintiff's BOH claim for $508,000.00 of her family's savings. There

22    was no utility in defendant **BOH**'s conduct which justified this harm to Plaintiff's

23    property and person, and **BOH**'s conduct was immoral, unethical, oppressive,

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

unscrupulous, or substantially injurious to consumers, including Plaintiff. As either an indemnification or release, Exhibit "B" is invalid under the following minimal standards:

A.      There is no clear, positive and unequivocal assumption of liability by Plaintiff, set out with requisite specificity;

B.      There is no clear, unequivocal indemnification from **BOH**'s own negligence, or any reference at all to negligence;

C.      "B" was an attempt at indemnification against gross negligence, or by implication, intentional torts;

D.      The partial disclosures in the indemnification are strictly construed against the drafter, **BOH**;

E.      Partial disclosures are construed against **BOH**, including the phrase "forgery dispute" which is capable of more than one meaning. The forgery dispute is between the public law enforcement agencies, and defendant **Kaushal Niroula**, as an official criminal matter. There is no forgery dispute between **BOH** and defendant **Kaushal Niroula**. There can be no forgery "dispute" between Plaintiff and **BOH** because Plaintiff did not forge her own checks.

F.      The Indemnification of Liability form attached at Exhibit "B" to this complaint was obtained by **BOH** through fraud, duress, undue influence, mistake, breach of fiduciary or quasi fiduciary duty, bad faith, oppression, malice.

G.      The form is adhesive and unconscionable.

H.      The form violates statutes including Cal Penal Code 550(b); Cal. U Com. Code 4-401. §§4401 and 4103.

---

28

I.      The form was contrary to a substantial public interest or gained through inequality of bargaining power.

J.      The form unfairly limited the obligations and liabilities of, or otherwise unfairly advantaged BOH.

91.     A legislatively declared policy prohibited defendant BOH's misuse of an indemnity form faxed to San Francisco to destroy Plaintiff's absolute right to recover her money under Cal U Com Code §4401 and **Hawaii counterpart at section 490:4-401(a), Hawaii Revised Statutes ("HRS").**

92.     A legislatively declared policy prohibited defendant BOH's concealments, or knowing failures, to disclose material facts affecting the amount of benefits due to Plaintiff in the context of said Indemnification of Liability form. BOH thereby violated Cal Penal Code §550(b)(3); and, in the context of allocation to the banker's blanket bond, or deductible thereunder, §550(b)(1) was violated. **Use of a fax to transmit the form to Plaintiff was wore fraud, in violation of 18 USC §1343.**

93.     A legislatively declared policy prohibited defendant BOH's acts or practices in obtaining its alleged indemnification. This business activity was forbidden by law, including, without limit, Cal. U. Com. Code §4401; Cal Penal Code §550(b) subsections (1) and (3). **Use of a fax to transmit the form to Plaintiff was wore fraud, in violation of 18 USC §1343. Finally the attempt to gain an exemption from BOH's own fraud or willful injury to Plaintiff violated Cal.Civ.Code §1668.**

1      94.      Defendant BOH's representations, omissions, or practices described

2      here, and elsewhere in this complaint, involved information important to Plaintiff, and

3      consumers generally; and affected Plaintiff's decision to sign the BOH form in San

4      Francisco.

5      95.      The acts done by defendant BOH in connection with the

6      Indemnification of Liability form (Ex "B"), signed by Plaintiff in San Francisco, were

7      unfair or deceptive acts or practices forbidden or declared unlawful by California law.

8      BOH's actions detailed here, and elsewhere by incorporation of all remaining counts

9      into this count, at all times had the capacity to mislead Plaintiff into signing a form

10     which BOH contends, extinguished, at that point, Plaintiff's claims for

11     reimbursement.

12     96.      Defendant BOH's deceptive conduct respecting the "Indemnification of

13     Liability" form had the natural and probable result of causing Plaintiff to sign the form

14     in San Francisco; which Plaintiff would not otherwise have done. The

15     representations, omissions or practices described herein were likely to mislead

16     consumers acting reasonably under the circumstances and did, in fact, mislead

17     Plaintiff.

18     97.      In addition to other remedies and damages hereinabove alleged,

19     Plaintiff is entitled to restitution of all amounts of her claim withheld by BOH, and for

20     a decree enjoining BOH from the use of this and other indemnification forms to avoid

21     payment of claims.

22                                **COUNT NINE**

23                     **(Conversion Against Defendant BOH and Does 28-35)**

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

1    98.     Plaintiff realleges and incorporates the foregoing paragraphs.

2    99.     Between October 24, 2006 and October 29, 2006, in San Francisco,

3    California, Defendant BOH and Does 28-35 intentionally interfered with, and

4    exercised dominion over property owned by Plaintiff including **her claim for**

5    **$508,000.00** confidential identity, bank, telephone information, and money; **all**

6    inconsistent with the ownership of Plaintiff. Defendants actually intentionally or

7    knowingly interfered with Plaintiff's property.

8    100.     Defendants' interference or exercise of dominion over Plaintiff's

9    property was in defiance of her rights, and Plaintiff demanded return of said

10   property, which was refused, all to Plaintiff's injury, damage, loss or harm, as

11   aforesaid.

12   101.     Defendant BOH owns property which may be reached by Plaintiff

13   Hisamatsu as security on the ground that defendant BOH will be unjustly enriched if

14   allowed to retain the money.

