BUCHALTER NEMER
A Professional Corporation
    JAMES B. WRIGHT (#63241)
    MIA S. BLACKLER (#188112)
333 Market Street, 25th Floor
San Francisco, CA 94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
jwright@buchalter.com
mblackler@buchalter.com

Attorneys for Defendant
BANK OF HAWAII

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGUMI HISAMATSU,<br><br>    Plaintiff,<br><br>vs.<br><br>KAUSHAL NIROULA; BANK OF HAWAII, A Corporation; DOES 1-60, inclusive,<br><br>    Defendants. | CASE NO. 3:07-CV-04371-JSW<br><br>**DEFENDANT BANK OF HAWAII'S REPLY BRIEF ON ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**(FRCP 12(b)(6) AND 12(e))**<br><br>Hearing: November 30, 2007<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Courtroom: 2, 17th floor |

BN 1469384v2

BANK OF HAWAII'S REPLY BRIEF ON ITS MO. TO DISMISS – CASE NO. 3:07-CV-04371-JSW

## TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ..................................................................................1
II. UNDISPUTED FACTS ............................................................................................2
III. DISCUSSION ...........................................................................................................4
    A. Plaintiff Ratified The Alleged Forgeries, As A Result Of Which All Of Her Claims Should Be Dismissed Without Leave To Amend..........................................4
    B. All Of Plaintiff's Claims Are Absolutely Precluded By UCC §4406(f) And Should Be Dismissed Without Leave To Amend. ....................................................5
    C. Plaintiff's Fraud and Negligent Misrepresentation Claims Should Be Dismissed Without Leave (Counts 13, 14, 21, 22 and 24) ......................................8
        1. Plaintiff Cannot Assert Tort Claims For A Breach Of A Contractual Relationship ..............................................................................................8
        2. Plaintiff Failed To Plead Fraud With Particularity ...................................9
            a. Plaintiff Failed To Identify The Individuals Who Allegedly Defrauded Her.................................................................................9
            b. Plaintiff Did Not Justifiably Rely On Any Misrepresentations Or Half-Truths ...............................................10
    D. Plaintiff's Rescission Claim (Count 16) Should Be Dismissed Without Leave...........................................................................................................................11
    E. Plaintiff's Duty-Based Claims Must Be Dismissed Without Leave (Counts 20, 26, 27, 29, and 30) .............................................................................................12
    F. Plaintiff's Civil Conspiracy Claim Should Be Dismissed (Count 12)...................12
    G. Plaintiff's Emotional Distress Claims Should Be Dismissed (Counts 10, 19, 25 and 28) .................................................................................................................12
    H. The Constructive Trust Claim Must Be Dismissed Without Leave (Count 17) ...............................................................................................................................13
    I. The Declaratory Judgment Claim Should Be Dismissed Without Leave (Count 15) .................................................................................................................13
    J. Plaintiff's "Tort In Essence" Claim Should Be Dismissed Without Leave (Count 11) .................................................................................................................13
    K. Plaintiff's UCL Claims Should Be Dismissed Without Leave To Amend (Count 8 and 23) ......................................................................................................13
    L. Plaintiff's UCL Claims Are Uncertain (Counts 8 and 23)......................................14
IV. CONCLUSION.......................................................................................................14

# TABLE OF AUTHORITIES

Page

## CASES

*Commercial Cotton Co., Inc. v. United California Bank*
   63 Cal.App.3d 511 (1985) .................................................................................... 12

*Copesky v. Superior Court*
   229 Cal.App. 3d 678 (1991) ................................................................................ 12

*Foley v. Interactive Data Corp.*
   47 Cal.3d 654 (1988) ............................................................................................ 12

*Global Network Communications, Inc. v. City of New York*
   458 F.3d 150 (2d Cir. 2006) .................................................................................. 1

*Kang v. Harrington*
   59 Haw. 652 (1978) .............................................................................................. 11

*Parrino v. FHP, Inc.*
   146 F.3d 699 (9th Cir. 1998) .................................................................................. 1

*Queen Villas Homeowners Association v. TCB Property Management*
   149 Cal.App.4th 1 (2007) ................................................................................. 4, 7

*Roy Supply, Inc. v. Wells Fargo Bank, N.A.*
   39 Cal.App.4th 1051 (1995) ........................................................................ 2, 5, 6

*Wallis v. Superior Court of San Bernardino County*
   160 Cal.App.3d 1109 (1984) ................................................................................ 12

## STATUTES

Bus. & Prof. Code § 17200 ................................................................................................ 13

Civil Code § 1668 ................................................................................................... 5, 7, 13

