BUCHALTER NEMER
A Professional Corporation
    JAMES B WRIGHT (#63241)
    MIA S. BLACKLER (#188112)
333 Market Street, 25th Floor
San Francisco, CA 94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
jwright@buchalter.com
mblackler@buchalter.com

Attorneys for Defendant
BANK OF HAWAII

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGUMI HISAMATSU,<br><br>    Plaintiff,<br><br>vs.<br><br>KAUSHAL NIROULA; BANK OF HAWAII, A Corporation; and DOES 1 to 60, inclusive,<br><br>    Defendants. | CASE NO. 3:07-cv-04371-EDL<br><br>**REVISED [PROPOSED] ORDER GRANTING DEFENDANT BANK OF HAWAII'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing: November 30, 2007<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Courtroom: 2, 17th floor |

    Defendant Bank of Hawaii's ("BofH") Motion to Dismiss and For More Definite Statement came on regularly for hearing on November 30, 2007, at 9:00 a.m. in Courtroom 2 of the above-entitled Court, the Honorable Jeffrey S. White presiding. James B. Wright and Mia S. Blackler appeared for BofH. Stephen Shaw appeared on behalf of plaintiff Megumi Hisamatsu ("plaintiff"). No appearance was made by defendant, Kaushal Niroula ("Niroula").

    This case was originally filed in San Francisco Superior Court by plaintiff, a resident of Japan. Prior to removal by Defendant, Bank of Hawaii ("BofH"), a Hawaii banking institution, on diversity of citizenship grounds, Plaintiff filed and served on BofH a first amended complaint ("FAC"). The FAC is the subject of BofH's motion to dismiss and for a more definite statement under F. R. Civ. Proc. Rule 12(b)(6) and Rule 12(e), respectively.

    **HAVING CONSIDERED THE WRITTEN AND ORAL ARGUMENTS OF THE**

PARTIES AND ACCEPTING THE ALLEGATIONS OF THE FAC AS TRUE, THE COURT RULES AS FOLLOWS:

### A. Legal Standards Applicable To A Motion To Dismiss

A motion to dismiss for failure to state a claim may be granted when it appears that the plaintiff can prove no set of facts that would entitle her to relief. *Fidelity Financial Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir. 1986); *In re U.S. Aggregates, Inc. v. Securities Litig.*, 235 F. Supp. 2d 1063, 1068 (N.D. Cal. 2002). Dismissal may be based on either a lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. See *In re U.S. Aggregates, Inc., Securities Litig., supra*, 235 F. Supp. 2d at 1068; see also *Ballistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

Although all material allegations must be taken as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *McCarthy v. Mayo*, 827 F.2d 1310, 1316 (9th Cir. 1987). A plaintiff cannot avoid this bar by clothing legal conclusions in the guise of facts to take advantage of the liberality with which the court would otherwise view a pleading. See *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Stinson v. Home Ins. Co.*, 690 F. Supp. 882, 886 (N.D. Cal. 1988) (finding that, "[a]lthough plaintiffs need to provide only a 'short and plain statement of the claim [under FRCP 8, "... [w]here the claims in a complaint are insufficiently supported by factual allegation, the claims may be disposed of by summary dismissal").

### B. Choice Of Law Issue.

BofH contends that the choice of law provisions of the account agreement between Plaintiff and BofH ("Account Agreement") make Hawaii law applicable to this diversity matter. Although Plaintiff did not attach the Account Agreement to her FAC, in her Opposition, she adopts it as one of the four contracts which she contends govern her relationship with BofH. For that reason, the Court may consider the Account Agreement on this motion to dismiss as though it had been attached to the FAC. See, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 156-157 (2d

Cir. 2006) (this rule "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting").

Plaintiff asserts that both Hawaii and California law apply, depending on the acts to which the FAC refers. As to acts which occurred in Hawaii, plaintiff apparently contends that Hawaii law applies. As to acts which occurred in San Francisco, plaintiff apparently contends that California law applies.

This Court need not decide whether this diversity action is governed exclusively by the laws of either state, because the laws of California and Hawaii, and especially the versions of the Uniform Commercial Code enacted in each state, do not differ materially on the issues raised by the parties. Citations herein to the Uniform Commercial Code will be to the "UCC" and statutory quotations will be from the California Commercial Code for sake of convenience.

C.   **FAC Allegations And Claims**

In her FAC, plaintiff asserts some thirty claims for relief, which she titles "Counts," including, *inter alia*, claims for breach of contract, torts, imposition of a constructive trust, declaratory judgment, and statutory violations. All of these claims are predicated on her depository and checking account relationship with BofH and three allegedly forged checks, which are discussed in more detail below.

