United States District Court
For the Northern District of California

1
2
3
4                          **NOT FOR PUBLICATION**
5
6                 IN THE UNITED STATES DISTRICT COURT
7
8                FOR THE NORTHERN DISTRICT OF CALIFORNIA
9  MEGUMI HISAMATSU,
10          Plaintiff,                           No. C 07-04371 JSW
11      v.
                                                 **ORDER GRANTING IN PART**
12  KAUSHAL NIROULA, et al.                       **AND DENYING IN PART**
                                                 **MOTION TO DISMISS OR FOR**
13          Defendants.                           **MORE DEFINITE STATEMENT**
                                        /
14
15                          **I.  INTRODUCTION**
16          This matter comes before the Court upon consideration of the motion to dismiss and for
17  a more definite statement filed Defendant Bank of Hawaii ("BOH").  Having considered the
18  parties' papers, relevant legal authority, the record in this case, and having had the benefit of
19  oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART BOH's
20  motion and GRANTS Plaintiff, Megumi Hisamatsu ("Ms. Hisamatsu"), leave to amend in
21  accordance with the terms of this Order.
22          The Court wishes to preface this Order by stating that it has no doubt that Ms.
23  Hisamatsu believes she has been wronged by the Defendants.  However, if she chooses to
24  amend her complaint, the Court encourages Ms. Hisamatsu, and her counsel, to consider
25  carefully the legal claims she wishes to pursue and to strive for clarity in any amended
26  complaint that she files.  The Court also reminds counsel of his obligations under Rule 11 and
27  to not plead facts that are inconsistent with the facts previously alleged.
28  //

**United States District Court**
For the Northern District of California

1

## II. BACKGROUND

2    **A.     Procedural History.**

3         On August 13, 2007, Ms. Hisamatsu filed a complaint in the Superior Court of the State

4    of California for the County of San Francisco against Defendants Kaushal Niroula ("Mr.

5    Niroula") and BOH.  On August 20, 2007, she filed her First Amended Complaint ("FAC"),

6    which is the operative pleading in this action.

7         The FAC is captioned "First Amended Complaint for Business Tort/Unfair Business

8    Practices."  Ms. Hisamatsu asserts claims for relief against BOH for: (1) Violations of

9    California Business and Professions Code § 17200 ("Section 17200"); (2) Conversion; (3)

10   Intentional Infliction of Emotional Distress; (3) Tort in Essence; (4) Civil Conspiracy; (5) Fraud

11   or Deceit Based on Suppression of Material Facts and Other Information and Partial

12   Disclosures; (6) Negligent Misrepresentation; (7) Declaratory Relief; (8) Rescission; (9)

13   Constructive Trust; (10) Equitable Lien; (11) Fraud Based on Promises Made Without Intent to

14   Perform; (12) Fraud or Deceit Based on Partial Disclosure and Concealment of Material Facts;

15   (13) Unfair or Deceptive Trade Practices in Violation of HRS § 480-1, *et seq.*; (14) Gross

16   Negligence; (15) Negligence; (16) Negligent Infliction of Emotional Distress; (17) Negligence

17   Per Se; and (18) Breach of Fiduciary Duty or Quasi-Fiduciary Duty.[1]

18         On August 23, 2007, BOH removed the action to this Court and, on September 19, 2007,

19   filed its motion to dismiss or for a motion definite statement.

20   **B.     Factual Background.**

21         This lawsuit arises out of a confidence scheme allegedly perpetrated by Mr. Niroula,

22   with the assistance and cooperation of BOH, on Ms. Hisamatsu.  The following facts, taken

23   from the FAC, are accepted as true solely for the purposes of this motion.

24         On or about July 27, 2006, while on vacation in Hawaii, Ms. Hisamatsu met Mr.

25   Niroula.  (FAC ¶ 6.)  According to Ms. Hisamatsu, who is a Japanese citizen, Mr. Niroula

26

27         [1]     In the FAC, Ms. Hisamatsu asserts multiple counts of intentional infliction of
     emotional distress, Counts 10, 19 and 25, and negligent misrepresentation, Counts 14 and 24.
28   At the hearing, she clarified that she alleged multiple counts in order to ensure that all facts
     set forth in prior counts were incorporated by reference into the later counts.  Ms. Hisamatsu
     voluntarily dismissed Counts 10, 14, and 19 on the record at the hearing.

United States District Court
For the Northern District of California

1    convinced her that he "headed an international consulting company," "that his mother ... was a

2    Nepalese diplomat" and that he was a friend of the Nepalese royal family.  (*Id.* ¶ 7.)  Mr.

3    Niroula also convinced Ms. Hisamatsu that he could assist her in obtaining an investment visa

4    so that she and her family could spend more time in the United States.  (*Id.* ¶¶ 7, 9-10.)  As part

5    of the visa process, Mr. Niroula advised Ms. Hisamatsu to open a bank account at an American

6    bank.  (*Id.* ¶¶ 16-17.)  On August 16, 2006, she did so at BOH's Honolulu branch.  (*Id.* ¶ 18.)

7    Ms. Hisamatsu alleges that bank employees appeared to know and be friendly with Mr. Niroula.

8    (*Id.*)  On August 22, 2006 and September 5, 2006, Ms. Hisamatsu wired $256,179.29 and

9    $299,988.00, respectively, to her BOH account.

