STEPHEN M. SHAW, SB #107625
P.O. Box 2353
Honolulu, Hawaii 96804
Telephone: (808) 521-0800
Facsimile: (808) 531-2129
Email: shawy001@gmail.com

Attorney for Plaintiff
MEGUMI HISAMATSU

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### -SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| MEGUMI HISAMATSU, | ) | CASE NO:   3:07-cv-04371-JSW |
| | ) | |
| Plaintiff, | ) | **SECOND AMENDED COMPLAINT;** |
| vs. | ) | **EXHIBITS "A"-"B";** |
| | ) | |
| KAUSHAL NIROULA; | ) | **DEMAND FOR JURY TRIAL** |
| BANK OF HAWAII, | ) | |
| A Corporation; DOES 1-60; | ) | |
| | ) | Judge: Honorable Jeffrey S. White |
| Defendants. | ) | Courtroom: 2, 17th floor |
| | ) | |

## SECOND AMENDED COMPLAINT

1.     Plaintiff Megumi Hisamatsu, at times relevant here was, and is a resident of Osaka, Japan; and in connection with her following causes of action gives notice to defendants of her intent to access information, and demands that defendants refrain from destroying, losing, overwriting, or purging any information without the written consent of Plaintiff.

1

**JURISDICTION**

2      2.1      Jurisdiction is grounded on removal by Bank of Hawaii ("BOH")

3    to this District Court.

4      2.2      Defendant Kaushal Niroula, is an individual who resides in San

5    Francisco, California.

6      3.      Defendant Does 1-8, 32-35 are individuals who are associated with

7    defendant Kaushal Niroula, and who reside in San Francisco, California.

8    Defendant Does 9 and 10 are Defendant Niroula's parents. Does 11-15 are

9    members of his immediately family.

10      4.      Defendant BANK OF HAWAII ("BOH") is, on information and

11    belief, a corporation headquartered in Honolulu, Hawaii, and authorized to

12    transact business in the State of California. BOH has an agent for service of

13    process in California, litigates in California; and, its corporate registration in

14    1998 is still listed as active by the California Secretary of State, at C2066195.

15    This Court has jurisdiction inter alia pursuant to Article VI, Section 10 of the

16    California Constitution, because the case is an action not given by statute to

17    other trial courts.

18      5.      Defendants DOES 1-60 are guilty of those acts alleged herein and

19    will be identified according to proof when their identities and connection to the

20    individual counts are known. In the event any defendant asserts the defense of

2

1    advice of counsel, or advice of any other entity or person, said persons will be

2    named as defendants in place of DOES 50-60, as discovered.

3

4    **FACTUAL ALLEGATIONS INCORPORATED INTO EACH COUNT**

5        6.        On or about July 27, 2006, during a vacation in Hawaii, Plaintiff

6    was befriended by Defendant Kaushal Niroula. Defendant represented that he

7    was Plaintiff's neighbor at the short-term condominium rentals in Honolulu

8    (Waikiki), where Plaintiff Hisamatsu was vacationing.

9        7.        Defendant Kaushal Niroula also represented that he headed an

10   international consulting company and that his mother (Doe 9) was a Nepalese

11   diplomat. He said his family (Does 9-15) was very rich, and that he was a friend

12   of the Nepalese royal family. Eventually, defendant brought up the subject of

13   real estate investments in Hawaii. Plaintiff had long been interested in Hawaii

14   real estate, but had no visa which would permit her family an extended stay in

15   the United States. Kaushal Niroula explained that he had succeeded in helping

16   many of his business clients who invest in businesses, real estate and other

17   projects in America. When Plaintiff mentioned that she had thought about a visa

18   for longer visits in Hawaii with her children, defendant Kaushal Niroula further

19   represented that he had referred many of his clients to an immigration lawyer in

20   the Bay Area who would be able to help Plaintiff get a business or investment

visa. Defendant Kaushal Niroula represented that Plaintiff would need to have investments in the United States if she got involved in the investment visa application process.

8.      Defendant Kaushal Niroula, unbeknownst to Plaintiff, was actually a criminal from San Francisco California, and he intended to victimize Plaintiff through a combination of criminal hoaxes well known to co-defendant BOH: (1) Nepalese Royal Family scam, (2) fraudulent investment visa scam, (3) Advance Fee Fraud, and (4) identity theft.

9.      The first hoax professes, as here, (a) close contacts with the Nepalese government (Kaushal Niroula claimed to be the best friend and classmate of the deceased prince of Nepal); (b) a family or related group with massive wealth; (c) threats to the group's wealth, due to turmoil in Nepal since the murder of the Nepalese royal family in 2001; (d) need for outside money to assist in the family's escape from Nepal,  and the transfer and reinvestment of funds from Nepal; (e) to rescue members of the group, or family, from imminent danger.

10.      The second hoax is a variant of fraudulent green-card lottery services, whereby a businessman or an attorney uses misrepresentations and unfair practices to promote immigration to the United States. The variation here was to offer investment, or EB-5 visas. Like the visa lottery scams, Defendant

Kaushal Niroula represented (a) affiliation with an immigration lawyer who would successfully process EB-5 visas, (b) proven success in assisting foreigners satisfy the minimal investment of $500,000 in a new enterprise in the United States for approval of an EB-5 visa application.

11.     Defendant Kaushal Niroula also employed the advance-fee fraud scheme, whereby Plaintiff could recover the money Kaushal Niroula eventually stole from Plaintiff (to save Nepalese family members in great personal danger due to turmoil in that country's government). In order to recover, Plaintiff Hisamatsu was asked to take several more steps: help release a hold on Kaushal Niroula's bank account, and give him another $41,000, in San Francisco.

12.     Additionally, Kaushal Niroula deployed identity theft as the centerpiece of his criminal confidence schemes. Under the false pretext of preparing and advising  Plaintiff for her visa application through a Bay-Area attorney, Kaushal Niroula was able to steal her personal information, steal three blank BOH checks from Plaintiff's new BOH checking account, and forge her signatures for a total loss of $508,000.00.

13.     In its Identity Theft Guide, BOH falsely and fraudulently represented to consumers generally:

"WHAT THE BANK IS DOING

Bank of Hawaii provides identity theft victims with responsive, caring service from beginning to end. When notified by a customer of a

---

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

possible identity theft, Bank of Hawaii will ensure that accounts are closed and protected properly. Designated staff members will also follow up with customers and monitor accounts for any suspicious activity. Our goal is to ensure that customers experience complete resolution and consistent follow-through so their concerns and issues are handled in a timely and caring manner."

14.     Unaware of defendant Kaushal Niroula's evil intent, Plaintiff was persuaded into thinking that Kaushal Niroula's family (Does 9-15) was wealthy and connected to the power elite in Nepal. Plaintiff was further led to believe that Kaushal Niroula was an international businessman, involved in investment visa consulting.

15.     As a result of the confidence Kaushal Niroula instilled in Plaintiff about his business skills, contacts, and upbringing, Plaintiff expressed interest in investment in Hawaii. Kaushal Niroula, in turn, made several real estate presentations to Plaintiff which further deepened her trust in Defendant Niroula's business skills. While rejecting the real estate proposals, Plaintiff Hisamatsu long maintained an interest in obtaining a visa which would allow her, and her family, to stay for longer periods in the United States.

16.     Defendant Kaushal Niroula represented that he was very familiar with investment visa programs in the United States, and had obtained successful results for many of his clients by working through a lawyer near San Francisco.

According to Niroula, Plaintiff would not actually need to complete an investment to apply for the visa; a minimal balance of $500,000 in a domestic bank would suffice. Kaushal Niroula's function, he represented, was to help his clients invest in United States properties; or, to at least move the minimum required funds into the United States before sending his clients to the immigration lawyer. Defendant Niroula volunteered to help Plaintiff free of charge. To begin the EB-5 process, he advised Plaintiff Hisamatsu to wire at least $500,000 into a United States bank account. Defendant Kaushal Niroula eventually gave Plaintiff the name and telephone number of a lawyer in the Bay Area, who would accept the materials he prepared for the clients to support the finished application.

17.    Kaushal Niroula next persuaded Plaintiff to start arranging wire transfers upon her return to Japan. For his part, Niroula volunteered to make sure that his contacts at Bank of Hawaii (BOH) had properly posted the wire transfers to Plaintiff Hisamatsu's account. Defendant Niroula further represented he would prepare the documents for Plaintiff's first contact with the immigration attorney in the Bay Area. Plaintiff was led to trust Niroula enough to seek his "help" opening the bank account.

18.    On or about August 16, 2006, Defendant Kaushal Niroula took Plaintiff to Defendant Bank of Hawaii (BOH's) Waikiki branch and introduced

Plaintiff to a BOH's employee Lynn Bronios, who seemed to be extremely friendly with Kaushal Niroula. Defendant represented to Plaintiff Hisamatsu that he had several other friends at BOH who would help with transfers of funds, and eventual verification for American immigration officials.

19.    At the same date and place, Defendant Niroula and BOH employees helped Plaintiff Hisamatsu open personal checking account no. 0002-937182 at Bank of Hawaii ("Plaintiff's BOH account"). Plaintiff, with Defendant Niroula's "help", used her Japanese passport and information therein as identification for BOH staff, who were also "helping". Plaintiff signed a customer signature card. This card, she was informed by Ms. Bronios and other BOH employees would be used to verify the signatures on her checks, by comparison.

20.    While aiding Plaintiff Hisamatsu with bank staff and new account procedures, Defendant Niroula, without Plaintiff's knowledge or consent, stole three temporary checks (numbered 101-103) as well as Plaintiff Hisamutsu's identity.

21.    On August 22, 2006, relying on Defendant Niroula's representations about domesticating her family's savings in the United States for her visa, and relying on the apparent confidence BOH employees had in Niroula, Plaintiff caused $256,179.29 to be wired from Japan into her new BOH

1    account, opened on August 16, 2006. Because it was a new account, Plaintiff's

2    funds would not be immediately available.

