1    BUCHALTER NEMER
     A Professional Corporation
2          JAMES B. WRIGHT (#63241)
           MIA S. BLACKLER (#188112)
3    333 Market Street, 25th Floor
     San Francisco, CA  94105-2126
4    Telephone: (415) 227-0900
     Facsimile: (415) 227-0770
5    jwright@buchalter.com
     mblackler@buchalter.com
6
     Attorneys for Defendant
7    BANK OF HAWAII

8              UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11   MEGUMI HISAMATSU,                      CASE NO. 3:07-CV-04371-JSW

12              Plaintiff,                  **DEFENDANT BANK OF HAWAII'S
                                            MEMORANDUM OF POINTS AND
13        vs.                               AUTHORITIES IN SUPPORT OF ITS
                                            MOTION TO DISMISS THE SECOND
14   KAUSHAL NIROULA; BANK OF               AMENDED COMPLAINT**
     HAWAII, A Corporation; DOES 1-60,
15   inclusive,                             **(FRCP 12(b)(6))**

16              Defendants.                 Hearing:  September 19, 2008
                                            Time:  9:00 a.m.
17                                          Judge:  Hon. Jeffrey S. White
                                            Courtroom:  2, 17th floor
18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1934353v6

**BANK OF HAWAII'S MPAS ON ITS MOT. TO DISMISS SAC – CASE NO. 3:07-CV-04371-JSW**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   NEWLY PLEADED FACTS IN SAC .............................................................1

    A.    Many Of Plaintiff's Claims Are Based On A False Premise.....................1

    B.    BOH Had No Alleged Obligation To Transfer Funds Without An Investigation.............................................................................................2

III.  ISSUES ADDRESSED........................................................................................2

IV.   DISCUSSION ......................................................................................................3

    A.    Choice of Law ..........................................................................................3

    B.    The UCC § 4-406(f) Preclusion Doctrine Bars Plaintiff's Forged Check Claims, However Captioned .........................................................5

    C.    Claims Which Attack The Indemnification Agreement (Counts 9-20 and 24) .....................................................................................................10

        1.    Plaintiff's Claims Are Factually Inadequate.............................10

        2.    Plaintiff's Claims Attacking The Indemnification Agreement Are Legally Inadequate ......................................................11

        3.    Rescission Claims (Counts 9-19) .............................................15

            a.    Undue Influence (Count 9) ............................................15

            b.    Improper Conduct Of Third Party (Count 10) ...............18

            c.    Mutual Mistake (Count 11)............................................19

            d.    Material Failure of Consideration (Count 12) ...............19

            e.    Failure of Consideration By Fault Of BOH (Count 13) ................20

            f.    Unlawful Agreement (Count 14) ...................................20

            g.    Void Consideration (Count 15).......................................21

            h.    Undue Influence Due To Known Vulnerability (Count 16)..........21

            i.    Unilateral Mistake, Fault of BOH (Count 17) ...............22

            j.    Unilateral Mistake (Count 18) .......................................22

            k.    Fraud In The Inducement (Count 19) .............................23

            l.    Tort In Essence (Count 20).............................................24

            m.    Declaratory Relief (Count 24) .......................................26

    D.    B&P Code § 17200 (Count 8) and Hawaii Unfair Competition (Count 26) .........26

        1.    Section 17200 Does Not Apply To Hawaii Transactions (Count 8) .........26

        2.    Plaintiff Does Not Have Standing To Pursue A Hawaii Unfair Competition Claim, And BOH's Conduct Was Not Unfair (Count 26) ....................................................................................29

    E.    Conspiracy (Count 21)............................................................................31

    F.    Fraud (Counts 22 and 27) ......................................................................32

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

# TABLE OF CONTENTS
## (continued)

|  |  |  |  | Page |
|---|---|---|---|---|
|  |  | 1. | Fraudulent Inducement (Count 22) | 32 |
|  |  | 2. | Promissory Fraud (Count 27) | 32 |
|  | G. | | Negligence Claims (Counts 25, 28, 32, 33, 34 and 35) | 34 |
|  |  | 1. | Wrongful Withholding Of Funds (Count 25) | 34 |
|  |  | 2. | Negligent Misrepresentation (Count 28) | 34 |
|  |  | 3. | Gross Negligence (Count 32) | 34 |
|  |  | 4. | Negligence (Count 33) | 34 |
|  |  | 5. | Negligent Infliction of Emotional Distress (Count 34) | 34 |
|  |  | 6. | Negligence Per Se (Count 35) | 35 |
|  | H. | | Conversion (Count 29) | 36 |
|  | I. | | Equitable Lien (Count 30) | 37 |
|  | J. | | Constructive Trust (Count 31) | 37 |
|  | K. | | Intentional Infliction Of Emotional Distress (Count 23) | 38 |
| V. | | | CONCLUSION | 40 |

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**BANK OF HAWAII'S MPAS ON ITS MOT. TO DISMISS SAC – CASE NO. 3:07-CV-04371-JSW**

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alcorn v. Anbro Engineering, Inc.*
2 Cal.3d 493 (1970) ..................................................................................38

*Am. Fin. Serv. Asso. v. FTC*
767 F.2d 957 (D.C. Cir. 1985) .................................................................30

*Badie v. Bank of America*
67 Cal.App.4th 779 (1998) .......................................................................23

*Bigbee v. Pacific Tel. & Tel. Co.*
34 Cal.3d 49 (1983) ..................................................................................23

*Brookwood v. Bank of America*
45 Cal.App.4th 1667 (1996) .....................................................................12

*Building Permit Consultants, Inc. v. Mazur*
122 Cal. App. 4th 1400 (2004) .................................................................33

*Cel-Tech Communications. Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal.4th 163 (1999) ...............................................................................27

*Cooper v. Union Bank*
9 Cal.3d 371 (1973) ..................................................................................36

*Courbat v. Dahana Ranch, Inc.*
111 Haw. 254 (2006) .................................................................................30

*Donovan v. RRL Corporation*
26 Cal.4th 261 (2001) ..........................................................13, 14, 22, 23

*Downey Venture v. Lmi Ins. Co.*
66 Cal. App. 4th 478 (1998) .....................................................................33

*Fox v. Ehrmantraut*
28 Cal.3d 127 (1980) ................................................................................20

*Frontier Oil Corporation v. RLI Insurance Company*
153 Cal.App.4th 1436 (2007) .....................................................................5

*Harris v. Rudin, Richman & Appel*
95 Cal.App.4th 1332 (2001) .....................................................................19

*Hawaii Cmt'y Fed. Cred. Union v. Keka*
94 Haw. 213 (2000) ..................................................................................30

*Honolulu Fed. Sav. & Loan Ass'n v. Murphy*
7 Haw. App. 196 (1988) ...........................................................................34

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1934353v6

iii

BANK OF HAWAII'S MPAS ON ITS MOT. TO DISMISS SAC – CASE NO. 3:07-CV-04371-JSW

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Hough v. Pacific Ins. Co.*
 83 Haw. 457 (1996) ............................................................................................... 29

*Howell v. Courtesy Chevrolet*
 16 Cal.App.3d 391 (1971) ..................................................................................... 18

*Hunt v. First Ins. Co. of Hawaii, Ltd.*
 82 Haw. 363 (1996) ............................................................................................... 29

*IMO Development Corp. v. Dow Corning Corp.*
 135 Cal.App.3d 451 (1982) ................................................................................... 18

*In re Int'l Harvester Co.*, WL 565290 (F.T.C. 1984) ..................................................... 31

*Izzi v. Mesquite Country Club*
 186 Cal.App.3d 1309 (1986) ................................................................................. 12

*Kearney v. Salomon Smith Barney, Inc.*
 39 Cal. 4th  95 (2006) .............................................................................................. 4

*Lee v. Aiu*
 85 Haw. 19 (1997) ................................................................................................. 38

*M.F. Kemper Const. Co. v. City of L.A.*
 37 Cal.2d 696 (1951) ....................................................................................... 12, 19

*Nedlloyd Lines B.V. v. Superior Court*
 3 Cal.4th 459 (1992) ............................................................................................... 4

*Queen Villas Homeowners Association v. TCB Property Management*
 149 Cal.App.4th, 1 (2007) ..................................................................................... 20

*Rosales v. Citibank*
 113 F.Supp.2d 1177 (N.D. Cal. 2001) ............................................................ 37, 38

*Rosenthal v. Great Western Fin. Sec. Corp.*
 14 Cal.4th 394, 425 (1996) ................................................................................... 12

*Rowland v. Paine Webber*
 4 Cal.App.4th 279 (1992) ..................................................................................... 12

*Roy Supply v. Wells Fargo Bank, N.A.*
 39 Cal.App.4th 1051 (1995) ................................................................................ 5, 9

*Simmons v. California Institute of Technology*
 34 Cal.2d 264 (1949) ............................................................................................. 17

*Stafford v. California Canning Peach Growers*
 11 Cal.2d 212 (1938) ............................................................................................. 19

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Story Road Flea Market, Inc. v. Wells Fargo Bank, N.A.*
  42 Cal.App.4th 1733 (1996) ................................................................8, 9

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
  2 Cal. App. 4th 153 (1991) ......................................................................33

## STATUTES

18 U.S.C. § 1343 ......................................................................................25

18 U.S.C. § 371 ........................................................................................25

Business & Professions Code § 17200 ...................................... passim

Business & Professions Code § 17203 ....................................................37

California Penal Code § 470 ....................................................................35

Civil Code § 1572 ...........................................................................25, 35

Civil Code § 1577 ...........................................................................12, 22

Civil Code § 1646 .....................................................................3, 4, 5, 27

Civil Code § 1668 ...................................................................... passim

Civil Code § 1689(b) ...............................................................................11

Civil Code § 1689(b)(1)........................................................15, 18, 21, 23

Civil Code § 1689(b)(2)...........................................................................19

Civil Code § 1689(b)(3)...........................................................................20

Civil Code § 1689(b)(4)...........................................................................19

Civil Code § 1689(b)(5)...........................................................................20

Civil Code § 1691 ...................................................................................15

Civil Code § 2773 ...........................................................................25, 26, 35

Civil Code § 3513 ...................................................................................35

Commercial Code § 1-201(41) ................................................................21

Commercial Code § 3-401(a)...................................................................21

Commercial Code § 3-403(a)...................................................................21

Commercial Code § 4-101 .......................................................................35

## TABLE OF AUTHORITIES
### (continued)

Page

Commercial Code § 4-406 ....................................................................................9

Commercial Code § 4-406(c) ...............................................................................8

Commercial Code § 4-406(e) ...............................................................................8

Commercial Code § 4-406(f) ........................................................................ passim

Hawaii Revised Statutes § 480-1 ........................................................................29

Hawaii Revised Statutes § 480-2(a) ....................................................................29

Hawaii Revised Statutes § 480-2(d) ....................................................................29

Hawaii Revised Statutes § 490:3-403(a) .............................................................21

Hawaii Revised Statutes § 490:4-401(a) .............................................................35

## OTHER AUTHORITIES

5 Witkin, Summary of Cal. Law (10th ed. 2005), "Torts," section 187 ........................37

5 Witkin, Summary of Cal. Law (10th ed. 2005), "Torts," section 719 ........................37

Restatement Second of Contracts § 153 ...............................................................13

Restatement Second of Contracts § 154 ...............................................................13

Restatement Second of Contracts § 157 ...............................................................22

Restatement of Torts § 154(a) .............................................................................14

Restatement of Torts § 154(b) .............................................................................14

Restatement of Torts § 154(c) .............................................................................14

BUCHALTER NEMER
PROFESSIONAL CORPORATION
SAN FRANCISCO

**BANK OF HAWAII'S MPAS ON ITS MOT. TO DISMISS SAC – CASE NO. 3:07-CV-04371-JSW**

I.    **INTRODUCTION**

In partially granting Bank of Hawaii's ("BOH") motion to dismiss the First Amended Complaint ("FAC"), the Court made clear that any claim Plaintiff asserts based upon a forged check is precluded by Commercial Code § 4-406(f), unless Plaintiff can plead a viable factual and legal basis for avoiding the Indemnification Agreement.  January 8, 2008 Order ("Order") at 10:3-5.  For ease of reference, BOH has attached as Exhibit "1" to this memorandum a comparison copy of the FAC and the Second Amended Complaint ("SAC"), which distinguishes Plaintiff's new allegations from the old.  By reviewing Exhibit "1," the Court can determine that Plaintiff has not met her burden of pleading new facts to avoid the Indemnification Agreement or the preclusive effects of Section § 4-406(f).

II.    **NEWLY PLEADED FACTS IN SAC**

A.    **Many Of Plaintiff's Claims Are Based On A False Premise**

One of the primary bases upon which Plaintiff attempts to avoid the Indemnification Agreement's preclusive effect, and one of the few new "facts" she pleads, is that "*BOH was misrepresenting to Plaintiff that the money it would release to Mr. Niroula belonged to him*." See, e.g., ¶¶ 46, 95D, 95 (at p. 42:2-3), 142, 145, 165, 168, 170, and 171; emphases supplied.

