STEPHEN M. SHAW, SB 107625
P.O. Box 2353
Honolulu, Hawaii 96804
Telephone: (808) 521-0800
Facsimile: (808) 531-2129
Email: shawy001@gmail.com

Attorney for Plaintiff
MEGUMI HISAMATSU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

-SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGUMI HISAMATSU, ) | CASE NO: 3:07-cv-04371-JSW |
| ) | |
| Plaintiff, ) | DECLARATION OF PLAINTIFF |
| vs. ) | MEGUMI HISAMATSU |
| ) | [28 USC §1746] |
| KAUSHAL NIROULA; ) | |
| BANK OF HAWAII, ) | |
| A Corporation; DOES 1-60; ) | Judge: Hon. Jeffrey S. White |
| ) | Courtroom: 2, 17th floor |
| Defendants. ) | |
| _____ ) | |

### DECLARATION OF PLAINTIFF MEGUMI HISAMATSU
### [28 USC §1746]

I, MEGUMI HISAMATSU, Plaintiff, have personal knowledge of the facts in this declaration and I am competent to testify about these facts. I know

enough English to assist in preparing this declaration. I understand this declaration, with the help of my English dictionary, before signing.

1. About August 16, 2006, I opened a personal checking account with Bank of Hawaii ("BOH").

2. At the time, I was a tourist visiting Hawaii from Japan.

3. About eight days after I opened my account, BOH begin taking money out of the account to pay three checks forged by another BOH customer, Kaushal Niroula, for a total of $508,000.00.

4. On or about October 3, 2006, I signed three claim forms at BOH's office in Honolulu, to recover $508,000.00 from three forged checks, from August 24, 2006 to September 18, 2006. Copies of the claim forms are attached to my declaration and are part of it. They are marked as Exhibits A.1 through A.9. Each form has a copy of my signature, and they are correct copies of the originals I recall signing on October 3, 2006.

5. BOH would not pay the claims. I waited for over two weeks. BOH recommended that I talk to Mr. Niroula to "help" Niroula return my money. Mr. Niroula called me, and said he would repay me in San Francisco, with an extra amount for "apology".

6. Mr. Niroula said I should help him pay me back because BOH was waiting for money his family was supposed to be wiring to Hawaii and because

I signed papers with BOH promising to cooperate. Niroula told me I could use my position with BOH to help him to return my money to me in San Francisco.

7. Since BOH would not pay my claims for $508,000.00, I had no choice but to go to San Francisco on October 20, 2006 to recover my family money, as promised by Mr. Niroula.

8. In San Francisco, I opened a bank account. Mr. Niroula said he deposited $809,000.00 to my account in San Francisco. When I called, this San Francisco bank told me the deposit had been made. Mr. Niroula said if his Hawaii account is not reopened, his family's life would be in danger, and the family was receiving death threats from people in Nepal. Niroula ordered me to call BOH and say to Mr. Dods, "unfrozen his account", in order that Mr. Niroula's BOH account would accept money wired to Niroula from his family in Nepal. Mr. Niroula said BOH has been waiting for this deposit, and if I said "unfrozen his account", Mr. Dods will know what I mean and will take care of this without any questions.

9. I called BOH on October 24, 2006, and told Mr. Dods "unfrozen his account" as Mr. Niroula instructed. Mr. Niroula said that account would have to receive money from Nepal or one of his relatives would die. I also used the words "re-open the account". I told Mr. Dods to make sure that the account

could receive money wired from Nepal from Mr. Niroula's family. Chester Dods, a BOH employee, said he needed me to sign a paper to do this.

10. BOH faxed me a form, through a friend, Steven Brittain, to San Francisco. Exhibit "B" to this declaration is a true copy of that form, bearing a correct copy of my signature, which I recall placing on the form on October 25, 2006, in San Francisco.

11. The form only said that I "wish to withdraw my forgery dispute". Mr. Dods knew that I was supposed to receive Mr. Niroula's "apology" and $890,000.00, if BOH followed my instruction to re-open Mr. Niroula's account.

12. BOH sent no other forms or papers for me to sign in San Francisco except Exhibit B. No one ever asked that I make Niroula's unauthorized signatures "mine", or adopt them as my own signatures. Exhibit B did not ask me to "adopt" or "ratify" Mr. Niroula's signatures.

13. While I am not able to understand many of the words in the papers I have seen in this lawsuit, I have seen BOH documents which accuse me of "ratifying" Mr. Niroula's forged signatures, or to "indemnify" or "hold harmless" the bank. I looked up those words in my English dictionary. I also read from the form that BOH was only releasing Mr. Niroula's money to Mr. Niroula, <u>not</u> <u>my</u> <u>money</u>.

