1 BUCHALTER NEMER
  A Professional Corporation
2   JAMES B. WRIGHT (SBN: 63241)
   MIA S. BLACKLER (SBN: 188112)
3 333 Market Street, 25th Floor
  San Francisco, CA 94105-2126
4 Telephone: (415) 227-0900
  Facsimile: (415) 227-0770
5 Email: jwright@buchalter.com

6 Attorneys for Plaintiff
  BANK OF HAWAII

7

8       UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA

10        SAN FRANCISCO DIVISION

11

12 MEGUMI HISAMATSU,     Case No. 3:07-CV-04371-JSW

13    Plaintiff,     **DEFENDANT BANK OF HAWAII'S**
            **MEMORANDUM OF POINTS AND**
14   vs.        **AUTHORITIES IN OPPOSITION TO**
            **PLAINTIFF'S MOTION FOR SUMMARY**
15 KAUSHAL NIROULA; BANK OF  **JUDGMENT**
  HAWAII, A Corporation; DOES 1-60,
16 inclusive,       **(FRCP 56)**

17    Defendants.    Hearing: September 19, 2008
            Time: 9:00 a.m.
18           Judge: Hon. Jeffrey S. White
           Courtroom: 2, 17th floor

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  CHOICE OF LAW ..............................................................................................2

III.  ISSUES ADDRESSED..........................................................................................2

IV.  DISCUSSION ....................................................................................................2

    A.  BOH Does Not Contend That The Indemnification Agreement Is A Release ...........................................................................................................2

    B.  BOH Does Not Contend That The Indemnification Agreement Exculpates BOH For Its Own Allegedly Wrongful Conduct ........................................3

    C.  By Withdrawing Her Forgery Claims, Plaintiff Ratified Niroula's Signatures As Authorized To Withdraw Funds From Her Account.................3

    D.  Declaratory Relief Is Not Appropriate.........................................................7

        1.  The Indemnification Agreement Does Not Lack Mutuality Or Plaintiff's Consent ...........................................................................7

        2.  Plaintiff's Unilateral Actions To Minimize Her Losses Do Not Void The Indemnification Agreement ...........................................8

        3.  The Indemnification Agreement Is Not Unconscionable ...........10

        4.  The Indemnification Agreement Is Not Uncertain, Ambiguous, Or Invalid ...........................................................................................14

    E.  Rescission Is Not Appropriate .....................................................................15

        1.  The Indemnification Agreement Is Not Void ...........................15

        2.  Plaintiff Is Not Entitled To Rescission Under SAC Counts 9, 10, 12, 13, And/Or 16-18...........................................................................16

        3.  Plaintiff Is Not Entitled To Rescission Under SAC Counts 9, 10, And/Or 12-18...........................................................................16

        4.  Plaintiff's Section 17200 Claim Is Meritless .............................16

V.  CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Brookwood v. Bank of America*
    45 Cal.App.4th 1667 (1996) ............................................................................11

*Donovan v. RRL Corporation*
    26 Cal.4th 261 (2001) ...........................................................................11, 12, 13

*Gordon v. Stephenson*
    166 B.R. 154 (1994)...........................................................................................8, 9

*Intershop Communications AF v. Sup. Ct.*
    104 Cal.App.4th 191 (2002) .................................................................................10

*Izzy v. Mesquite Country Club*
    186 Cal.App.3d 1309 (1986) ................................................................................11

*M.F. Kemper Const. Co. v. City of L.A.*
    37 Cal.2d 696 (1951) ............................................................................................11

*Queen Villas Homeowners Association v. TCB Property Management*
    149 Cal.App.4th. 1 (2007) ...............................................................................3, 15

*Rakestraw v. Rodrigues*
    8 Cal.3d 67 (1972) .............................................................................................8, 9

*Rosenthal v. Great Western Fin. Sec. Corp.*
    14 Cal.4th 394 (1996) ...........................................................................................11

*Rowland v. Paine Webber*
    4 Cal.App.4th 279 (1992) .....................................................................................11

*Roy Supply v. Wells Fargo Bank, N.A.*
    39 Cal.App.4th 1051 (1995) ...............................................................................4, 9

## STATUTES

Civil Code § 1668 ....................................................................................................3, 15

Civil Code § 1691 ......................................................................................................14

Commercial Code § 1-201(41) ..................................................................................3, 6

Commercial Code § 3-401(a) ....................................................................................3, 6

Commercial Code § 3-403 ..............................................................................6, 7, 8, 15

Commercial Code § 3-403(a) ....................................................................................3, 6

Commercial Code § 4-406(f) .......................................................................................1

## TABLE OF AUTHORITIES
(continued)

Page

Federal Rules of Civil Procedure Rule 56(f) ...................................................................2

Hawaii Revised Statutes § 490:3-403(a).........................................................................3

## OTHER AUTHORITIES

Restatement Second of Contracts § 153 .......................................................................11

Restatement Second of Contracts § 154 .......................................................................12

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2162988v1

iii

BANK OF HAWAII'S MPAS IN OPP. TO MOT. FOR S.J. – CASE NO. 3:07-CV-04371-JSW

## I.    INTRODUCTION

Plaintiff's summary judgment motion is an ill-conceived attempt to adjudicate a series of legal theories she asserts in her Second Amended Complaint ("SAC"), which are not supported by law or fact. Generally, Plaintiff makes three arguments in her motion, none of which entitles her to summary judgment.

