BUCHALTER NEMER
A Professional Corporation
   JAMES B WRIGHT (#63241)
   MIA S. BLACKLER (#188112)
333 Market Street, 25th Floor
San Francisco, CA 94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
jwright@buchalter.com
mblackler@buchalter.com

Attorneys for Defendant
BANK OF HAWAII

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGUMI HISAMATSU,<br><br>         Plaintiff,<br><br>    vs.<br><br>KAUSHAL NIROULA; BANK OF HAWAII, A Corporation; and DOES 1 to 60, inclusive,<br><br>         Defendants. | CASE NO. 3:07-cv-04371-JSW<br><br>[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Hearing: September 19, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Courtroom: 2, 17th floor |

Plaintiff Megumi Hisamatsu's ("Plaintiff") Motion for Summary Judgment came on regularly for hearing on September 19, 2008, at 9:00 a.m. in Courtroom 2 of the above-entitled Court, the Honorable Jeffrey S. White presiding. James B. Wright appeared for Defendant Bank of Hawaii ("BOH"), and Stephen Shaw appeared for Plaintiff. No appearance was made by defendant, Kaushal Niroula ("Niroula").

HAVING CONSIDERED THE WRITTEN AND ORAL ARGUMENTS OF THE PARTIES, THE COURT DENIES PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS FOLLOWS:

A.   Legal Standards Applicable To A Motion For Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986). A party opposing a motion for summary judgment can defeat it by demonstrating genuine issues of fact or by demonstrating that, although there are no genuine issues of fact in dispute, the case is decided solely on issues of law. *Schneider v. TRW, Inc.* 938 F.2d 989, 991 (9th Cir. 1991). Here, the facts of this case are not in dispute, and issues of law determine its outcome, discussed below.

### B. SAC Allegations And Claims

In her Second Amended Complaint ("SAC"), Plaintiff asserts some thirty-five claims for relief, which she titles "Counts," including, *inter alia*, claims for breach of contract, fraud, torts, imposition of a constructive trust, equitable lien, rescission, declaratory judgment, and statutory violations. All of these claims are predicated on her depository and checking account relationship with BOH and three allegedly forged checks, which are discussed in more detail below.

Plaintiff contends that BOH is liable for paying three checks drawn on her account payable to Niroula, which total $508,000, because the payor signatures on those checks were forged by Niroula and not authorized by Plaintiff. SAC at ¶¶20, 22-24, 27-29. Both sides agree that BOH has potential liability for paying checks which do not bear an authorized payor signature. UCC § 3403(a).

Taking the allegations of the SAC as true for purposes of this motion, as the Court must, Plaintiff makes the following allegations. In 2006, while on vacation in Honolulu, she was befriended by Niroula. SAC, ¶6. He offered to assist her in purchasing real property, which she declined, and to aid her in obtaining an investment visa, so that she and her family could visit the United States for longer periods of time. *Id.* at ¶¶15-17. In connection with his offers of help, Niroula took Plaintiff to a BOH branch and assisted her in opening a checking account, into which she subsequently deposited in excess of $500,000. *Id.* at ¶¶18-19, 21, 26.

Niroula stole three of Plaintiff's blank checks. SAC, ¶20. She later gave him three other blank checks for the purpose of obtaining an investment visa. *Id.* at ¶27. He then forged her signature as payor on three checks totaling $508,000, which he made out to himself, and deposited those checks into his BOH account. *Id.* at ¶¶22, 24, 28. On or about October 2, 2006, when Plaintiff discovered that her funds had been withdrawn, Plaintiff called BOH to report the

forgeries and she flew from Japan to Honolulu to swear out forgery affidavits at BOH. *Id.* at ¶¶29, 31.

On October 3, 2006, in BOH's Honolulu offices, Plaintiff signed three Unauthorized Transaction forms (the "Forgery Affidavits") for each of three checks on which she claimed that Niroula had forged her signature. SAC, Exh A.1-9. In the Forgery Affidavits, BOH agreed to investigate her forgery claims. *Id.* Thereafter, BOH placed an administrative hold on Niroula's checking account and froze $257,546.25, which was the remaining balance in his account pending the results of its investigation. *Id.* at ¶¶31, 33. Plaintiff returned to Japan.

About three weeks after Plaintiff provided BOH with the Forgery Affidavits, Niroula convinced Plaintiff to travel from Japan to San Francisco to meet with him. SAC, ¶37. He told her that he had taken her money to protect his allegedly royal Nepalese family from harm and convinced her that his family intended to wire funds to him in San Francisco to reimburse her. *Id.* at ¶37-38. He also told Plaintiff that he would help her obtain an EB-5 investment visa. *Id.* at ¶37.

