1  BUCHALTER NEMER
   A Professional Corporation
2       JAMES B WRIGHT (#63241)
        MIA S. BLACKLER (#188112)
3  333 Market Street, 25th Floor
   San Francisco, CA 94105-2126
4  Telephone: (415) 227-0900
   Facsimile: (415) 227-0770
5  jwright@buchalter.com
   mblackler@buchalter.com
6
   Attorneys for Defendant
7  BANK OF HAWAII

8                       UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11 MEGUMI HISAMATSU,                          CASE NO. 3:07-cv-04371-JSW

12              Plaintiff,                    [PROPOSED] ORDER GRANTING
                                              DEFENDANT BANK OF HAWAII'S
13         vs.                                MOTION TO DISMISS SECOND
                                              AMENDED COMPLAINT
14 KAUSHAL NIROULA; BANK OF
   HAWAII, A Corporation; and DOES 1 to       Hearing: September 19, 2008
15 60, inclusive,                             Time: 9:00 a.m.
                                              Judge: Hon. Jeffrey S. White
16              Defendants.                   Courtroom: 2, 17th floor

17

18         Defendant Bank of Hawaii's ("BOH") Motion to Dismiss came on regularly for hearing

19 on September 19, 2008, at 9:00 a.m. in Courtroom 2 of the above-entitled Court, the Honorable

20 Jeffrey S. White presiding. James B. Wright appeared for BOH, and Stephen Shaw appeared for

21 Plaintiff Megumi Hisamatsu ("Plaintiff"). No appearance was made by defendant, Kaushal

22 Niroula ("Niroula").

23         This case was originally filed in San Francisco Superior Court by Plaintiff, a resident of

24 Japan. Prior to removal by BOH on diversity of citizenship grounds, in August 2007, Plaintiff

25 filed and served on BOH a first amended complaint ("FAC"). BOH filed a Notice of Removal of

26 this action on August 23, 2007. BOH moved to dismiss the First Amended Complaint, and its

27 motion was granted in part and denied in part on January 10, 2008, giving Plaintiff leave to

28 amend. Plaintiff filed her Second Amended Complaint ("SAC") on April 9, 2008, and the parties

BN 2168569v1                                1

stipulated to a briefing and hearing schedule that was approved by the Court. BOH moves to dismiss the SAC without leave to amend pursuant to Rule 12(b)(6).

**HAVING CONSIDERED THE WRITTEN AND ORAL ARGUMENTS OF THE PARTIES, THE COURT GRANTS BOH'S MOTION TO DISMISS AS FOLLOWS:**

### A.     Legal Standards Applicable To A Motion To Dismiss

A motion to dismiss for failure to state a claim may be granted when it appears that the Plaintiff can prove no set of facts that would entitle her to relief. *Fidelity Financial Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir. 1986); *In re U.S. Aggregates, Inc. v. Securities Litig.*, 235 F. Supp. 2d 1063, 1068 (N.D. Cal. 2002). Dismissal may be based on either a lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. See *In re U.S. Aggregates, Inc., Securities Litig.*, supra, 235 F. Supp. 2d at 1068; see also *Ballistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Although all material allegations must be taken as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *McCarthy v. Mayo*, 827 F.2d 1310, 1316 (9th Cir. 1987). A Plaintiff cannot avoid this bar by clothing legal conclusions in the guise of facts to take advantage of the liberality with which the court would otherwise view a pleading. See *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Stinson v. Home Ins. Co.*, 690 F. Supp. 882, 886 (N.D. Cal. 1988) (finding that, "[a]lthough Plaintiffs need to provide only a 'short and plain statement of the claim [under FRCP 8, ". . . [w]here the claims in a complaint are insufficiently supported by factual allegation, the claims may be disposed of by summary dismissal").

### B.     SAC Allegations And Claims

In her SAC, Plaintiff asserts some thirty-five claims for relief, which she titles "Counts," including, *inter alia*, claims for breach of contract, fraud, torts, imposition of a constructive trust, equitable lien, rescission, declaratory judgment, and statutory violations. All of these claims are predicated on her depository and checking account relationship with BOH and three allegedly forged checks, which are discussed in more detail below.

