1    BUCHALTER NEMER
     A Professional Corporation
2        JAMES B WRIGHT (#63241)
         MIA S. BLACKLER (#188112)
3    333 Market Street, 25th Floor
     San Francisco, CA 94105-2126
4    Telephone: (415) 227-0900
     Facsimile: (415) 227-0770
5    jwright@buchalter.com
     mblackler@buchalter.com
6
     Attorneys for Defendant
7    BANK OF HAWAII

8                    UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11   MEGUMI HISAMATSU,                    CASE NO.  3:07-CV-04371-JSW

12              Plaintiff,                **BANK OF HAWAII'S REPLY BRIEF ON
                                          ITS MOTION TO DISMISS THE
13        vs.                             SECOND AMENDED COMPLAINT**

14   KAUSHAL NIROULA; BANK OF             Hearing:      September 19, 2008
     HAWAII, A Corporation; and DOES 1 to Time:         9:00 a.m.
15   60, inclusive,                       Judge:        Hon. Jeffrey S. White
                                          Courtroom:    2, 17th floor
16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2193449v2

TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   PLAINTIFF'S NEWLY PLEADED FACTS ARE NOT SUFFICIENT ...........................2

      A.    The Indemnification Agreement Did Not Misrepresent Any Fact .........................2

      B.    BOH's Investigation Was Not Complete On October 4, 2006 ..............................4

III.  DISCUSSION ....................................................................................................5

      A.    Standard Of Review ......................................................................................5

      B.    Choice Of Law ..............................................................................................6

      C.    Plaintiff Is Estopped To Contradict The Withdrawal Of Her Forgery
            Claims, And Those Claims Are Absolutely Precluded By Commercial
            Code § 4-406(f)..........................................................................................6

      D.    Plaintiff's Claims Attacking The Indemnification Agreement Should Be
            Dismissed Without Leave To Amend ...............................................................9

            1.    Count 9 (Rescission Based On Undue Influence) Should Be
                  Dismissed..........................................................................................9

            2.    Count 10 (Improper Third Party Conduct) Should Be Dismissed............10

            3.    Count 11 (Rescission Based On Mutual Mistake Of Fact) Should
                  Be Dismissed ..................................................................................12

            4.    Count 12 (Failure Of Consideration) Should Be Dismissed....................12

            5.    Count 13 (Failure Of Consideration By Fault Of BOH) Should Be
                  Dismissed........................................................................................13

            6.    Count 14 (Unlawful Agreement) Should Be Dismissed...........................13

            7.    Count 15 (Void Consideration) Should Be Dismissed ............................14

            8.    Count 16 (Undue Influence/Known Vulnerability) Should Be
                  Dismissed........................................................................................14

            9.    Count 17 (Unilateral Mistake Of Fact) Should Be Dismissed..................15

            10.   Count 18 (Unilateral Mistake Of Fact) Should Be Dismissed..................15

            11.   Count 19 (Fraud In The Inducement) Should Be Dismissed....................16

            12.   Count 20 (Tort In Essence) Should Be Dismissed..................................16

            13.   Count 24 (Declaratory Relief) Should Be Dismissed .............................17

i

E.    Count 8 (Business & Professions Code § 17200) Should Be Dismissed ..............17

F.    Count 26 (Hawaii UCL) Should Be Dismissed .......................................................19

G.    Count 21 (Conspiracy) Should Be Dismissed .........................................................19

H.    Fraud-Based Claims Should Be Dismissed ..............................................................20

       1.    Count 19 (Fraud In The Inducement) Should Be Dismissed ....................20

       2.    Count 27 (Promissory Fraud) Should Be Dismissed .................................20

I.    Counts 25, 28, 32-35 (Negligence, 29 (Conversion), 30 (Equitable Lien),
       31 (Constructive Trust), and 23 (Intentional Infliction) Should Be
       Dismissed ..................................................................................................................20

IV.    CONCLUSION ...................................................................................................................21

1

TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4

*Allied Mutual Insurance Company v. Webb,*
  91 Cal.App.4th 1190 (2001) .................................................................15, 16

*Bell Atlantic Corporation v. Twombly,*
  167 L.Ed.2d 929 (2007) ...............................................................................5

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994) ........................................................................5

*Common Wealth Insurance Systems, Inc. v. Kersten,*
  40 Cal.App.3d 1014 (1974) .......................................................................15, 16

*Diamond Multimedia etc. v. Superior Court,*
  19 Cal.4th 1036, 1063-64 (1999) ..............................................................17, 18

*Donovan v. RRL Corporation,*
  26 Cal.4th 261 (2001) ...................................................................................16

*Estate of Stephens v. Williams,*
  28 Cal.4th 665 (2002) ...................................................................................15

*Harris v. Rudin,*
  95 Cal.App.4th 1332, 1342 (2002) .............................................................12

*Huey v. Honeywell, Inc.,*
  82 F.3d 327, 333 (9th Cir. 1996) ..................................................................8

*Kearney v. Salomon Smith Barney, Inc.,*
  39 Cal.4th 95 (2006) ...................................................................................18, 19

*Norwest Mortgage, Inc. v. Superior Court,*
  72 Cal.App.4th 214 (1999) ........................................................................18, 19

*O'Meara v. Haiden,*
  204 Cal. 354 (1928) ......................................................................................12

*Odorizzi v. Bloomfield School Dist.,*
  246 Cal.App.2d 123 (1966) .........................................................................11

*Sidebotham v. Robison,*
  216 F.2d 816 (9th Cir. 1954) .................................................................5, 7, 20

*Van't Road v. County of Santa Clara,*
  113 Cal.App.4th 549 (2003) ........................................................................13

**STATUTES**

Cal. Business & Professions Code § 17200 ......................................6, 17, 18, 19

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

iii

BN 2193449v2

Cal. Civil Code § 1637.................................................................................................3

Cal. Civil Code § 1638.................................................................................................3

Cal. Civil Code § 1639.................................................................................................3

Cal. Civil Code § 1644.................................................................................................3

Cal. Civil Code § 1647.................................................................................................3

Cal. Civil Code § 1654.................................................................................................4

Cal. Civil Code § 1668...............................................................................................14

Cal. Evidence Code § 623...........................................................................................7

Commercial Code § 1-201(41)....................................................................................7

Commercial Code § 3-304..........................................................................................15

Commercial Code § 3-401(a).......................................................................................7

Commercial Code § 3-403..........................................................................................13

Commercial Code § 4-406(f) .............................................................................. passim

**OTHER AUTHORITIES**

13 Witkin, Summary of Cal. Law (10th ed. 2005) ........................................................7

Restatement Second of Contracts § 157 ....................................................................16

BN 2193449v2

**BOH'S REPLY BRIEF ISO ITS MOTION TO DISMISS SAC– CASE NO. 3:07-CV-04371-JSW**

## I.    INTRODUCTION

While extremely difficult to follow, the Opposition does not succeed in its apparent purpose – to establish that Plaintiff has pleaded facts to avoid the preclusive effect of the Indemnification Agreement.

