United States District Court
For the Northern District of California

1
2
3
4
5                      **NOT FOR PUBLICATION**
6              IN THE UNITED STATES DISTRICT COURT
7
8              FOR THE NORTHERN DISTRICT OF CALIFORNIA
9  MEGUMI HISAMATSU,                          No. C 07-04371 JSW
10                Plaintiff,              **ORDER GRANTING**
                                          **DEFENDANT BANK OF**
11      v.                                **HAWAII'S MOTION TO DISMISS**
                                          **SECOND AMENDED**
12  KAUSHAL NIROULA, et al.               **COMPLAINT AND DENYING**
                                          **PLAINTIFF'S MOTION FOR**
13                Defendants.             **SUMMARY JUDGMENT**
                                    /
14
15                      **I.  INTRODUCTION**
16         This matter comes before the Court upon consideration of the Motion to Dismiss
17  Plaintiff's Second Amended Complaint filed by Defendant, Bank of Hawaii ("BOH"), and the
18  Motion for Summary Judgment filed by Plaintiff, Megumi Hisamatsu ("Ms. Hisamatsu").
19  Having considered the parties' papers, relevant legal authority, and the record in this case, the
20  Court HEREBY GRANTS BOH's motion to dismiss, without leave to amend.  The Court
21  HEREBY DENIES Ms. Hisamatsu's motion for summary judgment.
22                      **II.  BACKGROUND**
23  **A.      Procedural History.**
24         On August 13, 2007, Ms. Hisamatsu filed a complaint in the Superior Court of the State
25  of California for the County of San Francisco against Kaushal Niroula ("Mr. Niroula") and
26  BOH.[1]  On August 20, 2007, she filed her First Amended Complaint ("FAC").  On August 23,
27  2007, BOH removed the action to this Court and moved to dismiss the action.  On January 10,
28

_____

        [1]      Mr. Niroula has been served but has not yet answered the SAC.  (*See* Docket
No. 80.)  Ms. Hisamatsu has not yet moved for entry of default against Mr. Niroula.

1    2008, the Court granted in part and denied in part BOH's motion to dismiss or for a more

2    definite statement.  (Docket No. 66 ("Jan. 10 Order").)  On April 9, 2008, Ms. Hisamatsu filed

3    the Second Amended Complaint ("SAC").

4         In the SAC, Ms. Hisamatsu asserts claims for relief against BOH for: (1) Violations of

5    California Business and Professions Code § 17200 ("Section 17200"); (2) Rescission[2]; (3) Tort

6    in Essence; (4) Civil Conspiracy; (5) Fraud in the Inducement; (6) Intentional Infliction of

7    Emotional Distress; (7) Declaratory Relief; (8) Wrongful Withholding of Funds; (9) Unfair or

8    Deceptive Trade Practices in Violation of HRS § 480-1, *et seq.*; (10) Fraud With No Intention

9    to Perform; (11) Negligent Misrepresentation; (12) Conversion; (13) Equitable Lien; (14)

10   Constructive Trust; (15) Gross Negligence; (16) Negligence; (17) Negligent Infliction of

11   Emotional Distress; and (18) Negligence Per Se.

12   **B.    Factual Background.**

13        This lawsuit arises out of a confidence scheme allegedly perpetrated by Mr. Niroula on

14   Ms. Hisamatsu, which she alleges occurred with the assistance and cooperation of BOH.  The

15   following facts, taken from the SAC, are accepted as true solely for the purposes of evaluating

16   BOH's motion to dismiss.  Unless otherwise noted, the facts are undisputed and are viewed in

17   the light most favorable to BOH for purposes of evaluating  Ms. Hisamatsu's motion for

18   summary judgment.

19        On or about July 27, 2006, while on vacation in Hawaii, Ms. Hisamatsu met Mr.

20   Niroula.  (SAC ¶ 6.)  According to Ms. Hisamatsu, who is a Japanese citizen, Mr. Niroula

21   convinced her that he "headed an international consulting company," "that his mother ... was a

22   Nepalese diplomat," that his family was "very rich," and that he was a friend of the Nepalese

23   royal family.  (*Id.* ¶ 7.)  Mr. Niroula was, however, "a criminal from San Francisco," who

24   intended to victimize Ms. Hisamatsu through a combination of criminal hoaxes well known to"

25

26

27

28        [2]     Ms. Hisamatsu asserts eleven claims for relief for rescission, which are based
on separate legal theories.

**United States District Court**
For the Northern District of California

1    BOH.  (*Id.* ¶¶ 8-12.)[3]  Ms. Hisamatsu was not aware of Mr. Niroula's true identity.  (*Id.* ¶¶ 8,

2    14.)

3           Mr. Niroula convinced Ms. Hisamatsu that he could assist her in obtaining an

4    investment visa so that she and her family could spend more time in the United States.  (*Id.* ¶¶

5    7, 10, 15-16.)  As part of the visa process, Mr. Niroula advised Ms. Hisamatsu to open a bank

6    account at an American bank.  (*Id.* ¶¶ 16-17.)  On August 16, 2006, she did so at BOH's

7    Honolulu branch, with the "help" of Mr. Niroula and BOH staff.  (*Id.* ¶¶ 18-19.)  Ms. Hisamatsu

8    alleges that Mr. Niroula introduced her to a BOH employee, Lynn Bronios, "who seemed to be

9    extremely friendly with" Mr. Niroula.  Mr. Niroula also represented that "he had several other

10   friends at BOH who would help with transfers of funds, and eventual verification for American

11   immigration officials."  (*Id.* ¶ 18.)

12          Ms. Hisamatsu executed a signature card, in which she stated: "I ... agree to all of the

13   terms and conditions of the deposit account agreement and disclosure statement, ... a copy of

14   which I acknowledge [BOH] has furnished to me."  (Docket No. 13 (Declaration of Scott I.

15   Takahashi ("Takahashi Decl."), Ex. 2).)  The deposit account agreement and disclosure

16   statement provide, in turn and in part, that:

17          If you discover a check forgery, alteration or other unauthorized transaction
            involving your account, you must promptly notify your branch of account in
18          writing of the relevant facts. ...

19          You are in the best position to discover and report any unauthorized debit to
            your account.  If you fail to notify us within a reasonable time (not exceeding
20          21) days of an unauthorized signature, alteration, forgery, counterfeit check
            or other unauthorized debit to your account, we will not be responsible for
21          subsequent unauthorized transactions by the same wrongdoer.  Without
            regard to care or lack of care of either you or us, if you do not discover and
22          report any such unauthorized transaction *within 60 days after your statement,
            transaction information or the item is made available to you, you are
23          precluded from asserting the unauthorized transaction against us.*

24          If you claim a credit or refund because of an unauthorized transaction, you
            agree to provide us with a declaration containing whatever reasonable
25          information we require regarding your account, the transaction and the
            circumstances surrounding the claimed loss.  You also agree to make a report
26          to the police and to provide us with a copy of the report, upon request.

