UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

MEGUMI HISAMATSU,

        PLAINTIFF,

  VS.                              NO. C 07-4371 JSW

KAUSHAL NIROULA,                    PAGES 1 - 62

        DEFENDANT.
_____

SAN FRANCISCO, CALIFORNIA
NOVEMBER 30, 2007

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

**FOR THE PLAINTIFF:**

SHEPHEN M. SHAW, ESQUIRE
P.O. BOX 2353
HONOLULU, HI. 96804

**FOR THE DEFENDANT:**

BUCHALTERNEMER
333 MARKET STREET, SUITE 2500
SAN FRANCISCO, CALIFORNIA 94105-2126

BY:  JAMES B. WRIGHT, ESQUIRE

REPORTED BY:  KATHERINE WYATT, CSR, RPR, RMR
           OFFICIAL REPORTER, USDC
           COMPUTERIZED TRANSCRIPTION BY ECLIPSE

| 1 | NOVEMBER 30, 2007 |
|---|---|
| 2 | |
| 3 | P R O C E E D I N G S |
| 4 | **THE CLERK:**  CALLING CASE NUMBER C-O7-4371, MEGUMI |
| 5 | HISAMATSU VERSUS KAUSHAL NIROULA. |
| 6 | COUNSEL, PLEASE STEP FORWARD TO THE PODIUMS AND STATE |
| 7 | YOUR APPEARANCES. |
| 8 | **MR. WRIGHT:**  GOOD MORNING, YOUR HONOR.  JIM WRIGHT |
| 9 | HERE WITH APOLOGIES FOR MY TARDINESS.  I SCHEDULED THIS FOR TEN |
| 10 | O'CLOCK.  I DON'T KNOW WHY. |
| 11 | **THE COURT:**  ALL RIGHT. |
| 12 | **MR. SHAW:**  GOOD MORNING, YOUR HONOR.  STEPHEN SHAW ON |
| 13 | BEHALF OF MEGUMI HISAMATSU. |
| 14 | **THE COURT:**  ALL RIGHT. BEFORE WE GET STARTED, YOU |
| 15 | JUST APOLOGIZED TO THE COURT, MR. WRIGHT, AND STATED YOU WERE |
| 16 | LATE.  ON WHAT BASIS DID YOU BELIEVE THAT THIS HEARING WAS AT |
| 17 | TEN O'CLOCK WHEN YOUR PAPERS SAY NINE O'CLOCK? |
| 18 | **MR. WRIGHT:**  I HAD SCHEDULED IT WHENEVER YOU |
| 19 | SCHEDULED IT SOMETIME AGO ON THE 30TH.  I PUT IT DOWN IN MY |
| 20 | CALENDAR AS TEN O'CLOCK. I PUT IT DOWN IN MY ELECTRONIC REMINDER |
| 21 | SYSTEM AS TEN O'CLOCK, AND WHY I DID I DON'T KNOW. |
| 22 | **THE COURT:**  ALL RIGHT. WELL, IT'S NOT ACCEPTABLE.  IT |
| 23 | MAY BE ACCEPTABLE OR OTHER COURTS, BUT IN THIS COURT WE START ON |
| 24 | TIME.  AND, THEREFORE, YOU ARE TO PAY THE COURT $250 WITHIN FIVE |
| 25 | DAYS, WITHIN ONE WEEK OF TODAY. |

1        MS. OTTOLINI?

2        **THE CLERK:**  SORRY, YOUR HONOR.  THAT WOULD BE

3   DECEMBER 7TH.

4        **THE COURT:**  AND NEXT TIME THE PENALTY WILL BE MORE

5   SEVERE.  I GET ON THE BENCH AT NINE O'CLOCK SHARP.  AND IF I

6   DON'T, I HAVE A GOOD REASON, WHICH IS I'M READING AUTHORITY OR

7   SOMETHING RELATING TO THE CASE. BUT I HAVE ALMOST FIVE HUNDRED

8   CASES, AND IF PEOPLE ARE LATE IN THE CASES IT JUST COMPLETELY

9   THROWS OFF THE COURT'S SCHEDULE. SO I WILL EXPECT THAT NOT TO

10  OCCUR AGAIN IN THE FUTURE.

11       **MR. WRIGHT:**  IT WILL NOT OCCUR AGAIN IN THE FUTURE,

12  JUDGE.  AND, AGAIN, I APOLOGIZE.

13       **THE COURT:**  ALL RIGHT. YOUR APOLOGY IS ACCEPTED.

14       **MR. WRIGHT:**  THANK YOU.

15       **THE COURT:**  AND THE CHECK SHOULD BE MADE PAYABLE TO

16  THE CLERK OF THE U.S. DISTRICT COURT.

17       ALL RIGHT. MOVING AHEAD, THE FIRST THING I WOULD LIKE

18  TO DO IS DEAL WITH THE QUESTION -- FIRST OF ALL, I ASSUME BOTH

19  COUNSEL HAVE RECEIVED THE COURT'S TENTATIVE RULING AND

20  QUESTIONS?

21       **MR. SHAW:**  YES, YOUR HONOR.

22       **MR. WRIGHT:**  YES, YOUR HONOR.

23       **THE COURT:**  SECONDLY, WITH RESPECT TO PLAINTIFF'S

24  MOTION TO EXTEND THE TIME TO SERVE DEFENDANT KAUSHAL,

25  K-A-U-S-H-A-L, AND NIROULA, N-I-R-O-U-L-A, I UNDERSTAND THAT THE

1   DEFENDANTS -- DEFENDANT BANK OF HAWAII HAS NO OBJECTION?

2          **MR. WRIGHT:**  NOT TO THE EXTENSION; JUST TO THE LENGTH

3   OF TIME.

4          **THE COURT:**  ALL RIGHT.  WELL, UNLESS, MR. SHAW, YOU

5   CAN CONVINCE THE COURT TO THE CONTRARY, I'M PREPARED TO PROVIDE

6   NO MORE THAN 120 DAYS TO SERVE.  IF AT OR NEAR THE END OF THAT

7   TIME YOU TELL ME -- YOU SHOW THE COURT THAT YOU'VE MADE DILIGENT

8   EFFORTS AND THAT IT'S REASONABLY FORESEEABLE THAT AT SOME

9   DEFINABLE FUTURE TIME YOU MIGHT BE ABLE TO DO SO I WOULD

10  CONSIDER EITHER BY STIPULATION OR ADMINISTRATIVE REQUEST

11  EXTENDING THAT TIME. BUT RIGHT NOW WE NEED TO MOVE THIS CASE

12  ALONG.

13         SO I'M PREPARED TO GRANT YOUR MOTION -- I'LL HEAR

14  ARGUMENT FROM YOU -- BUT ONLY FOR 120 DAYS AT THIS POINT.

15         **MR. SHAW:**  I UNDERSTAND THAT, YOUR HONOR. WE CHECKED

16  THIS MORNING WITH IMMIGRATION, AND HIS NEXT HEARING IS MARCH 31,

17  2008. WHAT I WAS PREPARED TO ARGUE WAS THAT WE WOULD LIKE MAYBE

18  EVEN 60 DAYS AFTER THAT, SO IF WE COULDN'T GET THEM WE COULD TRY

19  TO PUBLISH.

20         **THE COURT:**  WHAT'S THE DATE?

21         **MR. SHAW:**  MARCH 31, 2008.  WE WERE PREPARED TO SERVE

22  HIM IN SEPTEMBER, SEPTEMBER 5TH, 2007, WHICH WAS HIS LAST

23  IMMIGRATION HEARING.  AND I HAD AN INVESTIGATOR READY TO SERVE

24  HIM.  WHO KNOWS WHO HE LOOKS LIKE OR WHAT HE LOOKS LIKE.  AND

25  THEN, THEY POSTPONED. I'M NOT FAMILIAR WITH THESE IMMIGRATION

1    HEARINGS WHETHER THEY JUST KEEP POSTPONING IT. IT'S A

2    DEPORTATION MATTER.

3              BUT MARCH 31, 2008 WOULD BE HIS NEXT HEARING.

4         **THE COURT:**  WELL, BUT 120 DAYS FROM TODAY WOULD BE

5    APRIL 30.

6         **MR. SHAW:**  THAT'S RIGHT.  I JUST NEEDED ENOUGH TIME

7    AFTER MARCH 31 IF HE POSTPONES AGAIN TO PUBLISH IS ALL.

8         **THE COURT:**  WHAT I'M GOING TO DO IS I'M GOING TO SET

9    IT FOR THE 120 DAYS.  IF YOU NEED AN ADDITIONAL -- IN OTHER

10   WORDS, IF YOU SAY:

11              "I NEED AN ADDITIONAL 20 DAYS TO PERFECT

12              PUBLICATION," I'M SURE I WOULD GIVE THAT TO YOU.

13        **MR. SHAW:**  THANK YOU.

14        **THE COURT:**  SO THE ORDER IS THE MOTION IS GRANTED TO

15   THE EXTENT THAT THE PLAINTIFF HAS UNTIL NO LATER THAN APRIL 30,

16   2008, TO SERVE THE DEFENDANT NIROULA. AND IF THERE'S ANY

17   ADDITIONAL TIME THAT'S NEEDED I'LL CONSIDER IT ON THE MERITS.

18             NOW, HAVING SO RULED, I WANT TO ADVISE YOU THAT THE

19   CASE IS PENDING, AND I EXPECT THE PLAINTIFF NOT TO SIT BACK AND

20   KIND OF WAIT. YOU NEED TO BE PROSECUTING THIS CASE AGGRESSIVELY,

21   YOU KNOW, BECAUSE -- AND YOU SHOULDN'T WAIT FOR  THE ORDER ON

22   THE MOTION THAT WE'RE GOING TO ARGUE THIS MORNING.

23             IN OTHER WORDS, I WANT YOU TO MOVE AHEAD WITH THIS

24   CASE, NOT BACK BURNER.

25        **MR. SHAW:**  THANK YOU.

1      **THE COURT:**  BECAUSE, AGAIN, I DON'T KNOW AT THIS

2    POINT WHAT I'M GOING TO DO, BUT I WANT THE CASE TO MOVE FORWARD

3    EXPEDITIOUSLY, NOT AWAIT THE ORDER ON THE PENDING MOTIONS TO

4    DISMISS.

5           NOW, I HAVE RECEIVED THE PARTIES' MOTIONS, ADDITIONAL

6    AUTHORITIES AND CONSIDERED THOSE. IF YOU WISH TO INCORPORATE

7    THOSE INTO YOUR RESPONSE TO THE COURT'S QUESTIONS THEN FEEL FREE

8    TO DO SO, AND -- BUT I HAVE REVIEWED THEM, AND I ALSO WILL HAVE

9    NO DOUBT ADDITIONAL QUESTIONS THAT ARE NOT ON THE TENTATIVE

10   RULING AND QUESTIONS FOR THE COURT.

11          AND -- SO FOR PURPOSES OF BOTH COUNSEL TO THE EXTENT

12   THAT YOU HAVE NOT HAD LAW AND MOTION ARGUMENTS IN THIS COURT, I

13   WANT YOU TO KNOW BASICALLY THE PROCEDURE HERE IS AS FOLLOWS:  I

14   HAVE FULLY READ YOUR PAPERS. I'VE READ THE AUTHORITIES. THESE

15   ARE THE QUESTIONS THAT THE COURT HAS TO RESOLVE THE MOTION. IN

16   OTHER WORDS, THIS IS NOT LIKE STATE COURT WHERE A TENTATIVE

17   RULING BECOMES THE RULING OF THE COURT UNLESS A PARTY OBJECTS.

18          "TENTATIVE RULING" REALLY MEANS "TENTATIVE," AND IN

19   SOME INSTANCES I DON'T HAVE A TENTATIVE RULING.  SO THESE ARE

20   THE QUESTIONS.  YOU ARE GETTING A BENEFIT THAT YOU DON'T GET IN

21   MOST COURTS, WHICH IS I'VE GIVEN YOU BY THESE QUESTIONS THE

22   BENEFIT OF MY CURRENT THINKING AND REACTIONS TO YOUR ARGUMENTS.

23          AND WITH THESE ANSWERS I CAN RESOLVE THE MOTION. I DO

24   GIVE YOU AN OPPORTUNITY AT THE END TO SAY:

25              "ARE THERE ANY OTHER ISSUES" -- TO QUESTION SIX:

1          "ARE THERE ANY OTHER ISSUES THAT THE PARTIES

2          WISH TO ADDRESS?"

3          AND I, YOU KNOW, WILL ALLOW YOU WITH LIMITED TIME.

4    I'LL GIVE YOU LEAVE IF THERE'S ANY OTHER ISSUE TO BRING UP.  THE

5    PURPOSE OF THIS HEARING IS NOT TO REPEAT WHAT'S IN YOUR PAPERS

6    OR MAKE GENERAL ARGUMENTS IN SUPPORT OR AGAINST THE MOTION.

7          IT'S TO ANSWER THESE QUESTIONS. AND IF YOU DON'T HAVE

8    AN ANSWER, FOR EXAMPLE, IF THERE'S NO AUTHORITY, THEN YOU JUST

9    TELL ME, AND WE WILL MOVE AHEAD.

10         BUT I DON'T NEED TO HEAR JURY ARGUMENTS, FOURTH OF

11   JULY SPEECHES ABOUT THIS AND THAT. JUST NEED ANSWERS TO THE

12   QUESTIONS.

13         SO WITH THAT BACKGROUND, LET'S START WITH QUESTION --

14   AND THE FORMAT THAT I FOLLOW IS I'LL DIRECT THE QUESTION TO A

15   PARTICULAR PERSON.  USUALLY, IT'S PRETTY CLEAR FROM THE QUESTION

16   STATED.  START WITH ONE SIDE, AND THEN I'LL ASK THE OTHER SIDE

17   TO RESPOND AND GIVE YOU AN OPPORTUNITY TO GO BACK AND FORTH

18   UNTIL I FEEL LIKE THE MATTER HAS BEEN RESPONDED TO.

19         ALL RIGHT.  SO STARTING WITH QUESTION 1-A, WHAT IS

20   PLAINTIFF'S RESPONSE?

21         **MR. SHAW:**  YOUR HONOR, THIS IS WHAT I WOULD CALL A

22   TRAVELING TORT OR MODERNLY IT'S AN IDENTITY THEFT WHICH GOES

23   ACROSS STATE LINES.

24         I THINK THAT SOME COUNTS HAWAII LAW SHOULD APPLY, OF

25   COURSE. BUT THE COUNT THAT I'M MOST CONCERNED ABOUT IS THE

1   UNFAIR COMPETITION COUNT, OUR 17500 COUNT.

2              I THINK THAT THAT -- CALIFORNIA HAS AN INTEREST IN

3   THAT COUNT.  AND I THINK CALIFORNIA HAS AN INTEREST IN MAKING

4   SURE THAT NATIONAL BANKS FROM OTHER JURISDICTIONS DO NOT ENTER

5   INTO THIS STATE BY FAX MACHINE AND OTHERWISE AND PERSUADE PEOPLE

6   TO SIGN DOCUMENTS.

7              **THE COURT:**  ALL RIGHT. I UNDERSTAND THAT.  NOW,

8   YOU'RE DOING WHAT I ASKED YOU NOT TO DO:  MAKING A JURY ARGUMENT

9   OR FOURTH OF JULY SPEECH --

10             **MR. SHAW:**  RIGHT.

11             **THE COURT:**  -- POLICY ARGUMENT.  SO YOU'RE SAYING --

12   WHAT I WOULD LIKE IN RESPONSE TO A QUESTION LIKE THIS, YOUR

13   RESPONSE IS:

14                  "YES AND NO."

15             SO NOW I NEED TO KNOW TO WHAT CLAIMS DO YOU

16   CONTEND -- DOES PLAINTIFF CONTEND HAWAII LAW APPLIES AND

17   CALIFORNIA LAW APPLIES?  YOU'VE ALREADY ANSWERED IN PART. YOU

18   SAID THAT -- I THINK YOU SAID "17500," I THINK YOU MEANT 17200.

19             **MR. SHAW:**  YES, YOUR HONOR.

20             **THE COURT:**  THAT CALIFORNIA LAW APPLIES TO THAT.