15   102.     An equitable lien should be imposed against defendant BOH in favor of

16   Plaintiff on the proceeds of Plaintiff's money withheld by defendant.

17
18                              **COUNT TEN**
19
20   **(Intentional Infliction Of Emotional Distress Against Defendants BOH**
21                          **and Does 1-50)**
22
23   103.     Plaintiff realleges and incorporates the foregoing paragraphs.

24   104.     Defendants' conduct as hereinabove alleged **which maneuvered**

25   **Plaintiff into direct contact negotiations with a forger and thief** was so extreme

31

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

1    as to exceed all bounds of conduct usually tolerated in a civilized community. **As**

2    **stated Defendant Niroula continues to vex, harass and threaten Plaintiff.**

3          105.      Defendants engaged in conduct intended to inflict injury or Plaintiff, or

4    they engaged in the conduct with reckless disregard of the probability that Plaintiff

5    would suffer emotional distress; or with the realization that injury to Plaintiff would

6    result.

7          106.      Defendants' acts **are extreme,** outrageous, and **are** a substantial

8    factor in causing Plaintiff's severe emotional distress.

9          107.      The intentional or reckless, extreme, and outrageous conduct by

10    defendants directly and proximately caused Plaintiff to suffer emotional distress, or

11    extreme emotional distress, all to her damage, as aforesaid.

12    <b><u>COUNT ELEVEN</u></b>

13    <b>(Tort In Essence Against Defendant BOH and Does 30-50)</b>

14
15          108.      Plaintiff realleges and incorporates the foregoing paragraphs.

16          109.      Defendant BOH and Does 30-50 owed nonconsensual duties to

17    others, including Plaintiff Hisamatsu, to comply with the civil and criminal laws of the

18    State of California.

19          110.      The following statutes embodied a public policy to protect a class of

20    persons of which Plaintiff is a member:

21          A.      Cal Pen Code §476a (2007) (Making or delivering check with

22                insufficient funds).

23
24          B.      Cal Pen Code §518 (2007) (Extortion).

25          **C.**      **Cal.Civ.Code §1668.**

111.    On or about October 20, 2006 in the County of San Francisco, Defendant BOH and Does 30-50 violated their nonconsensual duties to Plaintiff and others so situated by aiding and abetting the criminal deposit of a check for $890,000 into Plaintiffs' Citibank account in San Francisco, at a time when defendants knew, or should have known, the check would be drawn on insufficient funds.

112.    Between October 20, 2006 and October 29, 2006, in the County of San Francisco, defendants aided and abetted **Kaushal Niroula**, who threatened Plaintiff with bodily harm from Nepalese nationals involved with kidnapping his sister, if Plaintiff did not (1) pay him $41,000 in San Francisco, (2) cooperate with **BOH** (from San Francisco) to remove the hold on defendant **Niroula**'s BOH account/or funds, (3) keep her cell phone turned off, (4) stay in her hotel, or drive around the Bay Area with **Niroula**, and (5) return directly to Japan on 10-29-06.

## COUNT TWELVE

### (Civil Conspiracy Against Defendants Kaushal Niroula and BOH

113.    Plaintiff realleges and incorporates the foregoing paragraphs.

114.    Defendants **BOH, Kaushal Niroula** and **Chester Dods, a BOH security official** agreed or combined by concerted action to accomplish a criminal or wrongful act in San Francisco, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means. **Defendant Niroula conferred with Mr. Dods by telephone, and both agreed to maneuver Plaintiff Hisamatsu into signing BOH"s "Indemnity of Liability".**

1    115.    Defendants **BOH, Kaushal Niroula** and Does 25-35 intentionally

2    formed, planned, and operated the conspiracy which directly and proximately

3    caused damage to Plaintiff in San Francisco, from defendants' planning the

4    intentional acts and civil wrongs done in furtherance of the agreement and common

5    design to steal Plaintiff's savings, and to physically and emotionally injure Plaintiff.

6

7    **COUNT THIRTEEN**

8    **(Fraud Or Deceit Based On Suppression Of Material Facts And Other**

9    **Information And Partial Disclosures Against Defendant BOH and Does 30-50)**

10
11    116.    Plaintiff realleges and incorporates the foregoing paragraphs.

12    117.    On October 25, 2006, Defendant **BOH** and Does 30-50 intentionally

13    made the following representations in a form (Ex "B") intentionally aimed at Plaintiff

14    in San Francisco, California. This "Indemnification of Liability" (Ex B) suppressed

15    facts and other information by **BOH**, and **BOH** was bound to disclose them; or **BOH**

16    gave information or facts thereon to Plaintiff which were likely to mislead for want of

17    communication of suppressed facts or information.

18    118.    Defendant **BOH**'s business involved commercial activity and a history

19    of litigation directed at individuals in other states, including California. The alleged

20    indemnity transaction here was part of **BOH**'s business activity directed at

21    individuals in California. **BOH** purposely availed itself of the privilege of acting within

22    California to terminate Plaintiff's claims.

23    119.    Specifically, on October 25, 2006, Defendant **BOH** made positive

24    representations of the following facts or information to Plaintiff Megumi Hisamatsu, in

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

the City And County of San Francisco, with the sole purpose to extinguish her claims against **BOH** for reimbursement of $508,000:

        A.        Plaintiff "wish to withdraw [her] forgery dispute" regarding checks forged by a criminal and drawn on her account for $8,000, $95,000, and $405,000. Exhibit "B". [At no time, did Plaintiff intend to withdraw her claims against **BOH** by signing the "Indemnification Of Liability" form ("Ex. B"), or her criminal complaints fro forgery to law enforcement agencies].