UCC § 1201(41) ..................................................................................................................... 4

UCC § 3401(a) ....................................................................................................................... 4

UCC § 3403(a) ....................................................................................................................... 4

UCC § 4103(a) ....................................................................................................................... 4

UCC § 4406(4) ....................................................................................................................... 6

UCC § 4406(f) ............................................................................................................ passim

UCC § 490:3-403(a) ............................................................................................................. 4

# TABLE OF AUTHORITIES
(continued)

Page

## RULES

Fed. R. Civ. Proc. Rule 11 ................................................................................................ passim

Fed. R. Civ. Proc. Rule 12(b)(6) ................................................................................................1

Fed. R. Civ. Proc. Rule 9 ..........................................................................................................10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1469384v2

iii

BANK OF HAWAII'S REPLY BRIEF ON ITS MO. TO DISMISS – CASE NO. 3:07-CV-04371-JSW

## I. SUMMARY OF ARGUMENT

All of Plaintiff's claims for relief, however titled, are barred, because they are all founded on her forged check claims, which she recanted when she ratified the signatures on her allegedly forged checks. She did so on October 25, 2006, when she informed Bank of Hawaii ("BofH") in writing that "for reasons best known to myself, [I] withdraw my forgery dispute with regard [to three] checks [totaling $508,000]."  *See*, October 25, 2006, Indemnification of Liability agreement (the "Agreement"), Exhibit "B" to First Amended Complaint ("FAC").

In addition, Plaintiff's claims against BofH are absolutely precluded by statute, because she did not renew them within the 60-day time limitation, set forth in UCC § 4406(f) and in Plaintiff's account agreement with BofH, after she withdrew her forgery claims.[1] (*Id.*) By withdrawing her forgery claims, Plaintiff affirmed that the three allegedly forged signatures on her checks were authorized by her as her own. She cannot now demand that BofH reimburse her for checks that she expressly ratified and authorized the bank to pay to a third party.

In her opposition, Plaintiff seeks leave to amend, but her proposed Second Amended Complaint ("SAC") does nothing to remedy the fatal deficiencies of the FAC. Her primary argument in opposition, which she proposes to include in her proposed SAC, is that BofH allegedly concealed the **legal ramifications** of her decision to withdraw her forgery claims. In addition, Plaintiff offers some highly questionable amendments in her SAC, which have serious Rule 11 implications, as discussed in more detail throughout the Reply Brief.

The facts in this paragraph and the next two are not offered to support this motion or in an effort to convert it to a summary judgment motion, but to put Plaintiff and her counsel on notice of potential Rule 11 issues from certain allegations in the proposed SAC and in her Opposition. Although Plaintiff professes not to understand English or the legal ramifications of signing the Agreement withdrawing her forgery claims, the facts do not bear out either contention.

---

[1] Although not alleged in her FAC, Plaintiff's admits in her Opposition that her signature card and account agreement are among the four written agreements which she contends govern her claims in this litigation. Opposition at 14:21-23. See, also, proposed SAC, ¶ 19. As such, the Court can consider the account agreement terms in connection with this motion. *See, Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 156-157 (2d Cir. 2006) (this rule "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting").

BN 1469384v2                                      1

For example, when she signed the three forgery affidavits in BofH's offices (collective Exhibit A to the FAC), Plaintiff **was accompanied and represented by her own attorney, Steven Brittain**. *See*, Reply Declaration of Chester A. Dods, Jr., ¶¶ 2, 6, and 7. When Plaintiff withdrew her forgery claims, **BofH sent a blank Agreement to Plaintiff's counsel for review, and her counsel, who called it a "release agreement," and returned the executed Agreement (Exhibit B to the FAC) to BofH with Plaintiff's notarized signature on it**. *Id.*, ¶¶ 6, 7. Finally, although Plaintiff claims at FAC ¶ 47 and SAC ¶ 47 that she does not understand English, when she filed her forgery affidavits, she refused BofH's offer of a Japanese interpreter on the basis that she is fluent in English. *Id.*, ¶ 2.

Thus, Plaintiff's proposed amendments, which contend that BofH "concealed" from her the legal ramifications of signing the forgery affidavits and the Agreement, do not ring true, and they raise serious Rule 11 issues.[2] If Plaintiff is given leave to amend, and BofH contends that there is no reason to do so given the first two defenses listed above, she and her counsel should consider very carefully what they choose to plead (and what facts they choose not to plead) in a second amended complaint.