Plaintiff contends that BofH is liable for paying three checks drawn on her account and payable to Niroula, which total $508,000, because the payor signatures on those checks were forged by Niroula and not authorized by plaintiff. *Id.* at ¶¶20, 22-24, 27-29. Both sides agree that BofH has potential liability for paying checks which do not bear an authorized payor signature. UCC § 3403(a).

In 2006, while on vacation in Honolulu, Plaintiff was befriended by Niroula. FAC, ¶6. He offered to sell her real property, which she declined, and to aid her in obtaining a visa so that she and her family could visit the United States for longer periods of time. *Id.* at ¶¶15-17. In connection with his offer of help, Niroula took plaintiff to a BofH branch and assisted her in opening a checking account, into which she subsequently deposited in excess of $500,000. *Id.* at ¶¶18-19, 21, 26.

Niroula stole three of plaintiff's blank checks. FAC, ¶20. She later gave him three other blank checks for the purpose of obtaining a visa. *Id.* at ¶27. He then forged her signature as payor on three checks totaling $508,000, which he made out to himself, and deposited those checks into his BofH account. *Id.* at ¶¶22, 24, 28. When, on or about October 2, 2006, plaintiff discovered that her funds had been withdrawn, plaintiff called BofH to report the forgeries and she flew from Japan to Honolulu. *Id.* at ¶¶29, 31.

On October 3, 2006, in BofH's Honolulu offices, plaintiff signed three Unauthorized Transaction forms (the "Forgery Affidavits") for each of three checks on which she claimed that Niroula had forged her signature. FAC, Exhs A..1-A.9. In the Forgery Affidavits, BofH agreed to investigate her forgery claims. *Id.* Thereafter, BofH placed an administrative hold on Niroula's checking account and held $257,546.25 in that account for plaintiff's benefit pending the results of its investigation. *Id.* at ¶¶31, 33.

About three weeks after providing BofH with the Forgery Affidavits, Niroula convinced plaintiff to travel from Japan to San Francisco to meet with him. FAC, ¶37. He told her that he had taken her money to protect his allegedly royal Nepalese family from harm and convinced her that his family intended to wire funds to him in San Francisco to reimburse her. *Id.* at ¶37-38. He also told her that he would help her obtain an EB-5 investment visa. *Id.* at ¶37.

On October 20, 2006, plaintiff flew to San Francisco. FAC, ¶39. The following day, October 21, 2006, plaintiff opened a Citibank deposit account at Niroula's behest, into which Niroula deposited an $890,000 check. *Id.* at ¶40. Citibank informed plaintiff that the funds for that check would not be available for three days. *Id.*

Niroula told plaintiff that his Nepalese sister had been kidnapped, that Niroula's and plaintiff's lives had been threatened by local operatives of the kidnappers, and that he needed $41,000 as a ransom payment for his sister. FAC, ¶¶38, 41. On October 25, 2006, plaintiff opened a San Francisco account with Wells Fargo Bank and had BofH wire $41,000 from her BofH account to plaintiff's Wells Fargo account. *Id.* at ¶¶42-43. Plaintiff gave those funds to Niroula. *Id.*

To further aid Niroula, Plaintiff asked BofH to release its administrative hold on the

$257,546.25 in Niroula's BofH account. FAC, ¶¶44-45. BofH agreed to do so, provided that plaintiff would sign a written document entitled "Indemnification of Liability" ("Indemnity Agreement"). *Id.* at Exh. B. On October 25, 2006, plaintiff signed and returned the Indemnification Agreement to BofH. *Id.* at ¶46. BofH released the $257,546.25 to Niroula, and plaintiff returned to Japan. *Id.* at ¶¶46-47.

Plaintiff learned on October 31, 2006, that Niroula's $890,000 check had not cleared. FAC, ¶48. Ten months later, on August 13, 2007, plaintiff filed her original complaint against Niroula and BofH in San Francisco Superior Court. She filed the FAC shortly thereafter. BofH filed a Notice of Removal of this action to this court on August 23, 2007.

### D. BofH's Motion To Dismiss

According to BofH, all of plaintiff's claims are based on the allegedly forged checks. BofH contends that the entire FAC should be dismissed without leave to amend for two reasons. First, all of plaintiff's claims are barred, because plaintiff ratified and thereby authorized the payor signatures on the three allegedly forged checks as plaintiff's signatures or those of her authorized agent. Second, by withdrawing her forgery claims on October 25, 2006, her claims did not exist. As such, plaintiff failed to assert her forgery claims on a timely basis, and all of plaintiff's claims and any proof of payment on allegedly forged checks are absolutely precluded under the provisions of UCC § 4406(f) and terms of the Account Agreement.