10           On the day Ms. Hisamatsu opened the account, Mr. Niroula stole three temporary

11   checks, forged them, and deposited the funds into his own account at BOH.  (*Id.* ¶¶ 20, 22-24,

12   25.)  Ms. Hisamatsu contends that BOH did not verify her signature on any of these checks

13   before debiting them from her account.  On or about October 2, 2006, Ms. Hisamatsu learned of

14   the forgeries, notified BOH, and executed three affidavits (the "Claim Forms") swearing that

15   the checks were forged.  (FAC ¶ 31, Ex. A.)  In the Claim Forms, BOH states "the Bank will

16   investigate your Claim," and states that "[p]ayment is contingent upon the results of the Bank's

17   investigation."  (FAC, Ex. A.)  BOH also advises its customer that, by submitting a claim to

18   BOH, he or she agrees to cooperate with the Bank and law enforcement agencies with any

19   investigation.  (*Id.*)  BOH subsequently froze the account in which Mr. Niroula had deposited

20   the funds.  (*Id.* ¶¶ 29-33.)

21           When Ms. Hisamatsu opened her account at BOH, she executed a signature card that

22   states "I ... agree to all of the terms and conditions of the deposit account agreement and

23   disclosure statement, ... a copy of which I acknowledge [BOH] has furnished to me."

24   (Declaration of Scott I. Takahashi ("Takahashi Decl."), Ex. 2.)  The deposit account agreement

25   and disclosure statement referenced on the signature card provides, in turn and in part, that:

26          If you discover a check forgery, alteration or other unauthorized transaction
            involving your account, you must promptly notify your branch of account in
27          writing of the relevant facts. ...

28          You are in the best position to discover and report any unauthorized debit to
            your account.  If you fail to notify us within a reasonable time (not exceeding

3

21) days of an unauthorized signature, alteration, forgery, counterfeit check or other unauthorized debit to your account, we will not be responsible for subsequent unauthorized transactions by the same wrongdoer. Without regard to care or lack of care of either you or us, if you do not discover and report any such unauthorized transaction *within 60 days after your statement, transaction information or the item is made available to you, you are precluded from asserting the unauthorized transaction against us.*

If you claim a credit or refund because of an unauthorized transaction, you agree to provide us with a declaration containing whatever reasonable information we require regarding your account, the transaction and the circumstances surrounding the claimed loss. You also agree to make a report to the police and to provide us with a copy of the report, upon request.

(Takahashi Decl., Ex. 1, Consumer Deposit Account Agreement and Disclosure Statement and Bankoh Consumer Electronic Financial Services Agreement and Disclosure Statement ("the Deposit Agreement") at 18 (emphasis added).)

In or about late October 2006, after she had advised BOH of the alleged forgeries, Mr. Niroula contacted Ms. Hisamatsu and told her that he would repay her for the funds he had obtained. (FAC ¶¶ 34, 37.) He represented to her that "his family had been placed in a very dangerous situation due to their planned departure from Nepal, and the only way to save them from harm was to 'borrow'" her money. Ms. Hisamatsu contends that Mr. Niroula made various other representations regarding the delay in being able to reimburse her, including a representation that his sister had been kidnapped. (*Id.* ¶¶ 37-38.) Mr. Niroula also convinced Ms. Hisamatsu that she needed to come to San Francisco, California to complete the financial transactions. (*Id.* ¶ 37.)

"On October 20, 2006, as a direct result of BOH's statements in its claim forms and conciliatory attitude toward [Mr. Niroula, Ms. Hisamatsu] flew to San Francisco to recover her money." (*Id.* ¶ 32.) Ms. Hisamatsu opened an account with Citibank, into which Mr. Niroula deposited a check in the amount of $899,000. Ms. Hisamatsu was advised that the check would not clear for three days. (*Id.* ¶¶ 39-40.) Ms. Hisamatsu also opened another account with Wells Fargo bank, and "as a further direct result of Plaintiff's pending claims with BOH, Kashal Niroula's control and representations, BOH's statements in the claim form, and BOH's vouching for [Mr. Niroula, Ms. Hisamatsu] acted promptly to help" Mr. Niroula. (*Id.* ¶ 42.) As part of this effort to help Mr. Niroula, Ms. Hisamatsu "called her BOH branch and asked the

4

1    manager to wire $41,000 to her San Francisco Wells Fargo account. From those funds," Ms.

2    Hisamatsu loaned Mr. Niroula the ransom payment for his sister. (*Id.* ¶ 43.)

3        Before releasing the funds, BOH sent Ms. Hisamatsu a form entitled "Indemnification of

4    Liability" ("the Indemnification Agreement"). The Indemnification Agreement provides that,

5    for reasons known only to herself, Ms. Hisamatsu wished "to withdraw [her] forgery dispute

6    regarding" the three checks allegedly forged by Mr. Niroula and that she authorized the release

7    of the funds that had been held in suspense "as a result of the forgery dispute." (*Id.* ¶¶ 43-45,

8    Ex. B.) Ms. Hisamatsu states that because "[Mr.] Niroula had deposited adequate funds" into

9    the Citibank account, because she believed if Mr. Niroula did not repay her, her claim would

10   survive, *i.e.* she believed that signing the Indemnification Agreement would have no effect on

11   her claim, and because BOH had "vouched" for Mr. Niroula, she signed the Indemnification

12   Agreement. (*Id.* ¶¶ 45-47.)

13       On October 31, 2006, Ms. Hisamatsu learned that the check deposited in the Citibank

14   account had not cleared and that Mr. Niroula had not reimbursed the funds as promised. (*Id.* ¶

15   48.)

16                              **III. ANALYSIS**

17   **A.    BOH's Motion for a More Definite Statement is Denied as Moot.**

18       Pursuant to Federal Rule of Civil Procedure Rule 12(e), "[i]f a pleading to which a

19   responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be

20   required to frame a responsive pleading," a party may move for a more definite statement. Such

21   a motion must point out the alleged defects and the details required. Fed. R. Civ. P. 12(e). In

22   light of the Court's ruling on the motion to dismiss, the Court DENIES AS MOOT the motion

23   for a more definite statement.