3          22.      Between August 24 and September 18, 2006, without Plaintiff's

4    knowledge or consent, Defendant Kaushal Niroula forged Plaintiff's signature

5    on two of her checks he had stolen previously, and another he had obtained as

6    part of his criminal visa fraud scheme. He deposited them into <u>his</u> BOH

7    account, all without Plaintiff's knowledge or authorization. On information and

8    belief, these checks were not teller-processed. After <u>each</u> deposit, BOH had

9    enough information to retransfer the funds back into plaintiff's account.

10         23.      On August 24, 2006, without properly comparing signatures on

11    Plaintiff's signature card for forgery. Defendant BOH debited Plaintiff's <u>new</u>

12    BOH account for $8,000 from one of Defendant Kaushal Niroula's forged

13    checks. Plaintiff's account was only eight days old, and Niroula used Plaintiff's

14    <u>temporary</u> checks. Defendant BOH did not contact Plaintiff prior to, or during

15    the transaction. Had BOH simply contacted Plaintiff at this point, none of the

16    subsequent forgeries would have cleared the bank.

17         24.      On August 28, 2006, without verifying the signature, defendant

18    BOH debited Plaintiff's BOH account for $95,000 from another <u>temporary</u>

19    BOH check forged by defendant Kaushal Niroula. Defendant BOH did not

1    contact Plaintiff prior to the transaction. Had contact been made with Plaintiff,

2    the next forgery would not have cleared the bank.

3        25.     On August 29, 2006, Plaintiff returned to her residence in Osaka,

4    Japan. Prior to returning, she requested that BOH customer service (1) email to

5    her all confirmations of wired deposits, and (2) send her bank statements to her

6    address in Japan. Plaintiff also provided BOH Customer Service with her email

7    address so Plaintiff Hisamatsu could access BOH communications in Japan, as

8    well as the United States. At this point BOH had a duty to plaintiff to check her

9    account in the context of following her instructions. BOH breached this duty,

10   allowing Niroula to steal plaintiff's funds.

11       26.     On September 5, 2006, not knowing about theft from the account,

12   Plaintiff caused $299,988.00 to be wired from Japan into her BOH account

13   which had been, opened just twenty days earlier.

14       27.     As part of  Defendant Niroula's ongoing criminal enterprise of

15   immigration   fraud   (18   USC   §1546),   money   laundering   (18   USC

16   §1956(a)(2)(A), wire fraud (18 USC §1343), bank fraud (18 USC §1344), and

17   immigration document fraud (8 USC §1324c), Niroula deceptively represented

18   that he was preparing Plaintiff's application for an investment visa by

19   organizing exhibits for the application which would soon be finalized by a Bay

20   Area immigration lawyer. He urged Plaintiff to immediately send him a few

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

BOH checks to show her U.S. address printed thereon, so that immigration could verify that she had both the contacts with the United States and the banking relationship Niroula misrepresented was required for the visa application. Eager to apply for an EB-5 visa (not knowing defendant Niroula had already stole Plaintiff's BOH checks from her and forged them), Plaintiff sent defendant Niroula three checks.

28.    For the third time, on September 18, 2006, defendant BOH debited Plaintiff's BOH account. This time it was for $405,000 (check#105), based on another check forged by Kaushal Niroula. BOH did not contract Plaintiff prior to, or during the transaction. BOH did not competently verify the signature, and BOH did not contact Plaintiff in Japan.

29.    Since no statement from BOH had been returned to Plaintiff's address in Japan during September, Plaintiff called BOH on or about October 2, 2006 (Japan time), and received the shocking news that her family savings in her BOH checking account had been drained of $508,000.00 by transactions which were unauthorized and unknown to her. Plaintiff, at that point, promptly notified BOH that the purported signatures on the checks debited 8/24/06, 8/29/06 and 9/18/06 were unauthorized.

30.    At that point, BOH employees refused to contact the police or take any action to recover the funds despite Plaintiff's pleas for help. In violation of

1    BOH's Identity Theft Guide and other BOH procedures, bank employees

2    insisted that Plaintiff Hisamatsu would have to return to Hawaii if she wanted to

3    pursue the matter further. At that juncture BOH had enough information to

4    retransfer all of the money in Mr. Niroula's accident back to Plaintiff's account

5    and to begin tracing and recoupment procedures, for the remaining funds.

6        31.    On October 2, 2006, Plaintiff flew from Japan to Honolulu. On

7    October 3, 2006, Plaintiff met with defendant BOH's employees and swore out

8    three affidavits in support of claims for reimbursement for each forged check.

9    One employee is now known as Chester Dods. The pre-printed BOH claim

10   form falsely, partially, and fraudulently represented: "Payment of your claim is

11   contingent upon the results of the Bank's investigation. The Bank's decision to

12   pay or not to pay your claim will be made in light of all the facts and

13   circumstances after completion of its investigation." Copies of the claims and

14   affidavits are attached hereto as Exhibits A.1 – A.9, and are incorporated herein

15   by reference. At the time BOH had decided not to pay the claim, but to deny it.

16       32.    At the October 3 (U.S. time) meeting, Plaintiff repeatedly asked

17   BOH employees, including Dods to call the police, but bank staff, including

18   Dods; refused despite having sufficient information to form a reasonable

19   suspicion that Plaintiff was a victim of confidence scams, visa and bank fraud,

20   and identity theft. All are very serious felonies. Again, BOH had sufficient

_____

                                                                                      12

1    information to immediately reverse the deposits Mr. Niroula had made; to

2    retransfer funds back to Plaintiff's account, and to begin tracing and

3    recoupment procedures.

4        33.    Finally, acknowledging that the unauthorized transactions, as

5    sworn to by Plaintiff on October 3, 2006 (Ex A.1-A.9) were forgeries, BOH

6    merely froze  defendant Kaushal Niroula's BOH account. The account only had

7    slightly over $250,000.00 of the original of $508,000.00 from Plaintiff

8    Hisamatsu's family savings. At that point BOH had enough information to

9    retransfer all of Niroula's account balance to Plaintiff's account. The bank did

10   not retransfer the funds, or to initiate required recoupment and tracing

11   procedures.

12       34.    On or about October 4, 2006, Plaintiff is informed that defendant

13   Kaushal Niroula went to BOH and informed BOH employees he would return

14   Plaintiff's money. Afterward, Kaushal Niroula contacted Plaintiff and assured

15   her that he had sufficient funds in San Francisco to return her money.

16       35.    From October 4, 2006 to October 19, 2006, BOH employees,

17   including Chester Dods, violated their Identify Theft Guide and other

18   procedures, and were not responsive to Plaintiff's repeated requests for

19   investigation and police involvement. Instead, Mr. Dods made statements to

20   Plaintiff that Niroula was not a bad person, that his parents were Nepalese

13

1    diplomats that Niroula would return her money, and that there was a reasonable

2    delay in wire transfers due to a bank holiday in Nepal. Meanwhile, on October

3    5, 2006, defendant Niroula left Honolulu for his residence in San Francisco,

4    California.

5        36.    Defendant BOH refused to retransfer stolen money to Plaintiff's

6    account, or to pay Plaintiff's claim. BOH failed to adequately investigate the

7    missing $508,000, as represented in the claim form. (Exhibits A.1, A.4 and A.7)

8    or in its Identity Theft Guide, at ¶13, supra (excerpt).

9        37.    On October 17, 2006, defendant Kaushal Niroula contacted

10   Plaintiff, from San Francisco, and persuaded her that his family had been placed

11   in a very dangerous situation due to their planned departure from Nepal, and the

12   only way to save them from harm was to "borrow" Plaintiff Hisamatsu's

13   money. He further represented that it only became a problem because of delays

14   in wiring  funds to replace her lost money. Niroula assured Plaintiff that her

15   funds were included in his family's fortune being wire-transferred from Nepal

16   to the United States, as part of the family (Does 9-15) repatriation plan.

17   Involvement by the FBI and IRS over Plaintiff's claim at BOH, and related tax

18   issues, had interrupted the plan, according to Niroula. The persons assisting his

19   family had been unable to transfer money, and they thought his family was

20   cheating them out of their commissions. Niroula persuaded Plaintiff this

situation was being cleared up in a few days, and he would immediately replace her lost funds. Because of the inability to wire funds to Hawaii, Niroula asserted that Plaintiff would be required to fly to San Francisco to complete the transaction. Defendant Kaushal Niroula also persuaded Plaintiff that since she would receive her funds in San Francisco, that she would also be able to retain the Bay Area immigration attorney, for the EB-5 investment visa.

38.    Additionally, on or about October 17, 2006, defendant Kaushal Niroula convinced Plaintiff that because of the delay in wiring money from Nepal to San Francisco, individuals assisting his family escape from Nepal became convinced that they were being cheated by Niroula's relatives. Consequently, they kidnapped Kaushal Niroula's sister, in Nepal.

39.    On October 20, 2006, as a direct result of BOH's statements in its claim forms and its indulgent conciliatory attitude toward defendant Kaushal Niroula, Plaintiff flew to San Francisco to recover her money. At no time did BOH inform Plaintiff that she need not investigate or use self-help in order to have her claims at BOH paid. She opened an account for Niroula's anticipated deposit with Citibank, in San Francisco, account no. 055204855. In the event Defendant Niroula returned her family savings, Plaintiff intended to withdraw her claims to BOH (Exs A.1, A.4 and A.7). If not, Plaintiff reasonably believed

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

1    that she was still protected by her pending claims at BOH and the bank's

2    assurance of an investigation in its claim forms.

3        40.      In San Francisco, defendant Kaushal Niroula persuaded Plaintiff

4    that he and his family (Does 9-15) would repay her, and provide her with

5    additional funds so that there would be no further problems between them.

6    Kaushal Niroula then deposited a check for $890,000 into Plaintiff's Citibank

7    account in San Francisco, and Plaintiff verified the deposit on October 21, 2006

8    (a Saturday) by telephone with customer service. Plaintiff was informed by

9    Citibank customer service; however, that funds would not be available for three

10   (3) days.