The Indemnification Agreement does not contain any such misrepresentation, but in pertinent part states:

> I, Megumi Hisamatsu, also agree that funds ($257,546.25) held in suspense from *Bank of Hawaii account # 0002-933063, belonging to Kaushal Niroula*, as a result of the forgery dispute shall be released to Kaushal Niroula, upon signing this agreement.  SAC, Exhibit "B;" emphasis supplied.

Clearly, the phrase "belonging to Kaushal Niroula" modifies the phrase which precedes it, "Bank of Hawaii account # 002-933063," *not* the language at the beginning of that sentence, "funds ($257,546.25)."  Therefore, Plaintiff's foundational premise – that BOH misrepresented that the $257,546.25 in frozen funds "belonged to Niroula" – is just wrong.  It is not a new fact, nor is it one on which Plaintiff could justifiably have relied to her detriment.  Plaintiff claimed those funds were hers, which is one of the reasons she is suing BOH.  She was not misled by representations that BOH did not make.

1    It is clear from reading the Indemnification Agreement that BOH did not misrepresent to

2    Plaintiff that Niroula owned the suspended funds.  And, other than her faulty reading of the

3    Indemnification Agreement, Plaintiff offers no factual basis for her claim that BOH

4    misrepresented to her that the stolen funds "belonged to Niroula."  Her claim is simply not

5    credible.  Because that claim is a premise for many of Plaintiff's causes of action in the SAC

6    (17200; rescission; civil conspiracy; and fraud in the inducement) and is incorporated by

7    reference into all of her claims, many of her claims must fail, as discussed in more detail below.

8    **B.    BOH Had No Alleged Obligation To Transfer Funds Without An**

9    **Investigation**

10    There are very few newly pleaded facts in the SAC, and none which meets the

11    requirements of the Order.  One new allegation is that BOH allegedly had enough information to

12    transfer the stolen funds back into Plaintiff's account on a number of different occasions before it

13    conducted an investigation.[1]

14    Ignoring that BOH had no obligation to transfer funds without first conducting an

15    investigation into the *bona fides* of Plaintiff's forgery claims, those allegations add nothing to her

16    complaint, for two reasons.  First, as discussed below, but for claim preclusion, BOH was

17    obligated under the Commercial Code to repay Plaintiff for allowing funds to be withdrawn from

18    her account if they were taken by an unauthorized signature.  Second, by her own conduct,

19    Plaintiff has established that, even if the bank had immediately refunded her $508,000 without

20    any investigation, she would have given those funds back to Niroula a few days later.  Thus, this

21    new "fact" adds nothing to bolster Plaintiff's claims.

22    **III.    ISSUES ADDRESSED**

23    This memorandum addresses the following issues in generally the same order as this

24    Court addressed them in its Order.  Those issues include:

25

26    [1] These events when BOH allegedly should have transferred funs were (1) after each deposit of funds from Plaintiff's forged checks Niroula made to his account, (2) when Plaintiff informed BOH by phone on October 2, 2006 that her funds had been stolen, (3) when BOH met with Plaintiff on October 3, 2006, (4) when BOH froze $257,000 in Niroula's account, and (5) when BOH required Plaintiff to sign the Indemnification Agreement.  Respectively, SAC, ¶ 22; collective SAC Exhibit "A, "SAC ¶¶ 30, 32, 33, and 45.

1      •      Choice of Law;

2      •      The UCC § 4-406(f) Preclusion Doctrine;

3      •      Claims Which Attack The Indemnification Agreement (Counts 9-20, and 24);

4      •      The UCL Claims (Business & Professions Code § 17200 [Count 8] and Hawaii

5 Unfair Competition Act [Count 26]);

6      •      Conspiracy (Count 21);

7      •      Fraud (Counts 22 and 27);

8      •      Negligence (Counts 25, 28, 32-35);

9      •      Conversion (Count 29);

10      •      Equitable Lien (Count 30);

11      •      Constructive Trust (Count 31); and

12      •      Intentional Infliction Of Emotional Distress (Count 23).

13 **IV.    DISCUSSION**

14      **A.     Choice of Law**

15      For two reasons, this Court previously concluded that California law, and not the law of

16 Hawaii, applies to interpret the Indemnification Agreement. First, the Court noted that "BOH is

17 alleged to have released the funds to [Plaintiff] in San Francisco." Order at 7:5. Second, the

18 Court ruled that California law applies to the interpretation of the Indemnification Agreement

19 pursuant to California Civil Code § 1646, because the Agreement was "made" in San Francisco.[2]

20 The allegations in the SAC do not support either of these reasons. Hawaii law should be applied

21 to interpret the Indemnification Agreement.

22      Plaintiff has never alleged that the stolen funds were released to her in San Francisco.

23 Rather, Plaintiff alleged in ¶ 46 of the FAC that the funds were released to Niroula's BOH bank

24 account, ***which is in Honolulu***. Although Plaintiff deleted that allegation from SAC paragraph

25 46 (see attached Exh. "1," at p. 20), SAC Exhibit "B" states that the funds frozen in Niroula's

26 BOH account no. 0022-933063 in Honolulu shall be released to Niroula.

27      Plaintiff has therefore admitted that the Indemnification Agreement funds were released

28 _____
[2] References herein to "Code" are to California codes, unless otherwise stated.

1  by BOH to Niroula's Honolulu bank account, and she is bound by that admission. Order at 1:26-

2  27. Furthermore, BOH did not even fax the Indemnification Agreement to Plaintiff in San

3  Francisco, but to her friend, attorney Steve Brittain, in Honolulu. SAC, 44. Thus, BOH did not

4  direct the Agreement to California at all, and had no control as to where it was ultimately sent.

5      Under California's general choice of law principles (which rely upon the governmental

6  interest test in the absence of a contract that sets forth a choice of law), California law should not

7  apply here. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-108 (2006). The

8  governmental interest test applies to determine choice of law where there is no contract with a

9  choice of law provision. If a contract exists with a choice of law provision, then the parties'

10  choice will be respected, unless the state of choice does not have a relationship with the

11  transaction, and the parties did not have a reasonable basis for choosing that state. *Nedlloyd Lines*

12  *B.V. v. Superior Court*, 3 Cal.4th 459, 465 (1992). Although the parties here contracted to apply

13  Hawaii law to any issue arising out of the depository relationship (Order at 6:20-21 and

14  Takahashi Decl., Ex. 2), if the Court concludes that the Indemnification Agreement is

15  independent of the depository relationship, the governmental interest test would examine

16  California's interest in the application of its law under the circumstances of this case. *Id.*

17      In this instance, none of the parties are California residents. The alleged theft of

18  Plaintiff's funds occurred in Hawaii. Plaintiff directed withdrawal of her forgery claims to BOH

19  in Hawaii, and the frozen funds in Niroula's account were released in Hawaii. That the

20  Indemnity Agreement was signed outside of Hawaii was simply happenstance. BOH sent it to a

21  Plaintiff's friend in Honolulu, and he, not BOH, forwarded it to her outside of Hawaii.

22  California's interest in the transaction is therefore wholly incidental to the issues in the case, and

23  California has no interest in having its laws applied to protect nonresidents from claims and

24  transactions which occurred or obligations which were performed in Hawaii.

25      Second, Civil Code § 1646 does not require the application of California law to the

26  Indemnification Agreement. Section 1646 provides:

27          A contract is to be interpreted according to the law and usage of the
            place where it is to be performed; ***or, if it does not indicate a place***
28          ***of performance***, according to the law and usage of the place where

1   it is to be made.  Emphasis supplied.

2   In its previous ruling, the Court concluded that, because Plaintiff signed (or "made") the

3   contract in San Francisco, under Section 1646, California law should apply.  Order at 7:3-6.

4   However, under Section 1646, the law of the place of performance trumps the law of the place

5   where a contract is made, so long as the contract or the circumstances surrounding the contract

6   "indicate" the place of performance.  *Frontier Oil Corporation v. RLI Insurance Company*, 153

7   Cal.App.4th 1436, 1449 (2007).

8   As stated in the Indemnification Agreement, BOH's performance was to release

9   suspended funds to Niroula from Niroula's account no. 0002-933063, which is in Honolulu.

10  Based on the language of the contract, BOH fully performed when it released funds at the

11  Honolulu branch where Plaintiff's and Niroula's accounts were located.   The place of

12  performance – Honolulu – is the controlling factor under Section 1646.

13  California has no governmental interest in protecting Plaintiff, a resident of Japan, from

14  Hawaii transactions.  The Indemnification Agreement should be interpreted according to Hawaii

15  law, although the Court is free to take guidance from California law where Hawaii law has not

16  addressed issues raised by this motion.

17  **B.      The UCC § 4-406(f) Preclusion Doctrine Bars Plaintiff's Forged Check**

18  **Claims, However Captioned**

19  Plaintiff filed three *timely* forgery claims (Exh. "A" to SAC) alleging that Niroula stole

20  $508,000 from Plaintiff's BOH deposit account in Honolulu.  She claims Niroula did so by

21  depositing three of her checks (on which he allegedly forged her drawer signature) into his BOH

22  account in Honolulu.

23  If Plaintiff's forgery claims had proved to be accurate and she had done nothing more,

24  BOH as the payor bank would have been liable to return all of the stolen funds to her upon

25  verification of the forgeries:

26          *A payor bank's initial liability to its customer for making payment*
            *of a check on a forged signature is absolute*; that is, it applies
27          without regard to whether the bank exercised due care or was
            negligent or worse.  *Roy Supply v. Wells Fargo Bank, N.A.* 39
28          Cal.App.4th 1051, 1062 (1995) ("*Roy Supply*"); emphasis supplied.

1    But Plaintiff did not rest with filing three forgery claims, and her additional conduct forms

2  the basis upon which the SAC should be dismissed without leave to amend. After Plaintiff swore

3  under oath that Niroula was a forger and a thief, she flew to San Francisco at Niroula's request

4  (not BOH's) to meet Niroula there to recover her stolen funds. SAC, ¶ 39. Plaintiff does not

5  allege that BOH encouraged her to exercise this self-help remedy, nor does she allege that she

6  informed BOH that she intended to meet Niroula in San Francisco for any purpose.

7    In opposition to the Bank's previous motion to dismiss, Plaintiff *argued*, but did not

8  allege, that BOH "coerce[d] her to investigate and negotiate with an identity thief and a forger

9  solely to escape payment on the unauthorized transactions." Opp. at 17:19-22. The Court found

10  that such an allegation, if made in the SAC, would be persuasive to support her intentional

11  infliction of emotional distress claim. Order at 18:19-21.

12    However, Plaintiff does not include that coercion *argument* as an *allegation* in the SAC.[3]

13  Rather, she weakly alleges that "*At no time did BOH inform Plaintiff that she need not*

14  *investigate or use self-help in order to have her claims at BOH paid*." SAC, ¶ 39; emphasis

15  supplied. BOH's failing to inform her not to deal with Niroula, when BOH had no knowledge

16  that that was her plan, is not "coercing" her to "investigate and negotiate with a thief." Moreover,

17  it is nothing more that an argument that BOH owed her a duty to advise her about her legal rights.

18  This Court soundly rejected that claim in its Order (at p. 9 and passim). A depository bank has no

19  such duty to its customers.[4]

20    According to her SAC allegations, Plaintiff fell under Niroula's criminal spell once she

21  arrived in San Francisco. SAC, ¶¶ 39-47, 127, 128. While apparently so spellbound, she

22  accepted an $890,000 replacement check from Niroula to repay the $508,000 in funds he stole

23  from her, and she deposited the replacement check into her Citibank account. SAC, ¶ 40.

24  Plaintiff *admits that Citibank told her, and she knew, that the $890,000 check would not be*

---

25  [3] Bank's counsel did a word search of the SAC and cannot find any allegation that BOH
26  "coerce[d] [Plaintiff] to investigate and negotiate with an identity thief and a forger solely to
   escape payment on the unauthorized transactions."
   [4] Similarly, Plaintiff complains that no one at BOH explained the meaning of the Indemnification
27  Agreement to her. SAC, ¶ 46. BOH had no such duty. Order at 9. And her concession that
   BOH did not explain the Agreement to her eliminates any claim she might assert that BOH gave
28  her a "partial" explanation, which she could argue might require additional disclosures.

SCHALTER NEMER
PROFESSIONAL CORPORATION
SAN FRANCISCO

1    *good funds for three days*. *Id.*

2        On the third business day after the deposit, but before the $890,000 check had cleared,

3    Plaintiff withdrew her forgery claims and instructed BOH to release the suspended funds in

4    Niroula's BOH account.   SAC, ¶ 45.   Plaintiff could easily have conferred with Citibank to

5    determine if there were good funds behind the $890,000 replacement check.   She inexplicably

6    failed to do so before executing the Indemnification Agreement and withdrawing her forgery

7    claims.