4

DECLARATION OF PLAINTIFF MEGUMI HISAMATSU [28 USC §1746]
- CASE NO. 3:07-cv-04371-JSW

14. By trying to withdraw this forgery dispute between Mr. Niroula and I for $890,000.00, I never made his signatures "my own". I did not consent to this in Exhibit B, and the exhibit does not have any language showing ratification. Also, I did not consent to release BOH from any of my claims against BOH or to pay me my $508,000.00. Exhibits A.1-A.9.

15. I never received the $890,000.00 promised by Mr. Niroula and I promptly notified BOH after the check did not clear. As a result, I could not withdraw the forgery dispute, in exchange, with Mr. Niroula.

16. On October 3, 2006, BOH told me "the bank will investigate your claim." This was in my claim forms to BOH at Exhibits A.1, A.4 and A.7. I believed that BOH was investigating, and since I was cooperating with BOH as well, that they would warn me, and protect me from losing my family's $508,000.00.

17. Twenty-one days later, on October 24, 2006, before I signed BOH's Indemnity of Liability form (Exhibit B), BOH was supposed to have investigated Mr. Niroula. I signed the form believing that BOH had enough information to protect me. If BOH investigated, it would have known many things at the time if offered the form (Ex B), including,

A. Kaushal Niroula was a dangerous criminal and I did not have to negotiate with him to recover from BOH.

B.   Kaushal Niroula was in violation of his immigration visa;

C.   Kaushal Niroula's statements that he would repay me were not true;

D.   Kaushal Niroula had forged my signatures on three checks;

E.   Kaushal Niroula said my life was in danger in San Francisco by Nepalese criminals angry with Niroula;

F.   Mr. Niroula claimed to be a very good friends with Mr. Chester Dods, a BOH Vice President.

G.   Mr. Niroula had a record in San Francisco of deceiving people and taking their money, including the former President of New College;

H.   Mr. Niroula was also pressuring me in San Francisco, by promising help with a United States visa, after Exhibit B was signed.

I.   Mr. Niroula's statements to BOH and I that his family would wire money to his BOH account were not true.

18.   I agreed to sign the Indemnity of Liability (Exhibit B) in San Francisco, because BOH did not pay my claims, and because of Mr. Niroula's misconduct. This included his statements that his family was trying to wire much more than the money I lost to his Hawaii account, and that BOH needed to "unfreeze" Niroula's account for this reason. BOH took unfair advantage of

Niroula's misconduct, by denying my claims for $508,000.00. I signed BOH's form (Ex B) because I thought Mr. Niroula had paid me the $890,000.00, and because I was cooperating with BOH and Niroula to get the account reopened so that money could be wired out of Nepal and save his family.

19. After Mr. Niroula's check was dishonored. I contacted the San Francisco Police and the Honolulu Police Department about BOH and Mr. Niroula early in November of 2006. I was informed that HPD officer JP Salubez and Inspector Ovanission at SFPD contacted BOH. I always believed BOH's investigation was going on, so if there is anything wrong, they will let me know and will protect me because I was cooperating with BOH.

20. Mr. Niroula was arrested on the immigration visa violation. I believe this was during April 2007. Later, he was arrested by San Francisco Police Department for stealing someone else's money. I believe that BOH prevented Mr. Niroula from being arrested in my case, which would have prevented his new crimes.

21. During the first week of November 2006, I called Chester Dods at BOH, and explained that Mr. Niroula did not keep his promise to pay me, and I told him that I had been deceived and I wanted to recover my money.

22. BOH knew there was no language in the IOL (Exhibit B) or anywhere that I accepted, adopted, or "ratified" Mr. Niroula's forged signatures

7

DECLARATION OF PLAINTIFF MEGUMI HISAMATSU [28 USC §1746]
- CASE NO. 3:07-cv-04371-JSW

as my own or that I released the bank from my claims. BOH knew that the language was missing, and BOH says that this language was not needed. If that is true, then I made an innocent mistake, because of BOH's errors in its own form, which it never corrected.

I, MEGUMI HISAMATSU, declare under penalty of perjury, under the laws of the United States of America that the foregoing, and the attached Exhibits A.1-A.9 and Exhibit B, are true and correct.

Executed on June ____5____, 2008 at Osaka Japan.

_____
MEGUMI HISAMATSU
PLAINTIFF