Plaintiff contends that the Indemnification Agreement is (1) an invalid release, (2) an improper indemnification of BOH's allegedly wrongful conduct, and (3) not a ratification of Niroula's signatures on Plaintiff's checks. Separately, she repeats these arguments and raises others in four sections each seeking either a declaratory judgment or rescission of the Indemnification Agreement, but she is not entitled to either form of relief.

As to her three principal contentions, Plaintiff's release and indemnification arguments are irrelevant, because BOH does not contend that the Indemnification Agreement is a release nor that Plaintiff should indemnify BOH for its own alleged misconduct. Rather, BOH makes two contentions that, when Plaintiff withdrew her forgery claims, (1) she ratified Niroula's signatures as authorized to withdraw funds from her account and (2) she is precluded by Commercial Code § 4-406(f) from pursuing any claims based on the allegedly forged checks. Neither defense involves a release or an indemnification.

Plaintiff's most telling (and perhaps dispositive) admission in her summary judgment brief and supporting declaration is that the $890,000 replacement check which Niroula gave her to repay her for $508,000 in forged checks, included "an additional amount *as an apology*." S. J. Mot. at 5:15; Hisamatsu Decl., ¶ 5; emphasis supplied. Thus, for the first time, Plaintiff admits that her motive for withdrawing her forgery claims was not merely to be repaid or "minimize her losses," as she argues, but because she thought she was also receiving a $372,000 premium payment "as an apology."

Plaintiff was apparently blinded by the prospect of this sizeable windfall. The Court may recall from her SAC that she admits Citibank told her when she deposited the $890,000 check that it would not clear for three days, or until October 25, 2006. SAC, ¶ 40. However, on October 25, 2006, without first calling Citibank to determine if the $890,000 check had cleared, Plaintiff

BN 2162988v1                                1

1    signed the Indemnification Agreement and had it faxed to BOH. *See*, SAC, ¶¶ 40, 45, and 47. In

2    fact, Plaintiff did not call Citibank until October 31, six days later, to learn that Niroula's

3    replacement check had not cleared. *See*, SAC, ¶ 47.

4         Plaintiff proffers many theories why withdrawing her three forgery claims should not be

5    construed as a ratification of Niroula's forged signatures, but none of these is viable. Having

6    withdrawn her forgery claims to BOH's substantial detriment, Plaintiff cannot here claim that her

7    actions should be rescinded and her funds returned, because she is not offering to and cannot

8    return BOH to the position it held before October 25, 2006.

9         Plaintiff's rescission-based summary judgment requests should be denied. To the extent

10   that the Court has any doubt about the invalidity of her summary judgment motion as a matter of

11   law, BOH requests pursuant to Rule 56(f), Federal Rules of Civil Procedure, that the Court deny

12   the pending summary judgment motion or continue the hearing so that BOH can conduct

13   discovery to establish that Plaintiff is not entitled to the relief she seeks.

14   **II.    CHOICE OF LAW**

15        Rather than duplicate them here, BOH refers the Court to its discussion of choice of law

16   issues in its motion to dismiss the SAC.

17   **III.   ISSUES ADDRESSED**

18        •    BOH does not contend that the Indemnification Agreement is a release;

19        •    BOH does not contend that the Indemnification Agreement exculpates BOH for its

20   own alleged misconduct;

21        •    By withdrawing her forgery claims, Plaintiff ratified Niroula's signatures as

22   authorized to withdraw funds from her account;

23        •    Declaratory relief is not appropriate; and

24        •    Rescission is not appropriate.

25   **IV.    DISCUSSION**

26   **A.    BOH Does Not Contend That The Indemnification Agreement Is A Release**

27   Plaintiff repeatedly asserts that the Indemnification Agreement is not a release of BOH's

28

1  liability to Plaintiff on the forged checks.[1]  But BOH does not contend that the Indemnification

2  Agreement is a release, so this issue is not in dispute.

3  **B.    BOH Does Not Contend That The Indemnification Agreement Exculpates**

4  **BOH For Its Own Allegedly Wrongful Conduct**

5  Plaintiff claims that the Indemnification Agreement violates the Civil Code § 1668

6  prohibition against relieving oneself of responsibility for fraud or willful injury to another.  A

7  collateral effect of the Indemnification Agreement is to ratify the forger's signature and to

8  preclude Plaintiff's forgery claims, but those are not the kind of exculpations that Civil Code

9  § 1668 forbids.  Plaintiff cites no authority to the contrary.

10  Relying on *Queen Villas Homeowners Association v. TCB Property Management*, 149

11  Cal.App.4th. 1 (2007), Plaintiff also argues that an indemnity agreement between two parties

12  cannot exculpate one of those parties for its own wrongdoing.  Plaintiff misunderstands BOH's

13  position.  BOH is not asserting an indemnity claim or defense in this action.