On October 20, 2006, Plaintiff flew to San Francisco. SAC, ¶39. The following day, Plaintiff opened a Citibank deposit account at Niroula's behest, into which Niroula deposited an $890,000 check. *Id.* at ¶40. In her summary judgment papers, Plaintiff admits that she understood that the $890,000 included "an extra amount as an 'apology'" from Niroula. Declaration of Plaintiff Megumi Hisamatsu, ¶ 5. When she deposited the $890,000 check, Citibank informed Plaintiff that the funds for that check would not be available for three business days, or until October 25, 2006. *Id.*

Niroula told Plaintiff that his Nepalese sister had been kidnapped, that Niroula's and Plaintiff's lives had been threatened by local operatives of the kidnappers, and that he needed $41,000 as a ransom payment for his sister. SAC, ¶¶38, 41. On October 25, 2006, Plaintiff opened a San Francisco account with Wells Fargo Bank and had BOH wire $41,000 from her BOH account to Plaintiff's Wells Fargo account. *Id.* at ¶¶42-43. Plaintiff gave those funds to Niroula. *Id.*

On that same day, to further aid Niroula, Plaintiff asked BOH to release its administrative

hold on the $257,546.25 in Niroula's BOH account. SAC, ¶¶44-45. BOH agreed to do so, provided that Plaintiff would sign a written document entitled "Indemnification of Liability" ("Indemnification Agreement"). _Id._ at Exh. B. Later that day, without checking with Citibank to determine if Niroula's $890,000 check had cleared, Plaintiff signed and returned the Indemnification Agreement to BOH. _Id._ at ¶46. BOH released its administrative hold on the $257,546.25 to Niroula, and Plaintiff returned to Japan. _Id._ at ¶¶46-47.

Plaintiff learned on October 31, 2006, that Niroula's $890,000 check had not cleared. SAC, ¶47. She telephoned BOH in November 2006 and requested that BOH pay her forged check claims. _Id._ at ¶48. Nine months later, Plaintiff commenced suit against BOH and Niroula in the San Francisco Superior Court, which suit was subsequently removed to this Court.

### C. Order Denying Motion for Summary Judgment

After full consideration of the arguments and authorities submitted by the parties, the Court denies Plaintiff's motion for summary judgment. As set forth in this Court's Order Granting BOH's Motion to Dismiss the SAC, because all of Plaintiff's claims are based on the allegedly forged checks, her claims are barred by the Indemnification Agreement, in which Plaintiff voluntary elected to withdraw her forgery claims as to all three checks for the entire $508,000 allegedly taken without her authority or consent. By withdrawing her forgery claims, Plaintiff ratified and authorized Niroula's allegedly forged signatures as genuine to withdraw funds from her account. UCC § 3-403(a). Stated differently, Plaintiff advised BOH that the allegedly forged signatures were either hers or those of her authorized representative, and she cannot assert a contrary position in this lawsuit.

Additionally, Plaintiff failed timely to report the forgeries to BOH. Pursuant to the terms of her Account Agreement and UCC § 4406(f), Plaintiff had 60 days from discovering the alleged forgeries to report the forgeries to BOH. UCC § 4406(f) imposes an absolute preclusion on forged or altered check claims brought beyond the statutory period (one year), which the parties may change by agreement, as they did in the Account Agreement to a 60-day claim period. UCC § 4103(a).

Plaintiff initially met her burden of informing BOH on a timely basis of the alleged

forgeries. However, on October 25, 2006, Plaintiff recanted and withdrew her forgery claims when she signed the Indemnification Agreement. Plaintiff alleges in the SAC that she called BOH in early November to reassert her forgery claims, which by then she had recanted on October 25. The Court holds that Plaintiff's conduct in recanting her forgery claims and instructing BOH to release the frozen funds to Niroula had prejudiced BOH and now prevent her from contending that the signatures were indeed forged, after she had ratified Niroula's signatures as authorized to withdraw funds from her account.

Therefore, the Court holds, as it did previously in the Order, that unless there is a basis for invalidating the Indemnification Agreement, all of Plaintiff's claims on the allegedly forged checks, as well as all proof relating to the allegedly forged checks, are absolutely precluded pursuant to UCC §4-406(f). See, *Roy Supply, Inc. v. Wells Fargo Bank, N.A.*, 39 Cal.App.4th 1051, 1065-67 (1995).