BN 2168569v1
2
BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

Plaintiff contends that BOH is liable for paying three checks drawn on her account payable to Niroula, which total $508,000, because the payor signatures on those checks were forged by Niroula and not authorized by Plaintiff. SAC at ¶¶20, 22-24, 27-29. Both sides agree that BOH has potential liability for paying checks which do not bear an authorized payor signature. UCC § 3403(a).

Taking the allegations of the SAC as true for purposes of this motion, as the Court must, Plaintiff makes the following allegations. In 2006, while on vacation in Honolulu, she was befriended by Niroula. SAC, ¶6. He offered to assist her in purchasing real property, which she declined, and to aid her in obtaining an investment visa, so that she and her family could visit the United States for longer periods of time. *Id.* at ¶¶15-17. In connection with his offers of help, Niroula took Plaintiff to a BOH branch and assisted her in opening a checking account, into which she subsequently deposited in excess of $500,000. *Id.* at ¶¶18-19, 21, 26.

Niroula stole three of Plaintiff's blank checks. SAC, ¶20. She later gave him three other blank checks for the purpose of obtaining an investment visa. *Id.* at ¶27. He then forged her signature as payor on three checks totaling $508,000, which he made out to himself, and deposited those checks into his BOH account. *Id.* at ¶¶22, 24, 28. On or about October 2, 2006, when Plaintiff discovered that her funds had been withdrawn, Plaintiff called BOH to report the forgeries and she flew from Japan to Honolulu to swear out forgery affidavits at BOH. *Id.* at ¶¶29, 31.

On October 3, 2006, in BOH's Honolulu offices, Plaintiff signed three Unauthorized Transaction forms (the "Forgery Affidavits") for each of three checks on which she claimed that Niroula had forged her signature. SAC, Exh A.1-9. In the Forgery Affidavits, BOH agreed to investigate her forgery claims. *Id.* Thereafter, BOH placed an administrative hold on Niroula's checking account and froze $257,546.25, which was the remaining balance in his account pending the results of its investigation. *Id.* at ¶¶31, 33. Plaintiff returned to Japan.

About three weeks after Plaintiff provided BOH with the Forgery Affidavits, Niroula convinced Plaintiff to travel from Japan to San Francisco to meet with him. SAC, ¶37. He told her that he had taken her money to protect his allegedly royal Nepalese family from harm and

BN 2168569v1

3

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

convinced her that his family intended to wire funds to him in San Francisco to reimburse her. *Id.* at ¶37-38. He also told Plaintiff that he would help her obtain an EB-5 investment visa. *Id.* at ¶37.

On October 20, 2006, Plaintiff flew to San Francisco. SAC, ¶39. The following day, Plaintiff opened a Citibank deposit account at Niroula's behest, into which Niroula deposited an $890,000 check. *Id.* at ¶40. In her summary judgment papers, Plaintiff admits that she understood that the $890,000 included "an extra amount as an 'apology'" from Niroula. Declaration of Plaintiff Megumi Hisamatsu, ¶ 5. When she deposited the $890,000 check, Citibank informed Plaintiff that the funds for that check would not be available for three business days, or until October 25, 2006. *Id.*

Niroula told Plaintiff that his Nepalese sister had been kidnapped, that Niroula's and Plaintiff's lives had been threatened by local operatives of the kidnappers, and that he needed $41,000 as a ransom payment for his sister. SAC, ¶¶38, 41. On October 25, 2006, Plaintiff opened a San Francisco account with Wells Fargo Bank and had BOH wire $41,000 from her BOH account to Plaintiff's Wells Fargo account. *Id.* at ¶¶42-43. Plaintiff gave those funds to Niroula. *Id.*

On that same day, to further aid Niroula, Plaintiff asked BOH to release its administrative hold on the $257,546.25 in Niroula's BOH account. SAC, ¶¶44-45. BOH agreed to do so, provided that Plaintiff would sign a written document entitled "Indemnification of Liability" ("Indemnification Agreement"). *Id.* at Exh. B. Later that day, without checking with Citibank to determine if Niroula's $890,000 check had cleared, Plaintiff signed and returned the Indemnification Agreement to BOH. *Id.* at ¶46. BOH released its administrative hold on the $257,546.25 to Niroula, and Plaintiff returned to Japan. *Id.* at ¶¶46-47.