Moreover, when BOH filed its motion to dismiss the SAC, Plaintiff concurrently filed her summary judgment motion, in which she admits that her motive in withdrawing her forgery claims was based on receiving Defendant Niroula's $890,000 replacement check. Thus, Plaintiff admits that she withdrew her forgery claims, not merely to receive full repayment of her $508,000 in forgery losses, but also to obtain an additional $282,000 windfall bonus payment from Mr. Niroula "as an apology." Plaintiff's S. J. Mot. at 5:15; Hisamatsu Decl., ¶ 5.

Plaintiff also admits that she ignored Citibank's advice when she deposited the $890,000 replacement check to call three days later, on October 25, 2006, to determine if Mr. Niroula's check had cleared. SAC, ¶¶ 40, 47. Instead of doing so, and assuming the risk that Mr. Niroula's check had not cleared, on October 25, 2006 Plaintiff withdrew all of her forgery claims with BOH and released to Mr. Niroula the funds which BOH had frozen in his account. Plaintiff did this without a reasonable basis for believing that the check had cleared, she assumed the risk that she was wrong, and she acted to BOH's substantial prejudice.

Plaintiff is bound here by her admission on October 25, 2006 that "for reasons best known to" herself, she elected to withdraw all her forgery claims, which acted as a ratification that Mr. Niroula's signature was authorized to withdraw funds from her account. Plaintiff cannot renew those withdrawn forgery claims here to BOH's prejudice. Because Plaintiff has pleaded no viable factual basis to rescind the Indemnification Agreement, all of Plaintiff's claims are absolutely precluded by Commercial Code § 4-406(f).

Plaintiff has now had three opportunities to state justiciable claims for relief -- in her original Complaint, in her FAC and now in her SAC. Although in blunderbuss fashion with far more "Counts" than should be necessary to address the limited facts identified in her claims, Plaintiff has been permitted, repeatedly, to "take her best shot" at alleging wrongdoing by BOH that could be judicially addressed. In addition, Plaintiff also seeks summary judgment,

1

1   notwithstanding the Court's admonition that this may be her one and only such dispositive motion

2   in these proceedings without further court leave.    See, June 6, 2008 Amended Order re

3   Stipulation, at 1:23-24.

4       Notwithstanding Plaintiff's many attempts to state a claim for relief, the **facts she pleads**

5   contradict her **conclusory allegations** of purported wrongdoing by BOH.    Moreover, Plaintiff's

6   allegations and Declaration in support of her summary judgment motion establish by admissions

7   that, while BOH was investigating her forgery claims, Plaintiff took matters into her own hands

8   and voluntarily assumed many unnecessary risks.    Primary among those risks was her belief that

9   Mr. Niroula, whom she knew to be a forger, liar, thief, and confidence man, had repaid her and

10   given her a large bonus "as an apology," as a result of which she "risked it all" and withdrew her

11   forgery claims without first verifying that his $890,000 check had cleared her Citibank account.

12       Given all that, which Plaintiff admits, her SAC should be dismissed without leave to

13   amend, and her request to amend should be denied.

14  **II.**    **PLAINTIFF'S NEWLY PLEADED FACTS ARE NOT SUFFICIENT**

15      **A.**    **The Indemnification Agreement Did Not Misrepresent Any Fact**

16       In order to manufacture a misrepresentation where none exists, Plaintiff alleges in her

17   SAC and argues in her Opposition Brief at 2-3 that the Indemnification Agreement phrase

18   "belonging to Kaushal Niroula" modifies the word "funds" and that she thought BOH was

19   informing her that the funds in Mr. Niroula's account were his, not hers.    However, the only basis

20   which Plaintiff pleaded for BOH having frozen funds in Mr. Niroula's account was because

21   Plaintiff swore they were **her** funds stolen by Mr. Niroula.    SAC, ¶¶ 31, 33 and SAC Exh. A.

22       Therefore, Plaintiff's claim that BOH deceived her about whose funds were in

23   Mr. Niroula's account is contradicted by her claim that they were hers, which she relinquished,

24   making the funds Mr. Niroula's.    Even if the phrase "belonging to Kaushal Niroula" modifies

25   both the term "funds" and the phrase "Bank of Hawaii account # 0002-933063," that is entirely

26   consistent with the plain meaning of the Agreement.    By withdrawing her forgery dispute,

27   Plaintiff acknowledged that the funds in Mr. Niroula's account belonged to him, not to her.    She

28   has never disputed that Bank of Hawaii account # 0002-933063 belonged to Mr. Niroula.    See,

2

1   FAC, ¶ 46.

2       Having withdrawn her forgery claims, Plaintiff acknowledged that the funds were
3   Mr. Niroula's to do with as he pleased. This is not about an interpretation which will lead to a
4   forfeiture or one which is against public policy, as Plaintiff argues, but a strained interpretation by
5   Plaintiff that the plain meaning of the Indemnification Agreement so confused Plaintiff that she
6   should be able to sue for fraud. BOH did not defraud Plaintiff into believing that it had
7   mistakenly frozen Mr. Niroula's funds. Plaintiff's forgery affidavits make this contention absurd.

8       Plaintiff responds that, because she was a Japanese national who had trouble reading
9   English, BOH was on notice that she would misconstrue the plain meaning of the Indemnification
10  Agreement, as a result of which she should be permitted to argue that BOH defrauded her. Opp.
11  Brief at 2:3-8. This is nothing more than an argument that BOH had a duty to Plaintiff to explain
12  the legal meaning of the Indemnification Agreement, which this Court previously rejected.
13  January 10, 2008 Order at 9 ("Order").

14      Plaintiff could have consulted an advisor before signing the Agreement, as surely she
15  knew that her English was or was not sufficient to understand the meaning of a document which
16  she believed would affect her right to receive $890,000 from Mr. Niroula. Her failure to consult
17  an advisor, or her misunderstanding of the agreement, were risks she assumed when she signed
18  the Indemnification Agreement without consulting anyone other than Mr. Niroula, whom she had
19  no business trusting. That is not a basis for misconstruing the plain meaning of the
20  Indemnification Agreement to find that it means something that it does not say and which it could
21  not mean in the context of Plaintiff's request to transfer her funds to Mr. Niroula so that his
22  family could repay her. See, SAC, ¶ 46; Hisamatsu Decl., ¶ 18.

23      Plaintiff claims that the Indemnification Agreement should be interpreted against BOH,
24  but she is incorrect. The rules of contract interpretation are clear that interpreting a contract
25  against the drafter is a rule of last resort. Courts look first to the intent of the parties as set forth
26  in the agreement (Cal. Civil Code §§ 1637, 1638, 1639), give the words of a contract their
27  ordinary meaning (Cal. Civil Code § 1644), interpret contracts according to the surrounding
28  circumstances (Cal. Civil Code § 1647) and ***last in order if all else fails*** interpret a contract

1    against the drafter. Cal. Civil Code § 1654 ("In cases of uncertainty not removed by the

2    preceding rules, the language of a contract should be interpreted most strongly against the party

3    who caused the uncertainty.").