27

28          ―――――――――――――
            [3]        There are no facts alleged that demonstrate how BOH knew about these
     hoaxes.

                                                    3

1    (Takahashi Decl., Ex. 1, Consumer Deposit Account Agreement and Disclosure Statement and

2    Bankoh Consumer Electronic Financial Services Agreement and Disclosure Statement ("the

3    Deposit Agreement") at 18 (emphasis added).)

4           On August 22, 2006 and September 5, 2006, Ms. Hisamatsu wired $256,179.29 and

5    $299,988.00, respectively, to her BOH account and contends she did so in part because she was

6    "relying on the apparent confidence BOH employees had in Niroula." (SAC ¶¶ 21, 25.) On the

7    day Ms. Hisamatsu opened the account, Mr. Niroula stole three temporary checks, forged them,

8    and deposited the funds into his own account at BOH. (*Id.* ¶¶ 20-24.) Mr. Niroula also

9    convinced Ms. Hisamatsu to send him additional checks "so that immigration could verify that

10   she had both the contacts with the United States and the banking relationship Niroula

11   misrepresented was required for the visa application." (*Id.* ¶ 27.) Mr. Niroula used one of these

12   checks to draw funds from Ms. Hisamatsu's account on September 18, 2006. (*Id.* ¶ 28.) Ms.

13   Hisamatsu contends that BOH neither verified her signature on any of the checks before

14   debiting them from her account nor contacted her about the transactions. (*Id.* ¶¶ 24, 28.)

15          On or about October 2, 2006, Ms. Hisamatsu learned of the forgeries, notified BOH, and

16   executed three affidavits (the "Claim Forms") swearing that the checks were forged. (*Id.* ¶¶ 29,

17   31, Ex. A.) In the Claim Forms, BOH states "the Bank will investigate your Claim," and states

18   that "[p]ayment is contingent upon the results of the Bank's investigation." (*Id.*, Ex. A.) BOH

19   also advises its customer that, by submitting a claim to BOH, he or she agrees to cooperate with

20   the Bank and law enforcement agencies with any investigation. (*Id.*) Ms. Hisamatsu contends

21   that BOH employees refused to contact the police or take any action to recover the funds,

22   required her to return to Hawaii if she wanted to pursue the matter and, at the time she signed

23   the Claim Forms, BOH "had decided not to pay the claim, but to deny it." (*Id.* ¶¶ 30-32.) BOH

24   did, however, subsequently freeze the account in which Mr. Niroula had deposited the funds.

25   (*Id.* ¶ 33.) Ms. Hisamatsu alleges that, as of October 3, 2006, although "BOH had enough

26   information to retransfer <u>all</u> of Niroula's account balance to [her] account," which was slightly

27   over $250,000, it did not do so and did not adequately investigate her claims. (*Id.* ¶¶ 33, 36.)

28

**United States District Court**
For the Northern District of California

1    Ms. Hisamatsu contends that on or about October 4, 2006, Mr. Niroula informed BOH

2    employees that he would return Ms. Hisamatsu's money and assured her that he had sufficient

3    funds in San Francisco to return her money.  (SAC ¶ 34.)  Ms. Hisamatsu also contends that

4    Chester Dods, a BOH employee, told her Mr. Niroula was not a bad person, that Mr. Niroula

5    would return her money, and that there was a reasonable delay in wire transfers due to a bank

6    holiday in Nepal.  (*Id.* ¶ 35.)

7    On or about October 17, 2006, Mr. Niroula contacted Ms. Hisamatsu and represented to

8    her that "his family had been placed in a very dangerous situation due to their planned departure

9    from Nepal, and the only way to save them from harm was to 'borrow'" her money.  (*Id.* ¶ 37.)

10   Ms. Hisamatsu contends that Mr. Niroula made various other representations regarding the

11   delay in being able to reimburse her, including a representation that his sister had been

12   kidnapped.  (*Id.* ¶¶ 37-38.)  Mr. Niroula also convinced Ms. Hisamatsu that she needed to come

13   to San Francisco, California to complete the financial transactions.  (*Id.* ¶ 37.)

14   "On October 20, 2006, as a direct result of BOH's statements in its claim forms and its

15   indulgent conciliatory attitude toward [Mr. Niroula, Ms. Hisamatsu] flew to San Francisco to

16   recover her money."  (*Id.* ¶ 39.)  Ms. Hisamatsu contends that, "[i]n the event ... Niroula

17   returned her family savings, [she] intended to withdraw her claims to BOH. ... If not, [she]

18   reasonably believed that she was still protected by her pending claims at BOH and the bank's

19   assurance of an investigation in its claim forms."  (*Id.* ¶ 39.)  Ms. Hisamatsu opened an account

20   with Citibank, into which Mr. Niroula deposited a check in the amount of $899,000.  Ms.

21   Hisamatsu was advised that the check would not clear for three days.  (*Id.* ¶¶ 39-40.)

22   Ms. Hisamatsu also opened another account with Wells Fargo bank, and "as a further

23   direct result of Plaintiff's pending claims with BOH, Kashal Niroula's control and

24   representations, BOH's statements in the claim form, and BOH's vouching for [Mr. Niroula,

25   Ms. Hisamatsu] acted promptly to help" Mr. Niroula.  (*Id.* ¶¶ 42-43.)  As part of this effort to

26   help Mr. Niroula, Ms. Hisamatsu "called her BOH branch and asked the manager to wire

27   $41,000 to her San Francisco Wells Fargo account.  From those funds," Ms. Hisamatsu loaned

28

1    Mr. Niroula the ransom payment for his sister.  (*Id.* ¶ 43.)  Ms. Hisamatsu contends that during

2    this time, Mr. Niroula convinced her that her life had been threatened.  (*Id.* ¶ 41.)

3           Before BOH released its hold on the frozen funds, it drafted a form entitled

4    "Indemnification of Liability" ("the Indemnification Agreement"), which it gave to one of Ms.

5    Hisamatsu's friends in Honolulu, who then sent the form to California.  (*Id.* ¶¶ 44-45, Ex. B.)

6    Ms. Hisamatsu contends that she "reasonably believed ... that her claims to BOH were not

7    affected by this unofficial looking form, ... that BOH was still investigating," and that the

8    Indemnification Agreement merely was a "temporary formality to facilitate the transfer of

9    Niroula's family funds from Nepal ... ."  (*Id.* ¶¶ 45-46.)  Ms. Hisamatsu contends that no one

10   from BOH explained the Indemnification Agreement to her or offered to translate it for her,

11   even though BOH knew she had difficulty with English.  (*Id.* ¶ 46.)  Ms. Hisamatsu does not

12   allege facts to show how BOH knew she had difficulty with English.