21   WHICH OTHER ONES?

22             **MR. SHAW:**  I THINK THAT THE COUNT 13 FRAUD -- STRIKE

23   THAT.

24             I BELIEVE THAT THAT WAS BASED ON THE INITIATING

25   CORRESPONDENCE.

1          17200 IS MY COUNT 13, I BELIEVE, YOUR HONOR. I'LL

2     HAVE A PAGE NUMBER IN A SECOND.

3          **THE COURT:**  WELL, WE CAN DO IT CATEGORICALLY. 17200,

4     THAT I UNDERSTAND.

5          AND WITH RESPECT TO THE OTHER CLAIMS, I MEAN,

6     GENERALLY SPEAKING, IS IT YOUR -- IS IT PLAINTIFF'S CONTENTION

7     THAT THE CONTRACT, BREACH OF CONTRACT CLAIMS ARE DECIDED --

8     SHOULD BE DECIDED UNDER HAWAII LAW?

9          **MR. SHAW:**  YES, IT IS. I THINK THAT THERE'S A CHOICE

10    OF FORUM.  WE'RE NOT NECESSARILY AGREEING TO THAT CHOICE OF

11    FORUM CLAUSE OR THAT ISSUE NOW. BUT AS FAR AS OUR CHOICE OF LAW

12    ANALYSIS, ANYTHING CONTRACTUAL SHOULD BE THERE AS TO OPENING THE

13    BANK ACCOUNT. BUT THE CONTRACTUAL PART OF WHAT'S CALLED THE

14    INDEMNITY OF LIABILITY FORUM, I THINK, SHOULD APPLY TO

15    CALIFORNIA.

16         **THE COURT:**  ALL RIGHT.  SO YOU'RE SAYING CALIFORNIA

17    LAW APPLIES TO THE CONSTRUCTION OF THE INDEMNITY?

18         **MR. SHAW:**  YES, YOUR HONOR.

19         **THE COURT:**  ON WHAT BASIS?

20         **MR. SHAW:**  WELL, THE CONTACTS WITH THE STATE OF

21    CALIFORNIA. FIRST IT WAS FAXED HERE. IT WAS SIGNED HERE.  IT

22    WAS, IN FACT, NOTARIZED HERE. THE PERSON THAT SIGNED IT WAS

23    HERE.

24         A PERSON DID ACTS HERE IN RELIANCE ON IT, OPENED

25    ANOTHER BANK ACCOUNT. AND THERE ARE A WHOLE STRING OF THINGS IN

1    TERMS OF PROOF AND CONTACTS THAT HAPPENED IN THIS STATE.

2              **THE COURT:**  ALL RIGHT.  SO EVEN THOUGH STYLED AS A

3    BREACH OF CONTRACT CLAIM WITH RESPECT TO THE INDEMNIFICATION,

4    PLAINTIFF'S POSITION IS THAT THAT OUGHT TO BE CONSTRUED UNDER

5    CALIFORNIA LAW, CORRECT?

6              **MR. SHAW:**  YES, YOUR HONOR.

7              **THE COURT:**  ALL RIGHT.  NOW, WHAT ABOUT THE OTHER

8    TORT CLAIMS?  YOU HAVE FRAUD CLAIMS.  THE FRAUD CLAIMS, WHICH

9    LAW DO YOU CONTEND APPLIES TO THOSE?

10             **MR. SHAW:**  WE'RE CONTENDING THAT THE HAWAII LAW

11   APPLIES TO THAT. BUT AS FAR AS I CAN SEE THE CASE THAT I JUST

12   BROUGHT IN AT THE LAST MINUTE, THE LAWS ALMOST THE SAME EXCEPT

13   AS I CAN SEE THE ISSUE OF PUNITIVE DAMAGES MIGHT BE DIFFERENT.

14             **THE COURT:**  ALL RIGHT.  WHAT ABOUT WITH RESPECT TO

15   INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS?

16   WHICH LAW?

17             **MR. SHAW:**  THAT WOULD BE HAWAII.

18             **THE COURT:**  HAWAII LAW. ALL RIGHT.

19             AND WHAT ABOUT THE BREACH OF FIDUCIARY DUTY?

20             **MR. SHAW:**  THE SAME.

21             **THE COURT:**  ALL RIGHT. LET ME GO TO -- I'M GOING TO

22   GIVE BANK OF HAWAII AN OPPORTUNITY TO RESPOND, BUT I'D LIKE YOU

23   TO MAYBE FOLD IN QUESTION B, 1-B:

24                  "IF THE COURT WERE TO DETERMINE THAT SOME OF THE

25                  CLAIMS ARE INDEPENDENT OF THE CONTRACT RELATIONSHIP,

1      SHALL WE SAY,  EX DELICTO AS OPPOSED TO EX CONTRACTO,

2  WOULD YOU -- WOULD THE BANK CONCUR THAT CALIFORNIA LAW SHOULD

3  APPLY?

4      **MR. WRIGHT:**  THE ANSWER -- ONE OF THE THINGS YOU SAID

5  WE WOULD TELL YOU IS WE DON'T KNOW, BECAUSE I DON'T KNOW WHICH

6  CLAIMS ARE GOING TO SURVIVE.  AND LET ME JUST TAKE THE ONES WE

7  DISCUSSED --

8      **THE COURT:**  OKAY.

9      **MR. WRIGHT:**  -- AS TO WHICH MR. SHAW CONTENDS

10  CALIFORNIA LAW APPLIES, AND SEE IF I CAN JUST ANALYZE THOSE

11  PIECE BY PIECE, PERHAPS USING THE GOVERNMENTAL INTEREST TEST,

12  PERHAPS NOT.

13      **THE COURT:**  OKAY.

14      **MR. WRIGHT:**  THE FIRST ONE, 17200, I THINK IT'S

15  PRETTY CLEAR TO ME THAT THAT DOESN'T APPLY. HE SAID THAT THE

16  BASES FOR APPLICATION ARE THAT THE INDEMNITY AGREEMENT WAS FAXED

17  HERE. NOW --

18      **THE COURT:**  WELL, ISN'T THAT A DIFFERENT ISSUE?

19  EITHER -- EITHER 17200 -- AND YOU HAVE A MOTION TO DISMISS.

20  YOUR MOTION TO DISMISS ADDRESSES THAT CLAIM.  EITHER IT APPLIES

21  OR IT DOESN'T APPLY BECAUSE OF THE EXTRATERRITORIALITY HERE.

22      WE'RE SIMPLY TALKING ABOUT WHAT LAW TO APPLY.  SO

23  THERE'S A WHOLE CAUSE OF ACTION UNDER 17200.  AND I ASSUME YOU

24  WOULD AGREE THAT IF 17200 APPLIES, LET'S SAY I AGREE WITH

25  PLAINTIFF'S ARGUMENT ABOUT -- AND I'M NOT SAYING THAT I DO --

1    BUT, HYPOTHETICALLY, THAT IT COLORABLY APPLIES BASED UPON

2    ALLEGED ACTS BY THE BANK THAT OCCURRED IN CALIFORNIA THEN ANY

3    LAW, STATUTORY OR CASE MADE LAW, COMMON LAW, OR INTERPRETATION

4    OF THAT STATUTE, THAT OCCURRED IN CALIFORNIA WOULD APPLY.

5              **MR. WRIGHT:**  YOU WOULD HAVE TO INTERPRET 17200 UNDER

6    CALIFORNIA LAW. I DOUBT YOU'LL FIND ANY CASES UNDER HAWAII LAW

7    INTERPRETING 17200.

8              **THE COURT:**  RIGHT. SO CLEARLY -- AND, AGAIN, I'LL

9    GIVE YOU AN OPPORTUNITY TO ARGUE 17200.  THAT COMES LATER. I

10   TAKE IT -- SO I ASSUME YOU AGREE THAT WITH RESPECT TO THE --

11   WELL, SINCE PLAINTIFF DID NOT -- HAS NOT AGREED THAT ALL THE

12   CONTRACTUAL CLAIMS ARE CONSTRUED UNDER HAWAIIAN LAW, WHAT'S THE

13   DEFENDANT'S POSITION ON THE CONTRACTUAL CLAIMS?

14             **MR. WRIGHT:**  THERE ARE THREE CONTRACTS IN THIS CASE

15   THAT I CAN SEE.  THERE'S THE INITIAL DEPOSIT AGREEMENT. THERE IS

16   THE DOCUMENTS THAT ARE FORGERY AFFIDAVITS THAT ARE, I BELIEVE,

17   COLLECTIVE EXHIBIT A TO THE FIRST AMENDED COMPLAINT.  AND THEN,

18   THERE IS A THIRD CONTRACT, WHICH IS THE INDEMNITY AGREEMENT.

19             AND IT SEEMS TO ME THAT THE FIRST -- ALL OF THE OTHER

20   TWO FLOW OUT OF THE FIRST. WE HAVE A DEPOSITORY RELATIONSHIP

21   THAT IS, IN PART, CONTRACTUAL, IN PART, DEFINED BY STATUTE.

22             AND THE FORGERY PROCESS, WHETHER IT'S THE SIGNING

23   FORGERY AFFIDAVITS OR RECANTING OR WITHDRAWING THEM IS ALL PART

24   AND PARCEL OF THIS DEPOSITORY RELATIONSHIP.

25             SO BECAUSE THAT RELATIONSHIP IS DEFINED BY CONTRACT

1   IN THIS CASE, AND THE CONTRACT SAYS HAWAII LAW APPLIES, HAWAII

2   LAW APPLIES WHETHER THE PLAINTIFF SIGNS A DOCUMENT IN OREGON, IN

3   NEVADA, IN CALIFORNIA, IN HAWAII OR IN MEXICO.

4              THE FACT THAT SHE'S ON VACATION IN MEXICO WOULD NOT

5   MEAN THAT MEXICAN LAW WOULD APPLY TO HER RELEASING HER FORGERY

6   CLAIMS IN HAWAII.

7              SO I BELIEVE ALL OF THE CONTRACT CLAIMS, WHEREVER SHE

8   HAPPENS TO BE AT THE MOMENT WHEN SHE DOES AN ACT, THE CONTRACT

9   CLAIMS ARE GOVERNED BY HAWAII LAW.

10             **THE COURT:**  ALL RIGHT. BUT NOT THE TORT CLAIMS.

11             ASSUMING -- AGAIN, I UNDERSTAND YOUR ARGUMENT IS THAT

12  THE TORT CLAIMS ARE ESSENTIALLY INTERTWINED, AND MAYBE EVEN

13  PRECLUDED BY, THE CONTRACTUAL CLAIMS.  BUT ASSUMING I DISAGREE

14  WITH YOU, WHICH LAW WOULD APPLY.

15             **MR. WRIGHT:**  IF BANK OF HAWAII DID SOMETHING IN

16  CALIFORNIA THAT WAS A TORT THAT DAMAGED THE PLAINTIFF IN

17  CALIFORNIA, CALIFORNIA LAW APPLIES.

18             **THE COURT:**  ALL RIGHT. WHAT ABOUT IN THIS CASE?   DO

19  YOU CONTEND THAT PLAINTIFF WAS DAMAGED IN CALIFORNIA?

20             **MR. WRIGHT:**  DO I CONTEND?  NO.

21             **THE COURT:**  ALL RIGHT. DO YOU THINK -- WE'RE ON A

22  MOTION TO DISMISS HERE.

23             **MR. WRIGHT:**  YES.

24             **THE COURT:**  SO CAN THE COMPLAINT, THE FIRST AMENDED

25  COMPLAINT, BE CONSTRUED AS SUCH?

1    **MR. WRIGHT:**  YES.

2        **THE COURT:**  SO YOU AGREE THEN THAT IF BASED UPON THE

3    FOUR CORNERS OF THE COMPLAINT IF THE ALLEGATIONS ARE THAT FALSE

4    STATEMENTS WERE MADE BY BANK REPRESENTATIVES TO THE PLAINTIFF

5    WHILE SHE WAS IN CALIFORNIA OR FRAUDULENT DOCUMENTS WERE SENT TO

6    HER IN CALIFORNIA AND INTENDED THAT SHE RELY ON THEM, FOR

7    EXAMPLE, SUCH AS TO CONSTITUTE FRAUDULENT INDUCEMENT OR

8    SOMETHING OF THAT NATURE, THEN CALIFORNIA LAW WOULD APPLY TO

9    THOSE CLAIMS.

10           **MR. WRIGHT:**  YES.

11           **THE COURT:**  ALL RIGHT. ANYTHING FURTHER YOU WANT TO

12   SAY ON THAT POINT?

13           **MR. SHAW:**  NOTHING FURTHER, YOUR HONOR, AT THIS TIME

14           **THE COURT:**  ALL RIGHT. NOW, LET'S GO TO QUESTION

15   NUMBER TWO.

16           AND THAT FIRST QUESTION GOES TO THE PLAINTIFF.  IN

17   OTHER WORDS, THE COURT IS ASKING:  ARE YOU CLAIMING -- ARE YOU

18   TRYING TO AVOID THE INDEMNIFICATION OF LIABILITY SO-CALLED

19   DOCUMENT, OR THE EFFECT OF THAT DOCUMENT, WHICH IS ATTACHED AS

20   EXHIBIT B TO THE FIRST AMENDED COMPLAINT -- FIRST AMENDED

21   COMPLAINT THAT THE PLAINTIFF WAS FRAUDULENTLY INDUCED BY THE

22   BANK TO SIGN IT?

23           **MR. SHAW:**  YES, YOUR HONOR.

24           **THE COURT:**  IS THAT THE BASIS?

25           **MR. SHAW:**  (NODS HEAD.)

1      **THE COURT:**  OKAY. ALL RIGHT. SO NOW I'LL PUT IT BACK

2    TO YOU, MR. WRIGHT. GIVEN THAT THERE ARE MANY FACTUAL

3    ALLEGATIONS, WHAT'S YOUR BEST ARGUMENT THAT THE COURT CAN

4    RESOLVE THIS ON A 12 (B) (6) MOTION?

5      **MR. WRIGHT:**  THAT QUESTION, YOUR HONOR, IS ANSWERED

6    BOTH BY REFERENCE TO PLAINTIFF'S ANSWER THAT YES, SHE DOES

7    CONTEND THAT THE INDEMNITY AGREEMENT IS AFFECTED BY FRAUD. AND

8    BY ANOTHER QUESTION THE COURT ASKED ABOUT THE DISTINCTION

9    BETWEEN MISREPRESENTATIONS OF FACT AND LAW. AND I THINK IF WE GO

10   THROUGH THAT ANALYSIS I'LL BE ABLE TO TELL YOU WHY I BELIEVE YOU

11   CAN GRANT A 12 (B) (6) MOTION --

12     **THE COURT:**  ALL RIGHT.  GO AHEAD.

13     **MR. WRIGHT:**  -- ON THE FIRST AMENDED COMPLAINT.

14     IF THE BANK CAN BE LIABLE FOR MISREPRESENTING FACTS

15   TO THE PLAINTIFF -- AND I THINK WE WILL FIND THAT THOSE

16   MISREPRESENTATIONS ARE NOT AFFIRMATIVE, BUT THEY ARE

17   NONDISCLOSURES -- THEN, YOU HAVE TO DENY THE MOTION.

18     IF, ON THE OTHER HAND, HER FRAUDULENT CONCEALMENT

19   CLAIMS FAIL IN THIS CONTEXT, THEN I THINK YOU CAN GRANT THE

20   MOTION.

21     PLAINTIFF RELIES ON AN HAWAII DISTRICT COURT DECISION

22   MEGDAL (PHONETIC), WHICH WAS DECIDED APPLYING HAWAIIAN LAW.  AND

23   THE CONCLUSION THAT THE COURT REACHED THERE WAS THAT UNDER

24   HAWAIIAN LAW, IF THE HAWAII SUPREME COURT HAD MADE A DECISION ON

25   THIS POINT, THERE WOULD BE NO DISTINCTION BETWEEN

1  MISREPRESENTATIONS OF FACT AND OF LAW.

2        AND THE COURT CITED THE RESTATEMENT OF TORT SECOND,

3  BOTH SECTION 525, WHICH DEALS WITH FRAUDULENT

4  MISREPRESENTATIONS. THAT IS AFFIRMATIVE MISREPRESENTATIONS. AND

5  RESTATEMENT SECTION 5 -- EXCUSE ME -- 551, WHICH DEALS WITH

6  NONDISCLOSURE, AND WHICH ARE QUITE DIFFERENT.

7        IT IS VERY, VERY CLEAR FROM 525, AND I THINK THE CASE

8  LAW, AS WELL, INCLUDING THE CASE RECENTLY CITED BY MR. SHAW LAST

9  NIGHT, THAT IF I SAY TO YOU:

10        "PLEASE SIGN THIS CONTRACT. IT WILL NOT BAR YOUR

11        CLAIMS AGAINST THE BANK FOR FORGED ENDORSEMENT OF

12        YOUR SIGNATURE."

13        I HAVE MISREPRESENTED THE LAW TO YOU. OR PERHAPS ALSO

14  FACT. BUT I'VE AFFIRMATIVELY MISREPRESENTED THE LAW.

15        ON THE OTHER HAND, IF I HAND YOU A DOCUMENT AND SAY:

16        "THIS IS A CONDITION TO OUR RELEASING FUNDS TO

17        MR. NIROULA.  YOU MUST SIGN IT."

18        I SAY NOTHING ABOUT THE LEGAL EFFECT.  THE POINT, I

19  THINK, THE PLAINTIFF MAKES IN ITS OPPOSITION TO THE MOTION AND

20  THE PROPOSED SECOND AMENDED COMPLAINT THAT THEY HAVE OFFERED IS

21  THAT NONDISCLOSURES OF LAW ARE ACTIONABLE, AND THEY CLEARLY ARE

22  NOT. IF THEY WERE --

23        **THE COURT:**  WAIT A MINUTE.  SO THE BANK AGREES THAT

24  MISREPRESENTATION OF LAW ARE ACTIONABLE.

25        **MR. WRIGHT:**  YES.