        B.        $257,546.25 in **BOH** account #0002-933063 belonged to Kaushal Niroula. Id. [At no time, did Plaintiff understand or accept **BOH**'s representation as one which would reduce her claims against **BOH**].

        C.        $257,546.25 in **BOH** account #0002-933063 belonged to Defendant Kaushal Niroula. Id, as a result of the "forgery dispute". Id. [At no time, did Plaintiff understand or accept **BOH**'s representation as one which would reduce her claims against **BOH**].

        D.        That BOH "paid the funds to Kaushal Niroula at Megumi Hisamatsu's Request." [At no time, did Plaintiff understand or accept **BOH**'s representation as one which would reduce her claims with **BOH**].

        E.        That BOH would be indemnified and held harmless from damages and other costs arising out of the Bank of Hawaii having paid the funds to Kaushal Niroula at Plaintiff's request. [At no time, did Plaintiff understand or accept **BOH**'s representation as one which would reduce her claims with **BOH**].

120.    On October 25, 2006, when Defendant **BOH** intentionally made the foregoing representations by fax to San Francisco, Defendant **BOH** intentionally failed to disclose important facts to Plaintiff that she did not know and could not have reasonably discovered. Defendant actively suppressed or concealed facts which materially qualified **BOH** statements made in its document entitled "Indemnification Of Liability" (Ex B), and which were within **BOH**'s exclusive knowledge, unknown to Plaintiff Hisamatsu.

121.    Defendant **BOH** had a duty to make full disclosure of materially qualifying facts and other information because **BOH** made material disclosures in Exhibit "B", which were partial. Further, **BOH** was bound to disclose suppressed material facts which were exclusively in its possession. Also, as of 10/25/06, there was extreme inequality in bargaining power, English language ability, and knowledge between **BOH** and Plaintiff about matters relating to this transaction, **which was affected with the public interest.**

121**.2**    Defendant **BOH** made representations on October 25, 2006, intending to deceive Plaintiff by concealing material facts and other information which **BOH** knew or believed were materially misleading. Because of **BOH**'s failure to state additional or qualifying matters, Plaintiff reasonably relied on **BOH**'s deceptively incomplete representations, and her reliance was justified.

122.    The facts and other information suppressed or concealed from Plaintiff in **BOH**'s "Indemnification Of Liability" form (Ex "B") were likely to mislead Plaintiff in San Francisco, for want of communication; and did in fact mislead her.

123.    Even if **BOH** had no duty to provide the scant information on its form (Ex "B"), by making partial disclosures, **BOH** undertook the obligation and duty **disclose the following information which BOH concealed:**

A.    The $257,546.25 in Defendant **Niroula**'s account belonged to Plaintiff, <u>and</u> she did not request that <u>her</u> money be paid to **Niroula** or anyone else.

B.    The $257,546.25 in Defendant **Niroula**'s account had been frozen, for Plaintiff's benefit, by **BOH**.

C.    **BOH**'s form (Ex "B") had been intentionally crafted to extinguish Plaintiff's continuing right to reimbursement of $508,000 at the time it would be signed by Plaintiff in San Francisco, California on 10/25/06.

D.    The "forgery dispute" referenced on 10/25/06 in **BOH**'s form (Ex "B") secretly meant to **BOH**, the claims Plaintiff made for reimbursement (Ex. A.1, A.4 and A.7), of over $508,000 from **BOH**.

E.    The phrase in the 10/25/06 form (Ex "B") faxed to San Francisco to Plaintiff "arising out of the Bank of Hawaii having paid the funds to Kaushal Niroula" was secretly equivalent, for **BOH**, to the outstanding claims Plaintiff made against **BOH** for reimbursement (Ex A.1, A.4 and A.7).

F.    **That BOH had no reason to deny Plaintiff's claims at the time its form (Ex "B") was being prepared for signature in San Francisco.**

G.    **That the effects of extinguishing Plaintiff's claims for $508,000 against BOH would be in San Francisco on 10/25/06.**

---

1    **H.    BOH would deny the pending claims for reimbursement if**

2    **the form was signed. ¶86 [count 8], ¶123 [count 13],**

3    **I.    If the form was signed in San Francisco, BOH would deny**

4    **Plaintiff's reimbursement claims, asserting that Plaintiff ratified**

5    **(adopted as her own) the signatures forged by a criminal on her checks.**

6    **J.    If the form was signed, BOH would deny the claims,**

7    **asserting that Plaintiff recanted $508,000.00 in claims against BOH for**

8    **paying on the forged checks (to be added by further amendment).**

9    **K.    If the form was signed, BOH would deny the claims,**

10   **asserting that an agency relationship was formed between Plaintiff and**

11   **the forger.**

12   **L.    BOH did not disclose on FAC, ex "B", that as part of**

13   **Plaintiff's duty to cooperate with BOH's investigation (ex A.1, A.4, A.7),**

14   **Plaintiff's claims would not be delayed, or reduced, if she refused to**

15   **sign the "Indemnity of Liability" form.**

16   **M.    BOH did not disclose on ex "B", that as part of her duty to**

17   **cooperate with BOH's investigation (ex A.1, A.4, A.7) Plaintiff's claims**

18   **would not be delayed or reduced if she refused to negotiate directly with**