Plaintiff may have valid claims against an alleged con man, Defendant Kashaul Niroula. Whatever claims she had against BofH, she withdrew those claims 10 months before filing this suit. Untimely claims that are based on forged checks, on whatever legal theory, are absolutely precluded by UCC § 4406(f). *Roy Supply, Inc. v. Wells Fargo Bank, N.A.*, 39 Cal.App.4th 1051, 1065-67 (1995). Her claims are not only precluded by statute, but she waived them by withdrawing them, and she cannot resuscitate them here. All of Plaintiff's claims should be dismissed without leave to amend.

## II.   UNDISPUTED FACTS

Accepting as true the facts alleged in the FAC, Plaintiff's FAC must be dismissed without leave to amend. She alleges:

---

[2] Note, the FAC was filed in state court before BofH removed this action to federal court. BofH makes no claim that the FAC raises Rule 11 issues. The Opposition brief and the proposed SAC, on the other hand, which Plaintiff has already filed in connection with opposing this motion, raise serious Rule 11 issues in connection with alleged concealment by BofH of the legal ramifications of documents signed by Plaintiff in the presence of and while represented by her own counsel.

- Plaintiff entrusted an alleged confidence man, Niroula, with her personal BofH checks and her private bank account information. FAC, ¶¶19-20, 27.

- Niroula allegedly forged her signature on three of her BofH checks for sums totaling $508,000. FAC, ¶¶ 22-28.

- Apparently within the 60-day time period to do so, Plaintiff reported the three forgeries to BofH and signed three affidavits of forgery under penalty of perjury, claiming that Niroula forged her signature on each check. FAC, ¶ 31; collective FAC Exhibit "A."

- In response to her forgery claims, BofH put an administrative hold on the balance ($257,546.25) in Niroula's BofH account. FAC, ¶ 34.

- Three weeks later, Niroula deposited an $809,000 check into Plaintiff's San Francisco Citibank account, which she opened at his suggestion, purporting to repay her in full. FAC, ¶ 40.

- Plaintiff withdrew her forgery claims and released the held funds to Niroula by signing the Agreement, which provides:

"I, Megumi Hisamatsu . . .":

1. "for reasons best known to myself, withdraw my forgery dispute with regard [to three] checks [totaling $508,000];"

2. "also agree that funds ($257,546.25) [held in Niroula's BofH account] as a result of the forgery dispute shall be released to Kaushal Niroula . . . .;" and

3. "agree to indemnify and hold harmless the Bank of Hawaii … from and against any and all losses, damages, costs and reasonable attorney fees resulting from or related to claims, liabilities, suit, actions, or proceedings arising out of the Bank of Hawaii having paid the funds to Kaushal Niroula at Megumi Hisamatsu's request." FAC, ¶¶ 45-46; FAC Exhibit "B."

- At or about the time that Plaintiff signed the Agreement in San Francisco (October 25, 2006), Plaintiff gave Niroula an additional $41,000. FAC, ¶ 43.

- Ten months after withdrawing her forgery claims, Plaintiff filed this suit to reassert the same claims she withdrew by the Agreement and to add additional claims based on her emotional distress. She asks that BofH be ordered to pay her $508,000 in forged check damages,

1 an additional $2.5 million in "general" damages, and punitive damages.

## III. DISCUSSION

### A. Plaintiff Ratified The Alleged Forgeries, As A Result Of Which All Of Her Claims Should Be Dismissed Without Leave To Amend.

Plaintiff argues that her statement "**I withdraw my forgery dispute with regard [to three] checks [totaling $580,000]**" (emphasis supplied) was not a "voluntary" act and therefore cannot be a ratification of the allegedly forged signatures. What could be more voluntary than withdrawing her forgery claims and instructing the bank to hand over funds to Niroula, because Plaintiff apparently thought she had been repaid in full by his $809,000 check? She may have been conned by Niroula, but as to BofH, she made a voluntary election to withdraw her forgery claims.

BofH agrees that a forged signature does not bind an account holder, because it is not authorized by her. UCC § 3403(a). However, a check signed by someone other than the account holder is **not** a forgery if the account holder authorizes a third party to sign for her. UCC §§ 3401(a) and 1201(41). By withdrawing her forgery claims as to all $508,000 in allegedly forged checks, Plaintiff advised BofH that, either **she** signed the three checks, or an **authorized representative** did so. UCC § 3403(a) ("An unauthorized signature may be ratified for all purposes of this division."). As does California law, Hawaii law recognizes that an account holder can ratify an otherwise unauthorized signature and waive her legal claim involving an allegedly forged check. Haw. UCC § 490:3-403(a).