BofH raises a variety of legal objections to the each of plaintiff's claims for relief, which the Court need not reach for reasons set forth below.

### E. Plaintiff's Opposition

Plaintiff raises numerous arguments to defeat BofH's motion. Primary among them is her request to file a second amended complaint ("SAC") in a form attached to her counsel's opposition declaration as Exhibit "A" to allege that BofH concealed from plaintiff certain facts related to her signing the Forgery Affidavits and the Indemnity Agreement.

In addition, plaintiff challenges the Indemnity Agreement as violating California Civil Code § 1668 and the public policies of California and Hawaii. Based on *Queen Villas Homeowners Association v. TCB Property Management*, 149 Cal.App.4th 1 (2007), plaintiff also

contends that the Indemnity Agreement is a two-party exculpatory agreement that cannot release BofH from its own misconduct.

The Court need not address plaintiff's opposition to the motion as to each individual claim for relief for the reasons set forth below.

### F. Order Dismissing FAC Without Leave To Amend

After full consideration of the arguments and authorities submitted by the parties, and accepting as true the allegations of the FAC as the Court must on a motion to dismiss under Rule 12(b)(6), the Court grants BofH's Motion to Dismiss without leave to amend. The Court holds that all of plaintiff's claims are based on the allegedly forged checks. As such, her claims are barred by the terms of the Indemnity Agreement, in which plaintiff voluntary elected to withdraw her forgery claims as to all three checks for the entire $508.000 allegedly taken without her authority or consent. By withdrawing her forgery claims, plaintiff ratified and authorized the allegedly forged signatures as genuine. UCC § 3404(a). That is to say, plaintiff advised BofH that the allegedly forged signatures were either hers or those of an authorized agent, and she cannot assert a contrary position in this suit.

The Court also grants BofH's Motion to Dismiss without leave to amend for a second reason. Pursuant to the terms of her Account Agreement and UCC § 4406(f), plaintiff had 60 days from discovering the alleged forgeries to report the forgeries to BofH. UCC § 4406(f) imposes an absolute preclusion on forged or altered check claims brought beyond the statutory period (one year), which the parties may change by agreement, as they did in the Account Agreement to a 60-day claim period. UCC § 4103(a).

Plaintiff initially met her burden of informing BofH on a timely basis of the alleged forgeries, either when she called on October 2 or when she signed the Forgery Affidavits on October 3, 2006. However, on October 25, 2006, plaintiff recanted and withdrew her forgery claims when she signed the Indemnity Agreement.

Thus, from the date that she discovered the alleged forgeries, which she alleges was October 2, 2006, until August 13, 2006, when she filed her complaint in this action, no report of the forgeries existed which she had not recanted and withdrawn. Because all of plaintiff's claims

are based on the allegedly forged checks, those claims and proof relating to the allegedly forged checks are absolutely precluded by her failure to report the forgeries within 60 days after October 2, 2006. *Roy Supply, Inc. v. Wells Fargo Bank, N.A.*, 39 Cal.App.4th 1051, 1065-67 (1995).

With regard to Plaintiff's Opposition, the Court finds that the so-called "RELEVANT FACTS," which plaintiff seeks to add to an amended complaint are not material facts which were concealed from plaintiff, but rather the legal ramifications of her actions either in asserting forgery claims or in withdrawing them. The Court is aware of BofH's reference to plaintiff's being represented by counsel when she signed the Forgery Affidavits and the Indemnity Agreement, but the Court's ruling excludes and strikes from consideration on this Motion facts which are not set forth in the FAC, unless Plaintiff agrees that they bind her, such as the terms of the Account Agreement.

The Forgery Affidavits and the Indemnity Agreement are not adhesive or in violation of public policy, they do not seek to excuse future fraud or willful misconduct forbidden by Civil Code § 1668, and they do not seek to exculpate BofH by indemnity. Plaintiff could have asserted her forgery claims and withdrawn them in letters putting BofH on notice of her position. Plaintiff's actions were at all time voluntary and undertaken, as she stated in the Indemnity Agreement, for "reasons best known to herself." Neither the Forgery Affidavits nor the Indemnity Agreement violate the public policy of either Hawaii or California. A party may make a claim, provided it is not malicious, and withdraw it without violating any public policy.

//
//
//
//
//
//
//
//

Plaintiff may have valid claims against Defendant Niroula, but she withdrew her claims

against BofH over a year ago and ten months before she reasserted them in this litigation. Plaintiff's claims are barred by law and absolutely precluded by statute and will be dismissed forthwith without leave to amend.

**SO ORDERED:**

Dated: _____, 2007

The Honorable Jeffrey S. White
Judge of the District Court for the Northern District of California