24   **B.    BOH's Motion to Dismiss is Granted in Part and Denied in Part.**

25       BOH moves to dismiss on the ground that Ms. Hisamatsu's claims are precluded by

26   Uniform Commercial Code § 4-406(f) ("the UCC Preclusion Argument"). BOH also moves to

27   dismiss many of Ms. Hisamatsu's claims on the ground that the facts alleged do not state viable

28   claims for relief.

United States District Court

For the Northern District of California

5

**United States District Court**
For the Northern District of California

1      **1.    Applicable Legal Standard.**

2          A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a

3   claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss are

4   viewed with disfavor and are rarely granted.  *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th

5   Cir. 1986).  On a motion to dismiss, the complaint is construed in the light most favorable to the

6   non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v.*

7   *Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  The court, however, is not required to accept legal

8   conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be

9   drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

10  1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

11         Documents whose contents are alleged in a complaint and whose authenticity no party

12  questions, but which are not physically attached to the pleading, may be considered in ruling on

13  a Rule 12(b)(6) motion to dismiss.  Such consideration does not convert the motion to dismiss

14  into a motion for summary judgment.  *See United States v. Ritchie*, 343 F.3d 903, 908 (9th Cir.

15  2003); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

16      **2.    Choice of Law.**

17         BOH removed this case on the ground that the Court has diversity jurisdiction under 18

18  U.S.C. § 1332.  In such a situation, a court normally applies the substantive law of the forum

19  state.  *See Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996).  In this

20  case, however, the Deposit Agreement, provides that "[y]our account will be governed by this

21  agreement and the laws of the jurisdiction in which your account is located."  (Takahashi Decl.,

22  Ex. 2 at 14.)  In addition, under both Hawaii and California law,

23              [t]he liability of a bank for action or non-action with respect to an item
               handled by it for purposes of presentment, payment, or collection is governed
24              by the law of the place where the bank is located.  In the case of action or
               non-action by or at a branch or separate office of a bank, its liability of the
25              place where the branch or separate office is located.

26  *See* Haw. Rev. Stat. § 490:4-102(b); Cal. Comm. Code § 4102(b).

27         BOH argues that the Court should apply Hawaii law to all of Ms. Hisamatsu's claims.

28  The Court will apply Hawaii law claims relating to the Deposit Agreement, to the Claim Forms

1   signed in Hawaii, and to her negligence based claims.  However, Ms. Hisamatsu also asserts

2   independent tort claims against BOH.  Therefore, the Court applies California law to those

3   claims.  Although neither party briefed this issue, it appears that California law should govern

4   the interpretation of the Indemnification Agreement because Ms. Hisamatsu signed it in San

5   Francisco and because BOH is alleged to have released the funds to her in San Francisco.  *See,*

6   *e.g.,* Cal. Civ. Code § 1646.  The Court, therefore, will apply California law to interpret and

7   determine the validity of the Indemnification Agreement signed by Ms. Hisamatsu.

8           **3.      The Court Grants in Part BOH's Motion, With Leave to Amend, Based on
                      the UCC Preclusion Argument.**

9

10          BOH moves to dismiss all of Ms. Hisamatsu's claims on the ground that they are

11  precluded by UCC § 4-406(f), which provides:

12              Without regard to care or lack of care of either the customer or the bank, a
                customer who does not within one year[2] after the statement or items are
13              made available to the customer (subsection (a)) discover and report the
                customer's unauthorized signature on or any alteration on the item is
14              precluded from asserting against the bank the unauthorized signature or
                alteration.  If there is a preclusion under this subsection, the payor bank may
15              not recover for breach of warranty under Section 4-208 with respect to the
                unauthorized signature or alteration to which the preclusion applies.[3]
16

17          BOH concedes that Ms. Hisamatsu initially notified it of the alleged forgeries within the

18  sixty days required by the Deposit Agreement.  However, it argues that when she signed the

19  Indemnification Agreement, she withdrew her contention that Mr. Niroula forged the three

20  temporary checks and then did not timely reassert those claims.  Thus, according to BOH, any

21  claims that will require Ms. Hisamatsu to prove up the alleged forgeries are precluded.

22          In *Roy Supply v. Wells Fargo*, 39 Cal. App. 4th 1051 (1995), the court explained the

23  preclusive effect of former California Commercial Code § 4406(4), and stated that the section

24  was not akin to a statute of limitations, *i.e.* it "does not purport to bar an action against a bank."

25          [2]      The parties agree that, in this case, the one year time frame contemplated by
    section 4-406(f) has been shortened to sixty days because of the terms of the Deposit
26  Agreement.  Haw. Rev. Stat. § 490:4-103(a); *see also* Cal. Comm. Code § 4103.

27          [3]      Both Hawaii and California have adopted this provision of the UCC.  *See*
    Haw. Rev. Stat. § 490:4-406(f); Cal. Comm. Code § 4406(f).  However, the Court could not
28  locate any Hawaiian cases applying or interpreting this provision of the UCC.  Accordingly,
    the Court has looked to California law for guidance.

7

1   *Id.* at 1065.[4]  Rather, Section 4406 operates as an "issue preclusion" statute.  *Id.* at 1066 n.16.

2   Thus, if a customer has not timely notified the bank of a forgery or alteration, and "if a

3   customer must prove a forgery in order to establish a claim then the customer will not be able to

4   establish the claim because he or she is precluded from proving the forgery.  On the other hand,

5   any claim that is not dependent upon proof of the forgery will not be precluded, ... although the

6   customer will still be precluded from asserting the forgery in pursuing that claim." *Id.* at 1066.

7           It is undisputed that Ms. Hisamatsu initially notified BOH of the alleged forgeries within

8   the time period required under the Deposit Agreement.  However, she also later signed the

9   Indemnification Agreement, which purports to withdraw her assertion that the checks were

10  forged.  Ms. Hisamatsu does not allege that when she learned, on October 31, 2006, that Mr.