11       41.      Defendant Niroula falsely represented that Plaintiff Hisamatsu had

12   an appointment with the immigration attorney. The attorney, according to

13   Niroula, changed several appointments afterwards due to the press of business.

14   The final appointment for 10/28/06, was canceled due to a traffic mishap,

15   according to Niroula. At the same time, beginning on October 23, 2006

16   (Monday), Defendant Niroula persuaded Plaintiff (1) that the kidnappers were

17   threatening to kill his sister in two days unless a ransom was paid, and (2) that

18   San Francisco and Honolulu associates of these Nepalese nationals had

19   threatened Plaintiff Hisamatsu's life. Under the control of a criminal; and as a

20   result of reasonable fear for her life, Plaintiff was persuaded to accept Niroula's

16

airline ticket for her return to Japan on October 29, 2006, without a stopover in Hawaii.

42.    As a further direct result of Plaintiff's previously executed claims for reimbursement by BOH, Kaushal Niroula's control and representations, BOH's previous statements in the claim forms, and BOH's vouching for Kaushal Niroula, Plaintiff Hisamatsu acted promptly to help Kaushal Niroula. On October 25, 2006, therefore, Plaintiff opened another account in San Francisco, this time with Wells Fargo Bank.

43.    Next, Plaintiff called her BOH branch and asked the manager to wire $41,000 to her San Francisco Wells Fargo account. From those funds, Plaintiff loaned Defendant Kaushal Niroula another $41,000 for a ransom payment for his sister.

44.    An "Indemnification of Liability" (Ex "B") was drafted by BOH employees and given to one of Plaintiff's friends, in Honolulu (without a cover letter), to fax to Plaintiff in San Francisco. This individual was not Ms. Hisamatsu's attorney, and had no authority to represent Ms. Hisamatsu. The author, date of drafting, address of the form's origin are known exclusively by BOH.

45.    On October 25, 2006, Defendant BOH's "Indemnification of Liability" form (Ex "B") was faxed to Plaintiff's hotel in San Francisco.

1    Plaintiff reasonably believed (1) that her claims to BOH were not affected by

2    this unofficial looking form, and (2) that BOH was still investigating. However,

3    BOH would not release the hold on Kaushal Niroula's BOH account unless

4    Plaintiff signed the form. BOH knew that it should have retransferred all funds

5    to Plaintiff's account as early as the date of the first unauthorized transaction,

6    August 24, 2008. Kaushal Niroula, seized on BOH's misconduct and rushed

7    Plaintiff to a notary in the County of San Francisco, to sign BOH's form.

8    Exhibit "B". According to Niroula, his family (Does 9-15) could not transfer

9    funds to the United States (and to repay Plaintiff) until the holds on his BOH

10   account were removed.

11       46.       Prior to execution of the form prepared by BOH (Ex. B), no one

12   from BOH explained its meaning to Plaintiff. While BOH knew that Ms.

13   Hisamatsu had difficulty with English, no one offered to translate the form into

14   Japanese, or otherwise assist Plaintiff. At all times, BOH knew that Plaintiff, a

15   Japanese national in San Francisco, could not adequately understand the level

16   of English in the bank's form. The parties at all times had unequal bargaining

17   power, and BOH was misrepresenting to Plaintiff that the money it would

18   release to Mr. Niroula belonged to <u>him</u>. At all times, Plaintiff thought that the

19   document (Ex B) would have <u>no</u> <u>effect</u> on the bank's existing obligation to

20   replace her stolen money. Plaintiff thought the form was only a temporary

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

1    formality to facilitate the transfer of Niroula's family (Does 9-15) funds from

2    Nepal, for her benefit, and for Niroula's family's safety. Plaintiff did not

3    understand the secret intent of BOH's unofficial "Indemnification of Liability"

4    (Exhibit "B"), nor did she think it would impair her existing claims. Exs. A.1,

5    A.4 and A.7.

6        47.    On October 29, 2006, after numerous broken appointments with an

7    immigration attorney (according to Niroula), the phony threats against

8    Plaintiff's life; and, since Defendant Niroula's deposit had not cleared, Niroula

9    bought Plaintiff an airline ticket, and she left for Japan. On October 31, 2006,

10   Plaintiff learned that Niroula's deposit to her San Francisco account had been

11   dishonored, as against insufficient funds. Nonetheless Plaintiff reasonably

12   believed that BOH would still keep its promise of 10-3-06 to pay the claims

13   since the investigation, by now, was complete.

14       48.    Plaintiff called the bank during the November 2006, to specifically

15   alert it that she wanted BOH to pay her claims for the unauthorized

16   transactions. Ex "A". The bank employee, Chester Dods, refused and told

17   Plaintiff to go see a lawyer. Thereafter, also in November of 2006, Plaintiff

18   reported the entire matter to the police in both San Francisco, and Honolulu.

19   Plaintiff explained to both BOH and the police that she participated in this

20   transaction because BOH employees vouched for Mr. Niroula who had

19

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

promised, in the final transaction (Ex B), to replace Plaintiff's funds taken earlier. Additionally, Mr. Niroula and bank employee Dods spoke on the phone frequently about the matter and got along very well.


**COUNT ONE**

**(Promissory Fraud Or Fraud In The Inducement Against**

**Defendants Kaushal Niroula and Does 1-10, 31-33)**


49.    Plaintiff realleges and incorporates the foregoing paragraphs.

50.    False representations of important facts, in addition to the foregoing, were made by defendant Kaushal Niroula in the County of San Francisco, on or about October 4, 17, 20 and 28, 2006. First, Kaushal Niroula falsely represented that he had taken money from Plaintiff's BOH account due to an extreme family emergency, including the threatened kidnapping of his sister in Nepal, and the inability to quickly access his own funds to help his family. Second, Kaushal Niroula represented that after the crisis he had secured the funds to replace those taken from Plaintiff. Third, Defendant Kaushal Niroula urged Plaintiff to be very careful and to return as soon as possible to Japan since associates of the individuals who eventually kidnapped Niroula's

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

sister made threats to harm Plaintiff. Fourth, defendant Kaushal Niroula required a final sum of money to pay to the kidnappers.

51.    Defendant knew that the foregoing statements were false (or Defendant made them recklessly and without regard for the truth).

52.    Defendant intended to defraud Plaintiff; that is, Defendant intended to induce reliance by Plaintiff on misrepresentations and contemplated that her reliance thereon would permit Defendant and Does herein to take, and withhold, more of Plaintiff's savings. Plaintiff did, in fact, rely on the representations.

53.    Plaintiff justifiably and reasonably relied on defendants' representations. Her reliance was based in part upon her knowledge and internet research about the turmoil in Nepal; upon BOH's assertion it was investigating the transactions; and, BOH's impression given to Plaintiff that it was taking no action to trace, and recover, her money; or, to proceed against Defendant Kaushal Niroula as a result of his unauthorized transactions. In addition, Plaintiff could not, in the exercise of reasonable diligence have discovered defendant Kaushal Niroula's secret intention.

54.    Had Plaintiff known of defendants' actual intentions and evil motives, she would not have signed the BOH document (Ex. "B") in San Francisco, and she would not have trusted Kaushal Niroula with the

1    replacement of her money, or with "managing" her visa application, as stated

2    above.

3        55.        Defendant Kaushal Niroula failed to abide by his promise in that

4    the deposit he made in San Francisco to Plaintiff Hisamatsu's Citibank account

5    was by a check drawn on insufficient finds, for $890,000. Defendants actually

6    damaged Plaintiff in this, and other amounts, and the representations were a

7    substantial factor in causing harm to Plaintiff.

8        56.        As a direct and proximate result of the conduct of the defendants,

9    and each of them, Plaintiff Hisamatsu has been deprived of the use and benefit

10   of her money and property, and she has sustained substantial actual damages.

11   Defendants' conduct has been the legal and proximate cause of actual or special

12   damages to the Plaintiff in an amount to be determined at the time of trial,

13   including, but not limited to expenses, as elements of damage, and costs

14   incurred in connection with the loss of her $508,000 and other foreseeable

15   economic losses, all in a sum to be shown by proof at trial.

16       57.        As a further direct and proximate result of the conduct of the

17   defendants, and each of them, Plaintiff has sustained general damages, plus

18   interest, in an amounts to be shown by proof at the time of trial, but which

19   exceed 2.5 million dollars.

58.    In committing the acts alleged in this, and other counts, defendants acted intentionally, oppressively, maliciously and fraudulently, with a conscious disregard of the Plaintiff's rights, with the intention of benefiting themselves financially; with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or willful conduct, or an entire want of care raising the presumption of a conscious indifference to consequences, justifying imposition of exemplary damages; and with the intention of causing, or recklessly disregarding the probability of causing, injury to Plaintiff. Defendants, as employers, had advance knowledge of the unfitness of employees involved herein, and employed them with a conscious disregard of the rights or safety of others and authorized or ratified the wrongful conduct for which damages are claimed. The oppression, fraud, or malice of defendant corporate employers was on the part of one or more officers, directors, or managing agents. In so acting, the defendants intended to, and did, vex, annoy, injure and harass the plaintiff. As a result of such conduct, Plaintiff is entitled to exemplary and punitive damages.

## COUNT TWO

### (Tort In Essence Against Defendant Kaushal Niroula and Does 1-20)

59.    Plaintiff realleges and incorporates the foregoing paragraphs.

---

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

60.    Defendant Kaushal Niroula and DOES 1-20 owed nonconsensual duties to others, including Plaintiff Hisamatsu, to comply with the criminal laws of the State of California. Defendant Niroula continues to harass and threaten Plaintiff by telephone and the internet.

61.    The following statutes embodied a public policy to protect a class of persons of which Plaintiff is a member:

A.    Cal Pen Code §476a (2007) (Making or delivering check with insufficient funds).

B.    Cal Pen Code §518 (2007) (Extortion).

62.    On or about October 20, 2006 in the County of San Francisco, Defendants Kaushal Niroula and Does 1-20 violated their nonconsensual duties to Plaintiff and others so situated by depositing a check for $890,000 into Plaintiffs' Citibank account in San Francisco at a time when defendants knew the check was drawn on insufficient funds.

63.    Between October 20, 2006 and October 29, 2006, in the County of San Francisco, Defendant Kaushal Niroula threatened Plaintiff with bodily harm from Nepalese nationals involved with kidnapping his sister, if Plaintiff did not (1) pay him $41,000 in San Francisco, (2) convince BOH (from San Francisco) to release the hold on Defendant Kaushal Niroula's BOH account/or funds, (3) keep her cell phone turned off, (4) stay in her hotel, or drive around

1   the Bay Area with Niroula (who falsely represented he was "trying" to arrange

2   the meeting with the immigration lawyer), and (5) return on 10-29-06, to Japan.