8        Plaintiff acted in spite of the many warning signs that should have alerted her not to trust

9    Niroula:

10       •       Niroula made multiple real estate investment proposals to Plaintiff, which she

11   rejected (SAC, ¶ 15);

12       •       Niroula stole her personal checks (SAC, ¶¶ 12, 20);

13       •       Niroula forged her signature and took $508,000 from her (SAC, ¶ 12);

14       •       Niroula repeatedly lied to her about meetings he allegedly set up for Plaintiff with

15   an immigration attorney (SAC, ¶ 47);

16       •       Niroula lied to her about his family's not being able to wire replacement funds to

17   Hawaii (SAC, ¶ 37);

18       •       Niroula lied to her about his sister's alleged kidnapping and ransom (SAC, ¶ 41);

19   and

20       •       Niroula lied to her about a threat on Plaintiff's life (SAC, ¶ 41).

21       From the following SAC allegation, the Court can see what Plaintiff's apparent intention

22   was in going to San Francisco and why she withdrew her forgery claims:

23           ***In the event Defendant Niroula returned her family savings,***
             ***Plaintiff intended to withdraw her claims to BOH*** (Exs A.1, A.4
24           and A.7).   If not, Plaintiff reasonably believed that she was still
             protected by her pending claims at BOH and the bank's assurance
25           of an investigation in its claim forms.   SAC, ¶ 39; emphasis
             supplied.
26

27       Plaintiff's allegations show that, once she received the replacement check from Niroula,

28   she was willing to withdraw her claims on the assumption that Niroula had repaid her.   The

BUCHALTER NEMER
A Professional Corporation
San Francisco

1   Indemnity Agreement was simply written verification of her intention. It did not cause her loss,

2   which was the result of her failure to call Citibank and verify good funds had been received for

3   the replacement check.

4       Plaintiff alleges she withdrew her forgery claims and signed the Indemnification

5   Agreement because she did not have time to obtain competent advice. SAC, ¶ 99. This argument

6   does not excuse her failure to call Citibank to determine if the $890,000 replacement check had

7   cleared on the same day that she instructed BOH to release the suspended funds, nor does it

8   explain why she could not obtain competent advice.

9       Plaintiff admits that BOH sent the Indemnification Agreement to her via her Honolulu

10  "friend," whom the parties acknowledge is Hawaii attorney Steven Brittain, and he faxed it to her

11  in San Francisco. While admitting that Mr. Brittain is a friend and an attorney, Plaintiff now

12  alleges that he was "not authorized" to act as her attorney (SAC, ¶ 44). But she does not explain

13  why, if she had time to contact Mr. Brittain and route the Indemnification Agreement through

14  him, she did not obtain competent advice about the Indemnity Agreement, from anyone else he

15  might have recommended.

16      In another effort to plead around preclusion, Plaintiff now alleges that BOH had the ability

17  and the duty to replace her stolen funds from the date she first notified the bank of the

18  unauthorized transfers until the date BOH froze $257,000 in Niroula's account. See, SAC, ¶ 22;

19  collective FAC Exhibit "A, " ¶ 30, ¶ 32, and ¶ 33. As set forth above, if Plaintiff's forgery claims

20  had proven to be accurate, BOH was liable to repay Plaintiff every cent withdrawn from her

21  account without her authorization. *Story Road Flea Market, Inc. v. Wells Fargo Bank, N.A.* 42

22  Cal.App.4th 1733, 1739 (1996) ("*Story Road*")

23      BOH was not obligated, however, to repay Plaintiff without an investigation to determine

24  if her claims were *bona fide*. See, Commercial Code § 4-406(c)-(e) (which discusses balancing

25  the duties of the payor bank and its customer). As this Court noted in connection with Plaintiff's

26  FAC conspiracy claim, BOH's act of freezing funds in Niroula's account is inconsistent with

27  Plaintiff's contention that the bank conspired with Niroula to defraud her, which is equally true of

28  its alleged intention not to investigate. Order at 13:1-4. Why would BOH risk incurring liability

1    to Niroula for freezing funds in his account, except to investigate Plaintiff's claims?

2        BOH's investigation began by BOH accepting Plaintiff's sworn forgery affidavits and

3    suspending funds in Niroula's account.  Before it could proceed further, Plaintiff conducted her

4    own "investigation" and decided to release the frozen funds to Niroula in exchange for an

5    $890,000 check that turned out to be worthless.  BOH had no duty to transfer funds from Niroula

6    to Plaintiff on first notice of her claim as she alleges, but if it had, Plaintiff has proven that she

7    would have given those funds back to Niroula to save his sister from alleged kidnappers.

8        BOH concurs with the Court's ruling and interpretation of Commercial Code § 4-406(f),

9    with one comment.  In *Story Road, supra,* at 1739, the court of appeal stated:

> First, we must cast off the erroneous notion that former section
> 4406 defined a cause of action against the bank which displaced all
> other causes of action based on the unauthorized signatures.  This is
> a ***serious misconception*** of the meaning of the statute.  Where the
> customer has failed to timely notify the bank of an unauthorized
> signature on an item after receiving the item from the bank with the
> customer's statement, the customer will be precluded under former
> section 4406 from founding ***any action*** on the bank's payment of
> subsequent items bearing unauthorized signatures by the same
> wrongdoer unless the customer can show that the bank failed to use
> ordinary care in honoring these subsequent items.  Emphasis
> supplied.[5]

17        The "serious misconception" referenced was the argument by Story Road and ***rejected by***

18    ***the court of appeal*** as an "erroneous motion" that <u>only</u> a so-called "Section 4-406 cause of

19    action" is precluded and not other forged check claims sounding in contract and negligence.  *Id.*

20    The "serious misconception" language in *Story Road* means that an untimely forgery claim does

21    not merely preclude a Section 4-406 cause of action, but ***any and all claims*** founded upon a

22    forged drawer signature.[6]

---

[5] Section 4-406(f) eliminates the analysis of care of lack of care if the customer fails to make a
timely forgery claim, in which event the customer "is precluded from asserting against the bank
the unauthorized signature … ."  Commercial Code § 4-406(f).  This Court previously concluded
that the changes to California Commercial Code § 4-406 do not undermine the *Roy Supply* court's
conclusions about issue preclusion.  Order at 8, fn. 4.
[6] BOH agrees with the Court's analysis that Section 4-406(f) claim preclusion does not apply at
this pleading stage *if* Plaintiff is able to plead grounds for avoiding the Indemnification
Agreement, although she has not done so.

C.    **Claims Which Attack The Indemnification Agreement (Counts 9-20 and 24)**

1.    **Plaintiff's Claims Are Factually Inadequate**

Because her claims will be precluded if the Indemnification Agreement stands, Plaintiff attacks its vitality with twelve separate legal claims. The problem with these twelve theories is that there are no pleaded facts which support them.

Plaintiff makes numerous allegations without factual support, including that (1) BOH "connived" with Niroula,[7] (2) BOH misrepresented that the funds in Niroula's account "belonged to Niroula," (3) the purpose of the Indemnification Agreement was to exculpate BOH from its willful misconduct, (4) Plaintiff should be relieved of her mistaken belief that Niroula would repay her with the $890,000 check funds, and (5) BOH had no intention of reimbursing her. Without factual support, these conclusory assertions do not allege a basis for avoiding the Indemnification Agreement.

The **actual** facts pleaded in the SAC establish that Plaintiff is **not** entitled to rescission or to avoid the Agreement on any of the theories she offers. Those pleaded facts are these:

Plaintiff filed forgery affidavits with BOH on October 3, 2006, accusing Niroula under oath of being a forger, a liar, and a thief. SAC, Exhibit A. As a result, BOH suspended all funds in Niroula's BOH account to further investigate Plaintiff's forgery claims. SAC, ¶ 33.

Unknown to BOH, on October 20, 2006, Plaintiff traveled from Japan to San Francisco to "investigate" Niroula's telephonic promise to repay her. SAC, ¶39. Unknown to BOH, Plaintiff accepted an $890,000 replacement check from Niroula, which Plaintiff knew from Citibank would not be good funds until October 25, 2006. SAC, ¶ 40.[8] All BOH knew was that, on October 25, 2006, Plaintiff chose to withdraw all three of her forgery claims and instructed BOH

---

[7] Plaintiff **alleges** that "there is **strong evidence** that BOH and Mr. Niroula acted together toward the common goal of putting Plaintiff's money into a check forger's hands," (SAC, ¶ 95, p. 35:10-12; emphasis supplied), but Plaintiff fails to **identify** that "strong evidence." As this Court stated in the Order: "Even considering these facts as circumstantial evidence, they simply do not support a reasonable inference that BOH knew of and intended to join in a conspiracy with Mr. Niroula." Order at 12:22-13:1.

[8] Plaintiff alleges that she verified the $890,000 deposit with Citibank on October 21, 2006, a Saturday. SAC, ¶ 40. She also alleges that Citibank's customer service department told her that funds would not be available for three days. *Id.* Assuming that meant three business days, funds would have been available on Wednesday, October 25, 2006, the same day that Plaintiff signed the Indemnification Agreement.

1    to release the suspended funds in Niroula's BOH Honolulu account, without any explanation as to

2    why she was taking that action.    The Indemnification Agreement confirmed her telephonic

3    withdrawal of her forgery claims.[9]  Plaintiff signed the Indemnification Agreement without first

4    checking with Citibank to see if the replacement check had cleared. SAC, ¶ 47.

5         Plaintiff contends that she withdrew her forgery claims because she did not understand the

6    Indemnification Agreement, which BOH failed to explain to her.  SAC, ¶ 46, Exh. 1 at pp. 20-21.

7    As this Court ruled, BOH had no duty to explain the Indemnification Agreement to Plaintiff.

8    Order at 9.

9         If Plaintiff signed the Agreement on the mistaken assumption that Niroula had repaid her,

10   there was no reason for her to make that mistake.    All she had to do before signing the

11   Indemnification Agreement was to call Citibank to determine if Niroula's replacement check had

12   cleared.   She did not.  Furthermore, Plaintiff admits that she did not "discover" or bother to find

13   out that Niroula's replacement check had been dishonored until Tuesday of the next week,

14   October 31, 2006 (six days later).  SAC, ¶47.   Such a unilateral mistake, based on Plaintiff's

15   failure to verify her incorrect assumption that she had been repaid, is not a basis to rescind the

16   fully executed Indemnification Agreement.

17   ## 2.    Plaintiff's Claims Attacking The Indemnification Agreement Are

18   ## Legally Inadequate

19        Civil Code § 1689(b) sets forth seven grounds for unilateral rescission.  It is clear from the

20   SAC that Plaintiff has attempted, albeit unsuccessfully, to plead Section 1689 grounds for

21   rescission, including each of the first six subsections:

22        (1)    If the *consent* of the rescinding party [Plaintiff]… was given by mistake, or
     obtained through duress, menace, fraud or undue influence, exercised by or with

23        the connivance of the party as to whom he rescinds [BOH], or of any party to the
     contract jointly interested with such party.

24
     (2)    If the *consideration* for the obligation of the rescinding party {Plaintiff}

25        fails, in whole or in part, through the fault of the party as to whom he rescinds

---

26   [9] Separately in the Indemnification Agreement, the bank requested indemnity for claims arising
     from plaintiff's direction to BOH to release the suspended funds, but not an indemnity for the

27   Bank's misconduct. Given plaintiff's about-face on her forgery charges, this was a reasonable
     request, if it turned out that Niroula had a legitimate claim to the funds. The indemnity did not

28   and does not protect BOH from its own willful misconduct, as Plaintiff argues.

[BOH].

(3)     If the **consideration** for the obligation of the rescinding party [Plaintiff] becomes entirely void from any cause.

(4)     If the **consideration** for the obligation of the rescinding party [Plaintiff] before it is rendered to him, fails in a material respect from any cause.

(5)     If the contract is **unlawful** for causes which do not appear in its terms and conditions, and the parties are not equally at fault.

(6)     If the **public interest** will be prejudiced by permitting the contract to stand.

(7)     Under circumstances provided for [in certain enumerated **statutes** which are entirely unrelated to this case]. Emphases supplied.

Plaintiff's rescission claims are largely founded upon purported mistakes of fact, which are defined in California Civil Code § 1577 as "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: (1) An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or (2) Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

Plaintiff did not plead that there was a single mistake of fact justifying rescission. Plaintiff had a legal duty to read the Indemnification Agreement before signing it. *Izzi v. Mesquite Country Club,* 186 Cal.App.3d 1309, 1318-1319 (1986) (a signatory to a contract cannot avoid the agreement by claiming that he failed to read it before signing); *Rowland v. Paine Webber,* 4 Cal.App.4th 279, 286 (1992); *Rosenthal v. Great Western Fin. Sec. Corp.* 14 Cal.4th 394, 425 (1996).