14  **C.    By Withdrawing Her Forgery Claims, Plaintiff Ratified Niroula's Signatures**

15  **As Authorized To Withdraw Funds From Her Account**

16  A forged signature does not bind an account holder, such as Plaintiff, because it is not

17  authorized by her.  Commercial Code § 3-403(a).  However, a check signed by someone other

18  than the account holder is *not* a forgery, if the account holder *authorizes* a third party to sign for

19  her.  Commercial Code §§ 3-401(a) and 1-201(41) .

20  By withdrawing her forgery claims as to all $508,000 in allegedly forged checks, Plaintiff

21  in effect advised BOH either that *she* signed the three checks or that Niroula, an authorized

22  *representative*, did so.  Commercial Code § 3-403(a) ("An unauthorized signature may be ratified

23  for all purposes of this division.").  As does California law, Hawaii law recognizes that an

24  account holder can ratify an otherwise unauthorized signature and waive her legal claim involving

25  an allegedly forged check.  Hawaii Revised Statutes § 490:3-403(a).

26  Plaintiff filed three *timely* forgery claims (Exh. "A" to SAC) alleging that Niroula stole

27  $508,000 from Plaintiff's BOH deposit account in Honolulu.  If Plaintiff's forgery claims had

28
_____
[1] S.J. Mot. at pp. viii:13, 1:5, 8:5, 8:18, 9:14, 15:22, 16:1, and 19:24.

1    proven accurate, and she had done nothing more, BOH as the payor bank would have been liable

2    to return all of the stolen funds to her upon verification of the forgeries:

3           *A payor bank's initial liability to its customer for making payment*
           *of a check on a forged signature is absolute*; that is, it applies
4           without regard to whether the bank exercised due care or was
           negligent or worse. *Roy Supply v. Wells Fargo Bank, N.A.,* 39
5           Cal.App.4th 1051, 1062 (1995) ("*Roy Supply*"); emphasis supplied.

6
7           But Plaintiff did not rest with filing three forgery claims, and her additional conduct forms

8    the basis upon which her summary judgment motion should be denied, and the SAC should be

9    dismissed without leave to amend. After Plaintiff swore under oath that Niroula was a forger and

10   a thief, she flew to San Francisco at Niroula's request (not BOH's) to meet Niroula there and to

11   recover her stolen funds. SAC, ¶ 39. Plaintiff does not allege that BOH encouraged her to

12   exercise this self-help remedy, nor does she allege that she informed BOH that she intended to

13   meet Niroula in San Francisco for any purpose.

14          The Court may recall that, in opposition to BOH's previous motion to dismiss Plaintiff's

15   FAC, Plaintiff *argued*, but did not allege, that BOH "coerce[d] her to investigate and negotiate

16   with an identity thief and a forger solely to escape payment on the unauthorized transactions."

17   Opp. at 17:19-22. The Court found that such an allegation, if made in the SAC, would be

18   persuasive to support her intentional infliction of emotional distress claim. January 10, 2008

19   Order (the "Order") at 18:19-21.

20          However, Plaintiff does not include that allegation in the SAC.[2] Instead, she alleges that

21   "*At no time did BOH inform Plaintiff that she need not investigate or use self-help in order to*

22   *have her claims at BOH paid.*" SAC, ¶ 39; emphasis supplied. BOH's failing to inform her not

23   to deal with Niroula, when BOH had no knowledge that that was her plan, is not tantamount to

24   "coercing" her to "investigate and negotiate with a thief." Moreover, that allegation is nothing

25   more that an argument that BOH owed her a duty to advise her about her legal rights, which this

26   Court soundly rejected in its Order (at p. 9 and passim). A depository bank has no such duty to

27   ---
     [2] Bank's counsel did a word search of the SAC and cannot find any allegation that BOH
28   "coerce[d] [Plaintiff] to investigate and negotiate with an identity thief and a forger solely to
     escape payment on the unauthorized transactions."

1    its customers.[3]

2        What Plaintiff does allege in the SAC is this:  At Niroula's request, she flew to San

3    Francisco after she had sworn three forgery affidavits accusing him of being a thief and a forger.

4    SAC, ¶¶ 38, 39.  While in San Francisco, Plaintiff allegedly again fell under Niroula's criminal

5    spell.  SAC, ¶¶ 39-47, 127, 128.  While apparently spellbound, she accepted an $890,000

6    replacement check from Niroula to repay the $508,000 in funds he stole from her, from which she

7    hoped to be repaid in full and recover a bonus as an apology.  SAC, ¶ 40; Hisamatsu Decl., ¶ 5.

8        Niroula deposited the replacement check into Plaintiff's Citibank account.  SAC, ¶ 40.

9    Plaintiff *admits that Citibank told her, and she knew, that the $890,000 check would not be*

10   *good funds for three days*.  Id.

11       Without first checking to see if the $890,000 check had cleared, on the third business day

12   after the deposit, Plaintiff withdrew her forgery claims and instructed BOH to release the

13   suspended funds in Niroula's BOH account.  SAC, ¶ 45.  Plaintiff could easily have called

14   Citibank to determine that the $890,000 replacement check was no good.  She inexplicably failed

15   to do so before executing the Indemnification Agreement and withdrawing her forgery claims.