Plaintiff initially contends in her summary judgment motion that the Indemnification Agreement is (1) an invalid release which violates California Civil Code § 1668 and the public policies of California and Hawaii, (2) an improper indemnification of BOH's allegedly wrongful conduct, and (3) not a ratification of Niroula's signatures on Plaintiff's checks. The first two contentions are not germane, because BOH does not contend that the Indemnification Agreement is a release nor that Plaintiff should indemnify BOH for BOH's alleged misconduct. The third contention is incorrect, because as set forth above, the Court holds that the consequence of Plaintiff's withdrawal of her forgery claims is that she ratified Niroula's signatures on her checks as authorized to withdraw funds from her BOH account.

Plaintiff's claims to avoid the consequences of the Indemnification Agreement on a variety of theories are discussed below.

    **1. Plaintiff Is Not Entitled To Summary Judgment on Her Declaratory Relief Claims**

Count 24 of the SAC for Declaratory Relief alleges that the Indemnification Agreement "remains null and void, and has no future, prospective effect on BOH's duty to pay Plaintiff's claims." SAC, ¶ 186. Plaintiff also pleads that BOH has refused to rescind or cancel the

Agreement (SAC, ¶ 188), and she seeks a declaratory judgment to rescind the Indemnification Agreement. *Id.*, ¶ 189.

Plaintiff seeks declaratory judgment rescinding or voiding the Indemnification Agreement via theories that it (1) lacks mutuality or consent, (2) is ineffective against her because she signed it to "minimize her losses," (3) is adhesive and unconscionable, and (4) is uncertain, ambiguous, or invalid. S.J. Mot. at 7-19. Each of her arguments is addressed below.

### a. The Indemnification Agreement Does Not Lack Mutuality Or Plaintiff's Consent

Plaintiff argues again that the Indemnification Agreement included a release or should include such a term, but BOH makes no such argument and instead contends that the Indemnification Agreement ratified Niroula's signatures, authorizing him to withdraw funds from Plaintiff's BOH account. Plaintiff's express statement in the Indemnification Agreement that "I, Megumi Hisamatsu, for reasons best known to myself, wish to withdraw my forgery dispute" and her request in that document that BOH turn over all of the frozen funds to Niroula comply with the UCC § 3-403 requirement that "express statements" establish ratification and her signing it establishes her consent to its terms. SAC, Exh. B. Plaintiff withdrew her forgery dispute in exchange for BOH releasing funds at her request to Niroula, whom Plaintiff believed had repaid her in full, with an additional bonus "as an apology." The Indemnification Agreement contains mutual promises and mutual performance by both parties and is not void for lack of mutuality.

### b. Plaintiff's Unilateral Actions To Minimize Her Losses Do Not Void The Indemnification Agreement

Plaintiff relies on *Gordon v. Stephenson*, 166 B.R. 154, 157 (1994) and *Rakestraw v. Rodrigues*, 8 Cal.3d 67, 73 (1972) for the proposition that the conduct of a party seeking to "minimize her losses" will not be deemed a ratification.

Plaintiff admits that when she signed the Indemnification Agreement, she believed that Niroula had repaid her in full and additionally given her a substantial bonus "as an apology." Unlike the *Gordon* case, Plaintiff was not locked in a bad investment, but fully able to choose between repayment by BOH or payment with a bonus from Niroula. Plaintiff had no obligation

to minimize her losses, but was trying instead to maximize her recovery. The "obligation to minimize her losses" exception to ratification does not apply here.

### c. The Indemnification Agreement Is Not Unconscionable

Plaintiff argues that the Indemnification Agreement is an adhesion contract, which does not justify rescission in and of itself. However, Plaintiff offers no extrinsic evidence to establish that the Indemnification Agreement is adhesive.

Plaintiff also argues that the Indemnification Agreement is unconscionable, which may justify rescission if she could allege (which she did not) that the Indemnification Agreement is both procedurally and substantively unconscionable. *Intershop Communications AF v. Sup. Ct.*, 104 Cal.App.4th 191, 201 (2002); *Donovan v. RRL Corporation*, 26 Cal.4th 261, 281 (2001). With regard to unconscionability, the *Donovan* Court held:

> An unconscionable contract ordinarily involves both a procedural and a substantive element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-side results. [citation omitted] ... In ascertaining whether rescission is warranted for a unilateral mistake of fact, substantive unconscionability often will constitute the determinative factor, because the oppression and surprise ordinarily results from the mistake – not from inequality in bargaining power. Accordingly, even though [rescinding party, the car dealer] is not the weaker party to the contract and its mistake did not result from unequal bargaining power, [rescinding party] was surprised by the mistake, and in these circumstances overly harsh or one-sided results are sufficient to establish unconscionability entitling [rescinding party] to rescission. *Id.* at 292.