Plaintiff learned on October 31, 2006, that Niroula's $890,000 check had not cleared. SAC, ¶47. She telephoned BOH in November 2006 and requested that BOH pay her forged check claims. *Id.* at ¶48. Nine months later, Plaintiff commenced suit against BOH and Niroula in the San Francisco Superior Court, which suit was subsequently removed to this Court.

BN 2168569v1    4
BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

### C. Order Dismissing SAC Without Leave To Amend

After full consideration of the arguments and authorities submitted by the parties, and accepting as true the allegations of the SAC as the Court must on a motion to dismiss under Rule 12(b)(6), the Court grants BOH's Motion to Dismiss without leave to amend against BOH.

#### 1. The Newly-Pleaded Facts Are Irrelevant

On January 10, 2008, this Court gave Plaintiff the opportunity to plead new facts to attempt to avoid the consequences of the Indemnification Agreement. In her SAC, Plaintiff has alleged two additional facts (1) that BOH misrepresented to Plaintiff that it would release monies to Niroula, allegedly belonging to Niroula (SAC, ¶¶46, 95D, 95, 142, 145, 165, 168, 170, 171), and (2) that BOH allegedly had sufficient information to transfer the stolen funds to Plaintiff before it conducted an investigation (SAC ¶¶22, 30, 32, 33, 45 and Exh. A).

Neither of Plaintiff's newly-pleaded facts salvages Plaintiff's claims, because (1) Plaintiff's new allegation that BOH misrepresented to Plaintiff that it was releasing Niroula's funds to Niroula contradicts the terms of the Indemnification Agreement that the subject funds being released belonged to Plaintiff, not to Niroula, and (2) BOH had no obligation to transfer the amount of the forged checks or the funds on administrative hold without first conducting an investigation of Plaintiff's forgery claims, which she withdrew.

#### 2. Claims Attacking the Indemnification Agreement

In the January 10, 2008 Order (the "Order"), this Court gave Plaintiff leave to amend, but stated "[i]f she amends, Ms. Hisamatsu must allege facts that would support the legal bases on which she seeks to avoid the Indemnification Agreement and more clearly articulate the legal bases on which she contends the Indemnification Agreement cannot be enforced against her." Order at 10:3-5. In the SAC, Plaintiff pleads Counts 9-20 and 24 to invalidate the Indemnification Agreement.

##### a. Undue Influence (Count 9)

Plaintiff alleges under Civil Code §1689(b)(1) that she mistakenly executed the Indemnification Agreement based on alleged duress or undue influence by Niroula, and that BOH somehow took advantage of Plaintiff's distress. SAC, ¶¶98-99. This claim fails, however,

BN 2168569v1

5

[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

because there is no evidence that BOH was aware of Niroula's actions or that BOH was working in concert with Niroula. Plaintiff claims that there was "extreme emphasis on terrible consequences for delay," which as to Niroula apparently relates to his fabricated story about his sister being kidnapped for ransom and the kidnappers' alleged threats on Plaintiff's life. SAC ¶ 41. Plaintiff also alleges that BOH made some emphasis on "terrible consequences for delay," but her pleading does not inform BOH or the Court what BOH did that pressured her to act without getting adequate legal advice, including seeking advice from her Honolulu friend, attorney Steven Brittain, through whom she admits that she routed the Indemnification Agreement from BOH to her in San Francisco and back to BOH in Honolulu. *Id* at ¶ 44.