4         There is no reason for the Court to invoke this last rule of contract interpretation. The

5    Indemnification Agreement is not ambiguous or uncertain, and it does not misrepresent any fact

6    to Plaintiff.

7    **B.    BOH's Investigation Was Not Complete On October 4, 2006**

8         Plaintiff argues without any authority that BOH "had a duty to promptly transfer the

9    [stolen] funds [to her] … on or before October 5, 2006." Opp. Brief at 5:2-3.[1] As Plaintiff earlier

10    conceded at the hearing on BOH's motion to dismiss the FAC, the Customer Deposit Account

11    Agreement governs the bank's and Plaintiff's depository relationship. The Customer Account

12    Agreement directly addresses BOH's duty to investigate an unauthorized transaction claim such

13    as those Plaintiff raised in her forgery affidavits (collective Exh. A to SAC):

14         **Unauthorized Transactions.** *** If you claim a credit or refund
         because of an unauthorized transaction, you agree to provide us
15         with a declaration containing whatever reasonable information we
         require regarding your account, the transaction and the
16         circumstances surrounding the claimed loss. You also agree to
         make a report to the police and to provide us with a copy of the
17         report, upon request. *We will have a reasonable period of time to
         investigate* the circumstances surrounding any claimed loss.
18         During our investigation, we will have no obligation to
         provisionally credit your account, unless otherwise required by law
19         (e.g., in connection with certain consumer electronic fund transfer
         services). (See, Takahashi Decl., filed in support of BOH's motion
20         to dismiss the FAC, Exh. 1, at p. 22; emphasis supplied.)

21         Thus, Plaintiff expressly agreed that BOH had a "reasonable period of time" to conduct an

22

23         [1] Plaintiff also argues that BOH did nothing after October 4, 2006 to investigate her claims
    (Opp Brief at 4-5), but her SAC allegations contradict that argument. According to Plaintiff,
24    between October 2 and 25, 2006, BOH provided forgery claim forms for Plaintiff to complete
    (SAC, ¶ 31), it took information from her about the forgery, both over the phone and in person
25    (SAC, ¶¶ 29, 31), it took information from Mr. Niroula about the alleged forgery (SAC, ¶ 34), it
    exchanged information with Plaintiff and Mr. Niroula in the course of its investigation to
26    determine if Plaintiff's claims were legitimate (SAC, ¶ 34), it froze Mr. Niroula's accounts as part
    of that investigation (SAC, ¶ 33), it forwarded $41,000 at Plaintiff's request to her Wells Fargo
27    account in San Francisco (SAC, ¶ 43), and BOH responded to Plaintiff's request that it release the
28    frozen funds to Mr. Niroula rather than continue its fraud investigation (SAC, ¶¶ 44-46).

4

1    investigation into her forgery claims, not that BOH had two days, as she now argues.  During the

2    course of the bank's investigation, and 23 days after Plaintiff first asserted her forgery claims by

3    telephone, she withdrew her claims.  BOH asks the Court to judicially notice that twenty-three

4    days is a reasonable period of time to investigate a $508,000 forgery claim.

5    **III.    DISCUSSION**

6        **A.    <u>Standard Of Review</u>**

7        Plaintiff is not being held to an inappropriate standard by which she must "prove" her

8    claims.  Rather, she is required to plead them adequately and, when she contradicts herself or is

9    estopped to assert facts or claims she previously contradicted, she is barred from doing so.

10       The United States Supreme Court in *Bell Atlantic Corporation v. Twombly*, 167 L.Ed.2d

11   929, 940 (2007) recently clarified the burden plaintiffs have to defeat a Rule 12(b)(6) motion:

> While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide "grounds" of his "entitle[ment] to relief" requires more
> than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do.  Factual allegations must
> be enough to raise a right to relief above the speculative level ... .
> (Italics in original; internal citations and quotations omitted.)

16       Similarly, the Ninth Circuit in *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55

17   (9th Cir. 1994) held the district court must construe a plaintiff's complaint in the light most

18   favorable to her, but it is not "required to accept legal conclusions cast in the form of factual

19   allegations if those conclusions cannot reasonably be drawn from the facts alleged."

20       Plaintiff here makes formulaic allegations designed to fall within the various statutory and

21   common law grounds for asserting a justiciable claim, but without facts to support her conclusory

22   allegations.  In addition, the facts she does plead often contradict her conclusions.  Under such

23   circumstances, dismissal is appropriate.  *Id.*

24       Also, BOH is not impermissibly attacking claims previously approved by this Court.  The

25   Ninth Circuit has ruled that, when a party files an amended complaint, a defendant can attack the

26   ***entire*** amended pleading.  *Sidebotham v. Robison*, 216 F.2d 816, 823 (9th Cir. 1954) ("on filing a

27   third amended complaint which carried over the causes of action of the second amended

28   complaint, the appellees were free to challenge the entire new complaint.").

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2193449v2

**BOH'S REPLY BRIEF ISO ITS MOTION TO DISMISS SAC– CASE NO. 3:07-CV-04371-JSW**

**B.     Choice Of Law**

BOH is not attempting to relitigate decided issues.  Indeed, for the most part, BOH does not contend that California and Hawaii law differ in any material respect with regard to the claims and defenses asserted in this litigation to date.[2]  This issue is primarily relevant to whether California's Business & Professions Code § 17200 has extraterritorial effect (it does not), which is addressed below.

Rather, in its motion to dismiss the SAC, BOH merely identified and questioned a fact stated in the Court's January 10 Order – "that BOH is alleged to have released funds to Plaintiff in San Francisco."  This reference apparently formed one basis for the Court's conclusion that California law governs the Indemnification Agreement (see, Order at 7:5), but it appears to be contradicted by the facts that Plaintiff pleaded in her FAC.

The FAC alleged that the frozen funds were released *to Niroula's BOH account no. 0002-933063* (which was in Honolulu, which BOH believes the parties do not contest), not that BOH released those funds *to Plaintiff* in San Francisco.  See, FAC, ¶ 46 and FAC Exhibit "B."  At Plaintiff's request, BOH <u>did</u> wire $41,000 to Plaintiff's Wells Fargo account in San Francisco, which she then loaned to Mr. Niroula (see, SAC, ¶ 43), but those funds do not appear to form the basis for Plaintiff's challenge to the Indemnification Agreement, or to be germane to interpretation of the Indemnification Agreement.  That $41,000 wire transaction is separate from the $257,000 in frozen funds released in Mr. Niroula's Honolulu bank account and the $508,000 worth of forgery claims referenced in the Indemnification Agreement.