13          The Indemnification Agreement provides that, "for reasons known best to myself," Ms.

14   Hisamatsu wished "to withdraw [her] forgery dispute regarding" the three checks allegedly

15   forged by Mr. Niroula.  She also agreed "that funds ($257,546.25) held in suspense from Bank

16   of Hawaii account #0002-933063, belonging to Kaushal Niroula, as a result of the forgery

17   dispute shall be released to Kaushal Niroula, upon signing this agreement."  (*Id.*, Ex. B.)  The

18   Indemnification Agreement also provides that Ms. Hisamatsu agreed "to indemnify and hold

19   harmless [BOH,] ... from and against any and all losses, damages, costs and reasonable attorney

20   fees resulting from or related to claims, liabilities, suits, actions, or proceedings arising out of

21   [BOH] having paid the funds to Kaushal Niroula at" Ms. Hisamatsu's request.  (*Id.*)

22          On October 31, 2006, Ms. Hisamatsu learned that the check deposited in the Citibank

23   account had not cleared and that Mr. Niroula had not reimbursed the funds as promised.

24   "Nonetheless, [Ms. Hisamatsu] reasonably believed that BOH would still keep its promise of

25   10-3-06 to pay the claims since the investigation, by now, was complete."  (*Id.* ¶ 47.)  Ms.

26   Hisamatsu called BOH during November 2006 to "specifically alert it that she wanted BOH to

27   pay her claims for the unauthorized transactions."  She alleges that Chester Dods refused to do

28   so.  (*Id.* ¶ 48.)

United States District Court
For the Northern District of California

6

**United States District Court**
For the Northern District of California

**C.      The January 10 Order.**

In its January 10 Order, the Court determined that, if the Indemnification Agreement could be enforced against Ms. Hisamatsu, any claims premised upon asserting the forgeries against BOH would be precluded, under Uniform Commercial Code Section 4-406(f), as untimely ("the UCC Preclusion Argument"). (Jan 10 Order at 8:7-17.) The Court therefore dismissed Ms. Hisamatsu's claims for Conversion, Tort in Essence, Constructive Trust, Equitable Lien, Wrongful Withholding of Funds, Gross Negligence, Negligence, Negligence Per Se, Violations of Section 17200, Declaratory Relief, and Rescission with leave to amend to address the validity of the Indemnification Agreement. (*Id.* at 9:11-11:16, 13:17-14:17.)

The Court also dismissed without leave to amend Ms. Hisamatsu's claims that she was fraudulently induced to sign the Indemnification Agreement based on BOH"s alleged failure to disclose the legal consequences of signing that document and her claims for breach of fiduciary duty. (*Id.* at 10:3-7, 13:9-15, 15:12-28, 18:23-19:16.) The Court also dismissed, with leave to amend, Ms. Hisamatsu's claims for conspiracy, violations of Hawaii's unfair competition law, negligent misrepresentation, intentional infliction of emotional distress and denied BOH's motion to dismiss claims premised upon promissory fraud. (*See id.* at 11:18-13:7, 14:19-18:21.)

**III.  ANALYSIS**

The Court prefaces this Order with the statement that it appears evident from the face of the SAC, that Ms. Hisamatsu was the unwitting, and unwilling, victim of Mr. Niroula's confidence schemes. The issue before this Court is whether BOH also is liable to Ms. Hisamatsu. For the reasons set forth herein, the Court concludes that Ms. Hisamatsu has not set alleged enough facts to state claims for relief that are plausible on their face. Because she has had ample opportunities to set forth facts supporting her claims against BOH, the Court concludes that it would be futile to grant her leave to amend. Accordingly, all claims against BOH are hereby dismissed with prejudice.

//

//

//

**A.    Applicable Legal Standards.**

     **1.    Motion to Dismiss For Failure to State a Claim.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted.  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the grounds of [its] entitlement to relief."  *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (citations omitted).  The pleading must not merely allege conduct that is conceivable.  Rather, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974.

Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.  Such consideration does not convert the motion to dismiss into a motion for summary judgment.  *See United States v. Ritchie*, 343 F.3d 903, 908 (9th Cir. 2003); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

     **2.    Motion for Summary Judgment or Adjudication of Issues.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

United States District Court

For the Northern District of California

Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material," if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must demonstrate affirmatively that no reasonable trier of fact could find other than for the moving party. *Id*.; *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the non-moving party meets its initial burden, the party opposing summary judgment must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th 1996) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.      Choice of Law.**

In its January 10 Order, the Court ruled that it would apply Hawaii law to claims relating to the Deposit Agreement, to the Claim Forms signed in Hawaii, and to Ms. Hisamatsu's negligence based claims and would apply California law to Ms. Hisamatsu's independent tort claims against BOH. (Jan. 10 Order at 6:28-7:3.) The Court also applied California law to interpret the Indemnification Agreement. BOH argues that the Court should apply the law of Hawaii both to the interpretation of the Indemnification Agreement and to determine whether it can be rescinded on the basis that the parties intended the Indemnification Agreement to be performed there. *See* Cal. Civ. Code § 1646. The Court need not determine

9

United States District Court

For the Northern District of California

1   whether California or Hawaii law applies, because BOH relies exclusively on California law to

2   uphold the validity of the Indemnification Agreement and has not shown there is a conflict

3   between the laws of these two jurisdictions.  Accordingly, the Court again applies California

4   law to interpret the Indemnification Agreement and to determine its validity.

5   **C.      The UCC Preclusion Argument.**

6          BOH renews the UCC Preclusion Argument in support of its motion to dismiss the SAC.

7   UCC § 4-406(f) provides that:

> [w]ithout regard to care or lack of care of either the customer or the bank, a customer who does not within one year[4] after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.  If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under Section 4-208 with respect to the unauthorized signature or alteration to which the preclusion applies.[5]

13          Section 4-406(f) operates as an issue preclusion statute.  Thus, if a customer does not

14   notify a bank of an alleged unauthorized signature within one year, or in this case, sixty days,

15   "if a customer must prove a forgery in order to establish a claim [against the bank] then the

16   customer will not be able to establish the claim because he or she is precluded from proving the

17   forgery.  On the other hand, any claim that is not dependent upon proof of the forgery will not

18   be precluded, ... although the customer will still be precluded from asserting the forgery in

19   pursuing that claim."  *Roy Supply v. Wells Fargo*, 39 Cal. App. 4th 1051, 1066 & n.16 (1995);

20   *see also id.*, 39 Cal. App. 4th at 1072.