1   **THE COURT:**  BUT CONTENDS THAT A FAILURE TO DISCLOSE

2   LEGAL EFFECT IS NOT ACTIONABLE.

3   **MR. WRIGHT:**  THAT'S CORRECT.

4   **THE COURT:**  AND THAT'S BECAUSE OF THE LACK OF A

5   SPECIAL RELATIONSHIP OR DUTY?

6   **MR. WRIGHT:**  THAT'S BECAUSE OF THE LACK OF A SPECIAL

7   RELATIONSHIP OR FIDUCIARY DUTY, CORRECT. IF THE BANK WERE A

8   FIDUCIARY OR WERE IN A SPECIAL RELATIONSHIP IT WOULD HAVE TO PUT

9   THE PLAINTIFF'S INTERESTS ABOVE AND BEYOND ITS OWN AND PERHAPS

10  DISCLOSE ALL CIRCUMSTANCES.

11  **THE COURT:**  SO YOU'RE ARGUING ESSENTIALLY IF THE

12  COURT WERE TO CONSTRUE TAKING THIS IN THE LIGHT MOST FAVORABLE

13  TO THE PLAINTIFF, AS IT MUST, ON A 12 (B) THAT THE PLAINTIFF WAS

14  ALLEGING SOLELY FAILING TO DISCLOSE LEGAL EFFECTS OF SIGNING THE

15  AGREEMENT, THEN THE COURT CAN RULE -- CAN GRANT THE MOTION.

16  BUT IF IT'S ANYTHING ELSE AND THAT "ANYTHING ELSE"

17  INCLUDES QUESTIONS OF FACT, WERE THE STATEMENTS MADE OR NOT

18  MADE, THEN YOU'RE AGREEING THAT WE HAVE TO MOVE TO THE NEXT

19  LEVEL.

20  **MR. WRIGHT:**  SO LONG AS THE FACTS ARE BASIC TO THE

21  TRANSACTION, WHICH IS THE STANDARD THAT SECTION 551 SAYS.

22  **THE COURT:**  ISN'T IT BASIC -- ISN'T THAT A QUESTION

23  OF FACT ABOUT WHETHER THE PARTIES' INTENT WAS BASIC TO THE

24  TRANSACTION?

25  IF THE PLAINTIFF WERE TO TESTIFY AND, YOU KNOW, IN

1    FACT STATED OR AVERRED IN, IT'S ALLEGED IN THE FIRST AMENDED

2    COMPLAINT:

3                    "WELL, IF I HAD KNOWN THAT THERE WAS THIS LEGAL

4              EFFECT THAT THE BANK WAS REPRESENTING I NEVER WOULD

5              HAVE SIGNED THIS."

6              AND THE COURT HAS TO TAKE THAT AS TRUE FOR THESE

7    PURPOSES, FOR THE PURPOSE OF THIS MOTION.

8              **MR. WRIGHT:**  BUT THAT'S NOT A NONDISCLOSURE OF A

9    FACT. THAT'S A NONDISCLOSURE OF A LEGAL EFFECT.

10             **THE COURT:**  WELL, OR A MISREPRESENTATION.

11             **MR. WRIGHT:**  WELL, IF THE BANK HAD AFFIRMATIVELY

12   REPRESENTED THAT THE LAW WAS SUCH AND SO, OR THE LEGAL EFFECT

13   WAS SUCH AND SO. BUT THERE WAS NO SUCH ALLEGATION THAT I COULD

14   FIND IN THE FIRST AMENDED COMPLAINT.

15             THESE ARE ALL NONDISCLOSURES:

16                   "THE BANK DIDN'T TELL HER THIS.  THEY DIDN'T

17             TELL HER THAT.  IT DIDN'T TELL HER THAT IT WOULD DO

18             THIS OR THAT."

19             AND EVEN WORSE IN THE PROPOSED SECOND AMENDED

20   COMPLAINT THERE'S A LAUNDRY LIST -- I THINK IT'S PARAGRAPH 86, A

21   THROUGH S.  AND THERE'S ANOTHER IN 126 A THROUGH S, IN WHICH

22   THERE ARE SPECIFIC:

23                   "THE BANK DIDN'T DISCLOSE TO HER THAT IT WOULD

24             ARGUE THAT SHE HAD RATIFIED."

25             **THE COURT:**  ALL RIGHT.  SO I UNDERSTAND YOUR

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

1  ARGUMENT. SO YOUR ARGUMENT IS AS I'VE SAID, WHICH IS IF THE

2  CASE -- THE COMPLAINT CAN FAIRLY BE READ ONLY TO ALLEGE FAILING

3  TO DISCLOSE LEGAL MATTERS, THEN EVEN IF THE FACTS AS ALLEGED BY

4  THE PLAINTIFF ARE TRUE AS A MATTER OF LAW THAT IS NOT AN

5  ACTIONABLE FRAUD.

6          **MR. WRIGHT:**  RIGHT.

7          **THE COURT:**  ALL RIGHT.

8          **MR. WRIGHT:**  I JUST HAVE ONE BRIEF POINT.

9          **THE COURT:**  YES.

10          **MR. WRIGHT:**   IN THE INTEREST OF COMPLETE DISCLOSURE I

11  THINK MEGDAL MADE A MISTAKE.  THE MEGDAL DISTRICT COURT MADE A

12  MISTAKE.  IT GOT THE ISSUE RIGHT INSOFAR AS IT ANALYZED

13  AFFIRMATIVE MISREPRESENTATIONS, BECAUSE 525 TALKS ABOUT BOTH

14  FACTS AND LAW.

15          CLEARLY IN THAT TREATISE FACT AND LAW ARE MENTIONED.

16          551, ON THE OTHER HAND, MENTIONS ONLY FACTS. THERE IS

17  A SENTENCE IN MEGDAL AT -- JUST LET ME FIND IT QUICKLY. THAT'S

18  NOT JUMPING AHEAD. PAGE 905 IN WHICH THE COURT SAYS:

19          "551 MAKES NO DISTINCTION BETWEEN FACT AND LAW."

20          BUT IT CLEARLY DOES. SO EITHER THAT'S A TYPO.  EVEN

21  IF THEY MEANT TO SAY 525 MAKES NO DISTINCTION, IT DOESN'T.  OR

22  THE COURT'S WRONG.  BECAUSE 551, THE NONDISCLOSURES, LIMITED TO

23  FACTS -- LIMITED TO FACTS, NOT LAW.

24          **THE COURT:**  SO THE CITATION YOU PROVIDED THERE WAS A

25  STATEMENT IN THE RESTATEMENT, IN ONE OF THE NOTES TO THE

| | |
|---|---|
| 1 | RESTATEMENT THAT YOU FILED IN RESPONSE TO THE COURT'S TENTATIVE |
| 2 | RULING -- |
| 3 | **MR. WRIGHT:**  RIGHT. |
| 4 | **THE COURT:**  -- IN WHICH -- WHICH IS UNDER -- IT'S |
| 5 | CALLED -- IT'S UNDER: |
| 6 | "FRAUDULENT REPRESENTATIONS:  ONE WHO |
| 7 | FRAUDULENTLY MAKES A MISREPRESENTATION OF FACT |
| 8 | OPINION, INTENTION OR LAW." |
| 9 | **MR. WRIGHT:**  THAT'S 525.  I AGREE. |
| 10 | **THE COURT:**  ALL RIGHT. |
| 11 | **MR. WRIGHT:**  IF YOU AFFIRMATIVELY MISREPRESENT THE |
| 12 | LAW, IT'S ACTIONABLE.  BUT IF YOU SAY NOTHING ABOUT THE LAW, A |
| 13 | NONDISCLOSURE OF THE LAW IS NOT ACTIONABLE.  IF IT WERE EVERY |
| 14 | TIME AN LANDLORD AND TENANT ENTER INTO A TRANSACTION THEY WOULD |
| 15 | HAVE TO EXCHANGE THE MILLER STAR TREATISE.  THAT CAN'T BE THE |
| 16 | LAW. |
| 17 | **THE COURT:**  ALL RIGHT.  WHAT'S YOUR POSITION?  WHAT |
| 18 | IS YOUR RESPONSE?  AND, MORE PARTICULARLY, WHAT IS, AS FAIRLY |
| 19 | CONSTRUED FROM THE FIRST AMENDED COMPLAINT, WHAT IS PLAINTIFF'S |
| 20 | THEORY WITH RESPECT TO THE ATTEMPTING TO AVOID THE |
| 21 | INDEMNIFICATION OF LIABILITY. |
| 22 | **MR. SHAW:**  THERE'S TWO.  I DISAGREE. THERE IS A DUTY. |
| 23 | THE DUTY IS THAT HAD WHEN THE BANK MADE PARTIAL DISCLOSURES, THE |
| 24 | DUTY TO MAKE FULL DISCLOSURES WAS ENCOUNTERED. IF THEY HADN'T |
| 25 | SAID ANYTHING AT ALL ABOUT MS. HISAMATSU GIVING UP HER FORGERY |

1    RIGHT OR THE CLAIM TO FORGERY, OR SO ON, THEN THEY WOULDN'T HAVE

2    ANY OBLIGATION TO SAY THE FULL THING.  BUT --

3            **THE COURT:**  SO LET ME START -- LET ME SEE IF I CAN

4    GET AN AGREEMENT HERE.

5            DO YOU AGREE WITH THE PROPOSITION -- OBVIOUSLY, YOU

6    AGREE WITH THE PROPOSITION THAT A MISSTATEMENT OF LAW IS

7    ACTIONABLE, CORRECT?

8            **MR. SHAW:**  YES, I DO.

9            **THE COURT:**  DO YOU AGREE WITH THE PROPOSITION OF LAW

10   THAT A MERE FAILURE TO MAKE STATEMENTS ABOUT THE LAW, ABOUT THE

11   LEGAL EFFECT OF AN AGREEMENT, THAT THOSE -- THAT THAT MERE

12   FAILURE IS NOT ACTIONABLE?

13           **MR. SHAW:**  I DISAGREE WITH THAT.

14           **THE COURT:**  EVEN IF -- I UNDERSTAND YOUR POSITION

15   ABOUT A PARTIAL DISCLOSURE.  BUT WHAT IF THERE'S NONE?  WHAT IF

16   YOU AND I, AS DEFENSE COUNSEL HYPOTHESIZES, WE'RE LANDLORD AND

17   TENANT.  AND I GIVE YOU A LEASE.  YOU SIGN IT.  I'M THE

18   LANDLORD, AND I SAY:

19                "DON'T WORRY.  I CAN'T EVICT YOU.  THIS WON'T

20           ALLOW ME TO EVICT YOU IF YOU DON'T PAY YOUR RENT."

21           AND, OF COURSE, IT SAYS IT THERE.  ARE YOU SAYING

22   THAT THAT'S FRAUD, ACTIONABLE FRAUD?

23           **MR. SHAW:**  NO, THAT'S A PURE CONCEALMENT OR

24   SUPPRESSION ISSUE AND THERE'S NO PARTIAL DISCLOSURE INVOLVED.

25           **THE COURT:**  OKAY.  SO IN THAT CASE YOU'RE SAYING A

```
1    STRAIGHT MISREPRESENTATION OF LAW WOULD NOT BE ACTIONABLE.

2              MR. SHAW:  I'LL ALSO SAYING THAT A STRAIGHT

3    CONCEALMENT AT LEAST WOULDN'T EVEN BE INVOLVED WITH WHAT WE HAVE

4    IN OUR CASE. WE HAVE PARTIAL DISCLOSURES AND SO --

5              THE COURT:  WHAT IS THE PARTIAL DISCLOSURE?

6              MR. SHAW:  WELL, THE PARTIAL DISCLOSURES GO TO THE

7    ISSUE OF GIVING UP A FORGERY COMPLAINT.  AND NOW ALSO IT GOES TO

8    RATIFICATION, WHETHER OR NOT -- OF COURSE, YOU COULD COUCH

9    THINGS IN LEGALESE AND SAY "THIS RATIFICATION."

10             BUT YOU CAN ALSO TURN IT AROUND AND SAY:

11                 "MS. HISAMATSU, IF YOU SIGN THIS THING YOU KNOW

12             WHAT YOU'RE GOING TO BE DOING?  YOU'RE GOING TO BE

13             SAYING THAT YOU SIGNED AND YOU APPROVED THOSE

14             FORGERIES BY THAT PERSON THAT YOU'VE SAID ALL ALONG

15             WAS A CRIMINAL."

16             IF YOU CHANGE THE LEGALESE INTO --

17             THE COURT:  WELL, TELL ME WHAT -- OKAY.  IF YOUR

18   THEORY IS THAT PARTIAL REPRESENTATIONS WERE MADE AS TO THE LAW,

19   AND THAT BY DOING THAT FROM THE PLAINTIFF'S PERSPECTIVE THAT

20   REQUIRED THEM TO MAKE FULL DISCLOSURE WITH RESPECT TO THE LAW.

21             WHAT DO YOU CONTEND THAT YOUR COMPLAINT, FIRST

22   AMENDED COMPLAINT, SAYS -- AND IF YOU GIVE ME A PARAGRAPH

23   NUMBER, THAT'S EVEN BETTER -- ABOUT PARTIAL DISCLOSURE?

24             MR. SHAW:  WE HAVE SET UP THE DUTY OF THE BANK WAS --

25   JUST A SECOND. AT PARAGRAPH -- PAGE 36, PARAGRAPH 123.
```

1          THE COURT:  ALL RIGHT.

2          MR. SHAW:  "EVEN IF THE BOH" --

3          THE COURT:  I CAN READ IT.  I CAN READ IT. I HAVE 123

4   IN FRONT OF ME.

5          MR. SHAW:  AND I NEED TO ADD TO THIS.  I FEEL LIKE

6   I'M BEING BOXED IN ON THESE REPRESENTATIONS OF LAW VERSUS

7   REPRESENTATIONS OF FACT.

8          THE COURT:  HERE'S WHAT I NEED FROM YOU, THOUGH,

9   BECAUSE, AGAIN, I'M GETTING -- THIS IS NOT AT ALL HELPFUL. WHAT

10  I NEED TO KNOW IS SO YOU'RE STATING NOW WHAT THE PLAINTIFF'S

11  LEGAL THEORY IS THAT WOULD SUPPORT A FRAUD IN THE INDUCEMENT

12  BASED -- OR MAYBE EVEN RECISION BASED UPON A PARTIAL DISCLOSURE.

13          I NEED TO KNOW -- AND PART OF THIS IS YOUR COMPLAINT

14  IS FAIRLY ALL OVER THE PLACE. WHAT DID THE BANK SAY, REPRESENT

15  THAT WAS A PARTIAL DISCLOSURE OF THE LEGAL EFFECT OF THE

16  PURPORTED INDEMNIFICATION, AND WHO SAID IT?

17          MR. SHAW:  WELL, THE FIRST THING IS THAT THE BANK

18  CAPTIONED ITS FORM "INDEMNIFICATION OF LIABILITY."

19          IT'S NOT AN INDEMNIFICATION, ACCORDING TO THE BANK.

20  IT'S WHAT'S BEEN CALLED "A RATIFICATION."

21          MS. HISAMATSU WAS ENTITLED TO KNOW SINCE THIS

22  DOCUMENT IS ENTITLED "INDEMNIFICATION OF LIABILITY," WHAT ARE

23  THE FULL FACTS OF THAT?  THE BANK --

24          THE COURT:  OKAY.  SO, NO, WAIT A MINUTE.  I'M NOT

25  GOING TO LET YOU GET AWAY -- GET BEYOND THIS POINT.

1       SO THE FIRST ONE IS THE CAPTION ON THE DOCUMENT WHICH

2   CALLED IT AN "INDEMNIFICATION," AND YOU'RE SAYING THAT THAT WAS

3   A PARTIAL DISCLOSURE BECAUSE IT'S MORE THAN A INDEMNIFICATION.

4       **MR. SHAW:**  WELL, IN TERMS OF INDEMNIFICATION?  AN

5   INDEMNIFICATION AGREEMENT WAS SUPPOSED TO HAVE SOMETHING IN IT,

6   CLEAR LANGUAGE THAT INDEMNIFIED SOMEBODY FROM THEIR OWN

7   NEGLIGENCE.  THERE WERE THINGS THAT WERE SUPPOSED TO BE IN AN

8   INDEMNITY CONTRACT THAT WEREN'T THERE.

9       **THE COURT:**  OKAY.  BUT YOU'RE KIND OF CHANGING.