19   **the forger.**

20   **N.    BOH did not disclose on FAC, ex "B", that the term**

21   **"funds", in ¶(last) of ex "B", meant $508,000.00, and <u>not</u> the $257,546.25**

22   **released to the forger; that is, BOH was attempting to indemnify itself**

23   **from more than the amount it released to the forger.**

1    **O.    If the form was signed, BOH would use exhibit "B" as a**

2    **means to delay Plaintiff's claims for reimbursement.**

3    **P.    If the form was signed, there was no provision in the form**

4    **disclosing Plaintiff could pay a fee and obtain protection against**

5    **negligence.**

6    **Q.    If the form was signed, BOH would stop its investigation of**

7    **Plaintiff's claims for reimbursement (to be added by further**

8    **amendment).**

9    **R.    If the form was signed, there was no clear, specific,**

10   **assumption of liability by Plaintiff.**

11   **S.    BOH did not disclose that if the form was signed it would**

12   **(according to BOH) reactivate its 60-day "limitations" period to file**

13   **reimbursement claims (to be added by further amendment).**

14
15   124.    The foregoing suppressed facts and information made the matters

16   actually disclosed highly misleading and material to Plaintiff's decision to sign **BOH**'s

17   form in San Francisco. Plaintiff's reasonable decision was in justified reliance on

18   **BOH**'s partial disclosures.

19   125.    The concealed or suppressed facts and information in ¶123 supra

20   made the disclosed information on the claim forms fraudulent and misleading. The

21   intent was formed by Defendant **BOH** prior to 10/25/06 to deceive and to induce

22   Plaintiff to act in the matter herein alleged, in justified reliance thereon. Plaintiff

23   **justifiably and reasonably** relied on **BOH**'s deception, and her reliance was

24   reasonable under the circumstances.  Defendant's concealments were a substantial

factor in directly and proximately causing harm to Plaintiff in San Francisco, all to her damage as aforesaid.

126.    Plaintiff, at the time of **BOH**'s failures to disclose, and its concealments and suppression of material facts and information (and, at the time Plaintiff took actions herein alleged) was ignorant of the existence of the facts and information defendant suppressed and failed to disclose. If Plaintiff had been aware of the existence of the facts and information in ¶123 supra, not disclosed by Defendant **BOH**, Plaintiff would not signed Defendant **BOH**'s Indemnification of Liability form (Ex "B") in an effort to recover her family's stolen savings directly from the identity thief and forger, Defendant **Niroula**.

127.    Plaintiff, a homemaker and mother of two from Japan, had no experience or ability to understand that she need not meet with a dangerous criminal who had forged her checks, or attempt to negotiate with him, to cooperate with **BOH**'s claims "investigation". A reasonable person would have attached great importance in determining her choice of action once provided with the concealed information and facts. These were highly material and qualifying matters, and would have resulted in Plaintiff's **absolute** refusal to sign **BOH**'s Indemnification of Liability form. Exhibit "B".

## (ALTERNATIVE) COUNT FOURTEEN

### (Negligent Misrepresentation Against Defendant BOH and Does 30-50)

128.    Plaintiff realleges and incorporates the foregoing paragraphs.

129.     Defendant **BOH** and Does 30-35 made a representation of the following past or existing material facts in the Indemnification of Liability form (Ex "B") as follows:

A.     $257,546.25 in a BOH account belonged to Defendant **Niroula**.

B.     That **BOH** was <u>only</u> indemnified from paying **Niroula**'s funds to Defendant **Kaushal Niroula.**

130.     These representations by **BOH** were untrue.

131.     Regardless of defendants' actual belief, the defendants made the representations without any reasonable ground for believing them to be true.

132.     The representations were made with the intent to make Plaintiff  reply upon them.

133.     Plaintiff was unaware of the falsity of the representations and acted in reliance upon the truth of the representations and was justified in relying upon the representation.

134.     As a direct and proximate result of her reasonable reliance on the truth of the representations, Plaintiff sustained damage as aforesaid.

### **COUNT FIFTEEN (ALTERNATIVE)**

**(For Declaratory Relief Against BOH and Does 30-50)**

135.     Plaintiff realleges and incorporates the foregoing paragraphs.

136.     Plaintiff contends, and Defendant BOH disputes, that Defendant **BOH**'s "Indemnification of Liability" signed by Plaintiff in San Francisco October 25, 2006, remains null and void, and had no future, prospective effect on **BOH**'s duty to

pay Plaintiff's claim. While discovery and investigation continue, Plaintiff contends that the known, fatal defects of **BOH**'s form, disputed by **BOH**, are as follows:

A.      There is no clear, positive and unequivocal assumption of liability by Plaintiff, set out with requisite specificity;

B.      There is no clear, unequivocal indemnification from **BOH**'s own negligence, or any reference at all to negligence;

C.      There can be no indemnification against gross negligence, or by implication, intentional torts;

D.      The purported indemnification is strictly construed against the drafter, **BOH**;

E.      Ambiguities are construed against **BOH**, including the phrase "forgery dispute" which is capable of more than one meaning. The forgery dispute is between the public law enforcement agencies, and defendant **Kaushal Niroula**, as an official criminal matter. There is no forgery dispute between **BOH** and defendant **Kaushal Niroula**. There can be no forgery "dispute" between Plaintiff and **BOH** because Plaintiff did not forge her own checks.

F.      The Indemnification of Liability form attached at Exhibit "B" to this complaint was obtained by **BOH** through fraud, duress, undue influence, mistake, breach of fiduciary or quasi fiduciary-duty, bad faith, oppression, malice.