Plaintiff also contends that the Agreement is an attempt to disclaim responsibility for bank negligence or bad faith, which is forbidden by UCC § 4103(a). Opp. at 5-6. To the contrary, Plaintiff could have written a letter to BofH saying "I withdraw my forgery claims," and the effect would be the same. **She** elected to withdraw her forgery claims, thereby affirming that she authorized the check signatures.

Focusing only on the indemnity provision of the Agreement and citing *Queen Villas Homeowners Association v. TCB Property Management*, 149 Cal.App.4th, 1 (2007), Plaintiff claims that an indemnity agreement between two parties cannot exculpate one of those parties for

its own wrongdoing. In so arguing, Plaintiff misunderstands BofH's ratification defense.

BofH does not contend that it is exculpated by Plaintiff's indemnification over the released $257,546.25, but that Plaintiff ratified the allegedly forged signatures on $508,000 in checks drawn on her account. Plaintiff's indemnity cases do not address this issue at all.[3]

The Agreement is a three-part document. To establish ratification, BofH relies only on the **first** part of the Agreement, by which Plaintiff withdrew her forgery claims, **not** on the other two provisions involving release of funds and indemnity. When Plaintiff **withdrew** her forgery claims, doing so had at least two effects.

First, her withdrawal informed BofH that she was no longer contending that $508,000 had been withdrawn from her account by forgeries. This meant that she was confirming that the signatures on her checks were hers or authorized by her.

Second, once Plaintiff withdrew her forgery claims, they were no longer pending. The 60-day time frame within which Plaintiff was obligated to pursue forgery claims expired without any pending forgery claim of record. Because the 60-day reporting period expired long before Plaintiff filed this suit, Plaintiff is absolutely precluded from bringing any claims based on those allegedly forged checks.

**B.     All Of Plaintiff's Claims Are Absolutely Precluded By UCC §4406(f) And Should Be Dismissed Without Leave To Amend.**

To avoid absolute preclusion, Plaintiff makes the following five arguments: (1) her non-UCC claims are not barred because her forgery claims were "timely" [Opp. at 7:5-7]; (2) the indemnity is an invalid two-party exculpation agreement [Opp. at 7:24-8:3]; (3) the Indemnity Agreement is void under Hawaii law because of the unequal bargaining power of the parties [Opp. at 8:5-8]; (4) the Agreement violates California Civil Code § 1668 [Opp. at 8:9-16]; and (5) the Agreement is void as contrary to public policy [Opp. at 8:18-20].

(1) <u>Plaintiffs' Forgery Claims Were Not "Timely."</u> Plaintiff cites *Roy Supply, Inc. v. Wells Fargo Bank, N.A., supra,* 39 Cal.App.4th 1051 as though it supports her, but it clearly does

---

[3] BofH is not contending that Plaintiff "ratified a crime," as she argues. Opp. at 6:7-9. Rather, BofH contends that she ratified the signatures on her checks as authorized to debit $508,000 from her account.

BN 1469384v2                                5

not. In *Roy Supply*, the court of appeal concluded that the Uniform Commercial Code displaced common law duties regarding forged check liability and that plaintiffs were absolutely precluded by UCC § 4406(4) (now section 4406(f)) from pursuing untimely forged check claims, regardless which legal theory plaintiff pursued. The court held:

> A payor bank's initial liability to its customer for making payment of a check on a forged signature is absolute; that is, it applies without regard to whether the bank exercised due care or was negligent or worse. However, this absolute liability is temporally limited. *Id.* at 1062.
>
> * * *
>
> Section 4406 is not per se a statute of limitation but instead is an issue-preclusion statute. Unlike a statute of limitations, it does not purport to bar an action against a bank; rather, it simply precludes a customer from asserting a forgery or alteration against the bank if the customer has failed to discover and report the forgery or alteration to the bank. The effect this will have on a customer's claim against the bank will depend upon whether proof of the forgery is an essential element of the particular claim asserted. In essence, if a customer must prove a forgery in order to establish a claim then the customer will not be able to establish the claim because he or she is precluded from proving the forgery. On the other hand, any claim that is not dependent upon proof of the forgery will not be precluded by section 4406, subdivision (4), although the customer will still be precluded from asserting the forgery in pursuing that claim. *Id.* at 1065-66
>
> * * *
>
> [W]e find the provisions of the Code to be clear and unambiguous. We also find that they expressly cover the allegations of plaintiffs' complaint. Under these circumstances the provisions of the Code are controlling and must be deemed to displace common law negligence principles with respect to the payment of forged checks by a payor bank. *Id.* at 1067.