11  Niroula had not honored his promise to repay her, she alerted BOH that she wanted to reassert

12  her claim that the checks were unauthorized.  Rather, the record demonstrates that she did not

13  make this contention until she filed her complaint in the Superior Court on August 13, 2007.

14  Therefore, assuming the Indemnification Agreement can be enforced, Ms. Hisamatsu did not

15  notify BOH of the forgeries within the sixty days required by the Deposit Agreement and any

16  claims premised upon asserting those forgeries against the bank are precluded under Section

17  4-406(f).

18          In opposition to BOH's motion, Ms. Hisamatsu contends that Indemnification

19  Agreement cannot be enforced and asserts, *inter alia*, that BOH fraudulently induced her to sign

20  it.  (*See, e.g.,* FAC ¶¶ 117-127, 135-146; Opp. Br. at 3:16-5:4.)  Ms. Hisamatsu does not

21  contend that BOH made any affirmative misrepresentations to her.  Instead, she argues that the

22  Indemnification Agreement, as drafted, was misleading and that the statements therein were

23  insufficient to apprise Ms. Hisamatsu of the legal consequences of signing it.  Ms. Hisamatsu

24  posits that, because of these "partial disclosures," BOH was obligated to explain to her all of the

25  legal consequences that would have been associated with signing the Indemnification

26  ────────────────

27          [4]        California Commercial Code § 4406 now mirrors UCC § 4-406.  However,
    former Commercial Code § 4406(4), which the court in *Roy Supply* interpreted and applied,
    "differ[ed] somewhat from the Uniform Commercial Code version."  *Roy Supply*, 39 Cal.

28  App. 4th at 1065 n.15.  The Court concludes that the differences do not undermine the *Roy
    Supply* court's conclusion that Section 4406(f) operates as an issue preclusion statute.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    Agreement.  This argument must fail, however, because the facts alleged in the FAC do not

2    establish that BOH owed her such a duty.  *See, e.g., Copesky v. Superior Court*, 229 Cal. App.

3    3d 678, 692-94 (1991) (relationship between bank and depositor is not fiduciary or quasi-

4    fiduciary in nature); *cf. Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir.

5    1988) (holding that in order for a "mere omission to constitute actionable fraud, a plaintiff must

6    first demonstrate that the defendant had a duty to disclose the fact at issue," and noting that

7    "[w]e know of no case holding that parties dealing at arm's length have a duty to explain to

8    each other the terms of a written contract").[5]  Therefore, the Court concludes that those facts do

9    not support a claim that she was fraudulently induced to sign the Indemnification Agreement.

10   Ms. Hisamatsu cannot avoid the Indemnification Agreement on that theory.

11       Ms. Hisamatsu, however, does not rely solely on a theory of fraudulent inducement to

12   avoid the Indemnification Agreement.  The parties did not fully, or in the Court's view

13   adequately, brief the other legal arguments pertaining to the validity of the Indemnification

14   Agreement.  Accordingly, the Court cannot say conclusively that the Indemnification

15   Agreement will preclude each and every one of Ms. Hisamatsu's claims against BOH.  The

16   Court therefore dismisses with leave to amend Count 9 (Conversion), Count 11 (Tort in

17   Essence)[6], Count 17 (Constructive Trust), Count 18 (Equitable Lien), Count 20 (Wrongful

18   _____

19       [5]    *Cohen* was overruled on other grounds in *Ticknor v. Choice Hotels Intern.,*
     *Inc.*, 265 F.3d 931, 941-42 (9th Cir. 2001).

20

21       [6]    In Count 11, Ms. Hisamatsu alleges that BOH "owed nonconsensual [*sic*]
     duties" to her to "comply with the civil and criminal laws of the State of California," and that
22   BOH aided and abetted violations of California Penal Code § 476a and California Penal
     Code § 518.  (FAC ¶¶ 108-112).

23       A claim for "tort in essence" essentially is a claim for negligence per se, which in
     turn is a claim for negligence in which a plaintiff relies on a violation of a statute or
24   regulation to establish either a duty of care or the requisite standard of care.  *See, e.g., Ono v.*
     *Applegate*, 62 Haw. 131, 137 (1980) (standard of conduct in negligence case may be
25   determined by statute); *Michel v. Valdastri*, 59 Haw. 53, 55 (1978) ("Proof of the failure of
     the defendant to conform his conduct to standards established by law for the protection of the
26   class to which the injured party belongs, when shown to have a legitimate connection to the
     issue, is admissible as evidence of negligence."); *see also Elsner v. Uveges*, 34 Cal. 4th 915,
27   927 & ns. 7, 8 (2004).  The claim for tort in essence is a variation on Ms. Hisamatsu's theme
     that BOH acted negligently with respect to its handling of the allegedly forged checks and
28   thus depends upon proving up the forgeries against BOH.  Given that those claims arise out
     of her depository relationship with BOH, it is unclear to the Court on what basis Ms.

United States District Court
For the Northern District of California

1   Withholding of Funds After Forged Checks Were Drawn on Plaintiff's Account), Count 26

2   (Gross Negligence), Count 27 (Negligence), and Count 29 (Negligence Per Se).[7]

3        If she amends, Ms. Hisamatsu must allege facts that would support the legal bases on

4   which she seeks to avoid the Indemnification Agreement and more clearly articulate the legal

5   bases on which she contends the Indemnification Agreement cannot be enforced against her.