## COUNT THREE

### (Conversion Against Defendant Kaushal Niroula and Does 1-10)

64.      Plaintiff realleges and incorporates the foregoing paragraphs.

65.      Between August 16, 2006 and October 5, 2006, in Honolulu, Hawaii; and between October 5, 2006 and November 1, 2006, in San Francisco, California, defendant Kaushal Niroula and DOES 1-10 actually interfered with, and exercised dominion over Plaintiff's property including confidential identity, bank and telephone information, and money, inconsistent with the ownership of Plaintiff. Plaintiff demanded return of the property.

66.      Defendants' interference or exercise of dominion over Plaintiff's property was intentional and in defiance of her rights, causing Plaintiff's damages as aforesaid.

## COUNT FOUR

### (Trespass To Personal Property Against
### Defendant Kaushal Niroula and Does 1-10)

67.      Plaintiff realleges and incorporates the foregoing paragraphs.

68.      Between August 16, 2006 and about October 5, 2006 in Honolulu, Hawaii, and between about October 5, and November 1, 2006 in San Francisco,

California, defendant Kaushal Niroula intermeddled with the chattel of Plaintiff or dispossessed Plaintiff of the chattel.

## <u>COUNT FIVE</u>

**(Constructive Trust Against Defendant Kaushal Niroula and Does 1-20)**

69.    Plaintiff realleges and incorporates the foregoing paragraphs.

70.    Defendant Kaushal Niroula and DOES 1-20 have money belonging to Plaintiff to which they are not justly entitled. Some of the money is in San Francisco, California.

71.    Defendants' duty is to retransfer the money to Plaintiff, who is entitled thereto to possession.

72.    Defendant will be unjustly enriched if allowed to keep Plaintiff's money.

73.    A constructive trust should be imposed on defendants' accounts, assets and property, plus accrued interest.

## <u>COUNT SIX</u>

**(Equitable Lien Against Defendant Kaushal Niroula and Does 1-20)**

74.    Plaintiff realleges and incorporates the foregoing paragraphs.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

75.     Defendants own property which may be reached by Plaintiff Hisamatsu as security on the ground that defendant Kaushal Niroula and DOES 1-20 will be unjustly enriched if allowed to retain the money.

76.     An equitable lien should be imposed against defendants in favor of Plaintiff on the proceeds of all money taken by defendant.

## <u>COUNT SEVEN</u>

### (Civil Conspiracy Against Defendants Niroula And DOES 1-32)

77.     Plaintiff realleges and incorporates the foregoing paragraphs.

78.     Defendant Kaushal Niroula and Does 1-32 agreed or combined by concerted action to accomplish numerous criminal or wrongful acts; or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means.

79.     Defendants Kaushal Niroula and Does 1-32 intentionally formed, planned, and operated the conspiracy which directly and proximately caused damage to Plaintiff from defendants' planning the intentional acts and civil wrongs done in furtherance of the agreement and common design to steal Plaintiff's identity, and savings, and to physically and emotionally injure Plaintiff.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

## COUNT EIGHT

**(Against BOH, Does 25-38. Violation Of Cal B&P §17200, et seq, And**

**Deceptive Acts Or Practices – California Transaction)**

80.     Plaintiff realleges and incorporates the foregoing paragraphs.

81.     On October 25, 2006, in the County of San Francisco, Plaintiff received, by fax, an "Indemnification of Liability" (Ex "B"), crafted by employees or agents of BOH. The sole, undisclosed, purpose of preparing this form was to destroy Plaintiff's outstanding claims against BOH, by releasing BOH from any liability to Plaintiff. The public interest is implicated by BOH's practice in that, *inter alia,* banking is ordinarily subject to regulatory treatment and BOH had a superior bargaining power in dealing with Plaintiff.

82.     At all times, during the drafting by BOH of the form for BOH's "Indemnification of Liability", agents or employees of BOH knew that Plaintiff was in San Francisco, California; and, with the assistance, encouragement and delay by BOH, Plaintiff was  under the control of a criminal, who had just forged her name on $508,000.00 in BOH checks.

83.     BOH's out-of-state conduct caused injury to Plaintiff within the State of California. BOH, its agents and employees, expressly aimed their efforts to coerce Plaintiff into signing the "Indemnification of Liability" at the State of California, its laws and processes. BOH targeted the State of California

as the situs of the execution of its form, cancellation of Plaintiff's claims for reimbursement, and transmission of money to Codefendant Niroula.

84.    BOH knew at the time it selected the language for the form for indemnification that it would cause harm to Plaintiff in San Francisco, California. BOH knew that Co-defendant Kaushal Niroula was present in San Francisco and was, at the same time, coercing Plaintiff to sign, and even notarize BOH's indemnity form (Ex "B").

85.    The offending transactions in this count occurred in, and arose out of, the receipt by Plaintiff of BOH's indemnity form in San Francisco, California, at the sole behest of Defendant BOH. At no time did BOH request or require that Plaintiff first return to Hawaii to execute BOH's indemnity form (Ex "B").

86.    Plaintiff, and other members of the public are likely to be deceived by Defendant BOH's use of "indemnity" forms. Plaintiff was actually deceived by the form, relied upon it, and sustained injuries and damages, as alleged at paragraphs 55-58, incorporated herein by reference.

87.    The conduct by defendant BOH alleged here, and elsewhere in this complaint, in obtaining the signature on a form in San Francisco, and the use of the form as a release from Plaintiff's claims upon signing it, constituted misrepresentations, omissions, or practices, which were deceptive acts.

88.      Defendant BOH engaged in practices intended to deceive the public, including Plaintiff, forcing fraudulent indemnity forms on identity theft or forgery victims, to avoid paying valid claims for reimbursement to those victims, including Plaintiff. This conduct, as further described in this count, is a fraudulent business practice under section 17200 of the California Business and Professions Code.

89.      The practice of using the form was unfair in that BOH refused to pay a valid unauthorized transaction claim; and instead maneuvered Plaintiff into a sham investigation which included direct contact with a known forger and thief. BOH knew at the time it requested this release from future tortious acts that Plaintiff had a special vulnerability.

90.      As further detailed in this complaint, defendant BOH's proffer of a misleading indemnity form to Plaintiff, in San Francisco, was secretly intended to release BOH and extinguish, when signed, Plaintiff's BOH claim for $508,000.00 of her family's savings. There was no utility in defendant BOH's conduct which justified this harm to Plaintiff's property and person, and BOH's conduct was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, including Plaintiff.

91.      Defendant BOH's representations, omissions, or practices described here, and elsewhere in this complaint, involved information important

1    to Plaintiff, and consumers generally; and affected Plaintiff's decision to sign

2    the BOH form in San Francisco.

3        92.        The acts done by defendant BOH in connection with the

4    Indemnification of Liability form (Ex "B"), signed by Plaintiff in San

5    Francisco, were unfair or deceptive acts or practices forbidden or declared

6    unlawful by California law. BOH's actions detailed here, and elsewhere by

7    incorporation of all remaining counts into this count, at all times had the

8    capacity to mislead Plaintiff into signing a form which BOH contends released

9    it from liability to Plaintiff, and extinguished at that point, Plaintiff's claims for

10    reimbursement.

11        93.        Defendant BOH's deceptive conduct respecting the

12    "Indemnification of Liability" form had the natural and probable result of

13    causing Plaintiff to sign the form in San Francisco; which Plaintiff would not

14    otherwise have done. The representations, omissions or practices described

15    herein were likely to mislead consumers acting reasonably under the

16    circumstances and did, in fact, mislead Plaintiff.

17        94.        In addition to other remedies and damages hereinabove alleged,

18    Plaintiff is entitled to restitution of all amounts of her claim withheld by BOH,

19    and for a decree enjoining BOH from the use of this and other indemnification

20    forms to avoid payment of claims.

95.    The following legislatively declared policies prohibited Defendant BOH's misuse of an indemnity form, faxed to San Francisco, to destroy Plaintiff's absolute right to recover her money under Cal U Com Code §4401, and the Hawaii counterpart at section 490:4-401(a), Hawaii Revised Statutes ("HRS"):

A.    BOH's indemnity form violated the Cal.Bus.Prof Code §172000 in that BOH interposes it as a release. As such, BOH violated Cal.Civ. Code §1668, "all contracts which have as their object directly or indirectly to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent are against the policy of the law." Emphasis added.

Exhibit "B" to this complaint clearly states "I... agree... to hold harmless the Bank of Hawaii". Thus, the agreement had, as its object, to exempt Bank of Hawaii from responsibility for its own conduct, as prohibited by Cal.Civ.Code §1668.

B.    BOH's agreement violated the UCL in that it had as its object to exempt BOH from its willful or negligent violation of §4-401 of the California and Hawaii version of the Uniform Commercial Code; wherein Plaintiff did not authorize any items forged by Codefendant Niroula to be payable from her account, and BOH instead approved the $508,000.00

1    debit based on forged, unauthorized checks. BOH is using Ex "B" to release

2    itself from liability to Plaintiff, in violation of Cal.Civ.Code §1668.

3        **C.**      BOH's use of Ex "B" as a release further violated the UCL

4    in that it purported to exact a relinquishment or waiver of the penal laws of

5    the state, particularly forgery, Cal. Penal Code §470, and Hawaii Penal Code

6    §708-852.

7        It is beyond the power of BOH to exact a waiver or ratification of a

8    violation of criminal statutes; particularly, statutes relating to forgery, which

9    are for the protection of the public at large. Cal.Civ.Code §3513 makes

10   BOH's conduct unlawful: "(a)nyone may waive the advantage of a law

11   intended solely for his benefit. But a law established for a public reason

12   cannot be contravened by a private agreement".

13       **D.**      BOH's form (Ex "B") states in part "I, Megumi Hisamatsu

14   agree to indemnify and hold harmless the Bank of Hawaii... from... all...