In *Brookwood v. Bank of America,* 45 Cal.App.4th 1667, 1673-1674 (1996), the court enforced an arbitration agreement notwithstanding the plaintiff's claimed mistaken belief as to the scope of the agreement. Similarly here, Plaintiff bore the risk of her mistaken beliefs that (1) the $890,000 check had cleared and (2) BOH would pay her if it did not. *M.F. Kemper Const. Co. v. City of L.A.,* 37 Cal.2d 696, 701 (1951).

California law allows rescission based on a unilateral mistake only in certain circumstances. In 2001, the California Supreme Court in *Donovan v. RRL Corporation,* 26

BUCHALTER NEMER
PROFESSIONAL CORPORATION
SAN FRANCISCO

Cal.4th 261, 281 (2001) ("*Donovan*") adopted the rescission rules set forth in Restatement Second of Contracts § 153, which provides:

> "Where a mistake of one party at the time of a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rules stated in sec. 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake."

*Donovan* involved a newspaper advertisement in which a car dealer, because of a typesetting error, offered a used car worth $37,000 for $25,000. Plaintiff accepted the offer and sued the dealer to enforce the contract. The *Donovan* Court held that rescission based upon mistake of fact is available where (1) the rescinding party made a mistake regarding a basic assumption upon which the rescinding party made the contract, (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the rescinding party, (3) *the rescinding party does not bear the risk of the mistake*, and (4) *the effect of the mistake is such that enforcement of the contract would be unconscionable*. *Id.* at 282. Here, Plaintiff cannot meet the last two requirements of the *Donovan* case, risk-bearing and unconscionability.

Plaintiff alleges that she made two mistakes -- believing that she had been repaid by the $890,000 check and assuming that she could reassert her withdrawn forgery claims if Niroula's $890,000 check did not clear. SAC, ¶¶ 39, 47, 132. As to repayment by Niroula, Plaintiff failed to call Citibank to confirm her mistaken belief that his overly large check had cleared. As to her right to pursue BOH after withdrawing her forgery claims, she failed to consult with anyone, or even to ask the bank, if she had that right.

As to risk-bearing, Restatement Second of Contracts § 154, which was also adopted by the California Supreme Court in *Donovan*, deals with which contracting party bears the risk of a unilateral mistake:

> A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the

1    court on the ground that it is reasonable in the circumstances to do
     so. *Donovan* at 283.

2

3    One could certainly argue that the language in the Indemnification Agreement that "For

4    reasons known best to myself [I, Megumi Hisamatsu, wish to withdraw my forgery dispute]" is a

5    statement satisfying Section 154(a) that Plaintiff assumed the risk of her actions.

6    As to Section 154(b), Plaintiff certainly knew that she had limited knowledge, because she

7    had not called Citibank to verify that the $890,000 check had cleared. She also knew that she had

8    not consulted Mr. Brittain or anyone else about the meaning of the Agreement, but she treated her

9    limited knowledge as sufficient. Certainly BOH should not bear the risk of her mistakes.

10   Under Section 154(c), the Court should allocate the risk to Plaintiff, because doing so is

11   reasonable under the circumstances. Unlike the typesetting error in *Donovan*, Plaintiff bore the

12   risk of her mistaken beliefs that Niroula had repaid her and, if his check did not clear, that BOH

13   would pay on her withdrawn forgery claims.

14   As to unconscionability, the *Donovan* Court held:

15       An unconscionable contract ordinarily involves both a procedural
         and a substantive element: (1) oppression or surprise due to unequal
16       bargaining power, and (2) overly harsh or one-side results. [citation
         omitted] ... In ascertaining whether rescission is warranted for a
17       unilateral mistake of fact, substantive unconscionability often will
         constitute the determinative factor, because the oppression and
18       surprise ordinarily results from the mistake – not from inequality in
         bargaining power. Accordingly, even though [rescinding party, the
19       car dealer] is not the weaker party to the contract and its mistake
         did not result from unequal bargaining power, [rescinding party]
20       was surprised by the mistake, and in these circumstances overly
         harsh or one-sided results are sufficient to establish
21       unconscionability entitling [rescinding party] to rescission.
         *Donovan*, 26 Cal.4th at 292.

22

23   Here, the Indemnification Agreement is not procedurally unconscionable. The forgery

24   claims pursuant to which the funds were suspended was Plaintiff's to release. BOH responded

25   that it would do so on condition that Plaintiff confirm her withdrawal of her forgery claims in

26   writing. Plaintiff's only real surprise (albeit one caused entirely by her failure to check with

27   Citibank) was that Niroula's check bounced. But Plaintiff and plaintiff alone had full control

28   over when and if she signed the Indemnification Agreement. She had the choice to verify

1  whether good funds were (or were not) on deposit in her Citibank account. She, not BOH, bears

2  the risk of her choice to sign the Agreement before verifying receipt of good funds from Niroula.

3          The Indemnification Agreement is also not substantively unconscionable. Each party

4  obtained a benefit from the Agreement. Plaintiff was given access to her funds, frozen in

5  Niroula's account, so that she could give them to Niroula. BOH received a withdrawal of

6  Plaintiff's forgery claims. That is not a one-sided result, but for the fact that Plaintiff failed first

7  to determine that Niroula's replacement check was no good. Had she been correct in her

8  mistaken assumption, she would have been paid $890,000 for the temporary loss of access to

9  $508,000. That was clearly Plaintiff's bargain to make.

10         The consideration exchanged by the parties for the Indemnification Agreement was

11  (1) Plaintiff withdrew her forgery claims against BOH, and (2) BOH released the frozen funds.

12  Plaintiff does not offer to restore the consideration with which BOH parted, which is a

13  requirement of rescission. Civil Code § 1691.

14         Furthermore, Plaintiff is not offering, nor can she offer, to put BOH back in the position it

15  had in October 2006. BOH was substantially prejudiced by Plaintiff's mistaken and foolish

16  assumption that Niroula had repaid her in full, as a result of which she gave him access to the

17  $257,000 in frozen funds and another $41,000 to boot. Indeed, on these facts, it would be

18  unconscionable now to rescind the Indemnification Agreement, which would lead to a one-sided

19  result in which BOH parted with all of its consideration and Plaintiff is unjustly enriched by

20  keeping hers. Plaintiff cannot ask the Court to put her in a pre-Indemnification Agreement

21  position, without offering to put BOH in that same position, which is no longer available. Niroula

22  and the funds are gone, and the risk of that loss must fall on Plaintiff.

23                    **3.    Rescission Claims (Counts 9-19)**

24                    **a.    Undue Influence (Count 9)**

25         Plaintiff attempts to assert a rescission claim based on Civil Code §1689(b)(1) by alleging

26  that that she mistakenly executed the Indemnification Agreement based on alleged duress or

27  undue influence *by Niroula*. This claim fails because there is no evidence that BOH was aware

28  of Niroula's actions or that BOH was working in concert with Niroula.

1     The factual underpinnings of her claim are that BOH took "an unfair advantage of

2 [Plaintiff's] weakness of mind at the time she was being victimized by a professional criminal"

3 (SAC, ¶ 98), that "BOH took a grossly oppressive and unfair advantage of Plaintiff's necessities

4 and distress" (*Id.*), that there was "extreme emphasis on terrible consequences for delay by both

5 the third-party and the bank" (SAC, ¶ 99), that only Niroula was present advising Plaintiff,

6 because Plaintiff "had no time to retain competent, trusted advisors" (*id.*), and that Plaintiff gave

7 BOH telephonic notice to rescind the Indemnification Agreement within 14 days after signing it

8 (SAC, ¶ 100). Whether those contentions are considered separately or in combination, they do

9 not support a rescission claim based upon undue influence by BOH.

10     This Court has already ruled that BOH was not a fiduciary to Plaintiff and owed her no

11 special duties, other than the contractual duties a bank owes its depositor. Order at 9 and *passim*.

12 A depository bank has no duty to protect its depositor when she chooses on her own, without any

13 coercion or knowledge by the bank, to fly to San Francisco to meet with a confidence man whom

14 she has just sworn under oath is a forger, a liar, and a thief.

15     Plaintiff claims that there was "extreme emphasis on terrible consequences for delay,"

16 which as to Niroula apparently relates to his fabricated story about his sister being kidnapped for

17 ransom and the kidnappers' alleged threats on Plaintiff's life. See, SAC, ¶ 41.[10]  Plaintiff also

18 alleges that BOH made some emphasis on "terrible consequences for delay," but her pleading

19 does not inform BOH or the Court what BOH did that pressured her to act without getting

20 adequate legal advice.

21     According to the SAC, BOH simply informed Plaintiff that it would not release the frozen

22 funds to Niroula without a signed Indemnification Agreement. SAC, ¶ 45. The rush to avoid

23 terrible consequences was not from BOH, but apparently in Plaintiff's mind, planted there by

24 Niroula, whom she had no business trusting. Plaintiff does not (and cannot) allege that BOH

25 knew Niroula was lying to her about secret plots by foreign agents.

26

27 [10] Notably, Niroula allegedly told Plaintiff this kidnapping story on the same day another of his representations (that he would put Plaintiff in touch with an immigration attorney) fell through.

28 SAC, ¶ 41. At some point, with lie upon lie upon lie from Niroula, Plaintiff, an adult, presumably should have realized that she was being had, not once but over and over again.

1    Plaintiff complains that no one was advising her except Niroula, because she had no time

2    to retain a competent advisor. SAC, ¶ 99. But we know, because she pleads this fact (SAC,

3    ¶ 44), that her Honolulu "friend" was available to her, because she routed the Indemnification

4    Agreement through him.[11] SAC, ¶ 44. Even if he were not competent to represent Plaintiff, as

5    she claims, presumably he could have recommended someone else to give her advice. Or, she

6    could have gone to any of a dozen legal referral services in San Francisco and asked for help.

7    The fact that Plaintiff chose to rely on Niroula, a purported liar and a thief, and seek no other

8    counsel, does not establish any undue influence by BOH.

9    Finally, Plaintiff wants restitution, but she overlooks that she cannot give BOH back what

10   it lost, both the frozen funds in Niroula's account and the opportunity to go after a thief within

11   days after he stole $508,000. Plaintiff forever prejudiced BOH when she withdrew her claims in

12   a binding, written agreement, which she would now like to rescind, but which she has no viable

13   legal basis for avoiding. Giving telephonic notice two weeks or written notice one year after the

14   money is gone does not undo that prejudice, and it will not resuscitate her rescission claims.

15   According to Plaintiff, she entered into the Indemnification Agreement on October 25,

16   2006 (see, SAC, ¶ 45 and Exhibit "B" to the SAC), apparently believing that Niroula had repaid

17   her $890,000 with his replacement check. After Plaintiff discovered on October 31 that Niroula's

18   replacement check did not clear, she alleges that she informed BOH in mid-November 2006 that

19   she wanted to be paid on her withdrawn forgery claims. See, SAC, ¶¶ 48 and 100. Her attempt

20   unilaterally to rescind the Indemnification Agreement has no legal effect, and a telephone call

21   placed two weeks after the agreement was fully executed by performance on both sides cannot

22   revive her withdrawn forgery claims.

23   Plaintiff cannot pick and choose which parts of the Indemnification Agreement to rescind

24   and which to affirm. She must rescind the entire Agreement, meaning she must put BOH back in

25   the pre-contract position which it enjoyed. *Simmons v. California Institute of Technology*, 34

26   Cal.2d 264, 275 (1949) ("The theory underlying such a rule ins that retention of only the benefits

27

28   [11] Attorney Steven Brittain, who came with her when she signed the forgery affidavits, but whom she now claims did not represent her in this matter.

ṢUCHALTER NEMER
PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1934353v6                                    17

of the transaction amounts to unjust enrichment and binds the parties to a contract which they did not contemplate.")  *See, also, Howell v. Courtesy Chevrolet*, 16 Cal.App.3d 391, 404 (1971); *IMO Development Corp. v. Dow Corning Corp.*, 135 Cal.App.3d 451, 458 (1982).

Plaintiff's belated call does not resuscitate her precluded forgery claims.    Once withdrawn, those claims do not exist, and Plaintiff cannot revive them by changing her mind to BOH's prejudice.