16       Plaintiff acted in spite of the many warning signs that should have alerted her not to trust

17   Niroula:

18       •    Niroula made multiple real estate investment proposals to Plaintiff, which she

19   rejected (SAC, ¶ 15);

20       •    Niroula stole her personal checks (SAC, ¶¶ 12, 20);

21       •    Niroula forged her signature on $508,000 worth of her checks (SAC, ¶ 12);

22       •    Niroula repeatedly lied to her about meetings he allegedly set up for Plaintiff with

23   an immigration attorney (SAC, ¶ 47);

24       •    Niroula lied to her about his family's not being able to wire replacement funds to

25   Hawaii (SAC, ¶ 37);

---

26   [3] Similarly, Plaintiff complains that no one at BOH explained the meaning of the Indemnification
     Agreement to her.  SAC, ¶ 46.  BOH had no such duty.  Order at 9.  And her concession that
27   BOH did not explain the Agreement to her eliminates any claim she might assert that BOH gave
     her a "partial" explanation, which she might argue would require BOH to make additional
28   disclosures.

1     •     Niroula lied to her about his sister's alleged kidnapping and ransom (SAC, ¶ 41);

2     and

3     •     Niroula lied to her about a threat on Plaintiff's life (SAC, ¶ 41).

4     From the following SAC allegation, the Court can see why Plaintiff went to San Francisco

5     and why she withdrew her forgery claims:

6     > ***In the event Defendant Niroula returned her family savings,***
> ***Plaintiff intended to withdraw her claims to BOH*** (Exs A.1, A.4
7     > and A.7).   If not, Plaintiff reasonably believed that she was still
> protected by her pending claims at BOH and the bank's assurance
8     > of an investigation in its claim forms.     SAC, ¶ 39; emphasis
> supplied.
9

10     Plaintiff's allegation reveals that she was willing to withdraw her forgery claims on the

11     unproven assumption that Niroula had repaid her and also paid her a sizeable bonus as an

12     apology, without verifying that her assumption was correct.   Her belief that she could withdraw

13     her forgery claims and continue to assert them as pending was not "reasonable," as she asserts.

14     *See*, SAC, ¶ 39.

15     The Indemnification Agreement is written verification of Plaintiff's intention to allow

16     Niroula to withdraw funds from her account.   When a party permits another to withdraw funds

17     from her account, she has ratified his signature as authorized for that purpose.   Commercial Code

18     §§ 3-401(a) and 1-201(41); Hawaii Revised Statutes § 490:3-403(a); Commercial Code § 3-403;

19     Official Comment 3 to Commercial Code § 3-403.

20     Plaintiff argues she withdrew her forgery claims and signed the Indemnification

21     Agreement, but did so when she did not have time to obtain competent advice.   SAC, ¶ 99.   This

22     contention does not excuse her failure to call Citibank to determine if the $890,000 replacement

23     check had cleared on the same day that she instructed BOH to release the suspended funds, nor

24     does it explain why she could not obtain competent advice.   Plaintiff's unilateral failure to

25     understand the ramifications of withdrawing her forgery claims is not a basis to rescind the

26     Indemnification Agreement or undo her ratification of Niroula's signature as her own.

27     Plaintiff admits that BOH sent the Indemnification Agreement to her via her Honolulu

28     "friend," whom the parties acknowledge is Hawaii attorney Steven Brittain, and he faxed it to her

1    in San Francisco. While admitting that Mr. Brittain is a friend and an attorney, Plaintiff now

2    alleges that he was "not authorized" to act as her attorney (SAC, ¶ 44). But she does not explain

3    why, if she had time to contact Mr. Brittain and route the Indemnification Agreement through

4    him, she did not otherwise obtain competent advice about the Indemnification Agreement.

5         **D.    Declaratory Relief Is Not Appropriate**

6         Count 24 of the SAC is for declaratory relief and pleads that the Indemnification

7    Agreement "remains null and void, and has no future, prospective effect on BOH's duty to pay

8    Plaintiff's claims." SAC, ¶ 186. Plaintiff also pleads in that Count that BOH has refused to

9    rescind or cancel the Agreement (SAC, ¶ 188), and she seeks a declaratory judgment of her

10   rights, apparently to rescind the Indemnification Agreement. *Id.*, ¶ 189.

11        In line with her request for a declaratory judgment of rescission, Plaintiff attacks the

12   Indemnification Agreement via theories that it (1) lacks mutuality or consent, (2) is ineffective

13   against her because she signed it to "minimize her losses," (3) is adhesive and unconscionable,

14   and (4) is uncertain, ambiguous, or invalid. S.J. Mot. at 7-19. Each of her arguments is addressed

15   below.

16        **1.    The Indemnification Agreement Does Not Lack Mutuality Or**

17        **Plaintiff's Consent**

18        In her declaratory relief summary judgment motion, Plaintiff argues again that "the last

19   paragraph of the Indemnification Agreement was a release." S.J. Mot. at 8:18. But BOH makes

20   no such argument. Plaintiff's further contention that the Indemnification Agreement should

21   include the term "release" misses the same point, because BOH does not contend that the

22   Indemnification Agreement is a release.

23        Plaintiff also contends that the Indemnification Agreement is not a ratification of check

24   signatures that she previously contended Niroula had forged. S.J. Mot. at 8:17-18. Her argument

25   is addressed above.