But the Indemnification Agreement is neither procedurally nor substantively unconscionable. Plaintiff's surprise was not based on unequal bargaining power but her failure to call Citibank to verify the $890,000 check had cleared and her choice not to seek counsel as to the meaning of the Indemnification Agreement, which she alleges essentially meant nothing. She contends that she believed that she could withdraw her forgery dispute to BOH's prejudice and reassert it at will if Niroula failed to repay her.

That is not surprise based on unequal bargaining power, but Plaintiff's failure to verify her mistaken assumptions. Plaintiff made a conscious decision to waive her forgery claims for the possibility of receiving a rather large apology bonus from Niroula. If the $890,000 replacement

check had cleared, Plaintiff would have been repaid fully with a premium. The forgery claims were Plaintiff's to release, if and when she chose to do so. Plaintiff was entitled if she did not release her claims to demand that BOH make her whole, and she was not obligated to seek a bonus from Niroula. She chose to release her claims for payment of an "apology" bonus, which failed to materialize, but that does not make her surprise at not being paid by Niroula grounds to rescind her agreement with BOH.

The Indemnification Agreement is also not substantively unconscionable, because the results were not one-sided. Each side obtained a benefit from the Agreement. Plaintiff was given access to her funds, frozen in Niroula's account, so that she could give them to Niroula in exchange for what she thought was full repayment and a bonus. BOH received a withdrawal of Plaintiff's forgery claims.

Plaintiff does not offer to restore the consideration with which BOH parted ($257,000 in frozen funds and access to Niroula shortly after he committed the forgeries), which is a requirement of rescission. C.C. § 1691. BOH was substantially prejudiced by Plaintiff's mistaken belief that Niroula had repaid her in full, as a result of which she withdrew her forgery dispute and gave him access to the $257,000, which the bank had frozen pending the result of its forgery investigation.

### d. The Indemnification Agreement Is Neither Uncertain, Ambiguous, Nor Invalid

There is nothing vague or uncertain about the Indemnification Agreement, even if Plaintiff did not understand its legal ramifications. This Court previously held that BOH had no duty to explain what the Indemnification Agreement meant (Order at 9), so Plaintiff was obligated to resolve any uncertainty she had about its meaning, with advice from an attorney or anyone of her choice. She apparently sought no such advice, but treated her assumption that she had been paid a bonus as an apology as a sufficient basis to decide to withdraw her forgery claims. Her mistaken assumption does not render the Indemnification Agreement she signed invalid.

### 2. Plaintiff Is Not Entitled To Summary Judgment On Her Rescission Claims.

Plaintiff seeks summary judgment of nine of her eleven rescission claims, other than Count 11 (mutual mistake) and Count 19 (fraud in the inducement). For the reasons set forth in this Court's Order Granting BOH's Motion to Dismiss the SAC, Plaintiff is not entitled to rescind the Indemnification Agreement.

In addition, Plaintiff is not entitled to rescind the Indemnification Agreement based on her arguments that it violates public policy and is unconscionable, as discussed above.

Moreover, Plaintiff is not entitled to summary judgment on her Section 17200 claim in Count 8 of the SAC, because this was not a "bait and switch" case, but rather a case of Plaintiff electing to withdraw her forgery claims for an $890,000 check with a bonus component, which turned out worthless. Plaintiff could have sought legal or other advice concerning her remedies to recover the stolen funds, or could have checked with Citibank to confirm that the $890,000 replacement check from Niroula had cleared, but she failed to do so. Such conduct does not translate into a 17200 violation by BOH, which simply asked Plaintiff to sign the Indemnification Agreement to confirm her intent to withdraw forgery claims that she had sworn out just weeks before.

Having withdrawn her forgery claims to BOH's substantial detriment, Plaintiff cannot now claim that her actions should be rescinded and her funds returned, because she is not offering to and cannot return BOH to the position it held before October 25, 2006. Plaintiff's rescission-based summary judgment requests are denied.

//
//
//

For the foregoing reasons, and those set forth in the accompanying Order Granting BOH's Motion to Dismiss the Second Amended Complaint, Plaintiff's motion for summary judgment is denied.

**SO ORDERED:**

Dated: _____, 2008

_____
The Honorable Jeffrey S. White
Judge of the District Court for the Northern District of California