This Court has already ruled that BOH was not a fiduciary to Plaintiff and owed her no special duties, other than the contractual duties a bank owes its depositor. Order at 9 and *passim*. According to the SAC, BOH informed Plaintiff that it would not release the frozen funds to Niroula without a signed Indemnification Agreement. SAC, ¶ 45. The rush to avoid terrible consequences was not from BOH, but apparently in Plaintiff's mind, planted there by Niroula. Plaintiff's unilateral desire hurriedly to release funds to Niroula to solve an apparently non-existent or fabricated emergency involving Niroula's sister is not a viable basis for voiding the Indemnification Agreement

Moreover, as a matter of law, Plaintiff cannot rescind the Indemnification Agreement without rescinding the entire agreement. *Simmons v. California Institute of Technology*, 34 Cal.2d 264, 275 (1949). Plaintiff is not entitled to rescind the Indemnification Agreement because she cannot restore BOH to its original pre-contract position, i.e., she cannot give back to BOH both the frozen funds in Niroula's account and the opportunity to go after a thief within days after he stole $508,000.

According to Plaintiff, she entered into the Indemnification Agreement on October 25, 2006 (SAC, ¶ 45 and Exh. B), apparently believing that Niroula had repaid her $890,000 with his replacement check. After Plaintiff discovered on October 31 that Niroula's replacement check did not clear, she alleges that she informed BOH in mid-November 2006 that she wanted to be paid on her withdrawn forgery claims. SAC, ¶¶ 48 and 100. Her attempt unilaterally to rescind

BN 2168569v1
6
BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

the Indemnification Agreement has no legal effect, and a telephone call placed two weeks after the agreement was fully executed by performance on both sides cannot revive her withdrawn forgery claims.

Count 9 of the SAC for Undue Influence is dismissed without leave to amend against BOH.

### b. Improper Conduct Of Third Party (Count 10)

Asserting a second Civil Code § 1689(b)(1) claim, Plaintiff alleges that BOH "knew, or had reason to know, that Plaintiff's consent and her signature on BOH's form indemnity agreement was induced or caused by the duress, fraud, and criminal conduct, of said third party Mr. Niroula, as well as by BOH" (SAC, ¶ 105), that "BOH connived with Mr. Niroula" (SAC, ¶ 106), that Plaintiff would not have signed the Indemnification Agreement "without duress, menace, fraud, undue influence, or mistake" (SAC, ¶ 108), that "BOH was aware of Mr. Niroula's connivance" (SAC, ¶ 109), and that "BOH was aware of the effects of its misconduct on Plaintiff," which "forced her to consent" to the Indemnification Agreement (SAC, ¶ 110).

Each of these allegations fails however, because they are mere conclusions lacking any factual support, because Plaintiff failed to substantiate the conclusory allegation that BOH "knew or should have known" that Plaintiff was signing the Indemnification Agreement under duress. The claim also fails for the same reasons mentioned above, that BOH did not owe Plaintiff a fiduciary duty, and that Plaintiff is unable to restore BOH to its pre-Indemnification Agreement position.

Accordingly, Count 10 for Improper Conduct of Third Party is dismissed without leave to amend against BOH.

### c. Mutual Mistake (Count 11)

Count 11 for Mutual Mistake is based upon the same facts as set forth in Count 10 and is dismissed for the same reasons. SAC, ¶ 111. The only mutual mistake of fact alleged is that BOH and Plaintiff both thought Niroula would repay her. Plaintiff alleges no factual basis as to what BOH thought, nor does she allege that Niroula told BOH he would voluntarily repay Plaintiff. Plaintiff also does not allege that BOH knew Niroula had tendered a replacement check

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2168569v1

7

[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

to her or any other factual basis upon which to discern that BOH made such a "mistake." Moreover, Plaintiff's alleged "mistake" is based primarily on her failure to verify with Citibank whether the replacement check had cleared. That is not a mistake, but assumption of the risk of loss, which risk Plaintiff, not BOH, must bear. *M.F. Kemper Const. Co. v. City of Los Angeles*, 37 Cal.2d 696, 703 (1951).