**C.     Plaintiff Is Estopped To Contradict The Withdrawal Of Her Forgery Claims, And Those Claims Are Absolutely Precluded By Commercial Code § 4-406(f)**

By alleging first that the funds came from her account via unauthorized checks signed by Mr. Niroula (see SAC, ¶ 22 And Exh. A), and then withdrawing those claims (SAC Exh. B), Plaintiff informed BOH that Mr. Niroula was ***authorized*** by her to withdraw funds from her

---

[2]  This generalization does not apply to Plaintiff's claims under Hawaii's UCL provisions, where Hawaii law applies, or her claims under Cal. Business & Professions Code § 17200, where California law applies.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2193449v2

**BOH'S REPLY BRIEF ISO ITS MOTION TO DISMISS SAC– CASE NO. 3:07-CV-04371-JSW**

1    account.  (A check signed by someone other than the account holder is **not** a forgery, if the

2    account holder **authorizes** a third party to sign for her.  Commercial Code §§ 3-401(a) and 1-

3    201(41).)

4         Plaintiff argues that, by challenging Plaintiff's reassertion of her forgery claims in

5    November 2006, BOH is attempting to relitigate an issue resolved by the Court's January 10

6    Order.  Opp. Brief at 11-12.  That is not the case, and BOH is entitled in any event to challenge

7    the entire Second Amended Complaint.  *Sidebotham v. Robison*, *supra*, 216 F.2d at 823.  Rather,

8    BOH contends that, having **authorized** Mr. Niroula to withdraw funds from her account by the

9    Indemnification Agreement, and having specifically demanded that BOH release those funds to

10   Mr. Niroula to the bank's prejudice, Plaintiff is estopped to make a contrary assertion and demand

11   that BOH refund based upon allegedly **unauthorized** transactions.

12        Plaintiff's attempt in the SAC to reverse positions and reassert withdrawn forgery claims

13   triggers the doctrine of equitable estoppel, codified at Cal. Evidence Code § 623, which provides:

14              Whenever a party has, by his own statement or conduct
                intentionally and deliberately led another to believe a particular
15              thing true and to act upon such belief, he is not, in any litigation
                arising out of such statement or conduct, permitted to contradict it.
16

17        For equitable estoppel to bar an assertion previously contradicted, five elements must be

18   present, which are discussed below.  13 Witkin, Summary of Cal. Law (10th ed. 2005) "Equity,"

19   § 191, pp. 527-528.  All five were pleaded in the SAC or are set forth in Ms. Hisamatsu's

20   Declaration in support of her summary judgment motion, which was filed concurrently with the

21   bank's motion to dismiss:

22        •    **A representation or concealment of material facts**.  Plaintiff concealed from

23   BOH the material fact that she intended to release her forgery claims **only if** Mr. Niroula's

24   $890,000 check cleared.  "In the event Defendant Niroula returned her family savings, Plaintiff

25   intended to withdraw her claims to BOH … ."  SAC, ¶ 39.  "I never received the $890,000

26   promised by Mr. Niroula and I promptly notified BOH **after** the check did not clear.  As a result, I

27   could not withdraw the forgery dispute, in exchange, with Mr. Niroula."  Hisamatsu Decl., ¶ 15;

28   emphasis supplied.  Plaintiff does not allege that she informed BOH that this was her secret

7

intention.

- **Made with knowledge, actual or virtual, of the facts**. Plaintiff alleges and declares that she did not intend to withdraw her forgery claims if the $890,000 check did not clear. Thus, she had knowledge of facts that she does not allege she disclosed to BOH -- her secret intention to reassert her withdrawn forgery claims if the $890,000 check did not clear. *Id.*

- **To a party ignorant, actually and permissibly, of the truth.** Plaintiff fails to allege or declare that BOH knew she intended to reassert her forgery claims if the $890,000 replacement check failed to clear.

- **With the intention, actual or virtual, that the ignorant party act on it.** Clearly, Plaintiff intended that BOH release the frozen funds to Mr. Niroula, which is the reason she signed the Indemnification Agreement. She alleges that "BOH would not release the hold on Kaushal Niroula's BOH account unless Plaintiff signed the form." SAC, ¶ 45. She also states: "I signed BOH's form (Exh. B) because I thought Mr. Niroula had paid me the $890,000, and because I was cooperating with BOH and Niroula to get the account reopened so that money could be wired out of Nepal and save his family." Hisamatsu Decl., ¶ 18. She does not allege or declare that BOH was aware that she would reassert her forgery claims if the $890,000 check failed to clear. Rather, the Indemnification Agreement, which BOH prepared, reads "I, Megumi Hisamatsu, *for reasons best known to myself*, wish to withdraw my forgery dispute … ." SAC, Exh. B; emphasis supplied.

- **That party was induced to act on it**. There is no dispute that BOH released its hold on the funds in Mr. Niroula's account, as requested by Plaintiff, when BOH received the signed Indemnification Agreement. Plaintiff previously alleged in the FAC (but deleted from the SAC) this allegation: "Upon receipt of a copy of the form, BOH released its hold on the criminal, defendant Kaushal Niroula's BOH account # 0002-933063 for the balance of $257,546.25 (Plaintiff's money)." FAC, ¶ 46. Although she did not plead that fact in the SAC, Plaintiff is bound by that admission in the FAC. *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) ("[w]hen a pleading is amended or withdrawn...it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated... .").

8

1    Thus, all five elements of equitable estoppel can be found in the allegations of the FAC,

2    the SAC, and the admissions in Plaintiff's declaration.    Plaintiff's statements and conduct

3    prejudiced BOH by releasing to Mr. Niroula funds which the bank had placed on administrative

4    hold.  Had Plaintiff informed BOH of the clearly material fact that her withdrawal of her forgery

5    dispute was conditioned on the $890,000 check clearing, BOH could have acted to protect its

6    interests, which Plaintiff now argues should be debited by $508,000.    Notably, Citibank had

7    already warned Plaintiff that the check would not be good funds until October 25, 2006, but

8    Plaintiff ignored that warning and took the risk that the check might not clear when she withdrew

9    her forgery dispute.  She cannot reassert those forgery claims here as if withdrawing them was a

10   nullity.

11       Plaintiff is estopped to contradict her pre-litigation Indemnification Agreement statement

12   that she withdrew all of her forgery claims, and she is also estopped to contend that her

13   November 2006 telephone call to BOH reinstated her withdrawn forgery claims.    Her forgery

14   claims are therefore absolutely precluded by Commercial Code § 4-406(f).

15   **D.**   **Plaintiff's Claims Attacking The Indemnification Agreement Should Be**

16        **Dismissed Without Leave To Amend**

17        **1.**   **Count 9 (Rescission Based On Undue Influence) Should Be Dismissed**

18       Plaintiff argues that there is no need to restore anything of value to BOH in order to

19   rescind the Indemnification Agreement.  Opp. Brief at 14:4-9.  However, she ignores that the

20   $257,000 in frozen funds, while provisionally her funds, were being held to reimburse BOH for

21   crediting Plaintiff's account for the $508,000 that BOH paid on allegedly unauthorized

22   signatures.  Plaintiff withdrew her forgery claims and instructed that those funds be released to

23   Niroula, who absconded with all $508,000.  This will certainly prejudice BOH if Plaintiff can

24   reassert her claims by rescinding the Indemnification Agreement and demanding full repayment

25   from BOH.  Plaintiff makes no offer to undo that prejudice, because she cannot undo it.