21          It is undisputed that Ms. Hisamatsu initially notified BOH of the alleged forgeries within

22   the sixty days required by the Deposit Agreement.  BOH argues, however, that when she signed

23   the Indemnification Agreement, she withdrew her contention that Mr. Niroula forged the three

---

[4]      The parties agree that, in this case, the one year time frame contemplated by section 4-406(f) has been shortened to sixty days because of the terms of the Deposit Agreement.  Haw. Rev. Stat. § 490:4-103(a); *see also* Cal. Comm. Code § 4103.

[5]      Both Hawaii and California have adopted this provision of the UCC.  *See* Haw. Rev. Stat. § 490:4-406(f); Cal. Comm. Code § 4406(f).  Once again, the Court could not locate any Hawaiian cases applying or interpreting this provision of the UCC and the parties have not cited any such cases.  Accordingly, the Court again looks to California law for guidance.

United States District Court

For the Northern District of California

1    temporary checks.  Thus, BOH argues that the first clause of the Indemnification Agreement

2    precludes any claims against BOH that are premised on the alleged forgeries.  Ms. Hisamatsu

3    seeks to rescind the Indemnification Agreement on a number of legal theories.  Therefore,

4    resolution of the UCC Preclusion Argument depends whether Ms. Hisamatsu can avoid the

5    effect of the Indemnification Agreement.  The Court now turns to that question.

6    **D.    The Indemnification Agreement Is Enforceable.**

7            Ms. Hisamatsu alleges that the Indemnification Agreement should be rescinded on the

8    basis that: (1) it was procured by undue influence, absent a confidential relationship (Count 9);

9    (2) it was procured by the improper conduct of Mr. Niroula (Count 10); (3) it is the product of

10   mutual mistake (Count 11); (4) there is a failure of consideration (Count 12); (5) there is a

11   failure of consideration through the fault of BOH (Count 13); (6) it is an unlawful agreement in

12   violation of California Civil Code § 1668 (Count 14); (7) the consideration for the agreement is

13   void (Count 15); (8) it was procured by undue influence based on a known vulnerability (Count

14   16); (9) it is the product of a unilateral mistake on Ms. Hisamatsu's part through the fault of

15   BOH (Count 17); (10) it is the product of a unilateral mistake on Ms. Hisamatsu's part (Count

16   18); and (11) Ms. Hisamatsu was fraudulently induced to sign it (Count 19).  (SAC ¶¶ 96-146.)

17   BOH moves to dismiss each of these claims for failure to state a claim.  Ms. Hisamatsu, in turn,

18   moves for summary judgment on Counts 9-10, 12, and 13-18.

19           **1.    Counts 9, 10 and 16 Are Dismissed.**

20           "A party to a contract may rescind the contract ... [i]f the consent of the party rescinding

21   ... was ... obtained through ... undue influence, exercised by or with the connivance of the party

22   as to whom he rescinds, or of any other party to the contract jointly interested with such party."

23   Cal. Civ. Code § 1689(b)(1).  "Undue influence consists ... [of] taking an unfair advantage of

24   another's weakness of mind; or ... [of] taking a grossly oppressive and unfair advantage of

25   another's necessities or distress."  *Id.* § 1575.

26           Ms. Hisamatsu alleges that the Indemnification Agreement should be rescinded on this

27   basis because "BOH knew [she] would be 'assisted' by a party interested in, and conniving in

28   the execution of the agreement," that is Mr. Niroula, and that she "had no time to retain

11

competent, trusted advisors." (SAC ¶ 99.) Ms. Hisamatsu further alleges that her signature on the Indemnification Agreement was procured by Mr. Niroula's undue influence and that BOH knew of this fact. (*Id.* ¶¶ 105-110.) Ms. Hisamatsu also that she "suffered from lack of full vigor due to physical exhaustion and emotional anguish as a crime victim ... [and] [a]s such, she had a lessened capacity to make a free contract with BOH," and that BOH "applied its excessive strength to her to secure her agreement, and took unfair advantage of [her] known vulnerability." (*Id.* ¶¶ 125-126)

"[U]ndue influence occurs whenever there results 'that kind of influence or supremacy of one mind over another by which that other is prevented from acting according to his own wish or judgment, and whereby the will of the person is overborne and he is induced to do or forbear to do an act which he would not do, or would do, if left to act freely.'" *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 132 (1966) (quoting *Webb v. Saunders*, 79 Cal. App. 2d 863, 871 (1947)). In *Odorizzi*, the court set forth several factors that are indicative of excessive pressure: "(1) discussion of the transaction at an unusual or inappropriate time, (2) consummation of the transaction in an unusual place, (3) insistent demand that the business be finished at once, (4) extreme emphasis on untoward consequences of delay, (5) the use of multiple persuaders by the dominant side against a single servient party, (6) absence of third-party advisers to the servient party, [and] (7) statements that there is no time to consult financial advisers or attorneys." *Id.* at 133. Applying those factors, the court concluded that the plaintiff had alleged sufficient facts to state a claim that his resignation had been procured by undue influence, where he alleged that the defendants approached him after he had just completed "the process of arrest, questioning, booking and release on bail and had been without sleep for forty hours." *Id.* at 131.

In contrast, in this case, although Ms. Hisamatsu contends that "she suffered from lack of full vigor due to physical exhaustion," she alleges no facts to support this statement. Moreover, although she alleges in a conclusory fashion that BOH knew that Mr. Niroula had threatened her, she does not allege facts to show how BOH had knowledge of this fact. Nor do the facts alleged suggest that the circumstances surrounding the execution of the

12

United States District Court

For the Northern District of California

1   Indemnification Agreement took place in an unusual place or at an inappropriate time.  Further,

2   the friend who routed the Indemnification Agreement to Ms. Hisamatsu was an attorney.  (SAC

3   ¶ 44.)  Even if he did not represent her, it is not reasonable to infer that she had no time to

4   consult him about the consequences of her actions and Ms. Hisamatsu does not allege that BOH

5   denied her additional time to consider the Indemnification Agreement.

6          Finally, Ms. Hisamatsu alleges that she withdrew her forgery dispute and requested that

7   BOH release freeze on the account, because she believed Mr. Niroula was going to pay her

8   $890,000, a sum that exceeded the funds he allegedly stole from her.  (SAC ¶¶ 37-40.)  These

9   allegations cannot be reasonably inferred to support a conclusion that BOH procured her

10  signature on the Indemnification Agreement by way of undue influence.

11         In sum, Ms. Hisamatsu fails to allege facts that suggest BOH applied any, let alone

12  excessive, pressure to obtain her signature on the Indemnification Agreement.  BOH's motion

13  to dismiss these claims is granted, and Ms. Hisamatsu's motion for summary judgment on these

14  claims is denied.