10  YOU'RE KIND OF CHANGING THE QUESTION HERE. SO I'M ASKING YOU

11  WHAT THE BANK SAID THAT WAS A PARTIAL DISCLOSURE.

12      **MR. SHAW:**  WELL, IT SAYS HERE:

13          "FOR REASONS BEST KNOWN TO MYSELF WISH TO

14          WITHDRAW MY FORGERY DISPUTE REGARDING THE FOLLOWING

15          CHECKS."

16      THEY TALK ABOUT WITHDRAWING THE FORGERY DISPUTE. AND

17  THAT'S CENTRAL TO THE BANK'S POSITION TODAY, BECAUSE THEY ARE

18  SAYING THAT THAT PARTICULAR SENTENCE AMOUNTED TO A RATIFICATION

19  BY MS. HISAMATSU OF THE SIGNATURE OF A FORGER MONTHS PRIOR TO

20  THAT.

21      **THE COURT:**  OKAY.  SO YOU'RE SAYING THAT THE

22  STATEMENT "WITHDRAWING MY FORGERY DISPUTE OR FORGERY CLAIM,"

23  YOU'RE SAYING THAT THAT WAS THE STATEMENT. IT WAS PRINTED BY THE

24  BANK. IT WAS DRAFTED BY THE BANK.  AND IT WAS INCOMPLETE BECAUSE

25  THEY SHOULD HAVE SAID WHAT?

1          **MR. SHAW:**  WELL, THEY SHOULD HAVE SAID, YOU KNOW:

2                "WHAT WE MEAN BY THIS, I.E., YOU ARE RATIFYING

3                THE SIGNATURE OF THE FORGER. AND THAT YOU ARE

4                SAYING -- YOU ARE SAYING THAT THE FORGER, WHAT HE DID

5                WAS IN YOUR -- YOU GAVE HIM PERMISSION TO FORGE YOUR

6                NAME."

7          **THE COURT:**  OKAY.  WHAT IT SOUNDS -- OKAY.  WHAT

8    ELSE? WHAT OTHER STATEMENTS?

9          **MR. SHAW:**  WELL, I COULD GO TO MY PROPOSED SECOND

10   AMENDED COMPLAINT RIGHT DOWN THE LIST.

11         **THE COURT:**  A LIST OF MISREPRESENTATIONS OF LAW THAT

12   YOU SAY WERE PARTIALLY DISCLOSED.

13         **MR. SHAW:**  WELL, THE FIRST MISREPRESENTATION IS AS TO

14   THE ISSUE OF RATIFICATION IN THAT FIRST --

15         **THE COURT:**  SO WE HAVE THAT.  WHAT ELSE?

16         **MR. SHAW:**  THAT THERE WAS ALSO A FACTUAL

17   MISREPRESENTATION THAT WENT ALONG WITH THAT. I WANT TO MAKE THAT

18   CLEAR, THAT THE REPRESENTATION OF LAW IS ONLY A CONCLUSION DRAWN

19   FROM THE FACTS THAT WERE LEFT OUT.

20         **THE COURT:**  ALL RIGHT.  ARE YOU CONTENDING THAT --

21   ALL RIGHT.  ANY OTHER PARTIAL DISCLOSURES OF LAW?

22         **MR. SHAW:**  YES. THAT A FORGERY DISPUTE THAT IT'S

23   TALKING ABOUT IS A FORGERY, WE WERE ENTITLED TO KNOW WHAT

24   FORGERY DISPUTE. WAS IT BETWEEN THE STATE OF HAWAII AND THE

25   FORGER?  OR IS IT BETWEEN MS. HISAMATSU AND THE BANK?  OR IS IT

1   BETWEEN THE BANK AND THE FORGER?

2           **THE COURT:**  ALL RIGHT.  SO THIS IS THE STATEMENT IN

3   THE AGREEMENT, IN THE INDEMNIFICATION AGREEMENT --

4           **MR. SHAW:**  YES.

5           **THE COURT:**  -- THAT DESCRIBES THE FORGERY, THE

6   DISPUTE WITH RESPECT TO THE FORGERY?

7           **MR. SHAW:**  YES, YOUR HONOR.

8           **THE COURT:**  ALL RIGHT. ANYTHING ELSE?

9           **MR. SHAW:**  AS TO THAT PARTICULAR SENTENCE THERE'S

10  NOTHING IN MY PROPOSED SECOND AMENDED COMPLAINT THAT FALLS

11  WITHIN --

12          **THE COURT:**  ALL RIGHT.

13          **MR. SHAW:**  -- THAT'S TRIGGERED BY THAT PARTIAL

14  DISCLOSURE.

15          **THE COURT:**  ALL RIGHT.  SO, BASICALLY -- SO THE "WHO"

16  IS THE BANK THROUGH THIS FORM, THIS INDEMNIFICATION FORM.

17          **MR. SHAW:**  YES, YOUR HONOR.

18          **THE COURT:**  AND THE "WHAT" IS WHAT YOU JUST TOLD ME.

19          **MR. SHAW:**  YES.

20          **THE COURT:**  ALL RIGHT.  BEYOND THE AGREEMENT ARE

21  THERE ANY OTHER MISREPRESENTATIONS OR PARTIAL DISCLOSURES LIKE,

22  FOR EXAMPLE, ORALLY OR IN WRITING THAT YOU CONTEND?  AND THIS IS

23  ONLY WITH RESPECT TO PARTIAL DISCLOSURE, BECAUSE WE'RE ONLY

24  TALKING NOW ABOUT THE INDEMNIFICATION AGREEMENT.

25          OBVIOUSLY, YOUR FRAUD CLAIMS STAND OR FALL ON THEIR

1    OWN.

2           **MR. SHAW:**  WELL, YES. THE SECOND SENTENCE AFTER THE

3    LIST OF CHECKS WHERE IT SAYS:

4                  "ALSO AGREE THAT THE FUNDS SHALL BE WITHDRAWN OR

5           RELEASED," THE PARTIAL DISCLOSURE WAS DEALING WITH

6    $257,000 AND SOME CHANGE. THE FULL DISCLOSURE THAT WAS REQUIRED

7    WAS SHE WAS GOING TO GIVE UP HER WHOLE CLAIM.  AND THAT ALSO BY

8    AGREEING TO THESE FEATURES SHE WAS GOING TO GIVE UP HER PENDING

9    CLAIMS FOR OVER A HALF MILLION DOLLARS TO THE BANK.

10          THERE'S NOTHING IN HERE THAT SAYS:

11                 "WHEN YOU SIGN THIS WHAT IT MEANS IS YOU'VE GIVEN

12          UP YOUR CLAIMS FOR REIMBURSEMENT."

13          **THE COURT:**  ALL RIGHT.

14          **MR. SHAW:**  AND THIS SEEMS TO COUCH IT IN AT A QUARTER

15   OF A MILLION DOLLARS WHEN SHE HAD ANOTHER QUARTER OF A MILLION

16   DOLLARS FLOATING AROUND.

17          **THE COURT:**  WELL, YOU KNOW, THE ARGUMENT THAT THE

18   PLAINTIFF IS MAKING MAY HAVE LEGS.  IT MAY HAVE TRACTION, AND IT

19   MAY VERY WELL REQUIRE US TO GET TO THE NEXT PROCEDURAL LEVEL

20   HERE.  BUT WHAT IT STRIKES ME, JUST AS A MATTER OF POLICY, THAT

21   THE PLAINTIFF IS ESSENTIALLY CONTENDING IS THAT IN EFFECT SHE

22   SHOULD HAVE BEEN MIRANDIZED.  SHE SHOULD HAVE BEEN PROVIDED ALL

23   OF HER RIGHTS, ALL OF THE OBLIGATIONS.

24          THE BANK SHOULD HAVE SAT DOWN WITH HER AND SAID:

25                 "HERE'S A DOCUMENT." ESSENTIALLY ACTED AS HER

```
 1   COUNSEL:

 2               "HERE'S A DOCUMENT.  IF YOU SIGN IT, HERE ARE

 3               ALL THE CONSEQUENCES OF YOUR SIGNING IT.  AND LET ME

 4               EXPLAIN ESSENTIALLY EACH SENTENCE AND WHAT IT MEANS.

 5               THAT 'DISPUTE' MEANS SUCH AND SUCH.  IT MEANS BETWEEN

 6               YOU AND THE BANK.  THE AMOUNT THAT YOU'RE GOING TO BE

 7               AT RISK TO LOSE WOULD BE THE FULL FIVE HUNDRED

 8               THOUSAND, OR WHATEVER IT WAS."

 9          AND BASICALLY GO THROUGH EACH PROVISION AND EXPLAIN

10   IN GREAT DETAIL THE MATERIAL RAMIFICATIONS OF EACH

11   REPRESENTATION.

12               IS THAT ESSENTIALLY YOUR POSITION?

13          MR. SHAW:  YOUR HONOR, I DON'T -- I TAKE EXCEPTION

14   WITH THE "GREAT DETAIL" ASPECT. I DO AGREE THAT THERE ARE SOME

15   PARALLELS WITH MIRANDA, AND THERE ARE SOME -- THAT A PARALLEL

16   EXISTS.

17               WHEN SOMEBODY WHO IS A LAYPERSON IS MIRANDIZED, THEY

18   ARE MIRANDIZED IN LAY TERMS.  THEY SAY:

19               "YOU GIVE UP YOUR RIGHT TO COUNSEL."

20          YOU KNOW:

21               "ONE WILL BE APPOINTED TO YOU WITHOUT ANY

22               COST."

23          AND THEY GIVE PEOPLE INFORMATION IN PLAIN ENGLISH

24   WITHOUT SAYING:

25               "YOU'RE GIVING UP YOUR FIFTH AMENDMENT RIGHT
```

1          UNDER THE UNITED STATES CONSTITUTION."

2          NO ONE IS GOING TO KNOW WHAT THAT MEANS.

3          **THE COURT:**  ALL RIGHT.  SO YOU'RE ARGUING -- YOU'RE

4  SAYING THAT THE LAW IS THAT ESSENTIALLY WHEN THE BANK, WHICH IS

5  ARGUABLY MORE SOPHISTICATED THAN AN INDIVIDUAL PLAINTIFF,

6  ESPECIALLY AS YOU ALLEGE THE PLAINTIFF IN THIS CASE, THEY ARE

7  REQUIRED TO SIT DOWN AND EXPLAIN IN LAY TERMS, IF THEY CAN

8  EXPLAIN ANYTHING.  THEY DON'T HAVE TO EXPLAIN ANYTHING.

9          YOUR POSITION IS THEY COULD HAVE JUST GIVEN HER THIS

10 AGREEMENT, HAD HER SIGN IT AND NOT SAID A WORD ABOUT THAT; IS

11 THAT CORRECT?

12         **MR. SHAW:**  WELL, NO. I DON'T AGREE WITH THAT. I AGREE

13 THAT THERE HAD TO BE SOME BASIC MORE COMPLETE DISCLOSURES THAN

14 WERE GIVEN, WHICH IS:

15              "YOU'RE GIVING UP YOUR THREE CLAIMS THAT YOU'VE

16              FILED WITH THE BANK IF YOU SIGN THIS THING."

17         **THE COURT:**  ALL RIGHT.  BUT YOU AGREE THAT THAT'S A

18 QUESTION OF A MISREPRESENTATION OF LAW.

19         **MR. SHAW:**  NO, I THINK IT'S A MISREPRESENTATION OF

20 FACT WITH LEGAL CONSEQUENCES, AS IN THE CASE THAT I BROUGHT IN

21 LATER TODAY.

22         **THE COURT:**  ALL RIGHT. LET ME GO BACK TO -- I'LL GIVE

23 YOU THE LAST WORD ON THIS.

24         I THINK WE HAVE GOT SOME AGREEMENT, AT LEAST A

25 CONTENTION WHAT THE LAW IS I HAVE TO DECIDE, WHAT IT REALLY IS

```
 1    AND UNDER WHOSE LAW IT IS, HAWAII OR CALIFORNIA.

 2              BUT IT SOUNDS LIKE THE PLAINTIFF'S POSITION IS THAT

 3    IT'S THIS DOCUMENT THAT IS MISLEADING, AND IT'S ALSO

 4    UNINTELLIGIBLE TO A LAYPERSON, AND THE BANK HAD SOME OBLIGATION

 5    ONCE THEY BY HEADNOTES OR SOME LANGUAGE IN THIS INDEMNIFICATION

 6    AGREEMENT HAD AN OBLIGATION TO SIT DOWN AND 0WITH THE PLAINTIFF

 7    AND EXPLAIN, YOU KNOW, AS I PUT IT IN, AND PLAINTIFF'S COUNSEL

 8    AGREED, MIRANDA TERMS, IN EFFECT, WHAT THE CONSEQUENCES, THE

 9    LEGAL CONSEQUENCES OF THESE FACTUAL REPRESENTATIONS WERE.

10              WHAT'S YOUR POSITION ON THAT?

11         MR. WRIGHT:  THERE IS NO LAW THAT REQUIRES TWO

12    BUSINESS PARTIES IN A TRANSACTION TO EXPLAIN LEGAL CONSEQUENCES

13    OR TO MAKE ONE SIDE'S DRAFTING AGREEMENT MORE CLEAR TO THE

14    OTHER.

15              IT'S THE PARTY'S OBLIGATION ON THE OTHER SIDE, IF

16    THEY DON'T UNDERSTAND WHAT IT MEANS, TO EITHER ASK OR REFORM IT,

17    CHANGE IT BEFORE THEY SIGN IT, GET COUNSEL, GET THEIR OWN

18    COUNSEL, DO WHATEVER IT TAKES TO MAKE SURE THEY KNOW WHAT THEY

19    ARE SIGNING SO THAT THEY ENTER INTO A BINDING AGREEMENT.

20         THE COURT:  WAS THERE ANYTHING IN THIS AGREEMENT THAT

21    ADVISED THE PLAINTIFF TO GET HER OWN COUNSEL OR HAVE IT LOOKED

22    AT BY COUNSEL?

23         MR. WRIGHT:  NO.

24         THE COURT:  ALL RIGHT. LET'S MOVE ON NOW. I THINK

25    WE'VE RESOLVED -- WE HAVEN'T RESOLVED, BUT I'VE GOTTEN A
```

```
 1    RESPONSE TO QUESTION 2-A ABOUT THE DISTINCTION BETWEEN

 2    MISREPRESENTATIONS OF FACT AND LAW.

 3              AND I'M GOING TO GO TO QUESTION 2-B.  AND THERE'S

 4    OBVIOUSLY A TYPO IN THERE. THE WAY THE QUESTION SHOULD READ:

 5                   "IS THE COURT CORRECT THAT PLAINTIFF WISHES TO

 6                   AMEND HER FRAUD CLAIM TO INCLUDE ALLEGATIONS THAT THE

 7                   BANK OF HAWAII DID NOT" -- AND I'M INSERTING THE WORD

 8                   "NOT -- DISCLOSE TO HER THAT THEY WOULD RAISE THE

 9                   ARGUMENTS PRESENTED IN THE MOTION TO DISMISS IN

10                   DEFENSE OF HER CLAIMS?"

11              IS THAT PLAINTIFF'S POSITION.

12         MR. SHAW:  THE POSITION IS THAT THERE WERE CERTAIN

13    FACTS IN THOSE ARGUMENTS.  AND WE GET THESE FACTS MAYBE BY

14    DISCOVERY, OR WE GET THEM BY MOTION. AND ONE OF THEM WAS:

15                   "HEY, LOOK, YOU RATIFIED THAT AGREEMENT,"

16                   I.E., TRANSLATED INTO NONLEGALESE:

17                   "YOU'RE SAYING THAT, MS. HISAMATSU, THAT IT WAS

18                   OKAY FOR THAT GUY TO FORGE YOUR NAME A FEW MONTHS

19                   AGO, EVEN THOUGH IT MIGHT NOT HAVE BEEN OKAY AT THE

20                   TIME."

21         THE COURT:  LET ME STOP YOU, BECAUSE I NEED TO GET --

22    I THINK SOME OF THESE QUESTIONS, AT LEAST INITIALLY, THE COURT'S

23    ENTITLED TO A "YES" OR "NO" ANSWER.

24         MR. SHAW:  I UNDERSTAND.

25         THE WITNESS:  IS YOUR ANSWER TO THE QUESTION -- I
```

1    GUESS IT IS -- YES, THAT THE ARGUMENTS THAT THE BANK IS MAKING

2    NOW AS TO THEIR CONTENTION WITH RESPECT TO THE EFFECT OF

3    THE INDEMNIFICATION AGREEMENT THAT THE PLAINTIFF SIGNED THAT

4    THOSE VERY -- THAT THOSE STATEMENTS SHOULD HAVE BEEN MADE AT OR

5    ABOUT THE TIME THAT THE PLAINTIFF SIGNED THE AGREEMENT.

6              **MR. SHAW:**  ABSOLUTELY.