G.      The form is adhesive and unconscionable.

H.      The form violates statutes including Cal. U Com. Code 4-401.

I.      The form was contrary to a substantial public interest or gained through inequality of bargaining power.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

J.    The form unfairly limited the obligations and liabilities of, or otherwise unfairly advantaged, BOH.

137.    Plaintiff has no speedy or adequate remedy at law to have her future rights determined as to the prospective effect of the indemnity form on her claim for reimbursement.

138.    Defendant **BOH** contends to the contrary and has refused to rescind or cancel its Indemnification of Liability. Exhibit B.

139.    An actual and justiciable controversy has arisen and now exists between the Plaintiff and the **BOH** defendants concerning the construction and interpretation of **BOH's** Indemnification of Liability form (Ex "B") in relation to the money owed to Plaintiff by Defendant **BOH**, and the obligations of defendant **BOH** to pay the money due after its "investigation". Plaintiff desires, and is entitled to, a judicial declaration by this court of her rights and the obligations of the **BOH** defendants to pay her, notwithstanding **BOH**'s Indemnification of Liability form.

## **COUNT SIXTEEN**

### **(Rescission Against BOH And Does 30-50)**

140.    Plaintiff realleges and incorporates the foregoing paragraphs.

141.    Plaintiff demanded rescission of the indemnification drafted by **BOH** on August 6, 2007. Plaintiff repeats the demand and urges that **BOH**'s indemnification form (Ex "B") is void. **Prior to the signature ex "B", on 10/25/07, BOH represented it would investigate the forgery claim.**

142.    Plaintiff made a mistake as to a basic assumption when, **on 10/25/07,** she approved **BOH**'s form of indemnification (Exhibit "B"), which had a material effect on the agreed exchange of performances, adverse to Plaintiff. **At the time, and afterward BOH did not notify Plaintiff about the investigation or status of her claim against BOH for $508,000.00.**

143.    At the time the indemnification was made, Plaintiff was not aware that she only had limited knowledge with respect to the facts to which the mistake related. Enforcement of the Indemnification of Liability form (Ex "B") would be unconscionable.

144.    Plaintiff, by cooperating with **BOH**, **and by waiting from 10/3/06 for BOH to complete its investigation** at no time bore the risk of the mistakes that the deposits **Niroula** made to her San Francisco bank account in exchange for signing **BOH**'s indemnification would be dishonored, and/or that **BOH** had planned to destroy her claims (Exs A.1, A.4 and A.7), upon execution of the form (Ex B).

145.    The deposit to Plaintiff's bank account in San Francisco by a **BOH** account holder (**Niroula**) and the continuing validity of her claims (A.1, A.4 and A.7) were material to the **BOH** Indemnification of Liability (Ex "B"). **BOH** refused, for example, to release funds needed to facilitate defendant **Niroula**'s deposit, unless the form (Ex B) was signed by Plaintiff, misrepresenting the funds as belonging to **Niroula**.

146.    **BOH**'s Indemnification of Liability (Ex "B") should therefore be rescinded, and the outstanding claim by Plaintiff against **BOH** ordered paid. The Indemnification of Liability should be cancelled.

## COUNT SEVENTEEN

### (Constructive Trust Against Defendant BOH and Does 30-50)

147.    Plaintiff realleges and incorporates the foregoing paragraphs.

148.    Defendant **BOH** has money belonging to Plaintiff to which it is not justly entitled.

149.    Defendant's duty is to retransfer the money to Plaintiff, who is entitled thereto to possession.

150.    Defendant **BOH** will be unjustly enriched if allowed to keep Plaintiff's money.

151.    A Constructive trust should be imposed on defendant's money and property, plus accrued interest.

## COUNT EIGHTEEN

### (Equitable Lien Against Defendant BOH and Does 30-56)

152.    Plaintiff realleges and incorporates the foregoing paragraphs.

153.    Defendant **BOH** owns property which may be reached by Plaintiff Hisamatsu as security on the ground that Defendant **BOH** will be unjustly enriched if allowed to retain the money.

154.    An equitable lien should be imposed against Defendant **BOH** in favor of Plaintiff on the proceeds of all money taken by defendant.

## COUNT NINETEEN

### (Intentional Infliction Of Emotional Distress Against Defendants Kaushal Niroula, BOH and Does 1-50)

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

155.    Plaintiff realleges and incorporates the foregoing paragraphs.

156.    Defendants' conduct **which maneuvered Plaintiff into direct contact negotiations with a thief and forger, as** in San Francisco, as hereinabove alleged, was so extreme as to exceed all bounds of conduct usually tolerated in a civilized community.

157.    Defendants engaged in conduct intended to inflict injury on Plaintiff, or they engaged in the conduct with reckless disregard of the probability that Plaintiff would suffer emotional distress, or with the realization that injury to Plaintiff would result.

158.    Defendants' acts were **extreme and** outrageous, and were a substantial factor in causing Plaintiff's severe emotional distress.

159.    The intentional or reckless extreme and outrageous and outrageous conduct by defendants directly and proximately caused Plaintiff to suffer emotional distress or extreme emotional distress, all to her damage as aforesaid.