Every claim in the FAC (and the proposed SAC) depends on proof that the three checks were forged. Whether Plaintiff describes her claims as for breach of contract, fraud, negligence, UCL, or breach of fiduciary duty, no claim survives if she is cannot prove that the checks were forged. Her claims are governed exclusively by the UCC, and her proof of the alleged forgeries is absolutely precluded by UCC § 4406(f). Thus, her claims, which she withdrew and did not reassert for 10 months, were not "timely."

(2) <u>BofH Does Not Rely On The Agreement As A Two-Party Exculpatory Agreement,</u>

But As An Agreement Withdrawing Forgery Claims. *Queen Villas* does not apply, because BofH is not contending that the indemnity provision exculpates it from liability for the forgeries. Rather, by withdrawing her forgery claims, Plaintiff ratified the check signatures as valid and authorized, barring her from asserting contrary claims.

(3) BofH's So-Called Bargaining Power Is Irrelevant. Plaintiff asserted forgery claims and voluntarily withdrew them, apparently on the mistaken belief that Niroula had repaid her in full. See, FAC, ¶ 40.[4] BofH's relative size or so-called "bargaining power" had nothing to do with her unilateral decision to withdraw her claims. Plaintiff could have sent a unilateral letter withdrawing her forgery claims and did not need BofH's consent or the Agreement to do so. Bargaining power is irrelevant to this motion.

(4) Civil Code § 1668 Does Not Prohibit Plaintiff From Withdrawing Her Forgery Claims. Once again, Plaintiff misunderstands BofH's position. Her withdrawing her forgery claims is at issue, not the release of funds or indemnification provisions. Withdrawing her claims means they were not made until this suit was filed well after the 60-day preclusion window had shut. As a result, Plaintiff's forgery claims and all other claims that rely on the forgeries are precluded. Civil Code § 1668 deals with an agreement to exculpate a party for a future fraud or willful injury. It does not forbid a party to withdraw her claims or BofH to accept her withdrawal.

(5) Withdrawing A Forgery Claim Is Not Contrary To Any Public Policy. A clause in an agreement withdrawing a forgery claim is not an exculpatory provision forbidden by public policy. If the contrary were true, no witness could ever recant her testimony and no party could ever withdraw her claims, and clearly that is not the law in California or Hawaii. The withdrawal

---

[4] How Plaintiff came to this belief is not clear, as she acknowledges that Citibank told her that the $890,000 check which Niroula deposited in Plaintiff's San Francisco Citibank account on October 21, 2006, would not be good funds for three days. FAC, ¶ 40. Noting that she signed the BofH Agreement withdrawing her forgery claims on October 25, four days after that deposit, one would think that all she had to do was call Citibank to confirm that Niroula's check had not cleared before waiving her forgery claims and releasing her funds to him by signing the Agreement. Apparently, she did not call Citibank before she signed the Agreement, but instead waited until October 31, 2006, after returning to Japan, to discover that Niroula's check had not been honored. FAC, ¶ 48. It is clear that, for reasons known only to her, Plaintiff elected on October 25 to withdraw her forgery claims, without first checking with Citibank to assure that a con man's check was good.

of claims provision is simply a statement that Plaintiff no longer contends that her signature was forged. The effect of her withdrawing those claims and waiting ten months to renew them precludes her from re-asserting those claims. Case law interpreting UCC § 4406(f) has repeatedly upheld the absolute preclusion provisions of that statute, which does not violate public policy. *See*, cases collected in BofH's Motion at 8.

The 60-day window to pursue forged check claims expired last year after Plaintiff affirmed that her checks had not been forged. She cannot resuscitate her forged check claims by a tardy lawsuit. Her forged check claims, however captioned, are absolutely precluded "without regard to care or lack of care of either the customer or the bank." UCC § 4406(f).

### C. Plaintiff's Fraud and Negligent Misrepresentation Claims Should Be Dismissed Without Leave (Counts 13, 14, 21, 22 and 24).

#### 1. Plaintiff Cannot Assert Tort Claims For A Breach Of A Contractual Relationship.

In its opening brief, BofH cited extensive authority under California and Hawaii law that the courts of both states refuse to permit a plaintiff to bring tort claims for a breach of a contract. *See*, BofH Motion at 9-10. In her Opposition, Plaintiff ignores those authorities, fails to distinguish any of them, and argues that BofH is liable for "half truths" and "concealments" allegedly contained in the two contracts she contests -- the Agreement (FAC Count 13) and the forgery affidavits (FAC Counts 21 and 22).[5]

As to Counts 21 and 22 relating to the forgery affidavits, Plaintiff contends that the bank contractually agreed to investigate her claims and failed to do so. These are breach of contract claims, not tort claims for fraud.