6   Ms. Hisamatsu shall not re-allege a claim of fraudulent inducement premised on alleged non-

7   disclosure of the legal consequences of signing the Indemnification Agreement.[8]

8        The Court now addresses BOH's remaining arguments in favor of dismissal.

9        **4.    BOH's Motion to Dismiss Count 8 Is Granted With Leave to Amend.**

10       BOH moves to dismiss this claim because "section 17200 does not support claims by

11  non-California residents where none of the alleged misconduct or injuries occurred in

12  California."  *Churchill Village, LLC v. General Elec Co.*, 169 F. Supp. 2d 1119, 1126 (N.D.

13  Cal. 2000) (citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999)),

14  *aff'd on other grounds*, 361 F.3d 566 (9th Cir. 2004)).  It is undisputed that Ms. Hisamatsu is not

15  a California resident.  She argues, however, that she can maintain a Section 17200 claim

16  because BOH never intended to honor her claim for reimbursement and used the

17  Indemnification Agreement as a means to achieve that end.  Ms. Hisamatsu asserts, in a

18  conclusory fashion, that BOH schemed with Mr. Niroula to get her to come to San Francisco

19  _____

20  Hisamatsu contends that California statutes can constitute evidence of BOH's alleged
    negligence.

21       [7]   In Count 29, Ms. Hisamatsu alleges that BOH "failed to exercise due care by
22  violating the foregoing statutes of public entities; or, by failure to conform to the standard of
    care required in handling claims for unauthorized transactions based on forgery."  The Court
23  finds that this Count is too vague to put BOH on notice of which of the many statutes
    referenced in the FAC the claim encompasses.

24       [8]   BOH only moved to dismiss the conversion claim on the ground that Ms.
25  Hisamatsu ratified the forgeries and is, therefore, precluded from asserting the claim under
    UCC 4-406.  Similarly, BOH's arguments in favor of dismissing the claims for a constructive
26  trust, equitable lien, and wrongful withholding of funds also are premised solely on its
    assertion that Ms. Hisamatsu ratified the forgeries by signing the Indemnification
27  Agreement.  If Ms. Hisamatsu can allege that the Indemnification Agreement should not be
    enforced against her, and that BOH should not have transferred the funds to Mr. Niroula and
28  should have reimbursed her for the alleged forgeries, she may be able to show that BOH
    wrongfully detained her property.  Whether she can ultimately prove up these claims cannot
    be resolved at this stage of the proceedings.

10

United States District Court

For the Northern District of California

1   and knew that she was in San Francisco when she requested that BOH release the funds to Mr.

2   Niroula.  However, the Court does not find the facts alleged in the FAC to support a reasonable

3   inference that BOH and Mr. Niroula worked in concert to defraud, or otherwise injure, Ms.

4   Hisamatsu while she was present in California.

5         The Court again rejects Ms. Hisamatsu's theory that the Indemnification Agreement is

6   misleading because it only partially discloses the legal consequences that are associated with

7   signing it.  Because, however, the Court cannot say with certainty that the Indemnification

8   Agreement is enforceable, the Court cannot say that there are no facts that would support a

9   violation of Section 17200, including Ms. Hisamatsu's allegation that using the Indemnification

10   Agreement to avoid paying a valid claim would violate California Civil Code § 1668.  As the

11   Court noted earlier, the instant motions do not adequately address these issues.

12         Accordingly, the Court shall grant Ms. Hisamatsu leave to amend this claim to set forth

13   any additional bases on which she contends the Indemnification Agreement constitutes an

14   unlawful, unfair or deceptive business practice or that BOH has used the Indemnification

15   Agreement in an unlawful or unfair manner in California.  The Court's ruling also is without

16   prejudice to BOH renewing its argument regarding the extraterritorial application of Section

17   17200.

18         **5.**     **BOH's Motion to Dismiss Count 12 Is Granted With Leave to Amend.**

19         "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on

20   persons who, *although not actually committing a tort themselves*, share with the immediate

21   tortfeasors a common plan or design in its perpetration."  *Applied Equipment Corp. v. Litton*

22   *Saudi Arabia, Inc.*, 7 Cal. 4th 503, 510-11 (1994) (emphasis added).  As the California Supreme

23   Court explained in *Applied Equipment*, "[b]y participation in a civil conspiracy, a coconspirator

24   effectively adopts as his or her own the torts of other coconspirators within the ambit of the

25   conspiracy. [Citation] In this way, a coconspirator incurs tort liability co-equal with the

26   immediate tortfeasors."  *Id.* at 511.

27         In order to plead a claim for civil conspiracy, a plaintiff must plead facts that show the

28   formation and operation of the conspiracy and damage done to the plaintiff from an act or acts

United States District Court

For the Northern District of California

1    done in furtherance of the common design. *Id.* at 511. "The advantage gained in charging a

2    conspiracy is that the act of one during the conspiracy is the act of all if done in furtherance

3    thereof, and thus defendants may be held liable who in fact committed no overt act whatsoever

4    and gained no benefit therefrom." *Mox, Inc. v. Woods*, 202 Cal. 675, 678 (1927).[9]  A defendant,

5    however, must be legally capable of committing the underlying tort to be held liable as a

6    conspirator to commit that tort. *Applied Equipment*, 7 Cal. 4th at 511.

7         Although less than clear, it appears that Ms. Hisamatsu alleges that BOH and Mr.

8    Niroula conspired to steal her savings.  (*See* FAC ¶ 115.)  Accepted as true for purposes of this

9    motion, the facts in the FAC are sufficient to allege that Mr. Niroula converted Ms. Hisamatsu's

10   funds and to show an underlying tort that the Defendants allegedly conspired to commit.  In

11   addition, the facts in the FAC do allege wrongs against Mr. Niroula that BOH could legally

12   commit, if Ms. Hisamatsu could adequately allege facts that showed an agreement to commit

13   those torts.  The question then becomes whether, as Ms. Hisamatsu contends, paragraphs 30-36,

14   39, 42-48, 53 and 56-58 of the FAC set forth the facts necessary to show BOH's agreement to

15   participate in the alleged conspiracy.  The Court concludes that they do not.