15   damages... resulting from... the Bank of Hawaii having paid the funds to

16   Kaushal Niroula."

17       After the agreement was signed by Plaintiff in San Francisco, and

18   BOH released the funds to Codefendant Niroula. The bank misrepresented

19   Plaintiff's money as "belonging to Kaushal Niroula". Ex "B".

1      In these proceedings and BOH contends that the agreement releases it

2   from claims against BOH by Plaintiff. The foregoing acts violated

3   Cal.Civ.Code §2773: ("An agreement to indemnify a person against an

4   act to thereafter be done is void, if the act be known by such person at the

5   time of doing it to be unlawful").

6      BOH's act of making funds available to Mr. Niroula was unlawful, in

7   that the funds were not, as BOH stated, "belonging to Kaushal Niroula".

8   To so state violated Cal.Civ.Code §1572 (actual fraud) as follows:

9

10      "§1572.  Actual fraud defined

11

12      Actual fraud, within the meaning of this chapter, consists in
13   any of the following acts, committed by a party to the contract, or
14   with his connivance, with intent to deceive another party thereto, or
15   to induce him to enter into the contract:

16

17      1. The suggestion, as a fact, of that which is not true, by one who
18   does not believe it to be true;

19

20      2. The positive assertion, in a manner not warranted by the
21   information of the person making it, of that which is not true,
22   though he believes it to be true;

23

24      3. The suppression of that which is true, by one having
25   knowledge or belief of the fact;

26

27      4. A promise made without any intention of performing it; or,

28

29      5. Any other act fitted to deceive".

30

---

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

1    BOH's agreement to indemnify or release itself from liability for acts

2    thereafter to be done by falsely representing the funds involved as

3    belonging to a known forger of its checks was unlawful for two more

4    reasons. First, BOH employees, by misrepresenting the ownership of the

5    funds, were knowingly executing a scheme to defraud a financial

6    institution. This is because BOH knew that the funds it misidentified in

7    Ex "B" belonged to Plaintiff. This violation of 18 USC §1344 (bank

8    fraud) was devised by BOH to defraud Plaintiff. The means was to cause

9    a release (Ex B) to be transmitted by wire in interstate commerce in

10   violation of 18 USC §1343 (wire fraud). Since there is strong evidence

11   that BOH and Mr. Nrioula acted together toward the common goal of

12   putting Plaintiff's money into a check forger's hands, BOH is also guilty

13   of conspiracy. 18 USC §371. BOH's agreement sought to indemnify the

14   bank from the acts underlying these offenses, and is void under

15   Cal.Civ.Code §2773. Finally, the release of funds and the participation by

16   BOH in transferring those funds to Mr. Niroula at his request, in San

17   Francisco, amounted to money laundering, violating 18 USC

18   §1956(a)(1)(A)(i).

19

20

## COUNT NINE - RESCISSION

### (Undue Influence Absent Confidential Relationship –

### California Transaction)

96.    Plaintiff incorporates and realleges the foregoing allegations.

97.    At all times Plaintiff would have been willing to restore consideration to BOH in the form of an agreement for the release of funds, actually belonging to Niroula, but not the funds Niroula criminally obtained from Plaintiff's BOH account and placed in his BOH account. This return of consideration would be conditioned on no release of BOH's liability to Plaintiff.

98.    BOH obtained the consent of Plaintiff by taking an unfair advantage of her weakness of mind at the time she was being victimized by a professional criminal; or, BOH took a grossly oppressive and unfair advantage of Plaintiff's necessities or distress, as elsewhere alleged in this complaint.

99.    BOH presented its release agreement via fax to Plaintiff, in San Francisco. BOH knew Plaintiff would be "assisted" by a party interested in, and conniving in the execution of the agreement; that is, a criminal in San Francisco, far away from BOH's office. There was extreme emphasis on terrible consequences for delay by both the third-party and the bank. Only the third

party, Mr. Niroula, was present and advising Plaintiff. Ms. Hisamatsu had no time to retain competent, trusted advisors.

100.    At all times BOH had superior knowledge of the transactions in comparison to Plaintiff. Nonetheless, she gave sufficient telephone notice of rescission of Ex "B" to BOH within 14 days from her signature; and again, in writing on August 6, 2007.

101.    The agreement was to be executed primarily within California. Statutes, including Cal.Civ.Code §1689 control Plaintiff's right to rescind.

102.    Plaintiff's consent to BOH's agreement in San Francisco by Plaintiff was obtained under circumstances that the law considers improper, and the agreement (Ex "B") should be canceled, or rescinded; and restitution and other relief ordered in favor of Plaintiff and against BOH.

## COUNT TEN – RESCISSION

### (Improper Conduct Of Third-Party - California Transaction)

103.    Plaintiff incorporates and realleges the foregoing allegations.

104.    On or about October 25, 2006, BOH performed, or made an important change in its position, in reliance on its form of agreement to be signed that day by Plaintiff. Specifically, BOH released the sum of $257,546.25 to Kaushal Nrioula (third party).

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

105.   Prior to this release of funds by BOH to the third-party, the bank knew, or had reason to know, that Plaintiff's consent and her signature on BOH's form indemnity agreement was induced or caused by the duress, fraud, and criminal misconduct, of said third party Mr. Niroula, as well as by BOH.

106.   BOH connived with Mr. Niroula and had no legal right to take advantage of Mr. Niroula's wrongdoing.

107.   The conduct by BOH and the third-party was of such nature, weight, or force, that without it, Plaintiff would not have signed the agreement.

108.   Plaintiff's consent would not have been given without duress, menace, fraud, undue influence, or mistake. But for this material harm and prejudice caused by the misconduct of BOH, with the connivance of the third party, Plaintiff would not have given her consent, or signed the agreement.

109.   At all times, BOH was aware of Mr. Niroula's connivance.

110.   At all times, BOH was aware of the effects of its misconduct on Plaintiff; that is that she was consenting due to the duress, menace, undue influence, fraud or mistake.

## <u>COUNT ELEVEN– RESCISSION</u>

**(In The Alternative, Due To Mutual Mistake - California Transaction)**

111.   Plaintiff incorporates and realleges paragraphs 103 through 110 of the foregoing count.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

112.   In the event Defendant BOH denies any of the incorporated allegations, then both parties made basically the same a mistake as to a material part of the contract; that is, they mistakenly believed that the third-party would forthwith repay Plaintiff upon BOH's receipt of her signature on BOH's release form. Ex "B".

## COUNT TWELVE– RESCISSION

### (Material Failure Of Consideration –California Transaction)

113.   Plaintiff incorporates and realleges the foregoing allegations.

114.   Plaintiff did not receive what was promised or a material part of what was promised is missing.

115.   BOH's release agreement must be canceled or rescinded because consideration failed on a material matter; that is, payment by a third party to Plaintiff of over $508,000.00, in exchange for BOH's release of funds to that third-party, Mr. Niroula.

116.   Payment by Kaushal Niroula to Plaintiff went to the essence of BOH's agreement.

## COUNT THIRTEEN– RESCISSION

### (Failure Of Consideration Through Fault Of BOH –
### California Transaction)

117.   Plaintiff incorporates the foregoing allegations.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

1    118.  At the time of BOH offered the agreement to Plaintiff, BOH had

2    reason to know that the consideration-to pay a third-party funds "belonging" to

3    him had failed, and that the funds actually belonged to Plaintiff.

4

5                    **COUNT FOURTEEN– RESCISSION**

6                **(Unlawful Agreement - California Transaction)**

7    119.  Plaintiff incorporates the foregoing allegations.

8    120.  The agreement was unlawful in that its object was to exempt BOH

9    from responsibility for its own "fraud or willful injury to the person or property

10   of another or violation of law, whether willful or negligent", all in violation of

11   Cal.Civ.Code §1668.

12   121.  The agreement (Ex B) states, in material part, that Plaintiff agreed

13   "to hold harmless the Bank of Hawaii."

14

15                    **COUNT FIFTEEN– RESCISSION**

16                **(Void Consideration – California Transaction)**

17   122.  Plaintiff incorporates the foregoing allegations.

18   123.   Since BOH knew it was unlawful to seek exculpation from its own

19   misconduct under Cal.Civ. Code §1668, and the agreement is captioned as one

20   for indemnity, is void, pursuant to Cal.Civ. Code §2773.

---

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

**COUNT SIXTEEN– RESCISSION**

**(Undue Influence Due To Known Vulnerability-**

**California Transaction)**

124.   Plaintiff incorporates the foregoing allegations.

125.   Plaintiff suffered from lack of full vigor due to physical exhaustion and emotional anguish as a crime victim, as hereinabove alleged. As such, she had a lessened capacity to make a free contract with BOH.

126.    Defendant BOH applied its excessive strength to her to secure her agreement, and took unfair advantage of Plaintiff's known vulnerability.

**COUNT SEVENTEEN– RESCISSION**

**(Unilateral Mistake, Fault of BOH - California Transaction)**

127.   Plaintiff incorporates the foregoing allegations.

128.   Plaintiff signed the agreement (Ex B) unconsciously ignorant or forgetful of the fact that the object of the agreement was to exempt BOH of all liability to Plaintiff for, among other things, three unauthorized transactions on a new consumer checking account, totaling $508,000.00. Further, Codefendant Niroula did not intend (as promised) to replace her missing funds after the agreement was signed.

129.   Plaintiff made the mistake due to the fault of BOH. The bank knew, or had reason to know, about the mistake at the time of the agreement (Ex B) was signed in California.

130.   Plaintiff's mistake caused her to suffer material prejudice, all to her injury, which exceeds $508,000.00.

## COUNT EIGHTEEN– RESCISSION

### (Unilateral Mistake –California Transaction)

131.   Plaintiff incorporates the foregoing allegations.

132.   Plaintiff made a mistake regarding basic assumptions upon which she signed the agreement; that is, (A) that BOH had no intention to pay her claims, made earlier, for reimbursement; and (B) that Codefendant Niroula did not intend to restore her funds after she signed BOH's agreement.

133.   Plaintiff's mistake had a material effect on the agreed exchange of performances that was extremely adverse, in that after signing the agreement, BOH would refuse to restore Plaintiff's account balance to $508,000 for unauthorized transactions.

134.   Plaintiff does not bear the risk of the mistake in that she did not neglect a legal duty, and her mistake of fact was in good-faith. The agreement

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

did not allocate risks to Plaintiff, and she did not have limited knowledge as to the facts. She thereby treated her knowledge as sufficient.