### b.    Improper Conduct Of Third Party (Count 10)

Asserting a second Civil Code § 1689(b)(1) claim (titled "Improper Conduct of Third Party"), Plaintiff alleges that BOH "knew, or had reason to know, that Plaintiff's consent and her signature on BOH's form indemnity agreement was induced or caused by the duress, fraud, and criminal conduct, of said third party Mr. Niroula, as well as by BOH" (SAC, ¶ 105), that "BOH connived with Mr. Niroula" (SAC, ¶ 106), that Plaintiff would not have signed the Indemnification Agreement "without duress, menace, fraud, undue influence, or mistake" (SAC, ¶ 108), that "BOH was aware of Mr. Niroula's connivance" (SAC, ¶ 109), and that "BOH was aware of the effects of its misconduct on Plaintiff, which forced her to consent to the Indemnification Agreement" (SAC. ¶ 110).

All of these claims fail, however, because they are based on conclusions without any factual support.  Just as Plaintiff previously failed to allege facts to support her FAC conspiracy claim (see, Order at 12-13), so again here she fails to support her rescission claim with facts to substantiate the conclusory allegation that BOH "knew or should have known" that Plaintiff was signing the Indemnification Agreement under duress.

After filing a forgery claim under oath accusing Niroula of being a forger and a thief, Plaintiff telephoned BOH recanting her claim and asking that the frozen funds be released to Niroula.  Her request to release funds could have been based upon (1) Niroula's reimbursing Plaintiff, as she apparently thought he had, (2) on a patched up relationship, or (3) for any of a dozen other legitimate reasons into which BOH had no duty to inquire (and some customers would argue that the bank has no right to inquire into their private business dealings).

BOH did not owe Plaintiff a fiduciary duty to protect her interests above its own.  It owed

1    her a contractual duty to accept her request to release her funds. Without any factual showing by

2    Plaintiff of BOH complicity, the fact that she put herself in harm's way by flying to San

3    Francisco to meet with a crook and a confidence man is not a basis for rescission.

### c.    Mutual Mistake (Count 11)

5    This claim is based upon the same facts as set forth in Count 10 and should be dismissed

6    for the same reasons. See, SAC, ¶ 111, incorporating the charging allegations of Count 10. The

7    only mutual mistake of fact alleged is that BOH and Plaintiff both thought Niroula would repay

8    her. Plaintiff does not allege any factual basis for that allegation as to what BOH thought, and

9    she does not allege that Niroula told BOH he would voluntarily repay Plaintiff.

10    Plaintiff does not allege that BOH knew Niroula had tendered a replacement check to her

11    or any other factual basis upon which to discern that BOH made such a "mistake." Moreover,

12    Plaintiff's own alleged "mistake" is based solely on her failure on October 25 to call Citibank to

13    see if the replacement check had cleared. That is not a mistake, but assumption of the risk of loss.

14    "Generally, relief is refused for error in judgment." *M.F. Kemper Const. Co., supra,* 37 Cal.2d at

15    703.

16    In addition, rescission based on a ***mutual*** mistake is generally based on a mutual mistake

17    of ***law*** arising from ignorance as to legal rights or obligations, not a mistake of fact. *See e.g.,*

18    *Stafford v. California Canning Peach Growers,* 11 Cal.2d 212, 217 (1938) (mistaken belief as to

19    the legal effect of a contract); *Harris v. Rudin, Richman & Appel,* 95 Cal.App.4th 1332, 1337

20    (2001) (mistaken belief of status of law where recent statutory amendment destroyed plaintiff's

21    claims). Even if Plaintiff pleaded this claim as a mutual mistake of law, which she did not, she

22    makes no factual allegations that BOH made any mistake of law. Plaintiff's mistake of ***fact*** does

23    not justify rescinding the Indemnification Agreement.

### d.    Material Failure of Consideration (Count 12)

25    Apparently attempting to fall within Civil Code § 1689(b)(2) or (b)(4) , Plaintiff alleges

26    that, because Niroula failed to repay her, the consideration for the Indemnification Agreement

27    failed. SAC, ¶ 115. She simply ignores that Niroula's repayment to her was not consideration for

28    the bank's agreement to release funds. As stated in the Agreement, the consideration was

1   Plaintiff's withdrawing her forgery claims in exchange for BOH's release of the suspended funds.

2   BOH fully performed its end of the bargain. Failure of consideration must be consideration from

3   BOH, not from Niroula.

4        If a party receives the consideration that she bargained for, that it proves worthless

5   because of an unexpected event (such as Niroula's $890,000 check not clearing) is not a failure of

6   consideration which will support rescission. *Fox v. Ehrmantraut*, 28 Cal.3d 127, 137 (1980).

7   This is especially true here, because Plaintiff fails to allege that BOH even knew about the

8   replacement check. Also Niroula, the alleged promissor, was not even a party to the

9   Indemnification Agreement. This claim must fail and should be dismissed without leave to

10   amend.

11             **e.**     **Failure of Consideration By Fault Of BOH (Count 13)**

12        This count is appears to be based on Section 1689(b)(3), but is actually founded on

13   Plaintiff's misreading of the Indemnification Agreement that BOH allegedly claimed the funds

14   "belonged to Niroula." BOH never made such a claim, and this Count should be dismissed

15   without leave.

16             **f.**     **Unlawful Agreement (Count 14)**

17        Plaintiff claims that the Indemnification Agreement violates the Civil Code § 1668

18   prohibition against relieving oneself of responsibility for fraud or willful injury to another.

19   Presumably Plaintiff's Count 14 rescission claim is based on Civil Code § 1689(b)(5).

20        Focusing only on the indemnity provision of the Agreement and previously relying on

21   *Queen Villas Homeowners Association v. TCB Property Management*, 149 Cal.App.4th, 1 (2007),

22   Plaintiff argued in her Opposition to the bank's motion to dismiss the FAC that an indemnity

23   agreement between two parties cannot exculpate one of those parties for its own wrongdoing.

24   Plaintiff misunderstood and still misunderstands BOH's position. BOH relies on the

25   Indemnification Agreement to establish (1) withdrawal of Plaintiff's forgery claims and

26   (2) Plaintiff's ratification of Niroula's signatures on the allegedly forged checks. BOH is not

27   asserting an indemnity claim at this time.

28        As to ratification, a forged signature does not bind an account holder, because it is not

1    authorized by her.  Commercial Code § 3-403(a).  However, a check signed by someone other

2    than the account holder is *not* a forgery if the account holder authorizes a third party to sign for

3    her.  Commercial Code §§ 3-401(a) and 1-201(41).  By withdrawing her forgery claims as to all

4    $508,000 in allegedly forged checks, Plaintiff advised BOH that, either that *she* signed the three

5    checks, or that an ***authorized representative*** did so.    Commercial Code § 3-403(a) ("An

6    unauthorized signature may be ratified for all purposes of this division.").  As does California

7    law, Hawaii law recognizes that an account holder can ratify an otherwise unauthorized signature

8    and waive her legal claim involving an allegedly forged check.  Hawaii Revised Statutes § 490:3-

9    403(a).

10        The Indemnification Agreement was such an authorized ratification.  A collateral result of

11   the Agreement is to preclude her forgery claims, but that is not the kind of exculpation that Civil

12   Code § 1668 forbids, and Plaintiff cites no authority to the contrary.

13                          **g.    Void Consideration (Count 15)**

14        This count is based on the same Civil Code § 1668 argument, and fails for the same

15   reasons set forth above.

16                 **h.    Undue Influence Due To Known Vulnerability (Count 16)**

17        Similar to her Count 9 claim and also based upon Civil Code § 1689(b)(1), Plaintiff

18   alleges that she "suffered from lack of full vigor due to physical exhaustion and emotional

19   anguish as a crime victim," and had "lessened capacity to make a free contract with BOH."  SAC,

20   ¶ 125.  There are no facts pleaded that BOH knew or had reason to know that Plaintiff, an adult,

21   could not exercise her free will to recant and withdraw her forgery claims, nor does she allege

22   facts supporting alleged "connivance" with Niroula.

23        As previously discussed, BOH had no duty to explain the Indemnification Agreement to

24   Plaintiff, to assist her in finding counsel to interpret it, to tell her that she need not conduct her

25   own investigation, or provide her with any other advice about how to act.  Her decision to

26   withdraw her forgery claims in the mistaken belief that Niroula's $890,000 check would clear,

27   about which she does not plead that BOH had any knowledge, and which she could have verified

28   with a one minute call to Citibank, is not a basis to rescind her Agreement with BOH.

### i.    Unilateral Mistake, Fault of BOH (Count 17)

Attempting to state a unilateral mistake of fact claim under Civil Code § 1577, Plaintiff parrots the statute to allege that she was "unconsciously ignorant or forgetful of the fact that the object of the Agreement was to exempt BOH of all liability to Plaintiff and that Niroula did not intend to reimburse her." SAC, ¶ 128. Plaintiff blames the mistake she made on "the fault of BOH," which "knew, or had reason to know," about her "unconscious ignorance" when she signed the Indemnification Agreement. SAC, ¶ 129. Plaintiff pleads no facts to establish that BOH knew she was "unconsciously ignorant or forgetful" of her legal rights, and it had no duty to give her advice about her legal rights. This Count should be dismissed without leave to amend.

### j.    Unilateral Mistake (Count 18) [12]

Plaintiff alleges that she made two unilateral mistakes when she signed the Indemnification Agreement that (1) BOH intended to pay her claims and (2) Niroula intended to reimburse her. SAC, ¶ 132. She contends that she does not bear the risk of her mistakes, because she did not neglect a legal duty and she erred in good faith. SAC, ¶ 134. Finally, she claims that the bargaining power between BOH and Plaintiff was unequal and she was surprised by her unilateral mistakes. SAC, ¶ 139.

The *Donovan* Court addressed this issue and concluded that the Restatement Second of Contracts § 157 risk shifting analysis should apply to determine whether a party bears the risk of her own mistake. *Donovan, supra,* 26 Cal.4th at 283 *et seq.* There, quoting from Comment a to Section 157, the California Supreme Court stated:

> "[T]he rule is stated in terms of good faith and fair dealing ... . [A] failure to act in good faith and in accordance with reasonable standards of fair dealing during pre-contractual negotiations does not amount to a breach. Nevertheless, under the rule stated in this Section [157], the failure bars a mistaken party from relief [rescission] based on a mistake that otherwise would not have been made. During the negotiation stage each party is held to a degree of responsibility appropriate to the justifiable expectations of the other. The terms 'good faith' and 'fair dealing' are used, in this context, in much the same sense as in ... Uniform Commercial Code § 1-203." Section 1201, subdivision (19), of the California

---

[12] Because Count 17 is titled "Unilateral Mistake – Fault of BOH," the bank presumes that Count 18 titled "Unilateral Mistake" is based upon a unilateral mistake which Plaintiff admits is solely her fault.

UCHALTER NEMER
PROFESSIONAL CORPORATION
SAN FRANCISCO

**BANK OF HAWAII'S MPAS ON ITS MOT. TO DISMISS SAC – CASE NO. 3:07-CV-04371-JSW**

Uniform Commercial Code defines "good faith," as used in section 1203 of that code, as "honesty in fact in the conduct or transaction concerned." *Id.*

Had Plaintiff disclosed either of her mistaken beliefs to BOH before she entered into the Agreement, as she had an obligation in good faith to do if she expected their non-occurrence to excuse her from her contract duties, BOH could have responded. First, it could have encouraged her to call Citibank to verify that the replacement check had cleared. Second, it could have informed her that she could not withdraw her forgery claims and later seek to reassert them to BOH's prejudice.

By not disclosing her secret but mistaken beliefs, Plaintiff did not act in good faith when she entered into the Indemnification Agreement. She had the undisclosed (and unreasonable) belief that either Niroula had already repaid her or, if his check did not clear, that BOH would repay her, regardless what harm Plaintiff might do in the meantime by trusting a crook and releasing her funds to him.

If the Indemnification Agreement is rescinded, Plaintiff will deprive BOH of the benefit of its bargain (her recanting and withdrawing her forgery claims), which is the classic definition of a breach of the covenant of good faith and fair dealing. In other words, where, as here, Plaintiff had the opportunity to check on the status of funds in her Citibank account before signing the Indemnification Agreement and she chose not to, she gave up the opportunity to "hedge her bets." [13] Having given up that opportunity, she cannot be heard to complain that the Agreement should now be rescinded.[14]

### k.    Fraud In The Inducement (Count 19)

Based on Civil Code § 1689(b)(1), this claim is founded on a double misreading of the Indemnification Agreement. Plaintiff contends that BOH misrepresented that (1) the frozen funds were Niroula's (discussed above) and (2) that the Agreement merely sought indemnity and did not have any other purpose (also discussed above). As this Court previously ruled, BOH had no

---

[13] That Niroula's check might not clear was certainly foreseeable by Plaintiff. *Bigbee v. Pacific Tel. & Tel. Co.*, 34 Cal.3d 49, 57-58 (1983) ("it is settled that what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence").

[14] A party breaches the covenant when she attempts to "recapture opportunities foregone" when the contract was entered into. *Badie v. Bank of America*, 67 Cal.App.4th 779, 796 (1998).