26        Plaintiff's relies in error on Uniform Commercial Code § 3-403, Official Comment 3. S.J.

27   Mot. at 10:7-10. That comment, which supports BOH's position, reads:

28        Ratification is a retroactive adoption of the unauthorized signature

> by the person whose name is signed and may be found from conduct as well as express statements. ... Although the forger is not an agent, ratification is governed by the rules and principles applicable to ratification of unauthorized acts of an agent.
>
> Ratification is effective for all purposes of this Article. The unauthorized signature becomes valid so far as its effect as a signature is concerned. Although the ratification may relieve the signer of liability on the instrument, it does not of itself relieve the signer of liability to the person whose name is signed. It dose not in any way affect the criminal law.

Plaintiff's express statement in the Indemnification Agreement that "I, Megumi Hisamatsu, for reasons best known to myself, wish to withdraw my forgery dispute" and her request in that document that BOH turn over all of the frozen funds to the alleged forger, Niroula, *both* comply with Section § 3-403's requirement that "express statements" establish ratification. SAC, Exhibit "B." By withdrawing her forgery claims not long after she swore under oath that her signatures had been forged, she was plainly ratifying Niroula's signature and authorizing him to withdraw funds from her account.

If by signing the Indemnification Agreement, Plaintiff had some undisclosed intention – for example, that she intended to withdraw her forgery claims *only if* Niroula's $890,000 check cleared, as she now claims – then she was obligated to say so. She did not. BOH was entitled to rely on Plaintiff's express statements, not what she now claims she thought, but did not state.

### 2. Plaintiff's Unilateral Actions To Minimize Her Losses Do Not Void The Indemnification Agreement

Plaintiff argues that the ratification of a forged signature must be in writing and signed by her. S.J. Mot. at 10:22-24. Her ratification was in writing and signed by her. *See*, SAC, Exhibit "B." Commercial Code § 3-403 permits Plaintiff to ratify a forged signature as her own. She did that when she withdrew her claims that her signature was forged, i.e., she confirmed Niroula was authorized to sign her checks and withdraw her funds.

Relying on *Gordon v. Stephenson*, 166 B.R. 154, 157 (1994) and *Rakestraw v. Rodrigues*, 8 Cal.3d 67, 73 (1972), Plaintiff argues that her signing the Indemnification Agreement is not a ratification, because she was acting to "minimize her losses." S.J. Mot. at 13:2-5. Neither of those cases is applicable here.

1    In *Rakestraw*, a wife learned that her husband had forged her signature to a deed of trust

2    used as collateral for a loan to his business, but she failed to bring his forgery to light for three

3    years. The California Supreme Court held that, by accepting the benefits of the forgery, she

4    ratified his forged signature. *Rakestraw* at 74. Although the Supreme Court mentions in *dicta*

5    that there will be no ratification if the "principal is obligated to minimize his losses caused by the

6    agent's wrongful conduct," (*Rakestraw* at 73) that gives Plaintiff no solace here, because she was

7    not obligated to minimize her losses. Rather, she was entitled to look to BOH to make her whole

8    for debiting her account by checks with unauthorized signatures. *Roy Supply, supra*, 39

9    Cal.App.4th at 1062.

10    Plaintiff withdrew her forgery dispute, not based on her need to minimize her losses, but

11    believing that Niroula had repaid her in full, with a bonus as an apology. She was not obligated

12    to do anything to minimize her losses, other than assert *bona fide* forgery claims, which she had

13    already done.

14    The other case Plaintiff relies upon, *Gordon*, involved a bankruptcy debtor who invested

15    plaintiff's funds without his consent and then refused to let the plaintiff out of a bad investment,

16    which returned pennies on the dollar. The debtor later argued that the plaintiff's acceptance of an

17    interest payment and a commission constituted ratification of the debtor's investment. The

18    *Gordon* Bankruptcy Court disagreed and ruled that "[t]he plaintiff accepted the interest payment

19    and commission to minimize the pension fund's losses caused by the debtor's wrongful act until

20    the debtor could find a replacement investor. He did not accept such payments with any intent to

21    adopt the debtor's unauthorized act." *Gordon* at 158.

22    In sharp contrast, Plaintiff here admits that, when she signed the Indemnification

23    Agreement, she believed that Niroula had repaid her in full and additionally given her a

24    substantial bonus "as an apology." Nor was she locked in a bad investment, but fully able to

25    choose between repayment by BOH or payment with a bonus from Niroula. In other words,

26    Plaintiff was not trying to minimize her losses, but to maximize her recovery. The "obligation to

27    minimize her losses" exception to ratification does not apply here.

28

### 3.    The Indemnification Agreement Is Not Unconscionable

Plaintiff argues that, having sworn in her forgery affidavits that she had not ratified Niroula's forgeries at that time, she could not have later ratified his signatures by signing the Indemnification Agreement. S.J. Mot. at 15:3-6. This *non sequitur* defies a logical response, except to say that, of course she could, and she did. The reason she did so is explained in Plaintiff's motion -- that she had to choose between ratifying Niroula's signature and "los[ing] $890,000 promised by Mr. Niroula." S.J. Mot. at 14:18.