Accordingly, Count 11 for Mutual Mistake is dismissed without leave to amend against BOH.

### d. Material Failure of Consideration (Count 12)

Apparently attempting to fall within Civil Code § 1689(b)(2) or (b)(4), Plaintiff alleges that, because Niroula failed to repay her, the consideration for the Indemnification Agreement failed. SAC, ¶ 115. By so alleging, Plaintiff ignores the express terms of the Indemnification Agreement that the consideration was Plaintiff's withdrawing her forgery claims in exchange for BOH's release of the suspended funds, not Niroula's repayment. This claim against BOH cannot succeed unless failure of consideration is attributable to BOH, not Niroula, who was not even a signatory to the Indemnification Agreement.

Count 12 for Material Failure of Consideration is therefore dismissed without leave to amend against BOH.

### e. Failure of Consideration By Fault Of BOH (Count 13)

Count 13 for Failure of Consideration by Fault is dismissed without leave to amend against BOH, because it is premised on an allegation that BOH claimed that the stolen funds "belonged to Niroula," which is contravened by the express terms of the Indemnification Agreement. SAC, ¶118 and Exh. B.

### f. Unlawful Agreement (Count 14)

Plaintiff claims that the Indemnification Agreement violates the Civil Code § 1668 prohibition against relieving oneself of responsibility for fraud or willful injury to another, and therefore is subject to rescission under Civil Code § 1689(b)(5).

BOH does not allege that the Indemnification Agreement relieves it of culpable conduct, but rather that it acts as a ratification of Niroula's signatures on the forged checks, precluding

BN 2168569v1

8

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

Plaintiff's forgery claims. Although a forged signature does not generally bind an account holder because the signature is unauthorized, a check signed by someone other than the account holder is ***not*** a forgery if the account holder authorizes a third party to sign for her. Commercial Code §§ 3-401(a), 3-403(a) and 1-201(41). When Plaintiff withdrew her forgery claims, she advised BOH that, either that she signed the three checks, or that an authorized representative did so. Commercial Code § 3-403(a); Hawaii Revised Statutes § 490:3-403(a). In doing so, she ratified the payor signatures on the three checks in question.

If the result of Plaintiff's signing the Indemnification Agreement is a ratification of the allegedly unauthorized payor signatures or, because of the passage of time, a claim preclusion, discussed below, these are not the kind of exculpations that Civil Code § 1668 forbids. Count 14 for Unlawful Agreement is hereby dismissed without leave to amend against BOH.

### g. Void Consideration (Count 15)

This claim is based on the same Civil Code § 1668 argument raised by Plaintiff in Count 14, and fails for the same reasons. Count 15 for Void Consideration is therefore dismissed without leave to amend against BOH.

### h. Undue Influence Due To Known Vulnerability (Count 16)

Similar to her Count 9 claim and also based upon Civil Code § 1689(b)(1), Plaintiff alleges that she "suffered from lack of full vigor due to physical exhaustion and emotional anguish as a crime victim," and had "lessened capacity to make a free contract with BOH." SAC, ¶ 125. As with Plaintiff's other rescission claims, there are no facts pleaded that BOH knew or had reason to know that Plaintiff could not exercise her free will to recant and withdraw her forgery claims, nor does she allege facts supporting her claim that BOH was aware of her "known vulnerability." SAC, ¶ 126.

Count 16 for Undue Influence Due to Known Vulnerability is therefore dismissed without leave to amend against BOH.

### i. Unilateral Mistake, Fault of BOH (Count 17)

Attempting to state a unilateral mistake of fact claim under Civil Code § 1577, Plaintiff alleges that she was "unconsciously ignorant or forgetful of the fact that the object of the

BN 2168569v1

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

9

[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

Agreement was to exempt BOH of all liability to Plaintiff and that Niroula did not intend to reimburse her." SAC, ¶ 128. Plaintiff blames the mistake she made on "the fault of BOH," which "knew, or had reason to know," about her "unconscious ignorance" when she signed the Indemnification Agreement. SAC, ¶ 129. Plaintiff pleads no facts to establish that BOH knew she was "unconsciously ignorant or forgetful" of her legal rights, and it had no duty to give her advice about her legal rights. Count 17 for Unilateral Mistake is therefore dismissed without leave to amend against BOH.