26       It is not clear what "undue influence" Plaintiff alleges, but she argues that BOH's conduct

27   was akin to an insurance company obtaining a release from an accident victim in a hospital.  Opp.

28   Brief at 15:18-20.  But Ms. Hisamatsu was not in a hospital wearing a body cast.  She had flown

9

1  to San Francisco of her own accord to get an $809,000 check "as an apology." She was

2  bargaining with a liar, thief, crook and confidence man, hoping to be repaid in full plus a bonus,

3  without consulting anyone but him as to how to go about that.

4       If there was undue influence, it was by Mr. Niroula, not BOH. But Plaintiff volunteered

5  to work with Mr. Niroula when she flew to meet him, and she alleges no facts that BOH

6  conspired with Mr. Niroula to influence her unduly. As this Court noted in the January 10 Order,

7  Plaintiff failed to allege facts necessary to show an agreement by BOH to participate in the

8  alleged conspiracy with Niroula. Order at 12:13-15. There are no new facts in the SAC which

9  establish such an agreement by which BOH would be part of Mr. Niroula's undue influence.

10      Plaintiff's argument that BOH "concedes that it did nothing between the date it received

11  notice of the forged checks (10/3/06) and the date Ms. Hisamatsu went to San Francisco" (Opp.

12  Brief at 16:3-4) has been addressed above. BOH did many things to investigate the alleged

13  forgeries, but Plaintiff cut short that investigation to recover $890,000 through self help. Her

14  argument that BOH "at no time intended to either investigate the claims in the forgery affidavits

15  (dated 10-3-06), or to pay the claims" (Opp. Brief at 16:13-14) is without factual support and

16  rebutted by her allegations of the many things she alleges BOH did to investigate the alleged

17  forgeries during the "reasonable period of time" allowed by the Customer Account Agreement to

18  do so.

19      Plaintiff's argument that BOH repeatedly refused to "call the police" (Opp. Brief at 17:5)

20  is contradicted by the Customer Account Agreement, by which Plaintiff agreed that *she* would

21  make a police report and submit it to BOH if requested. Takahashi Decl., Exh. 1, at p. 22;

22  emphasis supplied ("*You also agree to make a report to the police* and to provide us with a copy

23  of the report, upon request.")

### 2.    Count 10 (Improper Third Party Conduct) Should Be Dismissed

25      Plaintiff argues that she alleged in SAC paragraph 19 that "confidential information was

26  passed easily from BOH to the criminal" (Opp. Brief at 17:20-21) but that is not what she alleged

27  (she alleges that BOH employees helped her open an account with Mr. Niroula present, which

28  was her choice). She also overlooks her SAC paragraph 20, in which she alleges that Mr. Niroula

10

1    "stole Plaintiff's identity," not that BOH conspired with him to steal it.

2    Plaintiff relies on SAC paragraph 89, which alleges in conclusory fashion that BOH

3    "maneuvered Plaintiff into a sham investigation which included direct contact with a known

4    forger and thief." Opp. Brief at 18:18-19. But Plaintiff alleges no facts to show that BOH

5    "maneuvered" Plaintiff into direct contact with Mr. Niroula or that BOH's investigation was a

6    "sham."

7    Plaintiff quotes her paragraph 95 allegation that "there is strong evidence that BOH and

8    Mr. Niroula acted together toward the common goal of putting Plaintiff's money into the check

9    forger's hands," but where is that "strong evidence"? As this Court noted in its January 10 Order,

10
11
12
13
14
15
16
> [W]hen all of the allegations of the FAC are taken together, they do
> not support an inference that BOH had knowledge of Mr. Niroula's
> scheme and cooperated with him with the intent to further that
> scheme. Rather, Ms. Hisamatsu asserts, generally, that BOH
> employees knew and appeared to be friendly with Mr. Niroula and
> may even have "vouched" for him. Even considering these facts as
> circumstantial evidence, they simply do not support a reasonable
> inference that BOH knew of and intended to join in a conspiracy
> with Mr. Niroula. Moreover, Ms. Hisamatsu alleges that BOH
> froze Mr. Niroula's accounts after Ms. Hisamatsu asserted that
> Mr. Niroula forged her signature of the temporary checks, which
> undermines her assertion that BOH and Mr. Niroula worked
> together to defraud her.

17
18
19
20
> Accordingly, this claim is dismissed with leave to amend. If the
> only factual amendment Ms. Hisamatsu can make is the alleged
> phone call between Mr. Niroula and Mr. Dodds before BOH sent
> the Indemnification Agreement to her, the Court finds that the
> phone call, without more, is insufficient to support the inference of
> an agreement between BOH and Mr. Niroula. Order at 12:18-13:0.

21    There are no new conspiracy allegations in the SAC, other than that the Indemnification

22    Agreement allegedly confused Plaintiff into believing that the funds being released to Mr. Niroula

23    were his, not hers, but Plaintiff's confusion does not establish a conspiracy or undue influence.

24    The alleged conspiracy is not pleaded with facts which support an inference of an agreement

25    between BOH and Mr. Niroula to defraud or damage Plaintiff.

26    Finally, Plaintiff's reliance on *Odorizzi v. Bloomfield School Dist.*, 246 Cal.App.2d 123,

27    132 (1966) (Opp. Brief at 19:12-13) for the argument that undue influence involves multiple

28    persuaders is misplaced, for two reasons. First, the *Odorizzi* court never discussed "multiple

11

1   persuaders." Second, BOH was not using its alleged "undue influence" to convince Plaintiff to

2   accept a rubber check, which formed the secret basis for her decision to sign the Indemnification

3   Agreement. It merely told her that it would not release funds she swore were stolen unless she

4   withdrew her forgery claims. There is nothing one-sided or unduly influential about that bargain.

### 3.    Count 11 (Rescission Based On Mutual Mistake Of Fact) Should Be Dismissed

7       Plaintiff misses the point by arguing that a "mutual mistake of fact concurred in by the

8   parties invalidates a release." Opp. Brief at 19:17-18, citing and quoting from *O'Meara v.*

9   *Haiden*, 204 Cal. 354, 358 (1928). First, there was no mutual mistake of fact concurred in by

10  BOH. Unknown to BOH, Plaintiff thought she could withdraw her forgery claims and reassert

11  them if the $890,000 check failed to clear. Nothing about that mistake was known by or

12  concurred in by BOH, and she does not allege otherwise. Second, BOH does not contend that the

13  Indemnification Agreement is a release.

14      Plaintiff was not just negligent in failing to know that the $890,000 check had not cleared,

15  she was grossly negligent. Her reliance on *Harris v. Rudin*, 95 Cal.App.4th 1332, 1342 (2002)

16  (Opp. Brief at 20:2-3) supports BOH, because *Harris* holds that a party grossly negligent in

17  failing to discover a fact, such as that the $890,000 check had not cleared, is not entitled to

18  rescission.