15              **2.      Counts 11, 17 and 18 Are Dismissed.**

16         "A contract may be rescinded ... [i]f the consent of the party rescinding, or of any party

17  jointly contracting with him, was given by mistake[.]"  Cal. Civ. Code § 1689(b)(1).  "Mistake

18  of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making

19  the mistake, and consisting [of] ... [a]n unconscious ignorance or forgetfulness of a fact past or

20  present, material to the contract; or, [b]elief in the presence of a thing material to the contract,

21  which does not exist ... ."  *Id.* § 1577.  "Ordinary negligence does not constitute the neglect of a

22  legal duty as that term is used in section 1577."  *Architects & Contractors Estimating Servs.,*

23  *Inc. v. Smith*, 164 Cal. App. 3d 1001, 1008 (1985).

24         In Count 11, Ms. Hisamatsu alleges that she and BOH "made basically the same mistake

25  as to a material part of the contract; that is, they mistakenly believed that" Mr. Niroula would

26  repay Ms. Hisamatsu "upon BOH's receipt of her signature on BOH's release form."  (SAC ¶¶

27  111-112).  However, Ms. Hisamatsu does not allege that Mr. Niroula's payment to Ms.

28

United States District Court

For the Northern District of California

1   Hisamatsu was material to BOH's decision to enter into the Indemnification Agreement or to

2   release the freeze on his account.  Accordingly, this claim is dismissed.

3        In Counts 17 and 18, Ms. Hisamatsu alleges that the Indemnification Agreement should

4   be rescinded, because: (1) she did not know that Mr. Niroula did not intend to reimburse her for

5   the money he is alleged to have stolen; (2) she did not know that "the object of the agreement

6   was to exempt BOH of all liability to [her];" (3) she did not know BOH "had no intention to pay

7   her claims."[6]  (*Id.* ¶¶ 128, 133.)  To the extent Ms. Hisamatsu contends that BOH had a duty to

8   explain the legal consequences of the Indemnification Agreement, that claim fails for the

9   reasons previously stated by the Court.  (Jan. 10 Order at 8:18-9:10.)  Ms. Hisamatsu also has

10  failed to allege facts to support an inference that BOH knew Mr. Niroula did not intend to

11  reimburse her.  The Court concludes that facts alleged do not show that BOH had reason to

12  know that Mr. Niroula's failed to reimburse Ms. Hisamatsu.  It also cannot reasonably be

13  inferred that BOH caused that event.  Thus, in order to rescind the Indemnification Agreement

14  on the basis of unilateral mistake of fact, Ms. Hisamatsu must demonstrate that: (1) she made a

15  mistake regarding a basic assumption upon which she entered the Indemnification Agreement;

16  (2) that the mistake had a material effect upon the agreed exchange of performances that is

17  adverse to her; (3) that she does not bear the risk of the mistake; and (4) that the effect of the

18  mistake is such that enforcement of the Indemnification Agreement would be unconscionable.

19  *Donovan v. RJL Corp.*, 26 Cal. 4th 261, 282 (2001).

20       If the Court accepts as true the facts that Ms. Hisamatsu entered into the Indemnification

21  Agreement because she believed that Mr. Niroula had paid her $890,000 when he had not, those

22  facts would be sufficient to state facts supporting the first two elements.  However, the Court

23  concludes that Ms. Hisamatsu has not alleged facts to demonstrate that she does not bear the

24  risk of this mistake.  As the *Donovan* court stated, "'[a] party bears the risk of a mistake when

25  ... he is aware at the time the contract is made, that he has only limited knowledge with respect

26

27  _____

28      [6]    This last allegation is more properly addressed in the context of whether BOH
fraudulently induced Ms. Hisamatsu to enter into the Indemnification Agreement and shall
be addressed in the Court's analysis of those claims.

1    to the facts to which the mistake relates but treats his limited knowledge as sufficient.'"

2    *Donovan*, 26 Cal. 4th at 283.

3        Ms. Hisamatsu parrots this language from *Donovan*, when she alleges that "she did not

4    have limited knowledge of the facts," and that she "was not aware that her knowledge was, or

5    could be, limited with respect to the facts to which the mistake related." (SAC ¶¶ 134-135.)

6    Those conclusory allegations, however, are contradicted by her factual allegations that she was

7    informed by Citibank that the proceeds from Mr. Niroula's check would not be available for

8    three days. (SAC ¶ 40.) Thus, at the time she signed the Indemnification Agreement, Ms.

9    Hisamatsu was operating with limited knowledge of the facts, *i.e.* she knew a check had been

10   deposited but she did not know with certainty that Mr. Niroula's check had cleared.

11       The Court concludes that Ms. Hisamatsu has not alleged facts sufficient to establish that

12   she did not bear the risk of her mistake, and she cannot avoid the effect of the Indemnification

13   Agreement on this basis. BOH's motion to dismiss Counts 17 and 18 is granted, and Ms.

14   Hisamatsu's motion for summary judgment on these claims is denied.

15           **3.    Counts 12 and 13 Are Dismissed.**

16       "A party to a contract may rescind the contract ... [i]f the consideration for the obligation

17   of the rescinding party fails, in whole or in part, through the fault of the party as to whom he

18   rescinds[,] [i]f the consideration of the obligation of the rescinding party becomes entirely void

19   from any cause[, or,] [i]f the consideration for the obligation of the rescinding party, before it is

20   rendered to him, fails in a material respect from any cause." Cal. Civ. Code § 1689(b)(2), (4).

21       In Count 12, Ms. Hisamatsu alleges that she did not receive what was promised and the

22   consideration for the Indemnification Agreement "failed on a material matter; that is, payment

23   by a third party to [her] of over $508,000, in exchange for BOH's release of funds to that third-

24   party, Mr. Niroula." (SAC ¶ 115.) However, there are no facts alleged to suggest the payment

25   from Mr. Niroula was the consideration for the Indemnification Agreement.[7]

26

27       [7]   In addition, Ms. Hisamatsu's opposition to BOH's motion suggests that she is
     attempting to premise this claim upon a theory that BOH failed to disclose to her the legal
28   consequences of the Indemnification Agreement. (*See* Opp. Br. at 21:5-20.) This Court has
     determined that theory cannot support a claim for relief.

In Count 13, Ms. Hisamatsu alleges that "[a]t the time ... BOH offered the agreement to [her], BOH had reason to know that the consideration-to [*sic*] pay a third-party funds 'belonging' to him had failed, and that the funds actually belonged to" Ms. Hisamatsu. (*Id.* ¶ 118.) Again, there are no facts to suggest that the payment from Ms. Niroula was consideration for the Indemnification Agreement, and the Court concludes that it cannot reasonably be interpreted to imply that BOH was releasing funds "belonging to" Mr. Niroula. *See* Section III.D.5, *infra*. Rather, a reading of the Indemnification Agreement demonstrates that in return for releasing its hold on funds that Ms. Hisamatsu claimed Mr. Niroula had stolen from her, Ms. Hisamatsu would agree to hold BOH harmless from any third-party claims that might arise. That Mr. Niroula did not live up to his promises does not equate to a failure of consideration between BOH and Ms. Hisamatsu.