7              **THE COURT:**  OKAY, AND YOUR POSITION IS BASED UPON --

8    I KNOW THE ARGUMENT, AS YOU SAID BEFORE, AND I DON'T WANT YOU TO

9    REPEAT THOSE, THAT THE WRITTEN AGREEMENT IS PARTIAL DISCLOSURES.

10             **MR. SHAW:**  YES, YOUR HONOR.

11             **THE COURT:**  AND WHAT'S THE AUTHORITY THAT YOU HAVE TO

12   SUPPORT THAT?

13             **MR. SHAW:**  ANDERSON VERSUS KNOX, A WHOLE LINE OF

14   CASES. I THINK IT'S FAIRLY -- ANDERSON VERSUS KNOX IS NINTH

15   CIRCUIT, BUT THEY USED HAWAII LAW.

16             AND I CITED ALSO IN MY BRIEF WHERE IT'S A YIDDISH

17   PROVERB THAT A HALF TRUTH IS EQUIVALENT TO A LIE. AND IT'S NOT A

18   NOVEL ISSUE.

19             IF SOMEBODY OPENS THE DOOR PARTIALLY, EVEN A

20   NEGLIGENCE-TYPE CASE, IF YOU UNDERTAKE SOMETHING YOU HAVE TO DO

21   IT THE RIGHT WAY. MAYBE THERE'S NO DUTY TO UNDERTAKE IN THE

22   FIRST INSTANCE.  BUT ONCE SOMEBODY EMBARKS ON IT THEY HAVE A

23   DUTY TO DO IT CORRECT AND NOT HURT SOMEONE.

24             **THE COURT:**  ALL RIGHT.  SO, AGAIN, YOUR POSITION IS

25   THAT THE WAY THIS INDEMNIFICATION AGREEMENT IS DRAFTED IT'S

1   DRAFTED IN, IN EFFECT, A MISLEADING WAY THAT DOESN'T DISCLOSE

2   THE FULL LEGAL EFFECT OF WHAT THE PLAINTIFF IS SIGNING.

3          **MR. SHAW:**  YES. AND IT DOESN'T TELL THE PLAINTIFF IN

4   LAY TERMS THAT:

5                "YOU'RE GIVING UP THOSE THREE CLAIMS THAT YOU

6                HAVE SITTING AT THE BANK FOR 58O --

7                $508,000 BY SIGINING THIS THING."

8          **THE COURT:**  ALL RIGHT.  WHAT'S YOUR POSITION ON THAT?

9   ANYTHING FURTHER FROM WHAT YOU SAID BEFORE?

10         **MR. WRIGHT:**  YES.  LET'S ASSUME THEY HAVE A LEASE

11  BETWEEN THESE TWO PARTIES INSTEAD OF WHAT WE HAVE.  AND THE

12  LANDLORD -- THE TENANT CALLS THE LANDLORD UP AND SAYS:

13               "I WANT OUT OF MY LEASE."

14               LANDLORD SENDS HER A DOCUMENT THAT SAYS -- WHICH SHE

15  SIGNS -- AND IT SAYS:

16               "I GIVE UP MY RIGHTS UNDER THE LEASE."

17               THAT'S ALL, OR SOMETHING EVEN SIMPLER.

18               SIGNS IT.  SENDS IT IN.

19               NOW, IS THE LANDLORD OBLIGATED TO TELL HER ALL THE

20  RAMIFICATIONS OF THAT?  WHAT ALL THAT MEANS; THAT SHE CAN'T COME

21  BACK; THAT HE'S GOING TO RELET THAT.  HE'S GOING TO STORE HER

22  FURNITURE; THAT HE MAY SELL HER FURNITURE IF SHE DOESN'T PICK IT

23  UP IN 30 DAYS.  ALL THOSE THINGS?  NO.

24               YOU HAVE TWO BUSINESS PARTIES.  ONE SAYS:

25               "I WANT TO DO SOMETHING. I WANT TO RELEASE THE

```
1              FUNDS YOU'RE HOLDING ON MY BEHALF IN THE BAD GUY'S

2              ACCOUNT.

3                   "FINE. WE WILL DO THAT IF YOU WITHDRAW YOUR

4              FORGERY CLAIMS.

5                   "I WITHDRAW. I WITHDRAW MY FORGERY CLAIMS."

6              THE FORGERY CLAIMS WERE CLEAR.  SHE SIGNED THREE

7    FORGERY CLAIMS.  THEY ARE EXHIBIT A TO THE COMPLAINT.

8              THERE'S NOTHING MORE REQUIRED.

9              THE COURT:  ALL RIGHT.  WELL, LET ME ASK ONE LAST

10   QUESTION:  DO YOU AGREE, THEN, THAT BASED UPON YOUR ARGUMENT

11   THAT THERE WERE PARTIAL DISCLOSURES REQUIRING MORE COMPLETE

12   DISCLOSURES CONTAINED IN THE INDEMNIFICATION AGREEMENT THAT THE

13   COURT CAN DECIDE THIS QUESTION, WHETHER THIS WAS MISLEADING OR

14   THESE STATEMENTS ESSENTIALLY BEGAT AN OBLIGATION FOR MORE FULL

15   DISCLOSURES BASED ON THE FOUR CORNERS OF THE AGREEMENT?

16             MR. SHAW:  I THINK SO, TAKING INTO CONSIDERATION THE

17   AUTHORITIES INVOLVED IN THE INDEMNITY AND IN THE RELEASE THAT I

18   CITED.

19             THE COURT:  ALL RIGHT.  THAT'S HELPFUL.  LET'S MOVE

20   ON NOW QUESTION NUMBER THREE HAS TO DO WITH THE CONTRACTUAL --

21   THE FACT, THE PLAINTIFF'S CONTENTION OR THE DEFENDANT'S

22   CONTENTION THAT ANY OBLIGATION'S CONTRACTUAL-BASED.

23             WHAT'S YOUR ANSWER TO QUESTION 3-A?

24             MR. WRIGHT:  THIS IS A FUN ONE. I LIKE THIS ONE. THE

25   ANSWER IS: NO, UNDER CHAZEN. AND THE REASON IS THIS:  CHAZEN
```

1    DOES NOT INVOLVE A DIRECT RELATIONSHIP BETWEEN A BANK AND A

2    DEPOSITOR. IT DECIDED THE QUESTION WHETHER A BANK HAS A DUTY TO

3    THIRD-PARTY NONCUSTOMERS. AND IT RELIED, INTERESTINGLY, ON TWO

4    PRE-CODE DECISIONS: BULLIS AND BARKLEY'S KITCHEN. ONE'S A '62,

5    I THINK, AND ONE'S A '73 CASE. BUT THEY ARE BOTH PRE-UCC.

6         AND IF YOU READ THOSE CASES, ONE IS A SUPREME COURT,

7    CALIFORNIA SUPREME COURT CASE, THEY ARE INSTRUCTIVE IN THIS:

8    THEY SHOW WHAT THE COURT'S WERE TRYING BEFORE THE UNIFORM

9    COMMERCIAL CODE WAS ENACTED. WHAT THE COURTS WERE TRYING TO DO

10   IN DEFINING AND UNDERSTANDING THE NATURE OF THE RELATIONSHIP

11   BETWEEN A BANK, AND IN THOSE TWO CASES, THE PRE-CODE CASES, A

12   DEPOSITOR.

13        IS THE RELATIONSHIP CONTRACTUAL?

14        YES.

15        DOES THE BANK ALSO OWE TORT DUTIES TO ITS CUSTOMER?

16        YES, WAS THE CONCLUSION.

17        CHAZEN, IN DICTA, BECAUSE THOSE CASES HAVE -- ARE

18   ABOUT CUSTOMERS. AND CHAZEN IS ABOUT A THIRD-PARTY NONCUSTOMER.

19        CHAZEN CITES THAT FOR THIS BROAD PROPOSITION THAT

20   THERE ARE TORT DUTIES WHEN, IN FACT, IN THE SITUATION INVOLVING

21   A CUSTOMER, A BANK AND A FORGED PAYOR SIGNATURE, WHICH IS

22   EXACTLY WHAT WE HAVE HERE, THERE ARE NO ADDITIONAL TORT DUTIES.

23        THERE ARE NONE. AND THE CASE THAT'S INSTRUCTIVE IN

24   THAT REGARD IS ROY SUPPLY VERSUS WELLS FARGO BANK, WHERE THE

25   COURT LOOKED AT WHAT OTHER RELATIONSHIPS, WHAT OTHER CLAIMS WERE

1    BEING MADE.  THERE ARE ONLY A COUPLE BEING MADE IN ROY SUPPLY.

2              BUT THE COURT SAID:

3                   "LOOK, THIS ENTIRE CLAIM BY THE PLAINTIFF ARISES

4              OUT OF THE DEPOSITORY RELATIONSHIP. AND IN THAT --

5              AND IN A FORGED CHECK."

6              AND IN THAT CONTEXT THE UNIFORM COMMERCIAL CODE HAS

7    DISPLACED EVERYTHING ELSE. IT HAS IDENTIFIED THE DUTIES OF A

8    BANK AND ITS CUSTOMER. AND THOSE INCLUDE THAT THE BANK MUST ACT

9    WITH ORDINARY CARE AND GOOD FAITH.  THAT'S UCC4103A. THAT THE

10   BANK HAS ABSOLUTE LIABILITY.

11             **THE COURT:**  OKAY.  SO WAIT A MINUTE. SO LET ME STOP

12   YOU.

13             **MR. WRIGHT:**   SURE.

14             **THE COURT:**  SO THE UCC IMPOSES AN OBLIGATION OF

15   ORDINARY CARE.

16             **MR. WRIGHT:**  YOU DON'T NEED CHAZEN.

17             **THE COURT:**  ALL RIGHT.

18             **MR. WRIGHT:**  IT'S IN THE --

19             **THE COURT:**  SO YOU CONCEDE -- THE BANK CONCEDES THAT

20   IT HAS A DUTY TO ACT -- YOU CALL IT "ORDINARY CARE."  I CALL IT

21   "REASONABLE CARE," WITH RESPECT TO THESE TRANSACTIONS WITH

22   PLAINTIFF?

23             **MR. WRIGHT:**  WITH ONE EXCEPTION.  AND THAT EXCEPTION

24   IS APPLICABLE HERE:  IF THE CLAIM IS ASSERTED BEYOND THE LIMIT

25   OF TIME UNDER 4406F, AS MODIFIED BY AGREEMENT TO 60 DAYS.  IF

```
1    THE CLAIM IS BROUGHT MORE THAN 60 DAYS AFTER THE FORGERIES ARE

2    DISCOVERED OR COULD HAVE BEEN DISCOVERED, CLEARLY IT WAS HERE,

3    WE BELIEVE.  THEN, WITHOUT REGARD TO CARE, ORDINARY CARE ON

4    BEHALF OF THE BANK, OR ITS CUSTOMER, THERE'S A PRECLUSION.

5              THE COURT:  ALL RIGHT.  WELL, THAT'S A DEFENSIVE

6    MATTER.

7              MR. WRIGHT:  YES.

8              THE COURT:  SO YOU'RE SAYING THE ANSWER TO THE

9    QUESTION IS:  YES, THERE IS A DUTY TO ACT WITH REASONABLE CARE.

10   BUT THAT DUTY IS EXTINGUISHED AFTER 60 DAYS.

11             MR. WRIGHT:  YES.  BUT I WANT TO BE CLEAR.  THERE IS

12   A DUTY, BUT IT'S STATUTORY.

13             THE COURT:  I UNDERSTAND.

14             MR. WRIGHT:  THERE'S NOT ONE DUTY UNDER THE STATUTE

15   AND ANOTHER DUTY UNDER CHAZEN.

16             THE COURT:  DO YOU HAVE ANY HAWAIIAN LAW?

17             MR. WRIGHT:  THERE IS NONE.

18             THE COURT:  WELL, YOU'RE PRETTY CONFIDENT.  YOU DON'T

19   HAVE ANY, AND THERE IS NONE?

20             MR. WRIGHT:  WE SPENT ALL DAY LOOKING FOR HAWAII LAW

21   ON THIS ISSUE, AND I'M PRETTY CONFIDENT THERE IS NONE.

22             THE COURT:  ALL RIGHT.  WELL, YOU'RE THE MAN FROM

23   HAWAII.  WHAT DO YOU SAY?

24             MR. SHAW:  THEY WILL APPLY NEGLIGENCE UNLESS THE CODE

25   OVERRIDES.
```

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

1    **THE COURT:**  OKAY.  NOW, DO YOU AGREE -- I THINK YOU

2    HAVE AGREEMENT.  I DON'T KNOW WHETHER YOU WANT TO FIGHT THIS

3    POINT WITH THE BANK THAT THE BANK OWED, WITH THE CAVEAT THAT

4    COUNSEL JUST MENTIONED, A DUTY OF ORDINARY CARE WITH RESPECT TO

5    THE PLAINTIFF, CORRECT?

6            DO YOU AGREE WITH THAT?

7    **MR. SHAW:**  I AGREE WITH THAT, BUT I AGREE THAT THE

8    NEGLIGENCE APPLIES TO THE BANK. I DON'T --

9    **THE COURT:**  IS THAT ANY DIFFERENT THAN ORDINARY CARE?

10   **MR. SHAW:**  WELL --

11   **THE COURT:**  SO, OF COURSE, IF THEY BREACHED THAT

12   DUTY, THAT SMACKS OF NEGLIGENCE. DO YOU DISPUTE THE NOTION THAT

13   THE SIXTY DAYS ESSENTIALLY -- I CALL IT A "STATUTE OF

14   LIMITATIONS" -- CLAIM LIMITATION APPLIES?

15   **MR. SHAW:**  NO, I DON'T DISPUTE THAT.  I DON'T THINK

16   IT APPLIES TO THIS CASE, NO.

17   **THE COURT:**  ALL RIGHT.  WELL, THAT'S A DIFFERENT

18   STORY.  SO I THINK YOU AGREE, BOTH SIDES AGREE, BUT DO YOU --

19   BUT DO YOU AGREE WITH THE PROPOSITION THAT THE UCC DISPLACES ANY

20   COMMON LAW WITH RESPECT TO THE BANK'S OBLIGATION?

21   **MR. SHAW:**  NO, I DISAGREE THAT IT DISPLACES THE

22   NEGLIGENCE COMMON LAW.

23   **THE COURT:**  DO YOU HAVE ANY AUTHORITY?  I CITED THAT

24   CHAZEN.  MR. WRIGHT HAS PURPORTED TO OR HAS DISTINGUISHED THAT

25   CASE.

1          **MR. SHAW:**  ACTUALLY --

2          **THE COURT:**  YES, GO AHEAD.

3          **MR. SHAW:**  THE CASE THAT YOUR HONOR CITED, AS WELL,

4    *ROY SUPPLY,* THE DISCUSSION THAT I PUT IN MY BRIEFS AT PAGE SIX

5    MAKES IT CLEAR THAT IT'S A PREEMPTION-TYPE ARGUMENT.  IF IT'S

6    GOING TO SUPERSEDE, IT'S GOING TO SAY SO, THE UCC.

7          AND IT HASN'T SAID IT'S GOING TO SUPERSEDE GENERAL

8    NEGLIGENCE LAW.

9          **THE COURT:**  YOU'RE SAYING THAT THE UCC DOES NOT STATE

10   THAT IT PREEMPTS COMMON LAW NEGLIGENCE.

11         **MR. SHAW:**  YES, THAT'S WHAT I'M SAYING.

12         **THE COURT:**  ALL RIGHT.

13         **MR. SHAW:**  AND THE ONLY EXCEPTION IS, AS COUNSEL HAS

14   ARGUED, IS WHEN THERE'S A TIME PROBLEM, WHEN THE DEPOSITOR IN

15   ALL THOSE CASES THAT COME UP, SOMEBODY HAS FOUND OUT ABOUT

16   FORGERY TWO YEARS LATE OR A YEAR LATE.

17         **THE COURT:**  SO IT APPLIES -- SO THE UCC APPLIES IN

18   PART.

19         **MR. SHAW:**  YES, IT DOES.

20         **THE COURT:**  ALL RIGHT.