## COUNT TWENTY

### (Wrongful Withholding Of Funds After Forged Checks Were Drawn On Plaintiff's Account - Against Defendant BOH and Does 30-50)

160.    Plaintiff realleges and incorporates the foregoing paragraphs.

161.    Defendants honored forged checks against Plaintiff's new BOH personal checking account, totaling $508,000.

162.    Defendants violated the requirement of honesty in fact and lacked good faith, and they failed to use ordinary care by honoring three forged checks on a new account; and, by disclaiming responsibility for **BOH**'s lack of good faith or failure

1    to exercise **ordinary care or** due care; or by an attempt to limit the measure of

2    damages for the lack or failures, all in violation of Cal U. Com Code §4103.

3

4    ## COUNT TWENTY-ONE

5    **(Fraud Based On Promises Made Without Intention To Perform - Against**

6    **Defendants  BOH and Does 28-45)**

7
8    163.    Plaintiff realleges and incorporates the foregoing paragraphs.

9    164.    On October 3, 2006, BOH made the following promises, important to

10   her claim against **BOH** for losses from unauthorized transactions, injuring Plaintiff.

11   **The promises were written by an author whose identity, like the date of the**

12   **creation of the document and location of the author are within the exclusive**

13   **knowledge of BOH. The promises were:**

14
15         A.    "the Bank will investigate your Claim" (Ex. A.1 ¶2).

16         B.    "Payment of you Claim is contingent upon the results of the Banks'
17               investigation". <u>Id</u>.
18
19         C.    The Bank's decision to pay or not To Pay your claim will be made
20               in light of all the facts and circumstances after completion of its
21               investigation". <u>Id</u>.
22
23
24   165.    At the time **BOH** made these promises, **on October 3, 2006,** it had no

25   intention of performing them.

26   166.    The promises were made by **BOH** with the intent to induce Plaintiff into

27   relying on them and taking no action against the **BOH** to recover the $508,000 in

28   unauthorized debits from Plaintiff's personal checking account.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

167.    The unauthorized transactions at all times entitled Plaintiff to the full benefits of the claims (Exts A.1 – A.9), but **BOH**, despite its promises to the contrary, had never at the time **the promises were made,** intended to abide by the promises; and in fact, consistently refused to do so. **BOH**'s conduct after the promises show **BOH** had no intent to perform according to the promises, when made, **on October 3, 2006.**

168.    Plaintiff, at the time these promises were made; and, at the time Plaintiff reasonably relied on said promises, she forewent taking actions herein alleged. Plaintiff was ignorant of Defendant **BOH**'s secret intention not to perform, and took no rapid action against **BOH** to recover over $250,000 of her own money, sitting in a criminal's BOH account.

169.    Plaintiff Hisamatsu reasonably and justifiably relied on **BOH**'s promises in that **BOH** employees, **including one Chester Dods,** responsible for these promises, represented themselves as security experts and former law enforcement agents in close contact with law enforcement agencies. Further, Plaintiff could not, in the exercise of reasonable diligence, have discovered Defendant **BOH**'s secret intention not to perform its promises.

170.    In reliance on the aforesaid promises of Defendant, Plaintiff did not take immediate legal action against Defendant **BOH** to recover her money. If Plaintiff had known the actual intention of **BOH** not to investigate the claim and pay the claim after completion of the investigation, and instead create frivolous defenses to payment, she would have not been lulled into trusting the bank to complete an investigation. Further, Plaintiff would not have refrained from taking prompt legal

action; particularly to secure over $250,000 of her money in the criminal (**Niroula**'s) BOH account.

171.    Defendant **BOH** failed to perform the promised acts; failed to abide by its promises, and instead failed to investigate whether the transactions were authorized under Hawaii Revised Statutes (HRS) §490:4-401. **BOH**, failing to investigate this issue, failed to abide by its promise to pay the claim. But for these failures, Plaintiff would have taken prompt legal action against defendant **BOH.** Her reliance on **BOH**'s promise was a substantial factor in directly and proximately causing harm to Plaintiff, all to her damage as aforesaid.

## COUNT TWENTY-TWO

### (Fraud OR Deceit Based On Partial Disclosure And Concealment Of Material Facts Against BOH And Does 30-50)

172.    Plaintiff realleges and incorporates the foregoing paragraphs.

173.    When Defendant intentionally made the foregoing promises to Plaintiff Hisamatsu together with the other representations in the claim forms (Ex A.1, A.4 and A.7) Plaintiff signed on October 3, 2006, in Honolulu, Defendant intentionally failed to disclose important facts that Plaintiff did not know and could not have reasonably discovered. Defendant actively suppressed or concealed facts which materially qualified **BOH** statements in its claim forms; and which were within **BOH**'s exclusive knowledge, unknown to Plaintiff Hisamatsu.

174.    Defendant **BOH** had a duty to make full disclosure of material facts because it made relevant disclosures which were partial. Further, **BOH** was bound to disclose facts which were exclusively in its possession. Also, there was a wide

1    inequality in bargaining power, English language ability, and knowledge between

2    **BOH** and Plaintiff.

3        175.    Defendant **BOH** made representations on October 3, 2006, intending

4    to deceive Plaintiff by concealing facts. **BOH** stated the truth so far as it went, but

5    **BOH** knew or believed the statements were materially misleading. Because of

6    **BOH**'s failure to state additional or qualifying matters, Plaintiff reasonably relied on

7    **BOH**'s representations, and her reliance was justified.