With regard to her concealment claim related to the Agreement, Plaintiff contends that she withdrew her forgery claims because BofH allegedly "concealed" from her a dozen different legal ramifications of her signing the Agreement (including, for example, that BofH would later argue that she ratified the check signatures). In her Opposition, Plaintiff refers to these consequences of her actions as the so-called "STATEMENT OF RELEVANT FACTS" (Opp. at 3-5), but they are

---

[5] Plaintiff fails entirely to oppose BofH's motion regarding FAC Counts 14, 21, and 24, and these should be dismissed without leave to amend.

not material <u>facts</u> at all, just the legal result of her decision to withdraw her forgery claims. She repeats these allegedly "concealed" "facts" in her proposed SAC as the basis upon which she should be allowed to amend and take her forged check claims to trial. *See*, SAC at 24-27 and 37-39.

These so-called "RELEVANT FACTS" are nothing more than the legal grounds upon which BofH based its motion to dismiss, including some unusual concealed "facts" thrown in for good measure.[6] If a plaintiff could contend that the legal ramifications of her actions were "concealed" from her every time a defendant moved to dismiss a claim based on contractual terms or legal deficiencies, there would be no end to the alleged "frauds" she could pursue.

Plaintiff cites no authority that any court has ever found that a party has a duty to disclose all of the potential legal effects, or legal grounds that it might in the future raise, as the result of an account party's withdrawing her check forgery claims. Indeed, her own alleged understanding of the three-part Agreement defies credulity:

> At all times, Plaintiff thought that the document (Ex B) would have no effect on the bank's existing obligation to replace her stolen money. [N]or did she think it would impair her existing claims.

FAC, ¶ 47.

For reasons known only to her, Plaintiff withdrew her forgery claims as to the entire $508,000 covering all three allegedly forged checks. Plaintiff's subjective belief that this would have no effect on her forgery claims is not relevant. The Agreement is clear and unambiguous on its face, and Plaintiff is bound by her election to withdraw all of her forgery claims.

### 2. Plaintiff Failed To Plead Fraud With Particularity.

#### a. Plaintiff Failed To Identify The Individuals Who Allegedly Defrauded Her.

Even Plaintiff acknowledges her obligation to plead with more particularity, as she offers a proposed SAC naming at least one more individual who allegedly defrauded her, BofH's

---

[6] For example, Plaintiff contends, without explanation, that the Agreement should have included a provision that she "could pay a fee and obtain protection against negligence." Opp. at 4, paragraph no. 9. She also proposes to add this claim to the SAC at ¶¶ 86P and 123P. Nowhere in her Opposition does she explain what this argument means.

security investigator, Chester A. Dods. Her proposed SAC falls far short of complying with Rule 9, however.[7] Moreover, her fraud claims are not based on material **facts** misrepresented or not disclosed, but on the alleged "concealment" of the legal effects of her decision to withdraw her forgery claims.[8] Legal ramifications are not non-disclosed material facts. Moreover, Plaintiff cites no case that a bank in a forged check context has any legal **duty** to disclose to its customer the legal ramifications of her actions.

Plaintiff asks this Court for leave to plead in her proposed SAC that BofH concealed from her that she might lose her claims if she withdrew them. No case holds, and naturally Plaintiff cites none, that a party desirous of withdrawing her claims must receive a litany of the possible legal consequences of her claim withdrawal from the party which is the beneficiary of her withdrawal.

Plaintiff's relationship with BofH regarding forged checks was contractual and statutory, and she has no fraud or tort claims based on forged checks. In any event, the Court should deny her leave to amend her fraud claims, as her proposed amendments are without legal authority or substantive effect.

          **b.**      **Plaintiff Did Not Justifiably Rely On Any Misrepresentations Or Half-Truths.**

The Forgery Affidavits

Count 21 -- Plaintiff alleges that she justifiably relied on BofH representation that it would conduct an investigation into losses regarding her forged checks. Count 21, FAC, ¶ 169. However, Plaintiff ended the investigation when she withdrew her claims, so her alleged reliance on that representation is moot.