16        Ms. Hisamatsu alleges that BOH and Mr. Niroula "combined by concerted action,"

17   "intentionally formed, planned, and operated the conspiracy," and had a "common design" to

18   steal Ms. Hisamatsu's savings and cause her physical and emotional injury.  However, when all

19   of the allegations of the FAC are taken together, they do not support an inference that BOH had

20   knowledge of Mr. Niroula's scheme and cooperated with him with the intent to further that

21   scheme.  Rather, Ms. Hisamatsu asserts, generally, that BOH employees knew and appeared to

22   be friendly with Mr. Niroula and may even have "vouched" for him.  Even considering these

23   facts as circumstantial evidence, they simply do not support a reasonable inference that BOH

24

25        [9]      BOH contends that "there is no actionable conspiracy" when the acts
     allegedly done in furtherance of the conspiracy "are themselves not actionable," and relies on
26   *Unruh v. Truck Ins. Exchange*, 7 Cal. 3d 616, 631 (1972) as support for this argument.  In the
     *Unruh* case, the court concluded that a negligence claim against defendant Truck Insurance
27   Exchange could not proceed because the Workers Compensation Appeals Board had
     exclusive jurisdiction.  The court concluded that the civil conspiracy claim was not
28   actionable, because it was premised upon a claim over which the court did not have
     jurisdiction.  That is not the situation here.

United States District Court

For the Northern District of California

1    knew of and intended to join in a conspiracy with Mr. Niroula.  Moreover, Ms. Hisamatsu

2    alleges that BOH froze Mr. Niroula's accounts after Ms. Hisamatsu asserted that Mr. Niroula

3    forged her signature of the temporary checks, which undermines her assertion that BOH and

4    Mr. Niroula worked together to defraud her.

5         Accordingly, this claim is dismissed with leave to amend.  If the only factual

6    amendment Ms. Hisamatsu can make is the alleged phone call between Mr. Niroula and Mr.

7    Dodds before BOH sent the Indemnification Agreement to her, the Court finds that the phone

8    call, without more, is insufficient to support the inference of an agreement between BOH and

9    Mr. Niroula.

10        **6.    BOH's Motion to Dismiss Count 13 Is Granted Without Leave to Amend.**

11        Count 13 is premised on Ms. Hisamatsu's contention that BOH concealed material

12   information from her when it sent the Indemnification Agreement to her, namely the legal

13   consequences that would result if she signed it.  For the reasons set forth above in Section

14   III.A.3, the Court has concluded that, on the facts alleged, BOH did not owe Ms. Hisamatsu a

15   duty to disclose the allegedly concealed information and that this is not a legally viable theory

16   upon which to pursue a claim of fraud.  Accordingly, this claim is dismissed without leave to

17   amend.

18        **7.    BOH's Motion to Dismiss Count 15 Is Denied in Part.**

19        In her claim for Declaratory Relief, Ms. Hisamatsu alleges that the Indemnification

20   Agreement is not enforceable.  (*See* FAC ¶¶ 135-139.)  By way of example, she contends that

21   the Indemnification Agreement was obtained by way of "duress, undue influence, mistake, ...

22   bad faith, oppression [and malice]."  (FAC ¶ 136F.)  BOH moves to dismiss this claim because

23   it seeks relief "on precisely the same issues which are already before this Court in her numerous

24   other claims," and because a declaratory judgment "would be based on alleged misconduct

25   which already occurred, not to declare that ongoing conduct is wrongful."  (Mot. at 20:23-26.)

26        In this case, Ms. Hisamatsu does not seek declaratory relief to determine the validity of a

27   contract and damages for a breach of the same contract.  *Cf. Kinghorn v. Citibank, NA*, 1999

28   WL 30534 at *7 (N.D. Cal. Jan 20, 1999) (declining to award declaratory relief where validity

United States District Court

For the Northern District of California

1   of contract would be determined in conjunction with claim for breach of contract).  It is,

2   however, clear that resolution of many of Ms. Hisamatsu's claims will depend on whether or

3   not the Indemnification Agreement is enforceable.  Although the Court has discretion to dismiss

4   this claim, it declines to do so.  If Ms. Hisamatsu amends her complaint, she should clearly set

5   forth the factual and legal bases supporting her claim for declaratory relief that the

6   Indemnification Agreement cannot be enforced.

7           **8.      BOH's Motion to Dismiss Count 16 Is Granted in Part With Leave to
               Amend and Denied in Part.**

8

9           BOH argues this claim should be dismissed and argues that Ms. Hisamatsu fails to

10  allege facts to support a claim that she was fraudulently induced to sign the Indemnification

11  Agreement.  For the reasons previously set forth, BOH's motion is granted in part on this basis.

12  Because fraud is not the only basis on which a party to a contract may seek to rescind the

13  contract, Ms. Hisamatsu shall be granted leave to amend if, in good faith, she can allege facts

14  that support another basis to rescind the Indemnification Agreement.

15          BOH also argues that the Court should dismiss this claim on the grounds of delay.

16  Under California law a party to a contract may forfeit the right to rescind where delay has

17  substantially prejudiced the other party.  *See* Cal. Civ. Code § 1691; *Citicorp Real Estate v.*

18  *Smith*, 155 F.3d 1097, 1103 & ns. 3, 4 (9th Cir. 1998).  BOH makes no showing of substantial

19  prejudice and, thus, the Court denies the motion on that basis.

20          **9.      BOH's Motion to Dismiss Count 21 Is Denied.**

21          In Count 21, Ms. Hisamatsu alleges a claim for promissory fraud against BOH.

22  Under Hawaii law, in the context of a claim for fraudulent inducement, a promise made without

23  the intent to perform is considered actionable fraud.  *See Touche Ross Ltd. v. Filipek*, 7 Haw.