135.   At the time the agreement was made, Plaintiff was not aware that her knowledge was, or could be limited with respect to the facts to which the mistake related.

136.   Plaintiff, by cooperating with BOH, and by waiting from 10-3-06 for BOH to complete its investigation at no time bore the risk of the mistakes that the deposits Mr. Niroula made to her San Francisco bank account, in exchange for signing BOH's release, would be dishonored, and/or that BOH had planned to deny her claims. Ex A.1, A.4 and A.7.

137.   The deposit to Plaintiff's bank account in San Francisco by BOH account holder Niroula, and the continuing validity of her claims (Ex A) were material to the BOH release at Ex "B". BOH refused, for example, to release funds needed to facilitate Mr. Niroula's deposit <u>unless</u> its release (representing the funds as belonging to Niroula) was signed immediately by Plaintiff.

138.   BOH's release at Ex B, should therefore be rescinded, and the outstanding claim by Plaintiff against BOH ordered paid. The purported "Indemnification of Liability" should be canceled.

139.   The effect of the mistake is that the agreement's enforcement would be unconscionable. Bargaining power between BOH and Plaintiff was

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

extremely unequal, and Plaintiff was surprised by the mistake; and, in these circumstances, the overly harsh or one-sided result of the loss was extremely large ($508,000.00).

140.    The foregoing conduct of BOH was of such nature, weight, and force, that but for the mistake, Plaintiff would not have signed BOH's release.

## COUNT NINETEEN– RESCISSION

### (Fraud In The Inducement – California Transaction)

141.    Plaintiff incorporates the foregoing allegations.

142.    On October 25, 2006, Defendant BOH made the following representations in San Francisco, California: (A) that $257,546.25 held in suspense by BOH at account number 0002-933063 belonged to Kaushal Niroula, and (B) that BOH was merely seeking indemnification from releasing the funds to Mr. Niroula. Said written representation is attached hereto Ex "B" and incorporated herein.

143.    The representations were material to the agreement drafted by BOH, in that but for the representation; Plaintiff would not have signed and notarized the agreement. Ex B.

44

144. BOH believed that the representations were false when the representations were made, or BOH made the representations without any reasonable ground for believing them to be true, in that the sum of money actually belonged to Plaintiff, and not as BOH represented, to Niroula.

145. BOH made the representations for the purpose of causing or inducing Plaintiff to enter into the agreement with BOH. Plaintiff signed that document (Ex B) under the misapprehension that it was something other than a release; and, that it was merely to allow a transfer of Mr. Niroula's money back to him.

146. Plaintiff was not aware that the representation was false and would not have otherwise consented to the agreement. Plaintiff justifiably relied on BOH's misrepresentation, all too her damage. At all times, Plaintiff would have been willing to execute a document releasing Mr. Niroula's money, <u>less Plaintiff's money</u>, back to Niroula, on condition that the document did not release or exempt BOH from any of her claims.

## **COUNT TWENTY**

### **(Tort In Essence Against Defendant BOH, and DOES 39-50**

### **-California Transaction)**

147. Plaintiff realleges the foregoing paragraphs.

148.   Defendant BOH and DOES 30- 50 owed nonconsensual duties to others, including Plaintiff, to comply with the civil and criminal laws of the State of California, and the United States.

149.   The following statutes embodied a public policy to protect a class of persons of which Plaintiff is a member: (A) Cal.Civ Code §1668, §2773 and §3513, (B) Cal. Penal Code §470 (forgery), §476a (making a check with insufficient funds),  §518 (extortion), (C) Cal. Civ. Code §1572, and 18 USC §1343 (fraud and mail fraud). Plaintiff has been injured as aforesaid by Defendants' violation of these statutes, all to her damage at ¶s 56 -58, supra (incorporated herein).

150.   Plaintiff is an injured member of the public for whose benefit the foregoing statutes were enacted.

151.   Defendants breached the above nonconsensual duties by tortiously violating the foregoing statutes.

152.   Defendants violated Cal.Civ. Code §1668, which provides that BOH's "indemnification of liability" agreement (Ex B) is "against the policy of the law".

153.   The agreement has as its object to exempt BOH from responsibility for "its own fraud or willful injury to the person or property of another or

violation of law whether willful or negligent". The agreement states in material part, that Plaintiff agreed "to hold harmless the Bank of Hawaii".

154.    Since BOH knew it was unlawful to seek exculpation from its own misconduct, as aforesaid; the agreement, insofar as it purports to indemnify BOH, is void pursuant to Cal Civ. Code §2773.

155.    On or about October 20, 2006, San Francisco, Defendant BOH and Does 30-50 further violated their nonconsensual duties to Plaintiff and others so situated by aiding and abetting the criminal deposit of a check for $890,000 into Plaintiffs' Citibank account in San Francisco, at a time when defendants knew, or should have known, the check would be both deposited and drawn on insufficient funds.

156.    Between October 20, 2006 and October 29, 2006, in the County of San Francisco, Defendant BOH aided and abetted Kaushal Niroula, who it knew threatened Plaintiff with bodily harm from Nepalese nationals involved with kidnapping his sister, if Plaintiff did not (1) pay him $41,000 in San Francisco, (2) cooperate with BOH (from San Francisco) to remove the hold on defendant  Niroula's BOH account/or funds, (3) keep her cell phone turned off, (4) stay in her hotel, or drive around the Bay Area with Niroula, and (5) return directly to Japan on 10-29-06.

157.    Defendant committed actual fraud prohibited by Cal.Civ. Code §1572, mail fraud in violation of 18 USC §1343, and conspiracy (18 USC §371), by the misrepresentations on Ex B and pressure to sign it, with Niroula's assistance, as hereinabove alleged in the prior counts.

## COUNT TWENTY-ONE

**(Civil Conspiracy Against Defendants Kaushal Niroula, BOH
And Does 30-50 – California Transaction)**

158.    Plaintiff realleges and incorporates the foregoing paragraphs.

159.    Defendants BOH, Kaushal Niroula and Chester Dods, a BOH security official, agreed or combined by concerted action to accomplish a criminal or wrongful act in San Francisco, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means. Defendant Niroula conferred with Mr. Dods by telephone, and both agreed to maneuver Plaintiff Hisamatsu into signing BOH"s "Indemnity of Liability", Ex B.

160.    Defendant Niroula, as the incorporated allegations show, converted Plaintiff's funds. Of the $508,000.00 Mr. Niroula obtained by forgery and bank fraud, $257,546.25 remained in Niroula's bank account, which had been frozen by BOH.

161.    Defendants Niroula and BOH both knew at the time that BOH caused the release (Ex B) to be wired to San Francisco, that of the $508,000.00

fraudulently taken from Plaintiff's BOH account (with the bank's assistance) only $257,546.25 remained. Both knew that those funds belonged to Plaintiff, even though by conversion, forgery and bank fraud, they were frozen in Mr. Niroula's account.

162.    BOH knew at all times that Mr. Niroula wanted its help to get the remaining stolen funds sitting in his frozen BOH account. BOH also knew, at all times that this money belonged to Plaintiff, and not to Mr. Niroula.

163.    Defendant BOH agreed and conspired with Mr. Niroula to release stolen money to him. This sum, as both well knew had already been obtained tortiously; and, by Niroula's forgery and bank fraud (18 USC §1344). The bank readily agreed to the crooked scheme, and to aid and abet the commission of bank fraud in order to shield itself from the theft victim's claims against BOH. By agreeing to help a criminal obtain his stolen money, BOH "bought" a release from nearly strict liability to Plaintiff. BOH's role in helping Niroula convert $508,000.00 to his BOH account by checks he forged with Plaintiff's signature, exposed it to as much, or more, liability as Niroula.

164.    The bank agreed and conspired with Mr. Niroula to release the money frozen in Niroula's account, which BOH knew was stolen. This was in exchange for Niroula's assistance to BOH in getting Plaintiff to sign a release exempting BOH from liability. Ex B. At the time, BOH knew that Plaintiff was

in San Francisco with an individual it knew to be a dangerous thief and forger from Nepal. Mr. Niroula was slavishly cooperating with BOH to pressure Plaintiff into signing the release, favoring the bank. By agreeing with Niroula; by conspiring with him to convert and take Plaintiff's money, or to commit bank fraud (18 USC §§371 and 1344), BOH profited by "purchasing" a release from liability to Plaintiff of over $508,000.00. The only risk to Bank of Hawaii at the time was the off-chance of being indicted in Honolulu.

165.   In addition to participating with Niroula to pressure Plaintiff into signing a release, BOH drafted it to appear that it was only releasing Mr. Niroula's own money to him, and not the money debited agaisnt Plaintiff's bank account. Ex B. Not only did BOH conspire and agree with Niroula to convert Plaintiff's $257,546.25 from BOH's dominion and control back to Codefendant Niroula's dominion and control, but BOH also conspired to violate criminal laws. Its transfer of stolen money back to the person BOH knew converted the money in the first place constitutes money-laundering, in violation of 18 USC §1956(a)(1)(A)(i). Labeling the stolen proceeds as the thief's own funds, while crude, was a means employed in furtherance of the conspiracy to damage Plaintiff.

166.   Defendants BOH, Niroula, and Does 25- 35 intentionally formed, planned, and operated the conspiracy which directly and approximately caused

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

damage to Plaintiff, from defendants' planning the intentional acts and civil wrongs done in furtherance of the agreement, and the common design to steal Plaintiff's savings; and to financially, physically, and emotionally injure Plaintiff, all to her damage as aforesaid at ¶s 56-58 incorporated, herein.

## COUNT TWENTY-TWO

### (Fraud In The Inducement Against BOH And Does 30- 50

### -California Transaction)

167.    Plaintiff realleges and incorporates the foregoing paragraphs.

168. On October 25, 2006, Defendant BOH made the following representations in San Francisco, California: (A) that $257,546.25 held in suspense by BOH at account number 0002-933063 belonged to Kaushal Niroula, and (B) that BOH was merely seeking indemnification from releasing the funds to Mr. Niroula. Said written representation is attached hereto Ex "B" and incorporated herein.