1   duty to explain the legal ramifications of the Indemnification Agreement to Plaintiff, much less to

2   explain its syntax and/or plain contractual terms such as "I...withdraw my forgery dispute."

3   Order at 9 and *passim*.  The Indemnification Agreement does not misrepresent any fact, and

4   Count 19 should be dismissed without leave.

5                    **I.      Tort In Essence (Count 20)**

6          In the Order, the Court questioned how Plaintiff could rely on California statutes to

7   establish BOH's negligence:

8              The claim for tort in essence is a variation on Ms. Hisamatsu's
               theme that BOH acted negligently with respect to its handling of the
9              allegedly forged checks and thus depends upon proving up the
               forgeries against BOH.  Given that those claims arise out of her
10             depository relationship with BOH, it is unclear to the Court on what
               basis Ms. Hisamatsu contends that California statutes can constitute
11             evidence of BOH's alleged negligence.  Order at fn. 6.

12         If the Court determines that Hawaii law applies to the Indemnification Agreement, it is

13  equally unclear how California statutes can dictate a standard of care for BOH's conduct.  All of

14  the facts alleged in the SAC indicate that Plaintiff's funds in Niroula's Hawaii account were

15  frozen by a forgery claim she made in Hawaii pursuant to forgery affidavits she executed in

16  Hawaii, that those funds were released in Hawaii from a deposit account maintained in Hawaii,

17  and that both Plaintiff's and Niroula's Hawaii accounts are governed by account agreements

18  which bind the depositors to Hawaii law in the handling of those accounts.

19         The only California act which Plaintiff pleads is based upon happenstance – that Plaintiff

20  happened to meet Niroula in San Francisco, rather than Tokyo, New York, Chicago, Paris, Rome,

21  or any other large city in the world.  Surely, the laws of those other states and countries would not

22  control this Hawaii transaction, especially when the three parties involved -- Plaintiff, Niroula,

23  and BOH -- all agreed that Hawaii law would control transactions involving Plaintiff's and

24  Niroula's deposit accounts.

25         In its present iteration, Plaintiff's tort in essence claim asserts that the Indemnification

26  Agreement is void because it seeks to exculpate BOH from its own misconduct.  SAC, ¶¶ 153,

27  154.  *See*, discussion above establishing that Plaintiff's Civil Code § 1668 exculpation of liability

28  claim is not viable.  Plaintiff also challenges the Indemnification Agreement as violating the Civil

1    Code § 2773 prohibition against indemnifying an act known to be unlawful, but that misses the

2    point, because BOH is not seeking indemnity, and its actions were not unlawful. Rather, the bank

3    relies on the Indemnification Agreement as either a ratification by Plaintiff of the allegedly forged

4    signatures or on the basis that Plaintiff recanted and withdrew her forgery claims, precluding her

5    from pursuing them.

6        Plaintiff also makes a number of allegations in her tort in essence claim, which are

7    entirely without factual support. For example, without any factual predicate or even a claim that

8    BOH knew about the $890,000 replacement check, which is nowhere alleged in the SAC,

9    Plaintiff claims that BOH aided and abetted "the criminal deposit of a check for $890,000 into

10   Plaintiff's Citibank account." SAC, ¶ 155. No fact establishes that BOH "aided and abetted" that

11   deposit.

12       Plaintiff also contends, without factual support, that BOH "knew" that Niroula had

13   threatened Plaintiff with bodily harm from Nepalese nationals if Plaintiff failed to give him

14   (1) $41,000, (2) remove the freeze on funds in his account, (3) keep her cell phone turned off,

15   (4) stay in her hotel or drive around with Niroula, and (5) return to Japan immediately after

16   releasing the hold on his account. SAC, ¶ 156. Plaintiff fails to allege facts to show how BOH

17   "knew" these things.

18       In paragraph 157, Plaintiff throws in the kitchen sink in an attempt to allege a statutory

19   violation. She alleges in conclusory fashion violations of Civil Code § 1572 (actual fraud), 18

20   U.S.C. § 1343 (mail fraud), and 18 U.S.C. § 371 (criminal conspiracy), solely based upon the

21   language of the Indemnification Agreement and the alleged "pressure" to sign it.

22       As to the language of the Agreement, there is nothing fraudulent about its terms. As to

23   alleged pressure to sign it, Plaintiff has not alleged what BOH did to pressure her, other than

24   requiring her to withdraw her forgery claims before it would release the suspended funds. The

25   pressure apparently came from Plaintiff's erroneous belief that Niroula's sister and Plaintiff's

26   lives were in danger, solely because Niroula, a liar and a thief, said so. BOH did not commit mail

27   fraud or engage in a criminal conspiracy, and Plaintiff's citation to those statutes does not meet

28   her burden of pleading facts to establish her claim.

1    Plaintiff's tort in essence claim, which is supposed to establish that BOH violated a duty

2    of care established by statute, fails and should be dismissed without leave to amend.

3    **m.    Declaratory Relief (Count 24)**

4    Plaintiff's Declaratory Judgment claim is a combination of various theories set forth in

5    other claims, including that the Indemnification Agreement (1) violates Civil Code § 1668 (no

6    exempting liability for willful misconduct), (2) is void under Civil Code § 2773 (no indemnity of

7    unlawful act), (3) is a ratification of a known crime, and (4) is a prohibited release, given as an

8    indemnity between two parties. SAC, ¶ 190.A-D.  In the Order, this Court instructed Plaintiff to

9    "clearly set forth the factual and legal bases supporting her claim for declaratory relief that the

10    Indemnification Agreement cannot be enforced."  Order at 14:4-6.  As her other claims on these

11    same grounds must fail, so must this claim.

12    **D.    B&P Code § 17200 (Count 8) and Hawaii Unfair Competition (Count 26)**

13    Plaintiff's California 17200 claim must be dismissed without leave, because California

14    law does not apply to this claim.[15]   Plaintiff's Hawaii Unfair Competition claim must be

15    dismissed without leave, because she is not a consumer who has standing to bring it, and BOH's

16    conduct was not unfair.

17    **1.    Section 17200 Does Not Apply To Hawaii Transactions (Count 8)**

18    As set forth above, both Plaintiff's and Niroula's deposit account agreements provide that

19    "[y]our account will be governed by this agreement and the laws of the jurisdiction in which your

20    account is located."  Order at 6:20-21.  There is no dispute that both deposit accounts are located

21    in Honolulu.  In addition, the laws of California and Hawaii provide that liability for a forged

22    check is governed by the law of the place where the bank is located, which is Hawaii.  See, Order

23    at 6:22-26.  The only act which occurred in California was Plaintiff's signing the Indemnification

24    Agreement, but performance of that agreement was in Hawaii, and performance trumps the place

25    _____

26    [15] Although the Court previously concluded that the Indemnification Agreement is governed by California law (Order at 7:3-5), that decision was based on the assumption that the frozen funds were released to Plaintiff *in San Francisco* (*id.* at 5), which was not the case.  See, Choice of

27    Law discussion, *infra*.  In addition, the Court expressly ruled that its Order "is without prejudice to BOH renewing its argument regarding the extraterritorial application of Section 17200."  Order

28    at 11:15-17.

1    of execution under Civil Code § 1646.  Therefore, there is no basis upon which to apply a

2    California statute such as Business & Professions Code §§ 17200 *et seq.* to an Agreement to

3    withdraw Hawaii forgery claims, solely because Plaintiff happened to spend a few days here on

4    her way back to Japan.

5        Business & Profession Code § 17200 does not apply for another reason – it may not be

6    used to defeat a viable legal defense, such as the Commercial Code § 4-406(f) preclusion defense

7    that BOH asserts here.  "If the Legislature has permitted certain conduct or considered a situation

8    and concluded no action should lie, courts may not override that determination. When specific

9    legislation provides a 'safe harbor,' [such as Section 4-406(f)], plaintiffs may not use the general

10   unfair competition law to assault that harbor."  *Cel-Tech Communications. Inc. v. Los Angeles*

11   *Cellular Telephone Co.*, 20 Cal.4th 163, 182 (1999).

12       In its Order, the Court asked Plaintiff to re-plead with specificity her claims that BOH

13   worked in concert with Niroula to defraud or injure Plaintiff while she was in California (Order at

14   11:2-4), her claims attacking the validity of the Indemnification Agreement (Order at 11:7-10),

15   and her 17200 claims (Order at 11:12-15).  As discussed above, Plaintiff has not alleged any

16   viable claim to avoid the Indemnification Agreement, and she has not alleged any new facts

17   showing concerted action between BOH and Niroula with regard to the Indemnification

18   Agreement.

19       In support of her Section 17200 claim, Plaintiff contends that BOH "knew that Plaintiff

20   was in San Francisco." SAC, ¶ 82.  She identifies no facts as to how BOH knew that, and she

21   admits that BOH sent the Indemnification Agreement to her friend, Steve Brittain, in Honolulu.

22   SAC, ¶ 44.  She also alleges that, with BOH's "assistance, encouragement and delay," "Plaintiff

23   was under the control of a criminal." *Id.*  With regard to the applicability of 17200, Plaintiff

24   alleges:

25           The practice of using the form was unfair in that BOH refused to
             pay a valid unauthorized transaction claim; and instead maneuvered
26           Plaintiff into a sham investigation which included direct contact
             with a known forger and thief.  BOH knew at the time it requested
27           this release from future tortious acts that Plaintiff had a special
             vulnerability.  SAC, ¶ 89.

28

1    But, Plaintiff offers no facts, anywhere in the SAC, to establish that BOH "maneuvered

2    Plaintiff into a sham investigation which included direct contact with a known forger and thief,"

3    and no facts to establish that BOH conducted a "sham investigation." Rather, Plaintiff admits that

4    the bank required her to submit sworn forgery affidavits and that it froze 100% of the funds

5    remaining in Niroula's account in response. Within days of that occurring, Plaintiff rushed to San

6    Francisco on her own, apparently thrilled at the idea that Niroula would pay her even more than

7    he had taken. Not one *fact* is alleged that BOH knew that she was engaging in self-help.

8        Plaintiff alleges no facts to establish that "BOH knew that Plaintiff had a special

9    vulnerability." SAC, ¶ 89. Of course, BOH was aware that Plaintiff was concerned over her

10    claim that Niroula had stolen $508,000 from her, but BOH accepted her sworn forgery affidavits

11    and froze funds in Niroula's account. Any competent counsel would have informed Plaintiff that

12    BOH was obligated to reimburse her in full if she did nothing more than establish that the funds

13    were stolen, not freely given to Niroula, but she failed to seek any such advice. There are no facts

14    to establish that BOH had any idea the Niroula convinced Plaintiff that his sister and Plaintiff

15    were in jeopardy from alleged Nepalese kidnappers.

16        Plaintiff alleges that the Indemnification Agreement violates Section 17200, because

17    (1) BOH "interposes it as a release," (2) its purpose was to exempt BOH from its own willful

18    misconduct as prohibited by Civil Code § 1668, (3) it purports to exempt BOH from Commercial

19    Code violations, (4) it purports to exempt BOH from penal laws, and (5) it misrepresents that the

20    frozen funds "belonged to Niroula. SAC, ¶ 95A-D. As to all of these allegations, Plaintiff

21    alleges that there is "strong evidence" that BOH and Niroula acted together with a common goal

22    of stealing Plaintiff's funds, but she never identifies that "strong evidence."

23        As discussed above, BOH contends that the Agreement and Plaintiff's delay create a

24    preclusion defense and a ratification defense, not a release of liability nor a release of BOH's

25    willful misconduct. BOH did not misrepresent that the frozen funds "belonged to Niroula."

26    Plaintiff's 17200 claim should be dismissed.

27

28

1    **2.    Plaintiff Does Not Have Standing To Pursue A Hawaii Unfair**

2    **Competition Claim, And BOH's Conduct Was Not Unfair (Count 26)**

3    Plaintiff's UCL claim, if arising under Hawaii law, likewise fails for a number of reasons,

4    among which is that Plaintiff lacks standing to assert such a claim. Under Hawaii law, a business

5    practice is prohibited if it is unfair or deceptive. HRS § 480-2(a). However, only consumers, the

6    attorney general, or the director of the office of the consumer protection may bring an action

7    based on the Hawaii statutory scheme. *Id*. at § 480-2(d).

8    In this case, Plaintiff does not meet the statutory definition of a "consumer," so she has no

9    standing to assert a Hawaii UCL claim. While she is a "natural person," she did not purchase

10   goods or services for personal, family or household services, or for personal investment. HRS

11   § 480-1. She deposited funds into a bank account to obtain a visa and she later agreed to release

12   them to a third party, Niroula. Neither is a consumer transaction covered by the statute.