Thus, Plaintiff made a calculated decision to release the frozen funds ($257,000), which brought with it the possibility of being paid $890,000 by Niroula. She never alleges, and she cannot, that she discussed this choice with BOH. It was hers and hers alone to make. Having made the wrong choice, Plaintiff now seeks to avoid the consequences by rescinding the Indemnification Agreement.

Plaintiff argues that the Indemnification Agreement is an adhesion contract (S.J. Mot. at 15), which does not justify rescission in and of itself. Plaintiff makes no effort to establish that the Indemnification Agreement is adhesive, and it is not, because it is not a standardized contract, and she offers no evidence to establish that it is.

She also argues that it is unconscionable, which may justify rescission if she establishes (which she has not) that the Indemnification Agreement is both procedurally and substantively unconscionable:

> A finding of adhesion merely begins another inquiry – whether a particular provision within the contract should be denied enforcement on grounds that it defeats the expectations of the weaker party or it is unduly oppressive or unconscionable. *Intershop Communications AF v. Sup. Ct.*, 104 Cal.App.4th 191, 201 (2002)

One of the bases upon which Plaintiff seeks rescission in the SAC is her unilateral mistake as to the meaning of the Indemnification Agreement, the same basis she asserts in her summary judgment motion. SAC, Counts 17, 18. Plaintiff allegedly did not understand the legal import of the Indemnification Agreement and thought that she could sign it, release her forgery claims, and still force BOH to pay her forgery claims. SAC, ¶ 39.

1    However illogical that argument, she nonetheless contends that the Indemnification

2    Agreement is unconscionable, because she was surprised that the $890,000 check failed to clear,

3    because she thought she could pursue BOH in spite of the Indemnification Agreement if the

4    $890,000 check failed to clear, and that BOH now contends that she ratified Niroula's signature.

5    SAC, ¶ 39; S.J. Mot. at 14:18 and 15.    Notwithstanding Plaintiff's unilateral mistakes and her

6    alleged surprise at their consequences, the Indemnification Agreement is neither procedurally nor

7    substantively unconscionable.

8    Plaintiff had a legal duty to read the Indemnification Agreement before signing it. *Izzy v.*

9    *Mesquite Country Club*, 186 Cal.App.3d 1309, 1318-1319 (1986) (a signatory to a contract

10    cannot avoid the agreement by claiming that he failed to read it before signing); *Rowland v. Paine*

11    *Webber*, 4 Cal.App.4th 279, 286 (1992); *Rosenthal v. Great Western Fin. Sec. Corp.,* 14 Cal.4th

12    394, 425 (1996). She does not deny reading it, but claims she did not understand what it meant.

13    BOH had no duty to explain its meaning to her, and Plaintiff was obligated to seek

14    counsel if she did not understand what she was signing. Actually, Plaintiff's SAC allegations and

15    statements in her declaration supporting her summary judgment motion show that she understood

16    what she was doing. She was releasing $257,000 of her funds frozen in Niroula's account to

17    receive $890,000 from Niroula. Her failure to comprehend the risks of doing so are not a basis

18    for rescinding the Indemnification Agreement, and she cites no authority holding otherwise.

19    In *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 1673-1674 (1996), the court

20    enforced an arbitration agreement, notwithstanding the plaintiff's claimed mistaken belief as to

21    the scope of the agreement. Similarly here, Plaintiff bore the risk of her unilateral mistaken

22    beliefs that (1) the $890,000 check had cleared, (2) BOH would pay her if the check did not clear,

23    and (3) she was not ratifying Niroula's signatures. *M.F. Kemper Const. Co. v. City of L.A.*, 37

24    Cal.2d 696, 701 (1951).

25    California law allows rescission based on a unilateral mistake only in certain

26    circumstances. In 2001, the California Supreme Court in *Donovan v. RRL Corporation*, 26

27    Cal.4th 261, 281 (2001) ("*Donovan*") adopted the rescission rules set forth in Restatement Second

28    of Contracts § 153, which provides:

> "Where a mistake of one party at the time of a contract was made as
> to a basic assumption on which he made the contract has a material
> effect on the agreed exchange of performances that is adverse to
> him, the contract is voidable by him if he does not bear the risk of
> the mistake under the rules stated in sec. 154, and (a) the effect of
> the mistake is such that enforcement of the contract would be
> unconscionable, or (b) the other party had reason to know of the
> mistake or his fault caused the mistake."

*Donovan* involved a newspaper advertisement in which a car dealer, because of a
typesetting error, offered a used car worth $37,000 for $25,000. Plaintiff accepted the offer and
sued the dealer to enforce the contract. The *Donovan* Court held that rescission based upon
mistake of fact is available where all the following apply: (1) the rescinding party made a mistake
regarding a basic assumption upon which the rescinding party made the contract, (2) the mistake
has a material effect upon the agreed exchange of performances that is adverse to the rescinding
party, (3) *the rescinding party does not bear the risk of the mistake*, and (4) *the effect of the
mistake is such that enforcement of the contract would be unconscionable*. *Id.* at 282. Here,
Plaintiff cannot meet the last two requirements of the *Donovan* case -- risk-bearing and
unconscionability.