### j.  Unilateral Mistake (Count 18)

Plaintiff alleges that she made two unilateral mistakes when she signed the Indemnification Agreement, that (1) BOH intended to pay her claims and (2) Niroula intended to reimburse her. SAC, ¶ 132. She contends that she does not bear the risk of her mistakes, because she did not neglect a legal duty and she erred in good faith. SAC, ¶ 134. Finally, she claims that the bargaining power between BOH and Plaintiff was unequal and she was surprised by her unilateral mistakes. SAC, ¶ 139.

Here, Plaintiff bears the risk of her own mistake, because she failed to act in good faith. By failing to disclose her mistaken beliefs to BOH, she prevented BOH from taking responsive action, such as encouraging Plaintiff to verify that the replacement check had cleared with Citibank, or to inform Plaintiff that she could not withdraw her forgery claims and restate them later to BOH's prejudice. Restatement Second of Contracts §§ 153, 154; *see also Donovan v. RRL Corp*, 26 Cal.4th 261, 283 (2001).

Count 18 for Unilateral Mistake is hereby dismissed without leave to amend against BOH.

### k.  Fraud In The Inducement (Count 19)

Again relying on Civil Code § 1689(b)(1), Plaintiff contends that BOH misrepresented that (1) the frozen funds were Niroula's and (2) that the Indemnification Agreement merely sought Indemnification and did not have any other purpose. SAC ¶142. As set forth above and in the Court's Order, BOH had no duty to explain the legal ramifications of the Indemnification Agreement to Plaintiff, much less to explain its syntax and/or plain contractual terms such as the meaning of the phrase "I…withdraw my forgery dispute." Order at 9 and *passim*. Plaintiff could

have consulted others if she did not understand the language or meaning of the Indemnification Agreement, but she did not do so. The Indemnification Agreement did not misrepresent any fact, and Count 19 for Fraud in the Inducement is hereby dismissed without leave to amend against BOH.

### l.      Tort In Essence (Count 20)

Plaintiff's tort in essence claim asserts that the Indemnification Agreement is void because it seeks to exculpate BOH from its own misconduct. SAC, ¶¶ 153, 154. As set forth above, the Indemnification Agreement is not unlawful under Civil Code § 1668. Plaintiff's reliance on Civil Code § 2773 prohibition against indemnifying an act known to be unlawful is also inapt, because BOH is not seeking Indemnification, and its actions were not unlawful.

Plaintiff also makes a number of allegations in her tort in essence claim, which are without factual support. For example, without any factual predicate or even a claim that BOH knew about the $890,000 replacement check, which is nowhere alleged in the SAC, Plaintiff claims that BOH aided and abetted "the criminal deposit of a check for $890,000 into Plainitff's Citibank account." SAC, ¶ 155. No fact supports Plainitff's allegation that BOH "aided and abetted" that deposit.

Plaintiff also contends, without factual support, that BOH "knew" that Niroula had threatened Plaintiff with bodily harm from Nepalese nationals if Plaintiff failed to give him (1) $41,000, (2) remove the freeze on funds in his account, (3) keep her cell phone turned off, (4) stay in her hotel or drive around with Niroula, and (5) return to Japan immediately after releasing the hold on his account. SAC, ¶ 156. Plaintiff fails to allege any facts to show that or how BOH "knew" these things.

In paragraph 157, Plaintiff attempts to allege a statutory violation under Civil Code § 1572 (actual fraud), 18 U.S.C. § 1343 (mail fraud), and 18 U.S.C. § 371 (criminal conspiracy), solely based upon the language of the Indemnification Agreement and the alleged "pressure" to sign it.