19      Plaintiff admits that she knew she could have confirmed the check's clearing before

20  withdrawing her forgery claims, but she failed to do so. That is not a mutual mistake of fact, but

21  a grossly negligent and unforgivable mistake on her part. Plaintiff does not allege in the SAC

22  what she argues in her brief, that BOH knew about Plaintiff's reliance on the $890,000 check's

23  clearing as a condition to her withdrawing her forgery claims (Opp. Brief at 20:20-21), so BOH

24  was not mutually mistaken about Plaintiff's secret intention regarding Niroula's repayment

25  performance.

### 4.    Count 12 (Failure Of Consideration) Should Be Dismissed

27      Plaintiff argues that "[b]lowing hot and cold, BOH now contends that it was the funds (not

28  the BOH account) which were to be released to Mr. Niroula by BOH." Opp. Brief at 21:2-3.

12

1    BOH makes no such contention, but has maintained consistently that the Indemnification

2    Agreement instructed BOH, at Plaintiff's request, to release the administrative hold on the funds

3    in Mr. Niroula's BOH account.

4         Shifting focus, Plaintiff argues that the parties had no meeting of the minds, because BOH

5    did not disclose the legal ramification (i.e., ratification) to Plaintiff of her withdrawing her forgery

6    claims. Opp. Brief at 21:17-20. BOH had no duty to do so, as this Court previously held. Order

7    at 9. It was up to Plaintiff to determine through her advisors or on her own what the Agreement

8    meant. Her failure to do so does not mean there was a failure of consideration, only that she does

9    not like the deal she made now that Mr. Niroula's check failed to clear.

10        Plaintiff's arguments about mutuality and ratification are answered by Commercial Code

11   § 3-403 Official Comment 3, which she cites and which provides that Plaintiff can ratify an

12   otherwise unauthorized signature, which she did in an "express statement" contained in the

13   Indemnification Agreement, stating that she was withdrawing her forgery dispute.

14        Plaintiff's reliance on *Van't Road v. County of Santa Clara*, 113 Cal.App.4th 549, 571

15   (2003) is misplaced. Opp Brief at 22:3-7. That case does not stand for the proposition that

16   ratification cannot be implied if the word "ratification" is not used in the Indemnification

17   Agreement, as Plaintiff argues (see, e.g., Opp. Brief at 22:3-4; 24:19-21; 26:12), but that, under

18   the equal dignities rule, a writing can only be ratified by another writing. The written

19   Indemnification Agreement ratified written check signatures by withdrawing the claim that those

20   signatures were forgeries, satisfying the equal dignities rule.

### 5.    Count 13 (Failure Of Consideration By Fault Of BOH) Should Be Dismissed

23        It is the Court's task to interpret the Indemnification Agreement, and the Court can

24   determine from that interpretation that the Agreement did not misrepresent any fact.

### 6.    Count 14 (Unlawful Agreement) Should Be Dismissed

26        BOH asserts no indemnity claim under the third paragraph of the Indemnification

27   Agreement, because Mr. Niroula asserted no claim based upon Plaintiff's forgery claims, which

28   she later withdrew. Had her claims been made in bad faith, out of enmity, or without factual

1    support (for example, if she had made a gift to Mr. Niroula and then had second thoughts causing

2    her to allege a forgery), and Mr. Niroula had sued the bank for putting a hold on those funds,

3    BOH would have looked to Plaintiff for indemnity.    No claim having been asserted by

4    Mr. Niroula, BOH asserts no indemnity claim, and Plaintiff's arguments that the Agreement is

5    unlawful miss their mark.

6                    **7.    Count 15 (Void Consideration) Should Be Dismissed**

7                This count is based on the same Cal. Civil Code § 1668 unlawful agreement argument

8    advanced by Plaintiff in her summary judgment motion, and it fails for the same reasons set forth

9    in BOH's motion to dismiss and in opposition to her motion for summary judgment.

10                  **8.    Count 16 (Undue Influence/Known Vulnerability) Should Be**

11                          **Dismissed**

12              Relying on SAC paragraph 99, Plaintiff **argues**, but did not allege in the SAC, that BOH

13    "knew Plaintiff was alone in San Francisco, being pressure by a thief and check forger." Opp.

14    Brief at 23:16-17.    Paragraph 99 alleges inconclusively and without any supporting facts that

15    "BOH knew that Plaintiff would be 'assisted' by a party interested in, and conniving in the

16    execution of the agreement; that is, a criminal in San Francisco, far away from BOH's offices."

17    Plaintiff offers no facts as to how BOH knew this, and her allegations do not establish that BOH

18    participated in Mr. Niroula's undue influence.

19              As with Plaintiff's failure to allege an agreement to conspire in the FAC, similarly,

20    Plaintiff alleges no facts to show "connivance" or "knowledge" that Plaintiff would be "assisted"

21    by Mr. Niroula.    In contrast, Plaintiff alleges that she routed the Indemnification from and to

22    BOH through her friend, Mr. Brittain, who could as easily have assisted and advised her about

23    signing the Agreement.  SAC, ¶ 44.

24              Plaintiff's argument that BOH refused to call the police (Opp. Brief at 23:20) is addressed

25    above.  It was Plaintiff's obligation under the Customer Account Agreement, not the bank's, to

26    call the police.  BOH did not force Plaintiff to deal with Mr. Niroula directly, as she argues but

27    does not factually allege (Opp. Brief at 23:21).  That was a choice she made without consulting

28    BOH, in order to recover "as an apology" a vastly larger sum than she was owed.

                                                            14

### 9.    Count 17 (Unilateral Mistake Of Fact) Should Be Dismissed

Plaintiff argues that she adequately alleged that BOH knew about her unilateral mistake of fact, but she fails to substantiate that argument with factual allegations in the SAC.   BOH's knowledge that Mr. Niroula was wealthy (Opp. Brief at 24:4-5), that BOH allegedly said Mr. Niroula was not a bad person (Opp. Brief at 24:6), that BOH allegedly did not investigate the forgery claims (Opp. Brief at 24:7), and that BOH and Mr. Niroula allegedly spoke by telephone (Opp. Brief at 24:8-9) do not show that BOH had knowledge of Plaintiff's mistaken belief that she could reassert her forgery claims if the $890,000 check did not clear.

Neither does her argument that BOH should have transferred funds to her on August 24, 2006 (Opp. Brief at 24:10-11), ten days before she signed the forgery affidavits, especially in light of her Customer Account Agreement that BOH had a reasonable time to investigate her forgery claims (which she had not even asserted as of August 24).