BOH's motion to dismiss Counts 12 and 13 is granted, and Ms. Hisamatsu's motion for summary judgment is denied.

### 4.     Counts 14 and 15 Are Dismissed.

"All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668. "An agreement to indemnify a person against an act thereafter to be done, is void, if the act be known by such person at the time of doing it to be unlawful." *Id.* § 2773. In Counts 14 and 15, Ms. Hisamatsu alleges that the Indemnification Agreement should not be enforced, because it violates Sections 1668 and 2773.

The Indemnification Agreement contains three clauses. In the first clause, Ms. Hisamatsu states that "for reasons best known to [herself]," she "wish[ed] to withdraw [her] forgery dispute regarding the following checks[.]" (SAC, Ex. B.) Nothing in this clause purports to exonerate BOH from any wrongful conduct. Moreover, this language clearly states that Ms. Hisamatsu advised BOH that "for reasons known best to herself," she was withdrawing

United States District Court

For the Northern District of California

1    the forgery dispute she had lodged with BOH over the three unauthorized checks.[8]  In the

2    second clause, Ms. Hisamatsu stated that she also "agreed that funds ($257,546.25) held in

3    suspense from Bank of Hawaii account ..., belonging to Kaushal Niroula, as a result of the

4    forgery dispute shall be released to Kaushal Niroula[.]"  (SAC, Ex. B.)  This clause also does

5    not purport to exonerate BOH from any wrongful conduct.

6         In the third clause, Ms. Hisamatsu "agree[d] to indemnify and hold harmless [BOH] ...

7    from and against any and all losses, damages, costs and reasonable attorneys fees resulting from

8    or related to claims, liabilities, suits, actions, or proceedings arising out of [BOH] having paid

9    the funds to Kaushal Niroula at" Ms. Hisamatsu's request.  (SAC, Ex. B.)  Ms. Hisamatsu

10   argues that this clause amounts to a release of liability for "an event to be done by BOH in the

11   future; that is the release of money 'belonging to Kaushal Niroula' to Mr. Niroula."  (MSJ at

12   20:1-2.)  BOH counters that it is not asserting this section against Ms. Hisamatsu "at this time,"

13   and that the section cannot be interpreted to be "a release of liability nor a release of BOH's

14   willful misconduct."  (Mot. at 28:24-25.)  The Court concurs with BOH.

15        First, BOH has not asserted the third section of the Indemnification Agreement against

16   Ms. Hisamatsu.  Further, as noted, BOH relies on the first clause to argue that Ms. Hisamatsu

17   withdrew her claims regarding the unauthorized signatures and, thus, interposes that clause as a

18   defense to her negligence based claims.  Second, the third section is a general indemnification

19   provision and cannot be construed to exculpate BOH from liability to Ms. Hisamatsu for future

20   wrongs.  *See, e.g., Varco-Pruden, Inc. v. Hampshire Const. Co.*, 50 Cal. App. 3d 654, 660

21   (1975).  Accordingly, BOH's motion to dismiss these claims is granted, without leave to amend,

22   and Ms. Hisamatsu's motion for summary judgment is denied.

23        **5.    Count 19 Is Dismissed Without Leave to Amend.**

24        In Count 19, Ms. Hisamatsu alleges that she was fraudulently induced to sign the

25   Indemnification Agreement because BOH misrepresented that the funds it was releasing

26   belonged to Mr. Niroula.  Ms. Hisamatsu has alleged that the $ 267,546.25 was her money.  In

27

28        [8]    The Court's opinion in this regard pertains solely to BOH's liability to Ms.
     Hisamatsu and is not intended to extend to any liability Mr. Niroula may have to her.

United States District Court
For the Northern District of California

1  light of the context surrounding the execution of this document, the Court finds that her

2  interpretation of second clause of the Indemnification Agreement is not reasonable and cannot

3  be read to suggest that BOH was releasing "funds ... belonging to Mr. Niroula." Ms. Hisamatsu

4  also contends that she was fraudulently induced to sign the Indemnification Agreement, because

5  she signed it "under the misapprehension that it was something other than a release; and, that it

6  was merely to allow a transfer of Mr. Niroula's money back to him." (SAC ¶ 145.) This

7  allegation is a variation on Ms. Hisamatsu's argument that BOH should have apprised her of the

8  consequences of signing the document. However, the Court previously rejected that argument.

9  (Jan. 10 Order at 8:18-9:10.) As set forth earlier in this Order, Ms. Hisamatsu also appears to

10  contend that she was fraudulently induced to sign this document on the basis that BOH never

11  intended to pay her claims. However, Ms. Hisamatsu expressly alleges that she signed the

12  document because she believed that Mr. Niroula had paid her $890,000, a sum well in excess of

13  the amount allegedly stolen in the first instance.

14      Accordingly, BOH's motion to dismiss this claim is granted.

15      **6.    The Declaratory Relief Claim (Count 24) Is Dismissed Without Leave to Amend**.

16

17      Ms. Hisamatsu's Declaratory Relief claim is premised upon the dispute over whether the

18  Indemnification Agreement can be enforced against her. (SAC ¶¶ 185-190.) Having

19  determined that it can be enforced, this claim is dismissed, and Ms. Hisamatsu's motion for

20  summary judgment is denied.

21  **E.    The Remaining Claims.**

22      **1.    The Section 17200 Claim (Count 8) Is Dismissed, Without Leave to Amend.**

23      Pursuant Section 17200, "there are three varieties of unfair competition: practices which

24  are unlawful, unfair or fraudulent." *See Daugherty v. American Honda Motor Co., Inc.*, 144

25  Cal. App. 4th 824, 837 (2006); *Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th

26  190, 206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either

27  unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or

28

United States District Court

For the Northern District of California

1  fraudulent (i.e., is likely to deceive members of the public)").  Ms. Hisamatsu premises her

2  Section 17200 claim on all three prongs.  (*See id.* at ¶¶ 86-95.)

3       In Count 8, Ms. Hisamatsu alleges that BOH crafted the Indemnification Agreement for

4  "[t]he sole, undisclosed purpose" of destroying her claims against BOH.  (SAC ¶ 81.)  Ms.

5  Hisamatsu also alleges that BOH "knew [she] was in San Francisco ... and, with the assistance,

6  encouragement and delay by BOH ... was under the control of a criminal," and "refused to pay a

7  valid unauthorized transaction claim; and instead maneuvered [Ms. Hisamatsu] into a sham

8  investigation which included direct contact with a known forger and thief."  (*Id.* ¶¶ 82, 89.)  Ms.