21         WHAT'S YOUR RESPONSE TO THE ROY SUPPLY?

22         **MR. WRIGHT:**  WELL, THE UCC DOES DISPLACE -- IN THIS

23   INSTANCE, THERE'S A SPECIFIC STATUTE UCC 1103, WHICH WE'VE

24   CITED, WHICH ROY SUPPLY CITED.  AND ROY SUPPLY GOES THROUGH A

25   VERY EXHAUSTIVE ANALYSIS OF WHY IN THIS AREA -- IT'S NOT ABOUT

1    PREEMPTION.  IT'S ABOUT DISPLACEMENT.  AND IT SAYS -- THIS KIND

2    OF GOES BACK TO WHAT WE WERE TALKING ABOUT ORIGINALLY WHERE YOU

3    HAVE -- THE COURTS IN CALIFORNIA WERE LOOKING FOR WAYS IN WHICH

4    TO DESCRIBE THE RELATIONSHIP.  AND THE AUTHORS OF THE UCC. AND

5    ARTICLE FOUR, SPECIFICALLY, DESCRIBE THE RELATIONSHIP.  NOT IN

6    ALL PARTICULARS.  THEY DON'T DESCRIBE WHAT HAPPENS WITH

7    NONCUSTOMERS.  SO CHAZEN IS PERFECTLY PROPER.

8            **THE COURT:**  BUT LET ME JUST -- YOU KNOW, I INVITED

9    THIS ARGUMENT, AND WE'RE GETTING INTO HOW MANY ANGELS CAN DANCE

10   ON THE HEAD OF A PIN, BECAUSE BOTH OF YOU AGREE THAT THE

11   ORDINARY CARE STANDARD APPLIES.

12            BOTH OF YOU AGREE THAT THE 60-DAY CUTOFF APPLIES. AND

13   SO YOU WOULD AGREE THEN -- WOULD THE BANK AGREE, THEN, THAT IF

14   THIS ISSUE WAS ONLY ABOUT WHETHER OR NOT THE BANK WAS NEGLIGENT

15   YOU WOULD AGREE THAT THAT'S A FACTUAL QUESTION.

16            THAT PUTTING ASIDE THE 60 DAYS THAT COULD NOT BE

17   RESOLVED ON A 12 (B) (6) MOTION.

18            **MR. WRIGHT:**  CORRECT.

19            **THE COURT:**  ALL RIGHT.  SO THE ISSUE --

20            **MR. WRIGHT:**  BOTH WHERE THE BANK WAS NEGLIGENT OR

21   ABSOLUTELY LIABLE.

22            **THE COURT:**  ALL RIGHT.  SO THEN THE QUESTION BECOMES

23   REALLY IS ABOUT WHETHER THE 60-DAY CUTOFF WAS, IN EFFECT,

24   BREACHED, IF YOU WILL, OR NOT MET BY VIRTUE OF THE RETRACTION,

25   THE ALLEGED RETRACTION OF THE FORGERY AFFIDAVITS, CORRECT?

1    **MR. WRIGHT:**  YES, SIR.

2           **THE COURT:**  ALL RIGHT.  AND ISN'T THAT A LEGAL

3    ARGUMENT?  ISN'T THAT SOMETHING THE COURT CAN GLEAN FROM THE

4    FOUR CORNERS OF THE COMPLAINT?

5           **MR. SHAW:**  I BELIEVE SO. AND IT COULD BE -- THE CASE

6    COULD BE PUT IN A GOOD POSTURE IF THE COURT PUBLISHED, FOR

7    INSTANCE, THESE THINGS WERE PUBLISHED.

8           **THE COURT:**  LET'S GET THE DECISION RIGHT, AND THEN WE

9    WILL WORRY ABOUT PUBLICATION.

10          **MR. SHAW:**  I THINK THAT WOULD HELP SETTLE IT.

11          **THE COURT:**  WELL, I DON'T KNOW THAT IT WOULD, BECAUSE

12   THIS COURT'S -- OPINION BY THIS COURT WOULD NOT -- WELL, IF THE

13   NINTH CIRCUIT -- IF THE CASE WENT TO THE NINTH CIRCUIT AND THE

14   NINTH CIRCUIT MADE A PRONOUNCEMENT, AND IT PUBLISHED ITS

15   DECISION, OR IF IT WAS AFTER JANUARY IT WOULDN'T MATTER BECAUSE

16   IT WOULD BE CITABLE, ANYWAY, UNPUBLISHED.

17          BUT, OKAY.  I'VE GOTTEN WHAT I NEED ON THAT.  I THINK

18   WE'VE MADE SOME PROGRESS ON THAT.

19          **MR. SHAW:**  YOUR HONOR, IF I MAY.

20          **THE COURT:**  YES.  GO AHEAD.

21          **MR. SHAW:**  THE FACTUAL PROBLEM THAT COMES UP AND

22   CAN'T EVEN BE DECIDED THROUGH SUMMARY JUDGMENT ARE WHEN YOU DO

23   HAVE SUPPRESSIONS OR CONCEALMENTS THAT ARE BASED ON PARTIAL

24   DISCLOSURE, AND THEY ARE EITHER MIXTURES OF LAW AND FACT OR THEY

25   ARE FACTUAL WITH LEGAL CONCLUSIONS ATTACHED TO THEM, THOSE WOULD

1    HAVE TO BE FOR THE TRIER OF FACT. AND I THINK THEY WOULD BE JURY

2    QUESTIONS.

3            **THE COURT:**  SO YOUR ARGUMENT IS -- AND I'M GOING

4    TO -- JUST WANT TO CRYSTALIZE IT, AND THEN I'M GOING TO ASK THE

5    BANK'S ATTORNEY ON THIS.

6            YOU ARE SAYING THAT THEY'RE -- YOUR INITIAL STATEMENT

7    THAT THIS COULD BE DECIDED ON THE FOUR CORNERS, YOU MAKE THAT

8    STATEMENT WITH RESPECT TO THE 60-DAY CUTOFF.

9            ARE YOU NOW SAYING THAT NO, IT'S A FACTUAL DISPUTE

10   BECAUSE TO THE EXTENT THAT THE PLAINTIFF WAS FRAUDULENTLY

11   INDUCED TO WITHDRAW HER FORGERY AFFIDAVITS THAT'S A QUESTION OF

12   FACT?

13           **MR. SHAW:**  WELL, I'M SAYING IF WE'RE GOING TO GET

14   INTO LITIGATING THOSE ACTUAL NONDISCLOSURES THAT WERE MADE AND

15   WE'RE FIGHTING OVER WHETHER THEY ARE QUESTIONS OF LAW VERSUS

16   QUESTIONS OF FACT I THINK THAT'S A JURY ISSUE.

17           **THE COURT:**  ALL RIGHT. WELL, LET ME ASK MR. WRIGHT:

18   WOULD YOU AGREE THAT IF -- HYPOTHETICALLY, IF THE PLAINTIFF WAS

19   FRAUDULENTLY INDUCED TO WITHDRAW HER FORGERY AFFIDAVITS, AND

20   THERE WAS AN ISSUE OF FACT ABOUT THAT THAT THE COURT COULD NOT

21   RESOLVE ON A 12 (B) (6) MOTION, THE QUESTION OF WHETHER OR NOT

22   THE PLAINTIFF FAILED TO COMPLY WITH THE SIXTY-DAY CUTOFF.

23           **MR. WRIGHT:**  YES.

24           **THE COURT:**  ALL RIGHT.  LET'S MOVE ON.

25           THE QUESTION NUMBER FOUR, I THINK, MR. SHAW, YOU

1   BEGAN TO ANSWER THIS QUESTION, WHICH IS:  ACTIONS THAT TOOK

2   PLACE WITHIN CALIFORNIA THAT WOULD YOU TO -- THE DEFENDANT TO

3   LIABILITY UNDER 17200.

4           SO IT'S A TWO-PART QUESTION.  WHAT ACTIONS TOOK PLACE

5   IN CALIFORNIA?  AND WHAT AUTHORITY DO YOU HAVE, ADDITIONAL

6   AUTHORITY TO SUPPORT YOUR ARGUMENT THAT THAT CONDUCT MAKES 17200

7   APPLICABLE TO THAT CONDUCT?

8           **MR. SHAW:**  RIGHT NOW I DON'T HAVE ADDITIONAL

9   AUTHORITY.  BUT AS I MENTIONED EARLIER, THERE'S A WHOLE RAFT OF

10  CONTACT-TYPE THINGS THAT WERE DONE VIA A NATIONAL BANK IN THIS

11  STATE, WHICH THIS STATE HAS AN INTEREST IN PROTECTING PEOPLE WHO

12  ARE WITHIN IT.  AND EVEN THOUGH MS. HISAMATSU WASN'T A RESIDENT

13  OF THE STATE SHE WAS HERE.

14          AND I THINK THIS IS SOMETHING THAT AN IDENTITY THEFT

15  LAW IS GOING TO DEVELOP INTO. PEOPLE THAT ARE TRANSITORY, THEY

16  ARE COMMITTING CRIMES WITH FINANCIAL INSTITUTIONS.

17          **THE COURT:**  ALL RIGHT.  YOU DON'T HAVE AUTHORITY.

18  BUT THEN WHERE IN YOUR COMPLAINT DO YOU STATE THE FACTS THAT

19  SUPPORT YOUR 17200?

20          **MR. SHAW:**  I BELIEVE IT'S AT THE EIGHTH COUNT.

21          **THE COURT:**  OKAY.  SO COUNT EIGHT. I'M TURNING TO IT

22  NOW.

23          COUNT EIGHT, WHICH STARTS ON PAGE 24, PARAGRAPH 80.

24  SO THE FIRST FACT IN PARAGRAPH 81 IS PLAINTIFF RECEIVED THE

25  INDEMNIFICATION THAT WE'RE TALKING ABOUT, EXHIBIT D.

1          **MR. SHAW:**  YES.

2          **THE COURT:**  IN SAN FRANCISCO.

3          **MR. SHAW:**  AND THAT THE BANK AIMED ITS EFFORTS AT THE

4     STATE. I DID USE JURISDICTION CASES TO -- BECAUSE OF THE

5     CONTACTS INVOLVED.  AND ALSO I'VE ANTICIPATED CHOICE OF LAW

6     PROBLEMS COMING UP, AND THOSE INVOLVE CONTACTS, AS WELL.

7          **THE COURT:**  ALL RIGHT.  SO THE FORM WAS SENT -- THE

8     FORM WAS SENT THERE. WHAT ELSE?

9          **MR. SHAW:**  WELL, THE BANK KNEW AT THE TIME THAT IT

10    WAS PREPARING THE FORM WHERE THE PLAINTIFF WAS FOR THE PURPOSE

11    OF SIGNING IT, SO THE BANK WAS --

12         **THE COURT:**  ALL RIGHT.

13         **MR. SHAW:**  -- TOTALLY AWARE THAT THIS WAS GOING TO BE

14    DONE.

15         **THE COURT:**  ALL RIGHT. SO BASICALLY THE FACTS

16    SURROUNDING THE DRAFTING, TRANSMISSION AND SIGNING OF THE

17    INDEMNIFICATION AGREEMENT, THAT'S YOUR BASIS FOR ASSERTING

18    LIABILITY UNDER 17200, CORRECT?

19         **MR. SHAW:**  YES.  AND THE OTHER THING, THE PREPARATORY

20    PARTS OF THE COMPLAINT ALLEGE ALSO THAT THE BANK IS REGISTERED

21    IN THE STATE OF CALIFORNIA. IT'S A -- I BELIEVE IT'S PARAGRAPH

22    FOUR AT PAGE TWO, LISTED AS ACTIVE BY THE SECRETARY OF STATE AND

23    SO ON.

24         THIS WAS A -- NOT A BANK THAT WAS COMPLETELY

25    SEPARATED FROM THE STATE OF HAWAII AND COULD SAY THAT WE JUST

1  DID THIS ONE TIME, AND MAY BE BY MISTAKE.

2         **THE COURT:**  ALL RIGHT.  BUT YOU'RE SAYING THAT OTHER

3  THAN THE CASES YOU CITED YOU HAVE NO ADDITIONAL AUTHORITY ON

4  THIS POINT?

5         **MR. SHAW:**  YES, YOUR HONOR.

6         **THE COURT:**  ALL RIGHT.

7         COUNSEL?

8         **MR. WRIGHT:**  I'M AT A LOSS TO UNDERSTAND WHY 17200 IS

9  IN THIS CASE, BECAUSE THE REMEDIES FOR 17200 VIOLATION ARE

10 INJUNCTIVE AND RESTITUTION. THERE'S NOT GOING TO BE AN

11 INJUNCTION THAT FORBIDS THE BANK TO DO ANYTHING IN THE FUTURE

12 WITH REGARD TO THIS PLAINTIFF OR THESE FACTS. AND THE BANK HAS

13 NONE OF HER MONEY BECAUSE SHE RELEASED IT TO MR. NIROULA, SO WE

14 HAVE NOTHING TO RESTITUTE SO --

15        **THE COURT:**  WELL, THAT'S A DIFFERENT ARGUMENT THAT

16 THE APPLICABILITY AND THE TERRITORY AT ISSUE. WHAT'S YOUR

17 RESPONSE TO THAT?  THE REMEDY RESPONSE, THE REMEDY -- THIS IS

18 NOT A -- INJUNCTIVE RELIEF WOULD NOT SEEM TO BE APPROPRIATE.

19 RESTITUTION OR DISGORGEMENT OF MONIES THAT ARE NO LONGER IN THE

20 POSSESSION OF THE BANK WOULD NOT SEEM TO BE APPLICABLE.

21        **MR. SHAW:**  WELL, THAT WAS DISPOSED OF BY ROSALES

22 VERSUS CITIBANK IN SAN JOSE DIVISION.  AND I CITED THAT IN MY

23 BRIEF WHERE THE CITIBANK WAS SAYING THE SAME THING:

24             "THAT WE DON'T HAVE THE MONEY. OTHER PEOPLE WERE

25             INVOLVED."

```
 1              AND THE RESTITUTION WAS STILL APPLIED IN ROSALES TO

 2   CITIBANK.

 3              THE COURT:  WHY ISN'T THAT CASE NOT APPLICABLE?

 4              MR. WRIGHT:  I DON'T HAVE A RESPONSE TO THAT.

 5              THE COURT:  ALL RIGHT.  ALL RIGHT.  I'LL REREAD THAT.

 6              NOW, PARAGRAPH FIVE, HOW DOES PLAINTIFF RESPOND TO

 7   THE BANK OF HAWAII'S EXPRESS CONCERNS FOR ALLEGATIONS OF WHAT?

 8              MR. WRIGHT:  I BEG YOUR PARDON FOR INTERRUPTING. WE

 9   MISSED ONE OF THE QUESTIONS THAT YOU ASKED OF ME.

10              THE COURT:  ALL RIGHT.  GO AHEAD.

11              MR. WRIGHT:  AND MY CLIENT.

12              THE COURT:  RESTATE THE QUESTION.

13              MR. WRIGHT:  IT IS, I THINK, 3-B.

14              THE COURT:  ALL RIGHT.  I APOLOGIZE.

15              MR. WRIGHT:  WITH RESPECT TO ITS CONTENTION THAT

16   PLAINTIFF CANNOT PURSUE TORT CLAIMS.

17              THE COURT:  RIGHT.  I GOT THEIR POSITION.  I DIDN'T

18   GET YOUR RESPONSE.

19              MR. WRIGHT:  THERE IS A CASE AMONG THOSE CITED.  YOU

20   ASKED WERE THERE ANY CASES OTHER THAN BAD FAITH CASES --

21              THE COURT:  YES.

22              MR. WRIGHT:  -- AND THERE IS.  IT'S THE HUNTER

23   UPRIGHT CASE.  IT'S A LABOR DECISION, BUT IT'S BASED ON FRAUD.

24   SO AMONG THOSE THAT WE CITED THAT'S THE CALIFORNIA SUPREME COURT

25   DEALING WITH THE ISSUE OF FRAUD.  AND IN ADDITION TO BEFORE T
```

1    BAD FAITH AND OTHER CLAIMS.

2              **THE COURT:**  ALL RIGHT.  ALL RIGHT.  LET'S MOVE ON TO

3    QUESTION FIVE. HOW DOES PLAINTIFF RESPOND TO THE BANK'S CONCERNS

4    CONCERNING RULE 11?

5              **MR. SHAW:**  THE BANK RAISED ITS CONCERNS BY WAY OF A

6    REPLY DECLARATION THAT WE HAD NO WAY OF RESPONDING TO.

7              **THE COURT:**  THAT'S WHY WE HAVE ORAL ARGUMENT.