8        176.    These facts, suppressed or concealed from Plaintiff in the claim forms

9    (Ex A.1, A.4 and A.7), were likely to mislead Plaintiff for want of communication, and

10   did in fact mislead her. Specifically, the **BOH** forms asserted that payment of the

11   claim was contingent on the **BOH**'s investigation and that Plaintiff was required to

12   cooperate with the bank. Plaintiff relied on **BOH**'s deception and her reliance was

13   reasonable under the circumstances.

14       177.    **BOH** failed to reveal, and suppressed the material qualifying facts (1)

15   that Plaintiff, as a victim of an unauthorized transaction based on forgery, was not

16   required, as part of "cooperation" to negotiate directly with the perpetrator of the

17   forged endorsement; (2) that failure by the victim to negotiate in this manner would

18   not result in denial or reduction of the claims with the bank for reimbursement, and

19   (3) that **BOH** had already decided to deny the claims.

20       178.    **Plaintiff justifiably relied on the partial disclosures.** In light of other

21   representations made by **BOH** security employees, **including Chester Dods,**

22   regarding the forgery perpetrator's willingness to repay Plaintiff, and regarding the

23   forger's possible innocence, the concealed or suppressed facts relating to victim

cooperation were highly misleading and material to the half-truths actually disclosed. Plaintiff's reliance on those half truths was justified.

179.    The concealed or suppressed facts made the disclosed information on the claim forms fraudulent and misleading. The same were made by Defendant **BOH** with the intent to induce Plaintiff to act in the matter herein alleged in justified reliance thereon. Defendant's concealments were a substantial factor in directly and proximately causing harm to Plaintiff, all to her damage as aforesaid.

180.    Plaintiff, at the time of **BOH**'s failures to disclose **BOH**'s concealments and suppression of material facts (and, at the time Plaintiff took actions herein alleged) was ignorant of the existence of the facts Defendant suppressed and failed to disclose. If Plaintiff had been aware of the existence of the facts not disclosed by defendant **BOH**, Plaintiff would not have attempted to recover her family's stolen savings directly from the identity thief and forger, defendant **Niroula**, and Plaintiff would have taken immediate action against **BOH** to recover her money including the $257,546.25 sitting in the check forger's **BOH** account.

181.    Plaintiff, a homemaker and mother of two from Japan, had no experience or ability to understand that she need not meet with a dangerous criminal who forged her checks, or attempt to negotiate with him. A reasonable person would have attached great importance in determining her choice of action once provided with the concealed facts, which were highly material and qualifying matters.

**<u>COUNT TWENTY-THREE</u>**

**(Unfair Or Deceptive Trade Practices In Violation Of HRS §480-1 <u>Et</u> <u>Seq</u> – Against BOH and Does 28-50)**

182.    Plaintiff realleges and incorporates the foregoing paragraphs.

183.    The foregoing activities by defendant **BOH**, a financial institution involved "conduct of any trade or commerce" within the ambit of Hawaii Revised Statutes (HRS) §480 et seq.

184.    Plaintiff is a claimant against **BOH** for recovery of losses from unauthorized transactions. She is therefore a consumer under HRS §480-1, and is authorized to bring suit pursuant to HRS §480-13.

185.    The foregoing practices by **BOH** were also unfair or deceptive acts or practices, and offended established public policy. The practices were also immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

186.    **BOH**'s unfair or deceptive acts directly and proximately caused damage to Plaintiff as aforesaid.

187.    The deceptive acts or practices by **BOH** and Does 28-50, <u>supra</u> all had the capacity to deceive Plaintiff; and did in fact cause, as a natural and probable result, Plaintiff to do those things she would otherwise not do; for example, negotiate with a check forger, thinking **BOH** required her to do so; and to sign **BOH**'s "indemnification" form, which she reasonably believed had no effect on her claims (Exhibits A.1 – A.9) with **BOH**.

188.    The forgoing deceptive acts or practices are representations, omissions or practices likely to mislead consumers acting reasonably under the

circumstances, including Plaintiff; particularly, as here, where the representations acts or practices are material.

### (ALTERNATIVE) COUNT TWENTY-FOUR

**(Against BOH and Does 30-50 For Negligent Misrepresentation)**

189.     Plaintiff realleges and incorporates the foregoing paragraphs.

190.     False information was supplied to Plaintiff by **BOH**, as stated above, of important facts. The concealments which made disclosed facts fraudulent were made as a result of the failure to exercise reasonable care or competence in communicating the information, and defendants had no reasonable grounds for believing the representations true when made.

191.     Plaintiff, as the person for whom the information was supplied suffered the loss, and defendants intended that Plaintiff rely on the misrepresentations or concealments of important facts.

192.     Plaintiff reasonably relied upon the half-truths which were as fraudulent as whole lies.

193.     The false information was a substantial factor in causing harm to Plaintiff, directly and proximately caused damages to Plaintiff as aforesaid.

### COUNT TWENTY-FIVE

**(Intentional Infliction Of Emotional Distress Against All Defendants)**

194.     Plaintiff realleges and incorporates the foregoing paragraphs.

195.     Defendants' conduct with respect to the claims (Exs A.1, A.4 and A.7) **and involving Plaintiff in negotiation with the check forger,** as hereinabove

alleged, was so extreme as to exceed all bounds of conduct usually tolerated in a civilized community.

196.    Defendants engaged in conduct intended to inflict injury, or they engaged in the conduct with reckless disregard of the probability that Plaintiff would suffer emotional distress, or with the realization that injury to Plaintiff would result.

197.    Defendants' acts were outrageous, and were a substantial factor in causing Plaintiff's severe emotional distress.