Count 22 -- She also alleges justifiable reliance on BofH's concealing from her

---

[7] For example, she accuses BofH's security investigator, Chester A. Dods, of failing to investigate her forgery claims (SAC, ¶ 35), but elsewhere admits that, as a result of that investigation, BofH froze $257,546.25 of her funds in Niroula's account (SAC, ¶¶ 33 and 46), which she later decided to release to Niroula for reasons known only to her.
[8] Plaintiff incorrectly argues that BofH wants her to identify the author of various BofH publications, contracts and forms, as well as facts known only to BofH. Not so. Plaintiff is obligated by Rule 9 to identify any and all alleged individual perpetrators, of whom she is aware, who committed any act of fraud that she is pursuing in this litigation. She failed to do so in her FAC, and her SAC fares no better.

that she didn't have to negotiate with Niroula and that BofH had already decided to deny her claims when she made them. Count 22, FAC, ¶ 177. Plaintiff and her counsel tread on Rule 11 in Count 22, as there are no facts to support the claim that BofH coerced Plaintiff into negotiating with a forger, which she did entirely on her own and without any encouragement or knowledge by BofH, until she recanted her forgery claims.

<u>The Agreement</u> -- Plaintiff alleges that she justifiably relied on BofH's failure to tell her about the legal ramifications of her decision to sign the Agreement (Count 13, FAC, ¶ 121.2). She also alleges that she justifiably relied on BofH's "false information [about] important facts" and "half-truths" without providing any more clarity as to what she is alleging (Count 24, FAC, ¶ 192). She does not offer to amend these unclear allegations in Count 24 of the SAC.

Plaintiff lost her claims when she withdrew them of her own choice and allowed the 60-day preclusion time limit to expire with no forgery claim pendant. BofH did nothing to convince her to withdraw her claims and not to renew them. Her alleged reliance on the failure to disclose legal ramifications is no reliance at all, as BofH had no duty to explain to her the legal meaning of her decision to withdraw her forgery claims.[9]

### D.   **Plaintiff's Rescission Claim (Count 16) Should Be Dismissed Without Leave.**

Plaintiff cannot plead fraud, because her relationship with BofH is contractual and statutorily defined. Therefore, she cannot rescind via a fraud claim her unilateral decision to withdraw her forgery claims ten months after she signed the Agreement.

Plaintiff was not defrauded by the legal ramifications of her decision to withdraw her claims or the fact that the forgery investigation ended with her decision to withdraw her claims, and she fails to plead that any material facts were withheld from her. She made a bad decision to trust Niroula a second time in San Francisco, which led to her withdrawing her claims against him, but there are no pleaded (or actual) grounds for rescinding her choice to withdraw her

---

[9] Plaintiff's reliance on *Kang v. Harrington*, 59 Haw. 652, 656 (1978) is misplaced. The Hawaii Supreme Court there used the phrase "that the plaintiff did rely upon them," which Plaintiff argues negates her need to plead and prove <u>justifiable</u> reliance. In its holding, the Hawaii Supreme Court made clear that a party which intentionally and deliberately defrauds another cannot avoid liability by arguing that the defrauded party was careless in reviewing a contract in which the defendant had slipped terms other than those agreed upon by the parties. *Kang* has no application to the facts of this case.

claims.

### E. Plaintiff's Duty-Based Claims Must Be Dismissed Without Leave (Counts 20, 26, 27, 29, and 30).

Plaintiff's reliance on *Copesky v. Superior Court*, 229 Cal.App. 3d 678, 693 (1991) defies logic, as the court of appeal there held against the claims that Plaintiff is asserting here:

> It is thus our conclusion that banks, in general and in this case, are not fiduciaries for their depositors; and that the bank-depositor relationship is not a "special relationship" under the *Wallis v. Superior Court of San Bernardino County,* [160 Cal.App.3d 1109 (1984)] test, or any other test, such as to give rise to tort damages when an implied contractual covenant of good faith is broken. We are therefore forced to acknowledge that our decision in *Commercial Cotton Co., Inc. v. United California Bank,* [63 Cal.App.3d 511 (1985)], while in its time seemingly in harmony with the direction of the Supreme Court, turned out, after [the California Supreme Court's decision in] *Foley v. Interactive Data Corp.,* [47 Cal.3d 654 (1988)], to be misdirected.

Plaintiff has no cognizable claims for breach of fiduciary duty, tortious breach of the covenant of good faith and fair dealing, or any other relationship-based tort claims for payment on a forged check. Plaintiff's duty-based claims must be dismissed without leave.

### F. Plaintiff's Civil Conspiracy Claim Should Be Dismissed (Count 12).

Plaintiff's FAC alleges in incredibly unclear terms that BofH and Niroula conspired to harm Plaintiff in San Francisco. Her proposed SAC alleges that Niroula and BofH's security investigator, Mr. Dods, "conferred by telephone . . . and agreed to maneuver Plaintiff" into signing the Agreement. SAC, ¶ 114. That ill conceived contention is not in the FAC, which must therefore be dismissed. If this Court should permit Plaintiff the opportunity to file an amended complaint, BofH cautions Plaintiff and her counsel to be guided by Rule 11 in deciding whether to make such false claims in her SAC.