24  App. 473, 480 (1989); *Eastern Star Inc. v. Union Building Materials Corp.*, 6 Haw. App. 125,

25  140 (1985).[10]

26

27          [10]    California law is in accord.  *See Muraoka v. Budget Rent-A-Car, Inc.*, 160
    Cal. App. 3d 107, 117 (1984) (elements of a claim for promissory fraud are: (1) the
28  defendant made a promise with respect to a material fact, with no intention of performance;
    (2) the existence of the intent not to perform at the time the promise was made; (3) the

**United States District Court**
For the Northern District of California

1   BOH moves to dismiss this count on the ground that it owed no duty to Ms. Hisamatsu

2   and that "[n]either Hawaii nor California recognize a tort claim, including fraud, arising out of

3   what is essentially a breach of contract claim." (Mot. at 9:27-10:1.) The Court, however,

4   construes this claim to encompass more than an allegation that BOH failed to live up to the

5   promises set forth in the Claim Forms. Rather, it appears that Ms. Hisamatsu contends that

6   BOH never intended to honor the promises set forth therein or to reimburse her for the alleged

7   forgeries. Ms. Hisamatsu further alleges that because she relied on the promises in the Claim

8   Forms, she did not take immediate action to pursue her claims for reimbursement directly

9   against BOH. (FAC ¶¶ 163-171, Ex. A.)

10  The Court therefore denies BOH's motion to dismiss this claim.

11  **10.    BOH's Motion to Dismiss Count 22 Is Granted in Part and Denied in Part.**

12  In Count 22, Ms. Hisamatsu asserts a claim for fraudulent concealment, which relates to

13  the Claim Forms attached as Exhibit A to the FAC, rather than to the Indemnification

14  Agreement. Specifically, Ms. Hisamatsu contends that "BOH failed to reveal, and suppressed

15  the material facts (1) that Plaintiff, as a victim of an unauthorized transaction based on forgery

16  was not required, as a part of 'cooperation' to negotiate directly with the perpetrator of the

17  forged endorsement; (2) that failure by the victim to negotiate in this manner would not result in

18  denial or reduction of the claims with the bank for reimbursement, and (3) that BOH had

19  already decided to deny the claims." (FAC ¶ 177.)

20  The Court finds the first two alleged concealments to pertain to Ms. Hisamatsu's theory

21  that BOH was obliged to explain each and every legal consequence of the documents she

22  signed. Again, the Court finds that, on the facts alleged, BOH had no duty to make such

23  disclosures, and Ms. Hisamatsu cannot pursue a fraud claim on that theory. The third alleged

24  concealment appears to the Court to be an allegation that would fall within Ms. Hisamatsu's

25  claim for promissory fraud.

26

27  ────────────

28  defendant acted with the intent to deceive the plaintiff or with the intent to induce plaintiff
    into the transaction; (4) the plaintiff relied on the promise; (5) the defendant did not perform;
    and (6) the plaintiff was injured).

1      Accordingly, the Court finds that Ms. Hisamatsu fails to state a claim in Count 22 and

2  that claim shall be dismissed.  Ms. Hisamatsu may include her allegation that BOH intended to

3  deny her claims for reimbursement in her claim for promissory fraud.

4      **11.     BOH's Motion to Dismiss Count 23 Is Granted With Leave to Amend.**

5      "The elements necessary to recover on an unfair or deceptive trade acts or practices

6  claim under HRS s 480-13(b)(1) are: (1) a violation of HRS s 480-2; (2) injury to the consumer

7  caused by such a violation; and (3) proof of the amount of damages."  *Davis v. Wholesale*

8  *Motors, Inc.*, 86 Haw. 405, 417 (1997).  "[A]ctual deception is not required to establish a claim

9  under HRS s 480-2 ...; all that is required is proof that the defendant's actions 'had the capacity

10  to mislead.'"  *Id.* at 417 n.15 (quoting *State v. United States Steel Corp.*, 82 Haw. 32, 51

11  (1996)).

12      Ms. Hisamatsu contends that the Claim Forms are misleading.  Those Claim Forms state

13  that the "Bank will investigate your Claim.  Payment of your Claim is contingent upon the

14  Bank's investigation. ... By submitting this Claim to the Bank, you agree to fully cooperate with

15  the Bank and law enforcement agencies by*,* among other things, testifying, declaring, deposing,

16  and certifying to the truth of the facts in any investigation., or other civil or criminal proceeding

17  or trial relating to the Claim on your Affidavit."  (FAC ¶ 176, Ex. A.1.)

18      Ms. Hismatsu claims these statements were misleading and deceptive because BOH

19  failed to tell her that she "was not required, as part of 'cooperation' to negotiate directly with

20  the perpetrator or the forged endorsement; (2) that failure to negotiate in this manner would not

21  result in denial or reduction of the claims or reduction of the claims with the bank for

22  reimbursement, and (3) that BOH had already decided to deny the claims."  (FAC ¶ 177; *see*

23  *also* Opp. at 22 ("[t]he omissions at ¶ 177 made the disclosed facts at ¶ 176 fraudulent").  For

24  reasons previously set forth in this Order, because the Court concludes that, on the facts alleged,

25  BOH had no duty to disclose the information alleged in (1) and (2), these allegations cannot

26  support a claim that the Claim Forms were misleading.  If, however, BOH presented the Claim

27  Forms to Ms. Hisamatsu knowing that it had already to decided the claim, *i.e.* it committed

28

**United States District Court**
For the Northern District of California

1

2

United States District Court

For the Northern District of California

promissory fraud, this would be sufficient to render the statements in the Claim Forms misleading. Accordingly, the Court dismisses this claim with leave to amend.