169.  The representations were material to the agreement drafted by BOH, in that but for the representation; Plaintiff would not have signed and notarized the agreement. Ex B.

170.  BOH believed that the representations were false when the representations were made, or BOH made the representations without any

1    reasonable ground for believing them to be true, in that the sum of money

2    actually belonged to Plaintiff, and not as BOH represented, to Niroula.

3        171.   BOH made the representations for the purpose of causing or

4    inducing Plaintiff to enter into the agreement with BOH. Plaintiff signed that

5    document (Ex B) under the misapprehension that it was something other than a

6    release; and, that it was merely to allow a transfer of Mr. Niroula's money back

7    to him.

8        172.   Plaintiff was not aware that the representation was false and

9    would not have otherwise consented to the agreement. Plaintiff justifiably relied

10   on BOH's misrepresentation, all to her damage.

11       173.   Defendants directly and proximately caused injury and damage to

12   Plaintiff, and Plaintiff should be awarded damages, including punitive damages,

13   as set forth in ¶s 56 -58, <u>supra</u>, incorporated herein.

14

15                          **<u>COUNT TWENTY-THREE</u>**

16   **(Intentional Infliction Of Emotional Distress Against Defendant BOH**

17                              **And Does 1-50)**

18
19       174.   Plaintiff realleges and incorporates the foregoing paragraphs.

20       175.   Defendant BOH's conduct in San Francisco with respect to

21   releasing the claims (Exs A.1, A.4, A.7 and B), and involving Plaintiff in direct

---

52

negotiation with the thief and check forger, as hereinabove alleged, was so extreme as to exceed all bounds of conduct usually tolerated in a civilized community.

176.    Defendants engaged in conduct intended to inflict injury, or they engaged in the conduct with reckless disregard of the probability that Plaintiff would suffer severe emotional distress, or with the realization that injury to Plaintiff would result.

177.    Defendants' acts were outrageous, and were a substantial factor in causing Plaintiff's severe emotional distress, or suffering. These acts included, but not by limitation, the following:

178.    BOH's connivance with Codefendant Niroula to obtain a release from Plaintiff exceeded all bounds usually tolerated by a decent society.

179.    BOH's inaction after notice of the forgeries/bank fraud, exceeded all bounds usually tolerated by a decent society.

180.    BOH's intention to deny Plaintiff's claims (Ex A) prior to investigating or acting on them also exceeded all bounds usually tolerated by a decent society.

181.    BOH's violation of its own guidelines for identity theft exceeded all bounds usually tolerated by a decent society.

182.    BOH's use of a release violating Cal.Civ.Code §1668 exceeded all bounds usually tolerated by a decent society.

183.    BOH's aggressive efforts to retransfer funds to an individual it recognized as a forger, thief and a liar exceeded all bounds usually tolerated by a decent society.

184.    The intentional, or reckless, extreme and outrageous conduct by Defendants actually, directly and proximately caused Plaintiff to suffer emotional distress or extreme emotional distress, all to her damage, as aforesaid at ¶s 56-58, supra.

**COUNT TWENTY-FOUR**

**(Declaratory Relief Against BOH And Does 30-50**

**- California Transaction)**

185.    Plaintiff realleges and incorporates the foregoing paragraphs.

186.    Plaintiff contends, and Defendant BOH disputes, that BOH's "Indemnification of Liability" signed by Plaintiff in San Francisco on October 25, 2006 (Ex B), remains null and void, and has no future prospective effect on BOH's duty to pay Plaintiff's claims, totaling $508,000.00, plus interest.

1    187.   Plaintiff has no speedy or adequate remedy at law to have her

2    future rights determined as to the prospective effect of the release on her claims

3    for reimbursement.

4    188.   Defendant BOH contends to the contrary and has refused to agree

5    to rescind or to cancel its release at Ex B.

6    189.   An actual, substantial, and justicable controversy has arisen and

7    now exists between the Plaintiff and BOH concerning the construction and

8    interpretation of BOH's form of exculpation (Ex B) in relation to the money

9    owed to Plaintiff by Defendant BOH, and the obligations of Defendant BOH to

10   pay the money due now. Plaintiff desires, and is entitled to a judicial declaration

11   by this honorable Court of her rights and obligations and BOH's duty to pay her

12   claims, notwithstanding BOH's release. Ex B.

13   190.   Plaintiffs contend, and Defendant BOH disputes, the following:

14   **A.**    The agreement (Ex B) violates Cal.Civ. Code §1668 in that

15   its direct or indirect object was to exempt BOH from responsibility to

16   Plaintiff for BOH's own fraud or willful injury to the property of

17   Plaintiff, or violation of law, whether willful or negligent.

18   **B.**    That a violation of law in Cal.Civ. Code §1668, for which

19   BOH's agreement (Ex B) seeks exemption, is found at section 4-401 of

20   the Uniform Commercial Code, which applies in California and Hawaii

55

1    (Cal. U Com Code §4401; HRS §490:4-401) (herein "UCC").  The UCC

2    requires BOH to pay to Plaintiff at least $508,000.00 for the unauthorized

3    transactions by Mr. Niroula, in 2006.

4    **C.**    That since an exemption from the UCC (§4401) in this

5    manner was known by BOH to be an unlawful agreement (Ex B); and,

6    insofar as it is one for indemnity it, is void under Cal.Civ. Code §2773.

7    **D.**    That it is beyond the power of BOH to exact a waiver or

8    ratification of the crime of forgery. Statutes prohibiting forgery are for

9    the protection of the public. Cal. Penal Code §470; Hawaii Penal Code

10    §708-852. Insofar as BOH's agreement (Ex B) seeks withdrawal,

11    ratification, or waiver of forgery, the agreement violates Cal.Civ. Code

12    §3513.

13    **E.**    That the agreement, insofar as it seeks exemption of liability

14    for Plaintiff's unauthorized transaction claims against BOH and other

15    claims asserted herein, is one for release, and not one for indemnity.

16

17    <u>**COUNT TWENTY-FIVE**</u>

18    **(Wrongful Withholding Of Funds After Forged Checks Were Drawn**

19    **On Plaintiff's Account - Against Defendant BOH And Does 30- 50 –**

20    **Hawaii Transaction)**

1    191.   Plaintiff realleges and incorporates the foregoing paragraphs.

2    192.   Defendants debited forged checks against Plaintiff's new BOH

3    personal checking account, totaling $580,000.00.

4    193.   Defendants violated the requirement of honesty in fact and lacked

5    good faith, and they failed to use ordinary care by debiting three forged checks

6    on a new account; and by disclaiming responsibility for BOH's lack of good

7    faith, or failure to exercise ordinary care, or due care, or by an attempt to limit

8    the measure of damages for the lack of failure, all in violation of the California

9    and Hawaii versions of the Uniform Commercial Code §4103.

10

11    **COUNT TWENTY-SIX**

12    **(Unfair Or Deceptive Trade Practices In Violation Of HRS §480-1 Et**

13    **Seq – Against BOH and Does 28-50-Hawaii Transactions)**

14

15    194.   Plaintiff realleges and incorporates the foregoing paragraphs.

16    195.   The foregoing activities by Defendant BOH, a financial institution,

17    involved "conduct of any trade or commerce" within the ambit of Hawaii

18    Revised Statutes (HRS) §480 et seq.

19    196.   Plaintiff is a claimant against BOH for recovery of losses from

20    unauthorized transactions. She is therefore a consumer under HRS §480-1, and

21    is authorized to bring suit pursuant to HRS §480-13.

197.    The foregoing practices by BOH were also unfair or deceptive acts or practices, and offended established public policy. The practices were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

198.    BOH's unfair or deceptive acts directly and proximately caused damage to Plaintiff as aforesaid, particularly at ¶s 56-58, supra.

199.    The deceptive acts or practices by BOH and Does 28-50 all had the capacity to deceive Plaintiff; and did in fact cause, as a natural and probable result, Plaintiff to do those things she would otherwise not do, including wait for BOH to investigate her written claims for reimbursement when BOH had already decided not to pay the claims. Further, Plaintiff would not have negotiated with a check forger, or attempted to recover her money by self-help (Exhibits A.1 – A.9).

200.    The foregoing deceptive acts or practices include representations, omissions, or practices likely to mislead consumers acting reasonably under the circumstances, including Plaintiff; particularly, as here, where the representations acts or practices are material.

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

## COUNT TWENTY-SEVEN

### (Fraud Based On Promises Made Without Intention To Perform - Against Defendants  BOH and Does 28-45-California And Hawaii Transactions)

201.    Plaintiff realleges and incorporates the foregoing paragraphs.

202.    On October 3, 2006, BOH made the following promises, material to Plaintiff's claims against BOH for losses from unauthorized transactions, which injured Plaintiff. The promises were written by an author whose identity, like the date of the creation of the document, and location of the author, are within the exclusive knowledge of BOH. The promises were:

    **A**.    "the Bank will investigate your Claim" (Ex. A.1 ¶2).

    **B**.    "Payment of you Claim is contingent upon the results of the Banks' investigation". Id.

    **C**.    The Bank's decision to pay or not To Pay your claim will be made in light of all the facts and circumstances after completion of its investigation". Id.

203.    At the time BOH made these promises, on October 3, 2006, it had no intention of performing them, and had already decided to deny the claims.

204.    The promises were made by BOH with the intent to induce Plaintiff into relying on them and taking no action against the BOH to recover the $508,000.00 in unauthorized debits from Plaintiff's personal checking account.

205.    The unauthorized transactions at all times entitled Plaintiff to the full benefits of the claims (Exts A.1 – A.9), but BOH, despite its promises to the contrary, had never at the time the promises were made, intended to abide by the promises; and in fact, consistently refused to do so. BOH's conduct after the promises show BOH had no intent to perform according to the promises, when made, on October 3, 2006.

206.    Plaintiff, at the time these promises were made; and, at the time Plaintiff reasonably relied on said promises, she forewent taking actions herein alleged. Plaintiff was ignorant of Defendant BOH's secret intention not to perform, and took no rapid action against BOH to recover over $250,000 of her own money, sitting in a criminal's BOH account.

207.    Plaintiff Hisamatsu reasonably and justifiably relied on BOH's promises in that BOH employees, including one Chester Dods, responsible for these promises, represented themselves as security experts and former law enforcement agents in close contact with law enforcement agencies. Further, Plaintiff could not, in the exercise of reasonable diligence, have discovered Defendant BOH's secret intention not to perform its promises.

208.    In reliance on the aforesaid promises of Defendant, Plaintiff did not take immediate legal action against Defendant BOH to recover her money. If Plaintiff had known the actual intention of BOH not to investigate the claim

1   and pay the claim after completion of the investigation, and instead create

2   frivolous defenses to payment, she would have not been lulled into trusting the

3   bank to complete an investigation. Further, Plaintiff would not have refrained

4   from taking prompt legal action; particularly to secure over $250,000 of her

5   money in the criminal (Niroula's) BOH account.

6   209.    Defendant BOH failed to perform the promised acts; failed to

7   abide by its promises, and instead failed to investigate whether the transactions

8   were authorized under Hawaii Revised Statutes (HRS) §490:4-401. BOH,

9   failing to investigate this issue, failed to abide by its promise to pay the claim.

10  But for these failures, Plaintiff would have taken prompt legal action against

11  defendant BOH. Her reliance on BOH's promise was a substantial factor in

12  directly and proximately causing harm to Plaintiff, all to her damage as

13  aforesaid.

14  **(ALTERNATIVE) COUNT TWENTY-EIGHT**

15  **(Against BOH and Does 30-50 For Negligent Misrepresentation-**

16  **California And Hawaii Trasactions)**

17  210.    Plaintiff realleges and incorporates the foregoing paragraphs.

18  211.    False information was supplied to Plaintiff by BOH, as stated in

19  Counts 19, 22 and 26, as incorporated by reference. Defendants had no

1    reasonable grounds for believing the representations were true, in these

2    incorporated counts, when made.

3    212.    Plaintiff, as the person for whom the information was supplied,

4    suffered the loss, and defendants intended that Plaintiff rely on the

5    misrepresentations or concealments of important facts.

6    213.    Plaintiff reasonably relied upon the false representations made by

7    Defendant BOH.

8    214.    The false information was a substantial factor in causing harm to

9    Plaintiff, directly and proximately caused damages to Plaintiff as aforesaid, at

10    ¶s 56-58, incorporated herein.

11
12    **COUNT TWENTY-NINE**

13    **(Conversion Against Defendant BOH and Does 28-35,**

14    **California And Hawaii Transactions)**

15    215.    Plaintiff incorporates and realleges the foregoing paragraphs.

16    216.    Between October 24, 2006, and October 29, 2006, in San

17    Francisco, California, Defendant BOH and Does 28-35 intentionally interfered

18    with, and exercised dominion over property owned by Plaintiff, including her

19    bank account, her claims for specific sums to be returned back to her BOH

20    account for $508,000.00; her confidential identity, bank, telephone information,

62

1    and money; all inconsistent with the ownership of Plaintiff. Defendants

2    actually, intentionally or knowingly interfered with Plaintiff's property.

3        217.    Defendants had an intention or purpose to convert Plaintiff's

4    property and to exercise ownership over it, or to prevent Plaintiff from taking

5    possession of her property.

6        218.    Defendants' interference or exercise of dominion over Plaintiff's

7    property was in defiance of her rights, and Plaintiff demanded return of said

8    property, which was refused, proximately and directly causing Plaintiff's injury,

9    damage, loss or harm, as aforesaid.

10        219.    Plaintiff realleges and incorporates the damages allegations at

11    paragraphs 56-58, supra.

### COUNT THIRTY

**(Equitable Lien Against Defendants BOH -**

**California And Hawaii Transactions, and Does 1-50)**

16        220.    Plaintiff realleges and incorporates the foregoing paragraphs.

17        221.    Additionally, Defendant BOH owns property which may be

18    reached by Plaintiff Hisamatsu as security, on the ground that Defendant BOH

19    will be unjustly enriched if allowed to retain the money.

20        222.    An equitable lien should be imposed against Defendant BOH in

21    favor of Plaintiff on the proceeds of Plaintiff's money withheld by defendant.

1

## COUNT THIRTY-ONE

### (Constructive Trust Against Defendant BOH and Does 30-50,

### California And Hawaii Transactions)

223.     Plaintiff realleges and incorporates the foregoing paragraphs.

224.     Defendant BOH has money belonging to Plaintiff to which it is not justly entitled.

225.     Defendant's duty is to retransfer the money to Plaintiff, who is entitled thereto to possession.

226.     Defendant BOH will be unjustly enriched if allowed to keep Plaintiff's money.

227.     A constructive trust should be imposed on defendant's money and property, plus accrued interest.

## COUNT THIRTY-TWO

### (Gross Negligence Against Defendant BOH and Does 30-50,

### California And Hawaii Transactions)

228.     Plaintiff realleges and incorporates the foregoing paragraphs.

229.     Defendants' conduct demonstrated a want of even scant care, or an extreme departure of ordinary standards of conduct. At each turn, beginning with refusal to minimally compare the forged signature with Plaintiff's

signature card in a new account, and ending with the void release in San Francisco, Defendant BOH and Does 30-50 displayed a reckless disregard, or positive, active, and absolute disregard for the consequences of their action; particularly with, as here, a new personal account opened by a foreigner, subjected to extremely large debits.

### (ALTERNATIVE) COUNT THIRTY-THREE

### (Negligence Against Defendant BOH and Does 30-50, California And Hawaii Transactions)

230.    Plaintiff realleges and incorporates the foregoing paragraphs.

231.    Defendants at all times herein mentioned owed a legal duty of due care, or an obligation recognized by the law requiring them to conform to certain standards of conduct for the protection of bank customers against unreasonable risks.

232.    Defendants failed to conform to the standards of conduct and thereby breached their duty to Plaintiff.

233.    The breach by defendants of the duty to conform to the standards of conduct imposed on banks confronted with forged checks and unauthorized transactions, as aforesaid, directly and proximately caused the foregoing injury and damages to Plaintiff.

234.    Plaintiff suffered actual loss or damage as a result of defendants' breach of duty, as set out above at ¶s 56-58 incorporated herein.

## COUNT THIRTY-FOUR

**(Negligent Infliction Of Emotional Distress Against Defendant BOH and Does 30-50, California And Hawaii Transactions)**

235.    Plaintiff realleges and incorporates the foregoing paragraphs.

236.    Defendant owed a duty to avoid the negligent conduct and willful violations of statutory standards, as aforesaid, causing substantial financial injury.

237.    Defendants' conduct and violations were a cause of serious emotional distress, not solely based on financial injury. Specifically, Defendant BOH schemed with a criminal who had stolen Plaintiff's identity and her family's savings to avoid paying Plaintiff's claims for unauthorized transactions. Part of the scheme was to force Plaintiff to negotiate and use self-help with a dangerous criminal to obtain a release, as hereinabove alleged.

238.    The injury to Plaintiff's property and peace of mind was directly and proximately caused by defendants' conduct. Plaintiff suffered shock, loss of sleep, mental anguish, depression, embarrassment, fear of further criminal injury, and pain.

1      **COUNT THIRTY-FIVE**

2      **(Negligence Per Se Or Negligence Based On Statutory Violations**

3      **Against Defendant BOH and Does 30-50,**

4      **California And Hawaii Transactions)**

5

6      239.    Plaintiff realleges and incorporates the foregoing paragraphs.

7      240.    At all times herein, Plaintiff and others so situated were persons for

8      whose protection the following statutes were adopted. These statutes are: Cal. U

9      Com Code §4101, Hawaii Revised Statutes §490:4-401(a), Cal.Civ. Code

10     §§1572, 1668, 2773, 3513 and Cal. Penal Code §§470 (forgery), 18 USC §§371

11     (conspiracy), §1343 (wire fraud), §1344 (bank fraud), and §1956(a)(2)(A)

12     (money laundering).

13     241.    Defendant failed to exercise due care by violating the foregoing

14     statutes of public entities; or, by failure to conform to the standard of care

15     required in handling claims for unauthorized transactions based on forgery, and

16     bank fraud as more particularly alleged in counts 8, 20, 21 incorporated herein.

17     242.    Plaintiff's injury, or actual loss or damage, as aforesaid, directly

18     and proximately resulted from occurrences of the nature which said statutes or

19     regulations were designed to avoid, and violation of the statutes caused injury to

20     Plaintiff, as aforesaid.

21

1       **WHEREFORE, Plaintiff prays for relief and demands as follows:**

2    1.    General, special and punitive damages in favor of Plaintiff, according to

3          proof; on some, but not all counts.

4    2.    Declaratory relief, count 24.

5    3.    Injunctive relief (count 8).

6    4.    That $508,000.00 withheld by Defendant Bank Of Hawaii (BOH) to be

7          paid by BOH to Plaintiff, plus interest and general damages of

8          $2,500.000.00, with punitive damages, according to proof, on some, but

9          not all counts.

10   5.    That judgment be entered against Defendant Kaushal Niroula for

11         $890,000.00 plus general damages of $2,500.000.00 and punitive

12         damages according to proof, on some, but not all counts.

13   6.    Restitution on some, but not all counts.

14   7.    Equitable liens should be imposed on specified counts.

15   8.    Costs of suit and other expenses;

16   9.    For such other and further relief as the Court deems just.

17
18        Dated:    Honolulu, Hawaii, April 9, 2008.
19
20
21                           __/s/ Stephen M. Shaw__
22                           Stephen M. Shaw, Esq.
23                           Attorney For Plaintiff
24                           MEGUMI HISAMATSU

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**

P.O. Box 2353
Honolulu, Hawaii  96804
Telephone:   (808) 521-0800
Facsimile:    (808) 531-2129
Email: shawy001@gmail.com

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all causes of action in this suit.

DATED:  Honolulu, Hawaii, April 9, 2008.


   /s/ Stephen M. Shaw
Stephen M. Shaw, Esq.
Attorney For Plaintiff
MEGUMI HISAMATSU

P.O. Box 2353
Honolulu, Hawaii  96804
Telephone:   (808) 521-0800
Facsimile:    (808) 531-2129
Email: shawy001@gmail.com

SECOND AMENDED COMPLAINT - **CASE NO. 3:07-cv-04371-JSW**