13   Based on Niroula's encouragement, Plaintiff apparently believed that depositing funds in

14   a U.S. bank account would allow her to obtain an immigration visa, but that does not make her a

15   consumer for purposes of the Hawaii UCL. Indeed, even if one were to assume (and BOH

16   submits one could not) that making a deposit to obtain a visa is a "personal investment," Plaintiff

17   does not allege (nor can she) that she paid BOH to "provide goods or render services" to help

18   her obtain a visa, a task which she alleges Niroula undertook. See, SAC, ¶¶ 15, 16, and 47.

19   Because Plaintiff was not a consumer, she cannot assert a Hawaii unfair competition

20   claim. *See e.g., Hough v. Pacific Ins. Co*, 83 Haw. 457 (1996) (injured worker could not bring

21   unfair competition claim against workers' compensation insurer because he did not purchase

22   insurance himself, but was beneficiary of insurance purchased by his employer); *Hunt v. First Ins.*

23   *Co. of Hawaii, Ltd*., 82 Haw. 363 (1996) (customer of grocery store injured in a slip and fall may

24   not bring an unfair practices claim against store's insurance company, because customer did not

25   purchase anything from insurance company and thus was not consumer within purview of the

26   unfair competition law).

27   Even if Plaintiff had standing to sue, and she does not, her Hawaii UCL claim fails as a

28   matter of substance. In order for a practice to be unfair, Hawaii courts utilize the same balancing

1    test used in FTC cases, factoring the injury suffered by the consumer, the consumer's interests,

2    the countervailing interests to the public and to competition, and taking into account whether the

3    injury suffered in the particular case was one that could reasonably have been avoided by the

4    consumer. *See Am. Fin. Serv. Asso. v. FTC*, 767 F.2d 957, 971 (D.C. Cir. 1985).

5         Here, the injury that Plaintiff suffered was of her own making. She withdrew her forgery

6    claims based on her subsequent, entirely unnecessary dealings with Niroula. By enacting the

7    Uniform Commercial Code § 4-406(f) preclusive safe harbor, Hawaii has already balanced the

8    countervailing interests, making it clear that a plaintiff cannot withdraw her claims and then

9    attempt to resuscitate them by claiming it would be "unfair" to enforce her withdrawal.

10        And, of course, Plaintiff could reasonably have avoided her losses on numerous occasions.

11   After completing the forgery affidavits, Plaintiff could have (1) refrained from further dealings

12   with Niroula, (2) rejected his wild new claims (about wire funds not being available, his sister

13   being kidnapped, Plaintiff being stalked by Nepalese kidnappers, and an immigration attorney

14   repeatedly being unavailable), (3) gotten competent legal advice, and/or (4) waited until Niroula's

15   check cleared before she withdrew her forgery claims.

16        Instead, Plaintiff decided to withdraw her forgery claims, assuming that doing so would

17   have no affect on her right to force BOH to reimburse her. Plaintiff's belief in that regard is not

18   credible or justiciable.

19        Neither can Plaintiff prevail on her Hawaii deceptive practices claim. In opposition to the

20   bank's prior motion to dismiss the FAC, plaintiff relied upon *Hawaii Cmt'y Fed. Cred. Union v.

21   Keka*, 94 Haw. 213 (2000). To demonstrate a deceptive practice, *Keka* holds that a plaintiff must

22   prove that defendant's conduct caused her to do what she would not otherwise have done. *Id.* at

23   228. Plaintiff has not pleaded that here.

24        A deception practice may be accomplished by a material representation or omission, but

25   in either case, its tendency to mislead is judged by an objective standard for a reasonable

26   consumer. *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262 (2006). Plaintiff cannot meet

27   these standards, because her conduct was not objectively reasonable. Also, the omission cases on

28   which Plaintiff previously relied are factually inapposite, and this Court has already ruled that

1  BOH had no duty to advise Plaintiff as to her rights, so failure to speak is not a breach of duty.[16]

2  The Indemnity Agreement did not drive Plaintiff's conduct or decision making; it simply

3  facilitated Plaintiff's request to withdraw her forgery claims so that she could turn funds over to

4  Niroula. There is nothing deceptive about that.

5      **E.     Conspiracy (Count 21)**

6      The Court previously held that Plaintiff's allegations that BOH and Niroula "combined by

7  concerted action," "intentionally formed, planned, and operated the conspiracy," and "had a

8  common design," as well as allegations that BOH employees were friendly with Niroula and

9  "vouched" for him, and even the alleged Dods phone call, all were not enough to plead facts

10  supporting an agreement between BOH and Niroula to harm Plaintiff. Order at 12-13.

11      Plaintiff adds no new facts to establish that BOH agreed to participate with Niroula in an

12  alleged conspiracy to harm Plaintiff. Plaintiff alleges that: (1) Niroula conferred with Dods by

13  telephone (SAC, ¶ 159), (2) BOH "knew" that Niroula wanted its help to retain the stolen funds

14  (SAC, ¶ 162), (3) BOH "agreed and conspired" and "readily agreed to the crooked scheme … to

15  aid and abet the commission of bank fraud…to shield itself from the theft victim's claims" (SAC,

16  ¶ 163), (4) BOH "agreed and conspired" to release the funds to Niroula to get his assistance in

17  obtaining Plaintiff's signature on the Indemnification Agreement (SAC, ¶ 164), (5) BOH drafted

18  the Indemnification Agreement to represent that it was releasing Niroula's funds, not Plaintiff's,

19  which was a "crude" means employed in furtherance of the conspiracy (SAC, ¶ 165), and

20  (6) BOH "conspired to violate criminal laws," including money laundering (*id.*).

21      At best, Plaintiff pleads as a "fact" that BOH had a "motive" to conspire with Niroula to

22  obtain a release of Plaintiff's forgery claims. But having a motive to conspire does not plead

23  conspiracy if there is no agreement to conspire. Plaintiff pleads no facts that this alleged motive

24  became an agreement.

25      Taken together, all of Plaintiff's allegations do not meet her burden of pleading new facts

26  showing that Niroula and BOH agreed to harm Plaintiff. Indeed, the only new fact pleaded – that

27  BOH misrepresented in the Indemnity Agreement that "the funds belonged to Niroula" – is not a

28  ---

[16] *In re Int'l Harvester Co.*, WL 565290 (F.T.C. 1984).

1   new fact at all, but a misreading of the Agreement.

2          Plaintiff has simply massaged the facts from her FAC into a different format in the SAC.

3   She has repeated the Dods phone call, repeated conclusory "agreed and conspired" allegations,

4   alleged misrepresentation that the funds belonged to Niroula, and alleged "bank fraud," but she

5   has not pleaded any new facts that BOH made an agreement with Niroula to participate in an

6   alleged conspiracy.  Her conspiracy claim should be dismissed without leave to amend.

7          **F.      Fraud (Counts 22 and 27)**

8                  **1.      Fraudulent Inducement (Count 22)**

9          See discussion of Count 19 "Rescission – Fraud In The Inducement" claim, set forth

10  above.  The same factual allegations are set forth in Count 22, that (1) BOH misrepresented that

11  the funds "belonged to Niroula," and (2) that the Indemnification Agreement sought only

12  indemnity and not a release.  SAC, ¶ 168.  They fare no better as a stand alone fraud claim than

13  they do in support of a rescission claim.

14                 **2.      Promissory Fraud (Count 27)**

15         Plaintiff bases this claim on one allegation, that on October 3, 2006, BOH promised her it

16  would investigate her forgery claims, when it had already decided to deny them.  SAC, ¶¶ 202,

17  203.  Plaintiff pleads no facts whatsoever to establish BOH's secret intention not to perform its

18  promise to investigate, but she does admit that BOH partially performed its promise when it froze

19  funds in Niroula's account.[17]

20         "In a promissory fraud action, 'the essence of the fraud is the existence of an intent at the

21  time of the promise not to perform it.'  [citation omitted.]  'To maintain [the claim], one must

22  specifically allege and prove, among other things, that the promisor did not intend to perform at

23  the time he or she made the promise and that it was intended to deceive or induce the promisee to

24  do or not do a particular thing.'  [citation]  "The mere failure to perform a promise made in good

25  faith does not constitute fraud.'"  *Building Permit Consultants, Inc. v. Mazur*, 122 Cal. App. 4th

---

26  [17] As noted by the Court in the Order, "Mrs. Hisamatsu alleges that BOH froze Mr. Niroula's
27  accounts after Ms. Hisamatsu asserted that Mr. Niroula forged her signature of the temporary
    checks, which undermines her assertion" of a conspiracy to defraud her.  Order at 13:1-3.
28  Similarly, BOH's act of freezing Niroula's funds contradicts Plaintiff's claim that BOH intended
    to deny her forgery claims.

1    1400, 1414 (2004); emphasis added.

2        Here, Plaintiff's promissory fraud claim must fail, because she alleges that BOH

3    commenced and partly performed its obligations, facts which are fundamentally at odds with a

4    claim that the bank had no intention to perform.  As Plaintiff alleges, BOH provided forgery

5    claim forms for Plaintiff to fill out (SAC, ¶ 31), it took information from her about the forgery,

6    both over the phone and in person (SAC, ¶¶ 29, 31), it took information from Niroula (SAC, ¶34),

7    exchanged information with Plaintiff and Niroula in the course of its investigation to determine if

8    Plaintiff's claims were legitimate (SAC, ¶ 34), and it froze Niroula's accounts as part of that

9    investigation (SAC, 33).

10       All of those acts are consistent with and part performance of the bank's promise to

11   investigate Plaintiff's forgery claims, which was terminated only when Plaintiff withdrew her

12   claims in writing.  Plaintiff fails to plead any fact to establish the bank's intent not to investigate.

13   The sole basis for her allegation is her after-the-fact assumption that BOH "had already decided

14   to deny the claims" when it promised to investigate them, but that is contradicted by the

15   numerous facts Plaintiff pleads in the SAC that BOH did investigate her claims.

16       Note, Plaintiff cannot now convert her intentional promissory fraud Count into a negligent

17   "promissory fraud" claim to save it.  Case law precludes that.  *See*, *Tarmann v. State Farm Mut.*

18   *Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991) ("an action based on a false promise is simply a

19   type of intentional misrepresentation, i.e., actual fraud.  The specific intent requirement also

20   precludes pleading a false promise claim as a negligent misrepresentation.")

21       Promissory fraud also requires **reliance** upon the promise.  *Downey Venture v. Lmi Ins.*

22   *Co.*, 66 Cal. App. 4th 478, 510 (1998).  Plaintiff's SAC allegations demonstrate that she never

23   relied on the bank's promise to investigate, because she embarked on her own self-help

24   investigation, released the frozen funds to Niroula, and withdrew her forgery claims as to the

25   entire $508,000.  Whatever investigation the bank had pursued, which at best for Plaintiff would

26   have confirmed her claims of forgery and theft, Plaintiff admits by her conduct and in her SAC

27   allegations that she would nevertheless have relinquished the entire $508,000, plus another

28   $41,000, to Niroula.  Thus, her SAC allegations contradict reliance, which is another basis to

1  dismiss her promissory fraud claim.[18]

2  **G.    Negligence Claims (Counts 25, 28, 32, 33, 34 and 35)**

3  **1.    Wrongful Withholding Of Funds (Count 25)**

4  Plaintiff alleges that BOH owed her a duty of honesty in fact and good faith under

5  California and Hawaii law not to debit three checks on a forged drawer signature. SAC, ¶ 193.

6  As this Court held in the Order, this claim in precluded unless other claims avoid preclusion.

7  Order at 9 and *passim.*

8  **2.    Negligent Misrepresentation (Count 28)**

9  Plaintiff bases her negligent misrepresentation claim on the representations in Counts 19

10  (Rescission--Fraud In The Inducement), 22 (Fraud In The Inducement) and 26 (Hawaii Unfair

11  Practices). For the reasons set forth above and below, those claims are not viable and do not act

12  to bar enforcement of the Indemnification Agreement.

13  **3.    Gross Negligence (Count 32)**

14  Plaintiff argues that BOH failed to exercise "even scant care" in the handling of the

15  forgery transactions. SAC, ¶ 229. However, if her claims are precluded under Commercial Code

16  § 4-406(f), and Plaintiff offers no basis in this claim to avoid the Indemnification Agreement,

17  then this claim must be dismissed without leave to amend.

18  **4.    Negligence (Count 33)**

19  Plaintiff alleges that BOH failed to conform to legal standards to protect bank customers.

20  SAC, ¶¶ 231-232. However, Commercial Code § 4-406(f) applies to preclude forged check

21  claims "[w]ithout regard to the care or lack of care of either the customer or the bank." Bank

22  negligence will not overcome the Indemnification Agreement, meaning this claim will be

23  precluded as a matter of law.

24  **5.    Negligent Infliction of Emotional Distress (Count 34)**

25  Plaintiff alleges that "BOH schemed with a criminal who had stolen Plaintiff's identity

26  and her family savings," but she does not say what BOH did to "scheme" or "connive."

27
28  [18] There is very little Hawaii law on the subject, but it appears to be to the same effect. *See, Honolulu Fed. Sav. & Loan Ass'n v. Murphy,* 7 Haw. App. 196, 203 (1988).

1    However, Plaintiff pleads no facts as to how BOH "schemed" or "connived" with Niroula. This

2    Court previously advised Plaintiff that she had to plead more than a single conversation with

3    Mr. Dods to establish an agreement between BOH and Niroula to harm Plaintiff. Order at 13:5-9.

4         Plaintiff adds that "[p]art of the scheme was to force Plaintiff to negotiate and use self-

5    help with a dangerous criminal to obtain a release." SAC, ¶ 237. But Plaintiff fails to allege that

6    BOH encouraged her to undertake self-help, even though this Court indicated that would be

7    persuasive if alleged in the SAC. Order at 18:19-26. Indeed, all she alleges is that "[a]t no time

8    did BOH inform Plaintiff that she need not investigate or use self-help in order to have her claims

9    at BOH paid." SAC, ¶ 39. That is not close to alleging facts showing that BOH schemed to force

10   her to negotiate with a criminal and seek self-help. In the absence of factual support, this claim

11   must be dismissed.

12        **6.    Negligence Per Se (Count 35)**

13        Alleging a laundry list of state and federal statutes to establish a negligence per se claim,

14   Plaintiff seeks to plead statutory standards which BOH allegedly violated and which protect

15   Plaintiff. None of these statutes applies.

16        California Commercial Code § 4-101 and Hawaii Revised Statutes § 490:4-401(a) are

17   merely the sections which title Division Four of the Uniform Commercial Code in each state.

18   Standing alone, they offer Plaintiff no protection which BOH violated. Even if her reference is

19   interpreted as applying to *all* of Division Four, Plaintiff has not pleaded a viable claim, because

20   her forged check claims are precluded by Sections 4-406(f) and 490:4-406(f).

21        As discussed above, Civil Code § 1572 (actual fraud), § 1668 (exempting liability for

22   fraud), § 2773 (no indemnity of unlawful act), and § 3513 (no waiver of a law solely for one's

23   benefit) offer no solace to Plaintiff. Neither does California Penal Code § 470, which makes

24   forgery a crime, because BOH did not commit a forgery, and the California statute in any event

25   was not intended to protect Plaintiff from forgeries which took place in Hawaii. The federal

26   criminal statutes which Plaintiff cites regarding criminal conspiracy, wire fraud, bank fraud and

27   money laundering do not establish a standard of care for BOH, which did none of the above.

28        Plaintiff suffered losses from check forgeries, and her claims against BOH are absolutely

1 | precluded by Section 4-406(f), unless she can establish that the Indemnification Agreement does

2 | not apply.  Her negligence per se claim does not establish a basis for avoiding the Indemnification

3 | Agreement, and it should be dismissed.

4 | **H.    Conversion (Count 29)**

5 | Plaintiff alleges that, "between October 24, 2006, and October 29, 2006, in San Francisco,

6 | California, Defendant BOH" converted "her bank account, her claims for specific sums to be

7 | returned back to her BOH account for $508,000; her confidential identify, bank, telephone

8 | information and money, all inconsistent with the ownership of Plaintiff." SAC, ¶ 216.

9 | The only act which took place in San Francisco was Plaintiff's signing of the

10 | Indemnification Agreement, but the mere signing of an Agreement is not an act of conversion.

11 | As to the operative dates of the alleged conversion ("between October 24, 2006, and October 29,

12 | 2006"), Plaintiff does not allege in the SAC any act which occurred on October 24.  Rather, she

13 | claims that she called BOH on October 25, 2006, BOH sent her the Indemnification Agreement,

14 | and she signed it on that date.  SAC, ¶¶ 42-46.

15 | She alleges that Niroula put her on a plane to Japan on October 29 (SAC, ¶ 47), but she

16 | does not allege any facts indicating that BOH did anything on October 29 to convert her assets.

17 | Moreover, Count 29 is solely against BOH, not Niroula, so her reference to October 29 is not

18 | only unclear, but it is unsubstantiated by any facts as to what BOH allegedly did on that date to

19 | convert her assets.

20 | If the gist of Plaintiff's conversion claim were with regard to allowing Niroula to take her

21 | funds based on a forged drawer signature, BOH has previously discussed that it had absolute

22 | liability for allowing her funds to be withdrawn on a forged signature. [19]  But that does not appear

23 | to be the nature of her claim, because the funds were withdrawn well before October 24, 2006.

24 | See, SAC, ¶ 28.

25 | Therefore, BOH assumes, from the dates listed, that her conversion claim is based upon

26 | her signing the Indemnification Agreement on October 25.  But instructing a party in control of

27 |

28 |

---

[19] *Cf.*, *Cooper v. Union Bank*, 9 Cal.3d 371, 380 (1973) (payment of a check on a forged endorsement is a conversion by the collecting bank).

IUCHALTER NEMER
PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1934353v6

36

1    one's funds to release them to a third party does not make the authorized transfer a "conversion,"

2    becomes the instructing party later changes her mind.    Unless Plaintiff can overcome the

3    Indemnification Agreement, by which she authorized BOH to transfer her funds, she cannot

4    establish that BOH converted her funds by releasing them to Niroula at her request.    *See*,

5    5 Witkin, Summary of Cal. Law (10th ed. 2005), "Torts," section 187, p. 319 (release is a defense

6    to tort liability) and section 719, p. 1041 (defenses to intentional torts, including privileges, are a

7    defense to conversion).

8        As to Plaintiff's completely unsupported claim that BOH converted her "confidential

9    identify, bank, [and] telephone information," Plaintiff pleads no facts to support these allegations.

10    Plaintiff alleges that Niroula stole her confidential information (SAC, ¶ 12) and that BOH

11    "connived" with Niroula (SAC, ¶¶ 95, 106), but she did not allege that BOH connived with

12    Niroula to steal her confidential information.    Even if she had, those conclusory allegations

13    without any factual support, other than making the claim that BOH "connived" with Niroula to do

14    bad acts, is not sufficient to withstand this motion.

15        **I.    Equitable Lien (Count 30)**

16        Plaintiff contends that BOH will be unjustly enriched if it keeps the funds which Niroula

17    took, and she seeks an equitable lien on BOH's funds to repay her.    SAC, ¶¶ 221-222.    In

18    response to BOH's previous motion to dismiss the equitable lien count in her FAC, Plaintiff

19    relied solely on *Rosales v. Citibank*, 113 F.Supp.2d 1177 (N.D. Cal. 2001) ("*Rosales*"), which

20    held that a party could rely on the restitutionary provisions of Business & Professions Code

21    § 17203 to recover funds taken from a bank ATM, even though the bank no longer had those

22    funds.

23        Thus, this claim appears to be duplicative of Plaintiff's Business & Professions Code

24    § 17200 claim (Count 8), which is addressed above.    Plaintiff has cited no authority entitling her

25    to an equitable lien in this context.    Furthermore, if Plaintiff cannot overcome the Indemnification

26    Agreement, this claim is precluded by Commercial Code § 4-406(f).

27        **J.    Constructive Trust (Count 31)**

28        Plaintiff claims that BOH has been unjustly enriched if it is "allowed to keep" the funds

1    Niroula stole from her.  SAC, ¶ 226.  She seeks the imposition of a constructive trust on those

2    funds, with interest.  As with her equitable lien claim, she relies on *Rosales*, and the same

3    arguments apply therefore to her constructive trust claim as those BOH articulated above.

### K.    Intentional Infliction Of Emotional Distress (Count 23)

5        To prevail on this claim, Plaintiff must plead that the bank's conduct was "beyond all

6    bounds of decency in a civilized society."  *Lee v. Aiu*, 85 Haw. 19, 36, n.12 (1997); *Alcorn v.*

7    *Anbro Engineering, Inc.,* 2 Cal.3d 493, 499, fn. 5 (1970).  To meet her pleading burden, Plaintiff

8    alleges that BOH (1) involved her "in direct negotiation with the thief and check forger" (SAC,

9    ¶ 175), (2) connived "with Codefendant Niroula to obtain a release" (SAC, ¶ 178), (3) was

10   inactive "after notice of the forgeries/bank fraud" (SAC, ¶ 179), (4) intended to deny Plaintiff's

11   claims (Ex A) prior to investigating or acting on them" (SAC, ¶ 180), (5) violated its own

12   guidelines (SAC, ¶ 181), (6) used a release violating Civil Code § 1668 (SAC, ¶ 182), and

13   (7) "BOH [undertook] aggressive efforts to retransfer funds to an individual it recognized as a

14   forger, thief and a liar."  BOH reviews each of those in order.

### 1.    Negotiations With A Check Forger

16       Plaintiff has not set forth one fact that BOH encouraged her to engage in self-help.  Her

17   single allegation that BOH did not "inform Plaintiff that she need not investigate or use self help"

18   (SAC, ¶ 39) suggests that BOH had a duty to do so, but this Court followed well established

19   precedent to rule that banks do not owe such duties to their depository customers.  Order at 9.

### 2.    Conniving With Niroula

21       BOH has addressed this claim before, as did the Court in its Order.  Plaintiff has added no

22   facts to her SAC to support a "conniving" allegation or a conspiracy theory.

### 3.    BOH's Alleged Inactivity

24       BOH commenced and prosecuted an investigation until Plaintiff called it off by

25   withdrawing her forgery claims.  As Plaintiff pleads in the SAC, BOH provided forgery claim

26   forms for Plaintiff to fill out (SAC, ¶ 31); took information from her about the forgery, both over

27   the phone and in person (SAC, ¶¶ 29, 31), took information from Niroula (SAC, ¶ 34), exchanged

28   information in the course of its investigation to determine if Plaintiff's claims were legitimate

1   (SAC, ¶ 34), and froze Niroula's accounts as part of that investigation (SAC, ¶ 33).  That is not

2   "inactivity."

### 4.     BOH Intention To Deny Forgery Claims

4       Previously addressed, BOH's conduct shows that it had no preconceived intention of

5   denying Plaintiff's forgery claims and that it stopped investigating them only when she withdrew

6   them in writing.  Part performance contradicts an intention not to perform.

### 5.     Violation Of BOH Guidelines

8       BOH presumes that this vague allegation is based on BOH's Identity Theft Guide, from

9   which Plaintiff quotes at SAC, ¶ 13, as follows:

> Bank of Hawaii provides identity theft victims with responsive,
> caring service from beginning to end.  When notified by a customer
> of a possible identity theft, Bank of Hawaii will ensure that
> accounts are closed and protected properly.  Designated staff
> members will also follow up with customers and monitor accounts
> for any suspicious activity.  Our goal is to ensure that customers
> experience complete resolution and consistent follow-through so
> their concerns and issues are handled in a timely and caring
> manner.

15      There is nothing in that text which BOH did not do.  Plaintiff admits that, from and after

16  October 2, 2006, when Plaintiff reported the thefts telephonically, no further funds were taken

17  from her account, that she met with designated members of the bank's staff to assert three sworn

18  forgery claims, and from that moment that the bank froze every cent in Niroula's account.  The

19  bank did not violate its guidelines, and Plaintiff does not plead how doing so would be an act

20  "beyond all bounds of decency in a civilized society."

### 6.     Use Of A Release Violating Civil Code § 1668

22      This issue has been addressed above.

### 7.     Retransferring Funds To A Thief

24      Plaintiff has no one but herself to blame for this.  She and she alone made a unilateral

25  decision to take matters into her own hands, travel to San Francisco, seek no legal counsel, and

26  believe the lies of a forger and thief for a second time, as the result of which she gave him not

27  only the frozen funds, but an additional $41,000, and she withdrew her forgery claims in their

28  entirety.  Plaintiff, not BOH, is responsible for her actions.

1    Nothing BOH did was beyond all bounds of decency in a civilized society.  As the Court

2    noted in its Order regarding Plaintiff's FAC intentional infliction of emotional distress claim:

3    "The flaw in Ms. Hisamatsu's argument, however, is that there are not facts in the FAC to support

4    her theory of liability on this claim, *i.e.*, the facts alleged do not suggest that BOH engaged in

5    such conduct."    Order at 18:23-25.    Plaintiff has added no facts to make her intentional

6    interference claim any more credible, and it should be dismissed without leave to amend.

7    **V.    CONCLUSION**

8    BOH respectfully requests that Plaintiff's Second Amended Complaint be dismissed

9    without leave to amend.

10

11    DATED: June ⁄⁰, 2008                    BUCHALTER NEMER
                                              A Professional Corporation
12

13                                           By _____
                                                    JAMES B. WRIGHT
14                                                  Attorneys for Defendant
                                                    BANK OF HAWAII
15

16

17

18

19

20

21

22

23

24

25

26

27

28