As to Plaintiff's mistaken belief that Niroula had repaid her with a bonus, Plaintiff failed
to call Citibank to confirm her mistaken belief that his overly large check had cleared. As to her
right to pursue BOH after withdrawing her forgery claims, she failed to consult with anyone, or
even to ask BOH, if she had that right. As to authorizing Niroula to withdraw funds from her
account, she did that to obtain a bonus as an apology, mistakenly believing that the $890,000
check had cleared, when she could have called Citibank to learn otherwise.

As to risk-bearing, Restatement Second of Contracts § 154, which was adopted by the
California Supreme Court in *Donovan*, deals with which contracting party bears the risk of a
unilateral mistake. Restatement Second of Contracts § 154 provides:

> A party bears the risk of a mistake when (a) the risk is allocated to
> him by agreement of the parties, (b) he is aware, at the time the
> contract is made, that he has only limited knowledge with respect to
> the facts to which the mistake relates but treats his limited
> knowledge as sufficient, or (c) the risk is allocated to him by the
> court on the ground that it is reasonable in the circumstances to do
> so. *Donovan* at 283.

1        One could certainly argue that the language in the Indemnification Agreement that "For

2  reasons known best to myself [I, Megumi Hisamatsu, wish to withdraw my forgery dispute]" is a

3  statement satisfying Section 154(a) that Plaintiff assumed the risk of her actions.

4        As to Section 154(b), Plaintiff certainly knew that she had limited knowledge, because she

5  had not called Citibank to verify that the $890,000 check had cleared.  She also knew that she had

6  not consulted Mr. Brittain or anyone else about the meaning of the Agreement, but she treated her

7  limited knowledge as sufficient.  Certainly BOH should not bear the risk of those unilateral

8  mistakes.

9        Under Section 154(c), the Court should allocate the risk to Plaintiff, because doing so is

10  reasonable under the circumstances.  Unlike the typesetting error in *Donovan*, Plaintiff bore the

11  risk of her mistaken beliefs that Niroula had repaid her and, if his check did not clear, that BOH

12  would pay on her withdrawn forgery claims and not contend that she had authorized Niroula to

13  withdraw funds from her account.

14        With regard to unconscionability, the *Donovan* Court held:

15          An unconscionable contract ordinarily involves both a procedural
         and a substantive element: (1) oppression or surprise due to unequal
16          bargaining power, and (2) overly harsh or one-side results.  [citation
         omitted] … In ascertaining whether rescission is warranted for a
17          unilateral mistake of fact, substantive unconscionability often will
         constitute the determinative factor, because the oppression and
18          surprise ordinarily results from the mistake – not from inequality in
         bargaining power.  Accordingly, even though [rescinding party, the
19          car dealer] is not the weaker party to the contract and its mistake
         did not result from unequal bargaining power, [rescinding party]
20          was surprised by the mistake, and in these circumstances overly
         harsh or one-sided results are sufficient to establish
21          unconscionability entitling [rescinding party] to rescission.
         *Donovan*, 26 Cal.4th at 292.
22

23        Here, the Indemnification Agreement is not procedurally unconscionable.  The forgery

24  claims were Plaintiff's to release, if and when she chose to do so, or not, because she was entitled

25  to demand that BOH make her whole and not obligated to seek a bonus from Niroula.  She chose

26  to release her claims for payment of an apology bonus, which failed to materialize, but that does

27  not make her surprise at not being paid by Niroula grounds to rescind her agreement with BOH.

28        BOH responded to her request to release the frozen funds that it would do so on condition

1    that Plaintiff confirm her withdrawal of her forgery claims in writing.  Plaintiff could have

2    refused that offer and forced BOH to make her whole.  Plaintiff's surprise (albeit one caused

3    entirely by her failure to check with Citibank) was that Niroula's check bounced and her

4    anticipated bonus evaporated.

5        The Indemnification Agreement is also not substantively unconscionable, because the

6    results were not one-sided.  Each side obtained a benefit from the Agreement.  Plaintiff was given

7    access to her funds, frozen in Niroula's account, so that she could give them to Niroula in

8    exchange for what she thought was full repayment and a bonus.  BOH received a withdrawal of

9    Plaintiff's forgery claims.

10       That was not one-sided, except for the fact that Plaintiff failed first to determine that

11   Niroula's replacement check was rubber.  Had she been correct in her mistaken assumption that

12   Niroula had repaid her, she would have received $890,000 for the temporary loss of access to

13   $508,000.  That was clearly Plaintiff's bargain to strike, or not, and she chose to make it.  Her

14   after-the-fact dissatisfaction with her bargain does not make it substantively unconscionable.

15       Plaintiff does not offer to restore the consideration with which BOH parted, which is a

16   requirement of rescission.  Civil Code § 1691.  BOH was substantially prejudiced by Plaintiff's

17   mistaken and foolish assumption that Niroula had repaid her in full, as a result of which she gave

18   him access to the $257,000 in frozen funds.

19       Indeed, on these facts, it would be unconscionable to rescind the Indemnification

20   Agreement, which would lead to a one-sided result in which BOH parted with all of its

21   consideration and Plaintiff is unjustly enriched by keeping hers.  Plaintiff cannot ask the Court to

22   put her in a pre-Indemnification Agreement position, without offering to put BOH in that same

23   position, which she cannot.  Niroula and the funds are gone, and the risk of that loss must fall on

24   Plaintiff.

25       **4.     The Indemnification Agreement Is Not Uncertain, Ambiguous, Or**

26          **Invalid**

27       BOH agrees with the statement in Plaintiff's motion that "It is feasible here to determine

28   the parties' meaning from the [Indemnification Agreement] alone."  S.J. Mot. at 18:11-12.  There

1 | is nothing vague or uncertain about the Indemnification Agreement.

2 |     Although Plaintiff may not have understood the legal ramifications of the Indemnification

3 | Agreement, that does not make it legally ambiguous or uncertain. This Court previously held that

4 | BOH had no duty to explain what the Agreement meant (Order at 9), so any uncertainty Plaintiff

5 | had about its meaning was for her to figure out, with advice from an attorney or anyone of her

6 | choice. Indeed, Plaintiff admits that she was using Steven Brittain, a Honolulu attorney friend, as

7 | a conduit to fax the agreement between her and BOH, and she could have sought legal advice

8 | from him or from many other sources before signing the Agreement. Plaintiff's argument that the

9 | term "withdrawal" does not equate to "ratification" (S.J. Mot. at 18:17-18) merely makes the

10 | same point, that Plaintiff allegedly did not understand the legal ramifications of withdrawal, not

11 | that she could not have had that understanding by consulting counsel over what she thought was

12 | an $890,000 transaction.

13 |     Plaintiff's argument that she could have withdrawn her forgery dispute without ratifying

14 | Niroula's signature is made without factual or legal support, and makes no sense in the context of

15 | the facts here. By both her conduct in calling BOH with a request to release the frozen funds, and

16 | by signing the Indemnification Agreement, Plaintiff manifested her intent to withdraw her forgery

17 | dispute for the purpose of releasing $257,000 to Niroula in exchange for Niroula's $890,000

18 | check. That conduct and her express statements in the Agreement satisfy Commercial Code § 3-

19 | 403 and constitute her ratification of Niroula's signatures as authorized to withdraw funds from

20 | her account. There is nothing uncertain, ambiguous, or invalid about that.

21 |     **E.**    **Rescission Is Not Appropriate**

22 |     In scattergun fashion, Plaintiff seeks summary judgment of nine of her eleven rescission

23 | claims, other than Count 11 (mutual mistake) and Count 19 (fraud in the inducement). For the

24 | reasons set forth above and below and in BOH's motion to dismiss the SAC, Plaintiff is not

25 | entitled to rescind the Indemnification Agreement.

26 |     **1.**    **The Indemnification Agreement Is Not Void**

27 |     Plaintiff advances here the same arguments that California Civil Code § 1668 and the

28 | *Queen Villas* case make it illegal to relieve oneself of responsibility for fraud or willful injury to

1    another, which BOH addressed above and will not repeat here.

2            **2.**      **Plaintiff Is Not Entitled To Rescission Under SAC Counts 9, 10, 12, 13,**

3                  **And/Or 16-18**

4        BOH refers the Court to the points it made and the authorities it cited in its motion to

5    dismiss the SAC.

6            **3.**      **Plaintiff Is Not Entitled To Rescission Under SAC Counts 9, 10,**

7                  **And/Or 12-18**

8        BOH refers the Court to the points it made and the authorities it cited in its motion to

9    dismiss the SAC.

10            **4.**      **Plaintiff's Section 17200 Claim Is Meritless**

11        This was not a "bait and switch" case, as Plaintiff argues, in which BOH told Plaintiff she

12    was signing one agreement and had her sign another. This is a case of Plaintiff electing to

13    withdraw her forgery claims for an $890,000 check with a bonus component, which turned out

14    worthless. Plaintiff sought no legal advice and even ignored Citibank's advice that she could

15    verify good funds on October 25, 2006, the day she signed the Indemnification Agreement. That

16    conduct does not translate into a 17200 violation by BOH, which simply asked her to sign the

17    Indemnification Agreement to confirm her intent to withdraw forgery claims that she had sworn

18    out just weeks before. Certainly BOH, which had potential exposure to Niroula for freezing

19    funds in his account, was entitled to have Plaintiff confirm her new intentions in writing.

20        Plaintiff could have sought legal or other advice about her remedies to recover the stolen

21    funds, BOH's obligation to repay her for funds taken from her account without her authorization,

22    the advisability of her seeking self-help by chasing a forger and thief to San Francisco, her need

23    to check with Citibank to verify that the $890,000 check had cleared, and whether to sign the

24    Indemnification Agreement. She did none of the above, and her actions prejudiced BOH's ability

25    to recover any funds from Niroula, who was long gone with her original funds and another

26    $41,000 she gave him in San Francisco by the time she belatedly learned in November that the

27    $890,000 check was no good and Niroula was gone. None of the foregoing gives Plaintiff a

28    Section 17200 claim, and her summary judgment motion on this point should be denied.

1    **V.    CONCLUSION**

2              BOH respectfully requests that this Court deny Plaintiff's summary judgment motion and

3    grant its motion to dismiss her SAC without leave to amend.

4

5    DATED: August _____, 2008          BUCHALTER NEMER
                                          A Professional Corporation
6

7                                         By: _____
8                                               JAMES B. WRIGHT
                                                Attorneys for Plaintiff
9                                               BANK OF HAWAII

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28