As to the language of the Agreement, there is nothing fraudulent about its terms. As to alleged pressure to sign it, Plaintiff has not alleged what BOH did to pressure her, other than require her to withdraw her forgery claims before it would release the suspended funds. The

BN 2168569v1                                            11

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

pressure apparently came from Plaintiff's erroneous belief that Niroula's sister and Plaintiff's lives were in danger, solely because Niroula said so. There is no factual support that BOH somehow committed mail fraud or engaged in a criminal conspiracy, and Plaintiff's mere citation to those statutes does not meet her burden of pleading facts to establish her claim.

Count 20 for Tort In Essence is therefore dismissed without leave to amend against BOH.

### m. Declaratory Relief (Count 24)

Plaintiff's Declaratory Judgment claim is a combination of various theories set forth in other claims, including that the Indemnification Agreement (1) violates Civil Code § 1668 (no exempting liability for willful misconduct), (2) is void under Civil Code § 2773 (no Indemnification of unlawful act), (3) is a ratification of a known crime, and (4) is a prohibited release, given as an Indemnification between two parties. SAC, ¶ 190.A-D. In the Order, this Court instructed Plaintiff to "clearly set forth the factual and legal bases supporting her claim for declaratory relief that the Indemnification Agreement cannot be enforced." Order at 14:4-6. As her other claims on these same grounds must fail, so must this claim. Count 20 for Declaratory Relief is hereby dismissed without leave to amend against BOH.

### 3. Plaintiff's Claims Are Precluded

Because the Indemnification Agreement is valid, the Court holds that all of Plaintiff's other claims, which are based on the allegedly forged checks, are barred by the terms of the Indemnification Agreement, in which Plaintiff voluntary elected to withdraw her forgery claims as to all three checks for the entire $508,000 allegedly taken without her authority or consent. By withdrawing her forgery claims, Plaintiff ratified and authorized the allegedly forged signatures on her checks as genuine. UCC § 3403(a). Put differently, Plaintiff advised BOH that the allegedly forged signatures were either hers or those of her authorized representative, and she cannot assert a contrary position in this suit.

Additionally, because she recanted her forgery claims, Plaintiff failed timely to report the forgeries to BOH. Pursuant to the terms of her Account Agreement and UCC § 4406(f), Plaintiff had 60 days from discovering the alleged forgeries to report the forgeries. UCC § 4406(f) imposes an absolute preclusion on forged or altered check claims brought beyond the statutory

BN 2168569v1

12

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

[PROPOSED] ORDER DISMISSING SAC
WITHOUT LEAVE TO AMEND – CASE NO. 3:07-CV-04371-JSW

period (one year), which the parties may change by agreement, as they did in the Account Agreement to a 60-day claim period. UCC § 4103(a).

Plaintiff initially met her burden of informing BOH on a timely basis of the alleged forgeries. However, on October 25, 2006, Plaintiff recanted and withdrew her forgery claims when she signed the Indemnification Agreement. She alleges in her SAC that she called BOH in early November to reassert her forgery claims, which by then she had recanted on October 25. The Court holds that Plaintiff's conduct in recanting her forgery claims and instructing BOH to release the frozen funds to Niroula prejudiced BOH and prevent her from changing position yet again after she had ratified Niroula's signatures as authorized to withdraw funds from her account.

Therefore, the Court holds that because there is no basis for invalidating the Indemnification Agreement, all of Plaintiff's claims on the allegedly forged checks, and proof relating to the allegedly forged checks are absolutely precluded pursuant to UCC §4-406(f). See, *Roy Supply, Inc. v. Wells Fargo Bank, N.A.*, 39 Cal.App.4th 1051, 1065-67 (1995).

As a result, the Court orders Plaintiff's Second Amended Complaint against Defendant Bank of Hawaii shall be and hereby is dismissed without leave to amend. Bank of Hawaii shall have judgment in its favor accordingly and is entitled to an award of its costs of suit against Plaintiff.

**SO ORDERED:**

Dated: _____, 2008    _____
The Honorable Jeffrey S. White
Federal District Court Judge