Failure to use the term "ratification" does not mean an agreement which effects a ratification is void, as Plaintiff argues.  Opp. Brief at 24:10-21.  "Ratification may be by conduct which is inconsistent with any reasonable contention on his part other than that he intended approving and adopting the act."  *Common Wealth Insurance Systems, Inc. v. Kersten*, 40 Cal.App.3d 1014, 1026 (1974) ("*Kersten*"); *Allied Mutual Insurance Company v. Webb*, 91 Cal.App.4th 1190, 1194 (2001) ("*Webb*").  Plaintiff focuses solely on the "express statements" language of Comment 3 to Commercial Code § 3-304, overlooking that ratification can also occur by "conduct."  If ratification can be by conduct, use of the word "ratification" is not necessary to effect a ratification.  *Id.*

### 10.    Count 18 (Unilateral Mistake Of Fact) Should Be Dismissed

Plaintiff argues (Opp. Brief at 26:21-23) that *Estate of Stephens v. Williams*, 28 Cal.4th 665, 673 (2002) stands for the proposition that an agreement bearing no express terms of ratification, allegedly required by law, is ineffective as a ratification.  However, Williams does not stand for that proposition at all, but holds that oral statements do not meet the equal dignities rule for ratifying a deed of trust, which requires a writing.  The Indemnification Agreement is a written expression of Plaintiff's intention that Mr. Niroula was authorized to withdraw funds from

15

1    her account.   No case holds, and Plaintiff cites none holding, that the absence of the term

2    "ratification" is fatal to an agreement the legal effect of which is to ratify another person's

3    signature as authorized to withdraw funds from her account.   Moreover, *Kersten* and *Webb*,

4    *supra*, hold otherwise.

5          The *Donovan v. RRL Corporation,* 26 Cal.4th 261 (2001) decision and Plaintiff's

6    Restatement Second of Contracts § 157 analysis are not helpful to Plaintiff, for the reasons set

7    forth in detail in BOH's motion to dismiss the SAC, which it will not repeat here.   See, BOH

8    Mot. to Dismiss SAC at 24.   Plaintiff bore the risk of Mr. Niroula's $890,000 check not clearing,

9    and her unilateral and unjustified mistakes of fact that (1) the check had cleared when she signed

10   the Indemnification Agreement and (2) even if it did not clear she could still demand that BOH

11   reimburse her for the forged checks do not justify rescinding the Indemnification Agreement.

### 11.    Count 19 (Fraud In The Inducement) Should Be Dismissed

13         The "fraud" on which Plaintiff relies for this claim is that BOH misrepresented in the

14   Indemnification Agreement that the released funds "belonged to Niroula."   BOH will not repeat

15   its arguments on that subject here.

### 12.    Count 20 (Tort In Essence) Should Be Dismissed

17         As previously stated, BOH does not seek reconsideration of the Court's choice of law

18   ruling, merely clarification of the facts which support the Court's earlier ruling that it will apply

19   California law to the Indemnification Agreement.   If wire transferring $41,000 to a Wells Fargo

20   bank account in San Francisco, which has nothing to do with the Indemnification Agreement, is

21   the basis for choosing California law as governing the Indemnification Agreement, so be it.   If the

22   Court believes that California law applies to the Indemnification Agreement, because BOH wired

23   $257,000 to Plaintiff in San Francisco, that was not and is not alleged.

24         All of the alleged tortious acts on which Plaintiff relies for this claim are set forth in her

25   Opposition Brief at 31:3-10.   They amount to Mr. Niroula speaking to Mr. Dodds, which this

26   Court concluded did not show conspiratorial conduct (Order at 13:5-9), that Dodds and

27   Mr. Niroula "seemed to get along very well," that BOH's allegedly sole purpose in preparing the

28   Indemnification Agreement was to work a forfeiture of Plaintiff's forgery claims, that BOH knew

16

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2193449v2

**BOH'S REPLY BRIEF ISO ITS MOTION TO DISMISS SAC– CASE NO. 3:07-CV-04371-JSW**

1    Plaintiff was in San Francisco, and that Plaintiff was under Mr. Niroula's control. *Id.*

2        Finally, Plaintiff argues that the $890,000 check deposit was "material to BOH's offering,

3    in the IOL, to release Mr. Niroula's funds to him. SAC ¶ 137." Opp. Brief at 31:10-11. But

4    SAC paragraph 137 does not plead to whom the $890,000 check deposit was material. Certainly

5    it was material to Plaintiff, but it was not material to BOH. Plaintiff also does not allege that

6    BOH knew that Plaintiff believed she could renew her withdrawn forgery claims if the check did

7    not clear.

8        It is also nonsensical and a gross misreading of the Indemnification Agreement to argue

9    that BOH would have accepted a conditional withdrawal of Plaintiff's forgery claims and released

10    the hold on funds in Mr. Niroula's account before the $890,000 check cleared. Certainly, there is

11    no logic or sense to BOH doing so if BOH had known, which Plaintiff did not allege in the SAC,

12    that Plaintiff secretly understood that she could renew her forgery claims if the $890,000 check

13    did not clear.

14                **13.    Count 24 (Declaratory Relief) Should Be Dismissed**

15        BOH incorporates its points and authorities opposing Plaintiff's summary judgment on

16    this issue. See, BOH Opp. to S.J. Mot. at 7.

17        **E.    Count 8 (Business & Professions Code § 17200) Should Be Dismissed**

18        Plaintiff relies on *Diamond Multimedia etc. v. Superior Court*, 19 Cal.4th 1036, 1063-64

19    (1999) for the proposition that non-residents are protected by Section 17200 violations

20    *"occurring in California."* Opp. Brief at 32:4; emphasis supplied. She then concludes that SAC

21    paragraph 83 adequately alleges such an in-state violation by "BOH's *out-of-state conduct*."

22    Opp. Brief at 31:24-32:6; emphasis supplied.

23        The SAC alleges no California conduct by BOH. Plaintiff admits that BOH accepted her

24    forgery affidavits in Hawaii, not California. SAC, ¶ 31. BOH froze funds in Mr. Niroula's

25    account in Hawaii. SAC, ¶ 33. BOH sent the Indemnification Agreement to Plaintiff's friend in

26    Hawaii, who returned it to BOH in Hawaii. SAC, ¶ 45. The frozen funds were released to

27    Mr. Niroula in Honolulu, not in San Francisco. FAC, ¶ 45.

28        Thus, the issue is whether Section 17200 can reach conduct occurring solely in Hawaii,

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2193449v2

1    merely because a Japanese resident happens to pass through this State momentarily and signs a

2    contract here. California case law, including that cited by Plaintiff, holds otherwise.

3        The courts may not presume that a California statue has an extraterritorial reach unless

4    such legislative intention appears on the face of the statute or may be reasonably inferred.

5    *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222 (1999). In the case of

6    Section 17200, there is no express statutory language that demonstrates that it was intended to

7    have extraterritorial reach, and case law from other states shows that similar consumer protection

8    statutes are not intended to have an extraterritorial affect. *Id.*

9        In *Norwest*, the court refused to apply the UCL to claims by non-resident class members

10   alleging harm from the defendants' conduct outside of California. The fact that the defendant had

11   offices in California was insufficient to confer a basis for suit under the UCL   Under U.S.

12   Supreme Court case law, the California court held that any other interpretation of Section 17200

13   would render it vulnerable to a due process violation. *Norwest Mortgage, supra*, 72 Cal.App.4th

14   at 226.

15       The unsuccessful plaintiffs in *Norwest*, like Plaintiff here, attempted to rely on *Diamond*

16   *Multimedia*, but their reliance was rejected because the "claims of Category III [class] members

17   [were] for injuries suffered by non-California residents [Plaintiff is not a California resident],

18   caused by conduct occurring outside of California's borders [Plaintiff's complaint alleges that the

19   conduct at issue occurred out of state], by defendants whose headquarters and principal places of

20   operations are outside of California [like BOH]." *Id.* at 225 [text in brackets added].

21       *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 119 (2006) provides no assistance

22   to Plaintiff. In *Kearney*, defendant secretly taped conversations of California residents that were

23   made either (1) ***from*** the defendant ***to*** California residents, or (2) ***to*** the defendants ***from***

24   California residents (conduct which was prohibited by California law). The defendants purposely

25   directed their conduct at and to ***California residents***. Not so here.

26       Plaintiff is not a California resident, and if her claim is that she signed a contract in

27   California, she misses the point. BOH did not send the Agreement to California, but to her agent

28   in Hawaii. SAC, ¶ 44. BOH did not direct any conduct to California. All of its conduct took

18

1   place in Hawaii, including its transmission of the contract. Under no set of circumstances could

2   one conclude that BOH's conduct was directed to California. Plaintiff cannot amend to allege

3   otherwise, as any facts now alleged to that effect would contradict factual admissions she has

4   already made.

5          *Norwest* and *Kearney*, when considered in light of their facts and the facts of this case,

6   demonstrate that the courts take seriously the proscription against giving Section 17200

7   extraterritorial affect and will (as it did in those cases) defeat unconstitutional attempts extend its

8   reach.

9          Finally, BOH does not need a "safe harbor" provision to avoid Section 17200.

10  Commercial Code § 4-406(f) is not a safe harbor provision, but an absolute claim preclusion

11  statute. It does not establish the absence of a wrong, merely the inability by a claimant to pursue

12  damages for unauthorized transactions not reported in accordance with its terms.

13     **F.     Count 26 (Hawaii UCL) Should Be Dismissed**

14         Plaintiff cites no case holding that the Hawaii UCL governs a deposit account relationship

15  or that depositing money in a bank account is a transaction that has UCL protection. But, even if

16  it did, BOH's conduct did not violate that statute.

17         Moreover, Plaintiff's alleged UCL violations are the "foregoing … deceptive acts and

18  practices" (SAC, ¶¶ 197, 199), which is surely too vague and fact-less an allegation to put BOH

19  on notice of her claim. In SAC paragraph 198, she does specify BOH's delay in investigating her

20  claims, but she had previously agreed that the bank had a "reasonable time" to do so. Similarly,

21  she alleges without any factual support that BOH did not intend to pay her forgery claims.

22  Without some factual basis for her conclusory allegations, and she offers none, her UCL claim

23  should be dismissed.

24     **G.     Count 21 (Conspiracy) Should Be Dismissed**

25         Plaintiff failed in the SAC to do what this Court asked her to do – allege facts which

26  "support a reasonable inference that BOH knew of and intended to join in a conspiracy with

27  Mr. Niroula." Order at 12:23-13:1. Her Opposition Brief lists the SAC paragraphs on which she

28  relies, but none answers the Court's concern.

19

1      Instead of identifying facts, Plaintiff repeatedly uses conclusory allegations to describe her

2   conspiracy claim.    For example, that Mr. Dodds and Mr. Niroula agreed by telephone "to

3   maneuver Plaintiff into signing" the Indemnification Agreement (SAC, ¶ 159), that "BOH agreed

4   and conspired with Mr. Niroula to release stolen money to him" (SAC, ¶ 163), that "[t]he bank

5   agreed and conspired with Mr. Niroula to release the money frozen in Niroula's account ..."

6   (SAC, ¶ 164), and that BOH "conspired to violate criminal laws" (SAC, ¶ 165).

7      These conclusions are not fact-based and do not support an inference that BOH knew of

8   and conspired with Niroula to steal Plaintiff's funds.

9      **H.    Fraud-Based Claims Should Be Dismissed**

10      **1.    Count 19 (Fraud In The Inducement) Should Be Dismissed**

11   Plaintiff fails to raise any new issues, so a reply is not necessary.

12      **2.    Count 27 (Promissory Fraud) Should Be Dismissed**

13   BOH is entitled to attack the entire Second Amended Complaint.  *Sidebotham v. Robison*,

14   *supra*, 216 F.2d at 823.  The issue is whether Plaintiff can allege that BOH "never intended to

15   investigate" her claims, without any factual support, when she alleges that BOH did many things

16   to investigate her claims.  As the Court recognized in its Order, just one of the things BOH did,

17   freezing funds in her account, "undermines" her claim that BOH conspired to defraud her.  Order

18   at 13:3.  Furthermore, now that she admits that her motive in withdrawing her forgery claims was

19   to receive a bonus "as an apology," the whole tenure of her claim that BOH never intended to

20   investigate her claims, allegedly proved by the requirement that she sign the Indemnification

21   Agreement, has changed.  BOH *did* investigate her claims, as she admits, and her promissory

22   fraud claim is so contradicted by her other admissions that it should be dismissed.

23      **I.    Counts 25, 28, 32-35 (Negligence, 29 (Conversion), 30 (Equitable Lien), 31**

24      **(Constructive Trust), and 23 (Intentional Infliction) Should Be Dismissed**

25      Regardless of the legal theory which she asserts to recover damages based on the forged

26   checks, Plaintiff is estopped to reassert her forgery claims and forgery losses after withdrawing

27   them.  As a result, her remaining claims are absolutely precluded by Commercial Code § 4-

28   406(f).  As to individual arguments and claims in this category, BOH incorporates points and

20

1   authorities raised in its motion to dismiss the SAC and its opposition to Plaintiff's summary

2   judgment motion.

3   **IV.     CONCLUSION**

4         For all the foregoing reasons, BOH respectfully requests an Order dismissing the Second

5   Amended Complaint without leave to amend.

6

7   DATED: August 22, 2008

                                      BUCHALTER NEMER

8                                           A Professional Corporation

9

10                                   By _____
                                          JAMES B. WRIGHT

11                                         Attorneys for Defendant
                                          BANK OF HAWAII

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28