9  Hisamatsu also argues that the Indemnification Agreement is unlawful in that it purports to

10  exculpate BOH from its own tortious acts.  (SAC ¶¶ 95.)

11       BOH argues that Ms. Hisamatsu fails to allege facts sufficient to state a claim under

12  Section 17200.[9]  Ms. Hisamatsu moves for summary judgment on this claim on the basis that

13  the undisputed facts demonstrate that BOH's use of the Indemnification Agreement violated all

14  three prongs of Section 17200.  In its January 10 Order, the Court dismissed this claim with

15  leave to amend to permit Ms. Hisamatsu to allege facts to support a showing that "BOH and Mr.

16  Niroula worked in concert to defraud, or otherwise, injure" her and to state more clearly the

17  bases on which she contended BOH's use of the Indemnification Agreement violated Section

18  17200.

19       The Court has carefully reviewed the SAC and concludes that the allegations are not

20  sufficient to infer that BOH schemed with Mr. Niroula to steal Ms. Hisamatsu savings.  Further,

21  for the reasons set forth in Section III.D, the Court concludes that the Indemnification

22  Agreement is not unlawful and does not violate public policy and also concludes that it cannot

23  be interpreted to suggest that BOH was releasing funds that belonged to Mr. Niroula.

24

25

26       [9]      BOH moves to dismiss this claim because "section 17200 does not support
27  claims by non-California residents where none of the alleged misconduct or injuries occurred
   in California."  *Churchill Village, LLC v. General Elec Co.*, 169 F. Supp. 2d 1119, 1126
   (N.D. Cal. 2000) (citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222
28  (1999)), *aff'd on other grounds*, 361 F.3d 566 (9th Cir. 2004)).  In light of the Court's ruling
   on this claim, it does not reach this argument.

The Court concludes that Ms. Hisamatsu has not alleged facts sufficient to state a claim, and because it previously provided her with an opportunity to amend her claims, grants BOH's motion to dismiss without leave to amend. Ms. Hisamatsu's motion for summary judgment is denied.

> **2.      The Tort In Essence and Negligence Per Se Claims (Counts 20 and 35) Are Dismissed, Without Leave to Amend.**

A claim for "tort in essence" essentially is a claim for negligence per se, which in turn is a claim for negligence in which a plaintiff relies on a violation of a statute or regulation to establish either a duty of care or the requisite standard of care. *See, e.g., Elsner v. Uveges*, 34 Cal. 4th 915, 927 & ns. 7, 8 (2004); *South Bay Bldg. Enters., Inc. v. Riviera Lend-Lease, Inc.*, 72 Cal. App. 4th 1111, 1123 (1999) (concluding that plaintiff had established a "tort in essence" based on proof that defendants had engaged in conduct that, pursuant to statute in question, could give rise to criminal liability); *see also Ono v. Applegate*, 62 Haw. 131, 137 (1980) (standard of conduct in negligence case may be determined by statute).

In Count 20, Ms. Hisamatsu alleges that BOH "tortiously violated" California Civil Code §§ 1572, 1668, 2773, and 3513. These claims are based in part upon Ms. Hisamatsu's allegations that the Indemnification Agreement "has as its object to exempt BOH from responsibility for 'its own fraud or willful injury'" to her, and that the statements therein were fraudulent. (*Id.* ¶¶ 153, 157, 241.) For the reasons set forth above, those allegations fail to state a claim against BOH.

Ms. Hisamatsu also alleges that BOH "tortiously violated" several criminal statutes including California Penal Code §§ 470, 476a, and 518, and 18 U.S.C. §§ 371, 1343. (SAC ¶ 149.) In Count 35, Ms. Hisamatsu claims that BOH violated standards of care by violating the foregoing statutes, as well as California Uniform Commercial Code § 4101, Hawaii Revised Statutes § 490:4-401(a), and 18 U.S.C. §§ 1344, 1956(a)(2)(A). (*Id.* ¶ 240.) These claims are premised upon Ms. Hisamatsu's allegations that BOH aided and abetted Mr. Niroula in "the criminal deposit" of the $890,000 check into Ms. Hisamatsu's Citibank account and aided and abetted him between October 20, 2006 and October 29, 2006, when Mr. Niroula allegedly was

threatening Ms. Hisamatsu.  (*Id.* ¶¶ 155-156, 241) However, the Court concludes that Ms. Hisamatsu has not alleged facts sufficient to show that BOH acted in concert with Mr. Niroula and there are no allegations that it forged any checks or engaged in bank fraud or money laundering.

Finally, in Count 35, Ms. Hisamatsu also premises this claim on allegations that BOH "failed to conform to the standard of care required in handling claims for unauthorized transactions based on forgery."  (*Id.* ¶ 241.)  Because the Indemnification Agreement can be enforced, this claim is precluded.

Because Ms. Hisamatsu has had ample opportunity to set forth facts supporting her claims, these claims are dismissed without leave to amend.

### 3.    The Civil Conspiracy Claim (Count 21) Is Dismissed, Without Leave to Amend.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  *Applied Equipment Corp. v. Litton Saudi Arabia, Inc.*, 7 Cal. 4th 503, 510-11 (1994).  As the California Supreme Court explained in *Applied Equipment*, "[b]y participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors."  *Id.* at 511.  In order to plead a claim for civil conspiracy, a plaintiff must plead facts that show the formation and operation of the conspiracy and damage done to the plaintiff from an act or acts done in furtherance of the common design.  *Id.* at 511.

Ms. Hisamatsu alleges that BOH conspired with Mr. Niroula to release Ms. Hisamatsu's stolen funds, which BOH had frozen in Mr. Niroula's account, to Mr. Niroula.  (*See* SAC ¶ 163.)  Ms. Hisamatsu also contends that BOH knew Mr. Niroula wanted its help to get these funds released, however she does not allege how BOH knew of this fact.  (*Id.* ¶ 162.)  At best, the new allegations set forth in the SAC demonstrate that BOH knew Mr. Niroula and BOH staff were "friendly" with him.  However, there are no facts alleged that suggest that BOH knew

United States District Court

For the Northern District of California

1   Mr. Niroula was, as Ms. Hisamatsu alleges, a dangerous criminal or that it agreed with him to

2   steal her funds.  Accordingly, the Court concludes that Ms. Hisamatsu has failed to allege facts

3   sufficient to state a claim for conspiracy against BOH.  Because Ms. Hisamatsu has had ample

4   opportunity to set forth facts to show an agreement, this claim is dismissed without leave to

5   amend.

6          **4.     The Claim for Fraud in the Inducement (Count 22) Is Dismissed, Without
              Leave to Amend.**

7

8          In Count 22, Ms. Hisamatsu alleges that BOH fraudulently induced her to sign the

9   Indemnification Agreement by misrepresenting that the funds held in the account belonged to

10  Mr. Niroula and "that BOH was merely seeking indemnification from releasing the funds to Mr.

11  Niroula."  (SAC ¶ 168 & Ex. B.)  With respect to the first alleged misrepresentation, as set forth

12  above in Section III.D.5, those facts are insufficient to state a claim.  With respect to the second

13  alleged misrepresentation, the Court previously held BOH was not obligated to explain to Ms.

14  Hisamatsu all of the legal consequences that would have been associated with signing the

15  Indemnification Agreement.  (Order at 8:18-9:10.)  Because Ms. Hisamatsu has had ample

16  opportunity to amend her claims, this claim is dismissed without leave to amend.

17         **5.     The Claims for Intentional Infliction of Emotional Distress (Count 23) and
              Negligent Infliction of Emotional Distress (Count 34) Are Dismissed,
              Without Leave to Amend.**

18

19

20         The elements of a claim for intentional infliction of emotional distress are: "(1)

21  outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the

22  probability of causing emotional distress, (3) severe emotional suffering and (4) actual and

23  proximate causation of the emotional distress."  *Cole v. Fair Oaks Fire Dept.*, 43 Cal. 3d 148,

24  155 n.7 (1987); *see also Lee v. Aiu*, 85 Haw. 19, 34 & n.12 (1997).  As the court noted in *Cole*,

25  this tort imposes liability for "conduct exceeding all bounds usually tolerated by a decent

26  society, of a nature which is especially calculated to cause, and does cause, mental distress."  *Id.*

27         In contrast, "[t]he law of negligent infliction of emotional distress in California is

28  typically analyzed ... by reference to two 'theories' of recovery: the 'bystander' theory and the

'direct victim' theory."  *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071 (1992).  In this case, it

United States District Court

For the Northern District of California

1   is clear that Ms. Hisamatsu is a direct victim, as she alleges that BOH's conduct was directed at

2   her.  In such cases, California courts view negligent infliction of emotional distress not as an

3   independent tort but, rather, as the tort of negligence to which the traditional elements of a

4   negligence claim apply.  *Id.* at 1072 (citing *Marlene F. v. Affiliated Psychiatric Medical Clinic,*

5   *Inc.*, 48 Cal. 3d 583, 588 (1989)).

6          BOH moves to dismiss these claims for relief on the ground that the facts alleged do not

7   state a claim.  Ms. Hisamatsu premises these claims, in part, on the theory that BOH conspired

8   with Mr. Niroula to obtain access to the stolen funds.  For the reasons set forth above in Section

9   III.E.3, these claims are dismissed, without leave to amend.

10         **6.     The Claims for Wrongful Withholding of Funds, Equitable Lien,**
               **Constructive Trust, Negligence and Gross Negligence (Counts 25, 30, 31, 32**
11             **and 33) Are Dismissed, Without Leave to Amend.**

12         These claims all pertain to Mr. Hisamatsu's argument that BOH failed to exercise an

13  appropriate standard of care when it debited the allegedly forged checks in the first instance and

14  thereafter failed to reimburse her.  Because the Court has determined that the Indemnification

15  Agreement can be enforced, these claims are precluded on the basis of BOH's UCC Preclusion

16  Argument.  Accordingly, they are dismissed, without leave to amend.

17         **7.     The Claim for Violations of HRS §§ 480-1 (Count 26), *et seq.*, is Dismissed**
               **Without Leave to Amend.**

18

19         BOH argues that Ms. Hisamatsu fails to allege facts sufficient to state a claim.

20  Assuming *arguendo* that Ms. Hisamatsu has standing to assert this claim,[10] it is premised upon

21  the allegations in the previous 193 paragraphs and contends that "the foregoing [unspecified]

22  practices" were "unfair or deceptive acts or practices."  (SAC ¶ 197.)  Because the Court has

23  concluded that none of the facts alleged or claims asserted in those paragraphs are sufficient to

24  state a claim against BOH, the Court concludes Ms. Hisamatsu has not alleged facts sufficient

25  to state a claim for violations of Hawaii's unfair competition law.  Because Ms. Hisamatsu has

26

27  _____

28         [10]     BOH also argues that Ms. Hisamatsu lacks standing to assert this claim.
    However, in light of the Court's ruling on the merits of the claim, the Court does not reach
    this issue.

1   had ample opportunity to set forth the facts supporting each of her claims, this claim is

2   dismissed without leave to amend.

3          **8.**    **The Claim for Promissory Fraud (Count 27) is Dismissed, Without Leave to Amend.**

4

5        Under Hawaii law a promise made without the intent to perform is considered actionable

6   fraud.  *See Touche Ross Ltd. v. Filipek*, 7 Haw. App. 473, 480 (1989); *Eastern Star Inc. v.*

7   *Union Building Materials Corp.*, 6 Haw. App. 125, 140 (1985).  In Count 27, Ms. Hisamatsu

8   alleges that BOH, in its Claim Forms, represented that it would investigate her claims and that

9   the decision about whether or not to pay the claims was contingent upon the results of that

10   investigation.  (SAC ¶ 202.)  Ms. Hisamatsu alleges that when BOH made those promises "it

11   had no intention of performing them, and had already decided to deny the claims," and that it

12   made these promises with the intent to induce Ms. Hisamatsu to take no action against BOH to

13   recover the funds Mr. Niroula had taken without her authorization.  (*Id.* ¶¶ 203-209.)  Upon

14   further consideration of this claim, and considering the allegations in the SAC, the Court

15   concludes that Ms. Hisamatsu has not alleged facts to show that she reasonably relied on the

16   promises set forth in the Claim Forms to her detriment.  Rather, in the hopes of obtaining a

17   premium from Mr. Niroula, she withdrew the forgery claims.  Accordingly, this claim is

18   dismissed without leave to amend.

19          **9.**    **The Claim for Negligent Misrepresentation (Count 28) is Dismissed Without Leave to Amend.**

20

21        In Count 28, Ms. Hisamatsu contends that "[f]alse information was supplied to [her] as

22   alleged in Counts 19, 22, and 26, as incorporated by reference."  (SAC ¶ 211.)  For the reasons

23   the Court has dismissed those claims, this claim is dismissed with prejudice as well.

24                               **CONCLUSION**

25        For the foregoing reasons, BOH's motion is GRANTED, and Ms. Hisamatsu's motion

26   for summary judgment is DENIED.  Because the Court concludes that there is no just reason for

27   //

28

*United States District Court*
For the Northern District of California

24

delay under Federal Rule of Civil Procedure 54(b), the Court shall enter a separate final

judgment against BOH.

**IT IS SO ORDERED.**

Dated: March 31, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California