8              **MR. SHAW:**  RIGHT. AND THEY WERE WORRIED THAT

9    MS. HISAMATSU WAS REPRESENTED BY COUNSEL, A FACT THAT SHE

10   STRENUOUSLY DISAGREES WITH.  AND, IN FACT, THE COUNSEL THAT SHE

11   ALLEGEDLY WAS REPRESENTED BY STRENUOUSLY DISAGREES WITH THAT,

12   TOO.

13             AND IN THE PLEADING, IN MY FIRST AMENDED COMPLAINT I

14   EXPLAIN THAT THIS FORM WAS SENT BY A FRIEND, AND THEY WERE

15   FRIENDS.  AND THEY WERE -- I GUESS THEIR CHILDREN SHARED SOCCER

16   TEAM TOGETHER OR SOMETHING.

17             BUT THERE WAS NO -- FROM MY CLIENT'S VIEWPOINT AND

18   FROM THE VIEWPOINT OF THIS ALLEGED FRIEND THERE WAS NO

19   ATTORNEY/CLIENT RELATIONSHIP.

20             I UNDERSTAND THAT THE BANK IS GOING TO DISAGREE WITH

21   THAT, TAKE THEIR DEPOSITIONS AND SO ON. AND MAYBE EVEN INDEMNITY

22   THIRD PARTY IN THIS ATTORNEY. BUT OUR POSITION IS FROM DAY ONE

23   THAT THIS WAS NOT AN ATTORNEY/CLIENT RELATIONSHIP.

24             **THE COURT:**  IS THAT THE BASIS OF YOUR ARGUMENT WITH

25   RESPECT TO RULE 11?

1   **MR. WRIGHT:**  ONE OF THE ISSUES THAT CAME UP. THERE

2   ARE REALLY FOUR. AND WE HAVE NO INTENTION OF BRINGING BERTAIN

3   (PHONETIC) INTO THIS ACTION AT ALL.

4          ONE THAT I HAD TROUBLE WITH WAS THERE WERE REPEATED

5   ALLEGATIONS IN THE SECOND -- THE PROPOSED SECOND AMENDED

6   COMPLAINT THAT MS. HISAMATSU DIDN'T UNDERSTAND ENGLISH.  AND, IN

7   FACT, IT'S MY UNDERSTANDING THAT SHE TEACHES ENGLISH IN JAPAN.

8   SHE WAS OFFERED AN INTERPRETER WHEN SHE CAME TO THE BANK TO SIGN

9   THE FORGERY AFFIDAVITS, AND SHE SAID:

10          "NO, I DON'T NEED ONE."

11          THAT TROUBLED ME THAT WHEN, WITH THOSE BACKGROUND

12  FACTS, THAT IN DOING MY DUE DILIGENCE I THEN SEE THAT SHE'S

13  SOMEONE THAT DOESN'T UNDERSTAND THE TRANSACTION. SHE'S BEEN

14  ABUSED BY THE BIG COMPANY, BIG BANK.

15          ANOTHER ONE WAS THAT SHE SHOWED UP WHEN SHE SIGNED

16  THE AFFIDAVITS OF FORGERY WITH A FRIEND, ADVISOR WHO HANDED THE

17  BANK A BUSINESS CARD, HIS BUSINESS CARD SHOWING HE'S A LAWYER.

18  HE'S A LAWYER, WELL-KNOWN LAWYER AND A CREDIBLE LAWYER KNOWN TO

19  THE BANK IN THAT COMMUNITY.

20          AND, THEN, AGAIN NOT DISCLOSED IN EITHER THE FIRST

21  AMENDED OR THE PROPOSED SECOND AMENDED IS THE FACT THAT

22  MS. HISAMATSU ASKED THAT THE INDEMNITY AGREEMENT BE ROUTED

23  THROUGH MR. BERTAIN WHO COULD FIND HER.

24          AND SO IT WENT FROM BANK OF HAWAII TO HIM, HIM TO

25  HER, HER BACK TO HIM AND BACK TO THE BANK.

```
 1          THE COURT:  LET ME ASK YOU THIS:  HAVE YOU COMPLIED

 2    WITH THE SAVE HARBOR RULES OF RULE 11?

 3          MR. WRIGHT:  I GOT A DEMAND FROM COUNSEL AFTER FILING

 4    A REPLY BRIEF.  AND I SAID:

 5              "LOOK, I AM NOT PUTTING YOU -- I'M NOT MAKING A

 6              DEMAND ON YOU TO WITHDRAW. I'M ASKING YOU TO BE

 7              CAREFUL, PLEASE, BECAUSE" --

 8          THE COURT:  WELL, SEE, THAT IS A FAIR POINT.  BUT

 9    THAT HAS NO LEGAL EFFECT.

10          MR. WRIGHT:  EXACTLY.

11          THE COURT:  AND I GUESS WHAT I'M GOING TO SUGGEST IS

12    WE'RE NOT GOING TO RESOLVE THESE FACTUAL ISSUES HERE.  BUT WHAT

13    I AM GOING TO SAY TO BOTH OF YOU IS THIS:  FIRST OF ALL, AS HAS

14    BEEN POINTED OUT VERY MUCH BY A COMMENTATOR IN THE NINTH

15    CIRCUIT:  RULE 11 OR SANCTIONS LITIGATION IS NOT SOMETHING THAT

16    IS WELCOMED BY THE COURT BECAUSE IT OPENS THE -- IT TAKES THE

17    LITIGATION OFF TRACK, ET CETERA.

18              ON THE OTHER HAND, IN THIS COURT -- NOT ALWAYS IN ANY

19    OTHER COURT -- BUT IN THIS COURT THE COURT TAKES RULE 11 AND

20    COUNSEL'S OBLIGATIONS AS OFFICERS OF THE COURT VERY SERIOUSLY.

21              SO WE WILL -- THIS COURT'S VIEW IS THAT COUNSEL NEEDS

22    TO CONSIDER THEMSELVES PARTNERS WITH THE COURT IN GETTING TO THE

23    RIGHT AND JUST RESULT AND LITIGATING THE CASE IN THE MOST

24    EFFICIENT MANNER CONSISTENT WITH THE OBLIGATIONS TO ZEALOUSLY

25    REPRESENT THEIR CLIENTS.
```

1    AND THAT MEANS NOT FIGHTING ON FRONTS THAT ARE

2  LEGALLY UNTENABLE OR FACTUALLY UNTENABLE.  IF THE BANK BELIEVES

3  THAT A PROPOSED DOCUMENT IS BEYOND THE LIMITS OF RULE 11 OR A

4  VIOLATION OF RULE 11 OR ANY OTHER OBLIGATORY STATUTE, THEN THEY

5  OUGHT TO FOLLOW THE APPROPRIATE RULES, INFORM THE OPPOSING

6  COUNSEL OF THE ARGUMENT SO THE COUNSEL CAN'T SAY THEY HAVEN'T

7  SEEN THE ARGUMENT UNTIL IT WENT TO COURT, AND NOT PLAY "GOTCHA."

8    AND THE COURT WOULD CITE IT IF IT HAS TO.  BUT I'M

9  NOT INVITING IT.  I EXPECT COUNSEL TO TALK TO EACH OTHER

10  PROFESSIONALLY.  KEEP PERSONALLY DETACHED FROM THE CASE,

11  EMOTIONALLY SPEAKING, AND WORK THESE THINGS OUT.

12    BUT I DON'T WANT TO SEE ALLEGATIONS THAT CAN'T BE

13  PROVEN.  AND I WON'T ASK ANY FURTHER RESPONSE AT THIS POINT.

14    BUT I DO HAVE A COUPLE OF, SHALL WE SAY, POP QUIZ

15  QUESTIONS.  IF MS. HISAMATSU IS A TEACHER SHE'LL UNDERSTAND WHAT

16  I'M SAYING WAS NOT ON THE TAKE-HOME EXAM.  AND SO I WANT TO ASK

17  THESE QUESTIONS, AND THEN I'M GOING TO TAKE A SHORT BREAK,

18  BECAUSE I WANT TO TAKE A LOOK AT SOMETHING COUNSEL HAD MENTIONED

19  BEFORE I GO TO THE NEXT CASE.

20    THIS IS SORT OF A MORE OF A PLEADING ISSUE.  AND IT'S

21  FOR PLAINTIFF'S COUNSEL.  THE PLAINTIFF ASSERTS A CLAIM FOR

22  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE BANK IN

23  COUNTS 10, 19 AND 23.

24    SO IF YOU CAN LOOK AT THOSE REAL BRIEFLY, MR. SHAW, I

25  WOULD APPRECIATE IT.

```
1            AND THE QUESTION WHILE YOU'RE LOOKING AT THOSE, IT
2   APPEARS TO THE COURT THAT THE ALLEGATIONS IN EACH OF THOSE
3   COUNTS ARE SUBSTANTIALLY IDENTICAL IN EACH OF THOSE COUNTS. AND
4   I WANT TO KNOW HOW THE COUNTS ARE DIFFERENT, IF AT ALL.
5            AND THAT IS 10, 19 AND 23.
6            MR. SHAW:  WELL, THE REASON -- I APOLOGIZE FOR
7   CONFUSING THE COURT -- BUT THE REASON THAT THESE ARE SET UP THIS
8   WAY IS BECAUSE OF THE TRANSACTIONS THAT HAPPENED, AND I WANT TO
9   MAKE SURE AT THAT POINT THAT I'VE ALLEGED THAT, YOU KNOW, THAT
10  THERE ARE SUFFICIENT FACTS TO GIVE SOMEONE EMOTIONAL DISTRESS,
11  AND THEN MOVE THROUGH THE NEXT GROUP OF TRANSACTIONS.
12           THE COURT:  WELL, MY SUGGESTION WOULD BE THAT IF
13  THERE IS AN AMENDED COMPLAINT THAT YOU CAREFULLY LOOK AT THOSE
14  THREE, BECAUSE IT APPEARED TO ME THAT THEY WERE VIRTUALLY
15  IDENTICAL.  AND IT MAKES IT EASIER IF YOU PUT ALL THE FACTUAL
16  ALLEGATIONS IN -- OR REMEMBER THAT WE'RE IN A NOTICE PLEADING
17  JURISDICTION.
18           SO, YOU KNOW, WHATEVER YOU NEED TO GIVE NOTICE OF
19  YOUR EMOTIONAL STRESS INTENTIONAL INFLICTION, YOU CAN PUT THAT
20  IN ONE COUNT.  YOU DON'T NEED TO SPREAD IT OVER THREE.
21           MR. SHAW:  THANK YOU.
22           THE COURT:  AND LEAVE IT TO THE COURT TO TRY TO DO A
23  RED LINE COMPARISON.
24           SO IF THERE'S NO MATERIAL DIFFERENCE IN THE
25  ALLEGATIONS OF THESE COUNTS THE QUESTION WOULD BE THAT FOR
```

```
1    THE -- IS THE PLAINTIFF WILLING TO DISMISS TWO OF THE COUNTS ON

2    THE GROUND THAT THEY ARE DUPLICATIVE OF THE OTHER COUNTS?  AND I

3    ASK THAT QUESTION EVEN THOUGH YOU HAVE SUBMITTED A PROPOSED

4    ADDITIONAL AMENDED COMPLAINT, SECOND AMENDED COMPLAINT.

5             THE COURT NOTES THAT THE PROPOSED COUNTS IN THE

6    SECOND AMENDED COMPLAINT ALSO APPEAR TO BE SUBSTANTIALLY

7    IDENTICAL AND PREMISED ON THE SAME FACTS.

8             SO THE QUESTION IS:  IS THE PLAINTIFF WILLING TO

9    DISMISS TWO OF THOSE COUNTS?

10            MR. SHAW:  YES, YOUR HONOR.

11            THE COURT:  ALL RIGHT. WHICH TWO?

12            MR. SHAW:  I'LL KEEP THE LAST ONE.

13            THE COURT:  YOU'LL KEEP THE LAST ONE, AND YOU'RE

14   AGREEING TO VOLUNTARILY DISMISS COUNTS 10 AND 19?

15            MR. SHAW:  YES, YOUR HONOR.

16            THE COURT:  ALL RIGHT.

17            I ASSUME YOU HAVE NO OBJECTION TO THAT?

18            MR. WRIGHT:  NO OBJECTION, YOUR HONOR.

19            THE COURT:  ALL RIGHT.  NOW, AGAIN, I WANT TO DIRECT

20   YOUR ATTENTION, MR. SHAW, TO COUNTS 14 AND 24.  AND THE QUESTION

21   IS GOING TO BE:  WHAT FACTUAL ALLEGATIONS DISTINGUISH COUNT 14

22   FROM COUNT 24?

23            14 IS NEGLIGENT MISREPRESENTATION.

24            MR. SHAW:  RIGHT. AGAIN, IT WAS THE SAME PROBLEM.

25   THERE WERE ADDITIONAL TRANSACTIONS THAT OCCURRED IN-BETWEEN
```

```
1    THOSE TWO COUNTS. SO INCORPORATING THE LANGUAGE AHEAD, YOU KNOW,

2    I WOULD BE HAPPY TO DISMISS THE FIRST COUNT, KEEP THE LAST.

3              THE COURT:  ALL RIGHT.  SO PLAINTIFF IS WILLING TO

4    VOLUNTARILY DISMISS COUNT 14 IN FAVOR OF KEEPING COUNT 24 FOR

5    CURRENT PURPOSES.

6              DOES THE DEFENDANT HAVE ANY OBJECTION?

7              MR. WRIGHT:  NO OBJECTION.

8              THE COURT:  ALL RIGHT.  SO THOSE COUNTS ARE DISMISSED

9    UPON MOTION.

10             ALL RIGHT.  WHAT WE'RE GOING TO DO NOW, I WANT TO

11   TAKE -- APOLOGIES TO THE COUNSEL IN THE NEXT CASE.  I KNOW

12   YOU'VE BEEN WAITING, BUT WE HAVE A LOT OF THINGS TO GET TO.  AND

13   THEN, WE STARTED LATE.  I'M GOING TO TAKE A TEN-MINUTE BREAK.  I

14   WANT TO LOOK INTO ONE THING THAT WAS MENTIONED, AND I MIGHT HAVE

15   ADDITIONAL QUESTIONS FOR YOU, SO PLEASE HANG AROUND.

16             MR. WRIGHT:  THANK YOU, YOUR HONOR.

17             MR. SHAW:  THANK YOU, YOUR HONOR.

18             (THEREUPON, A RECESS WAS TAKEN.)

19             THE COURT:  ALL RIGHT. WE ARE BACK ON THE RECORD

20   HERE. SO I HAVE A COUPLE OF FOLLOW-UP QUESTIONS HERE THAT WERE

21   RAISED BY COUNSEL DURING THEIR ARGUMENTS.

22             AND THE FIRST QUESTION I'M GOING TO ADDRESS TO THE

23   BANK. AND I'M GOING TO GIVE YOU SORT OF A PREAMBLE BECAUSE I'M

24   GOING TO PUT SOME AUTHORITY INTO THE QUESTIONS, CASE AUTHORITY.

25             IT HAS TO DO WITH THE ISSUE OF DISPLACEMENT. AND THE
```

```
1    QUESTION -- I WANT TO SEE IF I UNDERSTOOD THE BANK'S ARGUMENT AS

2    TO WHETHER THEY CONTEND THAT THE UCC DISPLACES ALL OTHER CAUSES

3    OF ACTION ARISING OUT OF THE RELATIONSHIP BETWEEN -- IN THIS

4    CASE, BETWEEN THE PLAINTIFF AND THE BANK, OR SIMPLY THOSE

5    RELATED TO THE FORGERY?

6            AND THE REASON I ASK THAT QUESTION IS UNDER ONE OF

7    THE CASES, WHICH IS THE STORY ROAD FLEA MARKET VERSUS WELLS

8    FARGO BANK CASE, WHICH IS 42 CAL APP. 4TH, 1733, THE COURT AT --

9    WELL, IT'S IN THE WEST LAW CITE.  IT'S AT PAGE FOUR.  SAYS THE

10   FOLLOWING:

11              "FIRST, WE MUST CAST OFF THE ERRONEOUS NOTION

12              THAT FORMER SECTION 4406 DEFINED A CAUSE OF ACTION

13               AGAINST THE BANK WHICH DISPLACED ALL OTHER CAUSES OF

14              ACTION BASED ON THE UNAUTHORIZED SIGNATURES.  THIS IS

15              A SERIOUS MISCONSTRUCTION OF THE MEANING OF THE

16              STATUTE.  WHERE THE CUSTOMER HAS FAILED TO TIMELY

17              NOTIFY THE BANK OF AN UNAUTHORIZED SIGNATURE ON AN

18              ITEM, AFTER RECEIVING THE ITEM FROM THE BANK WITH THE

19              CUSTOMER'S STATEMENT, THE CUSTOMER WILL BE PRECLUDED

20              UNDER FORMER SECTION 4406 FROM FOUNDING ANY ACTION ON

21              THE BANK'S PAYMENT OF SUBSEQUENT ITEMS BEARING

22              UNAUTHORIZED SIGNATURES BY THE SAME WRONGDOER UNLESS

23              THE CUSTOMER CAN SHOW THAT THE BANK FAILED TO USE --

24              AND QUOTE/UNQUOTE -- 'ORDINARY CARE,' UNQUOTE, IN

25              HONORING THESE SUBSEQUENT ITEMS."
```

1          SO DOES THE DEFENDANT AGREE THAT -- AND DOES THE

2   DEFENDANT AGREE THAT THE UCC DOES NOT DISPLACE ALL CAUSES OF

3   ACTION ARISING OUT OF THE RELATIONSHIP BETWEEN THE BANK AND THE

4   CUSTOMER?

5          **MR. WRIGHT:**  YES. AND THE REASON IS THAT THERE ARE

6   ALL SORTS OF RELATIONSHIPS.  FOR EXAMPLE, A CUSTOMER WALKS INTO

7   A BRANCH, TRIPS AND FALLS OVER AN OBSTACLE.  THAT'S PART OF THE

8   RELATIONSHIP OF THE BANK AND CUSTOMER, BUT IT'S NOT DESCRIBED OR

9   DISPLACED BY THE UCC.

10         ON THE OTHER HAND, THE PRECLUSION ARGUMENT THE BANK

11  MAKES UNDER STORY ROAD AND ROY SUPPLY IS AN AREA IN WHICH ALL

12  OTHER LAW HAS BEEN DISPLACED.

13         **THE COURT:**  BUT THIS SAYS EXACTLY THE OPPOSITE.  THIS

14  SAYS THAT:

15              "FIRST, WE MUST CAST OFF THE ERRONEOUS NOTION

16              THAT FORMER SECTION 4406 DEFINED A CAUSE OF ACTION

17              AGAINST THE BANK WHICH DISPLACED ALL OTHER CAUSES

18              OF ACTION BASED ON THE UNAUTHORIZED SIGNATURES."

19         **MR. WRIGHT:**  AND I WASN'T THINKING ABOUT THE CAUSE OF

20  ACTION SO MUCH AS THE TRANSACTION ITSELF, WHICH IS THE

21  PRECLUSIVE EFFECT OF UCC406F.

22         **THE COURT:**  ALL RIGHT.  WELL, IS WHAT YOU'RE SAYING

23  ESSENTIALLY THAT WHAT 4406 DOES IN THIS CASE IS IT CREATES AN

24  ISSUE PRECLUSION WITH RESPECT TO THE FORGERY AND ANY CLAIMS

25  ARISING OUT OF THE FORGERY THAT ARE COVERED BY 4406, THE UCC'S

```
 1   CONCOMITANT SECTION, THAT THOSE ARE DISPLACED?

 2           MR. WRIGHT:  CORRECT.

 3           THE COURT:  DO YOU AGREE WITH THAT, MR. SHAW?

 4           MR. SHAW:  NO, I DON'T.

 5           THE COURT:  ALL RIGHT.

 6           MR. SHAW:  I AGREE THAT ONLY THE TIMELINESS CAN

 7   TRIGGER A DISPLACEMENT.  THE ISSUE OF WHETHER OR NOT THE

 8   PLAINTIFF TIMELY NOTIFIED THE BANK THAT THERE WAS A FORGERY. SO

 9   IF SHE WAS ON TIME THEN SHE CAN GO AHEAD AND ALLEGE HER COMMON

10   LAW CASES.

11           THE COURT:  ALL RIGHT.  DO YOU HAVE ANY OTHER

12   AUTHORITY TO DISCUSS ON THAT POINT?

13           MR. SHAW:  NO, EXCEPT ROY SUPPLY.

14           THE COURT:  ALL RIGHT, WHICH I'VE LOOKED AT.

15           AND I HAVE A QUESTION FOR YOU, AND I THINK YOU'VE

16   ALREADY ANSWERED THIS. HYPOTHETICALLY, IF THE COURT WERE TO RULE

17   THAT THE SO-CALLED "INDEMNIFICATION AGREEMENT" WAS NOT PRECLUDED

18   BY FRAUD, OR PUT IT ANOTHER WAY, THAT IT WAS ENFORCEABLE, AND

19   THE COURT WERE TO FURTHER RULE THAT THE PLAINTIFF FAILED TO

20   COMPLY WITH THE 60-DAY NOTICE WITH RESPECT TO THE FORGERIES,

21   WOULD YOU AGREE THAT, IN EFFECT, ALL THE PLAINTIFF'S CLAIMS TO

22   THE EXTENT THAT THEY WERE DEPENDENT UPON THE BANK'S FAILING THE

23   FORGERIES WOULD GO OUT?

24           MR. SHAW:  NO, I WOULDN'T, BECAUSE THERE'S THRESHOLD

25   CLAIMS, LIKE WHEN THE BANK WAS PRESENTED WITH A CHECK, THE
```

1   FIRST CHECK FOR $8,000, I THINK THAT'S NEGLIGENT FOR THE BANK TO

2   HAVE ON A NEW, NONCOMMERCIAL ACCOUNT -- IT WAS A PERSONAL

3   ACCOUNT -- TO HAVE RUN THAT CHECK THROUGH WITHOUT CALLING

4   MS. HISAMATSU. THAT WAS THE FIRST FORGERY.  IF THAT WOULD HAVE

5   HAPPENED, NONE OF THE OTHERS FOR OVER HALF A MILLION DOLLARS

6   WOULD HAVE TAKEN PLACE.

7            **THE COURT:**  RIGHT.  BUT THAT THE BASIS OF THE

8   NEGLIGENCE WAS ACCEPTING A FORGED CHECK.

9            **MR. SHAW:**  YES, YOUR HONOR.

10           **THE COURT:**  AND THE PREMISE OF MY HYPOTHETICAL IS

11  THAT I FIND THAT ANY -- THAT THE SO-CALLED INDEMNITY AGREEMENT

12  EXTINGUISHES ANY CLAIM BASED UPON FORGERY.  YOU ARE CHANGING THE

13  HYPOTHETICAL.

14           I KNOW YOU DON'T LIKE IT.

15           **MR. SHAW:**  OH, I SEE WHAT YOU MEAN. I GUESS THAT

16  WOULD -- WHAT YOU WOULD BE DOING IS UPHOLDING A RELEASE OR

17  INDEMNITY OR BASICALLY A RELEASE FOR THE CLAIM.

18           **THE COURT:**  WELL, THAT'S NOT NECESSARILY THE CASE.

19  EVEN THE BANK DOESN'T CLAIM, AS I UNDERSTAND IT, THAT THE

20  RELEASE -- THAT THE DOCUMENT IS A FULL RELEASE OF ALL POSSIBLE

21  LIABILITY.

22           THE BANK IS SAYING THAT WHAT THE EFFECT -- WHAT THE

23  BANK IS ASKING THE COURT TO GIVE EFFECT TO IS THE WITHDRAWAL OF

24  THE FORGERY CLAIM, AND THEREFORE ANY CLAIM OR CAUSE OF ACTION

25  BASED UPON PAYING ON THE FORGED CHECKS.

```
1              SO MY QUESTION TO YOU -- AGAIN, I HAVEN'T DECIDED

2    WHAT I'M GOING TO DO -- SO I UNDERSTAND THE ISSUES,

3    HYPOTHETICALLY, IF THE COURT WERE TO ACCEPT THAT AGREEMENT TO

4    THAT EXTENT WAS ENFORCEABLE, WOULD YOU AGREE THAT THAT WOULD

5    WIPE AWAY ALL OF YOUR CLIENT'S CLAIMS?

6              MR. SHAW:  WELL, OFFHAND IT SEEMS LIKE IT WOULD, BUT

7    I'VE GOT 30 COUNTS.  AND SOME OF THE COUNTS OVERLAP WHERE

8    THERE'S -- I KNOW THERE'S ONE CONSPIRACY COUNT WHICH OVERLAPS

9    WITH NIROULA AND THE BANK WHERE THEY WERE SORT OF COMPLICIT IN

10   HANDLING THIS.

11             AND I DON'T KNOW WHETHER THAT INDEMNIFICATION

12   AGREEMENT WOULD REACH TO THAT.

13             AS FAR AS THE CLAIMS GO THAT SHE MADE, WHICH ARE

14   ATTACHED AS EXHIBITS, WHETHER THE BANK DIDN'T INVESTIGATE OR

15   SAYING THAT THEY SHOULD HAVE, I'M NOT SURE IF THE

16   INDEMNIFICATION WOULD HAVE REACHED THOSE TRANSACTIONS, EITHER.

17             THE COURT:  ALL RIGHT.

18             MR. SHAW:  BUT I WOULD SAY MOST OF THEM WOULD BE

19   WIPED OUT.

20             THE COURT:  WHAT'S THE BANK'S POSITION ON THE COURT'S

21   QUESTION?

22             MR. WRIGHT:  I THINK YOU'VE ACCURATELY STATED THE

23   ISSUE WE RAISE, WHICH IS THAT NOT ONLY THE FORGED PAYOR

24   SIGNATURE CLAIMS, BUT ANYTHING THAT -- ANY OTHER CLAIM THAT IS

25   BASED UPON THE FORGERIES FALLS AS PRECLUDED UNDER 4406F.
```

```
 1            THE COURT:  ALL RIGHT. ALL RIGHT.

 2            ANYTHING FURTHER COUNSEL WISH TO ADD AT THIS POINT?

 3            MR. SHAW:  THE ONLY THING FURTHER FOR PLAINTIFF'S

 4   SIDE WOULD BE IF THE BANK HAS RECORDS OF MR. NIROULA'S RESIDENCE

 5   OR WHEREABOUTS, EVEN IF IT WAS OLD RECORDS, I'D APPRECIATE A

 6   DISCLOSURE.

 7            THE COURT:  WOULD YOU BE WILLING TO PROVIDE THAT

 8   INFORMATION?

 9            MR. WRIGHT:  I THINK WE'VE GOT -- I THINK WE'VE GOT

10   ISSUES OF CONFIDENTIALITY OF A BANK CUSTOMER'S RECORDS.  BUT IF

11   WE CAN GET PAST THAT ISSUE, THEN, YES.

12            THE COURT:  ALL RIGHT.  I THINK YOU SHOULD MEET AND

13   CONFER ON THAT POINT AND SEE IF YOU CAN -- I'M NOT GOING TO

14   ORDER IT AT THIS POINT BECAUSE I'M NOT GOING TO ORDER DISOBEYING

15   ANY RULE. BUT IF YOU CAN TRY TO WORK THAT OUT.  IF NOT, YOU CAN

16   BRING IT TO THE COURT'S ATTENTION.

17            JUST AS AN ASIDE, HAS THIS MATTER BEEN REPORTED TO

18   THE FBI OR THE POLICE?

19            MR. SHAW:  YES, IT'S BEEN -- THAT'S ONE OF THE

20   REASON'S IT'S TAKEN MS. HISAMATSU SO LONG.  IT'S BEEN REPORTED

21   TO FBI, POLICE AND THE FEDERAL RESERVE BOARD AND LOCAL --

22            THE COURT:  HAS SHE REPORTED IT TO THE POSTAL

23   INSPECTION SERVICE?

24            MR. SHAW:  YES, I THINK SO. SHE HAS -- THE ONLY

25   ACTIVE AGENT THAT'S WORKING ON IT IS SOMEONE THROUGH ICE. AND I
```

```
 1   DON'T KNOW WHY THEY ARE INVOLVED, IMMIGRATION. THEY USUALLY DO

 2   THE DRUG CASES AND STUFF.

 3            THE COURT:  WELL, I DON'T PRETEND TO WANT TO GIVE

 4   LEGAL ADVICE.  BUT I WOULD SAY FROM THE COURT'S EXPERIENCE THAT

 5   THE POSTAL INSPECTION SERVICE ARE THE MOST AGGRESSIVE IN

 6   PURSUING THESE WIRE AND MAIL FRAUD CLAIMS.

 7            AND I WOULD STRONGLY -- WELL, I'M NOT GOING TO URGE

 8   ANYTHING, BUT I WOULD JUST SAY ON THE RECORD THAT IT STRIKES ME

 9   THAT TO THE EXTENT THAT THE PLAINTIFF HAS ALREADY INITIATED

10   THOSE PROCEEDINGS THAT IRRESPECTIVE OF WHAT HAPPENS IN THIS

11   CASE, IT SEEMS LIKE THERE MAY BE A BASIS TO PROCEED ACCORDINGLY.

12            SO THE OTHER TWO ISSUES I WANT TO MENTION IS, ONE:

13   I'M GOING TO -- BECAUSE I NEED TO DIGEST THE ARGUMENTS OF

14   COUNSEL I'M GOING TO VACATE THE CASE MANAGEMENT CONFERENCE

15   THAT'S TWO WEEKS HENCE.  AND WHAT I'M GOING TO DO IS I WILL

16   RESET IT IN THE ORDER UPON MOTION TO DISMISS.

17            AND I WANTED TO ADVISE MR. SHAW THAT IF YOU WANT TO

18   APPEAR -- I REQUIRE THAT ON MOTIONS AND ON INITIAL APPEARANCES

19   THAT COUNSEL APPEAR IN PERSON, EVEN IF THEY ARE FROM OUT OF

20   TOWN.  BUT IF YOU WISH ON CASE MANAGEMENT CONFERENCES OR STATUS

21   CONFERENCES TO APPEAR BY TELEPHONE, YOU CAN ARRANGE THAT

22   THROUGH -- IN WRITING THROUGH AN ADMINISTRATIVE REQUEST.  AND AS

23   LONG AS YOU HAVE A LAND LINE WHERE WE CAN REACH YOU WE WOULD

24   ALLOW YOU TO APPEAR BY TELEPHONE GIVEN THAT YOU'RE FROM OUT OF

25   TOWN.
```

1          **MR. SHAW:**  THANK YOU, YOUR HONOR.

2          **THE COURT:**  SO THE CASE MANAGEMENT CONFERENCE IS

3   VACATED TO BE RESCHEDULED IN THE ORDER ON THE MOTION.

4          AND THE SECOND OBVIOUS ISSUE IS I THINK THAT GIVEN

5   THE MATTER'S COLLOQUY AND YOUR ARGUMENT TODAY IT WOULD BE A GOOD

6   IDEA FOR THE COURT TO SET FORTH IN THE ORDER WHETHER OR NOT, IF

7   THERE'S GOING TO BE AN AMENDED COMPLAINT, PRESUMABLY THE ORDER

8   WILL GIVE THE PLAINTIFFS SOME DIRECTION ABOUT WHAT SHOULD BE IN

9   IT.

10          SO I WOULD SUGGEST NOT FILING -- THE COURT WILL

11   ACCEPT FOR THESE PURPOSES THE PROPOSED -- IS IT THE THIRD

12   AMENDED?

13          **MR. SHAW:**  SECOND, YOUR HONOR.

14          **THE COURT:**  -- SECOND AMENDED COMPLAINT WHAT -- AS A

15   REPRESENTATION OF WHAT SHE WOULD ALLEGE IF THE COURT ALLOWED THE

16   CASE  --  ALLOWED THE AMENDMENT TO THE COMPLAINT.  BUT,

17   OBVIOUSLY, IT WOULD BE BETTER TO WAIT TO FILE ANY SUBSEQUENT

18   PLEADING UNTIL THE COURT HAS RULED ON THE CURRENT MOTION WITH

19   RESPECT TO THE CURRENT PLEADING.

20          YOU UNDERSTAND?

21          **MR. SHAW:**  YES, YOUR HONOR.

22          **THE COURT:**  ALL RIGHT.  ANYTHING FURTHER?

23          **MR. WRIGHT:**  ONE BRIEF HOUSEKEEPING MATTER.  MR. SHAW

24   AND I SPOKE AT THE BREAK, AND THE LATTER PART OF HIS DECEMBER

25   AND MINE ARE FAIRLY CONFLICTED BECAUSE OF THE HOLIDAYS.

```
1              I'M GOING TO BE OUT OF THE COUNTRY FROM THE 18TH TO

2    THE 28TH, WHICH IS A FRIDAY, SO I'M NOT BACK UNTIL JANUARY 2.

3              SO IF THE COURT SHOULD GRANT LEAVE TO AMEND, I JUST

4    WANT TO MAKE SURE THAT IT GAVE MR. SHAW AN ADEQUATE TIME TO FILE

5    AN AMENDED PLEADING AND ME AN ADEQUATE TIME TO FILE A RESPONSE.

6              THE COURT:  ALL RIGHT.  SO NOTED, AND WE WILL TAKE

7    THAT INTO ACCOUNT.

8              MR. WRIGHT:  THANK YOU.

9              THE COURT:  THANK YOU VERY MUCH, COUNSEL.

10             MR. WRIGHT:  THANK YOU FOR THE TIME, YOUR HONOR, AND,

11   AGAIN, I APOLOGIZE.

12             THE COURT:  ALL RIGHT.

13                  (THEREUPON, THIS HEARING WAS CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25
```

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY

THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED

SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO

TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE

RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR

ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING

PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE

OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE

TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL

CONFERENCE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS

12TH DAY OF JUNE, 2009.

_____

/S/ KATHERINE WYATT

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834