198.    The intentional or reckless extreme and outrageous conduct by defendants directly and proximately caused Plaintiff to suffer emotional distress or extreme emotional distress, all to her damage, as aforesaid.

## COUNT TWENTY-SIX

### (Gross Negligence Against Defendant BOH and Does 30-50)

199.    Plaintiff realleges and incorporates the foregoing paragraphs.

200.    Defendants' conduct demonstrated a want of even scant care, or an extreme departure of ordinary standards of conduct. At each turn, beginning with refusal to minimally compare the forged signature with Plaintiff's signature card in a new account and ending with the void Indemnification in San Francisco, Defendant **BOH** and Does 30-50 displayed a reckless disregard, or positive, active, and absolute disregard for the consequences of their action; particularly with, as here, a new personal account opened by a foreigner, subjected to extremely large debits.

## (ALTERNATIVE) COUNT TWENTY-SEVEN

### (Negligence Against Defendant BOH and Does 30-50)

201.    Plaintiff realleges and incorporates the foregoing paragraphs.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

202.    Defendants at all times herein mentioned owed a legal duty of due care, or an obligation recognized by the law requiring them to conform to certain standards of conduct for the protection of bank customers against unreasonable risks.

203.    Defendants failed to conform to the standards of conduct and thereby breached their duty to Plaintiff.

204.    The breach by defendants of the duty to conform to the standards of conduct imposed on banks confronted with forged checks and unauthorized transactions, as aforesaid, directly and proximately caused the foregoing injury and damages to Plaintiff.

205.    Plaintiff suffered actual loss or damage as a result of defendants' breach, as set out above.

## COUNT TWENTY-EIGHT

### (Negligent Infliction Of Emotional Distress Against Defendant BOH and Does 30-50)

206.    Plaintiff realleges and incorporates the foregoing paragraphs.

207.    Defendant owed a duty to avoid the negligent conduct and willful violations of statutory standards, as aforesaid, causing substantial financial injury.

208.    Defendants' conduct and violations were a cause of serious emotional distress, **not solely based on financial injury.**

209.    The injury to Plaintiff's property **and peace of mind** was directly and proximately caused by defendants' conduct.

**COUNT TWENTY-NINE**

**(Negligence Per Se Or Negligence Based On Statutory Violations Against Defendant BOH and Does 30-50)**

210.    Plaintiff realleges and incorporates the foregoing paragraphs.

211.    At all times herein, Plaintiff and others so situated were persons for whose protection the foregoing statutes were adopted. **Plaintiff gave timely notice of the forgeries to BOH.**

212.    Defendant failed to exercise due care by violating the foregoing statutes of public entities; or, by failure to conform to the standard of care required in handling claims for unauthorized transactions based on forgery.

213.    Plaintiff's injury, or actual loss or damage, as aforesaid, directly and proximately resulted from occurrences of the nature which said statutes or regulations were designed to avoid, and violation of the statutes caused injury to Plaintiff, as aforesaid.

**COUNT THIRTY**

**(Breach Of Fiduciary Or Quasi Fiduciary Duty- Against Defendant BOH and Does 30-50)**

214.    Plaintiff realleges and incorporates the foregoing paragraphs.

215.    Defendants **had a special relationship, and/or a** fiduciary, or quasi fiduciary duty to Plaintiff. The relationship is **based on** Plaintiff's claims for reimbursement **and BOH's conduct thereon. The relationship** is characterized by **unequal bargaining power,** public interest and adhesion, created by the special relationship.

216.    Depositors, including Plaintiff reasonably expect a bank not to claim nonexistent legal defenses to avoid reimbursement when **BOH** debited $508,000.00 in three forged checks on Plaintiff's personal checking account only 32 days old at the time of the last forged check.

217.    **BOH** and Does 30-50 failed to act as a reasonably careful bank, (entrusted with Plaintiff's funds and with a claim for reimbursement) would have acted in the same or similar circumstances.

218.    Defendants conduct was a substantial factor in causing Plaintiff's harm, directly and proximately causing her damages as aforesaid.

**WHEREFORE, Plaintiff prays for relief and demands as follows:**

1.    General, special and punitive damages in favor of Plaintiff, according to proof on counts 10, 19, 25, and 28 (personal injury);

2.    Declaratory relief (count 15);

3.    Injunctive relief (count 8 ¶97);

4.    That $508,000.00 withheld by Defendant **Bank Of Hawaii (BOH)** to be paid by BOH to Plaintiff, plus general damages of $2,500.000.00, with punitive damages according to proof, on all but counts 10, 19, 25 and 28;

5.    That judgment be entered against Defendant **Kaushal Niroula** for $890,000.00 plus general damages of $2,500.000.00 and punitive damages according to proof, on all but counts 10, 19, 25 and 28;

6.    Restitution (Count 8) (cumulative);

7.    Equitable liens should be imposed (counts 6, 9 and 18);

8.    Costs of suit and other expenses;

9.    For such other and further relief as the Court deems just.

Dated:    Honolulu, Hawaii, **October 26, 2007.**

_/s/ Stephen M. Shaw_

Stephen M. Shaw, Esq.

Attorney For Plaintiff

MEGUMI HISAMATSU

### **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all causes of action in this suit.

DATED:  Honolulu, Hawaii, **October 26, 2007.**

_/s/ Stephen M. Shaw_

Stephen M. Shaw, Esq.

Attorney For Plaintiff

MEGUMI HISAMATSU

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**