### G. Plaintiff's Emotional Distress Claims Should Be Dismissed (Counts 10, 19, 25 and 28).

To meet the pleading standard requiring conduct "exceeding all bounds of human decency," Plaintiff Opposition contends that BofH "coerce[ed] her to investigate and negotiate with an identity thief and forger . . . ." Opp. at 17. She proposes to add similar claims in her SAC

at ¶¶ 104, 156, 195, 206 (by incorporation). Once again, BofH cautions Plaintiff and her counsel to follow Rule 11. There are absolutely no facts to establish that BofH even knew that Plaintiff was dealing directly with Niroula, much less that BofH coerced her to be so foolish. If Plaintiff is unable to adduce any such facts, BofH will seek appropriate sanctions, including its legal costs and attorney's fees.

H. **The Constructive Trust Claim Must Be Dismissed Without Leave (Count 17)**

BofH is not holding any funds for Plaintiff, because she demanded that they be released to Niroula. This claim should be dismissed without leave.

I. **The Declaratory Judgment Claim Should Be Dismissed Without Leave (Count 15)**

Although Plaintiff seeks leave to amend, she does not identify what facts she could plead to entitle her to a declaratory judgment in this matter. All of the operative facts of her claims are in the past. There are no ongoing obligations regarding the forged checks, other than her claim for damages for past conduct. Declaratory relief is not appropriate.

J. **Plaintiff's "Tort In Essence" Claim Should Be Dismissed Without Leave (Count 11)**

Plaintiff proposes to add a violation of Civil Code § 1668 to her claim that BofH violated two California penal statutes to establish alleged tort liability. See, SAC, ¶ 110. As discussed above, permitting a party to withdraw a forgery claim does not violate Civil Code § 1668. Plaintiff's relationship with BofH is defined by contract and the UCC. She has no "tort in essence" claims as the result of a forged check clearing her account.

K. **Plaintiff's UCL Claims Should Be Dismissed Without Leave To Amend (Count 8 and 23)**

Count 8. Plaintiff proposes to amend her Count 8 UCL claim by alleging a violation of Civil Code § 1668 and wire fraud in connection with faxing the Agreement to her counsel. *See,* Opp. at 19-20. The problem with this new theory is that the Agreement does not violate Civil Code § 1668 and is not a predicate act for wire fraud or for a Business & Professions Code § 17200 claim. Asking a party to affirm in writing her desire to withdraw her forgery claims is

not unlawful, unfair or fraudulent.

Count 23. Plaintiff argues that her Count 23 UCL claim is based on BofH's failure to inform her that she did not have to negotiate with Niroula to fulfill her duty to cooperate with BofH. Once again, this allegation treads on Rule 11, and BofH cautions Plaintiff and her counsel to assure themselves that they can prove this allegation before they assert it. Plaintiff's argument that the UCL applies to financial institutions misses the point. BofH had no obligation to inform a forgery victim that she was not required to deal directly with the forger. She elected to do that on her own. She did a very bad job of it, for which BofH is not responsible.

### L. Plaintiff's UCL Claims Are Uncertain (Counts 8 and 23)

In her proposed SAC, Plaintiff attempts to cure her uncertain claims by adding the allegedly concealed "facts," which are the legal positions that BofH asserted in its motion to dismiss the FAC. See, FAC, Count 8, ¶ 86 incorporated into Count 23 at ¶ 182. The legal ramifications of withdrawing a forgery dispute are not material facts concealed from a consumer. Nor is the Agreement by which Plaintiff withdrew her forgery claims a basis upon which to assert a fraudulent or unfair business practices claim. Plaintiff's forged check claims are governed by her written agreements with BofH and the UCC, not by the UCL statutes.

## IV. CONCLUSION

BofH asks this Court to dismiss the FAC without leave to amend, first because Plaintiff has admitted that she withdrew her forgery claims and thereby ratified the allegedly forged signatures on her checks. The FAC should also be dismissed without leave to amend because all of Plaintiff's forged check claims are absolutely precluded by UCC § 4406(f) "without regard to care or lack of either the customer or the bank." *Id.*

//
//
//
//
//
//

As to each of the individual claims, if they are not dismissed without leave for the reasons stated above, the Court should admonish Plaintiff and her counsel in a written order to comply with Rule 11 and not to make claims for which they have no proof, simply to survive the pleading stage of this litigation.

DATED: November 2, 2007

BUCHALTER NEMER
A Professional Corporation

By _____
JAMES B. WRIGHT
Attorneys for Defendant
BANK OF HAWAII