Ms. Hisamatsu also alleges that the Indemnification Agreement violates Hawaii's unfair competition law. Ms. Hisamatsu has not alleged any facts to suggest that BOH has used the Indemnification Agreement in Hawaii in a manner that is unfair or unlawful. The Court therefore grants the motion to dismiss that aspect of the claim with leave to amend. However, for the reasons set forth above, Ms. Hisamatsu may not premise an amended claim on the theory that the Indemnification Agreement is misleading because BOH does not explain the legal consequences of signing it.

### 12.    BOH's Motion to Dismiss Count 24 Is Granted With Leave to Amend.

In Count 24, Ms. Hisamatsu asserts a claim for negligent misrepresentation. Ms. Hisamatsu purports to incorporate by reference each and every paragraph that precedes this Count and then states, in a conclusory fashion, that "[f]alse information was supplied to Plaintiff by BOH, as stated above, of important facts. The concealments which made disclosed facts fraudulent were made as a result of the failure to exercise reasonable care or competence in communicating the information, and defendants had no reasonable grounds for believing the representations true when made." (FAC ¶ 190.)

The Court finds this claim does not put BOH on notice of the facts supporting this claim and, therefore, dismisses the claim. If this claim is premised on theories asserted in Counts 13, 14 or 22, Ms. Hisamatsu shall not re-assert this claim in an amended complaint.

### 13.    BOH's Motion to Dismiss Counts 25 and Count 28 Is Granted With Leave to Amend.

The elements of a claim for intentional infliction of emotional distress are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *See, e.g., Cole v. Fair Oaks Fire Dept.*, 43 Cal. 3d 148, 155 n.7 (1987). As the court noted in *Cole*, this tort imposes liability for "conduct

17

1  exceeding all bounds usually tolerated by a decent society, of a nature which is especially

2  calculated to cause, and does cause, mental distress." *Id.*

3       In contrast, "[t]he law of negligent infliction of emotional distress in California is

4  typically analyzed ... by reference to two 'theories' of recovery: the 'bystander' theory and the

5  'direct victim' theory." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071 (1992). In this case, it

6  is clear that Ms. Hisamatsu is a direct victim, as she alleges that BOH's conduct was directed at

7  her. In such cases, California courts view negligent infliction of emotional distress not as an

8  independent tort but, rather, as the tort of negligence to which the traditional elements of a

9  negligence claim apply. *Id.* at 1072 (citing *Marlene F. v. Affiliated Psychiatric Medical Clinic,*

10 *Inc.*, 48 Cal. 3d 583, 588 (1989)).

11      BOH moves to dismiss these claims for relief on the ground that Ms. Hisamatsu cannot

12 recover emotional distress damages arising solely out of economic injury and on the ground that

13 the alleged conduct is not "outrageous or beyond all bounds of decency in a civilized society."

14 (Mot. at 17:15-17.) Although Ms. Hisamatsu does not allege facts demonstrating how she

15 suffered emotionally, she does allege that BOH's actions "caused [her] to suffer emotional

16 distress or extreme emotional distress" and caused her "severe emotional distress." (FAC ¶¶

17 197-198.) Based on these allegations, the Court cannot say that Ms. Hisamatsu seeks to recover

18 emotional distress damages based solely on economic injury.

19      In addition, Ms. Hisamatsu premises this claim on a theory that BOH "coerce[d] her to

20 investigate and negotiate with an identity thief and a forger solely to escape payment on

21 unauthorized transactions." (*See* Opp. at 17:19-22.) If these allegations are true, the Court

22 could not say that BOH's conduct was not so outrageous that the claim should be dismissed

23 with prejudice on a motion to dismiss. The flaw in Ms. Hisamatsu's argument, however, is that

24 there are not facts in the FAC to support her theory of liability on this claim, *i.e.* the facts

25 alleged do not suggest that BOH engaged in such conduct. Thus, the Court dismisses these

26 claims with leave to amend.

27      **15.    BOH's Motion to Dismiss Count 30 Is Granted Without Leave to Amend.**

28

United States District Court
For the Northern District of California

18

**United States District Court**
For the Northern District of California

BOH moves to dismiss this claim on the ground that it is not in a fiduciary or quasi-fiduciary relationship with Ms. Hisamatsu.  In this claim for relief, Ms. Hisamatsu asserts that "[d]epositors, including Plaintiff reasonably expect a bank not to claim non-existent legal defenses to avoid reimbursement."  (FAC ¶ 216.)  This allegation appears to be drawn directly from *Commercial Cotton Co. v. United California Bank*, 163 Cal. App. 3d 511, 516 (1985), in which the California Court of Appeal, Fourth District, characterized a bank's relationship with its depositors as "quasi-fiduciary" in nature.  However, subsequent to that decision, the Fourth District determined that its ruling in *Commercial Cotton* was erroneous and found that "banks, in general, ... are not fiduciaries for their depositors; and that the bank-depositor relationship is not a 'special relationship.'"  *Copesky*, 229 Cal. App. 3d at 692-94.

On these facts and on this legal theory, Ms. Hisamatsu cannot establish that BOH owed her a fiduciary or "quasi-fiduciary" duty.  This claim is dismissed without leave to amend.

### IV.  CONCLUSION

For the foregoing reasons, BOH's motion is GRANTED IN PART AND DENIED IN PART.  Ms. Hisamatsu shall be granted leave to file a second amended complaint on the terms set forth in this Order.  The Court reiterates that unless Ms. Hisamatsu can viably plead facts to support a claim that the Indemnification Agreement should not be enforced, she may not amend any claims that will require proving up the allegedly forged checks as an element of the claim.

Ms. Hisamatsu shall file her amended complaint by no later than February 1, 2008.  Defendants shall have twenty days thereafter to file their responsive pleadings.

**IT IS SO ORDERED.**

Dated: January 10, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE